**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice* pending)
Christopher Marcus, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*


**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al.*, | Case No. 23-14853 (JKS) |
| Debtors.[1] | (Jointly Administered) |


**DEBTORS' MOTION FOR**
**ENTRY OF AN ORDER (I) APPROVING THE**
**BIDDING PROCEDURES AND AUCTION, (II) APPROVING**
**STALKING HORSE BID PROTECTIONS, (III) SCHEDULING**

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/cyxtera.  The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

**BID DEADLINES AND AN AUCTION, (IV) APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, AND (V) GRANTING RELATED RELIEF**

TO THE HONORABLE JOHN K. SHERWOOD

UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (the "Motion"):[2]

## **Relief Requested**

1.     The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"): (a) authorizing and approving the proposed marketing, auction, and

bidding procedures attached as Exhibit 1 to the Order (the "Bidding Procedures"), by which the

Debtors will solicit and, if value-maximizing, in accordance with the terms of the Restructuring

Support Agreement, will select the highest or otherwise best offer(s) for the purchase of or

investment in the equity interests (the "New Equity Interests") issued by reorganized Cyxtera

Technologies, Inc., or any successor or assign thereto, by merger, consolidation, or otherwise, on

and after the effective date of a chapter 11 plan ("Reorganized Cyxtera") and/or some or all of the

Debtors' assets (the "Assets", and collectively, with the New Equity Interests, the "Sale Package"),

(b) establishing certain dates and deadlines related thereto and scheduling an auction, if any,

(the "Auction"), (c) approving the manner of notice of the Auction, as may be necessary, and

(d) granting related relief.

---

[2]    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to
the Debtors' chapter 11 cases, is set forth in the *Declaration of Eric Koza, Chief Restructuring Officer of Cyxtera
Technologies, Inc., in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration")
[Docket No. 20].  Capitalized terms used but not defined in this Motion have the meaning ascribed to them in the
First Day Declaration or the Bidding Procedures, as applicable.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of*

*Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a

final order in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a), 363, 365, 503, and 507

of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004, and 6006(a) of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 6004-1, 6004-2,

and 9013-1(a)(3) of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

5.      The Debtors, together with their non-Debtor affiliates (collectively, "Cyxtera"), are

a leading global data center provider of:  (i) colocation services—the practice of providing space

and power to customers in reliable, redundant, and secure data centers to host customers' critical

applications and workloads in an integrated ecosystem; (ii) interconnection services—the practice

of providing fast, highly reliable, convenient, and affordable connections between customers and

their network service providers; (iii) bare metal services—the practice of offering customers on

demand access to private bare metal servers and cloud technology with seamless connection to

third party partner services; and (iv) deployment and ongoing support services in connection with

Cyxtera's full suite of data center offerings.  Cyxtera offers its first-in-class services to more than

2,000 customers.  Founded in 2017 and headquartered in Coral Gables, Florida, Cyxtera employs

a global workforce of over 600 employees and operates a footprint of more than sixty data centers in over thirty markets around the world, including the United States, Canada, London, Amsterdam, Singapore, Tokyo, and Germany.

6.      On June 4, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On June 6, 2023, the Court entered an order [Docket No. 71] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no official committees have been appointed or designated.

### Introduction

7.      As described more fully in the First Day Declaration, in March 2023, the Debtors, with the assistance of their proposed investment banker Guggenheim Securities, LLC ("Guggenheim Securities"), launched a comprehensive marketing process (the "Marketing Process") to engage interested third parties in a potential sale transaction (the "Sale Transaction"). The Marketing Process ran in parallel with the Company's engagement with the ad hoc group of first lien lenders represented by Gibson, Dunn & Crutcher LLP as legal counsel and Houlihan Lokey, Inc as investment banker (the "Ad Hoc Group") regarding the terms of a comprehensive restructuring transaction.

8.      On May 4, 2023, the Debtors and the Ad Hoc Group entered into the restructuring support agreement (the "Restructuring Support Agreement"), which contemplates a dual-track process whereby the Debtors will pursue a recapitalization transaction (the "Recapitalization Transaction") that would equitize the Debtors' first lien indebtedness under the Debtors' prepetition credit agreements (the "Prepetition Credit Agreements"), while simultaneously

finalizing the Marketing Process to determine whether a higher or otherwise better transaction can be consummated.

9.      In connection with the Marketing Process, which had been progressing for over two months as of the Petition Date, the Debtors, through Guggenheim Securities, contacted over seventy-five potential financial and strategic partners (the "Potential Purchasers") to solicit interest in acquiring some or all of the assets and/or interests in the company outside of chapter 11 ("Whole-Company Bid") or structuring a sale or other investment in the company through a chapter 11 plan ("Plan Sponsor Bid").    As of the filing of this Motion, thirty-seven Potential Purchasers have entered into non-disclosure agreements with the Debtors and six Potential Purchasers have already submitted non-binding letters of intent, both in the form of Whole-Company Bids and Plan Sponsor Bids.

10.      By this Motion, the Debtors seek to continue the Marketing Process for bids in all forms so that the Debtors can attract as many high-quality Bids (as defined herein) as possible.  If the Debtors identify a transaction with a third party, whether for the purchase of some or all of the New Equity Interests or the Assets, that provides stakeholders with greater or otherwise better value than the Recapitalization Transaction, the Debtors can "toggle" to that path.

11.      The Debtors also seek to establish a schedule that provides sufficient time to finalize the Debtors' marketing efforts for a Potential Purchaser while balancing the Debtors' desire to minimize administrative expenses and business disruption as they work to emerge from these chapter 11 cases on the fastest timeline possible.  Accordingly, the proposed schedule (the "Schedule") takes into account the significant prepetition marketing that has already occurred while providing sufficient time postpetition for Potential Purchasers to review diligence and

submit Bids.  The Schedule is also consistent with the case timeline required by the Debtors'

DIP Credit Agreement[3] and allows for confirmation of a plan before September 22, 2023.

12.    The Bidding Procedures proposed herein provide further opportunity to market the

Sale Package, receive and evaluate any additional Bids, and, if necessary, hold an Auction to

determine the highest or otherwise best bid.  The Bidding Procedures also provide the best path to

(a) garner additional interest in the Sale Package, (b) receive the highest recovery available for all

stakeholders, and (c) conduct a market check on the value of the proposed recoveries to holders of

claims and interests contemplated by the Recapitalization Transaction.

13.    The Bidding Procedures will allow the Debtors to continue their prepetition

Marketing Process and potentiality improve upon the Recapitalization Transaction while ensuring

that in all cases the Debtors emerge as quickly and as smoothly as possible.  The Debtors, therefore,

request that the Court approve the Bidding Procedures as set forth herein.

**Proposed Sale Process and Selection of Stalking Horse Bidder**

I.    **The Bidding Procedures**.

14.    The Bidding Procedures describe, among other things, the procedures for interested

parties to access due diligence, the manner in which bidders and Bids become "qualified", the

conduct of any auction, the selection and approval of a successful bidder or bidders and back-up

bidders, and the deadlines with respect to the foregoing.

---

[3]    Pursuant to the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "Interim DIP Order") [Docket No. 70], on June 7, 2023, the Debtors incurred postpetition debtor-in-possession financing (the "DIP Facility") under that certain senior secured superpriority debtor-in-possession credit agreement (the "DIP Credit Agreement") by and between the Debtors, the DIP Agent (as defined in the DIP Credit Agreement), and the lenders party thereto.

15.    The deadlines set forth in the Bidding Procedures were calculated to balance the need to provide adequate notice to parties in interest and Potential Purchasers with the need to run an expeditious and efficient sale process.  The Bidding Procedures are designed to generate the highest or otherwise best available recoveries to the Debtors' stakeholders by encouraging prospective bidders to submit competitive, value-maximizing Plan Sponsor Bids.  The Debtors believe that the Bidding Procedures and the timeline set forth therein are in the best interests of the Debtors' estates, will establish whether and to what extent any additional market for the Sale Package exists, and provide interested parties with sufficient opportunity to participate. Because the Bidding Procedures are attached as Exhibit 1 to the Order, they are not restated in their entirety herein.   Generally speaking, however, the Bidding Procedures establish the following, among other things:[4]

a.    **Public Announcement of Auction**.  As soon as reasonably practicable after entry of the Order, the Debtors shall cause a notice of the Auction, the Order, and the Bidding Procedures, substantially in the form attached to the Order as Exhibit 2 (the "Auction Notice"), to be served on the parties that receive notice of this Motion.  In addition, as soon as practicable after entry of the Order, the Debtors will post the Auction Notice on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/cyxtera and publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) and/or another national publication.

See Bid. Proc., at § II.

b.    **Potential Bidder Requirements**.  To participate in the bidding process each Potential Bidder must deliver or have previously delivered to the Debtors the following preliminary documentation:

1.    an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

---

[4]    This summary is provided in accordance with Local Rule 6004-2(b) and for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Bidding Procedures, the latter governs in all respects.

