**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al.*, | Case No. 23-14853 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER**
**AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY DELOITTE**
**TAX LLP AS TAX SERVICES PROVIDER EFFECTIVE AS OF THE PETITION DATE**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at https://www.kccllc.net/cyxtera.  The location of Debtor Cyxtera Technologies, Inc.'s
principal place of business and the Debtors' service address in these chapter 11 cases is:  2333 Ponce de Leon
Boulevard, Ste. 900, Coral Gables, Florida 33134.

TO THE HONORABLE JOHN K. SHERWOOD

UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this application (the "Application"):[2]

**Relief Requested**

1.      The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), authorizing the Debtors to retain and employ Deloitte Tax LLP

("Deloitte Tax") as their tax services provider in accordance with the terms and conditions set forth

in:  (i) that certain engagement letter, dated June 23, 2023, for certain tax advisory services relating

to the Debtors' restructuring, a copy of which is attached as Exhibit 1 to the Order

(the "Restructuring Services Engagement Letter"); and (ii) that certain engagement letter, dated

June 20, 2023, for certain tax advisory services relating to federal, foreign, state and local income

tax matters, a copy of which is attached as Exhibit 2 to the Order (the "Tax Consulting Engagement

Letter" and, together with the Restructuring Services Engagement Letter, the "Engagement

Agreements"), each of which is incorporated herein by reference.  In support of this Application,

the Debtors submit the *Declaration of Jeffrey van Gelder in Support of Debtors' Application for*

*Entry of an Order Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services*

*Provider Effective as of the Petition Date* (the "van Gelder Declaration"), which is attached hereto

as **Exhibit B** and incorporated herein by reference.

---

[2]     Capitalized terms used but not defined in this Application have the meanings ascribed to them in the First Day
Declaration (as defined herein).

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of
Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on
September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a
final order in connection with this Application to the extent that it is later determined that the
Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith
consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 327(a), 328(a), and 1107(b)
of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal
Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the
Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

## Background

5.      On June 4, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition
for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their
businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases and this
Application are set forth in greater detail in the *Declaration of Eric Koza, Chief Restructuring
Officer of Cyxtera Technologies, Inc., in Support of the Chapter 11 Petitions and First Day
Motions* (the "First Day Declaration") [Docket No. 20], which is incorporated herein by reference.

6.      The Debtors are operating their businesses and managing their properties as debtors
in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 6, 2023,
the Court entered an order [Docket No. 71] authorizing the joint administration and procedural
consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the

appointment of a trustee or examiner has been made in these chapter 11 cases. On June 21, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 133].

### Deloitte Tax's Qualifications

7.      Deloitte Tax is a tax services firm with offices across the United States. Deloitte Tax has significant experience performing tax advisory services and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States. Such experience renders Deloitte Tax well-qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases in a cost-effective, efficient, and timely manner.

8.      Deloitte Tax provides, and has provided, tax advisory services in numerous large chapter 11 cases, including: *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. June 30, 2023); *In re Blockfi, Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. June 21, 2023); *In re Pipeline Health Sys., LLC*, No. 22-90291 (Bankr. S.D. Tex. Feb. 2, 2023); *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Bankr. S.D.N.Y. Oct. 20, 2022); *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. Aug. 23, 2022).[3] Deloitte Tax's services fulfill an important need and are not provided by any of the Debtors' other professionals. Accordingly, Deloitte Tax is both well-qualified and able to provide the services for the Debtors during these chapter 11 cases in an efficient and timely manner.

9.      In addition, since approximately October 2020, Deloitte Tax has provided certain tax advisory services to the Debtors. In providing such postpetition professional services to the

---

[3]      Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request to the Debtors' counsel.

Debtors, Deloitte Tax has become familiar with the Debtors and their businesses, including the Debtors' financial affairs, operations, and related matters. Having worked with the Debtors' management, Deloitte Tax has developed relevant experience and knowledge regarding the Debtors' businesses to provide effective and efficient services during these chapter 11 cases. Accordingly, Deloitte Tax is both well-qualified and able to provide the aforementioned services for the Debtors in these chapter 11 cases in an efficient and timely manner.

10.    Absent the relief requested herein, the Debtors' ability to, among other things, thoroughly analyze the tax consequences of their restructuring during the pendency of these chapter 11 cases would be diminished. Additionally, finding a replacement for Deloitte Tax with similar experience would be expensive, time consuming, and would delay and disrupt the progress of these chapter 11 cases. Accordingly, Deloitte Tax is both well-qualified and able to advise the Debtors during these chapter 11 cases.

**<u>Scope of Services</u>**[4]

11.    Subject to the Court's approval, Deloitte Tax will provide tax advisory services for the Debtors in accordance with the terms and conditions set forth in the Engagement Agreements.

12.    Pursuant to the terms and conditions of the Restructuring Services Engagement Letter, Deloitte Tax has been engaged to provide certain tax advisory services related to debt discharge and other tax issues arising in connection with the Debtors' restructuring and chapter 11 bankruptcy filing. Specifically, as requested by the Debtors and agreed to by Deloitte Tax pursuant to the Restructuring Services Engagement Letter, Deloitte Tax will, among other things, advise the Debtors:

---

[4]    To the extent there are any inconsistencies between the descriptions of services set forth herein and the terms of the Engagement Agreements, the terms of the Engagement Agreements shall control.

a.      regarding their consultation with their counsel and financial advisors on the cash tax effects of restructuring alternatives, potential bankruptcy filings, and the post-restructuring tax profile.  This will include obtaining an understanding of the Debtors' financial advisors' valuation model and disclosure model to consider the tax assumptions contained therein;

b.      regarding the restructuring and/or bankruptcy emergence process from a tax perspective, including the tax work plan;

c.      on the cancellation of debt income for tax purposes under section 108 of the Internal Revenue Code ("IRC");

d.      with its efforts to calculate tax basis in the stock in each of the Debtors' subsidiaries, including controlled foreign corporations, or other entity interests;

e.      on post-restructuring or post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock, and net operating loss carryovers) available under the applicable tax regulations and the reduction of such attributes based on the Debtors operating projections, including a technical analysis of the effects of Treasury Regulation Section 1.1502-28 and the interplay with IRC sections 108 and 1017;

f.      on the effects of tax rules under IRC sections 382(l)(5) and (l)(6) pertaining to the post-bankruptcy net operating loss carryovers and limitations on their utilization, and the Debtors' ability to qualify for IRC section 382(l)(5);

g.      in determining whether or when an "ownership change" (as defined under IRC section 382) has occurred, as well as on net built-in gain or net built-in loss positions at the time of such ownership change, including limitations on use of tax losses generated from post-restructuring or post-bankruptcy asset or stock sales;

h.      as to the treatment of postpetition interest for state and federal income tax purposes including the applicability of interest limitations under IRC section 163(j);

i.      as to the state and federal income tax treatment of prepetition and postpetition reorganization costs, including restructuring-related professional fees and other costs, the categorization and analysis of such costs, and the technical positions related thereto;

j.      with its evaluation and modeling of the tax effects of liquidating, disposing of assets, merging or converting entities as part of the restructuring, including the effects on federal and state tax attributes, state incentives, apportionment and other tax planning;

6

k.  on state income tax treatment and planning for restructuring or bankruptcy provisions in various jurisdictions, including cancellation of indebtedness calculations, adjustments to tax attributes, and limitations on tax attribute utilization;

l.  on responding to tax notices and audits from various taxing authorities;

m.  with identifying potential tax refunds and advise the Debtors on procedures for tax refunds from tax authorities;

n.  on income tax return reporting of restructuring and/or bankruptcy issues and related matters;

o.  in documenting, as appropriate, the tax analysis, development of the Debtors' opinions, recommendation, observations, and correspondence for any proposed restructuring alternative tax issue or other tax matter described above; and

p.  regarding other state, federal, or international income tax questions that may arise in the course of this engagement, as requested by the Debtors, and as may be agreed to by Deloitte Tax.

13.     Pursuant to the terms and conditions of the Tax Consulting Engagement Letter, Deloitte Tax has been engaged to provide certain tax advisory services related to and including:

a.  federal, foreign, state and local income tax matters, as requested by the Debtors; and

b.  oral and written opinions, consulting, recommendations and other communications rendered in response to specific tax questions posed by the Debtors.

14.     The services are necessary to the Debtors' efforts to administer their chapter 11 cases.

## Professional Compensation

15.     Deloitte Tax's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangement, set forth in the Engagement Agreements.

16.     Pursuant to the terms of the Restructuring Services Engagement Letter, Deloitte Tax will charge the Debtors for its services based on the amount of professional time incurred at agreed-upon hourly rates, as set forth in the table below:

| Professional Level | Hourly Rates |
|---|---|
| Partner/Principal/Managing Director | $960 |
| Senior Manager | $815 |
| Manager | $700 |
| Senior Consultant/Sr. Staff | $545 |
| Consultant/Staff | $445 |

17.     Pursuant to the terms of the Tax Consulting Engagement Letter, Deloitte Tax will charge the Debtors for its services based on the amount of professional time incurred at agreed-upon hourly rates, as set forth in the table below:

| Professional Level | Hourly Rates |
|---|---|
| Partner/Managing Director | $750 |
| Senior Manager | $660 |
| Manager | $570 |
| Senior | $450 |
| Staff | $360 |

18.     In the ordinary course of business, Deloitte Tax revises its hourly rates to reflect changes in responsibilities, increased experience, geographic differentials, and increased costs of doing business.  Deloitte Tax shall advise the Debtors of any new rates should it institute a rate change during the chapter 11 cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

19.     In addition to the fees set forth above, reasonable and necessary expenses, including travel, and an allocation of estimated administrative and technology costs incurred (*e.g.*, report production, research materials, document delivery services, and other expenses) in providing Deloitte Tax's services, will be included in the total amount billed.

20.     Some services incidental to the tasks to be performed by Deloitte Tax in these chapter 11 cases may be performed by personnel now employed by or associated with affiliates of Deloitte Tax, such as Deloitte & Touche LLP ("Deloitte & Touche"), Deloitte Consulting LLP, Deloitte Financial Advisory Services LLP, and Deloitte Transactions and Business Analytics LLP, or their respective subsidiaries, including subsidiaries located outside of the United States.  For example, a portion of the services will be performed, at Deloitte Tax's direction, by its indirect subsidiary, Deloitte Tax India Private Limited ("Deloitte Tax India").  A specifically assigned team of personnel from Deloitte Tax India will assist in the services under the supervision, and with the input, of personnel of Deloitte Tax.  The hourly rates charged to clients by Deloitte Tax for services performed by Deloitte Tax India personnel are comparable to the market rates charged for similar services by Deloitte Tax, but do not directly correlate with the hourly rates attributed to such services by Deloitte Tax India.  The connections of Deloitte Tax India (along with the connections of Deloitte Tax and its other affiliates) to the potential parties in interest searched by Deloitte Tax are set forth in Schedule 2 to the van Gelder Declaration.

21.     Prior to the Petition Date, Deloitte Tax performed services for the Debtors.  In the ninety (90) days prior to the Petition Date, the Debtors did not make any payments to Deloitte Tax on account of invoices issued prior to such date.  As of the Petition Date, no amounts were outstanding with respect to the invoices issued by Deloitte Tax prior to such date.

22.     Deloitte & Touche performed services for the Debtors prior to the Petition Date.  In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte & Touche approximately $619,576 on account of invoices issued prior to such date.  As of the Petition Date, no amounts were outstanding with respect to the invoices issued by Deloitte & Touche prior to such date.

23.     Deloitte Tax has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in the van Gelder Declaration.  Deloitte Tax has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in these chapter 11 cases.

## Indemnification

24.     As part of the overall compensation payable to Deloitte Tax under the terms of the Engagement Agreements, the Debtors have agreed to the following indemnification obligations (together, the "Indemnification Provisions") under the Restructuring Services Engagement Letter and the Tax Consulting Engagement Letter, subject to modification by the Order:

> The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity.  In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

25.     The Engagement Agreements were negotiated by the Debtors and Deloitte Tax at arm's length and in good faith.  The Debtors believe that the Indemnification Provisions are appropriate and reasonable for the type of engagements covered by the Engagement Agreements, both out-of-court and in these chapter 11 cases, and are in the best interest of the Debtors, their estates, and their stakeholders.  Accordingly, the Debtors request that the Court approve the Indemnification Provisions, subject to the modifications in the proposed Order.

## Applications for Compensation

26.     Deloitte Tax intends to file interim and final fee applications to apply for compensation for professional services rendered and reimbursement of expenses incurred in

connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, applicable fee guidelines (collectively, the "Fee Guidelines") provided by the U.S. Trustee, and any other applicable procedures and orders of the Court, including any order approving this Application and consistent with the proposed compensation set forth in this Application and the Engagement Agreements.  Deloitte Tax has agreed to accept as compensation such sums as may be allowed by the Court and understands that interim and final fee awards are subject to approval by the Court.

27.    The Debtors request that Deloitte Tax be permitted to submit monthly invoices for services rendered and expenses incurred under each Engagement Agreement.  Such invoices will contain reasonable detail consistent with any rules, guidelines, and/or administrative orders promulgated by the Court that apply to these chapter 11 cases.  The Debtors request authority to pay such invoices, after appropriate review, in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders that would apply to interim payments.  All payments rendered pursuant to Deloitte Tax's retention by the Debtors must be approved by an order of this Court, and based upon the filing by Deloitte Tax of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

**No Duplication of Services**

28.    The Debtors do not believe that the services provided by Deloitte Tax will duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. The Debtors will coordinate with Deloitte Tax and the Debtors' other professionals to avoid duplication of services among the Debtors' professionals in these chapter 11 cases.

## Deloitte Tax's Disinterestedness

29.     As set forth in the van Gelder Declaration, to the best of the Debtors' knowledge, Deloitte Tax is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

30.     Further, to the best of the Debtors' knowledge, except as set forth in the van Gelder Declaration, (a) neither Deloitte Tax nor any partner, principal, or managing director of Deloitte Tax who is anticipated to provide the services for which Deloitte Tax is to be retained holds any interest adverse to the Debtors, (b) Deloitte Tax has no relationship to the Debtors, their significant creditors, certain other significant parties in interest, or to the attorneys whom are known to be assisting the Debtors in these chapter 11 cases, and (c) there is no connection between the personnel of Deloitte Tax or its affiliates who are anticipated to provide services to the Debtors and the United States Bankruptcy Judge presiding in these chapter 11 cases, the U.S. Trustee for Regions 3 and 9, the Assistant U.S. Trustee for the District of New Jersey, and the attorneys therefore assigned to these chapter 11 cases.

31.     As set forth in the van Gelder Declaration, if any new material facts or relationships are discovered or arise, Deloitte Tax will promptly file a supplemental disclosure with the Court.

## Basis for Relief

32.     The Debtors submit that the retention of Deloitte under the terms described herein is appropriate under sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code empowers a debtor in possession, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying out its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

33.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional

person "on any reasonable terms and conditions of employment, including on a retainer, on an

hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

Section 328 of the Bankruptcy Code permits the compensation of professionals, including

investment bankers and financial advisors, on more flexible terms that reflect the nature of their

services and market conditions.  *See e.g.*, *Donaldson Lufkin & Jenrette Secs. Corp. v. Nat'l

Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997); *In re Washington Mutual,

Inc.*, No. 08-12229, 2018 WL 704361, at *3 (Bankr. D. Del. Feb. 2, 2018).

34.     For the reasons set forth in the van Gelder Declaration, Deloitte Tax does not "hold

or represent an interest adverse to the estate."  Moreover, Deloitte Tax is a "disinterested person"

within the meaning of section 101(14) of the Bankruptcy Code.

35.     Bankruptcy Rule 2014(a) requires that an application for retention include the

following:

> [S]pecific facts showing the necessity for the employment, the name of the
> [firm] to be employed, the reasons for the selection, the professional
> services to be rendered, any proposed arrangement for compensation, and,
> to the best of the applicant's knowledge, all of the [firm's] connections with
> the debtor, creditors, any other party in interest, their respective attorneys
> and accountants, the United States trustee, or any person employed in the
> office of the United States trustee.

Fed. R. Bankr. P. 2014(a).  Additionally, Local Rule 2014-1 requires an entity seeking approval

of employment under section 327(a) of the Bankruptcy Code to file an application for retention, a

supporting certification of professional support, and a proposed order.  All of those requirements

have been satisfied by this Application, the van Gelder Declaration, and the Order attached hereto.

36.     Furthermore, section 1107(b) of the Bankruptcy Code provides that "a person is not

disqualified for employment under section 327 of this title by a debtor in possession solely because

of such person's employment by or representation of the debtor before the commencement of the

case." 11 U.S.C. § 1107(b).  Deloitte Tax's prepetition relationship with the Debtors therefore does not preclude Deloitte Tax's retention as the Debtors' postpetition tax services provider.

## Relief as of the Petition Date is Appropriate

37.      Finally, the Court also has discretion to issue an order approving the employment of an estate professional effective as of an earlier date.  *See, e.g.*, *In re Ark. Co.*, 798 F.2d 645, 648 (3d Cir. 1986) (collecting cases) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power."); *Fanelli v. Hensley (In re Triangle Chems., Inc.)*, 697 F.2d 1280, 1288-89 (5th Cir. 1983).  The Debtors believe that employment of Deloitte Tax effective as of the Petition Date is warranted to compensate Deloitte Tax for the professional services it has provided before this Application is heard by the Court.  Deloitte Tax has provided, and will continue to provide, valuable services to the Debtors in anticipation that its retention would be approved as of the Petition Date.  In tandem with these services, Deloitte Tax has been working diligently to undertake its connections checking processes, as detailed in the van Gelder Declaration in support of this Application.  To the best of the Debtors' knowledge, approval of this Application will not prejudice any parties in interest because, among other things, the services provided by Deloitte Tax will assist the Debtors in their restructuring efforts, as well as their compliance with their taxation requirements and other tax matters, which are necessary and in the best interest of the Debtors' estates, their creditor constituencies, and other parties in interest.

## No Prior Request

38.      No prior request for the relief sought in this Application has been made to this or any other court.

## <u>Notice</u>

39.      The Debtors will provide notice of this Application to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (c) Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc First Lien Group of the Debtors' prepetition term loan facilities; (d) the Committee; (e) the agents under each of the Debtors' prepetition secured credit facilities and counsel thereto; (f) the office of the attorney general for each of the states in which the Debtors operate; (g) the United States Attorney's Office for the District of New Jersey; (h) the Securities and Exchange Commission; (i) the Internal Revenue Service; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, in substantially the form submitted herewith, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated:  July 21, 2023

/s/  *Eric Koza*
Eric Koza
Chief Restructuring Officer
Cyxtera Technologies, Inc., *et al.*

## **Exhibit A**

## **Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al* | Case No. 23-14853 (JKS) |
| Debtors.[1] | (Jointly Administered) |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/cyxtera.  The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

**ORDER AUTHORIZING THE DEBTORS
TO RETAIN AND EMPLOY DELOITTE TAX LLP
<u>AS TAX SERVICES PROVIDER EFFECTIVE AS OF THE PETITION DATE</u>**

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED.**

(Page | 3)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of the Petition Date |

Upon the *Debtors' Application for Entry of an Order Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of the Petition Date* (the "Application"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") authorizing the Debtors to employ and retain Deloitte Tax LLP ("Deloitte Tax") as their tax services provider, effective as of the Petition Date, pursuant to sections 327(a), 328(a), and 1107(b) of title 11 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1 all as more fully described in the Application; and upon the van Gelder Declaration; and upon the First Day Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found, based on the representations made in the Application and the van Gelder Declaration, that (a) Deloitte Tax does not hold or represent an interest adverse to the Debtors' estates and (b) Deloitte Tax is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; and this Court having found that sufficient cause exists for the relief set forth herein; and this Court having found that the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and determined that the

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

(Page | 4)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of the Petition Date |

legal and factual bases set forth in the Application establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED**

**THAT**:

1.       The Application is **GRANTED** as set forth herein.

2.       The Debtors are authorized pursuant to sections 327(a) and 328(a) of the

Bankruptcy Code to retain and employ Deloitte Tax as tax services provider on the terms and

conditions set forth in the Engagement Agreements attached hereto as **Exhibit 1** and **Exhibit 2**,

respectively, to the extent set forth herein, effective as of the Petition Date.

3.       The terms and conditions of the Engagement Agreements, including without

limitation, the compensation structures, are reasonable and are hereby approved in all respects, as

modified by this Order.

4.       Deloitte Tax shall file interim and final fee applications for allowance of its

compensation and reimbursement of its expenses with respect to services rendered in these

chapter 11 cases with the Court, in accordance with sections 330 and 331 of the Bankruptcy Code,

the Bankruptcy Rules, the Local Rules, this Order, and any applicable orders of this Court.

5.       Deloitte Tax shall include in its fee applications, among other things,

contemporaneous time records setting forth a description of the services rendered by each

professional and the amount of time spent on each date by each such individual in rendering

services on behalf of the Debtors in one-tenth hour increments.  Notwithstanding anything to the

contrary contained in the Application, van Gelder Declaration, or the Engagement Agreements,

Deloitte Tax's interim and final applications for compensation and reimbursement of actual

(Page | 5)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of the Petition Date |

expenses shall be subject to review under the reasonableness standard in section 330 of the Bankruptcy Code.

6.     In the event that the rates of compensation for the services increase from the rates disclosed for services in the Application or the Engagement Agreements, Deloitte Tax will provide at least ten (10) business days' notice prior to the effective date of such increases to the Debtors, the U.S. Trustee, and the Committee, and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increases pursuant to section 330 of the Bankruptcy Code.

7.     Notwithstanding anything in the Engagement Agreements to the contrary, the respective Indemnification Provisions set forth in the Engagement Agreements are hereby approved, subject to the following modifications with respect to the services performed thereunder from the Petition Date through the effective date of any chapter 11 plan:

a.     neither Deloitte Tax nor any Deloitte Entity shall be entitled to indemnification pursuant to the Engagement Agreements for services, unless such services and the indemnification therefor are approved by this Court;

b.     notwithstanding subparagraph (a) above or any provisions of the Engagement Agreements to the contrary, the Debtors shall have no obligation to indemnify any Deloitte entity or Deloitte Tax for any claim or expense to the extent it is either:  (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from any Deloitte entity's or Deloitte Tax's gross negligence, willful misconduct, self-dealing, fraud, breach of fiduciary duty, or bad faith; (ii) for a contractual dispute in which the Debtors allege breach of any Deloitte entity's or Deloitte Tax's contractual obligations, unless this Court determines that indemnification would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) hereof to be a claim or expense for

(Page | 6)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of the Petition Date |

which a Deloitte entity or Deloitte Tax should not receive indemnity under the terms of the Engagement Agreements, as modified by this Order; and

c.    if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, any Deloitte entity believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification obligations under the Engagement Agreements, as modified by this Order, a Deloitte entity must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Deloitte entity before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request by the Deloitte entity for compensation and expenses by such Deloitte entity for indemnification and is not a provision limiting the duration of the Debtors' obligation to indemnify.

8.    Notwithstanding anything in the Engagement Agreements to the contrary, the Engagement Agreements are hereby approved, subject to the following modifications with respect to services performed under the Engagement Agreements after the Petition Date and prior to the effective date of any chapter 11 plan:

a.    the last sentence of paragraph 1(c) of the General Business Terms attached to each Engagement Agreement shall be deemed deleted and replaced with the following:

Nothing contained in these terms shall alter in any way the duties imposed by law on Deloitte Tax in respect of the Services provided under the Engagement Letter.  It is understood and agreed that Deloitte Tax is an independent contractor and that Deloitte Tax is not, and will not be considered to be, an agent, partner, or representative of the Client.  Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create an obligation on behalf of, or in the name of, the other.

b.    The second sentence of Section 3 of the General Business Terms to the Engagement Agreements shall be deemed deleted.

c.    Section 6 of the General Business Terms to the Engagement Agreements setting forth the limitation on liability shall be deemed deleted.

(Page | 7)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of the Petition Date |

      d.      Section 9 of the General Business Terms to the Engagement Agreements shall be deemed deleted.

9.      If Deloitte Tax seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and/or the Engagement Agreements, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Deloitte Tax's own applications, both interim and final, and such invoices and time records shall be in compliance with Local Rule 2016-1(f) and shall be subject to the U.S. Trustee guidelines and approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330 (a)(3)(C) of the Bankruptcy Code.

10.      Notwithstanding anything in the Application to the contrary, Deloitte Tax shall seek reimbursement from the Debtors' estates for its engagement-related expenses at Deloitte Tax's actual cost paid.

11.      If the Debtors and Deloitte Tax enter into any supplemental agreements, engagement agreements, or statements of work for additional services, the Debtors will file any such supplemental agreements, engagement agreements, or statements of work with the Court and serve the same upon the applicable notice parties.  Absent any objection filed within fourteen (14) days after the filing and service of any such supplemental agreement, engagement agreements, or statement of work, Deloitte Tax shall be deemed authorized and approved to provide and be compensated for such additional services pursuant to this Order and the terms of such supplemental agreement, engagement agreement, or statement of work.  If any parties object

(Page | 8)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of the Petition Date |

to such proposed supplemental agreement, engagement agreement, or statement of work, the Debtors will promptly schedule a hearing before the Court within ten (10) days of receipt of any such objection or as soon thereafter as is practicable.  Any additional services shall be subject to the provisions of this Order.

12.     Notwithstanding anything in the Application or the Engagement Agreements to the contrary, Deloitte Tax shall, to the extent that Deloitte Tax uses the services of third-party subcontractors, who are not a subsidiary of, or otherwise affiliated with, Deloitte Tax (collectively, the "Contractors") in these chapter 11 cases, Deloitte Tax shall (i) pass through the cost of such Contractors to the Debtors at the same rate that Deloitte Tax pays the Contractors, (ii) seek reimbursement for actual costs only, (iii) ensure that the Contractors are subject to the same conflict checks as required for Deloitte Tax, and (iv) file with the Court such disclosures required by Bankruptcy Rule 2014.

13.     Notwithstanding anything in the Application, the van Gelder Declaration, or the Engagement Agreements to the contrary, Deloitte Tax shall file a notice with the Court in the event that it has determined to suspend and/or terminate its services for the Debtors under the terms of the Engagement Agreements, as modified by this Order, ten (10) days prior to the effective date of such suspension or termination.

14.     Notwithstanding anything in the Application, the van Gelder Declaration, or the Engagement Agreements to the contrary, this Court shall have exclusive jurisdiction over Deloitte Tax's engagement hereunder with respect to services performed prior to the effective date of any plan of reorganization of the Debtors, unless such jurisdiction is relinquished.

(Page | 9)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of the Petition Date |

15.     Deloitte Tax shall coordinate with the Debtors to minimize unnecessary duplication of efforts regarding their services and those other professionals will be providing to the Debtors in these chapter 11 cases.

16.     Deloitte Tax will only bill 50 percent for non-working travel and shall not seek the reimbursement of any fees or costs, including attorney fees and costs, arising from the defense of any of Deloitte Tax's fee applications in these cases.

17.     Deloitte Tax will provide all monthly fee statements, interim fee applications, and its final fee application in "LEDES" or "Excel" format to the U.S. Trustee.

18.     To the extent that there may be any inconsistency between the terms of the Application, the van Gelder Declaration, the Engagement Agreements, and this Order, the terms of this Order shall govern.

19.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application, and the Local Rules are satisfied by such notice.

20.     The Debtors and Deloitte Tax are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit 1**

**Restructuring Services Engagement Letter**

# Deloitte.

**Deloitte Tax LLP**
600 Brickell Avenue
Suite 3700
Miami, FL, 33131-3090
USA
Tel: +1 305 372 3100
www.deloitte.com

June 23, 2023

Carlos Sagasta
Chief Financial Officer
Cyxtera Technologies, Inc.
2333 Ponce De Leon Blvd.
Suite 900
Coral Gables, FL 33134

Dear Mr. Sagasta:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to provide federal, state, and local income tax advisory services ("Services") to Cyxtera Technologies, Inc. and its subsidiaries and /or affiliates (taken together, "Client") in connection with its representation of Client, in each case in connection with Client's restructuring, which includes a Chapter 11 filing. This engagement letter ("Engagement Letter") describes the scope of the Services, the respective responsibilities of Deloitte Tax and Client, and the fees associated with such Services.

