UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**BALLARD SPAHR LLP**

| | |
|---|---|
| Leslie C. Heilman<br>Laurel D. Roglen<br>Margaret A. Vesper<br>919 N. Market Street, 11th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 252-4465<br>Facsimile: (302) 252-4466<br>E-mail:  heilmanl@ballardspahr.com<br>            roglenl@ballardspahr.com<br>            vesperm@ballardspahr.com | Dustin P. Branch<br>Nahal Zarnighian<br>2029 Century Park East, Suite 1400<br>Los Angeles, CA 90067-2915<br>Telephone: (424) 204-4354<br>Facsimile: (424) 204-4350<br>E-mail:  branchd@ballardspahr.com<br>            zarnighiann@ballardspahr.com |

*Counsel to ACPF Nova Data Center, LLC and RREEF CPIF 2425 Busse Road, LLC*

| | |
|---|---|
| In Re:<br><br>CYXTERA TECHNOLOGIES, INC., *et al.*,[1]<br><br>Debtors. | Case No.: 23-14853 (JKS)<br><br>Chapter 11<br><br>Judge John K. Sherwood<br><br>(Jointly Administered)<br><br>**Related to Docket Nos. 648, 649, and 650** |

**LIMITED OMNIBUS OBJECTION OF ACPF NOVA DATA CENTER, LLC AND RREEF CPIF 2425 BUSSE ROAD, LLC TO THE (I) SALE, (II) THIRD AMENDED JOINT PLAN OF REORGANIZATION OF CYXTERA TECHNOLOGIES, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE, AND (III) NOTICE OF FILING PLAN SUPPLEMENT FOR THE THIRD AMENDED JOINT PLAN OF REORGANIZATION OF CYXTERA TECHNOLOGIES, INC. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

ACPF Nova Data Center, LLC and RREEF CPIF 2425 Busse Road, LLC (collectively, the "Landlords") hereby file this limited objection (the "Objection") to (i) *Notice of Sale Transaction* [Docket No. 648] (the "Sale Motion"), (ii) *Third Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of*

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/cyxtera. The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is: 2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

the Bankruptcy Code [Docket No. 649] (the "Plan") and (iii) *Notice of Filing Plan Supplement for the Third Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 650] (the "Plan Supplement"), and in support of this Objection, respectfully represent as follows:

## I. BACKGROUND FACTS

1. On June 4, 2023 (the "Petition Date"), Cyxtera Technologies, Inc. and each of its affiliated debtors (the "Debtors") filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") set forth in detail in paragraph 12 below.

3. On June 29, 2023, the Court entered the *Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. 180] (the "Bidding Procedures Order").

4. On August 29, 2023, the Debtors filed the *Notice of Cancellation of Auction* [Docket No. 472] notifying parties-in-interest that the Debtors, in accordance with the Bidding Procedures Order and in consultation with the Ad Hoc Group and the Committee, had cancelled the Auction scheduled to occur on August 30, 2023.

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

5. On November 1, 2023, the Debtors filed the Sale Motion. The Sale Motion seeks to sell substantially all of the Debtors' assets to Phoenix Data Center Holdings LLC (the "Purchaser") pursuant to the asset purchase agreement (the "APA") at the Confirmation Hearing scheduled for November 16, 2023.

6. Pursuant to the Plan, on November 3, 2023, the Debtors filed the Plan Supplement. Exhibit C to the Plan Supplement provides a list of locations the Debtors intend to assume as of the Effective Date or assume and assign in accordance with the APA. Landlords have yet to receive any adequate assurance information from the Debtors or Purchaser in connection with the assumption, or assumption and assignment, of the Leases.

I. **CURE AND ASSUMPTION AND ASSIGNMENT OBJECTIONS**

**General Objections to Assumption and Assignment of Leases**

7. While Landlords do not generally object to a sale of the Debtors' assets to maximize the value of the estate for the benefit of all creditors, including Landlords, Landlords do object to any proposed assumption and assignment of the Leases unless Debtors and/or the Purchaser comply with all of the requirements of Sections 365 of the Bankruptcy Code. Absent the ability, or willingness, of the Debtors and proposed assignee to satisfy said requirements, any proposed assumption and assignment must be denied. In addition, the amounts set forth in the Plan Supplement for the Leases do not accurately reflect the total amount owing under the Leases, and do not provide for the payment of certain accruing charges under the Leases.

8. Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code Debtors may only assume and assign the Landlords' Leases if "adequate assurance of future performance by the assignee of such . . . lease is provided, . . . ." The burden of proof on adequate assurance issues is with the Debtors. See In re Lafayette Radio Elecs. Corp., 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

9. Landlords have not received adequate assurance information relating to the Purchaser, and the Debtors or Purchaser should provide such adequate assurance information to Landlords prior to the assumption, or assumption and assignment, of the Leases.

### Cure Amounts

10. As a condition of assumption or assumption and assignment of the Leases, the Landlords are entitled to, among other things, the cure of all defaults under the Leases and to adequate assurance of future performance under the Leases. 11 U.S.C. § 365(b)(1)(A).

11. The amounts set forth in the Plan Supplement do not reflect all outstanding balances due and owing to Landlords under the Leases, and the proposed cure amounts do not account for accrued but unbilled charges which may come due in the future. The cure amounts set forth by the Debtors must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Leases, as set forth herein.

12. Set forth below are Landlords' monetary cure claims for amounts due, which are more fully detailed on Exhibits 1 & 2 attached hereto and incorporated into this Objection by reference. The cure amounts are subject to additional qualifications and modifications (such as reimbursement of attorney's fees) as more fully set forth below.

| LANDLORD | LOCATION | DEBTORS' CURE | LANDLORDS' CURE[3] | EXHIBIT |
|---|---|---|---|---|

---

[3] Landlords' Cure does not include charges arising after filing this Objection, or charges not directly billed to Landlords as of the filing of this Objection. Landlords' Cure also does not include charges that are billed directly to Debtors, including in some cases, real estate taxes. To the extent Landlords are later billed for any amount due

| LANDLORD | LOCATION | DEBTORS' CURE | LANDLORDS' CURE[3] | EXHIBIT |
|---|---|---|---|---|
| ACPF Nova Data Center, LLC | Sterling, VA | $273,325.00 | $322,748.02 | 1 |
| RREEF CPIF 2425 Busse Road, LLC | Elk Grove Village, IL | $330,554.00 | $659,604.31 | 2 |

13. In addition to the current outstanding rent and other monthly charges due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid, either as cure on the effective date of any assumption or assumption and assignment, or when properly billed under the Leases, including any obligations that have been deferred pursuant to any deferral or forbearance agreement between the Debtors and the Landlords.

    i.    <u>Attorneys' Fees, Costs and Interest</u>

14. The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. <u>See</u> 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. <u>In re LCO Enterprises</u>, 12 F.3d 938, 941 (9th Cir. 1993); <u>Elkton Associates v. Shelco Inc. (Matter of Shelco)</u>, 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured all pre-petition defaults).

15. The Debtors (or their assignee) takes the Leases *cum onere*—subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable

---

to Debtors' failure to pay, or to the extent that there are other charges that come due under the Lease after the date of this Objection, Landlords retain and reserve the right to payment of these amounts when billed in the ordinary course under the Lease (and to amend this Objection to the extent necessary for any amounts that come due under the Leases through the date of any cure payment).

- 5 -

provisions, of their leases. In re Wash. Capital Aviation & Leasing, 156 B.R. 167, 172 (Bankr. E.D. Va. 1993). If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under the Leases with the Debtors. See Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entm't, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petitions and must be paid as a condition of the assumption of the Leases. See In re Skylark Travel, Inc., 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990). Interest calculations are, therefore, not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' defaults under the Leases, and thus to properly assume the Leases. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

16. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases. Entm't, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. at 154. The fact that

a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay).  Id., see also In re Crown Books Corp., 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Props. v. Loews Cineplex Entm't Corp., et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

17. Accordingly, Landlords further request that they be reimbursed for all of their actual pecuniary losses including, but not limited to, attorney's fees and costs expended with regard to Debtors' bankruptcy proceedings.  To date, the Landlords estimate their attorney's fees and costs to be approximately $5,000 per Lease, as more fully set forth in Exhibits 1 and 2 attached hereto.

    ii.    Year-End Adjustments and Reconciliations and Indemnification

18. In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an

additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2022 may not yet have been billed, and such charges that are accruing for 2023 will not be billed until 2024).  In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.  Since Section 365(b) only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet been billed, these accrued, but unbilled, charges are not yet due under the Lease, and they do not create a current default that gives rise to a requirement of cure by the Debtors at this time.  The obligation to pay the year-end adjustments is, however, certainly a part of the obligation to provide adequate assurance of future performance.  Any attempt to assign the Leases "free and clear" of these obligations, therefore, must be denied.