2. a statement of what portion of the New Equity Interests and/or the Assets that the Potential Bidder intends to acquire;

3. sufficient information that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of any portion, all, or substantially all of the New Equity Interests or the Assets, the adequacy of which must be acceptable to the Debtors, in consultation with the Consultation Parties;[5] and

4. a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid to the extent reasonably practicable.

*See* Bid. Proc., at § III.

c. **Qualified Bid Requirements**.  To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors an irrevocable offer to purchase some or all of the New Equity Interests and/or Assets (each, a "<u>Bid</u>") and shall meet the following criteria, among other things, on or prior to the Bid Deadline:

1. each Bid must clearly state (a) whether the bidder seeks to purchase some or all of the New Equity Interests or some or all of the Assets; and (b) if applicable, the liabilities and obligations to be assumed, including any debt and cure costs to be assumed;

2. each Bid must be accompanied by a cash deposit in the amount equal to ten percent of the aggregate purchase price of the Bid;

3. each Bid must (a) clearly set forth the purchase price to be paid for the New Equity Interests and/or some or all of the Assets (the "<u>Purchase Price</u>"), (b) identify separately the cash and non-cash components of the Purchase Price, (c) indicate the allocation of the Purchase Price among the Sale Package and related uses, if applicable; *provided* that, for the avoidance of doubt, such allocation shall not prejudice the rights of any party in interest to contest such allocation; and (d) describe its proposed post-emergence debt obligations and liquidity position for Reorganized Cyxtera, if applicable.  The Purchase Price should be a single point value in U.S. Dollars on a cash-free, debt-free basis.   Any Bid for substantially all of the New Equity Interests or Assets must also include a statement as to whether the Bid is conditioned on

---

[5]   The term "Consultation Parties" shall mean any official committee of unsecured creditors appointed in these chapter 11 cases (the "<u>Committee</u>") and the Ad Hoc Group.

purchasing all of such or whether the Qualified Bid should be viewed as separate Bid for one or more sets of such;

4. to the extent that the Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, the Bid must include committed financing, documented to the Debtors' satisfaction that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's obligations under the proposed Sale Transaction and other obligations under its Bid;

5. each Bid must include: (a) a chapter 11 plan and/or a draft purchase agreement along with copies that are marked to reflect any amendments and modifications; (b) a schedule of contracts and leases to be rejected to the extent applicable to the Bid, (c) a statement from the Acceptable Bidder specifying what, if any, other materials, conditions, due diligence, documents, exhibits, schedules, and/or ancillary materials are integral to such Bid or the Debtors' consideration thereof, (d), any other material documents integral to such Bid, and (e) a statement from the Acceptable Bidder that (i) it is prepared to enter into the Sale Transaction, no later than ten (10) business days after the conclusion of the Auction, subject to any necessary regulatory approvals, as specified by the Acceptable Bidder (or, if no Auction is held, the deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures (the "Bid Deadline")) and (ii) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best bid (the "Back-Up Bid")) until the consummation of the Sale Transaction;

6. each Bid must include a description of the Acceptable Bidder's intentions with respect to the relevant members of the Debtors' current management team and other employees, and a description of any contemplated incentive plan, to the extent applicable;

7. each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

8. the Acceptable Bidder must acknowledge in writing (a) that it has not engaged in any collusion with respect to any Bids or the Sale Transaction, specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and

(b) agree not to engage in any collusion with respect to any Bids, the Auction, or the Sale Transaction;

9. each Bid must state that in the event such Bid is chosen as the Back-Up Bid, it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction;

10. each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder if the Acceptable Bidder's Bid is the next highest or otherwise best bid;

11. each Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale Transaction, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the applicable purchase agreement and/or confirmation of the Plan, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible);

12. each Bid must state the Acceptable Bidder's expected Closing date;

13. the Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale, the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable; and

14. each Bid must identify with particularity each and every condition to Closing.

*See* Bid. Proc., at § IV.

d. **Stalking Horse Bid Protections**.  In the event that the Debtors receive multiple Qualified Bids, at any time until July 16, 2023, at 5:00 p.m. (prevailing Eastern Time), the Debtors shall be authorized, but not obligated, in an exercise of their reasonable business judgment, with the consent of the Ad Hoc Group, and in consultation with the Committee, to (a) select one or more Acceptable Bidders to act as the Stalking Horse Bidder in connection with the Auction, and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder, (x) provide a break-up fee (the "<u>Break Up Fee</u>")and (y) agree to reimburse the reasonable and

documented out of pocket fees and expenses of such Stalking Horse Bidder(s) (the "Expense Reimbursement"). *See* Bid. Proc., at § IX.

e.  **Modification of the Bid Procedures**.  A reservation of the rights of the Debtors to modify the Bidding Procedures in good faith, with the consent of the Ad Hoc Group, and in consultation with the Committee, to further the goal of attaining the highest or otherwise best offer, or impose, at or prior to the Auction, additional terms and conditions on the Sale Transaction.  The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidders.  *See* Bid. Proc., at § XVI.

16.  Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize value, and, as such, do not impair the Debtors' ability to consider all Qualified Bid proposals, whether for the purchase of some or all of the New Equity Interests or the Assets, and preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for their estates.  Moreover, the Debtors will provide information about the ongoing sale process and consult with the Consultation Parties, as applicable, to ensure that the Debtors' stakeholders are apprised of the status and determinations related to the Sale Transaction.

**II.  The Proposed Schedule.**

17.  The Debtors are seeking approval of the Bidding Procedures and the following proposed Schedule for the Marketing Process to establish a clear and open process for the solicitation, receipt, and evaluation of third-party bids on a timeline that allows the Debtors to consummate a Sale through a Plan.  The Debtors respectfully request that the Court approve the Schedule.

a. **The Schedule**.

| Action | Description | Deadline |
|---|---|---|
| Stalking Horse Deadline | The deadline by which the Debtors may choose a Stalking Horse Bidder | July 16, 2023, at 5:00 p.m. prevailing Eastern Time |
| Final Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures. | July 19, 2023, at 5:00 p.m. prevailing Eastern Time |
| Auction | The date and time of the Auction, if one is needed, which will be held at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York, 10022. | July 24, 2023, at 10:00 a.m. prevailing Eastern Time, if needed. |
| Notice of Successful Bidder | As soon as reasonably practicable after the conclusion of the Auction, the Debtors will file on the docket, but not serve, a notice identifying the Successful Bidder (as defined in the Bidding Procedures) (the "Notice of Successful Bidder"), identifying the applicable Successful Bidder, Assets, and key terms of the agreement. | As soon as reasonably practicable after the conclusion of the Auction (if necessary). |

18.    The timelines contemplated in the foregoing Schedule are essential for the Debtors' swift emergence from chapter 11 and preserving the value of the Debtors' estates. Accordingly, the Debtors believe the relief requested herein is in the best interest of the Debtors' estates, will provide interested parties with sufficient opportunity to participate, and, therefore, should be approved.

**III.    Form and Manner of Auction Notice.**

19.    The Auction, if needed, will be held on July 24, 2023, at 10:00 a.m. prevailing Eastern Time (or such other date as selected by the Debtors) at the offices of the Debtors' proposed co-counsel:  Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022.

20.    As soon as practicable after entry of the Order, the Debtors will cause the Auction Notice to be served on the parties that receive notice of this Motion.  In addition, as soon as practicable after entry of the Order, the Debtors will post the Auction Notice on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/cyxtera and publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in

*The New York Times* (National Edition) and/or another national publication to provide notice to any other potential interested parties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

21.    The Auction Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale Transaction, including the date, time, and place of the Auction (if any), the Bidding Procedures, and the dates and deadlines related thereto. Accordingly, the Debtors request that the form and manner of the Auction Notice be approved and no other or further notice of the Auction be required.

### Basis for Relief

**I.    The Relief Sought in the Order Is in the Best Interests of the Debtors' Estates and Should Be Approved**.

22.    "When conducting an asset sale, the ultimate responsibility of the debtor, and the primary focus of the bankruptcy court, is the maximization of the value of the assets sold."  John J. Jerome & Robert D. Drain, *Bankruptcy Court is Newest Arena for M&A Action*, N.Y.L.J., June 3, 1991; *see In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"); *In re Adams Res. Expl. Corp.*, No. 17-10866, 2017 WL 5493616, at *12 (Bankr. D. Del. May 24, 2017) ("The relief requested in the Sale Motion is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate and its creditors.").  In furtherance of that goal, bidding procedures and bid protections, such as those proposed here, may be used in court-supervised sales because they streamline the acquisition process, "help to provide an adequate basis by which to compare offers," and maximize value. Jerome & Drain (1991) at 8, col. 4; *see In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to

maximize value for the estate."); *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999) (recognizing that bid protections "encourage a prospective bidder to do the due diligence that is the prerequisite to any bid by assuring the prospective bidder that it will receive compensation for that undertaking if it is unsuccessful"); *In re Dura Automotive Sys., Inc.*, No. 06-11202, 2007 WL 7728109, at *90 (Bankr. D. Del. Aug. 15, 2007) (recognizing that bidding procedures "intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales"); *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures and bid protections "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Metaldyne Corp.,* 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("[b]idder protections are granted when a bidder provides a floor for bidding by expending resources to conduct due diligence and allowing its bid to be shopped around for a higher offer").    In overseeing a sale subject to an auction process, the bankruptcy court must weigh:

> on the one hand, providing for an orderly bidding process, recognizing the danger that absent such a fixed and fair process bidders may decline to participate in the auction; and, on the other hand, retaining the liberty to respond to differing circumstances so as to obtain the greatest return for the bankrupt estate.