## SCOPE OF SERVICES

Client and Deloitte Tax agree that the terms of this Engagement Letter will apply to all Services to be provided by Deloitte Tax to Client during the period beginning May 23, 2023 through the later of (i) December 31, 2024, or (ii) if the Client commences a bankruptcy proceeding prior to December 31, 2024, the date Client emerges from bankruptcy, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and Client.

Deloitte Tax has agreed to perform the Services related to debt discharge and other tax issues arising in connection with Client's restructuring and Chapter 11 filing.  The Services may include the following as requested by Client and agreed to by Deloitte Tax:

(i)     Advise Client as it consults with its counsel and financial advisors on the cash tax effects of restructuring alternatives, potential bankruptcy filings, and the post-restructuring tax profile. This will include obtaining an understanding of Client's financial advisors' valuation model and disclosure model to consider the tax assumptions contained therein;

(ii)    Advise Client regarding the restructuring and/or bankruptcy emergence process from a tax perspective, including the tax work plan;

(iii)   Advise Client on the cancellation of debt income for tax purposes under Internal Revenue Code ("IRC") section 108;

(iv)    Advise Client with its efforts to calculate tax basis in the stock in each of Client's subsidiaries, including controlled foreign corporations ("CFCs"), or other entity interests;

(v)     Advise Client on post-restructuring or post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock, and net operating loss carryovers) available under the applicable tax regulations

Cyxtera Technologies, Inc.
June 23, 2023
Page 2

and the reduction of such attributes based on Client's operating projections, including a technical analysis of the effects of Treasury Regulation Section 1.1502-28 and the interplay with IRC sections 108 and 1017;

(vi)     Advise Client on the effects of tax rules under IRC sections 382(l)(5) and (l)(6) pertaining to the post-bankruptcy net operating loss carryovers and limitations on their utilization, and Client's ability to qualify for IRC section 382(l)(5);

(vii)    Advise Client in determining whether or when an "ownership change" (as defined under IRC section 382) has occurred, as well as on net built-in gain or net built-in loss positions at the time of such ownership change, including limitations on use of tax losses generated from post-restructuring or post-bankruptcy asset or stock sales;

(viii)   Advise Client as to the treatment of post-petition interest for state and federal income tax purposes including the applicability of interest limitations under IRC section 163(j);

(ix)     Advise Client as to the state and federal income tax treatment of pre-petition and post-petition reorganization costs, including restructuring-related professional fees and other costs, the categorization and analysis of such costs, and the technical positions related thereto;

(x)      Advise Client with its evaluation and modeling of the tax effects of liquidating, disposing of assets, merging or converting entities as part of the restructuring, including the effects on federal and state tax attributes, state incentives, apportionment and other tax planning;

(xi)     Advise Client on state income tax treatment and planning for restructuring or bankruptcy provisions in various jurisdictions, including cancellation of indebtedness calculations, adjustments to tax attributes, and limitations on tax attribute utilization;

(xii)    Advise Client on responding to tax notices and audits from various taxing authorities;

(xiii)   Assist Client with identifying potential tax refunds and advise Client on procedures for tax refunds from tax authorities;

(xiv)    Advise Client on income tax return reporting of restructuring and/or bankruptcy issues and related matters;

(xv)     Assist Client in documenting, as appropriate, the tax analysis, development of Client's opinions, recommendation, observations, and correspondence for any proposed restructuring alternative tax issue or other tax matter described above; and

(xvi)    Advise Client regarding other state, federal, or international income tax questions that may arise in the course of this engagement, as requested by Client, and as may be agreed to by Deloitte Tax.

From time-to-time additional Deloitte Tax services may be requested by Client, at which point, and to the extent agreed to by Deloitte Tax, an addendum ("Addendum") setting forth the scope of such services and the effective date of the performance thereof shall be executed as an addition to this Engagement Letter. The Addendum shall be executed by authorized representatives of Deloitte Tax and shall become a part of this Engagement Letter. In the event of any inconsistency in the terms set forth in this Engagement Letter and the attached General Business Terms and Privacy Notice, the terms of this Engagement Letter shall control.

Cyxtera Technologies, Inc.
June 23, 2023
Page 3

It is contemplated that the Services requested from Deloitte Tax may include oral and written opinions, consulting, recommendations and other communications rendered in response to specific tax questions posed by Client. Deloitte Tax's analysis and response to these tax questions may be based upon a review of various documentation including, but not limited to, legal opinions, books and records (collectively, "books and records") relevant to Client's transactions and business activity that Client provides to Deloitte Tax. With respect to such Services, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information and data provided by Client and its representatives. Deloitte Tax may ask Client to clarify or supplement information provided in this context.

TAX POSITIONS, POTENTIAL PENALTIES, TAXING AUTHORITY AUDITS

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with Client these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. Client should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to Client.

In addition, you should be aware that certain transactions have been designated as reportable transactions by the Internal Revenue Service ("IRS") and certain states. Participating in such reportable transactions requires certain additional tax return disclosures and failing to make such disclosures will result in the imposition of substantial penalties. The Services do not include any obligation by Deloitte Tax to identify transactions or to determine the applicability of reportable transaction disclosure requirements. As such, Deloitte Tax will not be responsible for any penalties resulting from Client's failure to make any reportable transaction disclosures. Client is responsible for ensuring that it has properly disclosed all reportable transactions; failure to make required disclosure will result in substantial penalties.

ACKNOWLEDGMENTS AND AGREEMENTS

The Services will be performed in accordance with the *Statement on Standards for Consulting Services* established by the American Institute of Certified Public Accountants ("AICPA"). Services to be performed by Deloitte Tax will be established by mutual agreement and can be changed or modified in the same manner. Deloitte Tax will promptly inform Client of any circumstances that warrant a change in the scope of the specific services to be provided, and similarly, Client agrees to notify Deloitte Tax promptly if modifications to the Services are requested.

Client acknowledges and agrees that the Services provided pursuant to this Engagement Letter will be based solely upon:

(a)  The representations, information, documents and other facts provided to Deloitte Tax by Client, its personnel and any representatives thereof;

(b)  Deloitte Tax's assumption that there will be timely execution, delivery and performance as may be required by any representation or documents submitted by Client with respect to the Deloitte Tax Services;

Cyxtera Technologies, Inc.
June 23, 2023
Page 4

(c)  Client's understanding that Client will maintain ultimate responsibility for all management decisions and management functions. Client understands and agrees that the ultimate responsibility, with respect to the appropriate application and interpretation of any oral or written communications, rests with management of Client. Deloitte Tax will not be held liable for any misinterpretations of oral or written communications regarding the application of tax advice;

(d)  Client's understanding that Deloitte Tax will only be responsible to provide tax advice with respect to the specific matter, transaction or question actually presented by Client, including the type of tax and the taxing jurisdiction specifically identified by Client (e.g., U.S. federal tax);

(e)  Client's understanding that any tax advice provided pursuant hereto will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time specific tax advice is provided. If there are subsequent changes in or to the foregoing tax authorities (for which Deloitte Tax shall have no specific responsibility to advise Client), Client acknowledges that such changes may result in that tax advice being rendered invalid or necessitate (upon Client's request) a reconsideration of that prior tax advice;

(f)  Client's understanding that the results of Deloitte Tax's tax advice may be audited and challenged by the IRS and other tax agencies, who may not agree with our positions. In this regard, Client understands that the result of any tax advice is not binding on the IRS, other tax agencies or the courts and should never be considered a representation, warranty, or guarantee that the IRS, other tax agencies or the courts will concur with our advice or opinion;

(g)  Client's understanding that the review of documents and tax returns under this Engagement Letter does not constitute an engagement to provide audit, compilation, review or attest services as described in the pronouncements on professional standards issued by the AICPA or the U.S. Public Company Accounting Oversight Board; and

(h)  Client's understanding that Deloitte Tax, as a result of providing such tax advice, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax may be available to represent Client before the appropriate administrative tax authorities, if permissible, for an additional fee that is mutually agreed upon and which is subject to a separate engagement letter.

Although Deloitte Tax might in certain circumstances provide Client with drafts of a deliverable before it is finalized, Client understands that Client may not rely upon any of the analysis, conclusions, or recommendations unless and until the final deliverable is issued. Any part of our analysis, including the recommendations or conclusions, may change between the time of any draft and the issuance of a final deliverable.

CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Engagement Letter, tax planning or preparation of tax returns, audited financial statements, or other

Cyxtera Technologies, Inc.
June 23, 2023
Page 5

financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

FEES AND EXPENSES

The Deloitte Tax fees for Services are based on the amount of professional time required and the below agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. Deloitte Tax will also bill reasonable out-of-pocket expenses. The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the taxing authorities, nor are those amounts contingent or refundable.

| | |
|---|---|
| Partner/Principal | $960 |
| Managing Director | $960 |
| Senior Manager | $815 |
| Manager | $700 |
| Sr. Consultant/Sr. Staff | $545 |
| Consultant/Staff | $445 |

In the normal course of business, Deloitte Tax revises its hourly rates to reflect changes in responsibilities, increased experience, geographical differentials, and increased costs of doing business. Changes in the foregoing agreed-upon hourly rates will be subject to Client's approval in advance and then noted on the invoices for the first time period in which the revised rates become effective.

Reasonable out-of-pocket expenses, including travel (with air travel based on coach fares), report production, delivery services, and other expenses incurred in providing the Services, are reflected as additional amounts on the bills.

In addition, in connection with the engagement, Deloitte Tax will be entitled to compensation for any time and actual reasonable out-of-pocket expenses including, without limitation, reasonable legal fees and expenses that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings relating to the Client, including, without limitation, those relating to Client but arising other than as a result of or in connection with this agreement.

During the Chapter 11 proceeding, Deloitte Tax expects to apply for compensation for professional services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under Bankruptcy Code § 330. In such event, payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court (as defined below). However, in the interim, Client will undertake commercially reasonable efforts to ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices to Client for prompt payment in accordance with the Local Rules or practices of the Bankruptcy Court regarding monthly payment of professional fees and expenses. Accordingly, Deloitte Tax will provide Client with an invoice on a periodic basis, with the invoice due and payable pursuant to the payment procedures adopted by the Bankruptcy Court in

Cyxtera Technologies, Inc.
June 23, 2023
Page 6

Client's Chapter 11 proceeding. If applicable, payment of these invoices will be made by Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court.

Client agrees to promptly seek the Bankruptcy Court's approval of this engagement and the Engagement Letter. The application, proposed order, and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects. In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising therefrom, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte Tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Engagement Letter, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before sixty (60) days from the filing date of Client's Chapter 11 petition on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court. In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this Engagement Letter, together with the General Business Terms and Privacy Notice attached hereto, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of New Jersey.

ACCEPTANCE

This Engagement Letter, including all exhibits and Work Orders, together with the General Business Terms attached hereto and thereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this overall contractual framework, supersedes all other oral and written representations, understandings or agreements relating to this framework, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the tax Services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact Miguel Fonseca at 305-372-3274 mifonseca@deloitte.com or Jeff van Gelder at 305-372-3221 jvangelder@deloitte.com.

Cyxtera Technologies, Inc.
June 23, 2023
Page 7

Very truly yours,

AGREED AND ACCEPTED

DELOITTE TAX LLP

Cyxtera Technologies, Inc. on behalf of itself and its
subsidiaries and affiliates

By: _____

By: _____
                *Carlos Sagasta*
                82C2ACD2F9DD408...

    Jeffrey van Gelder

    Carlos Sagasta

    Partner

Title: ___Chief Financial Officer___

Date: ___June 24, 2023___

Enclosures

cc: Miguel Fonseca, Deloitte Tax LLP

DELOITTE TAX LLP GENERAL BUSINESS TERMS

1.   **Contract and Parties.**

(a)  The engagement letter and any appendices and exhibits other than these General Business Terms ("Engagement Letter") issued by Deloitte Tax LLP ("Deloitte Tax") and addressed to the Client, a particular work order associated with such Engagement Letter ("Work Order"), if any, and these General Business Terms (together, the "Contract") constitute the whole agreement between the Client and Deloitte Tax in relation to the services, delivered work product (including Advice as defined below) described in the Contract to be provided by Deloitte Tax (the "Services") and Deloitte Tax's responsibilities for providing the Services. Capitalized terms not defined in these General Business Terms shall have the meaning given to them in the Engagement Letter.

(b)  This Contract is between the Client and Deloitte Tax. For the purposes of this Contract:

"Client" shall mean the entity specified in the Engagement Letter and shall include such of the Client's subsidiaries and/or affiliates as identified in the Engagement Letter and/or Work Order or, if none is identified, all of the Client's subsidiaries and affiliates. The signatory of the Engagement Letter represents and warrants that it has the power and authority to (i) sign the Contract, and (ii) to bind, itself and its subsidiaries and/or affiliates.

"Advice" shall mean all advice, opinions, reports and other work product in any form (including Deliverables) provided by or on behalf of Deloitte Tax and/or its Subcontractors as part of the Services.

"Content" means any publications, thought pieces or other content or materials that are provided by Deloitte Tax or through the Deloitte Technologies that are not an output of the Services.

"Deliverables" means any and all tangible work outputs of the Services to be delivered by Deloitte Tax as part of the Services, including written returns, reports, documents and other materials.

(c)  Deloitte Tax may subcontract any Services under this Contract to any other Deloitte Entity and/or to any other third party, in either case whether within or outside of the United States (collectively "Subcontractor"). Additionally, Deloitte Tax may utilize other Deloitte Entities and third parties (in either case whether within or outside the United States) to provide administrative, infrastructure, hosting, the use of cloud-based solutions and other support services to Deloitte Tax (including with respect to the Deloitte Technologies). The Client's relationship is solely with Deloitte Tax as the entity contracting to provide the Services. Each party to the Contract is an independent contractor and neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative.

(d)  Deloitte Tax remains responsible to the Client for all of the Services performed or to be performed under this Contract, including Services performed by its Subcontractors. Accordingly, to the fullest extent possible under applicable law (i) none of the Deloitte Entities (except Deloitte Tax) will have any liability to the Client; (ii) the Client will not bring any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities (except Deloitte Tax); and (iii) the Client will also ensure that no Client subsidiary or affiliate which is not a party to the Contract brings any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities.

(e)  "Deloitte Entities" means Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its member firms and their respective subsidiaries and affiliates (including Deloitte Tax), their predecessors, successors and assignees, and all partners, principals, members, owners, directors, employees, subcontractors (including the Subcontractors) and agents of all such entities. Neither DTTL nor, except as expressly provided herein, any member firm of DTTL, has any liability for each other's acts or omissions. Each member firm of DTTL is a separate and independent legal entity operating under the names "Deloitte", "Deloitte & Touche", "Deloitte Touche Tohmatsu" or other related names; and services are provided by member firms or their subsidiaries or affiliates and not by DTTL.

2.    Responsibilities of the Client and of Deloitte Tax.

(a)  Responsibilities of the Client

(i)    The Client shall cooperate with Deloitte Tax and its Subcontractors in connection with the performance of the Services, including, without limitation, providing Deloitte Tax and its Subcontractors with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and third parties retained by the Client, for the timeliness, accuracy and completeness of all data and information (including all financial information and statements) provided to Deloitte Tax and its Subcontractors by or on behalf of the Client and for the implementation of any Advice provided. Deloitte Tax and its Subcontractors may use and rely on information and data furnished by the Client or others without verification. The performance of the Services is dependent upon the timely performance of the Client's responsibilities under the Contract and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax and its Subcontractors shall be entitled to rely on all decisions and approvals of the Client.

(ii)    The Client shall be solely responsible for, among other things: (A) making all management decisions, performing all management functions and assuming all management responsibilities; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for implementing the results of the Services; and (E) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities. The provisions in the preceding sentence are not intended to and do not alter, modify or change in any manner the duties and obligations of Deloitte Tax as agreed to and set forth in this Contract. With respect to the data and information provided by the Client to Deloitte Tax or its Subcontractors for the performance of the Services, the Client shall have all rights required to provide such data and information and shall do so only in accordance with applicable law and with any procedures agreed upon in writing.

(b)  Responsibilities of Deloitte Tax

(i)    The Services provided are not binding on tax or other governmental or regulatory authorities or the courts and do not constitute a representation, warranty, or guarantee that the tax or other governmental or regulatory authorities or the courts will concur with any Advice. Any Services provided by or on behalf of Deloitte Tax will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time the specific Services are provided. Subsequent changes in or to the foregoing (for which Deloitte Tax shall have no responsibility to advise the Client) may result in the Services provided by or on behalf of Deloitte Tax being rendered invalid.

(ii)    Except as specifically agreed to in writing, Deloitte Tax shall not provide Advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law in relation to the Services.

(iii)  In formulating any Advice as part of the Services, Deloitte Tax may discuss ideas with the Client orally or show the Client drafts of such Advice. To the extent that the content of drafts or oral Advice are expected to be finalized and confirmed to the Client in writing, such confirmed Advice shall supersede any previous drafts or oral Advice and Deloitte Tax shall not be responsible if the Client or others choose to rely on, act or refrain from acting on the basis of any drafts or oral Advice.

(iv)  Deloitte Tax will use its reasonable endeavors, acting in a commercially prudent manner, to carry out the Services in accordance with any timetable specified in the Contract. However, it is agreed that any dates specified in the Contract for the performance of any part of the Services, including delivery of any Advice, are estimated dates for planning purposes only. Deloitte Tax will notify the Client promptly if it expects or encounters any significant delays which will materially affect achievement of any timetable for delivery of the Services.

(v)  Unless expressly agreed otherwise in writing, each item of Advice will be deemed accepted (and the Services or relevant part completed) when such Advice has been delivered in its final form and no material objection to the Advice or its content is notified by the Client to Deloitte Tax in writing within fourteen (14) days of delivery or when first use of the Advice is made by or on behalf of the Client, whichever occurs first.

3.    Payment.

Deloitte Tax's invoices are due and payable by the Client upon presentation, subject to any applicable Bankruptcy Court orders, rules or procedures.  If payment of an invoice is not received within sixty (60) days of the invoice date or such later date as the Bankruptcy Court permits payment under applicable orders, rules or procedures ("Due Date"), Deloitte Tax reserves the right to charge interest at the rate of (i) 1½% per month or, if higher, (ii) the rate mandated or allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its other rights or remedies, Deloitte Tax shall have the right to suspend or terminate the Services entirely or in part if payment is not received by the Due Date. The Client shall be responsible for all taxes, such as VAT, sales and use tax, gross receipts tax, withholding tax, and any similar tax, imposed on or in connection with the Services, other than Deloitte Tax's income and property taxes. If any portion of an invoice is disputed, the Client shall notify Deloitte Tax within fifteen (15) days of receipt of the disputed invoice and pay the undisputed portion of that invoice by the Due Date.

4.    Term.

(a)  This Contract or any Work Order hereunder, may be terminated in whole or in part by either party at any time, without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination.

(b)  Either party may terminate this Contract or any Work Order hereunder in whole or in part by written notice to the other on or at any time after the occurrence of a material breach by the other party of an obligation under the Contract or any respective Work Order hereunder and, if the breach is capable of remedy, the defaulting party failing to remedy the breach within 30 days of receipt of notice of such breach.

(c)  Deloitte Tax may terminate this Contract or any Work Order hereunder in whole or in part, with immediate effect upon written notice to the Client if Deloitte Tax determines that (i) a governmental, regulatory, or professional entity, or other entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the Contract illegal or otherwise unlawful or in conflict with independence or professional rules; or (ii) circumstances change (including, without limitation, changes in ownership of the Client or of its affiliates) so that Deloitte Tax's performance of any part of the Contract would be illegal or otherwise unlawful or in conflict with independence or professional rules.

(d)  Upon termination of the Contract or any Work Order hereunder for any reason, the Client will compensate Deloitte Tax in accordance with the terms of the Contract for the Services performed and expenses incurred through the effective date of termination.

(e)  Termination of any part of the Contract shall not affect the remainder of the Contract. These General Business Terms shall continue to apply to any Work Order in force that has not itself been terminated in accordance with the provisions of Paragraphs 4(a), (b) or (c).

5.   Ownership of Deloitte Property & Work Products.

(a)  To the extent that any property (whether tangible or intangible) of any Deloitte Entity is used or developed in connection with this Contract, such property, including work papers, shall remain the property of the relevant Deloitte Entity. Subject to payment of all of Deloitte Tax's fees due in connection with the Services and this Contract, the Client shall obtain a perpetual, royalty-free, non-exclusive, non-transferable license to use any Advice for the purpose set out in the Contract (or in the Advice) and in compliance with the provisions of this Contract. Deloitte Tax shall have ownership (including, without limitation, copyright and other intellectual property ownership) of the Advice and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall ensure that it and its subsidiaries and/or affiliates do not assert or cause to be asserted against any Deloitte Entity any prohibition or restraint from so doing. Any intellectual property and other proprietary rights in the material and data provided by the Client for performing the Services shall remain the property of the Client.

(b)  Deloitte Tax and its Subcontractors, in connection with performing the Services, may develop or acquire general experience, skills, knowledge and ideas. Any Deloitte Entity may use and disclose such experience, skills, knowledge and ideas subject to the obligations of confidentiality set out in Paragraph 10.

(c)  The Client shall also be entitled to have access to and use of those Deloitte Technologies supplied solely for the purposes of receiving the Services, and for no other purposes, in accordance with and subject to the provisions of the terms of use and licenses that may be applicable to such Deloitte Technologies as notified by Deloitte Tax and agreed by the Client (acting reasonably). Client shall be responsible for all personnel (including other third parties, such as advisors) that Client and Deloitte Tax have agreed shall have access to the Deloitte Technologies in connection with the Services. As between the Client and Deloitte Tax, and for the benefit of the respective Deloitte Entity owning the Deloitte Technologies, Deloitte Tax and/or the respective Deloitte Entity will own and retain ownership of all intellectual property rights and other proprietary rights of any kind in the Deloitte Technologies that are used or developed in connection with this Contract.

(d)  To the extent any Deloitte Technologies provided to Client hereunder constitute inventory within the meaning of section 471 of the Internal Revenue Code, such Deloitte Technologies are licensed to Client by Deloitte Tax as agent for Deloitte Tax Products Company LLC on the terms and conditions contained herein. The rights granted in this Paragraph 5 do not apply to any intellectual property that is subject to a separate mutually executed license agreement between Client and any third party (including Deloitte Tax's affiliates).

(e)  "Deloitte Technologies" means all know-how and software, system interfaces, templates, methodologies, ideas, concepts, techniques, tools, processes, Content and technologies, including cloud-based technologies and algorithms owned by, licensed to or developed by any Deloitte Entity and used by Deloitte Tax and its Subcontractors in performing the Services or its other obligations.

6.   **Limitations on Damages.**

(a)   Neither party shall be liable to the other party for any claims, liabilities, losses, damages, costs or expenses arising under or in connection with the Contract ("Claims") for an aggregate amount in excess of the fees paid under the Contract, or the fees paid under a particular Work Order for Claims arising under such Work Order, by the Client to Deloitte Tax, for that part of the Services giving rise to the Claim, except to the extent it is finally determined to have resulted primarily from the Gross Negligence, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, any Deloitte Entity or any Subcontractor retained for providing the Services to the Client. For purposes of this Contract and these terms, "Gross Negligence" shall mean conduct that evinces a reckless disregard for the rights of other or smacks of intentional wrongdoing.

(b)   In no event shall any Deloitte Entity (including Deloitte Tax and its Subcontractors) be liable whether in contract, tort or otherwise for any losses incurred as a result of loss of use, contracts, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense arising under or in connection with the Contract.

(c)   In circumstances where all or any portion of the provisions of this Paragraph 6 are finally determined to be unavailable, the aggregate liability of Deloitte Tax, any other Deloitte Entity (including Subcontractors) and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(d)   Deloitte Tax's responsibility for the Services is solely toward the Client identified in the Contract or Advice to be entitled to rely on the Services, and not toward any other subsidiary or affiliate of the Client. If more than one Client subsidiary or affiliate is a party to the Contract or is identified in the Contract, Deloitte Tax's responsibility is solely toward the Client for whose benefit the Services were provided.

(e)   The liability cap in Paragraph 6(a) applies in aggregate to each and all Claims which from time to time arise under or in connection with the Contract and the Services, whether such Claims are made at the same or different times or by the Client entity and/or other persons. The liability cap in Paragraph 6(a) also applies to any and all Claims against any other Deloitte Entities, including the Subcontractors, if and only to the extent that it is judicially determined that any of them have any liability under or in connection with the Contract or the Services.

(f)   If the liability exclusion for other Deloitte Entities provided in Paragraph 1(d) is for any reason not effective, then the limitations on liability provided for in this Paragraph 6 shall apply to the other Deloitte Entities (including Subcontractors) as if they were named therein.

(g)   The provisions of Paragraph 6 shall not apply to any (i) liability which by the governing law of the Contract is unlawful to limit or exclude or (ii) for any Claim for which one party has an express obligation to indemnify the other party.

7.   **Limitation on Warranties.**

THIS IS A SERVICES AGREEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE AND SKILL. TO THE FULLEST EXTENT PERMITTED BY LAW, DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

8.  Force Majeure.

Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), fire or other casualty, act of God, epidemic, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9.  Limitation on Actions.

No action, regardless of form, relating to the Contract or the Services, may be brought by either party more than two years after the cause of action has accrued under applicable law, except that an action for non-payment of Deloitte Tax's invoices by the Client may be brought at any time.

10. Confidentiality.

(a)  To the extent that, in connection with the Contract, Deloitte Tax comes into possession of any tax or other information related to the Services, trade secrets or other proprietary information relating to the Client which is either designated by the disclosing party as confidential or is by its nature clearly confidential ("Confidential Information"), Deloitte Tax shall not disclose such Confidential Information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such Confidential Information (i) to contractors providing administrative, infrastructure, hosting, cloud-based solutions and other support services to Deloitte Tax as well as to any Deloitte Entity (including any Subcontractors) and their respective personnel, in any case, whether located within or outside of the United States, provided that such contractors and Subcontractors adhere to confidentiality obligations similar to those in this Paragraph 10; (ii) to Client's legal advisors, auditors, and insurers; and (iii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with potential or actual mediation, arbitration or litigation. To the extent permitted by applicable law or regulation, Deloitte Tax shall provide the Client with prompt written notice of disclosures required by law, regulation, judicial or administrative process. The obligation of confidentiality shall not apply to the extent such Confidential Information (A) is or becomes publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a breach by Deloitte Tax; (B) becomes available to any Deloitte Entity on a non-confidential basis from a source other than the Client which Deloitte Tax reasonably believes is not prohibited from disclosing such Confidential Information to Deloitte Tax by an obligation of confidentiality to the Client; (C) is known by any Deloitte Entity prior to its receipt from the Client without any obligation of confidentiality; or (D) is developed by any Deloitte Entity independently of Confidential Information disclosed by the Client.