19. Debtors remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due under the Leases.  The Purchaser assumes and assigns the Leases subject to their terms, and must assume and assign all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under the Leases.  Any final assumption or sale order should clearly state that the Purchaser will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of the Sale.  In addition, any provision in a sale order that purports to release the Debtors or Purchaser of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

20. In addition, the Leases require the Debtors or Purchaser to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known

- 8 -

until after the assumption or assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors, the successful bidder or their agents. Any assumption or assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose.[4] In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption or assumption and assignment of the Leases. Nothing in any sale order should preclude the Landlord from pursuing the Debtors, their insurance, or any other party that may be liable under the Lease, and the Landlord requests that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.[5]

21. Landlords, therefore, request that in the event an assumption or assumption and assignment of the Leases is approved by the Court, language must be inserted into the Sale Order to provide that the proposed assignee shall be responsible for all unpaid year-end adjustments, whether accruing prior to or after the effective date of assumption of the Leases, when such charges become due in accordance with the terms of the Leases. In default thereof, a suitable escrow for the Leases equal to 150% of the average year-end adjustments for the prior three (3) years must be established to assure that any amounts due will be available to Landlords when the year-end adjustments are actually billed and due pursuant to the terms of the respective Leases.

---

[4] Any ability to assume and assign the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Lease.

[5] If Debtors are covered under an "occurrence basis" insurance policy, rather than a "claims made" policy, this objection may be satisfied by proof of such insurance by the Debtors for Landlords' locations.

   iii. <u>The Cure Amounts Serve Only As Estimates</u>

  22. Landlords can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlord the equivalent of an administrative bar date, limiting their recourse to recover charges to which it is entitled under the Lease.

   iv. <u>The Debtors Must Pay Undisputed Cure Amounts Immediately</u>

  23. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption or assumption and assignment. To the extent there is a dispute over the total cure obligation for the Lease, all undisputed cure amounts should be paid immediately. Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Lease to deal with any disputes that remain unresolved after such period.

### Assumption and Amendment Agreement

  24. Landlords also request that, as a condition to any order approving assumption and assignment of any of Landlords' Leases, the assignee shall be required to enter into a short form Assumption and Amendment Agreement whereby the assignee shall become directly obligated to Landlords and the provisions of the Leases regarding notice addresses will be modified.

### Any Assignment of Leased Real Property Must be Subject to all Applicable Restrictive Covenants

  25. The *cum onere* principle and requirements of section 365 (including section 365(b)(3)) of the Bankruptcy Code also mandate that Restrictive Covenants be respected in connection with any lease assignment. See 11 U.S.C. § 365(b)(3)(C) (requiring that

"assumption or assignment of such lease is subject to all the provisions thereof"); <u>Bildisco</u>, 465 U.S. at 531; <u>In re MF Glob. Holdings Ltd.</u>, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012).  As is typical, shopping center leases are part of an integrated and complex commercial relationship between the shopping center owner and tenants that arise under both leases as well as reciprocal easement agreements and other restrictive covenants applicable to the properties.  Accordingly, assumption of any assignment of any leases in accordance with section 365 of the Bankruptcy Code and applicable law therefore requires compliance with, and is subject to, the reciprocal easement agreements and other restrictive covenants related to the properties.

26. Accordingly, Landlords object to the assumption and/or assignment of their leases or any Premises to the extent such transfer is not subject to all applicable reciprocal easement agreements and other restrictive covenants.

### Objections to Sale Order

27. Landlords reserve the right to raise other and further objections to any proposed Sale Order(s) or transaction documents once any final proposed Sale Orders and/or Asset Purchase Agreements are filed of record.

## II.    PLAN OBJECTIONS

### The Release and Related Provisions of the Plan are Overbroad and Ambiguous

28. The expansive provisions related to releases, injunction, and exculpation are overbroad and ambiguous and compromise Landlords' rights to assert legitimate claims under the Leases that survive confirmation.  For example, Article VIII.E. contains a broad exculpation provision, and Article VIII.F contains broad injunction provisions, enjoining any actions against any parties, including based on the right to offset.  Finally, Article VI.J. specifically preserves all of the Post-Effective Date Debtor's rights of setoff and recoupment,

while simultaneously cutting off creditors' rights to do the same, even if preserved in a proof of claim.