*In re Fin. News Network, Inc.*, 980 F.2d 165, 166 (2d Cir. 1992).  Because the bankruptcy court must perform this balancing act, "a bankruptcy judge's broad discretionary power in conducting the sale of a debtor's assets should not be narrowed by technical rules mindlessly followed" that "reduce the broad discretion and flexibility a bankruptcy court must necessarily have to enhance the value of the estates before it." *Id.* at 169–70; *see Dura Automotive*, 2007 WL 7728109, at *90 ("The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.").

14

23.     Here, the Debtors submit that the Bidding Procedures are a valid exercise of their business judgment, fair and appropriate under the circumstances, consistent with procedures routinely approved by courts in this circuit and in the best interest of their estates.  Courts have consistently held that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.  *See, e.g.*, *In  re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [debtor] to show that a sound business purpose justifies such actions.'  If the [debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale.") (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *Schipper*, 933 F.2d at 515 (internal citations and quotations omitted) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see Integrated Res.*, 147 B.R. at 656 (applying business judgment rule to bidding procedures and incentives and noting that "[c]ourts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence").

24.     The Debtors believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will maximize the value of the Sale Package for the benefit of the Debtors' estates.  The proposed Bidding Procedures will allow the Debtors to conduct an Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who can demonstrate the ability consummate a Plan.  In particular, the Bidding Procedures contemplate an open and public marketing process with minimum barriers to entry and provide Potential Purchasers with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

25.     The Debtors respectfully submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings in bankruptcy proceedings, and are consistent with the controlling legal standard in the Third Circuit.  Accordingly, the Debtors request that the Court approve the Bidding Procedures as a valid exercise of the Debtors' business judgment.

**II.     The Stalking Horse Bid Protections Are Necessary and Appropriate and Should Be Approved**.

26.     In the event the Debtors seek to appoint a Stalking Horse Bidder, the Debtors seek authority to offer customary bid protections, including the Break Up Fee and Expense Reimbursement.  The use of a stalking horse in a public auction process for a sale in chapter 11 is a customary practice, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value."  *Off. Comm. of Unsecured Creditors v. Interforum Holding LLC*, No. 11-CV-219, 2011 WL 2671254, No. 11-219, *1 (E.D. Wis. July 7, 2011).

27.     Generally, bidding protections, such as breakup fees, are a normal and, in many cases, necessary component of significant sales under the Bankruptcy Code.  *See Integrated Res.*, 147 B.R. at 659–60 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets. . . . In fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be ***necessary*** to discharge [such] duties to maximize value.") (emphasis added).  As a result, courts routinely approve such bidding protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. *See In re Energy Future Holdings Corp.*, 904 F.3d 298 (3d Cir. 2018) (holding that "[T]he allowability of break-up fees . . . depends upon the requesting party's ability to show that the fees

[a]re actually necessary to preserve the value of the estate.") (internal quotations omitted) (alterations in original); *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010); *O'Brien*, 181 F.3d 527. The Debtors believe that the allowance of the Stalking Horse Bid Protections is in the best interests of the Debtors' estates and their creditors, as a Stalking Horse Bidder, if designated, will establish a floor for further bidding that may increase the consideration given in exchange for the New Equity Interests or the Assets for the benefit of the Debtors' estates.

28.     In the Third Circuit, bidding protections, such as those proposed here, are subject to the general standard used for administrative expenses under section 503 of the Bankruptcy Code. *Energy Future*, 904 F.3d at 313 (citing *O'Brien*, 181 F.3d at 535); *Reliant Energy*, 594 F.3d at 206 (holding that the general standard used for all administrative expenses applies to break-up fees). Thus, "the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Reliant Energy*, 594 F.3d at 206 (internal quotations omitted) (quoting *O'Brien*, 181 F.3d at 535).

29.     The Debtors propose to pay the Stalking Horse Bid Protections only in the event they determine, after good faith, arm's-length negotiations, with the consent of the Ad Hoc Group, and in consultation with the Committee, that designating a Stalking Horse Bidder would be necessary and beneficial for their estates. Courts in this district have routinely approved breakup fees and/or expense reimbursements offered to stalking horse bidders. *See, e.g.*, *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. April 25, 2023) [Docket No. 92] (approving bidding procedures and bidding protections, including expense reimbursement, breakup fees, "topping," termination, or other similar fees or payment.); *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. April 17, 2023) [Docket No. 72] (approving bidding

procedures and bidding protections including a breakup fee and/or expense reimbursement payable in connection with any stalking horse asset purchase agreement); *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Jan. 30, 2023) [Docket No. 441] (approving bidding procedures and bidding protections including a breakup fee and expense reimbursement payable to each stalking horse bidder); *In re Alliant Techs., L.L.C.*, No. 21-19748 (JKS) (Bankr. D.N.J. Jan. 21, 2022) [Docket No. 101] (approving bidding procedures and bidding protections including an expense reimbursement payable to the stalking horse bidder); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) [Docket No. 192] (approving bidding procedures and bidding protections including a breakup fee payable to the stalking horse bidder); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 13, 2020) [Docket No. 72] (same).

30.     Without the Stalking Horse Bid Protections, a potential bidder may elect not to participate in the process at all to the detriment of the Debtors' estates.  The Bidding Procedures do not require the payment of the Stalking Horse Bid Protections.  Rather, the Debtors have the option of paying or otherwise incurring such obligations in the event that offering such Stalking Horse Bid Protections is necessary to foster a competitive bidding process that will maximize the value of the Debtors' estates.  In that instance, the value created for the Debtors' estates will likely greatly outweigh the cost of any Stalking Horse Bid Protections.  In any case, granting the Debtors authority to offer the Stalking Horse Bid Protections sends a strong signal to the market that the Debtors are serious about running a competitive sale process to generate the best result for the Debtors and their estates.

31.     The Break Up Fee will not exceed three percent of any proposed purchase price. This is an amount that is well within market for transactions of this type, and which has been routinely approved by courts in this district.  *See, e.g.*, *In re Bed Bath & Beyond Inc.*, No. 23-13359

(VFP) (Bankr. D.N.J. April 25, 2023) [Docket No. 92] (approving stalking horse bid protections, including a break-up fee and expense reimbursement, not to exceed three percent of the proposed purchase price in the aggregate); *In re David's Bridal, LLC¸* No. 23-13131 (CMG) (Bankr. D.N.J. April 17, 2023) [Docket No. 72] (approving break-up fee of up to three percent of the proposed purchase price); *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Jan. 30, 2023) [Docket No. 441] (same); *In re RTW Retailwinds, Inc.*, No. 20-18445 (JKS) (Bankr. D.N.J. Aug. 8, 2020) [Docket No. 192] (same); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 13, 2020) [Docket No. 72] (same); *In re New England Motor Freight, Inc.*, No. 19-12809 (JKS) (Bankr. D.N.J. April 8, 2019) [Docket No. 427] (same); *In re Aceto Corp.*, No. 19-13448 (VFP) (Bankr. D.N.J. Mar. 19, 2019) [Docket No. 174] (approving breakup fee of up to two percent of the cash component of the proposed purchase price).

32.     Accordingly, for the reasons set forth above, the Debtors respectfully submit that the Court grant the Debtors the authority to incur and pay the Stalking Horse Bid Protections to the extent the Stalking Horse Bid Protections are necessary to preserve the value of the Debtors' estates.

**III.     The Form and Manner of Notice Should Be Approved**.

33.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to such a sale.

34.     As soon as reasonably practicable following entry of the Order, the Debtors will cause the Auction Notice to be served upon (a) the United States Attorney's Office for the District of New Jersey, (b) the Internal Revenue Service, (c) the Ad Hoc Group, (d) the Committee (e) the agents under each of the Debtors' prepetition secured credit facilities and counsel thereto; (f) the attorneys general for the states in which the Debtors operate, (g) any parties known or reasonably

believed to have expressed an interest in the Sale Package, (h) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the Debtors' assets, and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.

35.     The Debtors submit that the Auction Notice constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 and Local Rule 2002-1.  Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the notice of the Auction Notice.

**Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate**

36.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease ... is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  The Debtors request that the Court's order approving the Sale Transaction (the "Sale Order") be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

37.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure." 10 *Collier on Bankruptcy* 6004.10 (15th rev.

ed. 2006).  Furthermore, if an objection is filed and overruled, and the objecting party informs the

court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to

file such appeal.  *Id.*

38.    To maximize the value received for the Sale Package, the Debtors seek to close the

Sale Transaction as soon as possible after a hearing on confirmation of the Debtors' chapter 11

plan.  Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay period

under Bankruptcy Rules 6004(h) and 6006(d).