(b)  The Client shall not disclose to any third party any Advice without the express written consent of Deloitte Tax, except (i) disclosure may be made to the extent mandatory laws, applicable regulations, rules and professional obligations prohibit limitations on disclosure; (ii) if the Client or its affiliates have securities registered with the United States Securities and Exchange Commission and any Deloitte Entity is the auditor of the Client or any of its affiliates, in which case no restrictions or limitations are placed by Deloitte Tax on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Contract and the Client acknowledges that none of its other advisors has imposed or will impose restrictions or limitations with such tax treatment or tax structure; (iii) to the extent the United States Internal Revenue Code and applicable Internal Revenue Service guidance relating to confidential tax shelters (or comparable law or guidance from other taxing authorities in other jurisdictions) apply, in which case there are no restrictions or limitations on the disclosure of the tax treatment or tax structure; (iv) to the extent legislation or regulations of any jurisdiction provide for the reporting to the tax authorities of certain tax arrangements or

transactions, there shall be no restrictions or limitations on the disclosure of any such arrangements or transactions provided as part of the Advice; (v) the Client may disclose the Advice on a need to know basis to any affiliate that is not a member of the Client for information purposes only, provided that the Client ensures and the recipient undertakes to keep such Advice confidential and not to bring any claim of any kind against any Deloitte Entity in relation to the Advice or the Services; and (vi) on a need to know basis to statutory auditors of the Client in their capacity as such.

(c)  The Client shall use the Advice, solely for the purposes specified in the Contract or Advice and, without limitation, shall not, without the prior written consent of Deloitte Tax, use any Advice, in connection with any business decisions of any third party or for advertisement purposes. All Services are intended only for the benefit of the Client identified in the Contract or Advice as being entitled to rely on the Advice. The mere receipt of any Advice (or any information derived therefrom) by any other persons is not intended to create any duty of care, professional relationship or any present or future liability of any kind between those persons and Deloitte Tax.

## 11.  Assignment.

Neither party may assign or otherwise transfer this Contract without the prior express written consent of the other. Neither party will directly or indirectly agree to assign or transfer to a third party any Claim against the other party arising out of this Contract.

## 12.  Indemnification.

(a)  The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(b)  Deloitte Tax shall indemnify, defend, and hold harmless Client and its personnel from all Claims attributable to claims of third parties solely for bodily injury, death, or physical damage to real or tangible personal property, to the extent directly and proximately caused by the negligence or intentional misconduct of Deloitte Tax while engaged in the performance of the Services.

(c )  Deloitte Tax shall indemnify, defend, and hold harmless Client and its personnel from all Claims attributable to claims of third parties for infringement by a Deliverable of any U.S. patent existing at the time of delivery and known to Deloitte Tax or copyright or any unauthorized use of any trade secret, except to the extent that such infringement or unauthorized use arises from, or could have been avoided except for (i) modification of the Deliverable other than by Deloitte Tax or its subcontractors, or use thereof in a manner not contemplated by the Work Order, (ii) the failure of the indemnified party to use any corrections or modifications made available by Deloitte Tax, (iii) information, materials, instructions, specifications, requirements, or designs provided by or on behalf of the indemnified party, or (iv) the use of the Deliverable in combination with any platform, product, network, or data not provided by Deloitte Tax.  If Client's use of any such Deliverable, or any portion thereof, is or is likely to be enjoined by order of a court of competent jurisdiction as such an infringement or unauthorized use, Deloitte Tax, at its option and expense, shall have the right to (x) procure for Client the continued use of such Deliverable, (y) replace such Deliverable with a non-infringing Deliverable, or (z) modify such Deliverable so it becomes non-infringing; provided that, if (y) or (z) is the option chosen by Deloitte Tax, the replacement or modified Deliverable is capable of performing substantially the same function.  In the event Deloitte Tax cannot reasonably procure, replace, or modify such Deliverable in accordance with the immediately preceding sentence, Deloitte Tax may require Client to cease use of such Deliverable and refund the professional fees paid

to Deloitte Tax with respect to the Services giving rise to such Deliverable. The foregoing provisions of this paragraph constitute the sole and exclusive remedy of the indemnified parties, and the sole and exclusive obligation of Deloitte Tax, relating to a claim that any of Deloitte Tax's Deliverables infringes any patent, copyright, or other intellectual property right of a third party.

### 13.  Electronic Communications.

(a)   Except as instructed otherwise in writing, Deloitte Entities and the Client are authorized to receive properly addressed fax, e-mail (including e-mails exchanged via Internet media) and voicemail communication for both sensitive and non-sensitive documents and other communications concerning this Contract, as well as other means of communication used or accepted by the other. Deloitte Entities may also communicate electronically with tax and other authorities.

(b) It is recognized that the internet is inherently insecure and that data can become corrupted, communications are not always delivered promptly (or at all) and that other methods of communication may be appropriate. Electronic communications are also prone to contamination by viruses. Each party will be responsible for protecting its own systems and interests and, to the fullest extent permitted by law, will not be responsible to the other on any basis (contract, tort or otherwise) for any loss, damage or omission in any way arising from the use of the internet or from access by any Deloitte Entity personnel to networks, applications, electronic data or other systems of the Client.

### 14.  Other Clients.

Nothing in this Contract will prevent or restrict any Deloitte Entity, including Deloitte Tax, from providing services to other clients (including services which are the same or similar to the Services) or using or sharing for any purpose any knowledge, experience or skills used in, gained or arising from performing the Services subject to the obligations of confidentiality set out in Paragraph 10 even if those other clients' interests are in competition with the Client. Also, to the extent that Deloitte Tax possesses information obtained under an obligation of confidentiality to another client or other third party, Deloitte Tax is not obliged to disclose it to the Client, or use it for the benefit of the Client, however relevant it may be to the Services.

### 15.  Staff.

Deloitte Tax and the Client each agree not to directly or indirectly solicit, employ or engage any personnel of the other party who within six (6) months of such action has been involved directly with the provision of the Services or otherwise directly connected with this Contract, except where an individual responds directly to a general recruitment campaign.

### 16.  Destruction of Working Papers.

Deloitte Tax may retain copies of documents and files provided by the Client in connection with the Services for purposes of compliance with professional standards and internal retention policies. Any documents and files retained by Deloitte Tax on completion of the Services subject to the obligations of confidentiality set forth in Paragraph 10(a) (including documents legally belonging to the Client) may routinely be destroyed in accordance with Deloitte Entities' policies applying from time to time.

### 17.  Marketing Material & Use of Name.

Neither the Deloitte Entities nor the Client shall use the other's name, trademarks, service marks, logos, and/or branding in external publicity material without such other party's prior written consent.

18.  Spreadsheets, Models and Tools.

In the course of providing the Services, Deloitte Tax may make reference to spreadsheets, models or tools (together "Models") that the Client provides to Deloitte Tax or requests Deloitte Tax to rely upon ("Client Models") or that Deloitte Tax otherwise uses in connection with the Services ("Deloitte Models"). All Models have limitations and may not produce valid results for all possible combinations of input data with the result that actual and potential errors are not detected. Unless otherwise expressly agreed in the Contract: (i) Deloitte Tax will not be responsible for reviewing, testing or detecting any errors in any Client Models; (ii) no Deloitte Model will be provided or treated as Advice; and (iii) where Deloitte Tax provides any Deloitte Model by way of explanation or illustration of any Advice, Deloitte Tax makes no representation, warranty or undertaking (express or implied) of any kind about the accuracy, suitability or adequacy of any such Deloitte Model for the Client's own needs.

19.  Data Protection.

(a)  Each party shall comply with its respective obligations under the applicable data protection laws to the extent that, in connection with the Contract and the Services, a party stores, processes and transfers any personal data to which data protection laws apply ("Personal Data").

(b)  The Client confirms that it has obtained all legally required authorizations to disclose and/or transfer any Personal Data to Deloitte Tax and its Subcontractors, including across borders and outside the territory of the European Economic Area ("EEA").

(c)  Deloitte Tax may collect data from the Client, other Deloitte Entities, third parties and the data subject directly. Deloitte Tax may for purposes of the collection, use, storage or processing thereof, transfer the Client's and/or the data subject's Personal Data to: (i) administrative contractors, including providers of cloud-based solutions; (ii) another country for legitimate purposes; (iii) another Deloitte Entity.

(d)  To the extent that Deloitte Tax processes Personal Data in or transferred from the EEA in its performance of the Services and to the extent that the EU General Data Protection Regulation 2016/679 ("GDPR") applies, the remainder of the provisions of this Paragraph 19 shall apply.

(e)  In this Paragraph 19, "Data Protection Legislation" means GDPR, together with all other applicable legislation relating to privacy or data protection including any statute or statutory provision which amends, extends, consolidates or replaces the same. The terms "personal data," "data subject," "controller," "processor" and "process" (and its derivatives) shall have the meanings given to them in the Data Protection Legislation.

(f)  The parties acknowledge that certain of the Services may be performed by Deloitte Tax acting as a controller and certain Services may be performed by Deloitte Tax acting as a processor. The Contract shall identify whether it is the understanding of the parties that Deloitte Tax carries out the particular Services as a controller or a processor. In the absence of any such indication, the capacity in which Deloitte Tax acts shall be determined in accordance with the Data Protection Legislation. When acting as a controller, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.1 shall apply. When acting as a processor, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.2 shall apply. Where Deloitte Tax acts as a processor, the Contract shall set out the scope of the processing carried out by Deloitte Tax in relation to the Services.

**19.1 If Deloitte Tax Is Acting As Data Controller**

(a)  Each of the Client and Deloitte Tax shall be considered to be a controller in respect of Personal Data disclosed to Deloitte Tax by or on behalf of the Client and processed in connection with the Contract and the Services and each of the Client and Deloitte Tax shall comply with its obligations as a controller under the Data Protection Legislation in respect of Personal Data processed by it in connection with the Contract and the Services.

(b)  The Client acknowledges that Deloitte Tax may process Personal Data as a controller for the purpose of, or in connection with the Services to comply with: (i) applicable legal, professional or regulatory requirements; (ii) requests and communications from competent authorities as permitted by law; and (iii) administrative, financial accounting, risk analysis, client relationship and other reasonable business purposes.

(c)  The Client shall collect any necessary permission, provide any necessary notice and do all such other things as are required under the Data Protection Legislation in order for it to disclose Personal Data to Deloitte Tax for the purposes described in Paragraph 19.1(b) and such other purposes as may be described in the Contract.

(d)  Deloitte Tax shall process the Personal Data as reasonably required to provide the Services, meet its legal or regulatory obligations or for its other reasonable business purposes (including quality control and administration) and may disclose Personal Data to any third parties including its Subcontractors, regulators and any party based in any jurisdiction including a jurisdiction outside the EEA provided that such disclosure is reasonably required in connection with such purposes and is at all times in compliance with the Data Protection Legislation that applies to Deloitte Tax in its performance of the Services.

**19.2 If Deloitte Tax Is Acting As Data Processor**

(a)  Where Deloitte Tax may process Personal Data as a processor Deloitte Tax shall: (i) only process Personal Data: (A) to the extent necessary to provide the Services; (B) in accordance with the specific reasonable instructions of the Client (except to the extent, in the reasonable opinion of Deloitte Tax, such instructions infringe the Data Protection Legislation or other applicable law, in which case Deloitte Tax shall notify the Client); or (C) as required by any competent authority or law that applies to Deloitte Tax in its performance of the Services; (ii) implement appropriate technical and organizational measures designed to provide a level of security appropriate to the risk relating to its processing of the Personal Data and any security measures specified in the Contract; (iii) keep, and require that its personnel and agents keep, Personal Data confidential in accordance with Deloitte Tax's confidentiality obligations contained in Paragraph 10(a); (iv) notify the Client in writing without undue delay, and provide reasonable cooperation after becoming aware of a personal data breach (that is, a breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data processed by Deloitte Tax) relating to Personal Data in Deloitte Tax's possession or control; (v) provide reasonable cooperation and assistance to the Client in relation to any request by a data subject to have access to Personal Data held about them or in relation to a reasonable request, allegation or complaint by a competent authority or data subject, including notifying the Client in writing without undue delay of receipt of any such request (except to the extent prevented from doing so by applicable law); (vi) be entitled to recover any reasonable costs incurred in complying with Paragraph 19.2(a)(v) above, or as result of assisting the Client in meeting its obligations under the Data Protection Legislation; (vii) subject to applicable legal, professional or regulatory requirements or business practices, at the reasonable request of the Client, delete or return all Personal Data to the Client on termination or expiry of the Contract and in such circumstance the provisions of Paragraph 19.1 apply.

(b)  To the extent required by Data Protection Legislation applicable to Deloitte Tax in its performance of the Services, Deloitte Tax shall maintain a record of its processing activities and provide such cooperation and information to the Client as is reasonably necessary for the Client to demonstrate compliance with its obligations

pursuant to Data Protection Legislation. Such cooperation shall include permitting the Client, at the Client's sole cost and expense, to audit Deloitte Tax's compliance with this Paragraph 19.2 provided that (unless expressly required otherwise by any competent authority): (i) reasonable notice of not less than thirty (30) days is given of any proposed audit and the parties shall, acting reasonably, agree to the scope and parameters of any such audit; (ii) to the extent the audit scope is covered in any audit carried out for Deloitte Tax by an independent third party auditor within twelve (12) months prior to the Client's audit request and there have been no material changes to the controls audited, Deloitte Tax may share the report to the extent relevant to the Client and the disclosure of such report shall be deemed to satisfy the audit request made by the Client; (iii) where, acting reasonably, a specific audit is still required by the Client, such audit shall be conducted during regular business hours, subject to Deloitte Tax's policies and confidentiality requirements and may not unreasonably interfere with Deloitte Tax's business activities; (iv) the audit shall be subject to Deloitte Tax's duties of confidentiality owed to any of its clients, personnel or other parties; and (v) the rights granted in this Paragraph 19.2(b) may not be conducted more than once in any calendar year.

(c) The Client authorizes Deloitte Tax to use any Subcontractor, including any Deloitte Entity, to process Personal Data as a subprocessor of Deloitte Tax provided that Deloitte Tax shall (i) procure that such processing is subject to a written contract or other legal act with such subprocessor containing data protection obligations no less onerous than those set out in this Paragraph 19.2; and (ii) remain liable for the acts and omissions of any such subprocessor with respect to the processing of Personal Data to the same extent Deloitte Tax would be liable if it had caused such acts or omissions. Deloitte Tax's material subprocessors who have been engaged to perform Services for Client, if any, are listed in the Contract.

(d) Deloitte Tax shall be entitled to (i) transfer Personal Data to, and (ii) process Personal Data in, any jurisdiction including a jurisdiction outside the EEA, including to any Subcontractor, provided that such transfer is either permissible or legitimized by a valid transfer mechanism under Data Protection Legislation or as otherwise permitted under the Contract.

## 20. Anti-corruption and Sanctions.

(a) Deloitte Tax understands that the Client may be subject to laws that prohibit bribery and/or providing anything of value to government officials with the intent to influence that person's actions in respect of the Client. Deloitte Tax may be subject to similar laws and codes of professional conduct and has its own internal policies and procedures which prohibit illegal or unethical behaviors. In providing the Services, Deloitte Tax undertakes not to offer, promise or give financial or other advantage to another person with the intention of inducing a person to perform improperly or to reward improper behavior for the benefit of the Client, in each case, in violation of applicable law.

(b) Each party shall comply with all economic sanctions, export control, and import laws and regulations applicable to it in (or having an impact on) providing and receiving the Services under this Contract. The parties recognize that such laws and regulations restrict the export and reexport of the Services and Deliverables to jurisdictions subject to territorial economic sanctions (currently, e.g., Russia).

## 21. Disclosure Laws.

The Deloitte Entities may be obligated to notify relevant authorities of certain types of arrangements and of proposals to implement such arrangements. The decision to make such a notification, its timing and content, is a matter that the Deloitte Entities reserve entirely to their sole discretion. The Deloitte Entities may also be obligated to notify those authorities of the participants in those arrangements. The Client may also have obligations under the same legislation to give notification of such arrangements. Where there are other current or future laws or regulations in any jurisdiction that require disclosure relevant to the Deloitte Entities Services,

the Deloitte Entities will also comply with those disclosure requirements. For the avoidance of doubt nothing in this Contract restricts the Client from disclosing any Deliverables or other Advice to any relevant authority.

## 22. Counterparts and Language.

This Contract may be signed in any number of counterparts (whether such counterparts are original or fax or in the form of a pdf attachment to an e-mail). Each signed counterpart shall be deemed to be an original thereof, but all the counterparts shall together constitute one and the same instrument. Where there are versions of the Contract in the English language and another language, in the event of any discrepancies between versions, the English language version shall prevail.

## 23. Entire Agreement, Modification and Effectiveness.

Nothing discussed prior to execution of the Contract induced, nor forms part of, the Contract except to the extent repeated in this Contract. This Contract supersedes any previous agreement, understanding or communication, written or oral, relating to its subject matter. No variation to the Contract shall be effective unless it is documented in writing and signed by authorized representatives of both parties, provided, however, that the scope of the Services may be changed by agreement of the parties in writing, including by e-mail or fax. If Deloitte Tax has already started work (e.g., by gathering information, project planning or giving initial advice) at the request of the Client then the Client agrees that this Contract is effective from the start of such work.

## 24. Survival and Interpretation and Third-Party Beneficiary.

(a)  Any provisions of the Contract which either expressly or by their nature extend beyond the expiration or termination of this Contract shall survive such expiration or termination.

(b)  If any provision of the Contract is found by a court of competent jurisdiction or other competent authorities to be unenforceable, in whole or in part, such provision or the affected part shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein. **Each of the provisions of the Contract or any Work Order shall apply to the fullest extent of the law, whether in contract, statute, tort (including without limitation negligence), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term "including" shall be deemed to be followed by "without limitation".

(c)  Deloitte Entities are intended third-party beneficiaries of the Contract. Each such Deloitte Entity may in its own right enforce such terms, agreements and undertakings.

## 25. Governing Law and Submission to Jurisdiction.

This Contract, and all matters relating to it (including non-contractual obligations) shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action or proceeding arising out of or relating to this Contract or the Services shall be brought and maintained exclusively in New York County, the State of New York. Subject to Paragraph 26, the parties hereby expressly and irrevocably: (i) submit to the exclusive jurisdiction of such courts for the purposes of any such action or proceeding and (ii) waive, to the fullest extent permitted by law, any defense of inconvenient forum to the venue and maintenance of such action in any such courts. Nothing in this paragraph will prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy. **DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY**

WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THE CONTRACT.

26.  Dispute Resolution.

The parties agree to attempt in good faith to resolve any dispute or claim arising out of or in connection with the Contract promptly through negotiations between senior management. If the matter is not resolved through negotiation, then either party may request that a good faith attempt is made to resolve the dispute or claim by participating in an Alternative Dispute Resolution ("ADR") procedure. If the dispute or claim has not been resolved within sixty (60) days of a request being made for reference to ADR, then legal proceedings may be commenced in respect of the matter. Nothing in this paragraph prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy.

27.  Third Parties and Internal Use.

Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Contract. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014, or IRC sections 6011 and 6111 and related IRS guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in the Contract. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

## Deloitte Tax LLP Privacy Statement

Last revised: August 17, 2020

### Introduction

This Privacy Statement explains what personal information we may collect about you in connection with our services engagement and how this personal information may be used and shared. This Privacy Statement also sets out your rights in relation to your personal information and tells you who you can contact if you have questions.

### To whom does this Privacy Statement apply and what does it cover?

**This Privacy Statement applies to Deloitte Tax LLP (also referred to as "Deloitte Tax", "we", "us", and "our"), an entity within the Deloitte Network.** As used in this Privacy Statement, the "Deloitte Network" refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its network of member firms and their related entities. DTTL and each of its member firms are legally separate and independent entities. Please see deloitte.com/about for a detailed description of the legal structure of Deloitte Touche Tohmatsu Limited and its member firms.

This Privacy Statement sets out how we will process your personal information as part of our provision of tax, social security and (in certain jurisdictions outside of the United States) immigration related services as may be relevant to you. Deloitte Tax is providing these services either under a direct contract with you or via a contract with another person (such as a company or a partnership or a trustee) who has asked us to provide the services.

Your personal information will be protected and handled with consideration for its confidentiality and Deloitte Tax will only disclose it as set out in the "To whom we will disclose your personal information?" section below.

In this Privacy Statement, we refer to handling, collecting, protecting and storing your personal information as "processing".

### What personal information do we collect?

Deloitte Tax may collect personal information relating to you such as:

- name
- contact details (such as work or home address, email and phone numbers)
- date of birth
- government identifiers (such as social security number and passport details)
- financial information
- calendar data (where applicable)

In order to provide services to you, Deloitte Tax may receive and also need to process personal information about you that may be considered special category (or "sensitive") personal information (special category personal information is considered to include information about your health, racial or ethnic origin, political opinions, religious or philosophical beliefs, trade union membership, genetic data, biometric data or sexual orientation). Special category personal information about you includes information that may be reasonably inferred from other information that we receive.

Where we receive special category personal information or other information from which special category personal information can be reasonably inferred, we will require explicit consent in order to process it.

### How do we collect personal information?

Deloitte Tax may collect personal information about you in different ways:

- you may provide it directly to us
- we may obtain it because of the services that Deloitte Tax provides or has previously provided
- we may receive it from other members of the Deloitte Network or from third parties, such as your employer/partnership, or a tax authority and/or other relevant authority/administrative bodies
- we may observe or infer it from the information you provide to us and/or the way you interact with us

This personal information can be received in any manner, including in-person discussions, telephone conversations, and electronic or other written communications.

Without access to all the personal information that we need, we may be unable to provide or complete the services.

Where another party (such as a company or a partnership or any third parties acting on your or their behalf) provides your personal information to us, they must also comply with their obligations under the relevant privacy laws and regulations. If you believe that the entity for whom you work or a third party has not provided you with details of the personal information that it holds about you and/or has not obtained your authority to provide us with that personal information for processing as described in this Privacy Statement, then please contact such entity directly.

### Disclosing personal information to third parties

If any personal information which you provide to us relates to any third party, for example a spouse or civil partner, individuals (including children) who depend on you financially, or a joint account holder or a beneficiary or trustee of a trust, then by providing us with their personal information you will need to ensure that you have obtained any necessary permissions from those persons to the use of their personal information in the way set out in this Privacy Statement, or you are otherwise permitted to give us this personal information. You should share a copy of this Privacy Statement with those other individuals before disclosing any personal information about them to us.

### How do we use your personal information?

Deloitte Tax processes personal information about you to:

- establish or maintain our relationship with you
- provide services to you and/or family member(s) or to the entity that has engaged us to provide the services

We may also use your personal information for the purposes of, or in connection with:

- compliance with applicable legal, regulatory or professional requirements
- protecting our rights and/or property

### On what basis do we process personal information about you?

This Privacy Statement sets out the grounds upon which we rely in order to process your personal information.

We may use your personal information for the purposes outlined above because:

(a) where relevant, we have a contract with you to provide services and processing your personal information is necessary for the performance of such contract;

or (b) we have a legitimate interest in processing your personal information, which may be to:

- provide services to you and/or to the entity that has engaged us to provide the services;
- support the management of our client engagements;
- evaluate, develop or improve our services or products; or
- protect our business interests.

or (c) we are subject to legal, regulatory or professional obligations.

### To whom will we disclose your personal information?

In connection with one or more of the purposes outlined in this Privacy Statement, we may disclose your personal information to:

- other members of the Deloitte Network
- those with whom you have requested us to share information, such as your spouse or civil partner
- competent authorities, including courts and authorities regulating us or another member of the Deloitte Network, in each case to comply with legal, regulatory or professional obligations or requests
- vendors and administrative, support, infrastructure and other service providers handling your information on our behalf; in each case, such vendors and service providers will be contractually bound by confidentiality and privacy obligations consistent with the obligations in this Privacy Statement

## Deloitte Tax LLP Privacy Statement

Last revised: August 17, 2020

- third parties to whom we disclose information in the course of providing services to you or to the entity that has engaged us to provide the services

Any personal information that we have referenced above under "What personal information do we collect?" may be disclosed to the third parties identified in this section for the purposes set forth herein.

Please note that some of the recipients of your personal information referred to above may be based in countries or regions without data protection rules similar to those in effect in your area of residence. In such cases, adequate safeguards will be in place to protect your personal information.

For further details about the transfers described above and the adequate safeguards used by Deloitte Tax with respect to such transfers, please contact us using the details below.

**Do we sell your personal information?**

We do not sell your personal information.

**How do we keep your personal information secure?**

We have in place reasonable commercial standards of technology and operational security to protect your personal information from loss, misuse and unauthorized access, disclosure, alteration or destruction. Only authorized personnel, with appropriate awareness of privacy obligations, are provided access to your personal information.

**How long will we keep your information?**

We retain personal information as long as is necessary to fulfill the purposes identified in this Privacy Statement or (i) as otherwise necessary to comply with applicable laws or professional standards, or (ii) as long as the period in which litigation or investigations might arise in respect of our services.

**What are your rights in relation to your personal information?**

You have various rights in relation to your personal information. In particular, you have a right to:

- obtain confirmation that we are processing your personal information and request a copy of the personal information we hold about you
- ask that we update the personal information we hold about you, or correct such information that you think is inaccurate or incomplete

Depending on the jurisdiction in which you are located, you may also have the right to:

- ask that we delete personal information that we hold about you, or restrict the way in which we use your personal information
- withdraw consent to our processing of your personal information (to the extent our processing is based on your consent)
- ask us to stop or start sending you marketing messages at any time
- obtain and/or move your personal information to another service provider
- object to our processing of your personal information
- request that we provide the following information regarding the personal information we hold about you:
  - The categories and/or specific pieces of personal information we collected
  - The categories of sources from which personal information is collected
  - The business or commercial purpose for collecting personal information
  - The categories of third parties with whom we shared personal information

Where our processing of special category personal information is reliant on your consent and you withdraw that consent, we will cease processing the relevant information for the purposes of providing our services and the effect may be that we are no longer able to provide the services.

However, we may still retain a copy of the relevant information for as long as necessary to comply with applicable laws or professional standards, or as long as the period in which litigation or investigations might arise in respect of our services.

To exercise any of your rights under applicable law described above regarding your personal information, please complete our Personal Information Request Form (available at https://datasubject.deloitte.com/) or call us at this toll-free number **+1-844-919-0711**. When calling us, please provide your full name, mailing address and email address.

Applicable laws may also give you the right to lodge a complaint with a local supervisory authority related to this Privacy Statement. For individuals in the EU, you may contact your European or Swiss data protection authority regarding our processing of your personal information.

We will not discriminate against you for exercising any of your rights with respect to your personal information.

**How do we verify your identity when you submit a data subject request?**

For certain personal information requests, we must first verify your identity before processing your request. To do so, we may ask you to provide us with your full name, contact information, and relationship to Deloitte. Depending on your request, we may ask you to provide additional information. Once we receive this information, we will then review it and determine whether we are able to match it to the information Deloitte maintains about you to verify your identity.

**How do we process third party requests?**

If you are submitting a personal information request on behalf of someone other than yourself, please contact us at USPrivacyQuestions@deloitte.com and include proof that you are authorized to make the request. This may be in the form of a written authorization signed by the person whom you are acting on behalf of or a valid power of attorney.

**Privacy Shield Notice**

Deloitte LLP and its United States affiliates, including Deloitte Tax, adhere to the EU-U.S. and Swiss Privacy Shield Framework as set forth by the U.S. Department of Commerce with respect to personally identifiable information that is transferred from the European Economic Area, the United Kingdom and Switzerland to the United States within the scope of their Privacy Shield certifications. To learn more, see our Privacy Shield Notice (available at https://www2.deloitte.com/us/en/footerlinks1/privacy-shield.html?icid=bottom_privacy-shield).

**Changes to this Privacy Statement**

In addition to describing our current privacy practices, this Privacy Statement also describes the categories of personal information we collected, disclosed, or sold during the preceding 12 months. We may modify or amend this Privacy Statement from time to time at our discretion. When we make changes to this Privacy Statement, we will amend the revision date at the top of this page and the modified or amended Privacy Statement shall apply to you and your personal information as of that revision date. We encourage you to review the Privacy Statement on our website (available at https://www2.deloitte.com/us/en/footerlinks1/tax-privacy.html?icid=bottom_tax-privacy) periodically to be informed about how we are protecting your personal information.