29. The Plan should not preclude Landlords from asserting claims for year-end adjustments and reconciliations under the Leases that have accrued or are accruing, but which remain unbilled at this time, or any indemnification rights or other such rights under any Leases. The Debtors cannot use Plan confirmation to avoid liability for Lease charges that accrue throughout the year, both prior to and after the Effective Date, or any obligations to indemnify Landlords in case of an injury at the Premises or for any other such liability. The Plan cannot extinguish the Landlords' rights under the Leases (or other documents relating to the property, if applicable). In addition, with respect to any assumed Lease, nothing in any Plan or Confirmation Order should preclude the Landlords from pursuing the Debtors for any obligations accruing or arising under the Leases, including any indemnification obligation that Landlords have under the Leases, and the Plan and any order should specifically preserve all rights of the parties with respect to assumed Leases, as well as any security held by Landlords under the Leases. Finally, the Plan cannot extinguish Landlords' validly asserted rights of setoff and recoupment.

30. Article I.A of the Plan provides for broad releases of those defined to be a "Released Party" including all Causes of Action against Released Parties, which includes, *inter alia*, the Debtors, the Post-Effective Date Debtors, and the Purchaser. *See* Plan, Art. I.A.145. The broad sweep of these releases and related definitions could be construed to release Landlords' rights under its Leases with both Debtor and non-Debtor entities.

31. In light of the continuation of the obligations of various parties under the assumed Leases, the releases may inadvertently serve to release obligations that should continue

under the Leases. By this Objection, as required by Plan, Art. I.A.149 and 150, Landlords hereby object to, and opt out of, the grant of the releases contained Article VIII of the Plan.

### Joinder in Other Objections

32. Landlords hereby join in the objections filed by the Debtors' other landlords and creditors to the extent that such objections are not inconsistent with the provisions hereof.

WHEREFORE, Landlords respectfully requests that the Court enter an order consistent with the foregoing objections; and for such other and further relief as may be just and proper under all of the circumstances.

Dated: November 7, 2023　　　　　　　　　Respectfully submitted,
Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　/s/ Leslie C. Heilman
　　　　　　　　　　　　　　　　　　　　Leslie C. Heilman, Esquire
　　　　　　　　　　　　　　　　　　　　Laurel D. Roglen, Esquire
　　　　　　　　　　　　　　　　　　　　Margaret A. Vesper, Esquire
　　　　　　　　　　　　　　　　　　　　BALLARD SPAHR LLP
　　　　　　　　　　　　　　　　　　　　919 N. Market Street, 11th Floor
　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　Telephone: (302) 252-4465
　　　　　　　　　　　　　　　　　　　　Facsimile: (302) 252-4466
　　　　　　　　　　　　　　　　　　　　E-mail: heilmanl@ballardspahr.com
　　　　　　　　　　　　　　　　　　　　　　　　　roglenl@ballardspahr.com
　　　　　　　　　　　　　　　　　　　　　　　　　vesperm@ballardspahr.com

　　　　　　　　　　　　　　　　　　　　　　and

　　　　　　　　　　　　　　　　　　　　Dustin P. Branch, Esquire
　　　　　　　　　　　　　　　　　　　　Nahal Zarnighian, Esquire
　　　　　　　　　　　　　　　　　　　　BALLARD SPAHR LLP
　　　　　　　　　　　　　　　　　　　　2029 Century Park East, Suite 1400
　　　　　　　　　　　　　　　　　　　　Los Angeles, CA 90067-2915
　　　　　　　　　　　　　　　　　　　　Telephone: (424) 204-4354
　　　　　　　　　　　　　　　　　　　　Facsimile: (424) 204-4350
　　　　　　　　　　　　　　　　　　　　E-mail: branchd@ballardspahr.com
　　　　　　　　　　　　　　　　　　　　　　　　　zarnighiann@ballardspahr.com

　　　　　　　　　　　　　　　　　　　　*Counsel to ACPF Nova Data Center, LLC and*
　　　　　　　　　　　　　　　　　　　　*RREEF CPIF 2425 Busse Road, LLC*