### Disclosures Under Local Rule 6004-1

39.    Local Rule 6004-1 requires, among other things, that a debtor include the "material

terms of the proposed sale" in a sale motion.  As set forth above, the Debtors and their professionals

have commenced an aggressive marketing of the Debtors' assets.  Nevertheless, the Debtors do

not, as yet, have a signed agreement.  Moreover, because the Debtors continue to negotiate with

parties in interest, they cannot, as yet, identify, with any reasonable specificity, the terms of the

sale of the New Equity Interests or Assets.  Accordingly, the Debtors are unable, at this time, to

make the disclosures required under Local Rule 6004-1.  In the event the Debtors secure one or

more Stalking Horse Bidder(s), the Debtors will file a Stalking Horse Agreement and commitment

agreement and make the requisite disclosures.

### Request of Waiver of Stay

40.    To the extent that the relief sought in the Motion constitutes a use of property under

section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under

Bankruptcy Rule 6004(h).  As explained herein, the relief requested in this Motion is immediately

necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.

## Waiver of Memorandum of Law

41.     The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

42.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the

rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection

or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a

proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy

Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief

sought herein, any payment made pursuant to the Court's order is not intended and should not be

construed as an admission as to the validity of any particular claim or a waiver of the Debtors'

rights to subsequently dispute such claim.

## **No Prior Request**

43.    No prior request for the relief sought in this Motion has been made to this Court or

any other court.

## **Notice**

44.    The Debtors will provide notice of this Motion to the following parties or their

respective counsel:  (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the

thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) Gibson,

Dunn & Crutcher LLP, as counsel to the Ad Hoc Group; (d) the agents under each of the Debtors'

prepetition secured credit facilities and counsel thereto; (e) the office of the attorney general for

each of the states in which the Debtors operate; (f) the United States Attorney's Office for the

District of New Jersey; (g) the Securities and Exchange Commission; (h) the Internal Revenue

Service; (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors

submit that, in light of the nature of the relief requested, no other or further notice need be given.


*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: June 15, 2023

/s/ Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice* pending)
Christopher Marcus, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      edward.sassower@kirkland.com
            christopher.marcus@kirkland.com
            derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

## **Exhibit A**

Proposed Order

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice* pending)
Christopher Marcus, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al* | Case No. 23-14853 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**ORDER (I) APPROVING THE
BIDDING PROCEDURES AND AUCTION, (II) APPROVING
STALKING HORSE BID PROTECTIONS, (III) SCHEDULING**

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/cyxtera.  The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

**BID DEADLINES AND AN AUCTION, (IV) APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, AND (V) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through and including

twelve (12), is **ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief |

Upon the *Motion For Entry of an Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing and approving the proposed marketing, auction, and bidding procedures attached hereto as **Exhibit 1** to the Order (the "Bidding Procedures"), by which the Debtors will solicit and select the highest or otherwise best offer(s) for the purchase of or investment in the equity interests (the "New Equity Interests") issued by reorganized Cyxtera Technologies, Inc., or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the effective date of a chapter 11 plan ("Reorganized Cyxtera") and/or some or all of the Debtors' assets (the "Assets", and collectively, with the New Equity Interests, the "Sale Package"), (b) establishing certain dates and deadlines related thereto and scheduling an auction, if any, (the "Auction"), (c) approving the manner of notice of the Auction, as may be necessary, and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

(Page | 4)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief |

and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court

having found that the relief requested in the Motion is in the best interests of the Debtors' estates,

their creditors, and other parties in interest; and this Court having found that the Debtors' notice

of the Motion was appropriate under the circumstances and no other notice need be provided; and

this Court having reviewed the Motion and having heard the statements in support of the relief

requested therein at a hearing before this Court (the "Hearing"); and this Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and upon all of the proceedings had before the Court and after due deliberation and

sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.        The Motion is **GRANTED** as set forth herein.

2.        The Debtors have articulated good and sufficient reasons for authorizing and

approving the Bidding Procedures, which are fair, reasonable, and appropriate under the

circumstances and designed to maximize the recovery on, and realizable value of the Debtors'

enterprise, including with respect to the proposed procedures for providing Bid Protections as

determined by the Debtors in an exercise of their business judgment in accordance with the

Bidding Procedures.

3.        The Debtors' proposed notice of the Motion and the Hearing was (i) appropriate

and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in

compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and

the Local Rules, and (iii) adequate and sufficient under the circumstances of these

chapter 11 cases, and no other or further notice is required.  A reasonable opportunity to object or

(Page | 5)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief |

be heard regarding the relief granted by this Order has been afforded to all interested persons and entities.

4.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled.

**I.      <u>Important Dates and Deadlines</u>**.

5.      **<u>Final Bid Deadline</u>**.  July 19, 2023, at 5:00 p.m. prevailing Eastern Time, is the deadline by which all Qualified Bids must be **<u>actually</u> <u>received</u>** by the parties specified in the Bidding Procedures.

6.      **<u>Stalking Horse Bidders and Bid Protections</u>**.  The Debtors, upon entry of this Order, shall be authorized, but are not obligated or directed, in an exercise of their reasonable business judgment, with the consent of the Ad Hoc Group, and in consultation with the Committee, to select one or more Stalking Horse Bidders with respect to some or all of the New Equity Interests and/or Assets by no later than July 16, 2023 at 5:00 p.m., prevailing Eastern Time, enter into a stalking horse agreement (the "<u>Stalking Horse Agreement</u>"), and subject to paragraphs 7 and 8, to provide such Stalking Horse Bidders with Bid Protections without further action or order by this Court.

7.      In the event that the Debtors, with the consent of the Ad Hoc Group, and in consultation with the Committee, enter into a Stalking Horse Agreement with one or more Stalking Horse Bidders, within two business days of entry, the Debtors shall file a notice and proposed form of order with the Court designating a Stalking Horse Bidder and authorizing entry into a Stalking Horse Agreement (the "<u>Stalking Horse Notice</u>") and serve the Stalking Horse Notice on the

(Page | 6)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief |

Stalking Horse Bidder, the Ad Hoc Group, the Committee, and the U.S. Trustee.  The Stalking Horse Notice shall: (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Stalking Horse Bid and what portion (if any) is cash; (iii) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (iv) specify any proposed Bid Protections (including the amount and calculation thereof); (v) specify whether the Stalking Horse Bid includes the New Equity Interests or the Assets (and which Assets); (vi) attach the Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (vii) set forth the deadline to object to the Stalking Horse Bidder designation and any Bid Protections.   If there are no objections to the Stalking Horse Notice within two business days of filing with the Court, (the "Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for further hearing.   If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

8.      Upon entry of an order that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement (the "Stalking Horse Order"), the Debtors, with the consent of the Ad Hoc Group, and in consultation with the Committee, are authorized, but not directed, to incur and pay (a) the Break Up Fee in an amount not to exceed three percent

(Page | 7)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief |

of the proposed Purchase Price and (b) the Expense Reimbursement to each Stalking Horse Bidder

subject to the terms of the Stalking Horse Agreement and the Stalking Horse Order.

9.     Except as otherwise set forth in the Bidding Procedures, no person or entity, other

than a Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fees,

"topping," termination, or other similar fee or payment, and by submitting a bid, such person or

entity is deemed to have waived their right to request or to file with this Court any request for

expense reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code

section 503(b) or otherwise.

10.     **Auction**.  The date and time of the Auction, if needed, is July 24, 2023, at

10:00 a.m. prevailing Eastern Time, which time may be extended by the Debtors in their sole

discretion, upon written notice with the Court.  The Auction will be held at the offices of co-

counsel to the Debtors:  Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022.

Only the Debtors, the Consultation Parties, the Qualified Bidders, the U.S. Trustee, and any other

parties as the Debtors may determine in their reasonable discretion, in each case, along with the

representatives and advisors, shall be entitled to participate in the Auction, and only Qualified

Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction;

*provided*, *however*, that any party in interest may attend the Auction.

11.     **Notice of Successful Bidder**.  As soon as reasonably practicable upon conclusion

of the Auction, the Debtors shall file a Notice of Successful Bidder.

(Page | 8)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief |

## II.    Auction, Bidding Procedures, Auction Notice, and Related Relief.

12.    The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures. Notwithstanding anything to the contrary, the Debtors, with the consent of the Ad Hoc Group and in consultation with the Committee, may modify the Bidding Procedures as necessary or appropriate to maximize value for their estates.

13.    Any deposit provided by a Stalking Horse Bidder or other Qualified Bidder shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement, the Bidding Procedures, or order of this Court, as applicable.

14.    The Auction Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.  As soon as reasonably practicable following the entry of this Order, the Debtors will cause the Auction Notice to be served upon (a) the office of the U.S. Trustee; (b) the Ad Hoc Group; (c) the Committee; (d) the United States Attorney's Office for the District of New Jersey, (e) the Internal Revenue Service, (f) the attorneys general in the states where the Debtors conduct their business operations, (g) any Qualified Bidders, and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors shall also post notice of the date, time, and place

(Page | 9)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief |

of the Auction on the website of the Debtors' proposed claims and noticing agent, Kurtzman

Carson Consultants LLC (the "Notice and Claims Agent"), at https://www.kccllc.net/cyxtera.