**Contact us**

If you have any questions or concerns regarding this Privacy Statement or your personal information, please contact our data protection officer by email at USPrivacyQuestions@deloitte.com or call us at +1-844- 919-0711. Our European Union representative, Deloitte Tax EU Privacy Rep Limited, can be contacted by email at EURepresentative@deloitte.com.

## Exhibit 2

**Tax Consulting Engagement Letter**

# Deloitte.

**Deloitte Tax LLP**
600 Brickell, Suite 3700
Miami, FL 33131
USA

Tel: +1 305 372 3100
Fax: +1 305 372 3160
www.deloitte.com

June 20, 2023

Carlos Sagasta
Chief Financial Officer
Cyxtera Technologies, Inc.
2333 Ponce De Leon Blvd, Ste 900
Coral Gables, FL 33134

Dear Mr. Sagasta:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") for tax advisory services ("Services") for **CYXTERA TECHNOLOGIES, INC.** and its subsidiaries and/or affiliates ("Client") during the period through December 31, 2023. Deloitte Tax is willing to provide Services on federal, foreign, state and local tax matters as requested by the Client.

This letter is intended to establish an overall contractual framework for the provision and delivery of Services to Client, describe the respective responsibilities of Deloitte Tax and Client relating to the Services and the fees Deloitte Tax expects to charge. This letter does not commit Client to purchase any Services and does not commit Deloitte Tax to provide any Services. Client only becomes committed to purchasing, and Deloitte Tax only becomes committed to providing, Services when such Services are (i) requested by Client and approved by Client's audit committee, and (ii) agreed to by Deloitte Tax in a Work Order (described below) or otherwise. If/when Deloitte Tax is contacted and agrees to be engaged to provide specific Services, this letter shall be considered the engagement letter ("Engagement Letter").

SCOPE OF SERVICES

Client and Deloitte Tax agree that the terms of this Engagement Letter will apply to all Services to be provided by Deloitte Tax to Client during the period set forth above, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and Client.

As the specific Service Client wishes to engage Deloitte Tax to provide is identified, Client and Deloitte Tax will execute a separate work order ("Work Order") when such Service involves contemplated fees in excess of $20,000. The request for Services should be in a form of a Work Order as set forth in Exhibit A attached to this Engagement Letter (or a substantially similar form). The request for Services should reference this Engagement Letter and clearly describe the specific details of the Services Deloitte Tax will be engaged to provide pursuant to the Work Order (including scope of work, deliverables, timing, Client responsibilities and fees). Approval by Client's audit committee (including the required PCAOB Rule 3524 communications) must be obtained prior to Deloitte Tax agreeing, or otherwise being engaged, to provide such Services, regardless of whether a separate Work Order is executed for the requested Services.

It is contemplated that the Services requested from Deloitte Tax may include oral and written opinions, consulting, recommendations and other communications rendered in response to specific tax questions posed by Client. Deloitte Tax's analysis and response to these tax questions may be based upon a review of various documentation including, but not limited to, legal opinions, books and records (collectively, "books and records") relevant to Client's transactions and business activity that Client provides to Deloitte Tax. With

CYXTERA TECHNOLOGIES, INC.
June 20, 2023
Page 2

respect to such Services, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information and data provided by Client and its representatives. Deloitte Tax may ask Client to clarify or supplement information provided in this context.

## TAX POSITIONS, POTENTIAL PENALTIES, TAXING AUTHORITY AUDITS

In accordance with our professional standards, while in the course of performing our Services should Deloitte Tax become aware of tax return positions for which either Client or Deloitte Tax may be subject to potential penalties by taxing authorities, Deloitte Tax will discuss with Client these positions including how any such penalties may be avoided through adequate disclosures to taxing authorities. Client should be aware that as a tax return preparer, Deloitte Tax may be required to satisfy disclosure requirements that may exceed those applicable to Client.

## ACKNOWLEDGMENTS AND AGREEMENTS

The Services will be performed in accordance with the *Statement on Standards for Consulting Services* established by the American Institute of Certified Public Accountants ("AICPA"). Services to be performed by Deloitte Tax will be established by mutual agreement and can be changed or modified in the same manner. Deloitte Tax will promptly inform Client of any circumstances that warrant a change in the scope of the specific services to be provided, and similarly, Client agrees to notify Deloitte Tax promptly if modifications to the Services are requested.

Client acknowledges and agrees that the Services provided pursuant to this Engagement Letter will be based solely upon:

(a)  Client's understanding that Deloitte Tax will only be responsible to provide tax advice with respect to the specific matter, transaction or question actually presented by Client, including the type of tax and the taxing jurisdiction specifically identified by Client (e.g., federal, foreign, state, local, sales, excise, etc.); and

(b)  Client's understanding that Deloitte Tax, as a result of providing such tax advice, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax would generally be available to represent Client before the appropriate taxing authorities, if permissible, for an additional fee that is mutually agreed upon.

All rights and obligations of Deloitte Tax and Client described in this Engagement Letter will apply to each Work Order. In the event of any conflict or inconsistency between the terms of this Engagement Letter and the terms of any Work Order, the terms of this Engagement Letter shall control. Notwithstanding the immediately preceding sentence, in the event that a Work Order expressly provides that certain provisions therein shall control over specified provisions of this Engagement Letter, then, to the extent that such provisions of the Work Order conflict or are inconsistent with the specified provisions of this Engagement Letter, such provisions of the Work Order shall control. If a Work Order is not executed, as previously described, the terms of this Engagement Letter will apply to the Services provided.

## CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a

CYXTERA TECHNOLOGIES, INC.
June 20, 2023
Page 3

period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Engagement Letter, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

## FEES AND EXPENSES

The Deloitte Tax fees for Services, other than for Services which are the subject of a separate engagement letter with a different fee arrangement or a Work Order, will be based on the amount of professional time incurred and our agreed-upon hourly rates, which will vary depending upon the experience level of the professionals involved. Deloitte Tax will also bill (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology, research materials, etc.) equal to five (5) percent of professional fees. Hourly rates of our Washington National Tax and other subject matter specialists may exceed the hourly rates of our local office professionals. Reasonable out-of-pocket expenses incurred and allocated costs are reflected as additional amounts on the bills.

Our agreed-upon hourly rates are as follows:

| Tax Rates by Level | |
| --- | --- |
| **Level** | **Rate per hour** |
| Partner/Managing Director | $750 |
| Senior Manager | $660 |
| Manager | $570 |
| Senior | $450 |
| Staff | $360 |

Subject to any applicable Bankruptcy Court (as defined below) order, rules or procedures, Deloitte Tax will submit periodic bills as the Services are performed. The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the taxing authorities, nor are those amounts contingent or refundable.

In light of Client's commencement of a Chapter 11 proceeding, Deloitte Tax expects to apply for compensation for professional services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under Bankruptcy Code § 330.  Payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court (as defined below).  However, in the interim, Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices to Client for prompt payment in accordance with the Local Rules or practices of the Bankruptcy Court regarding monthly payment of professional fees and expenses.  Accordingly, Deloitte Tax will provide Client with an invoice on a periodic basis, with the invoice due and payable pursuant to the payment procedures adopted by the Bankruptcy Court

CYXTERA TECHNOLOGIES, INC.
June 20, 2023
Page 4

in Client's Chapter 11 proceeding. If applicable, payment of these invoices will be made by Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement and the Engagement Letter.  The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects.  In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte Tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Engagement Letter, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before sixty (60) days from the filing date of Client's Chapter 11 petition on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court.  In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this Engagement Letter, "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of New Jersey.

ACCEPTANCE

This Engagement Letter, including all exhibits and Work Orders, together with the General Business Terms attached hereto and thereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this overall contractual framework, supersedes all other oral and written representations, understandings or agreements relating to this framework, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the tax Services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact me at (305) 372-3274.

CYXTERA TECHNOLOGIES, INC.
June 20, 2023
Page 5


Very truly yours,

DELOITTE TAX LLP

By: _____
Miguel Fonseca
Tax Partner

AGREED AND ACCEPTED

CYXTERA TECHNOLOGIES, INC., on behalf of itself
and its subsidiaries and/or affiliates

By: _____
Carlos Sagasta

Title: Chief Financial Officer _____

Date: June 20, 2023 _____

Exhibit A
CYXTERA TECHNOLOGIES, INC.
Work Order

| Work Order Number: | Authorized Start Date: |
|---|---|

This Work Order incorporates the terms and conditions of the Engagement Letter between Deloitte Tax LLP ("Deloitte Tax") and Cyxtera Technologies, Inc. and its subsidiaries and/or affiliates ("Client") dated June 20, 2023.

**Description of Services:**

**Estimated Timing for Services and Deliverables (if any):**

**Fees and Expenses (if different from the provisions stated in the Engagement Letter):**

**Client Responsibilities:**

**Other Terms (if applicable):**

CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Work Order, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the end of the tax year to which the information relates, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Work Order, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside the United States.

Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above.

Very truly yours,                                    AGREED AND ACCEPTED

DELOITTE TAX LLP                                     CYXTERA TECHNOLOGIES, INC., on behalf of itself
                                                     and its subsidiaries and/or affiliates

By: _____            By: _____
    Miguel Fonseca                             Carlos Sagasta
    Tax Partner

                                           Title: _____

                                           Date: _____

<u>DELOITTE TAX LLP GENERAL BUSINESS TERMS</u>

1.   **Contract and Parties.**

(a)   The engagement letter and any appendices and exhibits other than these General Business Terms ("Engagement Letter") issued by Deloitte Tax LLP ("Deloitte Tax") and addressed to the Client, a particular work order associated with such Engagement Letter ("Work Order"), if any, and these General Business Terms (together, the "Contract") constitute the whole agreement between the Client and Deloitte Tax in relation to the services, delivered work product (including Advice as defined below) described in the Contract to be provided by Deloitte Tax (the "Services") and Deloitte Tax's responsibilities for providing the Services. Capitalized terms not defined in these General Business Terms shall have the meaning given to them in the Engagement Letter.

(b)   This Contract is between the Client and Deloitte Tax. For the purposes of this Contract:

"Client" shall mean the entity specified in the Engagement Letter and shall include such of the Client's subsidiaries and/or affiliates as identified in the Engagement Letter and/or Work Order or, if none is identified, all of the Client's subsidiaries and affiliates. The signatory of the Engagement Letter represents and warrants that it has the power and authority to (i) sign the Contract, and (ii) to bind, itself and its subsidiaries and/or affiliates.

"Advice" shall mean all advice, opinions, reports and other work product in any form (including Deliverables) provided by or on behalf of Deloitte Tax and/or its Subcontractors as part of the Services.

"Content" means any publications, thought pieces or other content or materials that are provided by Deloitte Tax or through the Deloitte Technologies that are not an output of the Services.

"Deliverables" means any and all tangible work outputs of the Services to be delivered by Deloitte Tax as part of the Services, including written returns, reports, documents and other materials.

(c)   Deloitte Tax may subcontract any Services under this Contract to any other Deloitte Entity and/or to any other third party, in either case whether within or outside of the United States (collectively "Subcontractor"). Additionally, Deloitte Tax may utilize other Deloitte Entities and third parties (in either case whether within or outside the United States) to provide administrative, infrastructure, hosting, the use of cloud-based solutions and other support services to Deloitte Tax (including with respect to the Deloitte Technologies). The Client's relationship is solely with Deloitte Tax as the entity contracting to provide the Services. Each party to the Contract is an independent contractor and neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative.

(d)   Deloitte Tax remains responsible to the Client for all of the Services performed or to be performed under this Contract, including Services performed by its Subcontractors. Accordingly, to the fullest extent possible under applicable law (i) none of the Deloitte Entities (except Deloitte Tax) will have any liability to the Client; (ii) the Client will not bring any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities (except Deloitte Tax); and (iii) the Client will also ensure that no Client subsidiary or affiliate which is not a party to the Contract brings any claim or proceedings of any nature (whether in contract, tort, breach of statutory duty or otherwise, and including, but not limited to, a claim for negligence) in any way in respect of or in connection with this Contract against any of the Deloitte Entities.

(e)  "Deloitte Entities" means Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its member firms and their respective subsidiaries and affiliates (including Deloitte Tax), their predecessors, successors and assignees, and all partners, principals, members, owners, directors, employees, subcontractors (including the Subcontractors) and agents of all such entities. Neither DTTL nor, except as expressly provided herein, any member firm of DTTL, has any liability for each other's acts or omissions. Each member firm of DTTL is a separate and independent legal entity operating under the names "Deloitte", "Deloitte & Touche", "Deloitte Touche Tohmatsu" or other related names; and services are provided by member firms or their subsidiaries or affiliates and not by DTTL.

## 2.  Responsibilities of the Client and of Deloitte Tax.

### (a)  Responsibilities of the Client

(i)   The Client shall cooperate with Deloitte Tax and its Subcontractors in connection with the performance of the Services, including, without limitation, providing Deloitte Tax and its Subcontractors with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and third parties retained by the Client, for the timeliness, accuracy and completeness of all data and information (including all financial information and statements) provided to Deloitte Tax and its Subcontractors by or on behalf of the Client and for the implementation of any Advice provided. Deloitte Tax and its Subcontractors may use and rely on information and data furnished by the Client or others without verification. The performance of the Services is dependent upon the timely performance of the Client's responsibilities under the Contract and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax and its Subcontractors shall be entitled to rely on all decisions and approvals of the Client.

(ii)  The Client shall be solely responsible for, among other things: (A) making all management decisions, performing all management functions and assuming all management responsibilities; (B) designating one or more individuals who possess suitable skill, knowledge, and/or experience, preferably within senior management to oversee the Services; (C) evaluating the adequacy and results of the Services; (D) accepting responsibility for implementing the results of the Services; and (E) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities. The provisions in the preceding sentence are not intended to and do not alter, modify or change in any manner the duties and obligations of Deloitte Tax as agreed to and set forth in this Contract. With respect to the data and information provided by the Client to Deloitte Tax or its Subcontractors for the performance of the Services, the Client shall have all rights required to provide such data and information and shall do so only in accordance with applicable law and with any procedures agreed upon in writing.

### (b)  Responsibilities of Deloitte Tax

(i)   The Services provided are not binding on tax or other governmental or regulatory authorities or the courts and do not constitute a representation, warranty, or guarantee that the tax or other governmental or regulatory authorities or the courts will concur with any Advice. Any Services provided by or on behalf of Deloitte Tax will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time the specific Services are provided. Subsequent changes in or to the foregoing (for which Deloitte Tax shall have no responsibility to advise the Client) may result in the Services provided by or on behalf of Deloitte Tax being rendered invalid.

(ii)  Except as specifically agreed to in writing, Deloitte Tax shall not provide Advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law in relation to the Services.

(iii)  In formulating any Advice as part of the Services, Deloitte Tax may discuss ideas with the Client orally or show the Client drafts of such Advice. To the extent that the content of drafts or oral Advice are expected to be finalized and confirmed to the Client in writing, such confirmed Advice shall supersede any previous drafts or oral Advice and Deloitte Tax shall not be responsible if the Client or others choose to rely on, act or refrain from acting on the basis of any drafts or oral Advice.

(iv)  Deloitte Tax will use its reasonable endeavors, acting in a commercially prudent manner, to carry out the Services in accordance with any timetable specified in the Contract. However, it is agreed that any dates specified in the Contract for the performance of any part of the Services, including delivery of any Advice, are estimated dates for planning purposes only. Deloitte Tax will notify the Client promptly if it expects or encounters any significant delays which will materially affect achievement of any timetable for delivery of the Services.

(v)  Unless expressly agreed otherwise in writing, each item of Advice will be deemed accepted (and the Services or relevant part completed) when such Advice has been delivered in its final form and no material objection to the Advice or its content is notified by the Client to Deloitte Tax in writing within fourteen (14) days of delivery or when first use of the Advice is made by or on behalf of the Client, whichever occurs first.

3.  **Payment of Invoices.**

Subject to any applicable Bankruptcy Court orders, rules or procedures, Deloitte Tax's invoices are due and payable by the Client upon presentation. If payment of an invoice is not received within sixty (60) days of the invoice date or such later date as payment is permitted under such orders, rules or procedures ("Due Date"), Deloitte Tax reserves the right to charge interest at the rate of (i) 1½% per month or, if higher, (ii) the rate mandated or allowable by law, in each case compounded monthly to the extent allowable by law. Without limiting its other rights or remedies, Deloitte Tax shall have the right to suspend or terminate the Services entirely or in part if payment is not received by the Due Date. The Client shall be responsible for all taxes, such as VAT, sales and use tax, gross receipts tax, withholding tax, and any similar tax, imposed on or in connection with the Services, other than Deloitte Tax's income and property taxes. If any portion of an invoice is disputed, the Client shall notify Deloitte Tax within fifteen (15) days of receipt of the disputed invoice and pay the undisputed portion of that invoice by the Due Date.

4.  **Term.**

(a)  This Contract or any Work Order hereunder, may be terminated in whole or in part by either party at any time, without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination.

(b)  Either party may terminate this Contract or any Work Order hereunder in whole or in part by written notice to the other on or at any time after the occurrence of any material breach by the other party of any obligation under the Contract or any respective Work Order hereunder and, if the breach is capable of remedy, the defaulting party failing to remedy the breach within 30 days of receipt of notice of such breach.

(c)  Deloitte Tax may terminate this Contract or any Work Order hereunder in whole or in part, with immediate effect upon written notice to the Client if Deloitte Tax determines that (i) a governmental, regulatory, or professional entity, or other entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation, or decision, the result of which would render Deloitte Tax's performance of any part of the Contract illegal or otherwise unlawful or in conflict with independence or professional rules; or (ii) circumstances change (including, without limitation, changes in ownership of the

Client or of its affiliates) so that Deloitte Tax's performance of any part of the Contract would be illegal or otherwise unlawful or in conflict with independence or professional rules.

(d)  Upon termination of the Contract or any Work Order hereunder for any reason, the Client will compensate Deloitte Tax in accordance with the terms of the Contract for the Services performed and expenses incurred through the effective date of termination.

(e)  Termination of any part of the Contract shall not affect the remainder of the Contract. These General Business Terms shall continue to apply to any Work Order in force that has not itself been terminated in accordance with the provisions of Paragraphs 4(a), (b) or (c).

5.    Ownership of Deloitte Property & Work Products.

(a)  To the extent that any property (whether tangible or intangible) of any Deloitte Entity is used or developed in connection with this Contract, such property, including work papers, shall remain the property of the relevant Deloitte Entity. Subject to payment of all of Deloitte Tax's fees due in connection with the Services and this Contract, the Client shall obtain a perpetual, royalty-free, non-exclusive, non-transferable license to use any Advice for the purpose set out in the Contract (or in the Advice) and in compliance with the provisions of this Contract. Deloitte Tax shall have ownership (including, without limitation, copyright and other intellectual property ownership) of the Advice and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall ensure that it and its subsidiaries and/or affiliates do not assert or cause to be asserted against any Deloitte Entity any prohibition or restraint from so doing. Any intellectual property and other proprietary rights in the material and data provided by the Client for performing the Services shall remain the property of the Client.

(b)  Deloitte Tax and its Subcontractors, in connection with performing the Services, may develop or acquire general experience, skills, knowledge and ideas. Any Deloitte Entity may use and disclose such experience, skills, knowledge and ideas subject to the obligations of confidentiality set out in Paragraph 10.

(c)  The Client shall also be entitled to have access to and use of those Deloitte Technologies supplied solely for the purposes of receiving the Services, and for no other purposes, in accordance with and subject to the provisions of the terms of use and licenses that may be applicable to such Deloitte Technologies as notified by Deloitte Tax and agreed by the Client (acting reasonably). Client shall be responsible for all personnel (including other third parties, such as advisors) that Client and Deloitte Tax have agreed shall have access to the Deloitte Technologies in connection with the Services. As between the Client and Deloitte Tax, and for the benefit of the respective Deloitte Entity owning the Deloitte Technologies, Deloitte Tax and/or the respective Deloitte Entity will own and retain ownership of all intellectual property rights and other proprietary rights of any kind in the Deloitte Technologies that are used or developed in connection with this Contract.

(d)  To the extent any Deloitte Technologies provided to Client hereunder constitute inventory within the meaning of section 471 of the Internal Revenue Code, such Deloitte Technologies are licensed to Client by Deloitte Tax as agent for Deloitte Tax Products Company LLC on the terms and conditions contained herein. The rights granted in this Paragraph 5 do not apply to any intellectual property that is subject to a separate mutually executed license agreement between Client and any third party (including Deloitte Tax's affiliates).

(e)  "Deloitte Technologies" means all know-how and software, system interfaces, templates, methodologies, ideas, concepts, techniques, tools, processes, Content and technologies, including cloud-based technologies and algorithms owned by, licensed to or developed by any Deloitte Entity and used by Deloitte Tax and its Subcontractors in performing the Services or its other obligations.

6.   Limitations on Damages.

(a)   Neither party shall be liable to the other party for any claims, liabilities, losses, damages, costs or expenses arising under or in connection with the Contract ("Claims") for an aggregate amount in excess of the fees paid under the Contract, or the fees paid under a particular Work Order for Claims arising under such Work Order, by the Client to Deloitte Tax, for that part of the Services giving rise to the Claim, except to the extent it is finally determined to have resulted primarily from the Gross Negligence, intentional fraud, intentional misconduct or bad faith of Deloitte Tax, any Deloitte Entity or any Subcontractor retained for providing the Services to the Client. For purposes of this Contract and these terms, "Gross Negligence" shall mean conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing.

(b)   In no event shall any Deloitte Entity (including Deloitte Tax and its Subcontractors) or Client be liable whether in contract, tort or otherwise for any losses incurred as a result of loss of use, contracts, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage, or expense arising under or in connection with the Contract.

(c)   In circumstances where all or any portion of the provisions of this Paragraph 6 are finally determined to be unavailable, the aggregate liability of Deloitte Tax, any other Deloitte Entity (including Subcontractors) and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(d)   Deloitte Tax's responsibility for the Services is solely toward the Client identified in the Contract or Advice to be entitled to rely on the Services, and not toward any other subsidiary or affiliate of the Client. If more than one Client subsidiary or affiliate is a party to the Contract or is identified in the Contract, Deloitte Tax's responsibility is solely toward the Client for whose benefit the Services were provided.

(e)   The liability cap in Paragraph 6(a) applies in aggregate to each and all Claims which from time to time arise under or in connection with the Contract and the Services, whether such Claims are made at the same or different times or by the Client entity and/or other persons. The liability cap in Paragraph 6(a) also applies to any and all Claims against any other Deloitte Entities, including the Subcontractors, if and only to the extent that it is judicially determined that any of them have any liability under or in connection with the Contract or the Services.

(f)   If the liability exclusion for other Deloitte Entities provided in Paragraph 1(d) is for any reason not effective, then the limitations on liability provided for in this Paragraph 6 shall apply to the other Deloitte Entities (including Subcontractors) as if they were named therein.

(g)   The provisions of Paragraph 6 shall not apply to any (i) liability which by the governing law of the Contract is unlawful to limit or exclude, or (ii) Claims for which one party has an express obligation hereunder to indemnify the other.

7.   Limitation on Warranties.

THIS IS A SERVICES AGREEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE AND SKILL. TO THE FULLEST EXTENT PERMITTED BY LAW, DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

8.  Force Majeure.

Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), fire or other casualty, act of God, epidemic, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

9.  Limitation on Actions.

No action, regardless of form, relating to the Contract or the Services, may be brought by either party more than two years after the cause of action has accrued under applicable law, except that an action for non-payment of Deloitte Tax's invoices by the Client may be brought at any time.

10.  Confidentiality.

(a)  To the extent that, in connection with the Contract, Deloitte Tax comes into possession of any tax or other information related to the Services, trade secrets or other proprietary information relating to the Client which is either designated by the disclosing party as confidential or is by its nature clearly confidential ("Confidential Information"), Deloitte Tax shall not disclose such Confidential Information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such Confidential Information (i) to contractors providing administrative, infrastructure, hosting, cloud-based solutions and other support services to Deloitte Tax as well as to any Deloitte Entity (including any Subcontractors) and their respective personnel, in any case, whether located within or outside of the United States, provided that such contractors and Subcontractors adhere to confidentiality obligations similar to those in this Paragraph 10; (ii) to Client's legal advisors, auditors, and insurers; and (iii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with potential or actual mediation, arbitration or litigation. To the extent permitted by applicable law or regulation, Deloitte Tax shall provide the Client with prompt written notice of disclosures required by law, regulation, judicial or administrative process. The obligation of confidentiality shall not apply to the extent such Confidential Information (A) is or becomes publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a breach by Deloitte Tax; (B) becomes available to any Deloitte Entity on a non-confidential basis from a source other than the Client which Deloitte Tax reasonably believes is not prohibited from disclosing such Confidential Information to Deloitte Tax by an obligation of confidentiality to the Client; (C) is known by any Deloitte Entity prior to its receipt from the Client without any obligation of confidentiality; or (D) is developed by any Deloitte Entity independently of Confidential Information disclosed by the Client.

(b)  The Client shall not disclose to any third party any Advice without the express written consent of Deloitte Tax, except (i) disclosure may be made to the extent mandatory laws, applicable regulations, rules and professional obligations prohibit limitations on disclosure; (ii) if the Client or its affiliates have securities registered with the United States Securities and Exchange Commission and any Deloitte Entity is the auditor of the Client or any of its affiliates, in which case no restrictions or limitations are placed by Deloitte Tax on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Contract and the Client acknowledges that none of its other advisors has imposed or will impose restrictions or limitations with such tax treatment or tax structure; (iii) to the extent the United States Internal Revenue Code and applicable Internal Revenue Service guidance relating to confidential tax shelters (or comparable law or guidance from other taxing authorities in other jurisdictions) apply, in which case there are no restrictions or limitations on the disclosure of the tax treatment or tax structure; (iv) to the extent legislation or regulations of any jurisdiction provide for the reporting to the tax authorities of certain tax

arrangements or transactions, there shall be no restrictions or limitations on the disclosure of any such arrangements or transactions provided as part of the Advice; (v) the Client may disclose the Advice on a need to know basis to any affiliate that is not a member of the Client for information purposes only, provided that the Client ensures and the recipient undertakes to keep such Advice confidential and not to bring any claim of any kind against any Deloitte Entity in relation to the Advice or the Services; and (vi) on a need to know basis to statutory auditors of the Client in their capacity as such.

(c)  The Client shall use the Advice, solely for the purposes specified in the Contract or Advice and, without limitation, shall not, without the prior written consent of Deloitte Tax, use any Advice, in connection with any business decisions of any third party or for advertisement purposes. All Services are intended only for the benefit of the Client identified in the Contract or Advice as being entitled to rely on the Advice. The mere receipt of any Advice (or any information derived therefrom) by any other persons is not intended to create any duty of care, professional relationship or any present or future liability of any kind between those persons and Deloitte Tax.

## 11.  Assignment.

Neither party may assign or otherwise transfer this Contract without the prior express written consent of the other. Neither party will directly or indirectly agree to assign or transfer to a third party any Claim against the other party arising out of this Contract.

## 12.  Indemnification.

(a)  The Client shall indemnify and hold harmless Deloitte Tax, and any other Deloitte Entity from all third-party Claims, except to the extent finally determined to have resulted primarily from the intentional fraud, intentional misconduct or bad faith of Deloitte Tax, or any other Deloitte Entity. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax and all other Deloitte Entities (including their respective personnel) for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

(b)  Deloitte Tax shall indemnify, defend, and hold harmless Client and its personnel from all Claims attributable to claims of third parties solely for bodily injury, death, or physical damage to real or tangible personal property, to the extent directly and proximately caused by the negligence or intentional misconduct of Deloitte Tax while engaged in the performance of the Services.