15.     Pursuant to Local Rule 6004-2:  (a) each bidder participating at the Auction shall

be required to confirm that it has not engaged in any bad faith or collusion with respect to the

bidding or the Sale Transaction, as set forth in the Bidding Procedures; (b) the Auction shall be

conducted openly and all parties in interest will be permitted to attend; (c) the bidding at the

Auction will be documented, recorded, or videotaped, and (d) the Court will consider whether to

confirm the results of the Auction and whether to approve the Sale Transaction by no later than

September 22, 2023.

### III.    **Miscellaneous**.

16.     Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any

rights, remedies or defenses that any party (including the Debtors, the Ad Hoc Group, any Stalking

Horse Bidder, if applicable, or any other prospective purchaser) has or may have under applicable

bankruptcy and non-bankruptcy law, under any indemnity agreements, or related agreements or

any letters of credit relating thereto, or any rights, remedies, or defenses of the Debtors with respect

thereto, including seeking Bankruptcy Court relief with regard to the Auction, the Bidding

Procedures, the Sale Transaction, and any related items (including, if necessary, to seek an

extension of the Bid Deadline).

17.     The Debtors may modify any of the dates and deadlines set forth herein in

consultation with the Consultation Parties, *provided* that the Debtors will serve notice (email from

counsel to the Debtors, Kirkland & Ellis LLP, to suffice) to any Qualified Bidder, Stalking Horse

(Page | 10)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief |

Bidder, the Ad Hoc Group, the Committee, and the U.S. Trustee, as applicable and appropriate, informing them of such modification. The Debtors, in consultation with the Consultation Parties, are further authorized, but not directed, to conduct multiple Sale Transactions and/or Auctions (as necessary) in substantial conformity with the Schedule and Bidding Procedures established through this Order.

18.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

19.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

20.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any

(Page | 11)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief |

other party in interest's, claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

21.     Nothing in the Motion, this Order or the Bidding Procedures waives or modifies the requirements of the Restructuring Support Agreement, including, without limitation, the consent and consultation rights contained therein.

22.     Notwithstanding anything to the contrary contained in the Motion or this Order, any payment to be made, obligation incurred, or relief or authorization granted hereunder shall not be inconsistent with, and shall be subject to and in compliance with, the requirements imposed on the Debtors under the terms of each interim and final order entered by the Court in respect of *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens*

(Page | 12)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief |

*and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 70] (the "DIP Orders"), including compliance with any budget or cash flow forecast in connection therewith and any other terms and conditions thereof.  Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the DIP Orders.

23.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

24.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

25.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

26.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived.

27.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit 1**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al*., | Case No. 23-14853 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**BIDDING PROCEDURES FOR THE
SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN
CONNECTION WITH THE SALE OF THE DEBTORS' SALE PACKAGE**

On June 4, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court").

The Debtors filed these chapter 11 cases after entering into a restructuring support agreement (the "Restructuring Support Agreement") [Docket No. 20, Ex. B] with the support of certain of the Debtors' lenders whose claims represent approximately 64 percent of the claims arising on account of obligations under that certain first lien credit agreement by and between Cyxtera DC Holdings, Inc., Cyxtera DC Parent Holdings, Inc., Cyxtera Communications, LLC, and Cyxtera Data Centers, Inc., the first lien lenders from time to time party thereto, and Citibank, N.A., as administrative agent and collateral agent (the claims thereunder, the "First Lien Claims"). The Restructuring Support Agreement contemplates two paths to a value-maximizing reorganization: (a) a standalone recapitalization of the Debtors' balance sheet (the "Recapitalization Transaction") and (b) the Sale Transaction (as defined herein). Specifically, the Restructuring Support Agreement contemplates that the Debtors will continue their Marketing Process, and if such process does not maximize value for the Debtors' stakeholders, pursue the Recapitalization Transaction. Accordingly, the Recapitalization Transaction serves as an alternative restructuring proposal, by which the lenders party to the Restructuring Support Agreement have agreed to, among other things, receive their pro rata share of New Equity Interests and a new second-out take-back debt facility on behalf of their First Lien Claims and convert the DIP Facility into a first-out take-back debt facility at exit.

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/cyxtera. The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is: 2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

On [___], 2023, the Court entered an order (the "Bidding Procedures Order"),[2] approving, among other things, these bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to solicit bids and conduct an auction (the "Auction") for the sale or disposition (collectively, the "Sale," and each, a "Sale Transaction") of all or substantially all of the New Equity Interests and/or the Assets.

> Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases are available upon request to Kurtzman Carson Consultants LLC by calling (877) 726-6510 (U.S. / Canada) or (424) 236-7250 (International) or visiting the Debtors' restructuring website at (https://www.kccllc.net/cyxtera).

## I.    Sale Package to be Auctioned.

The Debtors seek the highest or otherwise best offer(s) for the purchase of or investment in the equity interests (the "New Equity Interests") issued by reorganized Cyxtera Technologies, Inc., or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the effective date of a chapter 11 plan ("Reorganized Cyxtera") and/or some or all of the Debtors' assets (the "Assets", and collectively, with the New Equity Interests, the "Sale Package").

## II.    Public Announcement of Auction.

As soon as practicable after entry of the Bidding Procedures Order, the Debtors shall (i) cause a notice of the Auction, the Bidding Procedures Order, and the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Auction Notice") to be served on the parties that received notice of the Motion, (ii) post the Auction Notice on the website of the proposed claims and noticing agent at https://www.kccllc.net/cyxtera, and (iii) publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition), and/or another national publication to provide notice to any other potential interested parties. The Auction Notice shall include a general description of the contents of the Sale Package.

## III.    Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the Sale Package or part of the Sale Package (a "Potential Bidder") must deliver or have previously delivered to each of (i) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Christopher Marcus, P.C. (christopher.marcus@kirkland.com), Derek I. Hunter (derek.hunter@kirkland.com); (ii) the Debtors' proposed investment banker, Guggenheim Securities, LLC ("Guggenheim Securities"), 330 Madison Avenue, New York, New York, 10017, Attn: Ronen Bojmel

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the *Debtors' Motion For Entry of an Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. [__]] (the "Motion"), or the Bidding Procedures Order, as applicable.

(Ronen.Bojmel@guggenheimpartners.com),                Josh                Mendelsohn
(Josh.Mendelsohn@guggenheimpartners.com),                Andrew                Goodman
(Andrew.Goodman@guggenheimpartners.com); (iii) counsel to the Ad Hoc Group, Gibson, Dunn
& Crutcher LLP, 200 Park Ave, New York, NY 10166, Attn: Scott Greenberg
(sgreenberg@gibsondunn.com), Steven Domanowski (sdomanowski@gibsondunn.com) and
Stephen D. Silverman (ssilverman@gibsondunn.com); and (iv) counsel to any statutorily
appointed Committee (collectively, the "Notice Parties") the following preliminary documentation
(collectively, the "Preliminary Bid Documents"):

a.      an executed confidentiality agreement (a "Confidentiality Agreement") in form and
        substance acceptable to the Debtors;

b.      a statement of what portion of the New Equity Interests and/or the Assets that the
        Potential Bidder intends to acquire;

c.      sufficient information that the Potential Bidder has or can reasonably obtain the
        financial capacity to close a purchase of any portion, all, or substantially all of the
        New Equity Interests or the Assets, the adequacy of which must be acceptable to
        the Debtors, in consultation with the Consultation Parties; and

d.      a statement detailing whether the Potential Bidder is partnering with or otherwise
        working with any other interested party in connection with the potential submission
        of a joint Bid, the identity of any such party or parties, and a concise description of
        the nature of such partnership or joint Bid to the extent reasonably practicable.

Within four business days after a Potential Bidder delivers the Preliminary Bid Documents,
the Debtors will determine, in consultation with the Consultation Parties,[3] and notify each Potential
Bidder whether such Potential Bidder has submitted adequate documents so that such Potential
Bidder may proceed to conduct due diligence and submit a bid (such Potential Bidder,
an "Acceptable Bidder").  The Debtors shall promptly inform the Consultation Parties of any entity
that becomes an Acceptable Bidder.  For the avoidance of doubt, any party that has already
executed a Confidentiality Agreement and submitted a non-binding indication of interest prior to
the Petition Date and, in the judgment of the Debtors, has provided adequate forms of the
preliminary documentation requested above, shall automatically be deemed an Acceptable Bidder.

## IV.    Qualified Bid Requirements.

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the
Debtors and their advisors an irrevocable offer for the purchase of some or all of the New Equity
Interests and/or the Assets (each, a "Bid"), and shall meet the following criteria, in each case, on
or prior to the Bid Deadline (as defined below):

a.      **Purchased Sale Package and Assumed Liabilities**.  Each Bid must clearly state
        the following:  (a) whether the bidder seeks to purchase some or all of the New

---

[3]    The term "Consultation Parties" shall mean any official committee of unsecured creditors appointed in these
       chapter 11 cases (the "Committee") and the Ad Hoc Group.