(c)  Deloitte Tax shall indemnify, defend, and hold harmless Client and its personnel from all Claims attributable to claims of third parties for infringement by a Deliverable of any U.S. patent existing at the time of delivery and known to Deloitte Tax or copyright or any unauthorized use of any trade secret, except to the extent that such infringement or unauthorized use arises from, or could have been avoided except for (i) modification of the Deliverable other than by Deloitte Tax or its subcontractors, or use thereof in a manner not contemplated by the Work Order, (ii) the failure of the indemnified party to use any corrections or modifications made available by Deloitte Tax, (iii) information, materials, instructions, specifications, requirements, or designs provided by or on behalf of the indemnified party, or (iv) the use of the Deliverable in combination with any platform, product, network, or data not provided by Deloitte Tax.  If Client's use of any such Deliverable, or any portion thereof, is or is likely to be enjoined by order of a court of competent jurisdiction as such an infringement or unauthorized use, Deloitte Tax, at its option and expense, shall have the right to (x) procure for Client the continued use of such Deliverable, (y) replace such Deliverable with a non-infringing Deliverable, or (z) modify such Deliverable so it becomes non-infringing; provided that, if (y)

or (z) is the option chosen by Deloitte Tax, the replacement or modified Deliverable is capable of performing substantially the same function.  In the event Deloitte Tax cannot reasonably procure, replace, or modify such Deliverable in accordance with the immediately preceding sentence, Deloitte Tax may require Client to cease use of such Deliverable and refund the professional fees paid to Deloitte Tax with respect to the Services giving rise to such Deliverable. The foregoing provisions of this paragraph constitute the sole and exclusive remedy of the indemnified parties, and the sole and exclusive obligation of Deloitte Tax, relating to a claim that any of Deloitte Tax's Deliverables infringes any patent, copyright, or other intellectual property right of a third party.

13.  Electronic Communications.

(a)  Except as instructed otherwise in writing, Deloitte Entities and the Client are authorized to receive properly addressed fax, e-mail (including e-mails exchanged via Internet media) and voicemail communication for both sensitive and non-sensitive documents and other communications concerning this Contract, as well as other means of communication used or accepted by the other. Deloitte Entities may also communicate electronically with tax and other authorities.

(b)  It is recognized that the internet is inherently insecure and that data can become corrupted, communications are not always delivered promptly (or at all) and that other methods of communication may be appropriate. Electronic communications are also prone to contamination by viruses. Each party will be responsible for protecting its own systems and interests and, to the fullest extent permitted by law, will not be responsible to the other on any basis (contract, tort or otherwise) for any loss, damage or omission in any way arising from the use of the internet or from access by any Deloitte Entity personnel to networks, applications, electronic data or other systems of the Client.

14.  Other Clients.

Nothing in this Contract will prevent or restrict any Deloitte Entity, including Deloitte Tax, from providing services to other clients (including services which are the same or similar to the Services) or using or sharing for any purpose any knowledge, experience or skills used in, gained or arising from performing the Services subject to the obligations of confidentiality set out in Paragraph 10 even if those other clients' interests are in competition with the Client. Also, to the extent that Deloitte Tax possesses information obtained under an obligation of confidentiality to another client or other third party, Deloitte Tax is not obliged to disclose it to the Client, or use it for the benefit of the Client, however relevant it may be to the Services.

15.  Staff.

Deloitte Tax and the Client each agree not to directly or indirectly solicit, employ or engage any personnel of the other party who within six (6) months of such action has been involved directly with the provision of the Services or otherwise directly connected with this Contract, except where an individual responds directly to a general recruitment campaign.

16.  Destruction of Working Papers.

Deloitte Tax may retain copies of documents and files provided by the Client in connection with the Services for purposes of compliance with professional standards and internal retention policies. Any documents and files retained by Deloitte Tax on completion of the Services subject to the obligations of confidentiality set forth in Paragraph 10(a) (including documents legally belonging to the Client) may routinely be destroyed in accordance with Deloitte Entities' policies applying from time to time.

17.  Marketing Material & Use of Name.

Neither the Deloitte Entities nor the Client shall use the other's name, trademarks, service marks, logos, and/or branding in external publicity material without such other party's prior written consent.

18.  Spreadsheets, Models and Tools.

In the course of providing the Services, Deloitte Tax may make reference to spreadsheets, models or tools (together "Models") that the Client provides to Deloitte Tax or requests Deloitte Tax to rely upon ("Client Models") or that Deloitte Tax otherwise uses in connection with the Services ("Deloitte Models"). All Models have limitations and may not produce valid results for all possible combinations of input data with the result that actual and potential errors are not detected. Unless otherwise expressly agreed in the Contract: (i) Deloitte Tax will not be responsible for reviewing, testing or detecting any errors in any Client Models; (ii) no Deloitte Model will be provided or treated as Advice; and (iii) where Deloitte Tax provides any Deloitte Model by way of explanation or illustration of any Advice, Deloitte Tax makes no representation, warranty or undertaking (express or implied) of any kind about the accuracy, suitability or adequacy of any such Deloitte Model for the Client's own needs.

19.  Data Protection.

(a)  Each party shall comply with its respective obligations under the applicable data protection laws to the extent that, in connection with the Contract and the Services, a party stores, processes and transfers any personal data to which data protection laws apply ("Personal Data").

(b)  The Client confirms that it has obtained all legally required authorizations to disclose and/or transfer any Personal Data to Deloitte Tax and its Subcontractors, including across borders and outside the territory of the European Economic Area ("EEA").

(c)  Deloitte Tax may collect data from the Client, other Deloitte Entities, third parties and the data subject directly. Deloitte Tax may for purposes of the collection, use, storage or processing thereof, transfer the Client's and/or the data subject's Personal Data to: (i) administrative contractors, including providers of cloud-based solutions; (ii) another country for legitimate purposes; (iii) another Deloitte Entity.

(d)  To the extent that Deloitte Tax processes Personal Data in or transferred from the EEA in its performance of the Services and to the extent that the EU General Data Protection Regulation 2016/679 ("GDPR") applies, the remainder of the provisions of this Paragraph 19 shall apply.

(e)  In this Paragraph 19, "Data Protection Legislation" means GDPR, together with all other applicable legislation relating to privacy or data protection including any statute or statutory provision which amends, extends, consolidates or replaces the same. The terms "personal data," "data subject," "controller," "processor" and "process" (and its derivatives) shall have the meanings given to them in the Data Protection Legislation.

(f)  The parties acknowledge that certain of the Services may be performed by Deloitte Tax acting as a controller and certain Services may be performed by Deloitte Tax acting as a processor. The Contract shall identify whether it is the understanding of the parties that Deloitte Tax carries out the particular Services as a controller or a processor. In the absence of any such indication, the capacity in which Deloitte Tax acts shall be determined in accordance with the Data Protection Legislation. When acting as a controller, the provisions of Paragraphs 19(a) to (f) and Paragraph 19.1 shall apply. When acting as a processor, the provisions of

Paragraphs 19(a) to (f) and Paragraph 19.2 shall apply. Where Deloitte Tax acts as a processor, the Contract shall set out the scope of the processing carried out by Deloitte Tax in relation to the Services.

## 19.1 If Deloitte Tax Is Acting As Data Controller

(a)   Each of the Client and Deloitte Tax shall be considered to be a controller in respect of Personal Data disclosed to Deloitte Tax by or on behalf of the Client and processed in connection with the Contract and the Services and each of the Client and Deloitte Tax shall comply with its obligations as a controller under the Data Protection Legislation in respect of Personal Data processed by it in connection with the Contract and the Services.

(b)   The Client acknowledges that Deloitte Tax may process Personal Data as a controller for the purpose of, or in connection with the Services to comply with: (i) applicable legal, professional or regulatory requirements; (ii) requests and communications from competent authorities as permitted by law; and (iii) administrative, financial accounting, risk analysis, client relationship and other reasonable business purposes.

(c)   The Client shall collect any necessary permission, provide any necessary notice and do all such other things as are required under the Data Protection Legislation in order for it to disclose Personal Data to Deloitte Tax for the purposes described in Paragraph 19.1(b) and such other purposes as may be described in the Contract.

(d)   Deloitte Tax shall process the Personal Data as reasonably required to provide the Services, meet its legal or regulatory obligations or for its other reasonable business purposes (including quality control and administration) and may disclose Personal Data to any third parties including its Subcontractors, regulators and any party based in any jurisdiction including a jurisdiction outside the EEA provided that such disclosure is reasonably required in connection with such purposes and is at all times in compliance with the Data Protection Legislation that applies to Deloitte Tax in its performance of the Services.

## 19.2 If Deloitte Tax Is Acting As Data Processor

(a)   Where Deloitte Tax may process Personal Data as a processor Deloitte Tax shall: (i) only process Personal Data: (A) to the extent necessary to provide the Services; (B) in accordance with the specific reasonable instructions of the Client (except to the extent, in the reasonable opinion of Deloitte Tax, such instructions infringe the Data Protection Legislation or other applicable law, in which case Deloitte Tax shall notify the Client); or (C) as required by any competent authority or law that applies to Deloitte Tax in its performance of the Services; (ii) implement appropriate technical and organizational measures designed to provide a level of security appropriate to the risk relating to its processing of the Personal Data and any security measures specified in the Contract; (iii) keep, and require that its personnel and agents keep, Personal Data confidential in accordance with Deloitte Tax's confidentiality obligations contained in Paragraph 10(a); (iv) notify the Client in writing without undue delay, and provide reasonable cooperation after becoming aware of a personal data breach (that is, a breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, Personal Data processed by Deloitte Tax) relating to Personal Data in Deloitte Tax's possession or control; (v) provide reasonable cooperation and assistance to the Client in relation to any request by a data subject to have access to Personal Data held about them or in relation to a reasonable request, allegation or complaint by a competent authority or data subject, including notifying the Client in writing without undue delay of receipt of any such request (except to the extent prevented from doing so by applicable law); (vi) be entitled to recover any reasonable costs incurred in complying with Paragraph 19.2(a)(v) above, or as result of assisting the Client in meeting its obligations under the Data Protection Legislation; (vii) subject to applicable legal, professional or regulatory requirements or business practices, at

the reasonable request of the Client, delete or return all Personal Data to the Client on termination or expiry of the Contract and in such circumstance the provisions of Paragraph 19.1 apply.

(b)  To the extent required by Data Protection Legislation applicable to Deloitte Tax in its performance of the Services, Deloitte Tax shall maintain a record of its processing activities and provide such cooperation and information to the Client as is reasonably necessary for the Client to demonstrate compliance with its obligations pursuant to Data Protection Legislation. Such cooperation shall include permitting the Client, at the Client's sole cost and expense, to audit Deloitte Tax's compliance with this Paragraph 19.2 provided that (unless expressly required otherwise by any competent authority): (i) reasonable notice of not less than thirty (30) days is given of any proposed audit and the parties shall, acting reasonably, agree to the scope and parameters of any such audit; (ii) to the extent the audit scope is covered in any audit carried out for Deloitte Tax by an independent third party auditor within twelve (12) months prior to the Client's audit request and there have been no material changes to the controls audited, Deloitte Tax may share the report to the extent relevant to the Client and the disclosure of such report shall be deemed to satisfy the audit request made by the Client; (iii) where, acting reasonably, a specific audit is still required by the Client, such audit shall be conducted during regular business hours, subject to Deloitte Tax's policies and confidentiality requirements and may not unreasonably interfere with Deloitte Tax's business activities; (iv) the audit shall be subject to Deloitte Tax's duties of confidentiality owed to any of its clients, personnel or other parties; and (v) the rights granted in this Paragraph 19.2(b) may not be conducted more than once in any calendar year.

(c)  The Client authorizes Deloitte Tax to use any Subcontractor, including any Deloitte Entity, to process Personal Data as a subprocessor of Deloitte Tax provided that Deloitte Tax shall (i) procure that such processing is subject to a written contract or other legal act with such subprocessor containing data protection obligations no less onerous than those set out in this Paragraph 19.2; and (ii) remain liable for the acts and omissions of any such subprocessor with respect to the processing of Personal Data to the same extent Deloitte Tax would be liable if it had caused such acts or omissions. Deloitte Tax's material subprocessors who have been engaged to perform Services for Client, if any, are listed in the Contract.

(d)  Deloitte Tax shall be entitled to (i) transfer Personal Data to, and (ii) process Personal Data in, any jurisdiction including a jurisdiction outside the EEA, including to any Subcontractor, provided that such transfer is either permissible or legitimized by a valid transfer mechanism under Data Protection Legislation or as otherwise permitted under the Contract.

## 20.  Anti-corruption and Sanctions.

(a)  Deloitte Tax understands that the Client may be subject to laws that prohibit bribery and/or providing anything of value to government officials with the intent to influence that person's actions in respect of the Client. Deloitte Tax may be subject to similar laws and codes of professional conduct and has its own internal policies and procedures which prohibit illegal or unethical behaviors. In providing the Services, Deloitte Tax undertakes not to offer, promise or give financial or other advantage to another person with the intention of inducing a person to perform improperly or to reward improper behavior for the benefit of the Client, in each case, in violation of applicable law.

(b)  Each party shall comply with all economic sanctions, export control, and import laws and regulations applicable to it in (or having an impact on) providing and receiving the Services under this Contract. The parties recognize that such laws and regulations restrict the export and reexport of the Services and Deliverables to jurisdictions subject to territorial economic sanctions (currently, e.g., Russia).

21. **Disclosure Laws.**

The Deloitte Entities may be obligated to notify relevant authorities of certain types of arrangements and of proposals to implement such arrangements. The decision to make such a notification, its timing and content, is a matter that the Deloitte Entities reserve entirely to their sole discretion. The Deloitte Entities may also be obligated to notify those authorities of the participants in those arrangements. The Client may also have obligations under the same legislation to give notification of such arrangements. Where there are other current or future laws or regulations in any jurisdiction that require disclosure relevant to the Deloitte Entities Services, the Deloitte Entities will also comply with those disclosure requirements. For the avoidance of doubt nothing in this Contract restricts the Client from disclosing any Deliverables or other Advice to any relevant authority.

22. **Counterparts and Language.**

This Contract may be signed in any number of counterparts (whether such counterparts are original or fax or in the form of a pdf attachment to an e-mail). Each signed counterpart shall be deemed to be an original thereof, but all the counterparts shall together constitute one and the same instrument. Where there are versions of the Contract in the English language and another language, in the event of any discrepancies between versions, the English language version shall prevail.

23. **Entire Agreement, Modification and Effectiveness.**

Nothing discussed prior to execution of the Contract induced, nor forms part of, the Contract except to the extent repeated in this Contract. This Contract supersedes any previous agreement, understanding or communication, written or oral, relating to its subject matter. No variation to the Contract shall be effective unless it is documented in writing and signed by authorized representatives of both parties, provided, however, that the scope of the Services may be changed by agreement of the parties in writing, including by e-mail or fax. If Deloitte Tax has already started work (e.g., by gathering information, project planning or giving initial advice) at the request of the Client then the Client agrees that this Contract is effective from the start of such work.

24. **Survival and Interpretation and Third-Party Beneficiary.**

(a)   Any provisions of the Contract which either expressly or by their nature extend beyond the expiration or termination of this Contract shall survive such expiration or termination.

(b)   If any provision of the Contract is found by a court of competent jurisdiction or other competent authorities to be unenforceable, in whole or in part, such provision or the affected part shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein. **Each of the provisions of the Contract or any Work Order shall apply to the fullest extent of the law, whether in contract, statute, tort (including without limitation negligence), or otherwise, notwithstanding the failure of the essential purpose of any remedy.** Any references herein to the term "including" shall be deemed to be followed by "without limitation".

(c)   Deloitte Entities are intended third-party beneficiaries of the Contract. Each such Deloitte Entity may in its own right enforce such terms, agreements and undertakings.

25.  Governing Law and Submission to Jurisdiction.

This Contract, and all matters relating to it (including non-contractual obligations) shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action or proceeding arising out of or relating to this Contract or the Services shall be brought and maintained exclusively in New York County, the State of New York. Subject to Paragraph 26, the parties hereby expressly and irrevocably: (i) submit to the exclusive jurisdiction of such courts for the purposes of any such action or proceeding and (ii) waive, to the fullest extent permitted by law, any defense of inconvenient forum to the venue and maintenance of such action in any such courts. Nothing in this paragraph will prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy. **DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THE CONTRACT.**

26.  Dispute Resolution.

The parties agree to attempt in good faith to resolve any dispute or claim arising out of or in connection with the Contract promptly through negotiations between senior management. If the matter is not resolved through negotiation, then either party may request that a good faith attempt is made to resolve the dispute or claim by participating in an Alternative Dispute Resolution ("ADR") procedure. If the dispute or claim has not been resolved within sixty (60) days of a request being made for reference to ADR, then legal proceedings may be commenced in respect of the matter. Nothing in this paragraph prevent either party, at any time before or after the dispute resolution procedures are invoked, from commencing legal proceedings to protect any intellectual property rights, trade secrets or confidential information or to preserve any legal right or remedy.

27.  Third Parties and Internal Use.

Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax services or transactions described in the Contract. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014, or IRC sections 6011 and 6111 and related IRS guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax services or transactions described in the Contract. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports, or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

## Deloitte Tax LLP Privacy Statement

Last revised: August 17, 2020

### Introduction

This Privacy Statement explains what personal information we may collect about you in connection with our services engagement and how this personal information may be used and shared. This Privacy Statement also sets out your rights in relation to your personal information and tells you who you can contact if you have questions.

### To whom does this Privacy Statement apply and what does it cover?

This Privacy Statement applies to Deloitte Tax LLP (also referred to as "Deloitte Tax", "we", "us", and "our"), an entity within the Deloitte Network. As used in this Privacy Statement, the "Deloitte Network" refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its network of member firms and their related entities. DTTL and each of its member firms are legally separate and independent entities. Please see deloitte.com/about for a detailed description of the legal structure of Deloitte Touche Tohmatsu Limited and its member firms.

This Privacy Statement sets out how we will process your personal information as part of our provision of tax, social security and (in certain jurisdictions outside of the United States) immigration related services as may be relevant to you. Deloitte Tax is providing these services either under a direct contract with you or via a contract with another person (such as a company or a partnership or a trustee) who has asked us to provide the services.

Your personal information will be protected and handled with consideration for its confidentiality and Deloitte Tax will only disclose it as set out in the "To whom we will disclose your personal information?" section below.

In this Privacy Statement, we refer to handling, collecting, protecting and storing your personal information as "processing".

### What personal information do we collect?

Deloitte Tax may collect personal information relating to you such as:

- name
- contact details (such as work or home address, email and phone numbers)
- date of birth
- government identifiers (such as social security number and passport details)
- financial information
- calendar data (where applicable)

In order to provide services to you, Deloitte Tax may receive and also need to process personal information about you that may be considered special category (or "sensitive") personal information (special category personal information is considered to include information about your health, racial or ethnic origin, political opinions, religious or philosophical beliefs, trade union membership, genetic data, biometric data or sexual orientation). Special category personal information about you includes information that may be reasonably inferred from other information that we receive.

Where we receive special category personal information or other information from which special category personal information can be reasonably inferred, we will require explicit consent in order to process it.

### How do we collect personal information?

Deloitte Tax may collect personal information about you in different ways:

- you may provide it directly to us
- we may obtain it because of the services that Deloitte Tax provides or has previously provided
- we may receive it from other members of the Deloitte Network or from third parties, such as your employer/partnership, or a tax authority and/or other relevant authority/administrative bodies
- we may observe or infer it from the information you provide to us and/or the way you interact with us

This personal information can be received in any manner, including in-person discussions, telephone conversations, and electronic or other written communications.

Without access to all the personal information that we need, we may be unable to provide or complete the services.

Where another party (such as a company or a partnership or any third parties acting on your or their behalf) provides your personal information to us, they must also comply with their obligations under the relevant privacy laws and regulations. If you believe that the entity for whom you work or a third party has not provided you with details of the personal information that it holds about you and/or has not obtained your authority to provide us with that personal information for processing as described in this Privacy Statement, then please contact such entity directly.

### Disclosing personal information to us relating to third parties

If any personal information which you provide to us relates to any third party, for example a spouse or civil partner, individuals (including children) who depend on you financially, or a joint account holder or a beneficiary or trustee of a trust, then by providing us with their personal information you will need to ensure that you have obtained any necessary permissions from those persons to the use of their personal information in the way set out in this Privacy Statement, or you are otherwise permitted to give us this personal information. You should share a copy of this Privacy Statement with those other individuals before disclosing any personal information about them to us.

### How do we use your personal information?

Deloitte Tax processes personal information about you to:

- establish or maintain our relationship with you
- provide services to you and/or family member(s) or to the entity that has engaged us to provide the services

We may also use your personal information for the purposes of, or in connection with:

- compliance with applicable legal, regulatory or professional requirements
- protecting our rights and/or property

### On what basis do we process personal information about you?

This Privacy Statement sets out the grounds upon which we rely in order to process your personal information.

We may use your personal information for the purposes outlined above because:

(a)  where relevant, we have a contract with you to provide services and processing your personal information is necessary for the performance of such contract;

or (b) we have a legitimate interest in processing your personal information, which may be to:

- provide services to you and/or to the entity that has engaged us to provide the services;
- support the management of our client engagements;
- evaluate, develop or improve our services or products; or
- protect our business interests.

or (c) we are subject to legal, regulatory or professional obligations.

### To whom will we disclose your personal information?

In connection with one or more of the purposes outlined in this Privacy Statement, we may disclose your personal information to:

- other members of the Deloitte Network
- those with whom you have requested us to share information, such as your spouse or civil partner
- competent authorities, including courts and authorities regulating us or another member of the Deloitte Network, in each case to comply with legal, regulatory or professional obligations or requests
- vendors and administrative, support, infrastructure and other service providers handling your information on our behalf; in each case, such vendors and service providers will be contractually bound by confidentiality and privacy obligations consistent with the obligations in this Privacy Statement

### Deloitte Tax LLP Privacy Statement

Last revised: August 17, 2020

- third parties to whom we disclose information in the course of providing services to you or to the entity that has engaged us to provide the services

Any personal information that we have referenced above under "What personal information do we collect?" may be disclosed to the third parties identified in this section for the purposes set forth herein.

Please note that some of the recipients of your personal information referred to above may be based in countries or regions without data protection rules similar to those in effect in your area of residence. In such cases, adequate safeguards will be in place to protect your personal information.

For further details about the transfers described above and the adequate safeguards used by Deloitte Tax with respect to such transfers, please contact us using the details below.

**Do we sell your personal information?**

We do not sell your personal information.

**How do we keep your personal information secure?**

We have in place reasonable commercial standards of technology and operational security to protect your personal information from loss, misuse and unauthorized access, disclosure, alteration or destruction. Only authorized personnel, with appropriate awareness of privacy obligations, are provided access to your personal information.

**How long will we keep your information?**

We retain personal information as long as is necessary to fulfill the purposes identified in this Privacy Statement or (i) as otherwise necessary to comply with applicable laws or professional standards, or (ii) as long as the period in which litigation or investigations might arise in respect of our services.

**What are your rights in relation to your personal information?**

You have various rights in relation to your personal information. In particular, you have a right to:

- obtain confirmation that we are processing your personal information and request a copy of the personal information we hold about you
- ask that we update the personal information we hold about you, or correct such information that you think is inaccurate or incomplete

Depending on the jurisdiction in which you are located, you may also have the right to:

- ask that we delete personal information that we hold about you, or restrict the way in which we use your personal information
- withdraw consent to our processing of your personal information (to the extent our processing is based on your consent)
- ask us to stop or start sending you marketing messages at any time
- obtain and/or move your personal information to another service provider
- object to our processing of your personal information
- request that we provide the following information regarding the personal information we hold about you:
  o The categories and/or specific pieces of personal information we collected
  o The categories of sources from which personal information is collected
  o The business or commercial purpose for collecting personal information
  o The categories of third parties with whom we shared personal information

Where our processing of special category personal information is reliant on your consent and you withdraw that consent, we will cease processing the relevant information for the purposes of providing our services and the effect may be that we are no longer able to provide the services.

However, we may still retain a copy of the relevant information for as long as necessary to comply with applicable laws or professional standards, or as long as the period in which litigation or investigations might arise in respect of our services.

To exercise any of your rights under applicable law described above regarding your personal information, please complete our Personal Information Request Form (available at https://datasubject.deloitte.com/) or call us at this toll-free number **+1-844-919-0711**. When calling us, please provide your full name, mailing address and email address.

Applicable laws may also give you the right to lodge a complaint with a local supervisory authority related to this Privacy Statement. For individuals in the EU, you may contact your European or Swiss data protection authority regarding our processing of your personal information.

We will not discriminate against you for exercising any of your rights with respect to your personal information.

**How do we verify your identity when you submit a data subject request?**

For certain personal information requests, we must first verify your identity before processing your request. To do so, we may ask you to provide us with your full name, contact information, and relationship to Deloitte. Depending on your request, we may ask you to provide additional information. Once we receive this information, we will then review it and determine whether we are able to match it to the information Deloitte maintains about you to verify your identity.

**How do we process third party requests?**

If you are submitting a personal information request on behalf of someone other than yourself, please contact us at USPrivacyQuestions@deloitte.com and include proof that you are authorized to make the request. This may be in the form of a written authorization signed by the person whom you are acting on behalf of or a valid power of attorney.

**Privacy Shield Notice**

Deloitte LLP and its United States affiliates, including Deloitte Tax, adhere to the EU-U.S. and Swiss Privacy Shield Framework as set forth by the U.S. Department of Commerce with respect to personally identifiable information that is transferred from the European Economic Area, the United Kingdom and Switzerland to the United States within the scope of their Privacy Shield certifications. To learn more, see our Privacy Shield Notice (available at https://www2.deloitte.com/us/en/footerlinks1/privacy-shield.html?icid=bottom_privacy-shield).

**Changes to this Privacy Statement**

In addition to describing our current privacy practices, this Privacy Statement also describes the categories of personal information we collected, disclosed, or sold during the preceding 12 months. We may modify or amend this Privacy Statement from time to time at our discretion. When we make changes to this Privacy Statement, we will amend the revision date at the top of this page and the modified or amended Privacy Statement shall apply to you and your personal information as of that revision date. We encourage you to review the Privacy Statement on our website (available at https://www2.deloitte.com/us/en/footerlinks1/tax-privacy.html?icid=bottom_tax-privacy) periodically to be informed about how we are protecting your personal information.

**Contact us**

If you have any questions or concerns regarding this Privacy Statement or your personal information, please contact our data protection officer by email at USPrivacyQuestions@deloitte.com or call us at +1-844- 919-0711. Our European Union representative, Deloitte Tax EU Privacy Rep Limited, can be contacted by email at EURepresentative@deloitte.com.

## **Exhibit B**

**van Gelder Declaration**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al.*, | Case No. 23-14853 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF JEFFREY**
**VAN GELDER IN SUPPORT OF THE DEBTORS'**
**APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING**
**THE DEBTORS TO RETAIN AND EMPLOY DELOITTE TAX LLP**
**AS TAX SERVICES PROVIDER EFFECTIVE AS OF THE PETITION DATE**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/cyxtera.  The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

I, Jeffrey van Gelder, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury, as follows:

1.       I am a partner of the firm of Deloitte Tax LLP ("Deloitte Tax"), which has an office at Brickell World Plaza, 600 Brickell Avenue, Suite 3700, Miami, Florida 33131.  I am duly authorized to make and submit this declaration (the "Declaration") on behalf of Deloitte Tax in accordance with sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the District of New Jersey (the "Local Rules") in support of the *Debtors' Application for Entry of an Order Authorizing the Debtors to Retain and Employ Deloitte Tax LLP as Tax Services Provider Effective as of the Petition Date* (the "Application").[2]

2.       The Debtors seek to retain and employ Deloitte Tax as their tax services provider in accordance with the terms and conditions set forth in:  (i) that certain engagement letter, dated June 23, 2023, for certain tax advisory services related to the Debtors' restructuring (the "Restructuring Services Engagement Letter") and (ii) that certain engagement letter, dated June 20, 2023, for certain tax advisory services related to federal, foreign, state and local income tax matters (the "Tax Consulting Engagement Letter," and together with the Restructuring Services Engagement Letter,  the "Engagement Agreements").   Copies of the Engagement Agreements are attached as Exhibit 1 and Exhibit 2 to the Order.