Equity Interests or some or all of the Assets; and (b) if applicable, the liabilities and obligations to be assumed, including any debt and cure costs to be assumed.

b.    **Good Faith Deposit**.  Each Bid must be accompanied by a cash deposit in the amount equal to ten percent of the aggregate purchase price of the Bid, to be held in an escrow account to be identified and established by the Debtors (the "<u>Good Faith Deposit</u>"); *provided* that the DIP Agent and the Prepetition Priority/1L Administrative Agents (together, the "<u>Agents</u>") (as defined in the Interim DIP Order, or any final order related thereto) shall not be required to submit a Good Faith Deposit.  To the extent that a Bid is modified at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit so that it equals ten percent of the increased aggregate purchase price promptly and in no event later than one (1) business day following the conclusion of the Auction.

c.    **Purchase Price**.  Each Bid must (a) clearly set forth the purchase price to be paid for the New Equity Interests and/or some or all of the Assets (the "<u>Purchase Price</u>"), (b) identify separately the cash and non-cash components of the Purchase Price, (c) indicate the allocation of the Purchase Price among the Sale Package and related uses, if applicable; *provided* that, for the avoidance of doubt, such allocation shall not prejudice the rights of any party in interest to contest such allocation; and (d) describe its proposed post-emergence debt obligations and liquidity position for Reorganized Cyxtera, if applicable.  The Purchase Price should be a single point value in U.S. Dollars on a cash-free, debt-free basis.  Any Bid for substantially all of the New Equity Interests or Assets must also include a statement as to whether the Bid is conditioned on purchasing all of such or whether the Qualified Bid should be viewed as separate Bid for one or more sets of such.

d.    **Sources of Financing**.  To the extent that the Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, the Bid must include committed financing, documented to the Debtors' satisfaction that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's obligations under the proposed Sale Transaction and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

e.    **Same or Better Terms; Bid Documents**.  Each Bid must include duly executed and non-contingent, where applicable, transaction documents necessary to effectuate the transactions contemplated in the Bid (the "<u>Bid Documents</u>").  The Bid Documents shall include, at a minimum:  (a) a chapter 11 plan and/or a draft purchase agreement, the form of which will be provided to any Acceptable Bidder prior to the Bid Deadline (as defined herein), including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposes to effectuate the Sale, along with copies that are marked to reflect any amendments and modifications from the Plan or purchase

agreement provided, which amendments and modifications may not be materially more burdensome or otherwise inconsistent with these Bidding Procedures; (b) a schedule of contracts and leases to be rejected to the extent applicable to the Bid, (c) a statement from the Acceptable Bidder specifying what, if any, other materials, conditions, due diligence, documents, exhibits, schedules, and/or ancillary materials are integral to such Bid or the Debtors' consideration thereof, (d) any other material documents integral to such Bid, and (e) a statement from the Acceptable Bidder that (i) it is prepared to enter into the Sale Transaction, no later than ten (10) business days after the conclusion of the Auction, subject to any necessary regulatory approvals, as specified by the Acceptable Bidder (or, if no Auction is held, the deadline by which all binding Bids must be actually received pursuant to the Bidding Procedures (the "Bid Deadline")) and (ii) the Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best bid (the "Back-Up Bid")) until the consummation of the Sale Transaction.

f.     **No Fees**.  Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction, and by submitting its Bid(s) is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized, with the consultation of the Consultation Parties, to provide the Stalking Horse Bid Protections (defined below) to one or more Stalking Horse Bidders in accordance with these Bidding Procedures; *provided*, *further*, that nothing in these Bidding Procedures shall limit, alter or impair the rights of any party to payment and reimbursement of expenses that are set forth in the DIP Orders, and parties entitled to payment or reimbursement of expenses under the DIP Orders shall be entitled to payment or reimbursement of expenses incurred in connection with these Bidding Procedures and the matters contemplated hereby.

g.     **Employee Obligations**.  Each Bid must include a description of the Acceptable Bidder's intentions with respect to the relevant members of the Debtors' current management team and other employees, and a description of any contemplated incentive plan, to the extent applicable.

h.     **Contingencies; No Financing or Diligence Outs**.  The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects) and all diligence must be completed before the Bid Deadline.

i.     **Identity & Corporate Authority**.  Each Bid must (i) fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the New Equity Interests or the Assets), and the complete terms of any such participation, along with sufficient evidence that the

Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties, and (ii) include contract information for the specific person(s) and counsel whom the Debtors' advisors should contract regarding such Bid. A Bid must also fully disclose any business relationships, affiliations, or agreements with the Debtors, any known, potential, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, or equity security holder of the Debtors.

j.  **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the Acceptable Bidder:  (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed purchase agreement.

k.  **Authorization**.  Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

l.  **Joint Bids**.  The Debtors will be authorized to approve joint Bids in their reasonable business judgment on a case-by-case basis, so long as a joint bid meets the Qualified Bid requirements and the applicable bidders otherwise comply with these Bidding Procedures.

m.  **Adequate Assurance Information**.  Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors that such Acceptable Bidder (a) has the financial wherewithal and ability to consummate Sale Transaction (the "Closing"), and (b) can provide adequate assurance of future performance in connection with the proposed transaction.  The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.

n.  **Acknowledgement of Compliance with Bidding Procedures, Bidding Order, Bankruptcy Code, and Non-Bankruptcy Law**.  Each Bid must acknowledge its compliance in all respects with these Bidding Procedures, the Bidding Procedures Order, Bankruptcy Code and any applicable non-bankruptcy law.

o.  **No Collusion**.  The Acceptable Bidder must acknowledge in writing (a) that it has not engaged in any collusion with respect to any Bids or the Sale Transaction, specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (b) agree not to engage in any collusion with respect to any Bids,

6

the Auction, or the Sale Transaction.  For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (email from Guggenheim Securities shall suffice).

p.  **Good Faith Offer**.  Each Bid must constitute a good faith, *bona fide* offer to consummate the Sale Transaction.

q.  **Irrevocable**.  Each Bid must state that in the event such Bid is chosen as the Back-Up Bid (as defined below), it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction.

r.  **Back-Up Bid**.  Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder (as defined below) if the Acceptable Bidder's Bid is the next highest or otherwise best bid.

s.  **Regulatory Approvals and Covenants**.  Each Bid must set forth each regulatory and third-party approval required for the Acceptable Bidder to consummate the applicable Sale Transaction, if any, and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the applicable purchase agreement and/or confirmation of the Debtors' chapter 11 plan (the "Plan"), those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible).

t.  **Expected Closing Date**.  Each Bid must state the Acceptable Bidder's expected date of closing of the Sale Transaction.

u.  **Time Frame for Closing**.  A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtors.

v.  **Adherence to Bidding Procedures**.  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

w.  **Consent to Jurisdiction**.  The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale, the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable.

      x.    **Conditions to Closing**.  Each Bid must identify with particularity each and every condition to closing.

Only Bids fulfilling all of the preceding requirements contained in this section, or otherwise in the Debtors' reasonable business judgment, with the consultation of the Ad Hoc Group and the Committee, may be deemed to be "<u>Qualified Bids</u>," and only those parties submitting Qualified Bids may, in the Debtors' reasonable business judgment, be deemed to be "<u>Qualified Bidders</u>"; *provided* that, notwithstanding anything to the contrary herein, any Bid submitted by any of the Agents or their respective designees, shall be a Qualified Bid.

Neither the Debtors nor any of their advisors are making or have at any time made any warranties or representations of any kind or character, express or implied, with respect to the Sale Package, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Sale Package with governmental laws, the truth, accuracy, or completeness of any documents related to the Sale Package, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Sale Package.  All bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the New Equity Interests or the Assets, as applicable, except to the extent expressly provided in the Court's Sale Order.  Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Sale Package or relating thereto that the Debtors, any advisor, or agent representing or purporting to represent the Debtors to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtors only) specifically set forth in the Court's Sale Order.

In advance of the commencement of the Auction, as is reasonably practicable, the Debtors, with the consultation of the Consultation Parties, shall determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction.  Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided* that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors may provide the Acceptable Bidder with the opportunity to remedy any deficiencies prior to the Auction.

**V.**    **Right to Credit Bid.**

Any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates (a "<u>Secured Creditor</u>") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured.

**VI.**    **Obtaining Due Diligence Access.**

Only Acceptable Bidders shall be eligible to receive due diligence information, access to the Debtors' electronic data room, and additional non-public information regarding the Debtors.

***No Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement***.  Beginning on the date the Debtors determine that a party is an Acceptable Bidder, or as soon as reasonably practicable thereafter, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request.

Acceptable Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent of the Debtors.  The due diligence period will end on the Bid Deadline and subsequent to the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except an Acceptable Bidder or such Acceptable Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment have not established, or who have raised doubt, that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate a Sale Transaction.  For any bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

## A.    Communications with Acceptable Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Acceptable Bidders (including any Qualified Bidders) shall be through Guggenheim Securities.