3.       The statements set forth in this Declaration are based upon my personal knowledge, upon information and belief, and/or upon client matter records kept in the ordinary course of business that were reviewed by me or other personnel of Deloitte Tax or its affiliates.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

## **Deloitte Tax's Qualifications**

4.      Deloitte Tax is a tax services firm with offices across the United States.  Deloitte

Tax has significant experience performing tax services and has performed such services in large

and complex chapter 11 cases on behalf of debtors throughout the United States.  Such experience

renders Deloitte Tax well-qualified and able to provide services to the Debtors during the pendency

of these chapter 11 cases in a cost-effective, efficient, and timely manner.

5.      Deloitte Tax provides, and has provided, tax services in numerous large chapter 11

cases, including:  *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. June 30, 2023);

*In re Blockfi, Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. June 21, 2023); *In re Pipeline Health Sys.,*

*LLC*, No. 22-90291 (Bankr. S.D. Tex. Feb. 2, 2023); *In re Voyager Digital Holdings, Inc.*,

No. 22-10943 (MEW) (Bankr. S.D.N.Y. Oct. 20, 2022); *In re Revlon, Inc.,* No. 22-10760 (DSJ)

(Bankr. S.D.N.Y. Aug. 23, 2022).[3]  Deloitte Tax's services fulfill an important need and are not

provided by any of the Debtors' other professionals.  Accordingly, Deloitte Tax is both well

qualified and able to provide the services described in the Engagement Agreements for the Debtors

during these chapter 11 cases in an efficient and timely manner.

6.      In addition, since approximately October 2020, Deloitte Tax has provided certain

tax services to the Debtors.  In providing such prepetition professional services to the Debtors,

Deloitte Tax is familiar with the Debtors and their businesses, including the Debtors' financial

affairs, debt structure, operations, and related matters.  Having worked with the Debtors'

management, Deloitte Tax has developed relevant experience and knowledge regarding the

Debtors that will assist it in providing effective and efficient services during these chapter 11 cases.

---

[3]    Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application.
      Copies of these orders are available upon request to the Debtors' counsel.

Accordingly, Deloitte Tax is both well-qualified and able to provide the aforementioned services for the Debtors in these chapter 11 cases in an efficient and timely manner.

## Scope of Services

7.     Subject to the Court's approval, Deloitte Tax will provide tax advisory services for the Debtors in accordance with the terms and conditions set forth in the Engagement Agreements.[4]

8.     Pursuant to the terms and conditions of the Restructuring Services Engagement Letter, Deloitte Tax has been engaged to provide certain tax advisory services related to debt discharge and other tax issues arising in connection with the Debtors' restructuring and chapter 11 bankruptcy filing.  Specifically, as requested by the Debtors and agreed to by Deloitte Tax pursuant to the Restructuring Services Engagement Letter, Deloitte Tax will, among other things, advise the Debtors:

   a.     regarding their consultation with their counsel and financial advisors on the cash tax effects of restructuring alternatives, potential bankruptcy filings, and the post-restructuring tax profile.  This will include obtaining an understanding of the Debtors' financial advisors' valuation model and disclosure model to consider the tax assumptions contained therein;

   b.     regarding the restructuring and/or bankruptcy emergence process from a tax perspective, including the tax work plan;

   c.     on the cancellation of debt income for tax purposes under section 108 of the Internal Revenue Code ("IRC");

   d.     with its efforts to calculate tax basis in the stock in each of the Debtors' subsidiaries, including controlled foreign corporations, or other entity interests;

   e.     on post-restructuring or post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock, and net operating loss carryovers) available under the applicable tax regulations and the reduction of such attributes based on the Debtors operating projections, including a technical analysis of the effects of

---

[4]     To the extent there is any inconsistency between the summary set forth herein of the services to be provided under the Engagement Agreements and the terms of the Engagement Agreements, the terms of the Engagement Agreements shall control.

Treasury Regulation Section 1.1502-28 and the interplay with IRC sections 108 and 1017;

f.    on the effects of tax rules under IRC sections 382(l)(5) and (l)(6) pertaining to the post-bankruptcy net operating loss carryovers and limitations on their utilization, and the Debtors' ability to qualify for IRC section 382(l)(5);

g.    in determining whether or when an "ownership change" (as defined under IRC section 382) has occurred, as well as on net built-in gain or net built-in loss positions at the time of such ownership change, including limitations on use of tax losses generated from post-restructuring or post-bankruptcy asset or stock sales;

h.    as to the treatment of postpetition interest for state and federal income tax purposes including the applicability of interest limitations under IRC section 163(j);

i.    as to the state and federal income tax treatment of prepetition and postpetition reorganization costs, including restructuring-related professional fees and other costs, the categorization and analysis of such costs, and the technical positions related thereto;

j.    with its evaluation and modeling of the tax effects of liquidating, disposing of assets, merging or converting entities as part of the restructuring, including the effects on federal and state tax attributes, state incentives, apportionment and other tax planning;

k.    on state income tax treatment and planning for restructuring or bankruptcy provisions in various jurisdictions, including cancellation of indebtedness calculations, adjustments to tax attributes, and limitations on tax attribute utilization;

l.    on responding to tax notices and audits from various taxing authorities;

m.    with identifying potential tax refunds and advise the Debtors on procedures for tax refunds from tax authorities;

n.    on income tax return reporting of restructuring and/or bankruptcy issues and related matters;

o.    in documenting, as appropriate, the tax analysis, development of the Debtors' opinions, recommendation, observations, and correspondence for any proposed restructuring alternative tax issue or other tax matter described above; and

p.    regarding other state, federal, or international income tax questions that may arise in the course of this engagement, as requested by the Debtors, and as may be agreed to by Deloitte Tax.

9.    Pursuant to the terms and conditions of the Tax Consulting Engagement Letter, Deloitte Tax has been engaged to provide certain tax advisory services related to and including:

    a.    federal, foreign, state and local income tax matters, as requested by the Debtors; and

    b.    oral and written opinions, consulting, recommendations and other communications rendered in response to specific tax questions posed by the Debtors.

**Professional Compensation**

10.    Deloitte Tax's retention by the Debtors is conditioned upon its ability to be retained in accordance with its terms and conditions of employment, including the proposed compensation arrangements, set forth in the Engagement Agreements.

11.    Pursuant to the terms of the Restructuring Services Engagement Letter, Deloitte Tax will charge the Debtors for its services based on the amount of professional time incurred at agreed-upon hourly rates, as set forth in the table below:

| Professional Level | Hourly Rates |
|---|---|
| Partner / Principal / Managing Director | $960 |
| Senior Manager | $815 |
| Manager | $700 |
| Senior Consultant/Sr. Staff | $545 |
| Consultant/Staff | $445 |

12.    Pursuant to the terms of the Tax Consulting Engagement Letter, Deloitte Tax will charge the Debtors for its services based on the amount of professional time incurred at agreed-upon hourly rates, as set forth in the table below:

| Professional Level | Hourly Rates |
|---|---|
| Partner/Managing Director | $750 |
| Senior Manager | $660 |
| Manager | $570 |
| Senior | $450 |
| Staff | $360 |

13.     In the ordinary course of business, Deloitte Tax revises its hourly rates to reflect changes in responsibilities, increased experience, geographic differentials, and increased costs of doing business.  Deloitte Tax shall advise the Debtors of any new rates should it institute a rate change during the chapter 11 cases.  Such changes will be noted on the invoices for the first time period in which a revised rate becomes effective.

14.     In addition, reasonable expenses, including travel, and an allocation of estimated administrative and technology costs incurred (*e.g.*, report production, research materials, document delivery services, and other expenses) incurred in providing Deloitte Tax's services, will be included in the total amount billed.

15.     Some services incidental to the tasks to be performed by Deloitte Tax in these chapter 11 cases may be performed by personnel now employed by or associated with affiliates of Deloitte Tax, such as Deloitte & Touche, Deloitte FAS, DTBA, and Deloitte Consulting, or their respective subsidiaries, including subsidiaries located outside of the United States.  For example, a portion of the services will be performed, at Deloitte Tax's direction, by its indirect subsidiary, Deloitte Tax India Private Limited ("Deloitte Tax India").  A specifically assigned team of personnel from Deloitte Tax India will assist in the services under the supervision, and with the input, of personnel of Deloitte Tax.  The hourly rates charged to clients by Deloitte Tax for services performed by Deloitte Tax India personnel are comparable to the market rates charged for similar services by Deloitte Tax, but do not directly correlate with the hourly rates attributed to such services by Deloitte Tax India.  The connections of Deloitte Tax India (along with the connections

7

of Deloitte Tax and its other affiliates) to the Potential Parties in Interest searched by Deloitte Tax are set forth in **Schedule 2** to this Declaration.

16.     Deloitte Tax intends to file interim and final fee applications with the Court for allowance of compensation and reimbursement of expenses consistent with the terms of the Engagement Agreements, the Application and this Declaration, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the applicable Fee Guidelines, and the orders of this Court.

17.     Deloitte Tax requests that it be permitted to submit monthly invoices for services rendered and expenses incurred under each Engagement Agreement.  Such invoices will contain reasonable detail consistent with any rules, guidelines and/or administrative orders promulgated by the Court that apply to these chapter 11 cases.  Deloitte Tax requests that the invoices, after appropriate review, be paid in a manner consistent with the payment of other retained professionals in this matter, consistent with any administrative orders, if any, that would apply to interim payments.  I understand that all payments rendered pursuant to Deloitte Tax's retention by the Debtors must be approved by an order of this Court, and based upon the filing by Deloitte Tax of appropriate interim and final applications for allowance of compensation and reimbursement of expenses.

18.     Prior to the Petition Date, Deloitte Tax performed services for the Debtors.  In the ninety (90) days prior to the Petition Date, the Debtors did not make any payments to Deloitte Tax on account of invoices issued prior to such date.  As of the Petition Date, no amounts were outstanding with respect to the invoices issued by Deloitte Tax prior to such date.

19.     Deloitte & Touche performed services for the Debtors prior to the Petition Date.  In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte & Touche

approximately $619,576 on account of invoices issued prior to such date. As of the Petition Date, no amounts were outstanding with respect to the invoices issued by Deloitte & Touche prior to such date.

20.    Deloitte Tax has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. Deloitte Tax has no agreement with any nonaffiliated or unrelated entity to share any compensation earned in these chapter 11 cases.

### Disinterestedness

21.    Subject to the foregoing, except as set forth herein and in the attachments hereto, to the best of my information, knowledge, and belief based on reasonable inquiry: (a) neither I, Deloitte Tax, nor any partner, principal, or managing director of Deloitte Tax that is anticipated to provide the services for which Deloitte Tax is to be retained (the "Deloitte Tax Engagement Partners/Principals/Managing Directors") holds any interest adverse to the Debtors with respect to the matters on which Deloitte Tax is to be retained in their chapter 11 cases; and (b) Deloitte Tax has no relationship to the Debtors, their significant creditors, certain other parties in interest, or to the attorneys that are known to be assisting the Debtors in their chapter 11 cases, except as stated herein or in any attachment hereto.

### A.    Background Information Related to Deloitte Tax

22.    Deloitte Touche Tohmatsu Limited ("DTTL") is a UK private company limited by guarantee. DTTL itself does not provide services to clients. Each of the member firms of DTTL (each, a "DTTL Member Firm") is a legally separate and distinct entity. The DTTL Member Firms are primarily organized on an individual country or regional basis and operate within the legal and regulatory framework of their particular jurisdiction(s). The DTTL Member Firm structure reflects the fact that the DTTL Member Firms are not affiliates, subsidiaries, or branch offices of each

other or of a global parent.  Rather, they are separate and independent firms that have come together to practice under a common brand and shared methodologies, client service standards, and other professional protocols and guidelines.  DTTL Member Firm partners and/or principals are generally the sole owners of their respective DTTL Member Firms.  There is no overlap with respect to a partner's or principal's ownership in its respective DTTL Member Firm and any other DTTL Member Firm.  Profits are not shared between or among the DTTL Member Firms.

23.    In the United States, Deloitte LLP is a DTTL Member Firm.  Like DTTL, Deloitte LLP does not provide services to clients.  Rather, Deloitte LLP has operating affiliates that perform services for clients, including Deloitte Tax, Deloitte & Touche LLP ("Deloitte & Touche"), Deloitte Consulting LLP ("Deloitte Consulting"), Deloitte Financial Advisory Services LLP ("Deloitte FAS"), and Deloitte Transactions and Business Analytics LLP ("DTBA") (Deloitte LLP and each of the foregoing, and together with their respective direct and indirect subsidiaries, collectively, the "Deloitte U.S. Entities").  The partners and/or principals of each operating affiliate of Deloitte LLP are owners of their respective affiliate along with, directly or indirectly, Deloitte LLP.  Generally, each affiliate's respective partners and principals are also partners and principals, as applicable, of Deloitte LLP.

### B.    Conflicts Check Process, Generally

24.    As described below, for the most part, the conflicts searches conducted by Deloitte Tax involves checking client and other databases of the Deloitte U.S. Entities.  Given the separateness of the various DTTL Member Firms as described above, the Deloitte U.S. Entities do not have the capability to directly check the client or other databases of any of the non-U.S. DTTL Member Firms or their respective affiliates or subsidiaries.  However, notwithstanding the separateness of the DTTL Member Firms, as described below, the Deloitte U.S. Entities' checking

procedures in bankruptcy cases do result in the gathering of certain information related to the DTTL Member Firms.

25.     When any of Deloitte LLP's operating affiliates, such as Deloitte Tax, is to be the subject of an application to be retained in a chapter 11 case, a process commences regarding checking connections to the debtor, its affiliates and the debtor's parties in interest (as provided by the debtors).    With the assistance of the Deloitte U.S. Entities' conflicts team (the "Conflicts Team"), a series of conflicts checking procedures are undertaken, including checking a number of Deloitte U.S. Entities' databases for their connections.    Additionally, the Conflicts Team performs procedures to identify certain relationships of other DTTL Member Firms, as described below:

    (i)     With respect to the debtor and debtor affiliates, the Conflicts Team will:

        (a)     Initiate cross border check requests to the DTTL Member Firm(s) where the debtor or debtor affiliate is domiciled (i.e., the country of incorporation or the entity's headquarters, as the case may be) based upon information provided by the debtors and research by the Conflicts Team of publicly available information.    The DTTL Member Firm(s) will then search applicable local databases to identify client or non-client relationships in their jurisdiction (such as lender, vendors, business relationship entities or third parties associated with a client engagement).

        (b)     Perform a search of the cross border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms, which are submitted when a DTTL Member Firm seeks to commence an engagement with or involving a U.S. entity.[5]    This search is conducted to identify whether those prospective engagements involved the debtor or its affiliates domiciled in the U.S. as the engaging client or non-client relationship (such as business relationship entities or third parties associated with a client engagement).

        (c)     Perform a search of the database system associated with audit and other related independence requirements (the "Independence Database") to identify possible connections with debtor and debtor

---

[5]    These cross-border conflict check requests are pursuant to a policy adopted by DTTL Member Firms.

affiliates with respect to whom such requirements are actually or potentially implicated.  Each DTTL Member Firm is required to input its respective audit and attest clients into the Independence Database, and all DTTL Member Firms have access to the Independence Database.[6]  Each entity in the Independence Database has a designated partner who is responsible for approving and monitoring services for entities included in its corporate tree.  The Independence Database includes audit and attest clients of the various DTTL Member Firms, as well as certain other non-clients thereof.

(ii)     With respect to the debtor's parties in interest, the Conflicts Team will:

(a)     Perform a search of the cross-border conflict check requests the Conflicts Team has previously received from other DTTL Member Firms (described above) to identify whether those prospective engagements involved a U.S.-domiciled party in interest as a direct attest or litigation client or business relationship entity.

(b)     Perform a search of the Independence Database to determine whether a party in interest is identified therein.

26.     Based upon the foregoing, it is my understanding that the overall design and implementation of Deloitte U.S. Entities' current procedures provide a reasonable level of comfort that relationships and potential conflicts related to a debtor will be identified.

## C.     Disinterestedness of Deloitte Tax

27.     In connection with the Debtors proposed retention of Deloitte Tax in their chapter 11 cases, Deloitte Tax undertook searches to determine, and to disclose, whether it or its affiliates is or has been employed by or has other relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals, or other entities with significant relationships with the Debtors (the "Potential Parties in Interest"), whose specific names were provided to Deloitte Tax by the Debtors, listed on **Schedule 1** attached hereto.  To check upon and disclose possible relationships

---

[6]     Inputting audit and attest clients into the Independence Database is a policy followed by DTTL Member Firms so that such relationships are tracked in connection with such firms' independence requirements.

with significant Potential Parties in Interest in these chapter 11 cases, Deloitte Tax researched its client databases and performed reasonable due diligence to determine whether it or its affiliates had any relationships with the Debtors or their affiliates, subsidiaries, directors, or officers, or significant Potential Parties in Interest.

28.     Deloitte Tax and/or its affiliates have relationships with thousands of clients, some of which may be creditors of the Debtors or other Potential Parties in Interest.  Accordingly, Deloitte Tax and/or its affiliates have or may have provided professional services, may currently provide professional services, and/or may in the future provide professional services in matters unrelated to the chapter 11 cases to certain of the Potential Parties in Interest.  Additionally, certain of these Potential Parties in Interest have or may have provided goods or services, may currently provide goods or services, and/or may in the future provide goods or services to Deloitte Tax and/or its affiliates and the Deloitte Tax Engagement Partners/Principals/Managing Directors in matters unrelated to the chapter 11 cases.  A listing of parties with such connections to Deloitte Tax and/or its affiliates is attached to this Declaration as **Schedule 2**.

29.     With respect to Deloitte Tax's conflicts checks conducted in these chapter 11 cases, if a database query identified a potential connection between a Potential Party in Interest and a Deloitte U.S. Entity or DTTL Member Firm, an email was sent to certain of the Deloitte U.S. Entity's and/or DTTL Member Firm's individuals, as applicable, associated with such Potential Party in Interest to confirm whether or not the relationship with such Potential Party in Interest related or currently relates to the chapter 11 cases.  Responses to these emails were consolidated and subsequently reviewed.  As stated in this Declaration, these processes result in the disclosures that are set forth herein, including the disclosure of certain connections with Potential Parties in Interest that do not relate to the chapter 11 cases.  The identified potential

connections to the Potential Parties in Interest are included on **Schedule 2** appended hereto, and such connections do not relate to the chapter 11 cases.

30.     Deloitte Tax believes that the relationships described herein or reflected on **Schedule 2** have no bearing on the services for which Deloitte Tax's retention is being sought by the Debtors in these chapter 11 cases.  Furthermore, such relationships do not impair Deloitte Tax's disinterestedness, and Deloitte Tax does not represent an adverse interest in connection with these chapter 11 cases.

31.     To the best of my knowledge, based on the searches discussed above, Deloitte Tax has determined that certain relationships should be disclosed as follows.

   a.     Deloitte Tax and its affiliates provide services in matters unrelated to the chapter 11 cases to certain of the Debtors' largest unsecured and secured creditors and other Potential Parties in Interest or their affiliates listed on **Schedule 2**.

   b.     Law firms identified on **Schedule 2**, including Akin Gump Strauss Hauer & Feld LLP; Armstrong Teasdale LLP; Cole Schotz P.C.; Davis Polk & Wardwell LLP;  DLA Piper LLP; Fox Rothschild LLP; Gibson, Dunn, & Crutcher LLP; Greenberg Traurig LLP; Holland & Knight LLP; Katten Muchin Rosenman LLP; Kirkland & Ellis LLP; Knight Frank LLP; Latham & Watkins LLP; Mayer Brown LLP; Mills & Reeve LLP; Polsinelli PC; Shook, Hardy & Bacon L.L.P.; Sullivan & Cromwell LLP; and Venable LLP, have provided, currently provide, and may in the future provide legal services to Deloitte Tax or its affiliates in matters unrelated to their chapter 11 cases, and/or Deloitte Tax or its affiliates have provided, currently provide and may in the future provide services to such firms or their clients.

   c.     In the ordinary course of its business, Deloitte Tax and its affiliates have business relationships in unrelated matters with its principal competitors, which together with their affiliates may be Potential Parties in Interest in their chapter 11 cases.  For example, from time to time, Deloitte Tax and one or more of such entities may work on assignments for the same client or may otherwise engage each other for various purposes.

   d.     Certain financial institutions or their respective affiliates (including Bank of America; Barclays Bank PLC; Citibank, N.A.; Citicorp North America, Inc.; HSBC Bank USA, N.A.; JP Morgan Chase Bank, N.A.; National Union & Fire Insurance Company of Pittsburgh, PA; and PNC Bank)   on **Schedule 2** (i) are lenders to an affiliate of Deloitte Tax (Deloitte Tax is a

guarantor of such indebtedness) and/or (ii) have financed a portion of the capital and/or capital loan requirements of various partners and principals, respectively, of Deloitte Tax and its affiliates. In addition, certain institutions or their respective affiliates, including JP Morgan Chase Bank, N.A., provide asset management services for, and/or have a similar role with respect to investments of, certain pension, benefit and similar funds sponsored by affiliates of Deloitte Tax.

e.   Certain DTTL Member Firms and affiliates of Deloitte Tax have provided, currently provide or may in the future provide professional services to certain non-Debtor affiliates of the Debtors and/or their affiliates. In particular, a DTTL Member Firm located in Singapore performed and/or continues to perform independent audit services for Cyxtera Singapore Pte. Ltd., a non-Debtor affiliate of the Debtors.

f.   Certain Potential Parties in Interest may be adverse to and/or involved in litigation matters with Deloitte Tax or its affiliates in connection with matters unrelated to the chapter 11 cases.

g.   Deloitte Tax and Deloitte & Touche have provided and continue to provide certain tax services and audit services, respectively, to certain Potential Parties in Interest and/or their affiliates, in matters unrelated to these chapter 11 cases. In its capacity as independent auditor, Deloitte & Touche provides such clients with ordinary course auditing services and conducts typical audit procedures that may arise from such Potential Parties in Interests' business arrangements with the Debtors. Similarly, Deloitte Tax, in its capacity as tax services provider, provides such clients with ordinary course tax services which may arise from or reflect such Potential Parties in Interests' business arrangements with the Debtors.

h.   Deloitte Tax and/or its affiliates, including Deloitte & Touche, perform certain professional services for BCEC-SIS Holdings LP, Cede & Co., Cyxtera Management SIS Holdings LLC, FMR LLC, Harrison, Paul Light, Lumen Technologies Service Group LLC, Medina Capital Fund II - SIS Holdco LP, Medina Capital Fund II SIS Holdco LP, Owl Rock Technology Finance Corp., and Teacher Retirement Systems of Texas, respectively, each of which is a significant equity holder of the Debtors, in matters unrelated to the Chapter 11 Cases.

i.   Deloitte Consulting and certain of its affiliates, have provided and will continue to provide services to the Executive Office of the United States Trustee in matters unrelated to these chapter 11 cases.

32.   Furthermore, through reasonable inquiry, I do not believe there is any connection

between the personnel of Deloitte Tax or its affiliates who are anticipated to provide services to

the Debtors and the United States Bankruptcy Judge presiding in their chapter 11 cases, the United States Trustee for Regions 3 and 9, the Assistant United States Trustee for the District of New Jersey, and the attorneys therefor assigned to these chapter 11 cases.

33.    Despite the efforts described above to identify and disclose Deloitte Tax's connections with the Potential Parties in Interest in the chapter 11 cases, because Deloitte Tax is a nationwide firm with thousands of personnel, and because the Debtors are a large enterprise, Deloitte Tax is unable to state with certainty that every client relationship or other connection has been disclosed.  In this regard, if Deloitte Tax discovers additional material information that it determines requires disclosure, it will file a supplemental disclosure promptly with the Court.

34.    Except as may be disclosed herein, to the best of my knowledge, information, and belief, Deloitte Tax and the Deloitte Tax Engagement Partners/Principals/Managing Directors do not hold or represent any interest adverse to the Debtors, and I believe that Deloitte Tax is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

**<u>No Duplication of Services</u>**

35.    To my knowledge, I believe that the services Deloitte Tax provides to the Debtors will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases.  Specifically, I believe that Deloitte Tax will perform unique services and will use reasonable efforts to avoid duplication of services by any of the Debtors' other retained professionals and to coordinate with the Debtors to avoid the unnecessary duplication of services.