## B.    Due Diligence from Acceptable Bidders (including Qualified Bidders).

Each Acceptable Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors and their respective advisors, regarding the ability of such Acceptable Bidder (including any Qualified Bidder) to consummate its contemplated transaction.  Failure by an Acceptable Bidder (including any Qualified Bidder, other than a Stalking Horse Bidder, if any) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, to determine that such bidder is no longer an Acceptable Bidder (including any Qualified Bidder, other than a Stalking Horse Bidder, if any) or that a bid made by such bidder is not a Qualified Bid.

The Debtors have designated Ronen Bojmel, Josh Mendelsohn, and Andrew Goodman of Guggenheim Securities to coordinate all reasonable requests for additional information and due diligence access. They can be reached at Ronen.Bojmel@guggenheimpartners.com; Josh.Mendelsohn@guggenheimpartners.com; and Andrew.Goodman@guggenheimpartners.com.

## VII. Bid Deadline.

Binding Bids must be submitted in writing to the aforementioned Notice Parties so as to be **actually received** no later than 5:00 p.m. (prevailing Eastern Time) on July 19, 2023.

The Debtors may extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment for all or certain Acceptable Bidders.

## VIII. Evaluation of Qualified Bids.

The Debtors shall, in consultation with the Ad Hoc Group, evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' business judgment, the highest or otherwise best Qualified Bid or combination of Qualified Bids for the New Equity Interests or the Assets, as applicable (the "Starting Bid"). The Debtors shall promptly provide to the Consultation Parties and the U.S. Trustee copies of all Bids received by the Debtors, including the Starting Bid, but in no event later than the next business day following receipt; *provided* that the Consultation Parties and the U.S. Trustee must treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtors and the applicable bidder.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors, in addition to any other factors that the Debtors deem appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; (d) whether the Qualified Bid contemplates a Sale Transaction for the Debtors' New Equity Interests or a Sale Transaction for the Assets; (e) whether the Qualified Bid contemplates a Sale Transaction that would be consummated through a Plan or a sale pursuant to section 363 of the Bankruptcy Code; (f) the certainty of a Qualified Bid leading to a confirmed Plan and (g) the tax consequences of such Qualified Bid. Prior to commencing the Auction, the Debtors shall notify the Stalking Horse Bidder, if any, and all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction with respect to the applicable assets. At such time, the Debtors shall also distribute copies of the Starting Bid to the Stalking Horse Bidder, if any, and each Qualified Bidder.

## IX. Stalking Horse Bid Protections.

Pursuant to the Bidding Procedures Order, the Debtors may, with the consent of the Ad Hoc Group, and in consultation with the Committee, designate one or more Bidders to be a stalking horse Bidder (each a "Stalking Horse Bidder"), which if any, are entitled to certain Stalking Horse Bid Protections (defined below) in the amounts set forth in, and in accordance with the terms of the Bidding Procedures Order. For the avoidance of doubt, except for the Stalking Horse Bidder,

and as otherwise set forth herein, no other party submitting an offer, a Bid, or a Qualified Bid shall be entitled to any Expense Reimbursement, Break Up Fee, termination fee, or similar fee or payment.

In the event that the Debtors receive multiple Qualified Bids, at any time until July 16, 2023, at 5:00 p.m. (prevailing Eastern Time), the Debtors shall be authorized, but not obligated, in their reasonable business judgment, with the consent of the Ad Hoc Group, and in consultation with the Committee, to (a) select one or more Acceptable Bidders to act as the Stalking Horse Bidder in connection with the Auction, and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder (x) agree to provide a Break Up Fee not to exceed three percent of the Purchase Price and (y) agree to reimburse the reasonable and documented out of pocket fees and expenses of such Stalking Horse Bidder(s) the ("Stalking Horse Bid Protections").

In the event that the Debtors enter into a stalking horse agreement (the "Stalking Horse Agreement") with one or more Stalking Horse Bidders, within two business days of entry, the Debtors shall file a notice and proposed form of order with the Court designating a Stalking Horse Bidder and authorizing entry into a Stalking Horse Agreement (the "Stalking Horse Notice") and serve the Stalking Horse Notice on the Stalking Horse Bidder, the U.S. Trustee, and the Consultation Parties.  The Stalking Horse Notice shall:  (i) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (ii) set forth the amount of the Bid submitted by the Stalking Horse Bidder and what portion (if any) is cash; (iii) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Bid submitted by the Stalking Horse Bidder; (iv) specify any proposed Stalking Horse Bid Protections (including the amount and calculation thereof); (v) specify whether the Bid submitted by the Stalking Horse Bidder includes the New Equity Interests or the Assets (and which Assets); (vi) attach the Stalking Horse Agreement, including all exhibits, schedules and attachments thereto; and (vii) set forth the deadline to object to the Stalking Horse Bidder designation and any Stalking Horse Bid Protections.  If there are no objections to the Stalking Horse Notice within two business days of filing with the Court, (the "Notice Period"), the Debtors  may submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement, without the need for further hearing. If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

Upon entry of an order that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse Agreement (the "Stalking Horse Order"), the Debtors are authorized, but not directed, to incur and pay (a) the Break Up Fee in an amount not to exceed three percent of the proposed Purchase Price and (b) the Expense Reimbursement to each Stalking Horse Bidder in accordance with the terms of such Stalking Horse Order and Stalking Horse Agreement.

Except as otherwise set forth herein, no person or entity, other than a Stalking Horse Bidder, shall be entitled to any Expense Reimbursement, Break Up Fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have

waived their right to request or to file with the Court any request for Expense Reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

**X.      No Qualified Bids.**

If any Bid is the only Qualified Bid received by the Bid Deadline, the Debtors may decide, in their reasonable business judgment, after consultation with the Consultation Parties, to designate such Bid as the Successful Bid (as defined below) as to the applicable Sale Package and pursue entry of an order approving a Sale Transaction with respect to such Sale Package. The Debtors shall promptly file notice of any cancellation of the Auction, where applicable, as the Successful Bid with the Court.

**XI.      Auction.**

Other than as expressly set forth herein, if the Debtors receive more than one Qualified Bid for any particular Asset or portion of Sale Package by the Bid Deadline, the Debtors shall conduct the Auction to determine the Successful Bidder in their reasonable business judgment with respect to such Sale Package or portion of Sale Package. If the Debtors do not receive any Qualified Bid, the Debtors will not conduct the Auction. If one or more Qualified Bids (other than the Bid submitted by the Stalking Horse Bidder, if any) are received by the Bid Deadline with respect to the New Equity Interests or the Assets, then the Debtors shall conduct the Auction with respect to such New Equity Interests or Assets in accordance with the Auction Procedures (as defined below).

An Auction, if necessary shall commence on July 24, at 10:00 a.m. (prevailing Eastern Time), or such later time or other place as the Debtors determine in consultation with the Consultation Parties.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

    a.      except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the Auction;

    b.      the Qualified Bidders, including any Stalking Horse Bidders, if any, must appear in person or through duly-authorized representatives at the Auction;

    c.      bidding shall begin with the Starting Bid;

    d.      subsequent bids (each, an "Overbid") may only be made at the Auction and shall be at least (i) a 2% increase in cash, cash equivalents, or other such consideration that the Debtors, in their reasonable business judgment, deem equivalent (including the right of a secured creditor to credit bid any remaining amount of its secured claims) over the previous bid *plus* (ii) in the event that the Debtors have entered into a Stalking Horse Agreement to which the Overbid relates, the aggregate amount of Stalking Horse Bid Protections (including, for the avoidance of doubt, any Break Up Fees and/or Expense Reimbursements) under such Stalking Horse Agreement (a "Minimum Overbid"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum

Overbid.   The Debtors may, in their reasonable business judgment and in consultation with the Ad Hoc Group, announce increases or reductions to the Minimum Overbid at any time during the Auction.  For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtors, in their reasonable business judgment deem equivalent (including the right of a secured creditor to credit bid any remaining amount of its secured claims) that exceeds the then existing highest Bid by at least the amount of the Minimum Overbid;

e.  at the commencement of the Auction, the Debtors may announce procedural and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s);

f.  each Qualified Bidder will be permitted a reasonable time to respond to previous bids at the Auction, as determined by the Debtors; *provided*, that, unless the Debtors determine otherwise, a failure to respond and submit successive bid(s) at the Auction will result in disqualification;

g.  during the course of the Auction, the Debtors shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous bids and inform each Qualified Bidder which Overbid(s) reflect, in the Debtors' view the highest or otherwise best bid(s) with respect to the New Equity Interests or the Assets, as applicable;

h.  the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

i.  each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction.  For the avoidance of doubt, (a) this requirements does not restrict Qualified Bidder(s) from working with other Qualified Bidder(s) with the Debtors' prior written consent;

j.  each Qualified Bidder will be required to confirm that its bid is a good faith, *bona fide* offer and it intends to consummate the Sale Transaction if selected as the Successful Bid in accordance with these Bidding Procedures (as may be modified in accordance herewith at the Auction);

k.  the Court and the Debtors will not consider bids made after the Auction has been closed;

l.  the Debtors, in their reasonable business judgment and in consultation with the Ad Hoc Group, may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale Transaction, or

(iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders;

m.   the Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction; and

n.   notwithstanding anything herein to the contrary at any time choose to adjourn the Auction by announcement at the Auction.  The Debtors shall promptly file notice of such adjournment with the Court.