## **Relief as of the Petition Date is Appropriate**

36.     Deloitte Tax has provided, and will continue to provide, valuable services to the Debtors in anticipation that its retention would be approved as of the Petition Date.  In tandem with these services, Deloitte Tax has been working diligently to undertake its connections checking processes as detailed in this Declaration.  I do not believe that approval of the Application will prejudice any parties in interest.  The services provided by Deloitte Tax will assist the Debtors in their restructuring efforts, as well as compliance with their taxation requirements and other tax matters, which are necessary and in the best interest of the Debtors' estates, their creditor constituencies, and other parties in interest.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:  July 21, 2023

By:  */s/ Jeffrey van Gelder*
      Jeffrey van Gelder
      Partner
      Deloitte Tax LLP

**Schedule 1**

**Potential Parties in Interest List**

| |
|---|
| 1550 SPACE PARK PARTNERS, LLC |
| 1919 PARK AVENUE ASSOCIATES, LLC |
| 1919 PARK AVENUE ASSOCIATES, LLC |
| 2EVOLVE TECHNOLOGIES, INC. |
| 36TH STREET CAPITAL PARTNERS, LLC |
| 4650 SANTA CLARA TECHNOLOGY PARTNERS, LLC |
| 4700 SANTA CLARA TECHNOLOGY PARTNERS, LLC |
| AB&T TELECOM, LLC |
| ABB INC. |
| ACCENTURE |
| ACCESSFLOORSYSTEMS.COM, INC |
| ACCO ENGINEERED SYSTEMS |
| ACCU-TECH CORP |
| ACE ELECTRICAL CONTRACTORS INC |
| ACI SOLUTIONS |
| ACLIVITI |
| ACM ELF ST LLC |
| ACPF NOVA DATA CENTER, LLC |
| ACUITY TECHNOLOGIES |
| ADOBE CLOUD |
| ADT COMMERCIAL LLC |
| ADVANCED MICRO DEVICES |
| ADVANCED TECHNICAL SOLUTIONS, LLC |
| ADVANTAGE COMMUNICATIONS GROUP |
| ADVODA, LLC |
| AGITARE TECHNOLOGIES INC. |
| AiNet |
| AKAMAI |
| AKIN GUMP STRAUSS HAUER & FELD LLP |
| ALIXPARTNERS |
| ALLAN BRITEWAY ELECTRICAL UTILITY CONTRA |
| ALLDUS INTERNATIONAL CONSULTING INC. |
| ALLIED WORLD ASSURANCCE COMPANY (U.S.) INC. |
| ALTERYX, INC. |
| ALTMAN SOLON US, LP |
| ALTOS BUILDING MAINTENANCE |
| ALYCE - PLATFORM |
| American Data Center Solutions, LLC |
| American Electric Power |

| |
|---|
| AMERICAN HELP DESK |
| AMERICAN INTERNATIONAL GROUP, INC. (AIG) |
| AON CONSULTING, INC. |
| AON RISK SERVICES CENTRAL, INC. |
| AON RISK SERVICES COMPANIES, INC. |
| APEX DATACOM, LLC |
| APEX SYSTEMS, LLC |
| Appleby Strategy Group, LLC |
| APPSMART AGENT SERVICES, INC |
| ARAMARK REFRESHMENT SERVICES |
| Arapahoe Co Wtr & Wstewtr Auth |
| ARDHAM TECHNOLOGIES |
| ARG |
| ARIBA, INC. |
| ARIEL E. SOLORZANO |
| ARIZONA DEPARTMENT OF REVENUE |
| ARMSTRONG TEASDALE LLP |
| ARROW ENTERPRISE COMPUTING SOLUTIONS, IN |
| ASPHALT SURFACING, INC. |
| ASSOCIATION RESOURCE GROUP, INC |
| AT&T |
| AT&T |
| ATOS |
| AUTOMATED LOGIC CONTRACTING SERVICES INC |
| AUTOMATIC SUPPRESSION & ALARM SYSTEMS |
| AVANT COMMUNICATIONS, INC. |
| AXA XL - PROFESSIONAL INSURANCE |
| AXA XL SPECIALTY INSURANCE COMPANY |
| Bain Capital Credit LP |
| BANK OF AMERICA |
| BANK OF AMERICA |
| BANK OF AMERICA |
| BANKDIRECT CAPITAL FINANCE |
| BARCLAYS BANK PLC |
| BCEC-SIS Holdings LP |
| BCM ONE, INC. |
| BDO USA LLP |
| BEAZLEY GROUP |
| BEAZLEY USA SERVICES, INC. |
| BECHTEL DIRECT |
| Belastingdienst Apeldoorn |
| Belastingdienst/Apeldoorn |
| Benjamin Phillips |

| |
|---|
| BERNALILLO COUNTY TREASURER |
| BIG VALLEY MARKETING |
| BIGGS CARDOSA ASSOCIATES INC |
| BLACK BOX NETWORK SERVICES |
| BLACKLINE SYSTEMS, INC. |
| BLUE TORCH |
| BMS GROUP LTD. |
| BOLAND TRANE SERVICES INC |
| BOSTON LIMITED |
| BOWHEAD SPECIALTY UNDERWRITERS, INC. |
| BRAD SCYRKELS |
| BRANDER GROUP INC |
| BRIDGEPOINTE TECHNOLOGIES, INC. |
| BRIGHTVAULT |
| British Columbia Ministry of Finance |
| BRUNELLO |
| Burbank Water & Power |
| BUSINESS MOVES GROUP |
| BUSINESSWIRE |
| BYTEDANCE |
| BYTES |
| C & L CONTRACTORS LTD |
| C&P PAINT LLC |
| C.J. MAINTENANCE, INC. |
| CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION |
| CALIFORNIA FRANCHISE TAX BOARD |
| CALIFORNIA WIRE PRODUCTS CORP |
| Calpine Energy Solutions |
| Canada Revenue Agency |
| CANOPIUS US INSURANCE |
| CAPCON NETWORKS LLC |
| CAPGEMINI |
| Capitol Waste & Recycling Services |
| CARLOS SEGASTA |
| CARRIER ACCESS, INC. |
| CARRIER CORPORATION |
| CARRIERBID COMMUNICATIONS |
| CATALYTIC RISK MANAGERS |
| CDW DIRECT LLC |
| Cede & Co. |
| CENTRE TECHNOLOGIES |
| CENTURY LINK AUSTRAILIA PTY LIMITED |
| CENTURY LINK JAPAN LTD |

| |
|---|
| CENTURY LINK UK LIMITED |
| CENTURYLINK COMMUNICATIONS, LLC |
| CENTURYLINK COMMUNICATIONS, LLC |
| CERIDIAN HCM, INC |
| CHICAGO MERCANTILE EXCHANGE INC |
| CHILI PIPER |
| CHOICE SOLUTIONS |
| CHUBB |
| CITIBANK, N.A. |
| CITIBANK, N.A. |
| CITIBANK, N.A. |
| CITIBANK, N.A. |
| CITICORP NORTH AMERICA, INC. |
| CITY AND COUNTY OF DENVER, COLORADO |
| CITY OF ALBUQUERQUE PLANNING DEPARTMENT |
| CITY OF AURORA TAX & LICENSING |
| CITY OF BATON ROUGE- PARISH OF EAST BATON ROUGE DEPT OF FINANCE - REVENUE DIVISION |
| CITY OF BURBANK BUILDING DIVISION |
| CITY OF CHICAGO |
| CITY OF CORAL GABLES FINANCE DEPT. COLLECTION DIVISION |
| CITY OF EL SEGUNDO |
| CITY OF EL SEGUNDO |
| City Of Fort Worth Water Dept |
| CITY OF MONROE - TAXATION OF REVENUE DIVISION |
| CITY OF NEW ORLEANS DEPARTMENT OF FINANCE BUREAU OF REVENUE- SALES TAX |
| City Of Santa Clara |
| City Of Seattle |
| CITY OF SEATTLE - LICENSE AND TAX ADMINISTRATION |
| CITY OF SUNNYVALE |
| CITY OF SUNNYVALE |
| City Of Tempe |
| City Of Tukwila |
| CITY OF VANCOUVER |
| CITY OF WALTHAM OFFICE OF CITY CLERK |
| CITY OF WALTHAM TREASURER/COLLECTOR'S OFFICE |
| Cleveland Electric Company |
| CLOUDINSYTE |
| CLOUDWIRX LLC |
| CLUNE CONSTRUCTION COMPANY, LP |
| Coalfire Systems, Inc. |
| COFORGE (NIIT) |

| |
|---|
| COGNIZANT |
| COGNIZANT |
| COHEN TAUBER SPIEVACK & WAGNER PC |
| Cole Schotz P.C. |
| COLO ADVISOR |
| COLOPEOPLE |
| COLORADO BRASIL COLOCATION E DATA CENTER LTDA |
| COLORADO BUYER INC. |
| COLORADO DEPARTMENT OF REVENUE |
| COLORADO DEPARTMENT OF REVENUE TAXATION DIVISION |
| COLORADO NEW COMMUNCATIONS, LLC |
| COMED |
| COMED |
| COMMISSIONER OF THE REVENUE LOUDOUN COUNTY |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE |
| COMMUNICATIONS ENGINEERING CONSULTA |
| COMPASS DATA CENTERS MSP I, LLC |
| COMPTOLLER OF MARYLAND - REVENUE ADMINISTRATION DIVISION |
| COMPTROLLER OF PUBLIC ACCOUNTS |
| COMPU DYNAMICS LLC |
| COMTEL COMMUNICATIONS |
| CONNECTICUT DEPARTMENT OF REVENUE SERVICES |
| Constellation Newenergy Gas Dv |
| Constellation Newenergy Inc |
| Container Systems, Inc. |
| CONTRAC IT |
| CONVERGED NETWORK SERVICES GROUP |
| CONVERGINT TECHNOLOGIES |
| COOK COUNTY TREASURER |
| CORE BUSINESS SERVICES, LLC |
| CORPORATE CREATIONS INTERNATIONAL |
| CORPORATE CREATIONS NETWORK INC. |
| COUNTY OF LOUDOUN H. ROGER ZURN JR., TREASURER |
| COUNTY OF ORANGE |
| COVALENSE DIGITAL SOLUTIONS, LLC |
| COZZI CONSULTING |
| CPG BEYOND, INC. |
| CPUS IRVINE CROSSING, LP |
| CRC Group |
| CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH |
| CRESA MCS |
| CRITICAL HVAC SYSTEMS, LLC |
| CrowdStrike, Inc. |

| |
|---|
| CR-T |
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY |
| CS TECHNOLOGY INC. |
| CSC DOMAIN |
| CTG3, LLC |
| CTL MSA |
| CUMMINGS ELECTRICAL LP |
| CUMMINS SALES AND SERVICE |
| CyrusOne AMS3, B.V. |
| CYXTERA AUSTRALIA PTY. LTD. |
| CYXTERA BRASIL COLOCATION E DATA CENTER LTDA |
| CYXTERA CANADA TRS, ULC |
| CYXTERA CANADA, LLC |
| CYXTERA COMMUNICATIONS CANADA, INC. |
| CYXTERA COMMUNICATIONS CANADA, ULC |
| CYXTERA COMMUNICATIONS, LLC |
| CYXTERA DATA CENTERS, INC. |
| CYXTERA DC HOLDINGS, INC. |
| CYXTERA DC PARENT HOLDINGS, INC. |
| CYXTERA DIGITAL SERVICES, LLC |
| CYXTERA EMPLOYER SERVICES, LLC |
| CYXTERA FEDERAL GROUP TRS, LLC |
| CYXTERA FEDERAL GROUP, INC. |
| CYXTERA GERMANY GMBH |
| CYXTERA GERMANY TRS, GMBH |
| CYXTERA HOLDINGS, LLC |
| CYXTERA HONG KONG LIMITED |
| CYXTERA JAPAN, LTD. |
| Cyxtera Management SIS Holdings LLC |
| CYXTERA MANAGEMENT, INC. |
| CYXTERA NETHERLANDS B.V. |
| CYXTERA RECEIVABLES HOLDINGS, LLC |
| CYXTERA SINGAPORE PTE. LTD. |
| CYXTERA SINGAPORE TRS PTE. LTD. |
| CYXTERA TECHNOLOGIES MARYLAND, INC. |
| CYXTERA TECHNOLOGIES, INC. |
| CYXTERA TECHNOLOGIES, INC. |
| CYXTERA TECHNOLOGIES, LLC |
| CYXTERA TECHNOLOGY UK LIMITED |
| CYXTERA UK TRS LIMITED |
| D.F. KING & CO., INC. |
| DAIKIN APPLIED AMERICAS INC |
| DANIEL KERNOHAN |

| |
|---|
| DASHER |
| DATA CENTER HAWK LLC |
| DATA CENTER HAWK LLC |
| DATA CENTER MAP |
| DATA CENTER TECHNOLOGIES INC |
| DATA SOLUTIONS |
| DATASPAN HOLDINGS INC |
| DATAVISION, INC. |
| David Keasey |
| DAVIS POLK & WARDWELL, LLP |
| DC Group, Inc. |
| DCCO TUKWILA, LLC |
| Deerns UK Ltd |
| Delaware Co Regl Sewer Dist |
| DELAWARE COUNTY AUDITOR |
| Delco Water Company |
| DELL |
| DELL MARKETING L.P. |
| DELOITTE & TOUCHE LLP |
| DEMANDBASE - PLATFORM |
| DIGITAL LAKESIDE, LLC |
| DIGITAL NASH, LLC |
| DIGITAL PISCATAWAY, LLC |
| DIGITAL REALTY TRUST LP |
| DIGITAL SPACE PARK, LLC |
| DIGITAL WALSH 1, LLC |
| DIGITAL WALSH 2, LLC |
| DIGITAL WINONA, LLC |
| DINAN, INC. |
| Direct Energy Business |
| DIRECT ENERGY BUSINESS, LLC |
| DJS GROUP |
| DLA PIPER LLP |
| DOCUSIGN, INC. |
| Dominion Energy Virginia |
| DONMAC DATA LIMITED |
| DONNELLEY FINANCIAL SOLUTIONS |
| DOUGLAS COUNTY OCCUPATIONAL TAX DEPARTMENT |
| DOUGLAS COUNTY TAX COMMISSIONER |
| DOUGLAS COUNTY TREASURER |
| DR FORTRESS |
| DU PAGE COUNTY COLLECTOR |
| DXC |

| |
|---|
| DXC Technology |
| DYNALECTRIC COMPANY |
| E2 OPTICS LLC |
| EARTHSAFE SYSTEMS, INC. |
| EASTGROUP PROPERTIES, LP |
| EATON CORPORATION - CHICAGO |
| Eaton Vance Management |
| ECLIPSE TELECOM, LLC |
| ECT TEKECIN |
| EDGE SOLUTIONS |
| EDGEVANA |
| EDJX |
| ELECTRONIC SUPPORT SYSTEMS INC |
| Elk Grove Village |
| EPLUS GROUP |
| EPLUS TECHNOLOGY, INC |
| EQUINIX DO BRAZIL |
| EQUINIX INC |
| Eric Koza |
| ERNST & YOUNG ABOGADOS, S.L. |
| ERNST & YOUNG U.S. LLP |
| ESI ELECTRICAL SYSTEM INC |
| ETRADE FINANCIAL CORPORATE SERVICES, INC |
| Eversource |
| EVT |
| EXCEL MECHANICAL SYSTEMS INC |
| F.A.A. TECHNOLOGY PARTNERS LLC |
| Fahim Ahmed |
| FASTBLUE COMMUNICATIONS INC. |
| FELIPE GABRIEL MACHADO CARGNIN |
| FICO |
| FINANCIAL ACCOUNTING STANDARDS BOARD |
| FIRST NATIONAL CAPITAL, LLC |
| FIRST POINT MECHANICAL SERVICES LLC |
| FLASHFORWARD ICT |
| FLEXWORX, LLC |
| FLORIDA DEPARTMENT OF REVENUE |
| FMR LLC |
| FOCAL POINT DATA RISK, LLC |
| FOX ROTHSCHILD, LLP |
| FRANK BARNETT |
| FRANKLIN ELECTRIC COMPANY |
| Frederick Arnold |

| |
|---|
| FRONT RANGE ASPHHALT MAINTENANCE, LLC |
| FSP ADDISON CIRCLE LIMITED PARTNERS |
| FSP ADDISON CIRCLE LTD |
| FTI Consulting |
| FUJITSU |
| Fujitsu Services Limited - UK (GBP) |
| FUTURE TECH |
| G TREASURY SS LLC |
| Garrison DC Property Management Ltd. |
| Gartner Inc. |
| Gartner Inc. |
| GEMINOS.AI |
| GENELCO, INC. |
| GEORGIA DEPARTMENT OF REVENUE |
| GETTY IMAGES |
| GIBSON, DUNN, & CRUTCHER LLP |
| GLOBAL COMMUNICATIONS, LLC |
| GLOBAL LINKING SOLUTIONS |
| GLOBAL SYSTEMS TELECOM INC. |
| GLOBAL WEEHAWKEN ACQUISTION COMPANY, LLC |
| GLOBALNET COMMUNICATIONS |
| GMC COMMISSIONING, INC. |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA |
| GOWLING WLG (UK) LLP DUBAI BRANCH |
| GRANITE |
| GRANT COUNTY TREASURER |
| GREENBERG TRAURIG |
| Greene, Robert L. |
| Greenwich View Place Limited |
| Greg Waters |
| Greystone Power Corp |
| GREYSTONE POWER CORPORATION |
| GROUPWARE |
| GT EDGE SOLUTIONS |
| GUGGENHEIM |
| H&CO, LLP |
| HARBOR |
| Harrison, Paul Light |
| HCI SYSTEMS. INC. |
| HERMANSON COMPANY LLP |
| HEWLETT PACKARD ENTERPRISE COMPANY |
| HEWLETT PACKARD FINANCIAL |
| Hewlett Packard International Bank DAC |

| |
|---|
| HIGHLANDS RANCH COMMERCE CENTER |
| Highlands Ranch Metro District |
| HIGHLANDS TELECOMMUNICATIONS SERVICES, LLC |
| Highline Water District |
| HILCO REAL ESTATE |
| HILLSBOROUGH COUNTY TAX COLLECTOR |
| HISCOX INSURANCE COMPANY, INC. |
| HITT CONTRACTING INC |
| HMRC |
| HOGAN CONSULTING GROUP |
| HOLLAND & KNIGHT LLP |
| Holland Barry |
| HOLMANS USA CORP |
| HOLT CAT |
| HOULIHAN LOKEY FINANCIAL ADVISORS, INC. |
| Howden Specialty |
| HPE FINANCIAL SERVICES CANADA COMPANY |
| HSBC BANK USA, N.A. |
| I/O PHOENIX ONE, LLC |
| IBM CORPORATION |
| IBM CORPORATION |
| ICONICX CRITICAL SOLUTIONS LLC |
| IDAHO STATE TAX COMMISSION |
| IDEAL INTEGRATIONS INC |
| ILLINOIS DEPARTMENT OF REVENUE |
| ILLUMINATE ELECTRIC, LLC |
| IMMEDION |
| INDIANA DEPARTMENT OF REVENUE |
| INDIGO TELECOM |
| INFINITE COMPUTER SOLUTIONS, INC. |
| INFLU2, Inc. |
| INFOSYS |
| INFOVISION, INC. |
| INGRAM MICRO |
| Ingram Micro UK Ltd |
| INGRAM MICRO/PROMARK |
| INSIGHT - PCM |
| INSIGHT CONNECTIONS GROUP |
| INTEGRITY NETWORK SOLUTIONS, LLC |
| INTELISYS, INC. |
| INTELLIGENT WAVES LLC |
| INTELLYS CORPORATION |
| INTERACTIVE TELECOM SOLUTIONS (ITS) |

| |
|---|
| INTERAQT CORPORATION, DBA COLOTRAQ |
| INTERCOM IO |
| INTERMOUNTAIN ELECTRONICS, INC. |
| INTERNATIONAL GATEWAY WEST, LLC |
| INTERNATIONAL GATEWAY WEST, LLC |
| INTERNATIONAL INTEGRATED SOLUTIONS LTD |
| INTERXION LTD |
| IO PHOENIX ONE LLC |
| IOWA DEPARTMENT OF REVENUE |
| IPAYABLES, INC. |
| IPRESENT/MEDIAFLY |
| IQ WIRED, INC. |
| IRON MOUNTAIN DATA CENTERS, LLC |
| IRON MOUNTAIN DATA CENTERS, LLC |
| IRONSHORE |
| Irvine Ranch Water District |
| ISSQUARED, INC. |
| JAMERSON & BAUWENS ELECTRICAL |
| JEFFRIES FINANCE LLC |
| JET ELECTRICIAL TESTING, LLC |
| JETT ENTERPRISES, LLC |
| JOELLE FRANK |
| John W. Diercksen |
| JP MORGAN CHASE BANK, N.A. |
| JP MORGAN CHASE BANK, N.A. |
| JUSTIN REYNOLDS |
| KAISER PERMANENTE |
| KANSAS DEPARTMENT OF REVENUE |
| Katten Muchin Rosenman LLP |
| KELYN TECHNOLOGIES |
| Kenfield Metal Products Ltd. |
| KENTIK TECHNOLOGIES, INC. |
| KENTUCKY DEPARTMENT OF REVENUE |
| KING COUNTY TREASURY |
| KIRKLAND & ELLIS LLP |
| Knight Frank LLP |
| KURTZMAN CARSON CONSULTANTS LLC |
| LANTRO VISION N.A., INC. |
| LANTRO VISION N.A., INC. |
| LATHAM & WATKINS, LLP |
| LAW OFFICE OF PAUL M. WELTLICH |
| LAZARD FRERES & CO |
| LD ACQUISITION COMPANY 16 LLC |

| |
|---|
| LD DI HOLDCO, LLC |
| LDM PRODUCTS INC (SUBZERO ENGINEERI |
| LEADLANDER |
| LEXISNEXIS |
| LIBERTY MUTUAL INSURANCE CO |
| LIBERTY MUTUAL INSURANCE CO |
| LIBERTY SURPLUS INSURANCE CORPORATION |
| LIGHTSTREAM COMMUNICATIONS |
| LINCLOGIX INC-NETASCENT |
| Linkedin Corporation |
| LIQUID NETWORX |
| LLOYDS, LONDON |
| LOGAN PASS CONSTRUCTION, LLC |
| LOS ANGELES COUNTY TAX COLLECTOR |
| Loudoun Water |
| LOUISIANA DEPARTMENT OF REVENUE |
| LUCID SOFTWARE, INC. |
| LUCIDPOINT, INC. |
| LUMEN TECHNOLOGIES |
| Lumen Technologies Service Group LLC |
| LVB SWITCHGEAR SERVICES LTD |
| LYNC VIRTUAL TECHNOLOGY SERVICES, LLC |
| LYNCON CONSTRUCTION INC. |
| MACQUARIE CAPITAL FUNDING LLC |
| MAGNITUDE SOFTWARE, INC. |
| MAINE REVENUE SERVICES |
| Manuel D. Medina |
| MAPP Ltd, |
| MARCO INC |
| MARICOPA COUNTY TREASURER'S OFFICE |
| MASSACHUSETTS DEPARTMENT OF REVENUE |
| MAYER BROWN, LLP |
| Mayflower Commercial Cleaning, Inc. |
| M-C PLAZA II & III LLC |
| M-C PLAZA II AND III LLC |
| MCCOLLISTER |
| McNulty, Martin D., Jr. |
| MCS OPCO LLC (QUALITY UPTIME SERVIC |
| Medina Capital Fund II - SIS Holdco LP |
| Medina Capital Fund II SIS Holdco LP |
| MEDINA DC ASSETS LLC |
| MEGA - POWER INC |
| MEGAPORT (USA), INC. |

| |
|---|
| MEGAWATT ELECTRICAL |
| MEJETICKS |
| METADATA |
| METLIFE |
| METTEL |
| MFXCHANGES US, INC. |
| MIAMI DADE - TAX COLLECTOR |
| MIAMI-DADE COUNTY |
| MICHIGAN DEPARTMENT OF TEASURY |
| MICROCORP, LLC |
| MICROSOFT ONLINE INC. |
| MICROTECH |
| MID-ATLANTIC POWER SPECIALISTS INC |
| MID-ATLANTIC SERVICE 360 |
| MIDVALE INDEMNITY COMPANY |
| MIDWEST TELECOM CONSULTING, INC. |
| MILLER & CHEVALIER CHARTERED |
| Mills & Reeve LLP |
| MIMECAST |
| MINNESOTA DEPARTMENT OF REVENUE |
| MINNESOTA SECRETARY OF STATE - BUSINESS SERVICES |
| MINTZ, LEVIN, COHN, FERRIS, GLOVSKY ANDPOPEO |
| MISSISSIPPI TAX COMMISSION |
| MISSOURI DEPARTMENT OF REVENUE- TAXATION DIVISION |
| Mitch Fonseca |
| MITEL NETWORK SERVICES AGENCY |
| MIZUHO BANK |
| MODERN HEATING & AIR CONDITIONING, LLC |
| MONDAY.COM |
| MOODY'S INVESTOR SERVICE |
| MSI MECHANICAL SYSTEMS, INC. |
| MTM TECHNOLOGIES INC |
| MUNDO MERGER SUB 2, LLC |
| NALCO COMPANY |
| NANCY C. MILLAN, TAX COLLECTOR |
| NATIONAL ELECTRIC |
| National Grid |
| NATIONAL UNION & FIRE INSURANCE COMPANY OF PITTSBURGH, PA |
| NATIONWIDE COMMUNICATIONS, INC. |
| Neamsby Investments Inc. |
| NELSON FONSECA |
| Nelson Fonseca |
| NETWORK & TECHNOLOGY SOLUTIONS, INC. |

| |
|---|
| NEVADA SECRETARY OF STATE |
| NEW HAMPSHIRE DEPARTMENT OF REVENUE ADMINISTRATION |
| NEW MEXICO TAXATION AND REVENUE DEPARTMENT |
| NEW TECH SOLUTIONS |
| NEW YORK STATE DEPARTMENT OF REVENUE |
| NEXTGEN UX |
| NEXUS ALARM & SUPPRESSION |
| Nicor Gas |
| NORSEMAN |
| NORTH AMERICAN CAPACITY INSURANCE COMPANY |
| NORTH CAROLINA DEPARTMNET OF REVENUE |
| NORTH DAKOTA OFFICE OF STATE TAX COMMISSIONER |
| North Hudson Sewerage Auth |
| NSC FACILITY MANAGEMENT LLC |
| NVIDIA |
| NYC DEPARTMENT OF FINANCE |
| NYS CORPORATION TAX |
| NYSE GROUP |
| OCHS SERVICE INC DBA PRO-TEC ELECTR |
| OHIO DEPARTMENT OF TAXATION |
| OKLAHOMA TAX COMMISSION |
| ONENET GLOBAL |
| ONETEL |
| OPTIV SECURITY, INC. |
| OPTUM BANK |
| OPTUM BEHAVIORAL HEALTH |
| OPUS INTERACTIVE INC |
| ORACLE AMERICA, INC. |
| ORACLE AMERICA, INC. |
| OREGON DEPARTMENT OF REVENUE |
| OREGON SECRETARY OF STATE |
| ORR PROTECTION SYSTEMS INC |
| OTIS ELEVATOR COMPANY |
| OVERBRIGHT (EEC) |
| Owl Rock Technology Finance Corp. |
| PA DEPARTMENT OF REVENUE |
| PÃ‰REZ-LLORCA ABOGADOS, S.L.P. |
| PACIFIC COAST TRANE SALES AND SERVI |
| PACIFIC GAS AND ELECTRIC COMPANY |
| PACKET FUSION INC |
| ParsonsKellogg, LLC |
| PARTNER FORCES LLC |
| PARTNERTEL-LCTS TRNS |

| |
|---|
| PB&J PARTNERS LLC |
| PCCW |
| PEAK+ |
| PEARSON |
| PEGASUS TECHNOLOGY SOLUTIONS |
| PETERSON POWER SYSTEMS INC |
| PFISTER ROOFING |
| PG&E |
| PINNACLE BUSINESS SOLUTIONS |
| PINNACLE TECHNOLOGY PARTNERS |
| PISCATAWAY TWP - MIDDLESEX CO TAX COLLECTOR |
| PLANETONE COMMUNICATIONS |
| PNC BANK |
| Polaris Realty (Canada) Limited |
| POLSINELLI, PC |
| POLTEQ TEST SERVICE BV |
| POST ROAD EQUIPMENT FINANCE, LLC |
| POWER COOL ENGINEERS PLLC |
| POWER DISTRIBUTION INC |
| POWER SOLUTIONS LLC |
| POWER STORAGE SOLUTIONS |
| PRAETORIAN POWER PROTECTION LLC |
| PRESIDIO NETWORKED SOLUTIONS, INC. |
| PricewaterhouseCoopers, LLP |
| PRIM BAC COLONNADE, LLC |
| Primary Integration Solutions Europe, Ltd. |
| Primary Integration Solutions, Inc. |
| PRIME ELECTRIC, INC. *WASHINGTON* |
| PRINCIPAL FINANCIAL |
| Prism DCS Limited |
| PROOFPOINT |
| PSB NORTHERN CALIFORNIA INDUSTRIAL |
| PSE&G Co |
| Puget Sound Energy |
| PURE STORAGE |
| QBE INSURANCE CORPORATION |
| QUALYS |
| QUICK SOLUTIONS LLC |
| RADICAL CONSULTING LLC |
| RAHI SYSTEMS |
| RAMON FERNANDEZ ARACIL FILHO |
| RAMPRATE, INC. |
| RAPID ACCESS COMMUNICATION ENTERPRISES |

| |
|---|
| RAPID SOLUTIONS, LLC |
| Raymond Li |
| RAYNER HOLDINGS |
| RAYTHEON COMPANY |
| REALCOM SOLUTIONS, LLC |
| RECIPROCAL GROUP |
| RED RIVER, LLC |
| REDWOOD DC ASSETS LLC |
| REFINITIV |
| Republic Services - Sun Valley, Ca |
| Republic Services 183 |
| Republic Services Of Santa Clara County |
| Republic Services, Inc. - Atlanta, Ga |
| Republic Services, Inc. - Gardena,Ca |
| Revenu Quebec |
| RISK INTERNATIONAL SERVICES, INC. |
| RK ELECTRIC INC |
| ROBERT DERECTOR PE PC |
| ROBLOX |
| Roger Meltzer |
| ROI COMMUNICATIONS |
| ROSENDIN ELECTRIC INC |
| RREEF CPIF 2425 BUSSE ROAD, LLC |
| RREFF CPIF 2425 BUSSE ROAD LLC |
| Rs Titan LLC |
| RS TITAN, LLC |
| Ryan Tax Compliance Services, LLC |
| RYAN, LLC |
| S&P GLOBAL MARKET INTELLIGENCE LLC |
| SAAVIS COMMUNICATIONS CANADA, INC. |
| Sabey Data Center |
| SABEY DATA CENTER, LLC |
| SAFETY SPECIALTY INSURANCE COMPANY |
| SALESFORCE |
| SALESLOFT - PLATFORM |
| SALLES, FRANCO DE CAMPOS, BRUSCHINI ADVOGADOS |
| SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT |
| SANDLER PARTNERS |
| SAP |
| SAP AMERICA, INC. |
| SAVVIS CANADA, LLC |
| SAVVIS COMMUNICATIONS CORPORATION |
| SAVVIS COMMUNICATIONS, LLC |