For the avoidance of doubt, nothing in the Bidding Procedures, including the Auction Procedures, will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, in consultation with counsel).

Any Auction rules adopted by the Debtors will not modify any of the terms of the Stalking Horse Agreement or the rights of the Stalking Horse Bidder, if any, without the consent of the Stalking Horse Bidder, if any.

Except as otherwise determined by the Debtors only (i) the Debtors, (ii) the Consultation Parties, (iii) the Office of the United States Trustee, (iv) any other Qualified Bidders, and (v) the respective representatives and professionals of the foregoing parties shall be entitled to participate in the Auction, however, any party in interest may be permitted to attend the Auction.

## XII.   Acceptance of the Successful Bid.

The Auction shall continue until (i) there is only one Qualified Bid or a combination of Qualified Bids that the Debtors determine, in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, and in consultation with the Consultation Parties, is the highest or otherwise best bid to purchase the New Equity Interests or Assets, as applicable (each, a "Successful Bid"), and (ii) the Debtors determine, in their reasonable business judgment, in consultation with the Consultation Parties, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors, at which point, the Auction will be closed.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate:  (a) the amount and nature of the total consideration, which includes but is not limited to, assumed liabilities (administrative liabilities, cure payments), and the amount of executory contracts and leased locations being assumed; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; and (d) the tax consequences of such Qualified Bid; and (e) any other consideration that may impact the Debtors' stakeholders.

Any Qualified Bidder that submits a Successful Bid will be deemed a "<u>Successful Bidder</u>" with respect to the New Equity Interests or Assets contemplated for purchase pursuant to such Successful Bid.  The Debtors shall file notice of the Successful Bid and the Successful Bidder with the Court as soon as reasonably practicable after conclusion of the Auction.  Following conclusion of the Auction and selection of a Successful Bidder, the Debtors shall present the results of the Auction at a hearing and shall seek (a) certain findings from the Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the New Equity Interests or Assets, as applicable, and is in the best interests of the Debtors' estates, and (b) Court approval to enter into a binding purchase agreement with the Successful Bidder on the terms of the Successful Bid.

Within one (1) business day of the selection of the Successful Bidder, such Successful Bidder (including both the Stalking Horse Bidder, if any, and Back-Up Bidder, if applicable) shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price such that the Successful Bidder's total cash deposit is equal to ten percent of the aggregate purchase price, submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a customary and reasonable escrow agreement; *provided* that the Agents shall not be required to make any deposit.  Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XIII.  Designation of Back-Up Bidder.

The Back-Up Bid to purchase any applicable New Equity Interests or Assets (the "<u>Back-Up Bidder</u>") will be determined by the Debtors at the conclusion of the Auction, and will be announced at that time to all the Qualified Bidders participating in the Auction.  The Debtors' selection of a Back-Up Bid shall be deemed final and the Debtors shall not accept any further bids or offers to submit a bid after such selection.  The Debtors will be authorized, but not required, to consummate the Sale Transaction with the Back-Up Bidder without further order of the Court, so long as such Back-Up Bid shall have been approved in connection with the Court's approval of the Successful Bid, or subject to Court approval if not.

If for any reason a Successful Bidder fails to consummate the purchase of such New Equity Interests or Assets, as applicable, within the time permitted, then the Back-Up Bidder will automatically be deemed to have submitted the Successful Bid, and the Back-Up Bidder shall be deemed a Successful Bidder and shall be required to consummate any Sale Transaction with the Debtors as soon as is reasonably practicable without further order of the Court, upon 24 hours advance notice filed with the Court.  To the extent any objections are raised and remain unresolved, the Court may schedule a hearing on an expedited basis to adjudicate such objection.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (i) forty-five (45) days after completion of the Auction, (ii) consummation of a Sale Transaction with one or more Successful Bidders at an Auction, and (iii) the release of such Back-Up Bid by

the Debtors in writing (the "Back-Up Termination Date").  The Debtors shall return the Back-Up Bidder's deposit owed within five (5) business days of the Back-Up Termination Date.

## XIV.    Confirmation Hearing.

In the event a transaction is consummated through a Plan, a hearing before the Court to consider confirmation of the Plan (the "Confirmation Hearing") will be held at a date and time consistent with the any order approving the Debtors' disclosure statement and scheduling applicable dates and deadlines related thereto, including confirmation of the Plan. The Confirmation Hearing will be before the Honorable John K. Sherwood, United States Bankruptcy Judge for the Bankruptcy Court for the District of New Jersey at 50 Walnut Street, 3rd Floor, Newark, New Jersey 07102, and otherwise in accordance with any scheduling orders entered by the Court relating to confirmation of the Plan or approval of any disclosure statement related thereto.

At the Confirmation Hearing, the Debtors will present the Plan, which may incorporate the terms of the Successful Bid or Successful Bids, to the Court for confirmation.

## XV.    Return of Good Faith Deposit.

The Good Faith Deposit(s) of the Successful Bidder or Successful Bidders, if any, will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.

If the Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable), if any, fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or Back-Up Bids, if applicable), then the Good Faith Deposit(s) of such Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposits of any unsuccessful Qualified Bidders (except for any Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five business days after consummation of the applicable Sale Transaction or upon the permanent withdrawal of the applicable proposed Sale Transaction.

The Good Faith Deposit(s) of any Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five (5) business days of the Back-Up Termination Date.

The return of any Good Faith Deposits of any Stalking Horse Bidders will be subject to the terms of such Stalking Horse Bidders' Plan or purchase agreement, as applicable.  All such deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court.

## XVI.   Reservation of Rights.

The Debtors reserve their rights to modify these Bidding Procedures in good faith, with the consent of the Ad Hoc Group, and in consultation with the Committee, to further the goal of attaining the highest or otherwise best offer, or impose, at or prior to the Auction, additional terms and conditions on the Sale.  The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidders.  Notwithstanding anything to the contrary herein, the Debtors may elect to consummate the Sale under section 363(f) of the Bankruptcy Code as opposed to pursuant to the Plan with the Successful Bidder or Successful Bidders.

## XVII.   Consent to Jurisdiction.

All Qualified Bidders at the Auction will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale, the Sale Transaction(s) and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Transaction hearing, or the construction and enforcement of any agreement or any other document relating to the Sale any Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

## XVIII. Fiduciary Out.

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor to take any action or to refrain from taking any action related to any sale transaction or with respect to these Bidding Procedures, to the extent such Debtor, board of director, board of managers, or such similar governing body reasonably determines in good faith, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or the Bidding Procedures Order, through the date of the Auction (if held), nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to:  (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving New Equity Interests or the Assets (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity with respect to Alternative Proposals; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any

inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (e) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

**XIX.    DIP Orders & Restructuring Support Agreement.**

For the avoidance of doubt, nothing in these Bidding Procedures shall amend, modify or impair any provision of the DIP Orders or the Restructuring Support Agreement, or the rights of the DIP Agent, Consenting Stakeholders, or the Required Consenting Term Lenders (as defined in the Restructuring Support Agreement), as applicable.

## **Exhibit 2**

**Auction Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice* pending)
Christopher Marcus, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al.*, | Case No. 23-14853 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF SALE BY AUCTION AND SALE HEARING**

    **PLEASE TAKE NOTICE** that on [___], 2023, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Bidding Procedures and*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.kccllc.net/cyxtera. The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is: 2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

*Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. [___]] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of or investment in the equity interests (the "New Equity Interests") issued by reorganized Cyxtera Technologies, Inc., or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the effective date of a chapter 11 plan ("Reorganized Cyxtera") and/or some or all of the Debtors' assets (the "Assets", and collectively, with the New Equity Interests, the "Sale Package") consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order.  **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**.  To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all binding bids must be actually received pursuant to the Bidding Procedures is **July 16, 2023, at 5:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that if the Debtors receive qualified competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Assets **on July 24, 2023, at 10:00 a.m. (prevailing Eastern Time)** at the offices of co-counsel to the Debtors:  Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022.

**PLEASE TAKE FURTHER NOTICE** that only the Debtors, the Consultation Parties, the Qualified Bidders, the U.S. Trustee, and any other parties as the Debtors may determine in their reasonable discretion, in each case, along with the representatives and advisors, shall be entitled to participate in the Auction, and only Qualified Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction; *provided*, *however*, that any party in interest may attend the Auction.  **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**  Copies of the Bidding Procedures, the Bidding Procedures Order, and any other related documents are available upon request to Kurtzman Carson Consultants LLC by calling (877) 726-6510 (U.S. / Canada) or (424) 236-7250 (International) or visiting the Debtors' restructuring website at (https://www.kccllc.net/cyxtera).

---

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

Dated: [_____], 2023

/s/  *DRAFT*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice* pending)
Christopher Marcus, P.C. (*pro hac vice* pending)
Derek I. Hunter (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      edward.sassower@kirkland.com
            christopher.marcus@kirkland.com
            derek.hunter@kirkland.com

*Proposed Co-Counsel for Debtors and
Debtors in Possession*