| |
|---|
| SAVVIS, INC. |
| SBE ELECTRICAL CONTRACTING, INC. |
| SCA TRANSACTION SERVICES |
| SCAN COMPUTERS INTERNATIONAL LTD |
| SCC DTAC - DEPARTMENT OF TAX COLLECTIONS |
| SCHELLMAN & COMPANY |
| SCHELLMAN COMPLIANCE, LLC |
| SCHNEIDER ELECTRIC IT CORPORATION |
| Schulze, Trent |
| SCOTT COUNTY |
| SECURITAS CANADA LIMITED |
| SECURITAS SECURITY SERVICES USA INC |
| SEGRERA ASSOCIATES, INC. |
| SELECTOR SOFTWARE, INC. |
| SEMRUSH |
| SEQUOYAH ELECTRIC LLC |
| SERVIAM, LLC |
| SERVICENOW, INC. |
| Shakopee Public Utilities Comm |
| SHAKOPEE PUBLIC UTILITIES COMMISSION |
| SHAW ROAD LLC |
| Shell Energy Solutions |
| SHI INTERNATIONAL CORP |
| SHOOK HARDY BACON, LLP |
| SHUTTLEWORTH & INGERSOLL PLC |
| SI CHI01 ABS LLC |
| SIEMENS INDUSTRY INC. |
| SIMPLIFY INC |
| SIRIUS COMPUTER SOLUTIONS |
| SJ SOLUTIONS |
| SKY TECHNOLOGY PARTNERS |
| Slough Borough Council |
| Slough Trading Estate Limited |
| SMARTLOOK |
| Socalgas |
| SOFTCAT PLC |
| SOUTH DAKOTA DEPARTMENT OF REVENUE |
| Southern California Edison |
| SOUTHERN CALIFORNIA EDISON COMPANY ("EDISON") |
| Southwest Gas |
| SOUTHWIRE COMPANY, LLC |
| SPACE DCS PTE LTD. |
| SPEARHEAD NETWORKS, INC. |

| |
|---|
| SPECIALTY AC PRODUCTS |
| SPECTRUM TECHNOLOGIES LLC. |
| SPICO SOLUTIONS, INC. |
| Spoon Exhibit Services, Inc. |
| STACK INFRASTRUCTURE USA, LLC |
| Starboard Value & Opportunity C LP |
| Starboard Value & Opportunity Master Fund L LP |
| Starboard Value & Opportunity Master Fund Ltd. |
| Starboard Value & Opportunity S LLC |
| STARBOARD VALUE ACQUISITION CORP. |
| Starboard Value LP |
| Starboard X Master Fund Ltd. |
| STATE OF CONNECTICUT DEPARTMENT OF REVENUE SERVICES |
| STATE OF HAWAII-DEPARTMENT OF TAXATION |
| STATE OF NEVADA- SALES/USE |
| STATE OF NJ - SALES AND USE TAX |
| STATE OF RHODE ISLAND DIVISION OF TAXATION |
| STATE OF WASHINGTON DEPARTMENT OF REVENUE |
| STATE OF WEST VIRGINIA - STATE TAX DEPARTMENT |
| STRATACORE |
| STREAMLINE LLC |
| STRUCTURE TONE, LLC |
| STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, PC |
| Suburban Waste Mn, Llc |
| SULLIVAN & CROMWELL |
| SUMMIT 7 SYSTEMS, LLC |
| SUNBELT CONTROLS INC |
| SUPERIOR AUTOMATIC SPRINKLER CO |
| SUPERIOR ONE ELECTRIC, INC. |
| SVAC Sponsor LLC |
| SWITCH LTD |
| Symmetry Energy Solutions Llc |
| SYNCHRONOSS |
| SYNOPSYS |
| TALENT WISE, INC. |
| Tampa Electric |
| TAMPA ELECTRIC COMPANY |
| TAX COLLECTOR OF JERSEY CITY |
| TAYLOR CONSULTING AND CONTRACTING |
| TD Synnex UK Ltd. |
| Teacher Retirement Systems of Texas |
| TECHNOGUARD INC |
| TEKEFFICIENT INC |

| |
| --- |
| TELADVOCATE COMMUNICATIONS |
| TELARUS |
| TELECOM BROKERAGE, INC. (TBI) |
| TELECOM CONSULTING GROUP |
| TELEDOMANI, INC. |
| TELEHOUSE INTERNATIONAL |
| TELEHOUSE INTERNATIONAL CORPORATION OF AMERICA |
| TELEPROVIDERS, INC. |
| TELMAC CORP. |
| TENNESSEE DEPARTMENT OF REVENUE ANDREW JACKSON STATE OFFICE BUILDING |
| TETHERVIEW |
| TEXAS COMPTROLLER OF PUBLIC ACCOUNTS |
| THE BLUESHIRT GROUP, LLC |
| THE BRANDT COMPANIES LLC |
| THE CITY OF IRVINE |
| THE CITY OF SANTA CLARA BUSINESS TAX UNIT |
| THE GUARDIAN LIFE INSURANCE COMPANY |
| THE HACKETT GROUP |
| THE HARTFORD |
| THE KAYBLE GROUP |
| THE MAGNES GROUP INC. |
| THE NASDAQ STOCK MARKET, LLC. |
| THE ULTIMATE SOFTWARE GROUP, INC |
| THE WORK NUMBER |
| THERMA LLC |
| THOMSON REUTERS |
| Thunder Consulting, Inc. |
| TIDAL TIME SOLUTIONS, LLC |
| Tidan, Inc. |
| TOTAL FILTRATION SERVICES INC |
| TOTAL TELECOM MANAGEMENT |
| TRANE COMPANY |
| TRANE US INC - WISCONSIN |
| TRANSAMERICA LIFE |
| TRUMBULL INSURANCE COMPANY |
| TRUSTCO PLC |
| TSX INC |
| TW CONROY 2, LLC |
| TW CONROY 2, LLC |
| UKG, INC. |
| ULTIMATE SERVICE ASSOCIATES |
| UNITAS GLOBAL INC |

| |
|---|
| UNITEDHEALTHCARE |
| UPSTACK, INC. |
| UTAH STATE TAX COMMISSION |
| UT-SERVICES |
| VENABLE, LLP |
| VENICOM |
| Veolia Water New Jersey |
| VERITY COMMERCIAL, LLC |
| VERMONT DEPARTMENT OF TAXES |
| VERTEX, INC. |
| VERTIV CORPORATION |
| VICTOR F. SEMAH |
| Village Of Bensenville |
| ViON |
| VIRGINIA DEPARTMENT OF TAXATION |
| VIRTUAL INNOVATION |
| VIRTUAL TELECOMM, LLC |
| VISION SERVICE PLAN (VSP) INSURANCE COMPANY |
| W.E. BOWERS INC |
| W.W. Grainger, Inc. |
| Washington Gas |
| WASHINGTON STATE DEPARTMENT OF REVENUE |
| Waste Management Of Virginia, Inc. |
| Water District No 20 |
| WB ELECTRIC INC |
| WEBAIR INTERNET DEVELOPMENT INC |
| WEEHAWKEN TWP COLLECTOR |
| WENDY BURGESS, TAX ASSESSOR- COLLECTOR |
| WESTERN TELECOM GROUP, LLC |
| WESTVEN |
| WHITEFORD, TAYLOR & PRESTON, LLP |
| WILLIS TOWERS WATSON US LLC |
| WILSON JAMES LIMITED |
| WINGSPIRE EQUIPMENT FINANCE, LLC |
| WISCONSIN DEPARTMENT OF REVENUE |
| WISTIA |
| WITHSECURE INC. |
| Wokingham Borough Council |
| WOKINGHAM DISTRICT COUNCIL |
| WORKIVA INC. |
| WORLD FUEL SERVICES, INC |
| WTG2 (WTG SQUARED) |
| WWT |

| |
|---|
| X4 COMMUNICATIONS |
| XACTLY CORPORATION |
| Xcel Energy |
| XELA COMMUNICATIONS, LLC |
| XITENYS |
| XORSECURITY |
| ZADARA STORAGE INC. |
| ZAYO GROUP LLC |
| ZENLAYER |
| ZENLAYER |
| ZEPLIN |
| ZOHO CORPORATION |
| Zoom Video Communications, Inc. |
| ZoomInfo Technologies LLC |
| ZURICH INSURANCE COMPANY LTD. |

**Schedule 2**

**Potential Parties in Interest with Connections**

Potential Parties in Interest or their affiliates for whom Deloitte Tax LLP or its affiliates, or certain non-U.S. member firms of Deloitte Touche Tohmatsu Limited, has provided or is currently providing services in matters unrelated to these chapter 11 cases, or with whom such parties have other relationships, including banking relationships.

| |
|---|
| 36TH STREET CAPITAL PARTNERS, LLC |
| ABB INC. |
| ACCENTURE |
| ACCO ENGINEERED SYSTEMS |
| ACCU-TECH CORP |
| ADOBE CLOUD |
| ADT COMMERCIAL LLC |
| ADVANCED MICRO DEVICES |
| AKAMAI |
| AKIN GUMP STRAUSS HAUER & FELD LLP |
| ALIXPARTNERS |
| ALLIED WORLD ASSURANCCE COMPANY (U.S.) INC. |
| ALTERYX, INC. |
| American Electric Power |
| AMERICAN INTERNATIONAL GROUP, INC. (AIG) |
| AON CONSULTING, INC. |
| AON RISK SERVICES CENTRAL, INC. |
| AON RISK SERVICES COMPANIES, INC. |
| APEX SYSTEMS, LLC |
| ARAMARK REFRESHMENT SERVICES |
| Arapahoe Co Wtr & Wstewtr Auth |
| ARIBA, INC. |
| ARIZONA DEPARTMENT OF REVENUE |
| ARMSTRONG TEASDALE LLP |
| AT&T |
| ATOS |
| AUTOMATED LOGIC CONTRACTING SERVICES INC |
| AXA XL - PROFESSIONAL INSURANCE |
| Bain Capital Credit LP |
| BANK OF AMERICA |
| BARCLAYS BANK PLC |
| BCEC-SIS Holdings LP |
| BDO USA LLP |
| BEAZLEY GROUP |

| |
|---|
| BEAZLEY USA SERVICES, INC. |
| BECHTEL DIRECT |
| BLACKLINE SYSTEMS, INC. |
| BLUE TORCH |
| BMS GROUP LTD. |
| BOSTON LIMITED |
| British Columbia Ministry of Finance |
| BRUNELLO |
| BUSINESSWIRE |
| BYTEDANCE |
| CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION |
| CALIFORNIA FRANCHISE TAX BOARD |
| Calpine Energy Solutions |
| Canada Revenue Agency |
| CANOPIUS US INSURANCE |
| CAPGEMINI |
| CARRIER CORPORATION |
| CDW DIRECT LLC |
| Cede & Co. |
| CENTRE TECHNOLOGIES |
| CENTURY LINK AUSTRALIA PTY LIMITED |
| CENTURY LINK JAPAN LTD |
| CENTURY LINK UK LIMITED |
| CERIDIAN HCM, INC |
| CHICAGO MERCANTILE EXCHANGE INC |
| CHUBB |
| CITIBANK, N.A. |
| CITICORP NORTH AMERICA, INC. |
| CITY AND COUNTY OF DENVER, COLORADO |
| CITY OF ALBUQUERQUE PLANNING DEPARTMENT |
| CITY OF AURORA TAX & LICENSING |
| CITY OF BATON ROUGE- PARISH OF EAST BATON ROUGE DEPT OF FINANCE - REVENUE DIVISION |
| CITY OF CHICAGO |
| City Of Fort Worth Water Dept |
| City Of Santa Clara |
| City of Seattle |
| CITY OF SEATTLE - LICENSE AND TAX ADMINISTRATION |
| CLOUDWIRX LLC |
| CLUNE CONSTRUCTION COMPANY, LP |
| Coalfire Systems, Inc. |
| COFORGE (NIIT) |
| COGNIZANT |

| |
|---|
| Cole Schotz P.C. |
| COLORADO BRASIL COLOCATION E DATA CENTER LTDA |
| COLORADO BUYER INC. |
| COLORADO DEPARTMENT OF REVENUE |
| COLORADO DEPARTMENT OF REVENUE TAXATION DIVISION |
| COLORADO NEW COMMUNCATIONS, LLC |
| COMED |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE |
| COMPASS DATA CENTERS MSP I, LLC |
| COMPTOLLER OF MARYLAND - REVENUE ADMINISTRATION DIVISION |
| COMTEL COMMUNICATIONS |
| CONNECTICUT DEPARTMENT OF REVENUE SERVICES |
| Constellation Newenergy Gas Dv |
| Constellation Newenergy Inc |
| Container Systems, Inc. |
| CONVERGINT TECHNOLOGIES |
| COOK COUNTY TREASURER |
| COUNTY OF ORANGE |
| CPG BEYOND, INC. |
| CPUS IRVINE CROSSING, LP |
| CRC Group |
| CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH |
| CROWDSTRIKE, INC. |
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY |
| CSC DOMAIN |
| CUMMINS SALES AND SERVICE |
| CyrusOne AMS3, B.V. |
| CYXTERA AUSTRALIA PTY. LTD. |
| CYXTERA BRASIL COLOCATION E DATA CENTER LTDA |
| CYXTERA CANADA TRS, ULC |
| CYXTERA CANADA, LLC |
| CYXTERA COMMUNICATIONS CANADA, INC. |
| CYXTERA COMMUNICATIONS CANADA, ULC |
| CYXTERA COMMUNICATIONS, LLC |
| CYXTERA DATA CENTERS, INC. |
| CYXTERA DC HOLDINGS, INC. |
| CYXTERA DC PARENT HOLDINGS, INC. |
| CYXTERA DIGITAL SERVICES, LLC |
| CYXTERA EMPLOYER SERVICES, LLC |
| CYXTERA FEDERAL GROUP TRS, LLC |
| CYXTERA FEDERAL GROUP, INC. |
| CYXTERA GERMANY GMBH |
| CYXTERA GERMANY TRS, GMBH |

| |
|---|
| CYXTERA HOLDINGS, LLC |
| CYXTERA HONG KONG LIMITED |
| CYXTERA JAPAN, LTD. |
| Cyxtera Management SIS Holdings LLC |
| CYXTERA MANAGEMENT, INC. |
| CYXTERA NETHERLANDS B.V. |
| CYXTERA RECEIVABLES HOLDINGS, LLC |
| CYXTERA SINGAPORE PTE. LTD. |
| CYXTERA SINGAPORE TRS PTE. LTD. |
| CYXTERA TECHNOLOGIES MARYLAND, INC. |
| CYXTERA TECHNOLOGIES, INC. |
| CYXTERA TECHNOLOGIES, LLC |
| CYXTERA TECHNOLOGY UK LIMITED |
| CYXTERA UK TRS LIMITED |
| D.F. KING & CO., INC. |
| DAIKIN APPLIED AMERICAS INC |
| DATA SOLUTIONS |
| DATAVISION, INC. |
| DAVIS POLK & WARDWELL, LLP |
| DCCO TUKWILA, LLC |
| DELL |
| DELL MARKETING L.P. |
| DELOITTE & TOUCHE LLP |
| DEMANDBASE - PLATFORM |
| DIGITAL REALTY TRUST LP |
| DINAN, INC. |
| Direct Energy Business |
| DLA PIPER LLP |
| DOCUSIGN, INC. |
| Dominion Energy Virginia |
| DONNELLEY FINANCIAL SOLUTIONS |
| DOUGLAS COUNTY OCCUPATIONAL TAX DEPARTMENT |
| DR FORTRESS |
| DXC |
| DXC Technology |
| EASTGROUP PROPERTIES, LP |
| EATON CORPORATION - CHICAGO |
| Eaton Vance Management |
| EPLUS GROUP |
| EPLUS TECHNOLOGY, INC |
| EQUINIX DO BRAZIL |
| ERNST & YOUNG ABOGADOS, S.L. |
| ETRADE FINANCIAL CORPORATE SERVICES, INC |

| |
|---|
| Eversource |
| EVT |
| FICO |
| FINANCIAL ACCOUNTING STANDARDS BOARD |
| FLORIDA DEPARTMENT OF REVENUE |
| FMR LLC |
| FOX ROTHSCHILD, LLP |
| FRANKLIN ELECTRIC COMPANY |
| FTI Consulting |
| FUJITSU |
| Fujitsu Services Limited - UK (GBP) |
| FUTURE TECH |
| G TREASURY SS LLC |
| GARTNER INC. |
| GEORGIA DEPARTMENT OF REVENUE |
| GETTY IMAGES |
| GIBSON, DUNN, & CRUTCHER LLP |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA |
| GRANITE |
| GREENBERG TRAURIG |
| GUGGENHEIM |
| HARBOR |
| Harrison, Paul Light |
| HEWLETT PACKARD ENTERPRISE COMPANY |
| HEWLETT PACKARD FINANCIAL |
| Hewlett Packard International Bank DAC |
| HILLSBOROUGH COUNTY TAX COLLECTOR |
| HISCOX INSURANCE COMPANY, INC. |
| HITT CONTRACTING INC |
| HMRC |
| HOLLAND & KNIGHT LLP |
| HOULIHAN LOKEY FINANCIAL ADVISORS, INC. |
| Howden Specialty |
| HPE FINANCIAL SERVICES CANADA COMPANY |
| HSBC BANK USA, N.A. |
| I/O PHOENIX ONE, LLC |
| IBM CORPORATION |
| IDAHO STATE TAX COMMISSION |
| ILLINOIS DEPARTMENT OF REVENUE |
| INDIANA DEPARTMENT OF REVENUE |
| INFOSYS |
| INGRAM MICRO |
| Ingram Micro UK Ltd |

| |
|---|
| INGRAM MICRO/PROMARK |
| INSIGHT - PCM |
| INTEGRITY NETWORK SOLUTIONS, LLC |
| INTELLIGENT WAVES LLC |
| IOWA DEPARTMENT OF REVENUE |
| IRON MOUNTAIN DATA CENTERS, LLC |
| IRONSHORE |
| JP MORGAN CHASE BANK, N.A. |
| KAISER PERMANENTE |
| KANSAS DEPARTMENT OF REVENUE |
| Katten Muchin Rosenman LLP |
| KENTIK TECHNOLOGIES, INC. |
| KENTUCKY DEPARTMENT OF REVENUE |
| KING COUNTY TREASURY |
| KIRKLAND & ELLIS LLP |
| Knight Frank LLP |
| LATHAM & WATKINS, LLP |
| LAZARD FRERES & CO |
| LD ACQUISITION COMPANY 16 LLC |
| LDM PRODUCTS INC (SUBZERO ENGINEERI |
| LEXISNEXIS |
| LIBERTY MUTUAL INSURANCE CO |
| LIBERTY SURPLUS INSURANCE CORPORATION |
| Linkedin Corporation |
| LOS ANGELES COUNTY TAX COLLECTOR |
| LOUISIANA DEPARTMENT OF REVENUE |
| LUCID SOFTWARE, INC. |
| LUMEN TECHNOLOGIES |
| Lumen Technologies Service Group LLC |
| MACQUARIE CAPITAL FUNDING LLC |
| MAGNITUDE SOFTWARE, INC. |
| MAINE REVENUE SERVICES |
| MARCO INC |
| MARICOPA COUNTY TREASURER'S OFFICE |
| MASSACHUSETTS DEPARTMENT OF REVENUE |
| MAYER BROWN, LLP |
| Medina Capital Fund II - SIS Holdco LP |
| Medina Capital Fund II SIS Holdco LP |
| MEGAPORT (USA), INC. |
| METADATA |
| METLIFE |
| MFXCHANGES US, INC. |
| MIAMI DADE - TAX COLLECTOR |

| |
|---|
| MICHIGAN DEPARTMENT OF TEASURY |
| MICROSOFT ONLINE INC. |
| MICROTECH |
| MIDVALE INDEMNITY COMPANY |
| MILLER & CHEVALIER CHARTERED |
| Mills & Reeve LLP |
| MIMECAST |
| MINNESOTA SECRETARY OF STATE - BUSINESS SERVICES |
| MINTZ, LEVIN, COHN, FERRIS, GLOVSKY ANDPOPEO |
| MISSISSIPPI TAX COMMISSION |
| MISSOURI DEPARTMENT OF REVENUE- TAXATION DIVISION |
| MITEL NETWORK SERVICES AGENCY |
| MIZUHO BANK |
| MODERN HEATING & AIR CONDITIONING, LLC |
| MONDAY.COM |
| MOODY'S INVESTOR SERVICE |
| MUNDO MERGER SUB 2, LLC |
| NALCO COMPANY |
| National Grid |
| NATIONAL UNION & FIRE INSURANCE COMPANY OF PITTSBURGH, PA |
| NATIONWIDE COMMUNICATIONS, INC. |
| NEVADA SECRETARY OF STATE |
| NEW HAMPSHIRE DEPARTMENT OF REVENUE ADMINISTRATION |
| NEW MEXICO TAXATION AND REVENUE DEPARTMENT |
| NEW YORK STATE DEPARTMENT OF REVENUE |
| Nicor Gas |
| NORSEMAN |
| NORTH AMERICAN CAPACITY INSURANCE COMPANY |
| NORTH CAROLINA DEPARTMNET OF REVENUE |
| NSC FACILITY MANAGEMENT LLC |
| NVIDIA |
| NYC DEPARTMENT OF FINANCE |
| NYSE GROUP |
| OHIO DEPARTMENT OF TAXATION |
| OKLAHOMA TAX COMMISSION |
| ONETEL |
| OPTIV SECURITY, INC. |
| OPTUM BANK |
| ORACLE AMERICA, INC. |
| OREGON SECRETARY OF STATE |
| OTIS ELEVATOR COMPANY |
| Owl Rock Technology Finance Corp. |
| PACIFIC GAS AND ELECTRIC COMPANY |

| |
|---|
| PCCW |
| PEARSON |
| PÉREZ-LLORCA ABOGADOS, S.L.P. |
| PETERSON POWER SYSTEMS INC |
| PG&E |
| PNC BANK |
| POLSINELLI, PC |
| POWER DISTRIBUTION INC |
| POWER SOLUTIONS LLC |
| PRESIDIO NETWORKED SOLUTIONS, INC. |
| PRICEWATERHOUSECOOPERS, LLP |
| Primary Integration Solutions Europe, Ltd. |
| Primary Integration Solutions, Inc. |
| PRIME ELECTRIC, INC. *WASHINGTON* |
| PRINCIPAL FINANCIAL |
| PROOFPOINT |
| PSB NORTHERN CALIFORNIA INDUSTRIAL |
| PSE&G Co |
| Puget Sound Energy |
| PURE STORAGE |
| QBE INSURANCE CORPORATION |
| QUALYS |
| RAYNER HOLDINGS |
| RAYTHEON COMPANY |
| RED RIVER, LLC |
| REDWOOD DC ASSETS LLC |
| REFINITIV |
| Republic Services - Sun Valley, Ca |
| ROBLOX |
| ROSENDIN ELECTRIC INC |
| RREEF CPIF 2425 BUSSE ROAD, LLC |
| RYAN, LLC |
| S&P GLOBAL MARKET INTELLIGENCE LLC |
| SAAVIS COMMUNICATIONS CANADA, INC. |
| SABEY DATA CENTER, LLC |
| SALESFORCE |
| SALESLOFT - PLATFORM |
| SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT |
| SAP |
| SAP AMERICA, INC. |
| SAVVIS CANADA, LLC |
| SAVVIS COMMUNICATIONS CORPORATION |
| SAVVIS COMMUNICATIONS, LLC |

| |
|---|
| SAVVIS, INC. |
| SCC DTAC - DEPARTMENT OF TAX COLLECTIONS |
| SCHNEIDER ELECTRIC IT CORPORATION |
| SECURITAS CANADA LIMITED |
| SECURITAS SECURITY SERVICES USA INC |
| SEMRUSH |
| SERVICENOW, INC. |
| Shell Energy Solutions |
| SHI INTERNATIONAL CORP |
| SHOOK HARDY BACON, LLP |
| SIEMENS INDUSTRY INC. |
| SIRIUS COMPUTER SOLUTIONS |
| SMARTLOOK |
| SOFTCAT PLC |
| SOUTH DAKOTA DEPARTMENT OF REVENUE |
| SOUTHERN CALIFORNIA EDISON COMPANY ("EDISON") |
| Southwest Gas |
| SOUTHWIRE COMPANY, LLC |
| SPECTRUM TECHNOLOGIES LLC. |
| STACK INFRASTRUCTURE USA, LLC |
| STARBOARD VALUE ACQUISITION CORP. |
| STATE OF HAWAII-DEPARTMENT OF TAXATION |
| STATE OF NJ - SALES AND USE TAX |
| STATE OF RHODE ISLAND DIVISION OF TAXATION |
| STATE OF WASHINGTON DEPARTMENT OF REVENUE |
| STATE OF WEST VIRGINIA - STATE TAX DEPARTMENT |
| SULLIVAN & CROMWELL |
| SUMMIT 7 SYSTEMS, LLC |
| SWITCH LTD |
| Symmetry Energy Solutions Llc |
| SYNCHRONOSS |
| SYNOPSYS |
| TALENT WISE, INC. |
| Tampa Electric |
| TAMPA ELECTRIC COMPANY |
| TD Synnex UK Ltd. |
| Teacher Retirement Systems of Texas |
| TELARUS |
| TELECOM BROKERAGE, INC. (TBI) |
| TELEHOUSE INTERNATIONAL |
| TENNESSEE DEPARTMENT OF REVENUE ANDREW JACKSON STATE OFFICE BUILDING |
| TEXAS COMPTROLLER OF PUBLIC ACCOUNTS |

| |
|---|
| THE BLUESHIRT GROUP, LLC |
| THE GUARDIAN LIFE INSURANCE COMPANY |
| THE HARTFORD |
| THE NASDAQ STOCK MARKET, LLC. |
| THE ULTIMATE SOFTWARE GROUP, INC |
| THERMA LLC |
| THOMSON REUTERS |
| TOTAL FILTRATION SERVICES INC |
| TRANE COMPANY |
| TRANE US INC - WISCONSIN |
| TRANSAMERICA LIFE |
| TRUMBULL INSURANCE COMPANY |
| TRUSTCO PLC |
| TSX INC |
| UKG, INC. |
| UNITAS GLOBAL INC |
| UNITEDHEALTHCARE |
| UPSTACK, INC. |
| UTAH STATE TAX COMMISSION |
| VENABLE, LLP |
| Veolia Water New Jersey |
| VERMONT DEPARTMENT OF TAXES |
| VERTEX, INC. |
| VERTIV CORPORATION |
| ViON |
| VIRGINIA DEPARTMENT OF TAXATION |
| VIRTUAL TELECOMM, LLC |
| VISION SERVICE PLAN (VSP) INSURANCE COMPANY |
| W.W. Grainger, Inc. |
| Washington Gas |
| Waste Management Of Virginia, Inc. |
| WILLIS TOWERS WATSON US LLC |
| WISCONSIN DEPARTMENT OF REVENUE |
| WISTIA |
| WORKIVA INC. |
| WORLD FUEL SERVICES, INC |
| WWT |
| XACTLY CORPORATION |
| Xcel Energy |
| ZAYO GROUP LLC |
| ZENLAYER |
| ZEPLIN |
| ZOOM VIDEO COMMUNICATIONS, INC. |

| |
|---|
| ZoomInfo Technologies LLC |
| ZURICH INSURANCE COMPANY LTD. |