**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al* | Case No. 23-14853 (JKS) |
| Debtors.[1] | (Jointly Administered) |

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/cyxtera.   The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is:  2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

(Page | 2)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

## FINDINGS OF FACT, CONCLUSIONS
## OF LAW, AND ORDER CONFIRMING THE FOURTH AMENDED JOINT
## PLAN OF REORGANIZATION OF CYXTERA TECHNOLOGIES, INC. AND ITS
## DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The relief set forth on the following pages, numbered three (3) through 111, is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

The above-captioned debtors and debtors in possession (collectively, the "Debtors") having:

a.  commenced, on June 4, 2023 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of New Jersey (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");[2]

b.  continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) and 1108 of the Bankruptcy Code;

c.  obtained, on June 29, 2023, the *Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. 180] (the "Bidding Procedures Order" and the procedures attached as Exhibit 1 thereto and approved thereby the "Bidding Procedures");

d.  obtained, on July 20, 2023, the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing an Amended Schedules Bar Date and a Rejection Damages Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 298] (the "Bar Date Order");

e.  filed, on August 7, 2023, the *Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 372];

f.  filed, on August 15, 2023, the *Disclosure Statement Relating to the Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 407], and the *Debtors' Motion for Entry of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 408];

---

[2]  Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "Confirmation Order") have the meanings given to them in the *Fourth Amended Joint Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, attached hereto as **Exhibit A** (as may be amended, supplemented, or otherwise modified from time to time, and including all exhibits and supplements thereto, the "Plan"). The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order.

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

g.      filed, on August 29, 2023, the *Notice of Cancellation of Auction* [Docket No. 472] (the "Cancellation Notice");

h.      filed, on September 13, 2023, the *Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 501] and the *Disclosure Statement Relating to the Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 502];

i.      filed, on September 24, 2023, the *Second Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 551] and the *Disclosure Statement Relating to the Second Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 552] (the "Disclosure Statement").

j.      obtained, on September 26, 2023, entry of the *Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 563] (the "Disclosure Statement Order") approving the Disclosure Statement, solicitation and voting procedures (the "Solicitation and Voting Procedures"), and related notices, forms, and ballots (collectively, the "Solicitation Packages") and related dates and deadlines;

k.      caused the Solicitation Packages and notice of the Confirmation Hearing and the deadline for objecting to confirmation of the Plan to be distributed on September 28, 2023, (collectively, the "Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Disclosure Statement Order, and the Solicitation and Voting Procedures, as evidenced by, among other things, the *Certificate of Service* [Docket No. 592] (the "Solicitation Certificate");

l.      caused, on October 2, 2023, the notice of hearing to consider confirmation of the Plan (the "Confirmation Hearing," and such notice, the "Confirmation Hearing Notice") to be published in the *New York Times* (national edition), as evidenced by the *Proof of Publication* [Docket No. 572] (the "New York Times Publication Affidavit");

m.      caused, on October 3, 2023, the Confirmation Hearing Notice to be published in the *Financial Times*, as evidenced by the *Affidavit of Publication* [Docket No. 573] (the "Financial Times Publication Affidavit," and together with the New York Times Publication Affidavit, the "Publication Affidavits");

| (Page \| 5) | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

n.   filed, on October 19, 2023, the *Notice of Amended Confirmation Dates* [Docket No. 598] (the "Notice of Amended Timeline");

o.   filed, on October 26, 2023, the *Notice of Amended Confirmation Dates* [Docket No. 639] (the "Second Notice of Amended Timeline");

p.   filed, on October 30, 2023 the *Notice of Amended Confirmation Dates* [Docket No. 645] (the "Third Notice of Amended Timeline" and, together with the Notice of Amended Timeline and the Second Notice of Amended Timeline, the "Notices of Amended Timeline");

q.   filed, on November 1, 2023, the *Notice of Sale Transaction* [Docket No. 648] (the "Sale Transaction Notice");

r.   caused the Sale Transaction Notice to be distributed on November 2, 2023, as evidenced by the *Certificate of Service* [Docket No. 684] (the "Sale Transaction Notice Certificate");

s.   filed, on November 2, 2023, the *Third Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 649];

t.   filed, on November 3, 2023, the *Notice of Filing Plan Supplement for the Third Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 650] (as amended, modified, or supplement from time to time, the "Plan Supplement");

u.   obtained, on November 13, 2023, the *Order (I) Approving the Bid Protections and (II) Granting Related Relief* [Docket No. 687] (the "Bid Protections Order");

v.   filed, on November 13, 2023, the *Fourth Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 694] (the "Plan");

w.   filed, on November 14, 2023, the *Debtors' Memorandum of Law in Support of the Debtors' Fourth Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 695] (the "Confirmation Brief");

x.   filed, on November 14, 2023, the *Declaration of Eric Koza in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization*

(Page | 6)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

*of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 696] (the "Koza Declaration");

y.  filed, on November 14, 2023, the *Declaration of Roger Meltzer in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 697] (the "Meltzer Declaration");

z.  filed, on November 14, 2023, the *Declaration of Ronen Bojmel in Support of Confirmation of the Fourth Amended Joint Chapter 11 Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 698] (the "Bojmel Declaration" and together with the Koza Declaration and the Meltzer Declaration, the "Declarations"); and

aa.  filed, on November 14, 2023, the *Declaration of James Lee with Respect to the Tabulation of Votes on the Second Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 699] (the "Voting Report").

This Court having:

a.  entered the Bidding Procedures Order on June 29, 2023;

b.  entered the Disclosure Statement Order on September 26, 2023 [Docket No. 563];

c.  entered the Bid Protections Order on November 13, 2023 [Docket No. 687];

d.  set November 7, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing objections to confirmation of the Plan (the "Objection Deadline");

e.  set November 7, 2023, at 4:00 p.m. (prevailing Eastern Time) as the deadline to vote on the Plan (the "Voting Deadline");

f.  set November 14, 2023, as the deadline to file the Confirmation Brief and the Voting Report and reply to objections to confirmation of the Plan;

g.  set November 16, 2023, at 2:00 p.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing in accordance with rules 3017 and 3018 of the Bankruptcy Rules, rule 3018-1 of the Local Rules, and sections 1125, 1126, 1128, and 1129 of the Bankruptcy Code;

h.  reviewed the Plan, the Disclosure Statement, the Confirmation Brief, the Voting Report, the Declarations, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections,

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

i.     held the Confirmation Hearing on November 16, 2023, at 2:00 p.m. (prevailing Eastern Time);

j.     heard the statements and arguments made by counsel with respect to Confirmation;

k.     considered all oral representations, live testimony, written direct testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

l.     overruled any and all objections to the Plan and Confirmation, except as otherwise stated or indicated on the record, and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

m.     taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing including, without limitation, the Declarations establish just cause for the relief granted in this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

## I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

**A.  Findings and Conclusions.**

1.      The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.  Jurisdiction and Venue.**

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to entry of a final order by the Court in connection with Confirmation to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue in this Court was proper as of the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

| (Page | 9) | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**C.      Eligibility for Relief.**

3.      The Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases.**

4.      On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On June 6, 2023, the Court entered the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 71] authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**E.      Appointment of the Committee.**

5.      On June 21, 2023, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") to represent the interests of the unsecured creditors of the Debtors in the Chapter 11 Cases [Docket No. 133].

**F.      The Bar Dates.**

On July 20, 2023, the Bankruptcy Court entered the Bar Date Order, setting (a) August 15, 2023, as the last day for filing Proofs of Claim (including Proofs of Claim for Claims arising under Section 503(b) of the Bankruptcy Code) against the Debtors that arose (or was deemed to have arisen) before the Petition Date and (b) December 1, 2023, as the last day

(Page | 10)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

for filing Proofs of Claim of Governmental Unit (as defined in section 101(27) of the Bankruptcy Code).

**G.     Plan Supplement.**

6.     On November 3, 2023, the Debtors filed the Plan Supplement with the Court. The Plan Supplement complies with the terms of the Plan, and the Debtors provided good and proper notice of the filings in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases.  No other or further notice is or will be required with respect to the Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan and the consent rights set forth therein and in the other Definitive Documents, including the Purchase Agreement, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date, subject to compliance with the Bankruptcy Code and the Bankruptcy Rules; *provided* that no such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the Plan.

**H.     Modifications to the Plan.**

7.     Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan since the commencement of Solicitation described or set forth herein constitute technical changes or changes with respect to particular Claims or Interests made pursuant to the agreement of the Holders of such Claims or Interests and do not materially and adversely affect the treatment of any Claims or Interests.  Pursuant to Bankruptcy Rule 3019, these modifications do not require

(Page | 11)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

8.      This Confirmation Order contains modifications to the Plan that were made to address objections and informal comments received from parties in interest.  Modifications to the Plan since entry of the Disclosure Statement Order, if any, are consistent with the provisions of the Bankruptcy Code.  The disclosure of any Plan modifications prior to or on the record at the Confirmation Hearing constitutes due and sufficient notice of any and all Plan modifications. The Plan as modified shall constitute the Plan submitted for Confirmation.

## I.    Objections Overruled.

9.      Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Court on the record at the Confirmation Hearing is and/or are hereby incorporated by reference.  All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

## J.    Disclosure Statement Order.

10.      On September 26, 2023, the Court entered the Disclosure Statement Order [Docket No. 563], which, among other things, fixed October 26, 2023, at 4:00 p.m. (prevailing Eastern Time) as the Objection Deadline and the Voting Deadline and fixed November 6, 2023, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing.  The Debtors' use of the Disclosure Statement to solicit votes to accept or reject the Plan was authorized by the Disclosure Statement Order.  On October 19, 2023, the Debtors amended the

(Page | 12)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

confirmation schedule in the Disclosure Statement, by filing the Notice of Amended Timeline, including by extending the Objection Deadline and the Voting Deadline to November 2, 2023, at 4:00 p.m. (prevailing Eastern Time) and fixing November 16, at 2:00 p.m. (prevailing Eastern Time) as the date and time for the Confirmation Hearing.  On October 26, 2023, the Debtors again amended the confirmation schedule in the Disclosure Statement, by filing the Second Notice of Amended Timeline, including by extending the Objection Deadline and the Voting Deadline to November 6, 2023.  On October 30, 2023, the Debtors once again amended the confirmation schedule in the Disclosure Statement, by filing the Third Notice of Amended Timeline, including by extending the Objection Deadline and the Voting Deadline to November 7, 2023. [3]

**K.     Notice.**

11.     As evidenced by the Solicitation Certificate, the Publication Affidavits, the Sale Transaction Notice Certificate, and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the Petition Date, the Plan, the Disclosure Statement, the Disclosure Statement Order, the Solicitation Packages, the Sale Transaction Notice, the Confirmation Hearing Notice, the Plan Supplement, and all the other materials that the Debtors distributed in connection with the Confirmation of the Plan are in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules"), and the procedures set forth in the Disclosure Statement Order.  The Debtors provided due, adequate, and sufficient notice of the Voting

---

[3]     *See* Notices of Amended Timeline.

(Page | 13)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Deadline and Objection Deadline, the Confirmation Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Disclosure Statement Order in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order. No other or further notice is or shall be required.

**L.   Solicitation.**

12.   The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and the Solicitation Packages provided the opportunity for voting creditors to opt out of the releases. Such solicitation complied with sections 1125 and 1126 and all other applicable sections of the Bankruptcy Code, rules 3017, 3018, and 3019 of the Bankruptcy Rules, the Disclosure Statement Order, the Local Rules, and all other applicable rules, laws, and regulations.

13.   The period during which the Debtors solicited acceptances of or rejections to the Plan was a reasonable and sufficient period of time for each holder in the Voting Classes to make an informed decision to accept or reject the Plan.

**M.   Service of Opt-Out Form.**

14.   The process described in the Voting Report that the Debtors and the Claims and Noticing Agent followed to identify the relevant parties on which to serve the applicable Ballot or Notice of Non-Voting Status and Opt Out Form (each as defined in the Solicitation and Voting Procedures) and to distribute the Notice of Non-Voting Status and Opt Out Forms (i) is consistent with the industry standard and (ii) was reasonably calculated to ensure that each Holder of Claims and Interests in each Class was informed of its ability to opt out of the Third-

(Page | 14)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Party Release and the consequences for failing timely to do so. For the avoidance of doubt, any party that elected in the Notice of Non-Voting Status and Opt Out Form to opt out of the Third-Party Release and timely submitted such election to the Claims and Noticing Agent in accordance with the applicable Solicitation Packages prior to any deadline to submit a Ballot, whether under any original or extended deadline, shall be neither a Released Party nor a Releasing Party under the Plan.

**N.    Voting Report.**

15.    Before the Confirmation Hearing, the Debtors filed the Voting Report. The Voting Report was admitted into evidence during the Confirmation Hearing. The procedures used to tabulate ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

16.    As set forth in the Plan, Holders of Claims in Class 3 and Class 4 (collectively, the "Voting Classes") were eligible to vote on the Plan in accordance with the Solicitation and Voting Procedures. Holders of Claims in Class 1 and Class 2 (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan. Holders of Claims in Class 6 and Holders of Interests in Class 7 are either Unimpaired and conclusively presumed to have accepted the Plan or Impaired and conclusively deemed to reject the Plan and, therefore, are not entitled to vote to accept or reject the Plan. Holders of Claims in Class 5 and Holders of Interests in Class 8

(Page | 15)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

(collectively, the "Deemed Rejecting Classes") are Impaired and entitled to no recovery under the Plan and are, therefore, deemed to have rejected the Plan.

17.     As evidenced by the Voting Report, Class 3 and Class 4 each voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

**O.      Bankruptcy Rule 3016.**

18.     The Plan and all modifications thereto were dated and identified the entities submitting such modification, thus satisfying Bankruptcy Rule 3016(a).   The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).   The injunction, release, and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined, released, and exculpated and identify the entities that will be subject to the injunction, releases, and exculpations, thereby satisfying Bankruptcy Rule 3016(c).

**P.      Burden of Proof.**

19.     The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation.   Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence.   Each witness who testified on behalf of the Debtors in connection with Confirmation, including those who testified via written declaration, was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

(Page | 16)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**Q.  Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

20.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

**a.  Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.**

21.     The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

**i.     Sections 1122 and 1123(a)(1)—Proper Classification.**

22.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into eight different Classes based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, DIP Claims, Professional Fee Claims, Priority Tax Claims, Restructuring Expenses, and Receivables Program Claims, which are addressed in Article II of the Plan and are not required to be designated as separate Classes by section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of such Claims and Interests, and such classifications were not implemented for any improper purpose and do not unfairly discriminate between or among Holders of Claims and Interests.

23.     In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

(Page | 17)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

### ii. Section 1123(a)(2)—Specification of Unimpaired Classes.

24.     Article III of the Plan specifies that Claims and Interests, as applicable, in Classes 1 and 2 are Unimpaired under the Plan, within the meaning of section 1124 of the Bankruptcy Code.  Holders of Claims in Class 6 and Holders of Interests in Class 7 are either Unimpaired and conclusively presumed to have accepted the Plan or are Impaired and deemed to reject the Plan and, in either event, are not entitled to vote to accept or reject the Plan.  Additionally, Article II of the Plan specifies that, although not classified under the Plan, Administrative Claims, DIP Claims, Professional Fee Claims, Priority Tax Claims, Restructuring Expenses, and Receivables Program Claims will be paid in full or otherwise unimpaired in accordance with the terms of the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### iii. Section 1123(a)(3)—Specification of Treatment of Impaired Classes.

25.     Article III of the Plan specifies that Claims and Interests, as applicable, in Classes 3, 4, 5, and 8 are Impaired under the Plan, within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such Classes under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### iv. Section 1123(a)(4)—No Discrimination.

26.     Article III of the Plan provides for the same treatment to each Claim or Interest in each respective Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

(Page | 18)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**v.      Section 1123(a)(5)—Adequate Means for the Plan's Implementation.**

27.      The Plan and the various documents included in the Plan Supplement provide adequate and proper means for the Plan's execution and implementation, including:  (i) the good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan; (ii) authorization for the Debtors and the Purchaser or a Designee to take all actions necessary to consummate the Asset Sale pursuant to the terms of the Purchase Agreement and the Plan, including any restructuring transaction steps set forth in the Plan Supplement; (iii) the funding and sources of consideration for the Plan distributions; (iv) preservation of the Debtors' corporate existence following the Effective Date (except as otherwise provided in the Plan); (v) the vesting of the Estates' assets in the respective Post-Effective Date Debtors; (vi) the cancellation of existing agreements and Interests; (vii) the effectuation and implementation of other documents and agreements contemplated by, or necessary to effectuate, the Asset Sale and other transactions contemplated by the Plan; (viii) the assumption of certain employment obligations; (ix) the preservation of certain Claims and Causes of Action not released pursuant to the Plan; (x) the closing of certain of the Chapter 11 Cases; (xi) consummation of the Sale Transaction and entry into and performance under the Purchase Agreement and related documents; (xii)  appointment of the Plan Administrator; (xiii) winding down of the Debtors' estates following consummation of the Asset Sale; (xiv) creation of the GUC Trust and entry into and performance under the GUC Trust Agreement; and (xv) preservation of the D&O Liability Insurance Policies.  Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

(Page | 19)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

### vi.    Section 1123(a)(6)—Non-Voting Equity Securities.

28.    The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code because it does not provide for the issuance of new equity interests.  Art. IV.C.4.  To the extent the beneficial interests in the GUC Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the beneficial interests shall not be non-voting equity securities.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### vii.    Section 1123(a)(7)—Directors, Officers, and Trustees.

29.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Article IV. I of the Plan discharges all of the Debtors' directors from their duties effective as of the Effective Date without any further action.  In addition, Article IV.D.4 of the Plan provides that, on the Effective Date, the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Post-Effective Date Debtors and shall succeed to the powers of the Post-Effective Date Debtors' managers, directors, and officers.  The manner for selection of the Plan Administrator is set forth in the Plan and Plan Supplement.  The selection of Eugene Davis as the Plan Administrator complies with the Plan and is consistent with the interests of Holders of Claims and Interests and public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

(Page | 20)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

### b. Section 1123(b)—Discretionary Contents of the Plan.

30.     The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan satisfies section 1123(b).

### i. Impairment/Unimpairment of Any Class of Claims or Interests.

31.     Pursuant to the Plan, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

### ii. Assumption and Rejection of Executory Contracts and Unexpired Leases.

32.     Article V of the Plan provides that pursuant to sections 365 and 1123 of the Bankruptcy Code, each Executory Contract or Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be (i) assumed or assumed and assigned to the Purchaser or a Designee[4] in accordance with the Purchase Agreement, as applicable, if it is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases; (ii) assumed and assigned to the Purchaser or a Designee in accordance with the Purchase Agreement if it is not listed on either the Schedule of Assumed Executory Contracts and Unexpired Leases or the Schedule of Rejected Executory Contracts and Unexpired Leases and does not relate exclusively to Excluded Assets or Excluded Liabilities; or (iii) rejected if it is (a) listed on the Schedule of Rejected Executory Contracts and Unexpired Leases or (b) not listed on either the Schedule of Assumed

---

[4]     "Designee" means any Person (as defined in the Purchase Agreement) that is properly designated by Purchaser in accordance with Section 1.7of the Purchase Agreement, which, for the avoidance of doubt, will include certain affiliates of Digital Realty Trust, Inc.

| (Page | 21) | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Executory Contracts and Unexpired Leases or the Schedule of Rejected Executory Contracts and Unexpired Leases and relates exclusively to Excluded Assets or Excluded Liabilities.  For the avoidance of doubt, the foregoing shall not affect any Executory Contract or Unexpired Lease that is (i) explicitly designated by the Plan or the Confirmation Order to be assumed or assumed and assigned, as applicable, in connection with the Confirmation of the Plan; (ii) subject to a pending motion to assume such Executory Contract or Unexpired Lease as of the Effective Date; (iii) a D&O Liability Insurance Policy; or (iv) a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to affiliates or Designees.

33.     Article V.D of the Plan provides that, unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection (an "Executory Contract Objection") filed by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment, including pursuant to the Plan, or related Cure amount must be Filed, served, and actually received by counsel to the Debtors and the U.S. Trustee by the applicable Assumption or Rejection Objection Deadline, or any other deadline that may be set by the Court.

34.     The Debtors' determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases.

(Page | 22)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

### iii.    Compromise and Settlement.

35.    In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan and with the support of the various creditors, stakeholders, and other parties in interest, including the Committee, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, Causes of Action, as applicable, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. Those settlements and compromises are fair, equitable, and reasonable and approved as being in the best interests of the Debtors and their Estates.

### iv.    Debtor Release.

36.    In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, the releases of claims and Causes of Action by the Debtors described in Article VIII.C of the Plan (the "Debtor Release") represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019. The Debtors' pursuit of any such claims against the Released Parties is not in the best interests of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims. The Debtor Release is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

37.    Creditors in Class 3 and Class 4 have voted in favor of the Plan, including the Debtor Release. The Plan, including the Debtor Release, was negotiated at arm's-length and in

| (Page | 23) | |
| --- | --- |
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

good faith by sophisticated parties represented by able counsel and financial advisors. Therefore, the Debtor Release is the result of an arm's-length negotiation process.

38.    The Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process.  Specifically, the Released Parties under the Plan—including (i) each Debtor; (ii) each Post-Effective Date Debtor; (iii) each Consenting Stakeholder; (iv) each Releasing Party; (v) each Agent; (vi) each DIP Lender; (vii) the Purchaser; (viii) the Committee and each member of the Committee; (ix) each current and former Affiliate of each Entity in clause (i) through the following clause (x); (x) each Related Party of each Entity in clause (i) through this clause (x)—made significant concessions and contributions to the Debtors' Chapter 11 Cases, including, as applicable, (i) negotiating and actively supporting the Plan and the Chapter 11 Cases, (ii) providing necessary liquidity for the Debtors during the Chapter 11 Cases, (iii) settling and compromising substantial rights and claims against the Debtors under the Plan, and (iv) proposing, negotiating in good faith, and ultimately consummating the value-maximizing Sale Transaction contemplated by the Plan and the Purchase Agreement for the benefit of the Debtors, their Estates, and all parties in interest.

39.    The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases.  The Debtor Release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors the

(Page | 24)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Post-Effective Date Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.  In addition, the Special Committee conducted an independent investigation into certain historical transactions and determined that the Debtors did not have any colorable claims or causes of action that it would be in the best interests of the Debtors or their Estates to pursue.  In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is approved.

### v.    Release by Holders of Claims and Interests.

40.    The release by the Releasing Parties (the "Third-Party Release"), set forth in Article VIII.D of the Plan, is an essential provision of the Plan.  The Third-Party Release was critical in incentivizing the Released Parties to support the Plan and preventing potentially significant and time-consuming litigation regarding the parties' respective rights and interests.  The Third-Party Release is:  (i) consensual, (ii) in exchange for the good and valuable consideration provided by the Released Parties, (iii) a good-faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release, (iv) in the best interests of the Debtors, their Estates, and their stakeholders and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases, (v) fair, equitable, and reasonable, (vi) given and made after due notice and opportunity for hearing, (vii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third-Party Release against any of the Released Parties, and

(Page | 25)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

(viii) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

41.     The Third-Party Release is consensual because:  (i) the Releasing Parties were provided adequate notice of the chapter 11 proceedings, the Plan, and the deadline to object to confirmation of the Plan; (ii) except for Holders of Claims that vote to accept the Plan, all Holders of Claims or Interests were given the opportunity to opt out of the Third-Party Release; and (iii) the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, and the Ballots.  Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary.  The Debtors, as evidenced by the Solicitation Certificate, sent the Confirmation Hearing Notice to Holders of Claims, sent notice of the Third-Party Release to the Holders of Claims and Interests, and published such notice in the New York Times and Financial Times on October 2, 2023, and October 3, 2023, respectively.  No other notice is necessary.

42.     There is an identity of interests between the Debtors and the entities that will benefit from the Third-Party Release.  Each of the Released Parties, as stakeholders and critical participants in the Debtors' Chapter 11 Cases and the Plan process, share a common goal with the Debtors in seeing the Plan, including the Sale Transaction, succeed.  The scope of the Third-Party Release is also appropriately tailored to the facts and circumstances of the Chapter 11 Cases.  For the reasons set forth above, each of the Released Parties has also made significant concessions and contributions to the Debtors' Chapter 11 Cases.

(Page | 26)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

43.      In light of the foregoing, the Third-Party Release is approved.

### vi.      Exculpation.

44.      The exculpation provisions set forth in Article VIII.E of the Plan are essential to the Plan.  The record in the Chapter 11 Cases fully supports the exculpation and the exculpation provisions set forth in Article VIII.E of the Plan, which are appropriately tailored to protect the Exculpated Parties from unnecessary litigation and contain appropriate carve outs for actual fraud, willful misconduct, or gross negligence.

### vii.      Injunction.

45.      The injunction provisions set forth in Article VIII.F of the Plan are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Sale Transaction, the transfer of the Acquired Assets to the Purchaser or a Designee free and clear of all claims and interests, the discharge, the Debtor Release, the Third-Party Release, and the exculpation provisions in Article VIII of the Plan.  Such injunction provisions are appropriately tailored to achieve those purposes.

### viii.      Gatekeeper Provision.

46.      Article VIII.F of the Plan contains a provision that states no Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Court (i) first determining, after notice and a hearing, that such Claim

| (Page | 27) | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party (the "Gatekeeper Provision"). The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in the Plan, shall have jurisdiction to adjudicate the underlying Claim or Cause of Action. The Bankruptcy Court finds that the gatekeeper Provision is a material and necessary term of the Plan. The Bankruptcy Court admitted the testimony of Roger Meltzer, independent director and member of the special committee of the board of directors of Debtor Cyxtera Technologies, Inc., regarding his investigation into potential claims and causes of actions against the Debtors' Related Parties. Mr. Meltzer credibly provided that, were it not for the inclusion of the Gatekeeper Provision in the Plan, the Debtors or other Released Parties, including the Purchaser, may be bogged down in vexatious, meritless litigation, thereby jeopardizing the Consensual Debtor Release and Third-Party Release. Based on the foregoing, the Bankruptcy Court finds that the Gatekeeper Provision is necessary, appropriate, and critical to the effective and efficient administration, implementation, and consummation of the Plan.

### ix.   Preservation of Causes of Action.

47.   Article IV.E of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.

(Page | 28)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

48.    The Plan provides that all Causes of Action, other than the Causes of Action (i) acquired by the Purchaser or a Designee in accordance with the Purchase Agreement or (ii) released or exculpated (including, without limitation, by the Debtors) pursuant to the releases and exculpations contained in the Plan, shall automatically vest in the Post-Effective Date Debtors.  The Post-Effective Date Debtors and/or the Plan Administrator, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  Additionally, the Plan and Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Post-Effective Date Debtors and/or Plan Administrator may retain, and all parties in interest received adequate notice with respect to such Causes of Action.  The provisions regarding Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests.

### x.    Sale Transaction.

49.    The Plan appropriately provides for the consummation of the Sale Transaction pursuant to the Purchase Agreement and in accordance with section 1123(b)(4) of the Bankruptcy Code.  The Plan further provides for the distribution of the proceeds of the Sale Transaction to Holders of Claims and Interests in accordance with the Plan.

(Page | 29)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

### xi. Lien Releases.

50.     Except as otherwise provided herein, the Plan, the Purchase Agreement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim or any related claim that may be asserted against a non-Debtor Affiliate, in satisfaction in full of the portion of the Secured Claim that is allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates or any non-Debtor Affiliate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns, as set forth in Article VIII.B of the Plan (the "Lien Releases"). For the avoidance of doubt, any liens, claims, and encumbrances arising under the First Lien Credit Documents or the DIP Documents that may be asserted against a non-Debtor Affiliate shall be fully released and discharged on the Effective Date.  The provisions of the Lien Releases are appropriate, fair, equitable, and reasonable and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

### xii. Additional Plan Provisions.

51.     The other discretionary provisions in the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code, including, without

(Page | 30)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

limitation, provisions for the allowance of certain Claims and Interests, treatment of D&O Liability Insurance Policies, and the retention of court jurisdiction.

### c. Section 1123(d)—Cure of Defaults.

52.     Article V.D of the Plan provides for the satisfaction of all Cures under each Executory Contract and Unexpired Lease to be assumed in accordance with sections 365(b)(1) and 1123(b)(2) of the Bankruptcy Code.  Any monetary or non-monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to sections 365(b)(1) and 1123(b)(2) of the Bankruptcy Code, by payment of the Cures in Cash, subject to the limitations described in Article V.D of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any dispute regarding a Cure, the ability of the Post-Effective Date Debtors, the Purchaser, a Designee, or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, assumed and assigned, or assigned, as applicable, or any other matter pertaining to assumption, assumption and assignment, or assignment, as applicable, will be determined in accordance with the terms set forth in Article V.D of the Plan and applicable bankruptcy and non-bankruptcy law.  As such, the Plan provides that the Debtors will cure or provide adequate assurance that the Debtors will promptly cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with sections 365(b)(1) and 1123(b)(2) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

(Page | 31)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

53.     For the avoidance of doubt, the Purchaser or a Designee shall not have any obligation with respect to any Cure, and the Debtors or the Post-Effective Date Debtors, as applicable, shall pay any Cure as may be determined by Final Order or as otherwise agreed to by the relevant counterparty.  To the extent any Cure dispute arises after the Effective Date with respect to an Executory Contract or Unexpired Lease assumed and assigned to the Purchaser or a Designee, the resolution of such Cure dispute shall be the sole responsibility of the Debtors or the Post-Effective Date Debtors, and neither the Purchaser nor the Designee, as applicable, shall have any liability in connection therewith.

    **d.**    **Section 1129(a)(2)—Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code.**

54.     The Debtors, as proponents of the Plan, have complied with the applicable provisions of the Bankruptcy Code, and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

    (i)    is eligible to be a debtor under section 109, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;

    (ii)    has complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

    (iii)    complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, the Local Rules, any applicable non-bankruptcy Law, rule, and regulation, the Disclosure Statement Order, and all other applicable Law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

55.     The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with respect to the offering, issuance, and distribution of recoveries under the Plan and, therefore are not and, on account of such

(Page | 32)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

distributions, will not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan so long as such distributions are made consistent with and pursuant to the Plan.

**e.  Section 1129(a)(3)—Proposal of Plan in Good Faith.**

56.     The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Debtors' good faith is evident from the facts and the record of the Chapter 11 Cases, the Disclosure Statement, the hearing to approve the Disclosure Statement, the Purchase Agreement, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

57.     The Plan is the product of good faith, arm's-length negotiations by and among the Debtors, the Debtors' directors, officers, and managers, the Purchaser, the Designees, and the other constituencies involved in the Chapter 11 Cases.  The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' and such other parties' good faith, serve the public interest, and assure fair treatment of holders of Claims and Interests.  Consistent with the overriding purpose of chapter 11, the Debtors filed the Chapter 11 Cases with the belief that the Debtors were in need of restructuring, and the Plan was negotiated and proposed with the intent to maximize stakeholder value and for no ulterior purpose.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

(Page | 33)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**f.      Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.**

58.      Any payment made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan for services or costs and expenses in connection with the Chapter 11 Cases or the Plan and incident to the Chapter 11 Cases, as applicable, has been approved by or is subject to the approval of the Court as reasonable.   Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

**g.      Section 1129(a)(5)—Disclosure of Directors, Officers, and Managers and Consistency with the Interests of Creditors and Public Policy.**

59.      Because the Plan provides for the liquidation of the Estates' remaining assets and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply.   To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Post-Effective Date Debtors, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity of the Plan Administrator. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**h.      Section 1129(a)(6)—Rate Changes.**

60.      The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and, accordingly, will not require governmental regulatory approval.   Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**i.      Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

61.      The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, and the facts and circumstances of the Chapter 11 Cases, establishes that

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. As a result, the Debtors have demonstrated that the Plan is in the best interests of their creditors and equity holders, and the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

        **j.**        **Section 1129(a)(8)—Acceptance by Certain Classes.**

62. The Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code. The Deemed Accepting Classes are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Voting Classes have voted to accept the Plan. Holders of Intercompany Claims and Interests in Classes 6 and 7 are either Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or are Impaired and conclusively deemed to reject the Plan (to the extent cancelled) and in either event, are not entitled to vote to accept or reject the Plan. The Deemed Rejecting Classes receive no recovery on account of their Claims or Interests pursuant to the Plan and are deemed to have rejected the Plan. Notwithstanding the foregoing, the Plan is confirmable because it satisfies section 1129(b) of the Bankruptcy Code.

        **k.**        **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

63. The treatment of Administrative Claims, DIP Claims, Professional Fee Claims, Priority Tax Claims, Restructuring Expenses, and Receivables Program Claims under Article II

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

of the Plan satisfies the requirements of and complies in all respects with section 1129(a)(9) of the Bankruptcy Code.

**l.      Section 1129(a)(10)—Acceptance by at Least One Impaired Class.**

64.      As set forth in the Voting Report, Holders of Claims in Class 3 and Class 4 voted to accept the Plan without regard to the votes of any insiders (as defined in section 101(31) the Bankruptcy Code).  As such, there is at least one class of Claims that is Impaired under the Plan and has accepted the Plan, without including any insiders' acceptance of the Plan (as defined in the Bankruptcy Code).  Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.

**m.      Section 1129(a)(11)—Feasibility of the Plan.**

65.      The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The Plan embodies a rational plan for the orderly wind down of the Debtors' estates and the delivery of distributions to holders of Allowed Claims following the consummation of the Sale Transaction. The financial projections attached to the Disclosure Statement and the other evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing filed in connection with the Confirmation Hearing:  (i) are reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (ii) utilize reasonable and appropriate methodologies and assumptions; (iii) have not been controverted by other persuasive evidence; (iv) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization except as provided in the Plan; and (v) establish that the Debtors and the Post-Effective Date Debtors and their Estates

| (Page | 36) | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

will have sufficient funds available to meet their obligations under the Plan.  Accordingly, the

Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**n.    Section 1129(a)(12)—Payment of Statutory Fees.**

66.    Article II.C of the Plan provides that the Debtors shall pay all fees due and

payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date,

and on or after the Effective Date, each Post-Effective Date Debtor shall remain obligated to pay

quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case

being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**o.  Section 1129(a)(13)—Retiree Benefits.**

67.    The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy

Code.  Article IV.C.7 of the Plan provides that from and after the Plan Effective Date, all retiree

benefits, as defined in section 1114 of the Bankruptcy Code, if any, shall continue to be paid in

accordance with applicable law.

**p.    Section 1129(a)(14), (15), and (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

68.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do

not apply to these Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not

individuals, and are not nonprofit corporations.

**q.    Section 1129(b)—Confirmation of Plan Over Nonacceptance of Impaired Classes.**

69.    Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the

Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  ***First***,

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (i) no Holder of any impaired Claim or Interest that is junior to such impaired Class will receive or retain any property under the Plan on account of such junior Claim or Interest and (ii) no Holder of a Claim or Interest in a Class senior to such impaired Class is receiving more than 100 percent on account of its Claim or Interest. Accordingly, the Plan is fair and equitable to all Holders of Claims and Interests in the Deemed Rejecting Classes. *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated creditors in such Classes that have not accepted the Plan will receive substantially similar treatment on account of their Claim or Interest irrespective of Class. *Finally*, Holders of Claims in Class 3 and Class 4 voted to accept the Plan in sufficient number and in sufficient amount to constitute accepting classes under the Bankruptcy Code. As a result, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code and can be confirmed.

### r. Section 1129(c)—Only One Plan.

70. The Plan is the only plan filed in the Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

### s. Section 1129(d)—Principal Purpose of the Plan is Not Avoidance of Taxes or Section 5 of the Securities Act.

71. The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. As evidenced by its terms. the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

(Page | 38)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**t.      Section 1129(e)—Not Small Business Cases.**

72.      The Chapter 11 Cases are not small business cases, and accordingly, section 1129(e) of the Bankruptcy Code does not apply to the Chapter 11 Cases.

**u.      Satisfaction of Confirmation Requirements.**

73.      Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**v.      Good Faith.**

74.      The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders. The Plan is the product of extensive collaboration among the Debtors and key stakeholders and accomplishes this goal.   Accordingly, the Debtors or the Post-Effective Date Debtors, as appropriate, have been, are, and will continue acting in good faith if they proceed to (i) consummate the Plan, the Asset Sale, and the agreements, settlements, transactions, and transfers contemplated thereby, including the transactions and transfers contemplated by the Purchase Agreement, and (ii) take the actions authorized and directed or contemplated by this Confirmation Order.   Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

**w.      The Asset Sale.**

75.      *Notice and Opportunity to Object.*  As evidenced by the affidavits and certificates of service and publication notices previously filed with the Court, due, proper, timely, adequate,

(Page | 39)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

and sufficient notice of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures, the Asset Sale, the Purchase Agreement, the Sale Transaction, the Plan, the Plan Supplement, the Bid Protections (as defined in the Bid Protections Order), and the Confirmation Hearing have been provided in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and the Bidding Procedures Order to all interested Persons and entities, and such parties had an opportunity to appear, object, and be heard with respect thereto.  All parties required to be given notice of the Asset Sale (including the deadline for filing objections to (i) approval of the Asset Sale and (ii) assumption and assumption and assignment of Executory Contracts and Unexpired Leases (collectively, the "Assumed Contracts") in accordance with the Plan and the Purchase Agreement, including any Cures), have been given due, proper, timely, and adequate notice. No other or further notice is required.

76.    *Sufficiency of Marketing*.  The Debtors and their professionals conducted a fair, open, and adequate prepetition and postpetition marketing and sale process as set forth in the Bojmel Declaration.  The marketing and sale process was non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any Entity to make an offer, and the process conducted by the Debtors obtained the highest or best value for the Debtors' Estates.  There was no other transaction available or presented that would have yielded as favorable an economic result for the Debtors' Estates as that provided by the Asset Sale.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective buyers have been afforded a reasonable and fair opportunity to make a higher or otherwise better offer.  The

(Page | 40)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

marketing and sale process undertaken by the Debtors and their professionals has been adequate and appropriate and reasonably calculated to maximize the value for the benefit of all stakeholders in all respects.

77. *Extensive Efforts by Debtors.*  The Debtors have presented credible evidence that they and their professionals explored various strategic alternatives for the Debtors' businesses over an extended period of time and communicated with numerous parties regarding, among other potential transactions, a possible sale of all or substantially all of the Debtors' assets.  The Asset Sale is the result of the Debtors' extensive efforts in seeking to maximize recoveries to the Debtors' Estates for the benefit of their creditors.

78. *Compliance with Bidding Procedures.*  The Bidding Procedures were substantively and procedurally fair to all parties, including all potential bidders.  The Bidding Procedures afforded adequate notice and a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Acquired Assets. The marketing and sale process undertaken by the Debtors was in compliance with the Bidding Procedures and the Bidding Procedures Order, and the Debtors, the Purchaser, the Designees, and their respective counsel and other advisors have complied with the Bidding Procedures and Bidding Procedures Order in all respects.

79. *Sound Business Purpose; Sale Highest or Best Offer.*  Consummation of the Asset Sale constitutes a valid and sound exercise of the Debtors' business judgment, and such acts are in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests and are reasonable and appropriate under the circumstance.  This Bankruptcy Court finds that the

(Page | 41)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Debtors have articulated good and sufficient business reasons for the Bankruptcy Court to authorize: (i) the consummation of the Asset Sale pursuant to the terms of the Purchase Agreement and the Plan, (ii) the assumption or assumption and assignment of the assumed Executory Contracts and Unexpired Leases in connection with the Asset Sale and pursuant to the Purchase Agreement; and (iii) the assumption of the Assumed Liabilities (as defined in the Purchase Agreement) in connection with the Asset Sale and pursuant to the Purchase Agreement and sections 1123(a)(5), 1123(b), and 1141(c) of the Bankruptcy Code.

80. Additionally: (i) the Purchaser (and any applicable Designee) submitted the highest and best bid for the Acquired Assets and was designated as the Successful Bidder in accordance with the Bidding Procedures and the Bidding Procedures Order; (ii) the total consideration provided by the Purchaser pursuant to the Purchase Agreement is the highest or best offer available to the Debtors; (iii) the Asset Sale presents the best opportunity to realize the maximum value for the Debtors' Estates; (iv) the Purchase Agreement and the consummation of the Asset Sale will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative, including liquidation under chapter 7 or 11 of the Bankruptcy Code; (v) no other Person has offered to purchase the Acquired Assets for greater economic or non-economic value to the Debtors or their Estates; and (vi) the Debtors' consummation of the Asset Sale is reasonable and appropriate under the circumstances.

81. *Arm's-Length Sale and Purchaser's and Designee's Good Faith.* The Purchase Agreement and the Asset Sale were negotiated, proposed, and undertaken by the Debtors and the Purchaser (and any applicable Designee) at arm's length, without collusion or fraud, and in good

| (Page \| 42) | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

faith within the meaning of section 363(m) of the Bankruptcy Code. The Sale Transaction with the Purchaser is premised on the success of several separate deals, including the Singapore Transaction and the Germany Transaction (each as defined in the Purchase Agreement) to be implemented with the Designees and that will allow the Purchaser to acquire substantially all of the assets of the Debtors. The Purchaser and any Designee: (i) recognize that the Debtors were free to deal with any other party interested in making an offer, (ii) complied with the Bidding Procedures Order in all respects, and (iii) willingly subjected their bid to the competitive marketing and sale process. All payments to be made by the Purchaser or a Designee and other agreements or arrangements entered into by the Purchaser or a Designee in connection with the Asset Sale have been disclosed. Neither the Debtors nor the Purchaser or a Designee, nor any affiliate of the Purchaser or a Designee, has engaged in collusion or fraud, and the Purchaser or a Designee has not acted in a collusive manner with any Person or entity. As a result of the foregoing, each of the Purchaser and any applicable Designee is a "good faith purchaser" and, as such, is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, including in the event this Confirmation Order or any portion thereof is reversed or modified on appeal, and the Purchaser and any applicable Designee have proceeded in good faith in all respects in connection with the Asset Sale specifically and the Chapter 11 Cases generally.

82.     *Sale in Best Interests*. The actions represented to have been taken, or to be taken by the Debtors, the Purchaser, and the Designees are appropriate under the circumstances of these Chapter 11 Cases and are in the best interests of the Debtors, their Estates, creditors, and

(Page | 43)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

other parties in interest.  Approval of the Asset Sale at this time is in the best interests of the

Debtors, their Estates, creditors, and other parties in interest.

83.    *Title to the Assets.*  The assets sought to be transferred and/or assigned, as

applicable, by the Debtors to the Purchaser or a Designee pursuant to the Purchase Agreement

are property of the Debtors' Estates, and good title thereto is presently vested in the Debtors'

Estates within the meaning of section 541(a) of the Bankruptcy Code.  Except as provided in the

Purchase Agreement, the Debtors are the sole and rightful owners of such assets with all rights,

title, and interests to the assets.

84.    *Free and Clear; Discharge.*  On the Effective Date, except as otherwise expressly

set forth in the Purchase Agreement, to the fullest extent permitted by sections 1141(b) and (c) of

the Bankruptcy Code, other than the Excluded Assets and Excluded Liabilities (each as defined

in the Purchase Agreement), all property of the Debtors shall vest in the Purchaser or the

applicable Designee, in accordance with the Purchase Agreement, free and clear of all liens,

claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy

Code), rights, liabilities, mortgages, deeds of trust, pledges, charges, security interests, of

whatever kind or nature, rights of first refusal, rights of offset or recoupment, royalties,

conditional sales or title retention agreements, hypothecations, preferences, debts, easements,

suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign

domestic governmental entity, taxes (including foreign, state and local taxes), covenants,

restrictions, indentures, instruments, leases, options, off-sets, recoupments, claims for

reimbursement or subrogation, contribution, indemnity or exoneration, encumbrances and other

(Page | 44)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

interests of any kind or nature whatsoever against the Debtors or any of the Debtors' assets, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employment or labor law claims or liabilities, employee pension or benefit plan claims, multiemployer benefit plan claims, retiree healthcare or life insurance claims or claims for taxes of or against any of the Debtors, any indemnification Claims or Liabilities relating to any act or omission of the Debtors or any other Person prior to the Effective Date or any Excluded Liabilities, any derivative, vicarious, transferee or successor liability claims, alter ego claims, *de facto* merger claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether known or unknown, contingent or matured, liquidated or unliquidated, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, legal or equitable, and whether imposed by agreement, understanding, law, equity, or otherwise arising under or out of, in connection with, or in any way related to any of the Debtors, any of the Debtors' interests in the Acquired Assets or the operation of any of the Debtors' businesses before the Effective Date (collectively, excluding any Assumed Liabilities, the "Encumbrances").

| (Page | 45) | |
| --- | --- |
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

85.     *Not an Insider*.  As of the date hereof, neither the Purchaser nor the Designees are "insiders" or "affiliates" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders exists between the Debtors and the Purchaser or a Designee.

86.     *Assumption of Contracts*.  It is an exercise of the Debtors' reasonable and sound business judgment to assume, assume and assign, and assign the Assumed Contracts in connection with the consummation of the Asset Sale, and the assumption, assumption and assignment, and assignment of the Assumed Contracts is in the best interests of the Debtors, their Estates, creditors, and other parties in interest.  The assumption, assumption and assignment, or assignment of the Assumed Contracts (i) allows the Debtors to sell their business to the Purchaser or a Designee as a going concern, (ii) limits the losses suffered by the non-debtor counterparties to the Assumed Contracts (each, a "Counterparty" and collectively, the "Counterparties"), and (iii) maximizes the recoveries to other creditors of the Debtors by limiting the amount of claims against the Debtors' Estates by avoiding the rejection of the Assumed Contracts.

87.     Anti-assignment provisions in any Assumed Contract—including any provisions requiring rating agency confirmation, "no downgrade" letters, any other third party consent, or of the type described in sections 365(b)(2), (e)(1), and (f) of the Bankruptcy Code—shall not restrict, limit, or prohibit the assumption, assignment, or sale of the Assumed Contracts and are unenforceable anti-assignment provisions in connection with the Asset Sale within the meaning of section 365(f) of the Bankruptcy Code.  Provisions in any Assumed Contract requiring the

(Page | 46)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Debtors or applicable counterparty (including the Purchaser or the applicable Designee) to meet a minimum net worth requirement or supply a guarantor meeting any such minimum net worth requirement, or providing for any such similar requirement, shall be deemed to be an anti-assignment provision and shall be unenforceable.

88.     *Cure and Adequate Assurance.*  The Debtors have cured or demonstrated their ability to cure any default with respect to any act or omission that occurred prior to the Effective Date under any of the Assumed Contracts within the meaning of section 365(b)(1)(A) of the Bankruptcy Code.  Unless otherwise agreed to by the parties and subject to paragraph 57 of section II hereof, the proposed Cures plus any amounts accruing between the Assumption or Rejection Objection Deadline and the Effective Date are the amounts necessary to "cure" all "defaults" within the meaning of section 365(b) of the Bankruptcy Code under the Assumed Contracts as of the filing of the Plan Supplement.  The promise by the Purchaser, the applicable Designee, or the Post-Effective Date Debtors to perform the obligations under their respective Assumed Contracts after the Effective Date shall constitute adequate assurance of their future performance of and under each of their respective Assumed Contracts within the meaning of sections 365(b)(1) and 365(f)(2), as applicable.  All Counterparties that did not timely file an objection to the assumption or assumption and assignment of their respective Assumed Contract(s) shall be deemed to have consented to the assumption or assumption and assignment, as applicable, thereof.  Upon payment of the Cures and subject to paragraph 57 of section II hereof, the Debtors, the Purchaser, and any applicable Designee, as applicable, shall be deemed

(Page | 47)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

to have met all requirements of section 365(b) of the Bankruptcy Code with respect to each of the Assumed Contracts.

89.     *Authority*.  The Debtors:  (i) have full power and authority to execute and assume the Purchase Agreement and all other documents contemplated thereby, (ii) possess all of the power and authority necessary to consummate the transactions contemplated by the Purchase Agreement subject to the terms of the Plan and this Confirmation Order, and (iii) have taken all corporate action necessary to authorize and approve the Purchase Agreement, the sale of the assets contemplated therein, and all other actions required to be performed by the Debtors in order to consummate the Asset Sale.  No consents or approvals, other than those already obtained or expressly provided for in the Purchase Agreement or this Confirmation Order, are required for the Debtors to consummate the Asset Sale.

90.     *No Fraudulent Transfer*.  The total consideration provided by the Purchaser and/or a Designee pursuant to the Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transfer Act, and any other applicable law, and may not be avoided under section 363(n) of the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable law.  The Purchase Agreement was not entered into, and the Asset Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia, or any other applicable law.

(Page | 48)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Neither the Debtors, the Purchaser, nor any Designee entered into the Purchase Agreement with any fraudulent or other improper purpose. Neither the Debtors, the Purchaser, nor a Designee engaged in any conduct that would cause or permit the Purchase Agreement or the consummation of the Asset Sale to be avoided, or costs or damages to be imposed, under Bankruptcy Code section 363(n) or under any other law of the United States, any state, territory, possession thereof, the District of Columbia or any other applicable law. The Purchase Agreement is a valid and binding contract among the Debtors, the Purchaser, and/or any applicable Designee and shall be enforceable pursuant to its terms.

**x.     Disclosure:  Agreements and Other Documents.**

91.     The Debtors have disclosed all material facts regarding the Plan and with respect to consummation of the Restructuring Transactions, including:  (i) the Purchase Agreement; (ii) Plan Administrator Agreement and the identities of the Plan Administrator; (iii) the method and manner of distributions under the Plan; (iv) the adoption, execution, and implementation of the other matters provided for under the Plan, including those involving corporate action to be taken by or required of the Debtors or Post-Effective Date Debtors, as applicable; (v) the exemption under section 1146(a) of the Bankruptcy Code; (vi) the retained Causes of Action; and (vii) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

**y.     Conditions to Effective Date.**

92.     The Plan shall not become effective unless and until the conditions set forth in Article IX.A of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan.

(Page | 49)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**z.    Implementation.**

93.    All documents and agreements necessary to implement the transactions contemplated by the Plan, including the Purchase Agreement and those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan, and entry into and consummation of the transactions contemplated by each such document or agreement are in the best interests of the Debtors, the Estates, and the Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.  The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**aa.    Vesting of Assets.**

94.    Except as otherwise provided in this the Plan, the Confirmation Order, the Purchase Agreement, or any other agreement, instrument, or other document incorporated therein or entered into in connection with or pursuant to the Plan or the Plan Supplement, on the Effective Date, all property of the Estates (other than the GUC Trust Assets) shall vest in the Post-Effective Date Debtors.  Such assets shall be held free and clear of all liens, claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or this Confirmation

| | |
|---|---|
| (Page \| 50) | |
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Order.  Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator or its designee.  The Post-Effective Date Debtors, the Plan Administrator, and the GUC Trustee shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

**bb.    Treatment of Executory Contracts and Unexpired Leases.**

95.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption, assumption and assignment, assignment, or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided therein or in a prior or pending notice, motion, and/or order.  The Debtors' determinations regarding the assumption, assumption and assignment, assignment, or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in the Chapter 11 Cases.

**cc.    Objections.**

96.    All objections, responses, reservations, statements, and comments in opposition to the Plan, including the Asset Sale and objections to the assumption and assumption and assignment of any executory contracts or unexpired leases, other than those resolved, adjourned, or withdrawn with prejudice prior to, or on the record at, the Confirmation Hearing, are overruled on the merits in all respects.  All withdrawn objections, if any, are deemed withdrawn with prejudice.  All objections to Confirmation not filed and served prior to the deadline for

| (Page | 51) | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

filing objections to the Plan set forth in the Confirmation Hearing Notice, if any, are deemed waived and shall not be considered by the Court.

97. All parties have had a full and fair opportunity to litigate all issues raised or might have been raised in the objections to Confirmation of the Plan, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

**R.    Provisions Regarding Seacoast National Bank.**

98. In accordance with and pursuant to the Purchase Agreement and the Plan, the Debtors will assume, and will assign to the Purchaser, that certain Master Equipment Lease Agreement #32133, dated December 17, 2020, including Equipment Schedule No. 4 (together, the "Seacoast MELA"), originally entered into between Debtors Cyxtera DC Holdings Inc. and Cyxtera Communications LLC (with respect to Equipment Schedule No. 4), as lessees, and Liberty Commercial Finance LLC ("LCF"), as lessor, for which Seacoast National Bank ("Seacoast") has succeeded to the interests of LCF. The Debtors (a) shall pay all cure amounts owed in connection with the Seacoast MELA in accordance with section 365 of the Bankruptcy Code and (b) until Closing, shall pay all amounts arising under the Seacoast MELA in the ordinary course of business to Seacoast through its designated servicer, Wingspire Equipment Finance, or such other designee that Seacoast will provide in writing to the Debtors. Effective as of the Closing, upon assignment of the Seacoast MELA to Assignee, (i) in accordance with and pursuant to the terms of the Purchase Agreement, the Purchaser shall assume all of the Debtors' obligations arising under the Seacoast MELA from and after the date of the Closing, and (ii) the

(Page | 52)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Purchaser will remit all payment obligations directly to Seacoast (and Seacoast shall provide Assignee with payment instructions contemporaneous with the Closing).  For the avoidance of doubt, the Purchaser is not assuming any guaranty or related obligations of Cyxtera Technologies, Inc. in favor of Seacoast.  At or following the Closing, the Purchaser (or the Debtors, as applicable) may assign the Seacoast MELA to a subsidiary or affiliate of Purchaser, *provided* that Purchaser either provides Seacoast with a written guarantee of all obligations under the Seacoast MELA or assumes in writing all liabilities under the Seacoast MELA.  The Purchaser may not assign the Seacoast MELA to any other third parties without written consent from Seacoast.

## II. ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

**A.    Confirmation of the Plan.**

1.    This Confirmation Order confirms the Plan in its entirety as modified herein.

2.    This Confirmation Order approves the Plan Supplement, including the documents contained therein, as they may be amended or supplemented through and including the Effective Date in accordance with and as permitted by the Plan.  The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order.

3.    The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in

(Page | 53)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

interest, including, but not limited to, the following: (i) the Debtors; (ii) Holders of DIP Claims; (iii) Holders of Receivables Program Claims; (iv) Holders of First Lien Claims; (v) Holders of General Unsecured Claims; (vi) the Committee; (vii) the Purchaser or a Designee; and (viii) all other Holders of Claims and Interests.

4.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, the Purchase Agreement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision, it being the intent of the Court that the Plan, the Plan Supplement, the Purchase Agreement, and any related document, agreement, or exhibit are approved in their entirety.

**B.     Objections.**

5.     To the extent that any objections (including any reservations of rights contained therein) to Confirmation, including approval of the Asset Sale, have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on their merits in all respects.

6.     All objections to Confirmation, including approval of the Asset Sale, not filed and served prior to the deadline for filing objections to the Plan set forth in the Confirmation Hearing Notice, are deemed waived and shall not be considered by the Court.

(Page | 54)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

## C.    Approval of the Asset Sale.

7.    The Debtors have provided adequate and sufficient notice of the Asset Sale, including the transactions contemplated by the Purchase Agreement, under the facts and circumstances of these cases, including through the Sale Transaction Notice.  Upon entry of this Confirmation Order, pursuant to sections 105(a), 363, 1123 and 1141 of the Bankruptcy Code, the Asset Sale set forth in the Purchase Agreement, and all transactions, covenants, agreements, conditions, and releases contemplated thereby, are authorized and approved.  The Debtors are authorized, but not directed, to enter into and perform under the Purchase Agreement without further order of this Court.  The Debtors, Purchaser, any Designee, and each other party to the Purchase Agreement are hereby authorized, without further order of the Court, to take any and all actions necessary or appropriate to (i) consummate the Asset Sale in accordance with the Plan, the DIP Credit Agreement, the DIP Order, the Purchase Agreement, and this Confirmation Order; (ii) perform, consummate, implement, and close the Purchase Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Sale pursuant to the Purchase Agreement; (iii) perform, consummate, and implement any preparatory transactions and any other actions as may be necessary or appropriate to effect a corporate restructuring of the Debtors' and the Post-Effective Date Debtors' respective businesses or corporate structure in order to effectuate the Asset Sale, including, without limitation, by issuance of any necessary Securities, notes, instruments, certificates, and other documents or any necessary intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, or

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

other corporate transactions; and (iv) apply the proceeds of the Asset Sale in accordance with the terms of the DIP Credit Agreement and the Plan.  Entry of this Confirmation Order shall constitute approval of the Asset Sale and Purchase Agreement.

8.      The Debtors, the Post-Effective Date Debtors, and the Plan Administrator, as applicable, each acting by and through their respective officers, employees, and agents, as applicable, are authorized to take all reasonable actions required under the Plan, the Plan Supplement, and the Purchase Agreement that are necessary or appropriate to effectuate the Plan and the transactions contemplated therein, including the Asset Sale.

9.      Each federal, state, commonwealth, local, foreign, or other governmental agency is directed and authorized to accept for filing and/or recording any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan, the Purchase Agreement, and this Confirmation Order.

10.     The Purchase Agreement and any related documents or other instruments may be modified, amended, or supplemented by the parties thereto, subject to the consent rights set forth therein, in non-material ways in accordance with the terms thereof, without further order of the Court.

11.     Notwithstanding anything herein to the contrary but subject in all respects to the Purchase Agreement, effective on and subject to the closing of the Asset Sale (the "Closing," and the date thereof, the "Closing Date"):

a.   Pursuant to sections 105(a), 363(b), 363(f), 1123(b)(4), and 1141(c) of the Bankruptcy Code, the Acquired Assets shall be transferred to the Purchaser or a Designee free and clear of any and all Liens, Claims, Interests, charges, and other Encumbrances of any kind or nature (except

| (Page | 56) | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

for those Liens, Claims, Interests, charges, or other Encumbrances expressly assumed by the Purchaser pursuant to the terms of the Purchase Agreement);[5]

b.  consistent with the DIP Credit Agreement and the DIP Orders, as applicable, all Liens, Claims, Interests, charges, and other encumbrances on the Acquired Assets securing any obligations of the Debtors or the Post-Effective Date Debtors prior to the Closing shall attach to the proceeds of the Asset Sale, in the order of their priority, with the same validity, force, and effect, if any, that they had against such Acquired Assets prior to the Closing;

c.  neither the Purchaser, a Designee, nor any of their respective affiliates are or shall be deemed to:  (i) be legal successors to the Debtors or the Post-Effective Date Debtors or their estates by reason of any theory of law or equity, (ii) have, *de facto* or otherwise, merged with or into the Debtors or the Post-Effective Date Debtors, or (iii) be an alter ego or a mere continuation or substantial continuation or successor of the Debtors or the Post-Effective Date Debtors in any respect;

d.  except as otherwise expressly set forth in the Purchase Agreement, the Purchaser, the Designees, and each of their respective successors, affiliates, and assigns shall have no liability for or obligations with respect to any Encumbrance, and all persons and entities holding Encumbrances are hereby forever barred, estopped, and permanently enjoined from (i) asserting such Encumbrances against the Purchaser, the Designees, and each of their successors, affiliates, assigns, and/or any of their property or the Acquired Assets and (ii) interfering with the Purchaser's or Designees' title to or use and enjoyment of the Acquired Asset based on or related to any Encumbrance;

e.  the Purchaser and Designees expressly reserve any and all rights, defenses, and objections with regard to the Assumed Liabilities in accordance with the Purchase Agreement;

f.  solely with respect to the Acquired Assets and not with respect to any proceeds thereof, each holder of any Liens, Claims, Interests, charges, and other encumbrances of any kind or nature against the Acquired Assets shall be deemed to have waived and released such Liens, Claims, Interests, charges, and other Encumbrances of any kind or nature, without regard to

---

[5]  For the avoidance of doubt, all capitalized terms used but not defined in this paragraph 11 shall have the meaning ascribed to such terms in the Purchase Agreement.

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

whether such holder has executed or filed any applicable release. Any such holder of such Liens, Claims, Interests, charges, and other Encumbrances of any kind or nature is directed to execute and deliver any waivers, releases, or other related documentation reasonably requested by the Debtors, the Purchaser, or a Designee to evidence the release of its Liens, Claims, Interests, charges, and other Encumbrances of any kind or nature in the Acquired Assets; *provided* that such documentation does not release any Liens, Claims, Interests, charges, and other encumbrances in the proceeds of the Acquired Assets. Any person or entity that has filed any financing statements, mortgages, deeds of trust, mechanic's liens, lis pendens, or any other documents or agreements evidencing a Lien on the Acquired Assets is directed to deliver to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Liens that the person or entity has with respect to the Acquired Assets (collectively, the "Release Documents");

g. in the event that such termination statements, instruments of satisfaction, or releases of all Liens are not filed in accordance with the foregoing paragraph, each of the Purchaser and the Designees, as may be applicable, is hereby authorized to (i) execute and file such Release Documents on behalf of such person; (ii) file, register, or otherwise record a certified copy of this Confirmation Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the Acquired Assets of any kind or nature whatsoever but shall not release any Liens in respect of the proceeds of the Acquired Assets; and (iii) seek in this Court or any other court of competent jurisdiction to compel appropriate persons to execute the appropriate Release Documents; *provided* that, notwithstanding anything in this Confirmation Order or the Purchase Agreement to the contrary, the provisions of this Confirmation Order shall be self-executing, and none of the Debtors, the Plan Administrator, the Post-Effective Date Debtors, or the Purchaser shall be required to execute or file any Release Documents in order to effectuate, consummate, or implement the provisions of this Confirmation Order;

h. this Confirmation Order, if filed, registered, or otherwise recorded, shall be effective as a conclusive determination that all Liens, Claims, Interests, charges, and other Encumbrances of any kind or nature existing as to the Acquired Assets prior to the Closing have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected and that such Liens, Claims, Interests, charges,

(Page | 58)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

and other Encumbrances have attached to the proceeds of the Acquired Assets, and this Confirmation Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county, or local government agency, department, or office; *provided* that this Confirmation Order shall be binding and effective regardless of whether any such filing, registration, or recordation occurs;

i. this Confirmation Order is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrar of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, county, and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets (all such entities being referred to as "Recording Officers"). Each Recording Officer is authorized, from and after the Effective Date, to strike all recorded Liens (other than Permitted Liens) on or against the Acquired Assets (other than Assumed Liabilities) from their records, official or otherwise, without further order of the Court or act of any Person, in accordance with the Plan, the Purchase Agreement, and this Confirmation Order. Each Recording Officer is authorized and directed (i) to file, record, and/or register any and all documents and instruments presented to consummate or memorialize the Asset Sale and (ii) to accept and rely on this Confirmation Order as the sole and sufficient evidence of the transaction set forth herein;

j. no Bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Asset Sale; and

k. the Purchaser and the Designees are good-faith purchasers under section 363(m) of the Bankruptcy Code and, as such, are entitled to all of the protections afforded thereby.

## D.     No Successor or Other Derivative Liability.

12.     By virtue of the Sale Transaction, the Purchaser, any Designee, and each of their respective affiliates, successors, and assigns, in accordance with the Purchase Agreement, shall not be deemed or considered to: (i) be a legal successor, or otherwise be deemed a successor to

(Page | 59)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

any of the Debtors; (ii) have, *de facto* or otherwise, merged with or into any or all Debtors; (iii) be consolidated with the Debtors or their Estates; or (iv) be an alter ego or a continuation or substantial continuation, or be holding itself out as a mere continuation, of any of the Debtors or their respective Estates, businesses, or operations, or any enterprise of the Debtors, in each case by any law or equity, and, other than as set forth in the Purchase Agreement, the Purchaser has not assumed nor is in any way responsible for any liability or obligation of the Debtors or the Debtors' Estates, except with respect to the Assumed Liabilities.  Except as expressly set forth in the Purchase Agreement, the Purchaser and its affiliates, successors, and assigns, including any Designee (and its affiliates, successors, and assigns) in accordance with the Purchase Agreement, shall have no successor, transferee, or vicarious liability of any kind or character, including, without limitation, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, regulation, or doctrine, whether known or unknown as of the Closing Date (as defined in the Purchase Agreement), now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors, or any obligations of the Debtors arising prior to the Effective Date, including, without limitation, liabilities on account of any taxes or other Governmental Authority fees, contributions, or surcharges, in each case arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of Purchaser or the Purchaser's assets prior to the Closing Date or arising based on actions of the Debtors taken after the Closing Date.

| (Page | 60) | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

13.     Except as expressly set forth herein or in the Purchase Agreement, the Purchaser and its respective successors, affiliates, and assigns, including any Designee in accordance with the Purchase Agreement, shall have no liability for any Claim against the Debtors, the Debtors' Estates, a non-Debtor Affiliate, or Excluded Liabilities, whether known or unknown as of the Effective Date, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee, successor, alter ego, or otherwise, of any kind, nature, or character whatsoever, by reason of any theory of law or equity, including Claims or Excluded Liabilities arising under, without limitation:  (i) any employment or labor agreements or the termination thereof relating to the Debtors; (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of or related to any of the Debtors or the Debtors' affiliates or predecessors or any current or former employees of any of the foregoing, including, without limitation, the termination of any of the foregoing; (iii) the Debtors' business operations or the cessation thereof; (iv) any litigation involving one or more of the Debtors; and (v) any employee, workers' compensation, occupational disease, or unemployment or temporary-disability-related law, including, without limitation, claims that might otherwise arise under or pursuant to:  (A) the Employee Retirement Income Security Act of 1974, as amended; (B) the Fair Labor Standards Act; (C) Title VII of the Civil Rights Act of 1964; (D) the Federal Rehabilitation Act of 1973; (E) the National Labor Relations Act; (F) the Worker Adjustment and Retraining Notification Act of 1988; (G) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended; (H) the Americans with Disabilities Act of 1990; (I) the

| | |
|---|---|
| (Page \| 61) | |
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Consolidated Omnibus Budget Reconciliation Act of 1985; (J) the Multiemployer Pension Plan Amendments Act of 1980; (K) state and local discrimination laws; (L) state and local unemployment compensation laws or any other similar state and local laws; (M) state workers' compensation laws; (N) any other state, local, or federal employee benefit laws, regulations, or rules or other state, local, or federal laws, regulations, or rules relating to, wages, benefits, employment, or termination of employment with any or all Debtors or any predecessors; (O) any antitrust laws; (P) any product liability or similar laws, whether state or federal or otherwise; (Q) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (R) the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. §§ 499a et seq.; (S) any bulk sales or similar laws; (T) any federal, state, or local tax statutes, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (U) the Claims or Liabilities relating to conduct prior to the Effective Date brought by a consumer borrower against any Debtor for the violation of (i) The Real Estate Settlement Procedures Act of 1974 (RESPA) (12 U.S.C. § 2601 et seq.), (ii) The Fair Credit Reporting Act (15 U.S.C. § 1681), (iii) The Truth in Lending Act (12 C.F.R. § 1026), (iv) The Fair Debt Collection Practices Act (15 U.S.C. §§ 1692–1692p), and (v) any and all state law equivalents of the foregoing clauses (i) through (iv); (V) any other Claim or Cause of Action for fraudulent inducement of a consumer borrower to enter into a loan; and (W) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory, or any other theory of or related to successor liability.

(Page | 62)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**E.     Injunction.**

14.     All Persons and Entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Purchaser or a Designee in accordance with the Purchase Agreement and this Confirmation Order.  On and after the Closing Date, except for Persons or Entities entitled to enforce Assumed Liabilities and Permitted Encumbrances (each as defined in the Purchase Agreement), all Persons and Entities (including, but not limited to, the Debtors and/or their respective successors (including any trustee), creditors, investors, certificate holders, securitization trustees, borrowers, current and former employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, including those maintaining any authority relating to any environmental, health, and safety laws, and the successors and assigns of each of the foregoing) holding Claims against the Acquired Assets or against the Debtors in respect of the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing any Claims of any kind or nature whatsoever (including, without limitation, Claims or liabilities relating to any act or omission of the Debtors prior to the Effective Date, and any indemnification Claims or Liabilities relating to any act or omission of the Debtors or any other Person or Entity prior to the Effective Date) against the Purchaser, any affiliate of the Purchaser, a Designee in accordance with the Purchase Agreement, or any of their respective property, successors, and assigns, or the Acquired Assets, as an alleged successor or on any other grounds.

(Page | 63)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

15.     Upon the transfer or assignment of the Assumed Contracts, as applicable, to the Purchaser or a Designee in accordance with the Purchase Agreement, each Counterparty to an Assumed Contract is hereby forever barred, estopped, and permanently enjoined from asserting against the Acquired Assets, the Purchaser, any Designee, each of their respective affiliates, or each of its or their respective property (a) any setoff, defense, recoupment, Claim, counterclaim or default asserted or assertable against, or otherwise seeking to delay, defer, or impair any rights of the Purchaser or any Designee in accordance with the Purchase Agreement with respect to the Acquired Assets with respect to an act or omission of, the Debtors, or (b) any rent acceleration, assignment fee, default, breach, Claim, or pecuniary loss or condition to assignment or transfer arising under or related to an Assumed Contract that is being assumed and assigned or assigned in accordance with the Purchase Agreement existing as of the Closing Date, or arising by reason of the Closing Date.  No delay or failure of performance under or in respect of any Excluded Contract (as defined in the Purchase Agreement) will (i) affect any right of the Purchaser or a Designee in accordance with the Purchase Agreement, or any obligation of any other Person or Entity, including any Counterparty, under any Assumed Contract that is being assumed and assigned or assigned in accordance with the Purchase Agreement or (ii) permit, result in, or give rise to any setoff, delay, deferral, defense, recoupment, Claim, interest, counterclaim, default, or other impairment of the right to receive any payment or otherwise to enforce any other rights under any Assumed Contract that is being assumed and assigned or assigned in accordance with the Purchase Agreement.

(Page | 64)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

16.     No Person or Entity shall assert, and the Purchaser, any Designee in accordance with the Purchase Agreement, and the Acquired Assets shall not be subject to, any defaults, breaches, counterclaims, offsets, defenses (whether contractual or otherwise, including, without limitation, any right of recoupment), Claims, or liabilities of any kind or nature whatsoever to delay, defer, or impair any right of the Purchaser, any Designee in accordance with the Purchase Agreement, or the Debtors, or any obligation of any other Person or Entity, under or with respect to any Acquired Assets (including, without limitation, an Assumed Contract), with respect to any act or omission that occurred prior to the Closing Date or with respect to any Excluded Contract or any obligation of the Debtors that is not an Assumed Liability.

**F.      Fair Purchase Price.**

17.     The total consideration provided by the Purchaser and/or a Designee pursuant to the Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transfer Act, and any other applicable law and may not be avoided under section 363(n) of the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, the District of Columbia, or any other applicable law.  The Purchase Agreement and the Asset Sale are not subject to rejection or avoidance (whether through any avoidance, fraudulent transfer, preference or recovery, claim, action, or proceeding arising under chapter 5 of the Bankruptcy Code or under any similar state or federal Law or any other cause of action) by the Debtors, any chapter 7 or chapter 11 trustee of the Debtors' bankruptcy estates, or any other person or entity.  The Purchase Agreement, this Confirmation

(Page | 65)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Order, and the Debtors' obligations therein and herein shall not be altered, impaired, amended, rejected, discharged, or otherwise affected by any chapter 11 plan proposed or confirmed in these bankruptcy cases, including the Plan, any other order confirming any chapter 11 plan, or any subsequent order of this Court without the prior written consent of the Purchaser or the applicable Designees (solely to the extent expressly provided for in the Designation Agreement[6]).

18.     Neither the Debtors, the Purchaser, a Designee, nor any parent or affiliate of the Purchaser or of a Designee has engaged in any conduct that would cause or permit the Purchase Agreement or the Asset Sale to be avoided under section 363(n) of the Bankruptcy Code.

**G.     Surrender of Possession.**

19.     All Persons that are currently in possession of some or all of the Acquired Assets are hereby directed to surrender possession of such Acquired Assets to the Debtors as of the Effective Date or at such later time as the Purchaser or a Designee, the Post-Effective Date Debtors, or the Plan Administrator reasonably requests.  To the extent required by the Purchase Agreement, the Debtors are authorized to exercise commercially reasonable efforts to assist the Purchaser or a Designee in assuring that all Persons that are presently, or on the Effective Date may be, in possession of some or all of the Acquired Assets will surrender possession of the Acquired Assets to either (i) the Debtors before the Effective Date or (ii) the Purchaser or a Designee on or after the Effective Date.

---

[6]     "Designation Agreement" has the meaning ascribed to it in the Purchase Agreement.

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**H. Transfer of Property.**

20. On the Effective Date, this Confirmation Order shall be considered, and constitute for any and all purposes, a legal, valid, binding, effective, and complete general assignment, conveyance, and transfer of the Acquired Assets and a bill of sale or assignment transferring indefeasible title in the Acquired Assets in connection with the Asset Sale.

**I. No Discriminatory Treatment.**

21. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Purchaser or a Designee on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the Purchase Agreement.

**J. Not an Insider.**

22. As of the date hereof, neither the Purchaser nor any Designee is an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Debtors and the Purchaser or a Designee.

**K. Anti-Assignment Provisions.**

23. All anti-assignment provisions in any Assumed Contract shall not restrict, limit, or prohibit the assumption, assignment, and sale of the Assumed Contracts and are unenforceable anti-assignment provisions in connection with the Asset Sale within the meaning of section 365(f) of the Bankruptcy Code.

(Page | 67)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**L.      Plan Modifications.**

24.      In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to accept the Plan, subject to modifications, if any.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan or Plan Supplement modifications.  All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

**M.      Post-Confirmation Modification of the Plan and Purchase Agreement.**

25.      Subject to the limitations and terms contained in Article X.A and B of the Plan, the Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, without further order of this Court, subject to the consent rights in the Plan.

26.      The Purchase Agreement and related agreements, documents, or other instruments executed in connection therewith may be modified, amended, or supplemented by the parties thereto in a writing signed by each party, and in accordance with the terms thereof, without further order of the Court and subject to the consent rights set forth in the Plan.

**N.      Plan Classification Controlling.**

27.      The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder and the classifications set forth on the

| (Page \| 68) | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan:  (i) were set forth thereon solely for purposes of voting to accept or reject the Plan; (ii) do not necessarily represent and in no event shall be deemed to modify or otherwise affect the actual classification of Claims and Interests under the Plan for distribution purposes; (iii) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (iv) shall not be binding on the Debtors except for voting purposes.

**O.      General Settlement of Claims and Interests.**

28.     To the greatest extent permissible under the Bankruptcy Code, and in consideration of the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  To the greatest extent permissible under the Bankruptcy Code, the Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies, and entry of the Confirmation Order shall constitute the Court's approval of such compromise and settlement, as well as a finding by the Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

(Page | 69)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

## P.   Restructuring Transactions.

29.     On the Effective Date, the applicable Debtors or the Post-Effective Date Debtors, as applicable, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, consummation of any sales of any assets vested with the Post-Effective Date Debtors, winding down the Estates, closing the Chapter 11 Cases, monetizing assets, the cancellation of all securities, notes, instruments, certificates, and other documents pursuant to the Plan, one or more mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Plan Administrator reasonably determines to be necessary to consummate the Plan (collectively, the "Restructuring Transactions").  The actions to implement the Restructuring Transactions may include:   (i) the good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan; (ii) authorization for the Debtors and Post-Effective Date Debtors, as applicable, to take all actions necessary to effectuate the Plan and the Asset Sale, including any restructuring transaction steps set forth in the Plan Supplement; (iii) the funding and sources of consideration for the Plan distributions; (iv) preservation of the Debtors' corporate existence following the Effective Date (except as otherwise provided in the Plan and solely for the purposes set forth in the Plan); (v) the vesting of the Estates' assets in the respective Post-Effective Date Debtors except as otherwise provided in the Purchase Agreement; (vi) the cancellation of existing agreements and Interests; (vii) the effectuation and implementation of other documents and agreements contemplated by, or necessary to effectuate,

(Page | 70)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

the transactions contemplated by the Plan; (viii) the assumption of certain employment obligations; (ix) the preservation of certain Claims and Causes of Action not released pursuant to the Plan, if applicable; (x) the closing of certain of the Chapter 11 Cases; (xi) consummation of the Sale Transaction, and entry into and performance under the Purchase Agreement and related documents; (xii) appointment of the Plan Administrator; (xiii) winding down of the Debtors' estates following consummation of the Asset Sale; (xiv) creation of the GUC Trust and entry into and performance under the GUC Trust Agreement; and (xv) preservation of the D&O Liability Insurance Policies.

## Q. Corporate Action.

30. Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including, as applicable: (i) implementation of the Restructuring Transactions; (ii) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (iii) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (iv) consummation of the Sale Transaction pursuant to the Purchase Agreement and related documents; (v) formation of the Post-Effective Date Debtors and selection of the Plan Administrator; and (vi) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Post-Effective Date Debtors and any corporate action required by the Debtors or the Post-Effective Date Debtors in connection with the Plan shall be deemed to have occurred

(Page | 71)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

and shall be in effect without any requirement of further action by the security Holders, directors, officers, or managers of the Debtors or the Post-Effective Date Debtors.  On or prior to the Effective Date, as applicable, the appropriate officers of the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post-Effective Date Debtors.  The authorizations and approvals contemplated by Article V.H of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**R.      Vesting of Assets in the Post-Effective Date Debtors and Continued Corporate Existence.**

31.      Except as otherwise provided in the Plan, the Confirmation Order, the Purchase Agreement, or any agreement, instrument, or other document incorporated herein, or entered into in connection with or pursuant to, the Plan, the Plan Supplement, or the Purchase Agreement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan (other than the GUC Trust Assets) shall vest in each respective Post-Effective Date Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Confirmation Order, the Purchase Agreement, or any agreement, instrument, or other document incorporated herein, each Post-Effective Date Debtor may operate its business and use, acquire, or dispose of property and compromise or settle any Claims, Interests, or

(Page | 72)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

32.     On and after the Effective Date, the Post-Effective Date Debtors shall continue in existence for purposes of (i) winding down the Debtors' business and affairs as expeditiously as reasonably possible as authorized by the Bankruptcy Court; (ii) resolving Disputed Claims; (iii) making distributions on account of Allowed Claims as provided hereunder; (iv) establishing and funding the Distribution Reserve Accounts; (v) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith; (vi) filing appropriate tax returns; (vii) complying with any continuing obligations under the Purchase Agreement; and (viii) administering the Plan in an efficacious manner.  The Post-Effective Date Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

33.     Notwithstanding anything to the contrary in the Plan, on the Effective Date, any Cause of Action not transferred to the Purchaser or a Designee in accordance with the Purchase Agreement or settled, released, discharged, enjoined, or exculpated under the Plan on or prior to the Effective Date shall vest in the Post-Effective Date Debtors and shall be subject to

(Page | 73)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

administration by the Plan Administrator, and the net proceeds thereof shall be Distributable Consideration.

**S.    Plan Administrator.**

34.    The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his responsibilities under this Plan and as otherwise provided in the Confirmation Order.

35.    On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Post-Effective Date Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Post-Effective Date Debtors and shall succeed to the powers of the Post-Effective Date Debtors' managers, directors, and officers.  The Plan Administrator shall act for the Post-Effective Date Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan in accordance with the Wind Down and as otherwise provided in the Confirmation Order.

36.    From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtors.  The foregoing shall not limit the authority of the Post-Effective Date Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer.  The Debtors, after the Confirmation

(Page | 74)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Date, and the Post-Effective Date Debtors or Plan Administrator, after the Effective Date, shall be permitted to make payments to employees pursuant to employment programs then in effect, and, in the reasonable business judgment of the Plan Administrator and upon three (3) Business Days' notice to counsel to the AHG, to implement additional employee programs and make payments thereunder solely as necessary to effectuate the Wind Down, without any further notice to or action, order, or approval of the Bankruptcy Court.

37.     The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the business and affairs of the Debtors and Post-Effective Date Debtors, including:  (i) making distributions under the Plan; *provided* that, prior to making final distributions as contemplated herein and until all letters of credit issued under the First Lien Credit Agreement are replaced and cancelled, are drawn, or expire pursuant to their terms, the Plan Administrator or the Disbursing Agent, at the election of the Debtors or the Post-Effective Date Debtors, as applicable, shall reserve an amount of Distributable Consideration or New Common Stock, as applicable, on account of the Undrawn LC Facility Claims equal to the incremental distributions to which such Holders of First Lien Claims would be entitled if all undrawn letters of credit issued under the First Lien Credit Agreement were drawn and funded as contemplated therein (the "Undrawn LC Facility Claims Reserve"); (ii) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Post-Effective Date Debtors in accordance with the Wind-Down Reserve; (iii) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (iv) making

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

distributions from the Distribution Reserve Accounts as contemplated under the Plan; (v) establishing and maintaining bank accounts in the name of the Post-Effective Date Debtors; (vi) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (vii) paying all reasonable fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtors; (viii) except as otherwise provided for herein, enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in accordance with Article IV.E of the Plan; (ix) administering and paying taxes of the Post-Effective Date Debtors, including filing tax returns; (x) representing the interests of the Post-Effective Date Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; (xi) discharging the Sellers' and the Post-Effective Date Debtors' Post-Effective Date obligations under the Purchase Agreement; and (xii) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, the Confirmation Order, or any applicable orders of the Bankruptcy Court or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of the Plan in accordance with the Wind-Down Reserve.

38.     To the extent that undrawn letters of credit issued under the First Lien Credit Agreement are drawn after the Distribution Record Date, such Undrawn LC Facility Claims, if any, shall be satisfied from the Undrawn LC Facility Claims Reserve. The Plan Administrator shall hold in the Undrawn LC Facility Claims Reserve all dividends, payments, and other distributions made on account of, as well as any obligations arising from, the property held in the

(Page | 76)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Undrawn LC Facility Claims Reserve, to the extent that such property continues to be so held at the time such distributions are made or such obligations arise. For the avoidance of doubt, the foregoing shall not affect distributions to holders of First Lien Claims on account of drawn letters of credit as of the Distribution Record Date.

**T.      Plan Implementation Authorization.**

39.      The Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as the case may be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, as the same may be modified, amended and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms and the terms hereof, or take any or all corporate actions authorized to be taken pursuant to the Plan or this Confirmation Order, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court. To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing or recording offices and filed or recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law. Pursuant to the business corporation laws of any state, as applicable, no action of the Debtors' boards of directors or the Post-Effective Date Debtors will be required to authorize the Debtors or the Post-Effective Date Debtors, as applicable, to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument,

(Page | 77)

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

release, or other agreement or document related to the Plan, and following the Effective Date, each of the Plan documents will be a legal, valid, and binding obligation of the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable, enforceable against the Debtors, the Post-Effective Date Debtors, and the Plan Administrator, in accordance with the respective terms thereof.

40. For the avoidance of doubt, the Debtors or Post-Effective Date Debtors, as applicable, are authorized and empowered to take all actions necessary related to any corporate name changes in order to effectuate and implement the Plan and the Asset Sale. The Clerk of the United States Bankruptcy Court for the District of New Jersey is authorized and directed to make any necessary docket entries or other filings with the Court related to any corporate name change of the Debtors or Post-Effective Date Debtors, including, but not limited to, docket entries changing the caption of these Chapter 11 Cases.

**U.      Cancellation of Existing Agreements and Interests.**

41. On the Effective Date, except to the extent otherwise provided in the Plan, including in Article V.A. of the Plan, all notes, instruments, certificates, and other documents evidencing Claims or Interests, including the First Lien Credit Documents and all other credit agreements and indentures, shall be cancelled, and the obligations of the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto, including any Liens and/or claims in connection therewith, shall be deemed satisfied in full, cancelled, discharged, released, and of no force or effect, and the Agents shall be released from all duties and obligations thereunder. Holders of or parties to such cancelled instruments, securities, and other documentation will have

(Page | 78)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.  Notwithstanding the foregoing or anything to the contrary herein, any rights of each Agent to indemnification and participation by the other lenders in letters of credit under the DIP Documents, the Receivables Program Documents, the First Lien Credit Documents, and the Bridge Facility Documents shall remain binding and enforceable in accordance with the terms of such documents; *provided* that any such rights to indemnification shall remain binding and enforceable only as against the Post-Effective Date Debtors and shall not be subject to discharge, impairment, or release under the Plan or the Confirmation Order or be asserted against the Purchaser, a Designee, or any of their respective affiliates, or their respective property or assets, including any Acquired Entity (as defined in the Purchase Agreement).

**V.      Wind Down and Dissolution.**

42.      As soon as practicable after the Effective Date, the Plan Administrator shall: (i) cause the Debtors and the Post-Effective Date Debtors, as applicable, to comply with and abide by the terms of the Purchase Agreement and any other documents contemplated thereby; (ii) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of one or more of the Debtors or the Post-Effective Date Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (iii) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of dissolution or equivalent document may be executed by the Plan Administrator

(Page | 79)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

without the need for any action or approval by the shareholders or board of directors or managers of any Debtor.  From and after the Effective Date, except with respect to Post-Effective Date Debtors as set forth herein, the Debtors (x) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (y) shall be deemed to have canceled pursuant to the Plan all Existing Equity Interests, and (z) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.  The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

**W.     Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

43.     This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

(Page | 80)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**X.** **The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

44.     Unless otherwise provided in the Plan or in this Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party.   For the avoidance of doubt, the Gatekeeper Provision shall not be construed to prohibit the Plan Administrator from (i) enforcing the rights of the Post-Effective Date Debtors pursuant to the Plan or any Plan Supplement document; (ii) objecting to Claims pursuant to Article VII of the Plan; or (iii) pursuing any Cause of Action retained by the Post-Effective Date Debtors pursuant to the Plan and the Confirmation Order; *provided* that, in each case, the Plan Administrator satisfies the requirements of Art. VIII.F of the Plan.

**Y.** **Treatment of Executory Contracts and Unexpired Leases.**

45.     The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Executory

(Page | 81)

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Contracts and Unexpired Leases) as well as any notices related to the procedures shall be and hereby are approved in their entirety.

46.     On the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, each Executory Contract or Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be (i) assumed, assumed and assigned, or assigned to the Purchaser or a Designee in accordance with the Purchase Agreement, as applicable, if it is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases; (ii) assumed, assumed and assigned, or assigned to the Purchaser or a Designee in accordance with the Purchase Agreement if it is not listed on either the Schedule of Assumed Executory Contracts and Unexpired Leases or the Schedule of Rejected Executory Contracts and Unexpired Leases and does not relate exclusively to Excluded Assets or Excluded Liabilities; or (iii) rejected if it is (a) listed on the Schedule of Rejected Executory Contracts and Unexpired Leases or (b) not listed on either the Schedule of Assumed Executory Contracts and Unexpired Leases or the Schedule of Rejected Executory Contracts and Unexpired Leases and relates exclusively to Excluded Assets or Excluded Liabilities.  For the avoidance of doubt, the foregoing shall not affect any Executory Contract or Unexpired Lease that is (i) explicitly designated by the Plan or the Confirmation Order to be assumed or assumed and assigned, as applicable, in connection with the Confirmation of the Plan; (ii) subject to a pending motion to assume such Executory Contract or Unexpired Lease as of the Effective Date; (iii) a D&O Liability Insurance Policy; or (iv) a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan.  The

(Page | 82)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

assumption of Executory Contracts and Unexpired Leases thereunder may include the assignment of certain of such contracts to affiliates.

47. Entry of this Confirmation Order by the Court shall constitute approval of all assumptions, assumptions and assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided for in the Plan, the Plan Supplement, the Purchase Agreement, and this Confirmation Order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease assumed and assigned to the Purchaser or a Designee in accordance with the Purchase Agreement shall vest in and be fully enforceable by the Purchaser or the applicable Designee in accordance with its terms, except as modified by the Plan or any order of the Court authorizing and providing for its assumption and assignment. Pursuant to sections 1123(b)(2) and 365 of the Bankruptcy Code and subject to and conditioned upon the closing of the Sale Transaction, the Debtors are hereby authorized to assume and assign the Assumed Contracts, as applicable, to the Purchaser or its Designees free and clear of all Liens and Claims to the extent set forth in this Confirmation Order, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are deemed satisfied.

48. The Debtors are hereby authorized to execute and deliver to the Purchaser and any Designee in accordance with the Purchase Agreement such documents or other instruments as may be necessary to assign and transfer the Assigned Contacts to the Purchaser or its Designees as provided in the Purchase Agreement. With respect to each of the Assumed Contracts that is being assumed and assigned in accordance with the Purchase Agreement and

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

subject to paragraph 57 of section II hereof, the Debtors have cured or will cure any monetary default required to be cured with respect to such Assumed Contracts under sections 1123(b)(2) and 365(b)(1) of the Bankruptcy Code, and the Purchaser and Designees, as applicable, have provided adequate assurance of future performance under the applicable Assumed Contracts in satisfaction of sections 1123(b)(2), 365(b), and 365(f) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the applicable counterparty to such Assumed Contracts. Upon the Closing Date or the applicable date of assumption and assignment with respect to an Assumed Contract, the Purchaser and any applicable Designee shall be fully and irrevocably vested with all rights, title, and interest of the Debtors under such Assumed Contract and, pursuant to sections 1123(b)(2) and 365(k) of the Bankruptcy Code. The assumption by the Debtors and assignment to the Purchaser or its Designees of any Assumed Contract shall not be a default under such Assumed Contract. To the extent any Assumed Contract that is being assumed and assigned in accordance with the Purchase Agreement provides that any Person's or Entity's consent is required as a condition to the assignment of such Assumed Contract, such consent requirement shall be deemed satisfied by virtue of the findings and conclusions in this Confirmation Order and shall be of no further force or effect.

49. The failure of the Debtors, the Purchaser, or a Designee to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions or of the Debtors', a Designee's, or the Purchasers' rights to enforce every term and condition of the Assumed Contracts, as applicable.

(Page | 84)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

50.     Except as otherwise provided in the Plan or agreed to by the Debtors, the Purchaser or the applicable Designee, and the applicable Counterparty, each assumed (or assumed and assigned) Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

51.     To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision or any minimum net worth or similar financial provision), then such provision (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors, the Post-Effective Date Debtors, and/or the Plan Administrator, as applicable, and with the consent of the Purchaser and,

(Page | 85)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

solely to the extent expressly provided for in the Designation Agreement, the applicable Designee, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases at any time through and including ten (10) days before the Effective Date; *provided* that, following the Effective Date the Plan Administrator, the Purchaser, and, solely to the extent expressly provided for in the Designation Agreement, the applicable Designee, may supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time in accordance with the Purchase Agreement, including the notice and consent rights set forth in the Purchase Agreement.

52.     The Debtors or the Post-Effective Date Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter.  The proposed amount and timing of payment of each such Cure shall be set forth in the Plan Supplement unless otherwise agreed in writing (email being sufficient) between the Debtors or the Post-Effective Date Debtors and the counterparty to the applicable Executory Contract or Unexpired Lease. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection (an "Executory Contract Objection") filed by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment, including pursuant to the Plan, or related Cure amount must be Filed, served, and actually received by counsel to the Debtors and the U.S. Trustee by the applicable Assumption or Rejection Objection Deadline or any other deadline that may be set by the Court.  Any Executory Contract Objection (x) timely Filed prior to the Confirmation Hearing will be heard by the Court

(Page | 86)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

at the Confirmation Hearing unless otherwise agreed to by the Debtors and the objecting party, with the consent of the Purchaser or, solely to the extent expressly provided for in the Designation Agreement, the applicable Designee, or (y) timely Filed after the Confirmation Hearing shall be heard as soon as reasonably practicable on a date requested by the Debtors or the Post-Effective Date Debtors, as the case may be, with the consent of the Purchaser or, solely to the extent expressly provided for in the Designation Agreement, the applicable Designee. Any Executory Contract Objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Purchaser, a Designee, or any Post-Effective Date Debtor without the need for any objection by the Post-Effective Date Debtors or any other party in interest or any further notice to or action, order, or approval of the Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Post-Effective Date Debtors, as applicable, of the Cure amount; *provided* that nothing herein shall prevent the Post-Effective Date Debtors from paying any Cure amount despite the failure of the relevant counterparty to File an Executory Contract Objection; *provided further* that if the Asset Sale does not close, payment of a Cure amount shall not affect the effectiveness of any guarantee of the applicable Executory Contract or Unexpired Lease. The Debtors or the Post-Effective Date Debtors, as applicable, may also settle any Cure without any further notice to or action, order, or approval of the Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption and/or assignment.

(Page | 87)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

53.     If there is any dispute regarding any Cure, the ability of the Post-Effective Date Debtors, or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption (or assumption and assignment), then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order (which may be this Confirmation Order) resolving such dispute, approving such assumption (and, if applicable, assumption and assignment), or as may be agreed upon by the Debtors or the Post-Effective Date Debtors, the Purchaser, a Designee, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

54.     To the extent an Executory Contract Objection relates solely to a Cure, the Debtors or the Post-Effective Date Debtors, as applicable, may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of the Cure objection; *provided* that the Debtors or the Post-Effective Date Debtors, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure payment by the non-Debtor party to such Executory Contract or Unexpired Lease (or such smaller amount as may be fixed or estimated by the Court or otherwise agreed to by such non-Debtor party and the applicable Post-Effective Date Debtor); *provided* further that any Cash reserved in accordance with the forgoing shall not constitute an Acquired Asset and shall be maintained by the Debtors or the Post-Effective Date Debtors, as applicable.

55.     The Debtors served all counterparties to the Assumed Contracts with notice of the proposed assumption or assumption and assignment, and the deadline to object to the Cures and adequate assurance of future performance with respect to the Purchaser or a Designee has passed

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

unless otherwise provided herein or in the Plan. Accordingly, subject to paragraph 57 of section II hereof, unless an objection to the proposed Cures or adequate assurance information with respect to the Purchaser or any Designee was filed and served before the applicable Assumption or Rejection Objection Deadline, each counterparty to an Assumed Contract, as applicable, is forever barred, estopped, and permanently enjoined from asserting against the Debtors, the Purchaser, any Designee, their affiliates, successors or assigns or the property of any of the foregoing, any default existing as of the date of the Confirmation Hearing if such default was not raised or asserted prior to or at the Confirmation Hearing.

56.    All of the requirements of sections 1123(b)(2), 365(b), and 365(f), including without limitation, the demonstration of adequate assurance of future performance and Cures required under the Bankruptcy Code, have been satisfied for the assumption by the Debtors and assignment to the Purchaser or its Designees of all Assumed Contracts, as applicable, unless otherwise provided herein and in the Plan. The Purchaser and the Designees have satisfied their adequate assurance of future performance requirements with respect to the applicable Assumed Contracts and demonstrated they are sufficiently capitalized to comply with the necessary obligations under the applicable Assumed Contracts.

57.    (i) To the extent a Counterparty to an Assumed Contract failed to timely object to a Cure, such Cure has been and shall be deemed to be finally determined as of the Debtors' filing of the Plan Supplement, except as otherwise may be amended in accordance with the Plan, this Confirmation Order, and the Purchase Agreement, and any such Counterparty shall be barred, and forever prohibited from challenging, objecting (formally or informally) to, or denying the

(Page | 89)

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

validity and finality of the Cures due and owing as of the date of filing of the Plan Supplement; (ii) any monetary or nonmonetary obligations that come due on an Assumed Contract between the filing of the Plan Supplement and the later of the effective date of assumption or assumption and assignment of an Assumed Contract shall be paid in full in cash or otherwise satisfied by the Debtors as and when they come due; (iii) to the extent expressly set forth in the Purchase Agreement, the Purchaser shall be responsible for and shall pay or satisfy any monetary obligations that accrue under any Executory Contract or Unexpired Lease assumed and assigned to the Purchaser pursuant to the Plan from the date of the Debtors' filing of the Plan Supplement through the effective date of assumption and assignment, to the extent such amounts come due after the effective date of assumption and assignment; and (iv) subject only to clause (i) of this paragraph 57, no provision shall be construed as releasing any Claim that has been or may be asserted under any Executory Contract or Unexpired Lease upon assumption, including (A) a Cure Claim or (B) an Administrative Claim unless and until all monetary and nonmonetary obligations, subject to section 365 of the Bankruptcy Code, as of the effective date of assumption have been satisfied to the extent required under the Bankruptcy Code; *provided*, *however*, with respect to the foregoing, and to the extent payable by the Debtors, any such Claim shall be filed by the later of (A) the Administrative Claims Bar Date, (B) thirty (30) days after the effective date of assumption, or (C) such other date as may be otherwise agreed in writing (email being sufficient), with the consent of the Purchaser and the Required Consenting Term Lenders (not to be unreasonably withheld), between the Debtors or the Post-Effective Date Debtors and the Counterparty to the applicable Executory Contract; *provided further* that (x) in the absence of

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

filing any such Claim by such deadlines, any such Claim shall be barred and extinguished and (y) the existence of a pending dispute as to an amount described in clause (ii) of this paragraph 57 shall not preclude or limit the effectiveness of any assumption or assumption and assignment of the underlying Assumed Contract, and the Debtors or the Post-Effective Date Debtors, as applicable, shall pay any amounts on account of such amounts as agreed between the Debtors or the Post-Effective Date Debtors and the applicable Counterparty or as ordered by the Court.

58.     Assumption (or assumption and assignment or assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan, the Purchase Agreement, or otherwise and full payment of any applicable Cure pursuant to Article V.D of the Plan shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed (or assumed and assigned or assigned) in the Chapter 11 Cases, including pursuant to this Confirmation Order, and for which any Cure has been fully paid pursuant to Article V.D of the Plan, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Court.

59.     For the avoidance of doubt, the Purchaser or a Designee shall not have any obligation with respect to any Cure.  To the extent any Cure dispute arises after the Effective

(Page | 91)

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Date with respect to an Executory Contract or Unexpired Lease assumed and assigned to the Purchaser or to a Designee, the resolution of such Cure dispute shall be the sole responsibility of the Debtors or the Post-Effective Date Debtors, and the Purchaser or a Designee shall have no liability in connection therewith.

60.     Entry of this Confirmation Order shall constitute a Court order approving the rejection, if any, of any Executory Contracts or Unexpired Leases as provided for in the Plan, the Schedule of Rejected Executory Contracts and Unexpired Leases, or the Purchase Agreement. Unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Confirmation Order, if any, must be Filed with the Claims and Noticing Agent at the address specified in any notice of entry of this Confirmation Order and served on the Post-Effective Date Debtors no later than thirty (30) days after the effective date of such rejection. The notice of the Plan Supplement shall be deemed appropriate notice of rejection when served on applicable parties.

61.     Any Claims arising from the rejection of an Executory Contract or Unexpired Lease with respect to which a Proof of Claims is not Filed with the Claims and Noticing Agent within thirty (30) days after the effective date of such rejection will be automatically disallowed and forever barred from assertion and shall not be enforceable against the Debtors, the Post-Effective Date Debtors, the Estates, the GUC Trust, the Purchaser or a Designee, the Plan Administrator, or their property without the need for any objection by the Debtors, the Post-Effective Date Debtors, the Plan Administrator, the Purchaser or a Designee, or the GUC

(Page | 92)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Trust, as applicable, or further notice to, action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged and shall be subject to the permanent injunction set forth in Article VIII.F of the Plan, notwithstanding anything in a Proof of Claim to the contrary.

62.     All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim as set forth in Article III.B of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**Z.     Abandonment.**

63.     Any equipment, fixtures, furniture, or other personal property (collectively, the "Personal Property") of third parties that are not removed from any real property owned or leased by the Post-Effective Date Debtors within forty-five (45) days after the Confirmation Date will be deemed abandoned and surrendered to the Post-Effective Date Debtors.  Following the abandonment and surrender of any such property, the Post-Effective Date Debtors are authorized to dispose of the abandoned Personal Property without notice or liability to any party.

**AA.     Provisions Governing Distributions.**

64.     The distribution provisions of Article VI of the Plan are hereby approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Disbursing Agent or the GUC Trustee, as applicable, shall make all distributions required under the Plan.

(Page | 93)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

## BB. Post-Confirmation Notices and Bar Dates.

65.     In accordance with Bankruptcy Rules 2002 and 3020(c), no later than ten (10) Business Days after the Effective Date, the Post-Effective Date Debtors or the Plan Administrator, as applicable, must cause notice of Confirmation and the occurrence of the Effective Date (the "Notice of Confirmation") to be filed on the docket and be served by United States mail, first-class postage prepaid, by hand, by overnight courier service, or by electronic service to all parties served with the Confirmation Hearing Notice; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked as "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar language, unless such Entity has informed the Debtors in writing of or the Debtors are otherwise aware of such Entity's new address.  For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.  The Confirmation Hearing Notice, this Confirmation Order, and the Notice of Confirmation are adequate under the particular circumstances of these Chapter 11 Cases, in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no other or further notice is necessary.

66.     The Notice of Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording

| (Page | 94) | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

67.     Except as otherwise provided in Article II.A of the Plan, requests for payment of Administrative Claims must be Filed with the Court and served on the Debtors by the applicable Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or the Post-Effective Date Debtors, as applicable, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**CC.     Notice of Subsequent Pleadings.**

68.     Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties:  (i) the Post-Effective Date Debtors and their counsel; (ii) the U.S. Trustee; (iii) the Plan Administrator, (iv) the Purchaser and its counsel; (v) counsel to the AHG; (vi) any party known to be directly affected by the relief sought by such pleadings; and (vii) any party that specifically requests additional notice in writing to the Debtors or Post-Effective Date Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date.  The Notice and Claims Agent shall not be required to file updated service lists.

(Page | 95)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**DD.     Section 1146 Exemption.**

69.     To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Post-Effective Date Debtor, as applicable, or to or from any other Person) of property under the Plan or pursuant to: (i) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtors or the Post-Effective Date Debtors, as applicable; (ii) the Restructuring Transactions; (iii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iv) the making, assignment, or recording of any lease or sublease; (v) the Sale Transaction and any agreement, acquisition, or transaction entered into by the Purchaser, a Designee, or any of their respective affiliates in connection with the Sale Transaction or in furtherance thereof, including any acquisitions of real or personal property by the Purchaser, a Designee, or their respective affiliates from one or more of the Debtors' creditors or landlords in connection with consummation of the Sale Transaction or from other parties in connection with the closing of the Sale Transaction and/or integral to the financing thereof; or (vi) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code and this Confirmation Order, shall forego the collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

## EE.    Preservation of Causes of Action.

70.    In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII of the Plan, the Purchase Agreement and any related documents and schedules, the Post-Effective Date Debtors, shall retain and may enforce (or the Plan Administrator may enforce, if applicable) all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the rights of the Post-Effective Date Debtors to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action (i) acquired by the Purchaser or a Designee in accordance with the Purchase Agreement, as applicable, or (ii) released or exculpated herein (including, without limitation, by the Debtors)

(Page | 97)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

pursuant to the releases and exculpations contained in the Plan, including in Article VIII thereof, which shall be deemed released and waived by the Debtors and the Post Effective Date Debtors, as applicable, as of the Effective Date.

71. The Post-Effective Date Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Post-Effective Date Debtors. Article IV.E of the Plan further provides that: "No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Post-Effective Date Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors and the Post-Effective Date Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as may be assigned or transferred to the Purchaser or a Designee in accordance with the Purchase Agreement or as otherwise expressly provided in the Plan, including Article VIII of the Plan." Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Post-Effective Date Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

72. The Post-Effective Date Debtors and/or the Plan Administrator, as applicable, reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of

(Page | 98)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. For the avoidance of doubt, the GUC Trust shall be solely responsible for effectuating all distributions on account of General Unsecured Claims, and the Plan Administrator, if applicable, shall have no responsibility therefor.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the corresponding Post-Effective Date Debtor except as otherwise expressly provided in the Plan, including Article VIII of the Plan.  The Post-Effective Date Debtors and/or the Plan Administrator, as applicable, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Post-Effective Date Debtors and/or the Plan Administrator, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to Article IV.E of the Plan include any Claim or Cause of Action against a Released Party or Exculpated Party, or any Avoidance Action cancelled and/or extinguished under the Purchase Agreement.

**FF.    Effectiveness of All Actions.**

73.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the Debtors, the

(Page | 99)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Post-Effective Date Debtors, and/or the Plan Administrator and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

**GG.    Binding Effect.**

74.    Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Post-Effective Date Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims and Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims against and Interests in the Debtors shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan regardless of whether any Holder of a Claim or Interest has voted on this Plan.

**HH.    Directors, Officers, and Managers.**

75.    As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be deemed to have resigned without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.

(Page | 100)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

76.     The Debtors shall pay all fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date, and on and after the Effective Date, the Post-Effective Date Debtors shall pay any and all such fees when due and payable until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**II.     Claims Reconciliation Process.**

77.     The procedures and responsibilities for, and costs of, reconciling Disputed Claims shall be as set forth in the Plan or as otherwise ordered by the Court.

**JJ.     Professional Compensation.**

78.     Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327–331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Post-Effective Date Debtors, and/or the Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

(Page | 101)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**KK.     Restructuring Expenses.**

79.     The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date or as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms set forth herein and in the Plan and RSA, without any requirement to File a fee application with the Court.

**LL.     Nonseverability of Plan Provisions upon Confirmation.**

80.     Each term and provision of the Plan, as it may have been amended by the Confirmation Order, is (i) valid and enforceable pursuant to its terms, (ii) integral to the Plan, and (iii) nonseverable and mutually dependent.

**MM.     Waiver or Estoppel.**

81.     Except as otherwise set forth in the Plan or this Confirmation Order, each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Court before the Confirmation Date.

**NN.     Authorization to Consummate.**

82.     The Debtors are authorized to consummate the Plan, including the Asset Sale contemplated thereby, at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

forth in Article IX of the Plan. The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, is deemed to occur on the Effective Date.

**OO. Injunctions and Automatic Stay.**

83. Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order (including the Injunction) shall remain in full force and effect in accordance with their terms.

**PP. Dissolution of Statutory Committees.**

84. On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve, and the members thereof shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

**QQ. Effect of Non-Occurrence of Conditions to the Effective Date.**

85. If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, the Purchaser, a Designee, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, the Purchaser, a Designee, or any other Entity in any respect; *provided* that all provisions of the RSA

(Page | 103)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

and the Purchase Agreement that survive termination thereof shall remain in effect in accordance with the respective terms thereof.

**RR.   Section 345 Waiver.**

86.     Section 345 of the Bankruptcy Code and any provision of the U.S. Trustee Guidelines requiring that the Bank Accounts listed in the Debtors' Cash Management Motion be U.S. Trustee authorized depositories is waived with respect to the Bank Accounts existing as of the Petition Date.

**SS.   Texas Taxing Authorities.**

87.     Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the following provisions will govern the treatment of the claims of the Texas Comptroller and the Texas Workforce Commission (the "Texas Taxing Authorities"):  (i) nothing provided in the Plan or this Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Taxing Authorities in accordance with 11 U.S.C. § 553; (ii) nothing provided in the Plan or this Confirmation Order shall affect or impair any rights of the Texas Taxing Authorities to pursue any non-Debtor third parties (other than the Purchaser or a Designee under the Purchase Agreement) for tax debts or claims; (iii) nothing provided in the Plan or this Confirmation Order shall be construed to preclude the payment of interest on the Texas Taxing Authorities' administrative expense tax claims; and (iv) the Texas Taxing Authorities' administrative expense claims are allowed upon filing without application or motion for payment, subject to objection on substantive grounds.  In no event shall the Texas Taxing

(Page | 104)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

Authorities be paid in a payment schedule that extends past sixty (60) months of the Petition Date, unless otherwise permitted by applicable law.

**TT.    Additional Taxing Authorities.**

88.    Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the Debtors shall pay all outstanding *ad valorem* taxes owed to (i) Maricopa County and (ii) the entities represented by the Linebarger Goggan Blair & Sampson law firm, namely, Galveston County and Tarrant County in these Chapter 11 Cases (the "Additional Taxing Authorities") for tax years 2022 and prior on or before the Effective Date.  The Debtors shall pay the 2023 *ad valorem* taxes owed to the Additional Taxing Authorities in the ordinary course of business. The Additional Taxing Authorities' allowed claims for the 2023 and prior tax years shall include all interest properly charged under applicable non-bankruptcy law through the date of payment to the extent that applicable law provides for interest with respect to any portion of such claims. The 2023 and prior tax year *ad valorem* tax liens (the "Tax Liens"), if any, shall remain attached to all applicable property, or proceeds from the sale thereof, in their prepetition priority until the taxes due under this Confirmation Order are fully paid.  In the event the Asset Sale closes in 2024, the Additional Taxing Authorities' 2024 tax liens shall remain attached to all applicable property until such time as the 2024 taxes are paid in full.  Any actions retained against the Additional Taxing Authorities pursuant to the Plan or any Plan Supplements shall be limited to those permitted by applicable law.  All parties' rights and defenses under applicable law and the Bankruptcy Code with respect to the foregoing, including, but not limited to, the right to dispute or object to (i) the claims or purported classification of the Additional Taxing Authorities, (ii) the

| | |
|---|---|
| (Page | 105) | |
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

allowance or classification of any interest charged on account of such tax claims under applicable law and the Bankruptcy Code, and (iii) the validity or enforcement of the Tax Liens under applicable non-bankruptcy law or the Bankruptcy Code, are fully preserved.  The Additional Taxing Authorities are permitted without leave of the Court to amend their estimated 2023 claim amounts to actual assessed amounts.

**UU.  Effect of Conflict.**

89.  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

**VV.  Retention of Jurisdiction.**

90.  This Court retains jurisdiction over the Chapter 11 Cases, all matters arising out of or related to the Chapter 11 Cases and the Plan, the matters set forth in Article XI and other applicable provisions of the Plan.

**WW.  Waiver of 14-Day Stay.**

91.  Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h), 7062, and 9014, this Confirmation Order is effective immediately and not subject to any stay.

**XX.  Final Order.**

92.  This Confirmation Order is a Final Order, and the period in which an appeal must be Filed shall commence upon the entry hereof.

(Page | 106)

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

93.     This Confirmation Order is effective as of [_____], 2023.

**YY.     Provisions Regarding DLR.**

94.     On November 3, 2023, the Debtors filed the *Notice of Assumption of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 652] (the "Assumption Notice") seeking to assume, as amended, each of the leases and executory contracts, including any exhibits, amendments, modifications, supplements, and guarantees attached or related thereto, set forth in the Assumption Notice (the "DLR Agreements").  Solely to the extent the Court has not entered an order approving the assumption of the DLR Agreements pursuant to the Assumption Notice, the assumption of the DLR Agreements, including any exhibits, amendments, modifications, supplements, and guarantees attached to or related to the DLR Agreements, are assumed pursuant to section 365 of the Bankruptcy Code.  The DLR Agreements shall be assigned pursuant to the terms of the Purchase Agreement and the Plan.

95.      Following assumption, any and all amounts that are accrued as of assumption and become due and owing post-assumption and prior to the Effective Date pursuant to the terms of the DLR Agreements shall be accorded administrative expense priority and paid in a timely manner pursuant to the terms of the DLR Agreements.

96.     Notwithstanding anything herein or in the Plan to the contrary, the payment of any Cure and the assumption and assignment of the DLR Agreements is without prejudice to any rights, including but not limited to setoff, recoupment, or remedies, whether at law or in equity, that the parties to the DLR Agreements may have following assumption of the DLR Agreements, which rights are preserved in their entirety.  For the avoidance of doubt, any rights or claims of

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
|---|---|
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

the non-Debtor counterparty to the DLR Agreements, including but not limited to claims related to indemnification or year-end adjustments or reconciliations, are preserved in their entirety.

## ZZ.   Provisions Regarding Liberty Mutual Insurance Company.

97.     Notwithstanding any other provisions of the Plan, this Confirmation Order, or any other order of this Court, on the Effective Date, all rights and obligations related to the indemnity agreements, if any, setting forth the rights of Liberty Mutual Insurance Company (the "Surety") against the Debtors, and the Debtors' obligations, if any, to pay, indemnify, and hold the Surety harmless from any loss, cost, or expense that the Surety may incur, in each case, on account of the issuance of any Surety Bonds on behalf of the Debtors; (the "Surety Bond Program" and the Debtors' obligations arising therefrom, the "Surety Bond Obligations") shall be reaffirmed and ratified by the applicable Post-Effective Date Debtors and continue in full force and effect and are not discharged, enjoined, impaired, or released by the Plan in any way.  For the avoidance of doubt, nothing in the Plan or this Confirmation Order, including without limitation, any exculpation, release, injunction, or discharge provision of the Plan, including without limitation, any of those provisions contained in Article VIII of the Plan, shall bar, alter, limit, impair, release, modify, or enjoin the Surety Bond Obligations.  The Sureties are otherwise not Releasing Parties under the Plan in any way and shall be deemed to have opted out of the releases provided by the Plan.  The Surety Bond Program and all Surety Bond Obligations related thereto shall be treated by the Post-Effective Date Debtors and the Surety in the ordinary course of business as if the Chapter 11 Cases had not been commenced.  Nothing in the Plan or this paragraph shall affect in any way the Surety's rights against any non-Debtor, or any

(Page | 108)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

non-Debtor's rights against the Surety, including under the Surety Bond Program or with regard to the Surety Bond Obligations.

**AAA.  Provisions Regarding Seacoast National Bank.**

98.     The Debtors shall pay all Cure amounts owed in connection with the Seacoast MELA in accordance with section 365 of the Bankruptcy Code, and until Closing, the Debtors shall pay all amounts arising under the Seacoast MELA in the ordinary course of business to Seacoast through its designated servicer, Wingspire Equipment Finance, or such other designee that Seacoast will provide in writing to the Debtors.  Furthermore, in accordance with and pursuant to the Purchase Agreement and the Plan, the Debtors shall assume, and will assign to the Purchaser, the Seacoast MELA and upon assignment thereof, effective as of the Closing, (i) in accordance with and pursuant to the terms of the Purchase Agreement, the Purchaser shall assume all of the Debtors' obligations arising under the Seacoast MELA from and after the date of the Closing, and (ii) the Purchaser will remit all payment obligations directly to Seacoast (and Seacoast shall provide Assignee with payment instructions contemporaneous with the Closing). At or following the Closing, the Purchaser (or the Debtors, as applicable) may assign the Seacoast MELA to a subsidiary or affiliate of Purchaser, *provided* that Purchaser either provides Seacoast with a written guarantee of all obligations under the Seacoast MELA or assumes in writing all liabilities under the Seacoast MELA.  The Purchaser may not assign the Seacoast MELA to any other third parties without written consent from Seacoast.

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.*, |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

**BBB.  Provisions Regarding PSB Northern California Industrial Portfolio, LLC.**

99.    Notwithstanding anything to the contrary in this Confirmation Order, the provisions of this paragraph shall apply to the Debtors' lease with PSB Northern California Industrial Portfolio, LLC ("<u>PSB</u>," and such lease, the "<u>PSB Lease</u>").  The PSB Lease is designated for assumption and assignment to the Purchaser or its affiliate cannot be designated as rejected unless consented to by PSB.  The Debtors shall pay to PSB the amount of $95,267 plus any additional unpaid amounts that accrue through the Closing.  Until Closing, the Debtors shall pay all amounts arising under the Lease in the ordinary course of business.  Effective as of the Closing, the Purchaser or its affiliate shall assume the Debtor's obligations with respect to the PSB Lease (including any unpaid and accrued obligations with respect to any year-end adjustments and/or year-end reconciliations in accordance with the terms of the PSB Lease) arising under and which come due under the PSB Lease from and after the date of the Closing. Effective as of the Closing, an affiliate of the Purchaser shall be substituted for the Debtor for all purposes as a party to the PSB Lease and shall execute an assignment and assumption agreement to effectuate the assignment.  The security deposit in the amount of $100,000 held by PSB shall be retained by PSB as the deposit required under the PSB Lease after closing, and no further or additional deposit shall be required from Purchaser or its affiliate.   Other than as authorized by the Bankruptcy Court and the Bankruptcy Code concerning the anti-assignment provisions, including sections 365 and 1123(b)(2) thereof, all of PSB's rights under its Lease, including any setoff rights, are preserved, and nothing in this Confirmation Order shall impair or modify PSB's

(Page | 110)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

rights under the PSB Lease.  PSB shall also be deemed to have opted out of the Third-Party Release.

**CCC.**    **Additional Provisions for Specified Parties.**

100.    Following the Effective Date, notwithstanding any of the release, discharge, injunction**,** or waiver provisions to the contrary set forth in the Plan, nothing in the Plan or the Confirmation Order shall modify the rights, if any, of ACPF NOVA Data Center, LLC, RREEF CPIF 2425 Busse Road, LLC, Sabey Datacenters LLC, and International Gateway West LLC (the "Specified Parties") to assert any right of setoff or recoupment that such counterparty may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, the ability, if any, of such counterparties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Leases.

101.    Subject to paragraph 57 of section II hereof, with respect to Unexpired Leases held by the Specified Parties, nothing in the Plan or in the Confirmation Order shall modify the Debtors' or Post-Effective Date Debtors' obligation (or the Purchaser's obligation, if so expressly agreed between the Debtors and the Purchaser pursuant to the Purchase Agreement), as applicable, to pay:  (1) amounts owed under the Unexpired Leases that are unbilled or not yet due as of the Confirmation Date, such as for common area maintenance, insurance, taxes, and similar charges, and any regular or periodic ordinary course year-end adjustments and reconciliations of such charges provided for under the terms of the Unexpired Lease, to the extent such charges become due in the ordinary course in accordance with the terms of the Unexpired Lease prior to the Effective Date; (2) any percentage rent that may come due under

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*., |
| Case No. | 23-14853-JKS |
| Caption of Order: | Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Chapter 11 Plan of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code |

the assumed Unexpired Lease prior to the Effective Date; (3) any other obligations, including indemnification obligations (if any) that arise from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of the premises prior to the Effective Date for which the Debtors had a duty to indemnify such landlord pursuant to any Unexpired Lease, or the obligation of the Debtors or the Post-Effective Date Debtors (or the Purchaser, if so expressly agreed between the Debtors and the Purchaser pursuant to the Purchase Agreement) to pay any postpetition expenses under such Unexpired Leases to the extent they come due under the Unexpired Leases prior to the Effective Date; and (4) any unpaid cure amounts; *provided* that the existence of a pending dispute as to an amount described in this paragraph 101 shall not preclude or limit the effectiveness of any assumption or assumption and assignment of the underlying Unexpired Leases in accordance with the Purchase Agreement, and the Debtors or the Post-Effective Date Debtors, as applicable, shall pay any amounts on account of such amounts as agreed between the Debtors or the Post-Effective Date Debtors and the applicable Counterparty or as ordered by the Court.

## Exhibit A

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CYXTERA TECHNOLOGIES, INC., *et al.*,[1] | ) | Case No. 23-14853 (JKS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FOURTH AMENDED JOINT PLAN OF**
**REORGANIZATION OF CYXTERA TECHNOLOGIES, INC.**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**COLE SCHOTZ P.C.**
Felice R. Yudkin, Esq. (NJ Bar No. 014962005)
Warren A. Usatine, Esq. (NJ Bar No. 025881995)
Michael D. Sirota, Esq. (NJ Bar No. 014321986)
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
Email:      msirota@coleschotz.com
          wusatine@coleschotz.com
          fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:      esassower@kirkland.com
          christopher.marcus@kirkland.com
          derek.hunter@kirkland.com

*Co-Counsel to*
*the Debtors and Debtors in Possession*

*Co-Counsel to*
*the Debtors and Debtors in Possession*

Dated:  November 13, 2023

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed Claims and Noticing Agent at https://www.kccllc.net/cyxtera.   The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is:  2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida, 33134.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ........................................................................................................ 1
A.    Defined Terms. ................................................................................................. 1
B.    Rules of Interpretation. .................................................................................. 15
C.    Computation of Time. .................................................................................... 15
D.    Governing Law. .............................................................................................. 16
E.    Reference to Monetary Figures. ..................................................................... 16
F.    Reference to the Debtors and the Post-Effective Date Debtors...................... 16
G.    Controlling Document. ................................................................................... 16
H.    Nonconsolidated Plan. .................................................................................... 16
I.    Consultation, Notice, Information, and Consent Rights.................................. 16

ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS, AND RESTRUCTURING EXPENSES ....... 17
A.    Administrative Claims. ................................................................................... 17
B.    DIP Claims. .................................................................................................... 17
C.    Professional Fee Claims. ................................................................................ 18
D.    Priority Tax Claims. ....................................................................................... 18
E.    Payment of Restructuring Expenses. .............................................................. 19
F.    Receivables Program Claims. ......................................................................... 19

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .................................. 19
A.    Classification of Claims and Interests. ........................................................... 19
B.    Treatment of Claims and Interests. ................................................................ 20
C.    Special Provision Governing Unimpaired Claims. ......................................... 23
D.    Elimination of Vacant Classes. ...................................................................... 23
E.    Voting Classes, Presumed Acceptance by Non-Voting Classes. .................... 23
F.    Intercompany Interests. .................................................................................. 23
G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ................. 23
H.    Controversy Concerning Impairment. ............................................................ 23
I.    Subordinated Claims. ..................................................................................... 23

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .................................................................. 24
A.    General Settlement of Claims and Interests. ................................................... 24
B.    Restructuring Transactions. ............................................................................ 24
C.    The Equity Investment Transaction or Recapitalization Transaction. ............ 25
D.    The Asset Sale. ............................................................................................... 28
E.    Preservation of Causes of Action. .................................................................. 32
F.    Cancellation of Existing Agreements and Interests. ....................................... 32
G.    Section 1146 Exemption. ................................................................................ 33
H.    Corporate Action. ........................................................................................... 33
I.    Directors and Officers of the Post-Effective Date Debtors. ........................... 34
J.    Effectuating Documents; Further Transactions. ............................................. 34
K.    Vesting of Assets in the Post-Effective Date Debtors. ................................... 34
L.    Private Company. ........................................................................................... 34
M.    GUC Trust. ..................................................................................................... 35
N.    Director and Officer Liability Insurance. ....................................................... 36

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................ 36
A.    Assumption of Executory Contracts and Unexpired Leases. .......................... 36
B.    Indemnification Obligations. .......................................................................... 37
C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases....... 38
D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.... 38

E.      Insurance Policies. ..................................................................................................39
F.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. ..........40
G.      Reservation of Rights. .............................................................................................40
H.      Nonoccurrence of Effective Date. ..........................................................................40
I.      Contracts and Leases Entered Into After the Petition Date. ...................................40

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ....................................................40
A.      Timing and Calculation of Amounts to Be Distributed ..........................................40
B.      Disbursing Agent. ...................................................................................................41
C.      Rights and Powers of Disbursing Agent. ................................................................41
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. ............41
E.      Manner of Payment. ................................................................................................42
F.      Compliance with Tax Requirements. ......................................................................42
G.      Allocations. .............................................................................................................42
H.      No Postpetition Interest on Claims .........................................................................43
I.      Foreign Currency Exchange Rate. ..........................................................................43
J.      Setoffs and Recoupment. ........................................................................................43
K.      Claims Paid or Payable by Third Parties. ...............................................................43

ARTICLE VII.  PROCEDURES FOR RESOLVING CONTINGENT,   UNLIQUIDATED, AND DISPUTED
        CLAIMS ...................................................................................................................44
A.      Disputed Claims Process. ........................................................................................44
B.      Allowance of Claims. ..............................................................................................44
C.      Estimation of Claims. ..............................................................................................45
D.      Claims Administration Responsibilities. .................................................................45
E.      Time to File Objections to Claims. .........................................................................45
F.      Adjustment to Claims or Interests without Objection. ............................................45
G.      Disputed and Contingent Claims Reserve. ..............................................................46
H.      Disallowance of Claims or Interests. ......................................................................46
I.      Amendments to Proofs of Claim or Interest ...........................................................46
J.      Distributions Pending Allowance. ..........................................................................46
K.      Distributions After Allowance. ...............................................................................46

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ...........47
A.      Discharge of Claims and Termination of Interests. ................................................47
**B.      Release of Liens.** ......................................................................................................47
**C.      Releases by the Debtors.** .........................................................................................48
**D.      Releases by Holders of Claims and Interests.** ........................................................48
**E.      Exculpation.** ............................................................................................................49
**F.      Injunction.** ...............................................................................................................50
G.      Protections Against Discriminatory Treatment. ......................................................51
H.      Document Retention. ...............................................................................................51
I.      Reimbursement or Contribution. .............................................................................51

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ......................51
A.      Conditions Precedent to the Effective Date. ...........................................................51
B.      Waiver of Conditions. .............................................................................................52
C.      Effect of Failure of Conditions. ..............................................................................52
D.      Substantial Consummation. .....................................................................................53

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .....................53
A.      Modification and Amendments. ...............................................................................53
B.      Effect of Confirmation on Modifications. ...............................................................53
C.      Revocation or Withdrawal of Plan. .........................................................................53

ARTICLE XI. RETENTION OF JURISDICTION .........................................................................53

ARTICLE XII. MISCELLANEOUS PROVISIONS ...................................................................... 55
    A.    Immediate Binding Effect. .......................................................................................... 55
    B.    Additional Documents. ............................................................................................... 56
    C.    Payment of Statutory Fees. ......................................................................................... 56
    D.    Statutory Committee and Cessation of Fee and Expense Payment. ............................ 56
    E.    Reservation of Rights. ................................................................................................ 56
    F.    Successors and Assigns. ............................................................................................. 56
    G.    Notices. ...................................................................................................................... 57
    H.    Term of Injunctions or Stays. ..................................................................................... 58
    I.    Entire Agreement. ...................................................................................................... 58
    J.    Exhibits. ..................................................................................................................... 58
    K.    Nonseverability of Plan Provisions. ........................................................................... 58
    L.    Votes Solicited in Good Faith. ................................................................................... 59
    M.    Good Faith; No Collusion. ......................................................................................... 59
    N.    Closing of Chapter 11 Cases. ..................................................................................... 59
    O.    Waiver or Estoppel. ................................................................................................... 59
    P.    Creditor Default. ........................................................................................................ 59
    Q.    Removal or Abandonment of Third Parties' Property. ............................................... 60

**INTRODUCTION**

Cyxtera Technologies, Inc. and the above-captioned debtors and debtors in possession propose the Plan for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A of the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations as well as a summary and description of the Plan, the Restructuring Transactions, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.
DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth below.

1.    "*Acquired Assets*" has the meaning set forth in the Purchase Agreement.

2.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930; (d) Adequate Protection Claims (as defined in the DIP Orders); (e) Restructuring Expenses; (f) the Disinterested Director Fee Claims; (g) the Canadian Fee Claims; and (h) the Breakup Fee and the Expense Reimbursement (each as defined in the Purchase Agreement), to the extent payable under the Purchase Agreement.

3.    "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be thirty (30) days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date.

4.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the reference Entity were a debtor in a case under the Bankruptcy Code.

5.    "*Agents*" means, collectively, the DIP Agent, the Prepetition Agent, the Bridge Facility Agent, the New Takeback Facility Agent, and the Receivables Program Agent, including, in each case, any successors thereto.

6.    "*AHG*" means that certain ad hoc group of Holders of Term Loan Claims represented by the AHG Advisors.

7.    "*AHG Advisors*" means (i) Gibson, Dunn & Crutcher LLP, (ii) Houlihan Lokey Capital, Inc., (iii) Gibbons P.C., and (iv) Goodmans LLP.

8.    "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the applicable bar date (or for which Claim a Proof of Claim is not

required under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court; *provided* that, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, if such an objection is so interposed, such Claim shall have been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court, and Holders of such Claims shall not receive any distributions under the Plan on account of such Claims or Interests. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes.  For the avoidance of doubt, a Proof of Claim Filed after the applicable bar date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.   "Allow" and "Allowing" shall have correlative meanings.

9.     "*Asset Sale*" means a Sale Transaction in which the Debtors sell all or substantially all of their assets to the Purchaser pursuant to the Purchase Agreement.

10.     "*Assumption or Rejection Objection Deadline*" means the date that is ten (10) days after filing of the Schedule of Assumed Executory Contracts and Unexpired Leases; *provided* that if any Executory Contract or Unexpired Lease is added to or removed from such schedule, or its treatment, including payment of Cure or assignment, is altered pursuant to an amended Schedule of Assumed Executory Contracts and Unexpired Leases, then the Assumption or Rejection Objection Deadline solely with respect to such Executory Contract or Unexpired Lease shall be ten (10) days after filing of the amended Schedule of Assumed Executory Contracts and Unexpired Leases that sets forth such modification.

11.     "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, 552, and 553(b) of the Bankruptcy Code, and applicable non-bankruptcy law.

12.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

13.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey.

14.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

15.     "*Bidding Procedures*" means the bidding procedures attached as <u>Exhibit 1</u> to the Bidding Procedures Order.

16.     "*Bidding Procedures Documents*" means the Bidding Procedures, the Bidding Procedures Motion, and the Bidding Procedures Order.

17.     "*Bidding Procedures Motion*" means the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. 95].

18.     "*Bidding Procedures Order*" means the *Order (I) Approving the Bidding Procedures and Auction, (II) Approving Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and an Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. 180].

19.     "*Bridge Facility*" means that certain super senior financing facility issued pursuant to the Bridge Facility Credit Agreement.

20.     "*Bridge Facility Agent*" means Wilmington Savings Fund Society, FSB, in its capacity as administrative and collateral agent under the Bridge Facility Credit Agreement.

21.     "*Bridge Facility Credit Agreement*" means that certain Frist Lien Priority Credit Agreement dated as of May 4, 2023, by and among Initial Holdings, the Prepetition Borrower, the lenders party thereto, and the Bridge Facility Agent.

22.     "*Bridge Facility Documents*" means the Bridge Facility Credit Agreement and any other documentation necessary to effectuate the incurrence of the Bridge Facility.

23.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

24.     "*Canadian Fee Claims*" means all unpaid fees and expenses as of the Effective Date due to (i) Gowling WLG (Canada) LLP, in its capacity as Cyxtera's Canadian counsel pursuant to its engagement letter with Cyxtera; (ii) Alvarez & Marsal Canada Inc., in its capacity as the information officer in *In the Matter of Cyxtera Technologies Inc.*, (2023) Court File No. 2301-07385 (Can. Alta. KB); and (iii) McMillan LLP, in its capacity as counsel to Alvarez & Marsal Canada Inc.  On the Effective Date, the Canadian Fee Claims shall be deemed Allowed Administrative Claims against Cyxtera.

25.     "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

26.     "*Cash Collateral*" has the meaning set forth in section 363(a) of the Bankruptcy Code.

27.     "*Cause of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (including under any state or federal securities laws).  Causes of Action include:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, (d) any claim or defense including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code, and (e) any state law fraudulent transfer claim.

28.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

29.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

30.     "*Claims and Noticing Agent*" means Kurtzman Carson Consultants LLC, the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

31.     "*Claims Objection Deadline*" means the deadline for objecting to a Claim asserted against a Debtor, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the Post-Effective Date Debtors, as applicable, or by an order of the Bankruptcy Court for objecting to such Claims.

32. "*Claims Register*" means the official register of Claims and Interests in the Debtors maintained by the Claims and Noticing Agent.

33. "*Class*" means a class of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

34. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

35. "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code as set forth in the *Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 133] and as may be reconstituted from time to time.

36. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

37. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

38. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

39. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, the form and substance of which shall be subject to the consent rights set forth in the RSA, and, in the event of a Sale Transaction, approving the Asset Sale and otherwise subject to the consent rights in the Purchase Agreement.

40. "*Consenting Lenders*" means, collectively, the Holders of First Lien Claims that are signatories to the RSA or any subsequent Holder of First Lien Claims that becomes party thereto in accordance with the terms of the RSA, each solely in their capacity as such.

41. "*Consenting Sponsors*" means, collectively, the Holders of Existing Equity Interests that are signatories to the RSA or any subsequent Holder of Existing Equity Interests that becomes party thereto in accordance with the terms of the RSA, each solely in their capacity as such.

42. "*Consenting Stakeholders*" means, collectively, the Consenting Lenders and the Consenting Sponsors.

43. "*Consummation*" means the occurrence of the Effective Date.

44. "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code. The amount of a Cure payment, if any, is $0.00 unless otherwise indicated in the Schedule of Assumed Executory Contracts and Unexpired Leases. The proposed Cure payment for any Executory Contract or Unexpired Lease for which no amount is set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases shall be deemed to equal $0.00.

45. "*Cyxtera*" means Cyxtera Technologies, Inc.

46. "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") covering any of the Debtors' current or former directors', managers', officers' and/or employees' liability and all agreements, documents, or instruments relating thereto.

47. "*Debtor Release*" means the release set forth in Article VIII.C hereof.

48. "*Debtors*" means, collectively, each of the following: Cyxtera Technologies, Inc., Cyxtera Canada TRS, ULC, Cyxtera Canada, LLC, Cyxtera Communications Canada, ULC, Cyxtera Communications, LLC, Cyxtera Data Centers, Inc., Cyxtera DC Holdings, Inc., Cyxtera DC Parent Holdings, Inc., Cyxtera Digital Services, LLC, Cyxtera Employer Services, LLC, Cyxtera Federal Group, Inc., Cyxtera Holdings, LLC, Cyxtera Management, Inc., Cyxtera Netherlands B.V., Cyxtera Technologies Maryland, Inc., and Cyxtera Technologies, LLC.

49. "*Definitive Documents*" means, collectively and as applicable, (a) the Disclosure Statement; (b) the Solicitation Materials; (c) the New Organizational Documents; (d) the DIP Orders (and motion(s) seeking approval thereof); (e) the DIP Documents; (f) the New Takeback Facility Documents, (g) the Plan (and all exhibits thereto); (h) the Confirmation Order; (i) the order of the Bankruptcy Court approving the Disclosure Statement and the other Solicitation Materials (and motion(s) seeking approval thereof); (j) all material pleadings Filed by the Debtors in connection with the Chapter 11 Cases (and related orders), including the first day pleadings and all orders sought pursuant thereto; (k) the Plan Supplement; (l) the MIP Documents; (m) any and all filings with or requests for regulatory or other approvals from any governmental entity or unit, other than ordinary course filings and requests, necessary or desirable to implement the Restructuring Transactions; (n) the Bridge Facility Documents; (o) the Bidding Procedures Documents; (p) the Purchase Agreement; and (q) such other agreements, instruments, and documentation as may be necessary to consummate and document the transactions contemplated by the Plan.  For the avoidance of doubt, the form and substance of each Definitive Document shall be subject to the consent rights set forth in the RSA and, with respect to any Definitive Document that relates to the Purchaser, the Purchase Agreement, or the Asset Sale, such Definitive Document shall be in form and substance reasonably acceptable to the Purchaser unless otherwise provided for in the Purchase Agreement or the Plan.

50. "*DIP Agent*" means the administrative agent and collateral agent under the DIP Facility.

51. "*DIP Agent Advisors*" means ArentFox Schiff LLP, in its capacity as counsel to the DIP Agent and the Prepetition Priority Administrative Agent (as defined in the DIP Orders).

52. "*DIP Claims*" means any Claim against any Debtor derived from, based upon, or arising under the DIP Facility, the DIP Credit Agreement, or the other DIP Documents.

53. "*DIP Credit Agreement*" means that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of June 7, 2023, by and among Initial Holdings, Prepetition Borrower, the lenders party thereto, and Wilmington Savings Fund Society, FSB, as administrative agent and collateral agent.

54. "*DIP Documents*" means, collectively, the DIP Credit Agreement and any other documents governing the DIP Facility, including the DIP Orders, as such documents may be amended, supplemented, or otherwise modified from time to time in accordance with their terms.

55. "*DIP Facility*" means the superpriority senior secured debtor-in-possession credit facility provided for under the DIP Documents.

56. "*DIP Lenders*" means, collectively, each lender under the DIP Facility.

57. "*DIP Loans*" means the loans issued pursuant to the DIP Credit Agreement.

58. "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order.

59. "*Disbursing Agent*" means, with respect to all distributions to be made under the Plan other than distributions on account of General Unsecured Claims, the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, or any Entity the Debtors, the Post-Effective Date Debtors, or the Plan Administrator selects to make or to facilitate distributions in accordance with the Plan, which Entity may include the Claims and Noticing Agent and, with the respective Agent's prior written consent, the Agents, as applicable.

60.    "*Disclosure Statement*" means the disclosure statement in respect of the Plan, including all exhibits and schedules thereto, as approved or ratified by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

61.    "*Disclosure Statement Order*" means the *Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, and (IV) Certain Dates with Respect Thereto* [Docket No. 563].

62.    "*Disinterested Director Fee Claims*" means all unpaid fees and expenses as of the Effective Date due to the disinterested directors of Cyxtera pursuant to their respective director agreements with Cyxtera.  On the Effective Date, the Disinterested Director Fee Claims shall be deemed Allowed Administrative Claims against Cyxtera.

63.    "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest:  (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or Proof of Interest or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

64.    "*Disputed Claims Reserve Amount*" means Cash in an amount to be determined by the Debtors in consultation with the Required Consenting Term Lenders, which amount shall be used to fund the Disputed Claims Reserve.

65.    "*Disputed Claims Reserve*" means the account to be established on the Effective Date and funded with the Disputed Claims Reserve Amount for distribution as set forth in Article VII.G, if any.

66.    "*Distributable Consideration*" means, in the event of a Sale Transaction, all Cash of the Debtors or the Post-Effective Date Debtors, as applicable, on or after the Effective Date, including any Cash comprising the Purchase Price and the Residual Cash, after payment of the Administrative Claims, DIP Claims, Professional Fee Claims, Disinterested Director Fee Claims, Canadian Fee Claims, Restructuring Expenses, Priority Tax Claims, Receivables Program Claims, Other Secured Claims, and Other Priority Claims, each as set forth in the Plan, and funding the Professional Fee Escrow Account, the GUC Trust, the Disputed Claims Reserve, the Wind-Down Reserve, and the Priority Claims Reserve, as applicable, *plus* any non-Cash consideration comprising the Purchase Price *plus* any proceeds generated by any Cause of Action retained by the Post-Effective Date Debtors.

67.    "*Distribution Record Date*" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the first day of the Confirmation Hearing or such other date agreed to by the Debtors and the Required Consenting Term Lenders.

68.    "*Distribution Reserve Accounts*" means, in the event of an Asset Sale, the Priority Claims Reserve and the Wind-Down Reserve established pursuant to the Plan.

69.    "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

70.    "*Entity*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

71.    "*Equity Investment Transaction*" means a restructuring under the Plan pursuant to which, among other things, the Purchaser purchases all or substantially all of the New Common Stock in exchange for the Purchase Price.

72.    "*Equity Security*" means any equity security, as defined in section 101(16) of the Bankruptcy Code, in a Debtor.

73.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

74.    "*Exchange Act*" means the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78a et seq, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

75.    "*Excluded Assets*" has the meaning set forth in the Purchase Agreement.

76.    "*Excluded Liabilities*" has the meaning set forth in the Purchase Agreement.

77.    "*Exculpated Parties*" means, collectively:  (a) the Debtors; (b) the Post-Effective Date Debtors, (c) the Committee and the members of the Committee; and (d) with respect to each of the foregoing Entities in clauses (a) through (c), each such Entity's current and former control persons, directors, members of any committees of any Entity's board of directors or managers, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, advisory board members, financial advisors, attorneys (including any attorneys or other professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

78.    "*Executory Contract*" means a contract to which one or more of the Debtors are a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

79.    "*Existing Equity Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of Cyxtera (in each case whether or not arising under or in connection with any employment agreement) immediately prior to the consummation of the transactions contemplated in the Plan.

80.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

81.    "*File*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.  "Filed" and "Filing" shall have correlative meanings.

82.    "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 297].

83.    "*Final Order*" means, as applicable, an order or judgment in any U.S. or non-U.S. forum of the Bankruptcy Court or any other court of competent jurisdiction (including any Canadian or other non-U.S. court) with respect to the relevant subject matter that has not been reversed, vacated, stayed, modified, or amended and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing thereof has been timely sought, or, if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied, or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; *provided*, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

84.    "*Final Receivables Program Order*" means the *Final Order (I) Authorizing Certain Debtors to Continue Selling, Contributing, and Servicing Receivables and Related Rights Pursuant to the Receivables Program, (II) Modifying the Automatic Stay, and (III) Granting Related Relief* [Docket No. 295].

85.    "*First Lien Claims*" means, collectively, the RCF Claims and the Term Loan Claims.

86.    "*First Lien Credit Agreement*" means that certain First Lien Credit Agreement, dated as of May 17, 2017, by and among the Prepetition Borrower, Initial Holdings, the lenders from time to time party thereto, the issuers of letters of credit thereunder, and the Prepetition Agent, as the same may be amended, supplemented, or otherwise modified from time to time.

87.    "*First Lien Credit Documents*" means the First Lien Credit Agreement and any other documentation necessary to effectuate the incurrence of the Revolving Credit Facility or the Term Loan Facilities.

88.    "*General Unsecured Claim*" means any Claim that is not (a) an Administrative Claim, (b) a Professional Fee Claim, (c) a Priority Tax Claim, (d) a Secured Tax Claim, (e) a DIP Claim, (f) an Other Secured Claim, (g) an Other Priority Claim, (h) a First Lien Claim, (i) a Receivables Program Claim, (j) an Intercompany Claim, (k) a Section 510 Claim, (l) a Disinterested Director Fee Claim, (m) a Canadian Fee Claim, or (n) a Restructuring Expense.

89.    "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, managing member, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or the Post-Effective Date Debtors, as applicable.

90.    "*Governmental Unit*" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

91.    "*GUC Trust*" means the trust established on the Effective Date in accordance with the Plan to hold the GUC Trust Assets and administer Allowed General Unsecured Claims pursuant to the GUC Trust Agreement.

92.    "*GUC Trust Agreement*" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the GUC Trust to be entered into on or before the Effective Date between the Debtors and the GUC Trustee, which agreement shall be in form and substance acceptable to the Debtors, the Committee, and the Required Consenting Term Lenders.

93.    "*GUC Trust Assets*" means $8.65 million in Cash to be transferred by the Debtors to the GUC Trust on the Effective Date.

94.    "*GUC Trustee*" means, in its capacity as such, the Person selected by the Committee in consultation with the Debtors and the Required Consenting Term Lenders, and any successor thereto, in accordance with the GUC Trust Agreement.

95.    "*GUC Trust Fees and Expenses*" means all reasonable and documented fees, expenses, and costs (including any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets) incurred by the GUC Trust, any professionals retained by the GUC Trust, and any additional amount determined necessary by the GUC Trustee to adequately reserve for the operating expenses of the GUC Trust.

96.    "*GUC Trust Net Assets*" means the GUC Trust Assets *less* the GUC Trust Fees and Expenses.

97.    "*Holder*" means an Entity that is the record owner of a Claim or Interest.  For the avoidance of doubt, affiliated record owners of Claims or Interests managed or advised by the same institution shall constitute separate Holders.

98.    "*Impaired*" means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

99.     "*Initial Holdings*" means Cyxtera DC Parent Holdings, Inc.

100.    "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor.

101.    "*Intercompany Interest*" means an Interest in a Debtor held by another Debtor.

102.    "*Interest*" means, collectively, (a) any Equity Security in any Debtor and (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, or repurchase rights; convertible, exercisable, or exchangeable securities; or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

103.    "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 70].

104.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

105.    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

106.    "*Management Incentive Plan*" means, in the event of a Recapitalization Transaction or an Equity Investment Transaction, the management incentive plan reserving up to 10 percent of the New Common Stock on a fully diluted basis, with structure, awards, and terms of the management incentive plan to be determined by the New Board, which management incentive plan shall be acceptable to the Required Consenting Term Lenders and the Debtors.

107.    "*MIP Documents*" means, collectively, the documents governing the Management Incentive Plan, as such documents may be amended, supplemented, or otherwise modified from time to time in accordance with their terms.

108.    "*New Board*" means, in the event of a Recapitalization Transaction or an Equity Investment Transaction, the board of directors or similar Governing Body of Reorganized Cyxtera, which shall be acceptable to the Required Consenting Term Lenders, including, without limitation, with respect to the number and identity of the directors.

109.    "*New Common Stock*" means, in the event of a Recapitalization Transaction or an Equity Investment Transaction, a single class of common equity interests issued by Reorganized Cyxtera on the Effective Date.

110.    "*New Organizational Documents*" means, in the event of a Recapitalization Transaction or an Equity Investment Transaction, the documents providing for corporate governance of Reorganized Cyxtera and the other Post-Effective Date Debtors, as applicable, including charters, bylaws, operating agreements, or other organizational documents or shareholders' agreements, as applicable, which shall be consistent with section 1123(a)(6) of the Bankruptcy Code (as applicable) and in form and substance subject to the consent rights set forth in the RSA and, in the event of a Sale Transaction, in form and substance reasonably acceptable to the Purchaser.

111.    "*New Takeback Facility*" means, in the event of a Recapitalization Transaction, a new senior secured, first lien, "first out" term loan facility, in an initial aggregate principal amount of $200,468,511.87 *plus* any accrued and unpaid interest, fees, costs, charges, expenses, and any other accrued and unpaid amounts under the DIP Documents as of the Effective Date, to be incurred by the Debtors on the Effective Date in connection with effectuating the Recapitalization Transaction in accordance with the Plan and the Restructuring Transactions Memorandum, in each case as determined by the Debtors and in form and substance subject to the consent rights set forth in the RSA.

112.    "*New Takeback Facility Agent*" means the agent under the New Takeback Facility Credit Agreement.

113.   "*New Takeback Facility Credit Agreement*" means the credit agreement with respect to the New Takeback Facility, as may be amended, supplemented, or otherwise modified from to time and which shall be in form and substance subject to the consent rights set forth in the RSA.

114.   "*New Takeback Facility Documents*" means the New Takeback Facility Credit Agreement and any other documentation necessary or appropriate to effectuate the incurrence of the New Takeback Facility, each of which shall be in form and substance subject to the consent rights set forth in the RSA.

115.   "*New Takeback Facility Loans*" means loans issued under the New Takeback Facility.

116.   "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

117.   "*Other Secured Claim*" means any Secured Claim against the Debtors other than the DIP Claims, the Priority Tax Claims, the Receivables Program Claims, or the First Lien Claims.

118.   "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

119.   "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

120.   "*Plan*" means this joint plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, the RSA, the Purchase Agreement, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits and schedules hereto and thereto.

121.   "*Plan Administrator*" means, in the event of an Asset Sale, the Person selected by the Debtors and the Required Consenting Term Lenders and, in the event of an Asset Sale, after consultation with the Purchaser, to administer all assets of the Estates vested in the Post-Effective Date Debtors, and thereafter, all assets held from time to time by the Post-Effective Date Debtors.

122.   "*Plan Administrator Agreement*" means that certain agreement entered into no later than the Effective Date setting forth, among other things, the Plan Administrator's rights, powers, obligations, and compensation, which shall be in form and substance subject to the consent rights set forth in the RSA.

123.   "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under and in accordance with the Plan.

124.   "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, subject to the consent rights set forth in the Purchase Agreement (in the event of an Asset Sale), and as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors, to the extent reasonably practicable, no later than three (3) days before the deadline to vote to accept or reject the Plan or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable:  (a) the New Organizational Documents; (b) the identity and members of the New Board; (c) the Schedule of Retained Causes of Action; (d) the New Takeback Facility Documents; (e) the Restructuring Transactions Memorandum; (f) the Schedule of Assumed Executory Contracts and Unexpired Leases; (g) the Schedule of Rejected Executory Contracts and Unexpired Leases; (h) the GUC Trust Agreement; (i) in the event of an Asset Sale, the Plan Administrator Agreement and the identity of the Plan Administrator; (j) in the event of a Sale Transaction, the Purchase Agreement; and (k) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

125.   "*Post-Effective Date Debtors*" means the Debtors after the Effective Date or the Plan Administrator, as applicable.

126.    "*Prepetition Agent*" means Citibank, N.A., in its capacity as administrative and collateral agent under the First Lien Credit Agreement.

127.    "*Prepetition Borrower*" means Cyxtera DC Holdings, Inc. (f/k/a Colorado Buyer Inc.).

128.    "*Prepetition First Lien Administrative Agent Advisors*" means (i) Davis Polk & Wardwell LLP, (ii) Greenberg Traurig, LLP, and (iii) FTI Consulting, Inc.

129.    "*Priority Claims*" means, collectively, Administrative Claims, Priority Tax Claims, and Other Priority Claims.

130.    "*Priority Claims Reserve*" means, in the event of an Asset Sale, the account to be established and maintained by the Plan Administrator on the Effective Date and funded with the Priority Claims Reserve Amount for distribution to Holders of Priority Claims (except for Professional Fee Claims) as set forth in Article II.

131.    "*Priority Claims Reserve Amount*" means, in the event of an Asset Sale, Cash in an amount to be determined in the Debtors' reasonable business judgment and in consultation with the Required Consenting Term Lenders, which amount shall be used by the Plan Administrator to fund the Priority Claims Reserve.

132.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

133.    "*Professional*" means an Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

134.    "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses Professionals reasonably estimate in good faith that they have incurred or will incur in rendering services to the Debtors as set forth in Article II.C of the Plan.

135.    "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

136.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

137.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the applicable bar date.

138.    "*Proof of Interest*" means a proof of Interest filed in any of the Debtors in the Chapter 11 Cases.

139.    "*Purchase Agreement*" means the purchase agreement entered into by the Debtors and the Purchaser in accordance with the Bidding Procedures, which shall be in form and substance subject to the consent rights set forth in the RSA and acceptable to the Purchaser and the Required Consenting Term Lenders.

140.    "*Purchase Price*" has the meaning set forth in the Bidding Procedures.

141.    "*Purchaser*" means, (a) in the event that the Debtors, with the consent of the Required Consenting Term Lenders, determine to pursue the Asset Sale, Phoenix Data Center Holdings LLC and its affiliates that are Designees under and as defined in the Purchase Agreement, or (b) in the event that the Debtors, with the consent of the Required Consenting Term Lenders, determine to pursue the Equity Investment Transaction, the "Purchaser" under and as defined in the Purchase Agreement.

142.    "*RCF Claims*" means any Claim on account of the Revolving Credit Facility and any claim against any non-Debtor Affiliate of a Debtor under such Revolving Credit Facility.

143.    "*Recapitalization Transaction*" means, in the event that the Debtors, with the consent of the Required Consenting Term Lenders, do not determine to pursue a Sale Transaction, the restructuring transaction pursuant to the Plan, pursuant to which, among other things, Holders of First Lien Claims receive 100 percent of the New Common Stock, subject to dilution by the Management Incentive Plan.

144.    "*Receivables Program*" means that certain trade receivables securitization facility pursuant to the Receivables Program Documents and approved by the Final Receivables Program Order.

145.    "*Receivables Program Agent*" means, collectively, PNC Bank, National Association, in its capacity as Administrative Agent under the Receivables Program Documents, and PNC Capital Markets LLC, in its capacity as Structuring Agent under the Receivables Program Documents, including, in each case, any successors thereto.

146.    "*Receivables Program Claims*" means any Claims constituting Receivables Program Obligations (as defined in the Final Receivables Program Order).

147.    "*Receivables Program Documents*" means, collectively, the "Transaction Documents" as defined in the Final Receivables Program Order, as such documents may be amended, supplemented, or otherwise modified from time to time in accordance with their terms.

148.    "*Reinstate*" means reinstate, reinstated, or reinstatement with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. "Reinstated" and "Reinstatement" shall have correlative meanings.

149.    "*Related Party*" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

150.    "*Released Party*" means, each of, and in each case in its capacity as such:  (a) each Debtor; (b) each Post-Effective Date Debtor; (c) each Consenting Stakeholder; (d) each Releasing Party; (e) each Agent; (f) each DIP Lender; (g) in the event of a Sale Transaction, the Purchaser; (h) the Committee and each member of the Committee; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); (j) each Related Party of each Entity in clause (a) through this clause (j); *provided* that in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases described in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.

151.    "*Releasing Party*" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Post-Effective Date Debtors; (c) each DIP Lender; (d) each Agent; (e) each Consenting Stakeholder; (f) in the event of a Sale Transaction, the Purchaser; (g) the Committee and each member of the Committee; (h) all Holders of Claims that vote to accept the Plan; (i) all Holders of Claims who are deemed to accept the Plan but who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided for in the Plan; (j) all Holders of Claims who abstain from voting on the Plan, other than those who were not sent a Ballot or an Opt Out Form (each as defined in the Disclosure Statement Order), and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided for in the Plan; (k) all Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot or

notice of non-voting status indicating that they opt not to grant the releases provided for in the Plan; (l) each current and former Affiliate of each Entity in clause (a) through (k); and (m) each Related Party of each Entity in clause (a) through (l) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law; *provided* that, for the avoidance of doubt, an Entity in clause (i) through clause (k) shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.

152.   "*Reorganized Cyxtera*" means Cyxtera Technologies, Inc., or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the Effective Date.

153.   "*Required Consenting Term Lenders*" means, as of the relevant date, Consenting Lenders holding at least 66.67% of the aggregate outstanding principal amount of the Term Loan Claims that are held by Consenting Lenders.

154.   "*Residual Cash*" means, in the event of a Sale Transaction, the sum of (a) any amounts remaining in the Professional Fee Escrow Account after payment in full of all Allowed Professional Fee Claims, (b) any amounts remaining in the Priority Claims Reserve after payment in full of all Allowed Priority Claims and Allowed Administrative Claims (other than Professional Fee Claims), (c) any amounts remaining in the Disputed Claim Reserve after the final resolution of Disputed Claims, and (d) any amounts remaining in the Wind-Down Reserve after entry of a final decree closing the last of the Chapter 11 Cases.

155.   "*Restructuring Expenses*" means the reasonable and documented fees and expenses accrued from the inception of their respective engagements related to the implementation of the Restructuring Transactions and not previously paid by, or on behalf of, the Debtors of: (i) the AHG Advisors; (ii) the DIP Agent Advisors; and (iii) the Prepetition First Lien Administrative Agent Advisors.

156.   "*Restructuring Term Sheet*" means the term sheet attached to the RSA as Exhibit B.

157.   "*Restructuring Transactions*" means the transactions described in Article IV.B of the Plan.

158.   "*Restructuring Transactions Memorandum*" means the description of the steps to be carried out to effectuate the Restructuring Transactions in accordance with the Plan and as set forth in the Plan Supplement, which shall be in form and substance acceptable to the Required Consenting Term Lenders, and, in the event of a Sale Transaction, the Purchaser.

159.   "*Revolving Credit Facility*" means that certain first lien, multi-currency revolving credit facility (including the letters of credit issued thereunder) issued pursuant to the First Lien Credit Agreement.

160.   "*RSA*" means that certain restructuring support agreement, dated as of May 4, 2023, by and among the Debtors and the Consenting Stakeholders, including all exhibits thereto (including the Restructuring Term Sheet), as may be amended, modified, or supplemented from time to time, in accordance with its terms.

161.   "*Sale Transaction*" means, as applicable, either an Equity Investment Transaction or an Asset Sale.

162.   "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means a schedule to be included in the Plan Supplement, as determined by the Debtors, which shall be subject to the consent rights set forth in the RSA and, in the event of an Asset Sale, acceptable to the Purchaser and the Required Consenting Term Lenders and in all respects consistent with the terms of the Purchase Agreement, of certain Executory Contracts and Unexpired Leases (and their Cure amounts) to be assumed by the Debtors or assumed by the Debtors and assigned to the Purchaser, as applicable, pursuant to the Plan and the Purchase Agreement, as the same may be amended, modified, or supplemented from time to time by the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable, in accordance with the Plan and, in the event of an Asset Sale, the Purchase Agreement, and with the consent of the Purchaser and the Required Consenting Term Lenders.

163.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means a schedule to be included in the Plan Supplement, as determined by the Debtors, which shall be subject to the consent rights set forth in the RSA and, in the event of an Asset Sale, acceptable to the Purchaser and the Required Consenting Term Lenders and in all respects consistent with the terms of the Purchase Agreement, of certain Executory Contracts and Unexpired Leases that will be rejected by the Debtors pursuant to the Plan and the Purchase Agreement (if applicable), as the same may be amended, modified, or supplemented from time to time by the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable, in accordance with the Plan and with the consent of the Purchaser and the Required Consenting Term Lenders.

164.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time, which shall be subject to the consent rights set forth in the RSA and, in the event of a Sale Transaction, subject to the consent of the Purchaser.

165.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto.

166.    "*Section 510 Claim*" means any Claim or Interest against a Debtor subject to subordination under section 510(b) of the Bankruptcy Code, whether by operation of law or contract.

167.    "*Secured Claim*" means a Claim:  (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

168.    "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

169.    "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

170.    "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

171.    "*Solicitation Materials*" means, collectively, the solicitation materials with respect to the Plan.

172.    "*Term Loan Claims*" means any claim on account of the Term Loan Facilities, including any claim against any non-Debtor Affiliate of a Debtor under such Term Loan Facilities.

173.    "*Term Loan Facilities*" means those certain first lien term loan facilities issued pursuant to the First Lien Credit Agreement.

174.    "*Third-Party Release*" means the release set forth in Article VIII.D of the Plan.

175.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of New Jersey.

176.    "*Undrawn LC Facility Claims*" means any RCF Claims on account of the letters of credit provided under the First Lien Credit Agreement that are outstanding and undrawn as of the Distribution Record Date.

177.    "*Undrawn LC Facility Claims Reserve*" has the meaning set forth in Article IV.D.4 of the Plan.

178.    "*Unexpired Lease*" means a lease to which one or more of the Debtors are a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

179.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

180.    "*Wind Down*" means, in the event of an Asset Sale, the wind down and dissolution of the Debtors' Estates as set forth in Article IV.D.5.

181.    "*Wind-Down Amount*" means, in the event of an Asset Sale, Cash in an amount to be determined by the Debtors with the consent of the Required Consenting Term Lenders, not to be unreasonably withheld, to fund the Wind Down, including any statutory fees payable pursuant to the Bankruptcy Code, in accordance with Article IV.D.5 of the Plan.

182.    "*Wind-Down Reserve*" means, in the event of an Asset Sale, the account to be established and maintained by the Plan Administrator and funded with the Wind-Down Amount to fund the Wind Down in accordance with Article IV.D.5 of the Plan and for Plan Administrator purposes in accordance with Article IV.D.4.

B.    *Rules of Interpretation.*

For purposes of the Plan:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; *provided* that nothing in this clause (ii) shall affect any party's consent rights (including those of the Purchaser in the event of a Sale Transaction) over any of the Definitive Documents or any amendments thereto (both as that term is defined herein and as it is defined in the RSA); (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Confirmation Order, as applicable; (iv) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (v) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (vi) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (vii) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (viii) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document created or entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (ix) unless otherwise specified, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation and shall be deemed to be followed by the words "without limitation"; (x) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (xi) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (xii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (xiii) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xiv) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xv) any immaterial effectuating provisions herein may be interpreted by the Post-Effective Date Debtors in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (xvi) unless otherwise specified and subject to the reasonable consent of the Required Consenting Term Lenders, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

C.    *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to

the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan; any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Post-Effective Date Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Post-Effective Date Debtors, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors and the Post-Effective Date Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors and the Post-Effective Date Debtors shall mean the Debtors and the Post-Effective Date Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

H.      *Nonconsolidated Plan.*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

I.      *Consultation, Notice, Information, and Consent Rights.*

Notwithstanding anything herein to the contrary, all consultation, information, notice, and consent rights of the parties to the RSA, as applicable, and as respectively set forth therein, with respect to the form and substance of the Plan, all exhibits to the Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein until such time as the RSA is terminated in accordance with its terms.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the RSA, as applicable, shall not impair such rights and obligations.

In the event of an Asset Sale, notwithstanding anything to the contrary herein, all consultation, information, notice, and consent rights of the parties to the Purchase Agreement, as applicable, and as respectively set forth therein, shall be fully enforceable in accordance with the terms of the Purchase Agreement.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS, AND RESTRUCTURING EXPENSES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Fee Claims, Priority Tax Claims, and Receivables Program Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.    *Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Post-Effective Date Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of DIP Claims, Professional Fee Claims, Receivables Program Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Post-Effective Date Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

Except as otherwise provided in this Article II.A of the Plan, requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the Debtors by the applicable Administrative Claims Bar Date.  **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their Estates, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Debtors or the Post-Effective Date Debtors, as applicable, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**  Objections to such requests, if any, must be Filed with the Bankruptcy Court and served on the Debtors and the requesting party by the Claims Objection Deadline. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B.    *DIP Claims.*

On the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to alternative treatment, and in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim:  (i) in the event of a Recapitalization Transaction, either (a) the DIP Loan giving rise to such Allowed DIP Claim shall be refinanced by means of a cashless settlement whereby such DIP Loan shall be converted on a dollar-for-dollar basis into New Takeback Facility Loans in accordance with the DIP Documents and the New Takeback Facility Documents, and all collateral that secures the Obligations (as defined in the DIP Credit Agreement) under the DIP Credit Agreement shall be reaffirmed, ratified, and shall automatically secure all obligations under the New Takeback Facility Documents, subject to the priorities of liens and payment set forth in the New Takeback Facility Documents, or (b) such DIP Claim shall be paid in full in Cash; or (ii) in the event of a Sale Transaction, Holders of the DIP Claims shall receive payment in full in Cash or, with the consent of Required Consenting Term Lenders and the Purchaser, such other treatment rendering Allowed DIP Clams Unimpaired in accordance with section 1124 of the Bankruptcy Code.

C.      *Professional Fee Claims.*

1.    <u>Final Fee Applications and Payment of Professional Fee Claims</u>.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Post-Effective Date Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from funds held in the Professional Fee Escrow Account.  The Post-Effective Date Debtors shall establish the Professional Fee Escrow Account in trust for the Professionals and fund such account with Cash equal to the Professional Fee Amount on the Effective Date.

2.    <u>Professional Fee Escrow Account</u>.

On the Effective Date, the Post-Effective Date Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors, the Post-Effective Date Debtors, or the Plan Administrator, as applicable.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Post-Effective Date Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Post-Effective Date Debtors, without any further action or order of the Bankruptcy Court; *provided*, *however*, in the event of a Sale Transaction, any remaining amount in the professional Fee Escrow Account shall constitute Residual Cash and be distributable to Holders of Allowed First Lien Claims.

3.    <u>Professional Fee Amount</u>.

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date and shall deliver such estimates to the Debtors no later than three (3) Business Days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors or the Post-Effective Date Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional.

4.    <u>Post-Confirmation Fees and Expenses</u>.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327–331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors, the Post-Effective Date Debtors, and/or the Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash equal to the full amount of its Claim or such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.      *Payment of Restructuring Expenses.*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date or as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms set forth herein and in the RSA, without any requirement to File a fee application with the Bankruptcy Court, without the need for itemized time detail, and without any requirement for Bankruptcy Court review or approval. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date, and such estimates shall be delivered to the Debtors at least three (3) Business Days before the anticipated Effective Date; *provided*, *however*, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses. On the Effective Date, invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors. In addition, the Debtors and the Post-Effective Date Debtors (as applicable) shall continue to pay, when due and payable in the ordinary course, Restructuring Expenses arising directly out of the implementation of the Plan and Consummation thereof without any requirement for review or approval by the Bankruptcy Court or for any party to File a fee application with the Bankruptcy Court.

F.      *Receivables Program Claims.*

All Receivables Program Claims shall be Allowed Claims. On the Effective Date, unless otherwise agreed to by the Holder of a Receivables Program Claim, the Allowed Receivables Program Claims will be satisfied in full in Cash by the applicable Debtor or Post-Effective Date Debtor in accordance with the terms of the Receivables Program Documents. On the Effective Date, or as soon as reasonably practicable thereafter, all fees and expenses incurred by the advisors to the parties to the Receivables Program shall be paid in full in Cash to the extent required under the Final Receivables Program Order.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

The Plan constitutes a separate Plan proposed by each Debtor. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | First Lien Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Section 510 Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 8 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Post-Effective Date Debtors, and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.    Class 1 - Other Secured Claims

    (a)    *Classification*:  Class 1 consists of any Other Secured Claims against any Debtor.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim and, at the option of the Debtors and the Required Consenting Term Lenders and, in the event of an Asset Sale, consistent with the Purchase Agreement, either:

        (i)    payment in full in Cash of its Allowed Other Secured Claim;

        (ii)    Reinstatement of its Allowed Other Secured Claim pursuant to section 1124 of the Bankruptcy Code; or

        (iii)    such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (c)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 1 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    Class 2 - Other Priority Claims

    (a)    *Classification*:  Class 2 consists of any Other Priority Claims against any Debtor.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment of its Allowed Claim, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Other Priority Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, which, in the event of an Asset Sale, shall be consistent with the Purchase Agreement.

    (c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 2 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.  Class 3 – First Lien Claims

    (a)    *Classification*:  Class 3 consists of any First Lien Claims against any Debtor.

    (b)    *Allowance*:  The First Lien Claims shall be Allowed in the aggregate principal amount of approximately $961,496,926, plus (i) any and all unpaid interest, fees, premiums, drawn amounts under letters of credit, and all other obligations, amounts, and expenses due and owing under the First Lien Credit Agreement or related documents (including post-petition interest at the default contract rate) as of the Effective Date and (ii) amounts on account of letters of credit issued under the First Lien Credit Agreement that are drawn after the Distribution Record Date.

    (c)    *Treatment*:  On the Effective Date, each Holder of a First Lien Claim (or its designated Affiliate, managed fund or account, or other designee) shall receive, in full and final satisfaction of such Claim:

        (i)    in the event of a Recapitalization Transaction, its *pro rata* share of 100 percent of the New Common Stock, subject to dilution by the Management Incentive Plan; or

        (ii)    in the event of a Sale Transaction, its *pro rata* share of the Distributable Consideration (including, for the avoidance of doubt, the Residual Cash).

    (d)    *Voting*:  Class 3 is Impaired under the Plan, and Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.  Class 4 - General Unsecured Claims

    (a)    *Classification*:  Class 4 consists of General Unsecured Claims.

    (b)    *Treatment*:  Except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment or such General Unsecured Claim has been paid prior to the Effective Date, each Holder of a General Unsecured Claim shall receive, in full and final satisfaction of such Claim, its *pro rata* share of the GUC Trust Net Assets.

    (c)    *Voting*:  Class 4 is Impaired under the Plan, and Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.  Class 5 - Section 510(b) Claims

    (a)    *Classification*:  Class 5 consists of all Section 510(b) Claims.

    (b)    *Treatment*:  On the Effective Date, all Section 510 Claims will be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of Section 510 Claims will not receive any distribution on account of such Section 510 Claims.

    (c)    *Voting*:  Class 5 is Impaired under the Plan.  Holders of Allowed Claims in Class 5 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

6. <u>Class 6 - Intercompany Claims</u>

    (a)    *Classification*:  Class 6 consists of all Intercompany Claims.

    (b)    *Treatment*:  Each Allowed Intercompany Claim shall be, at the option of the applicable Debtor or Post-Effective Date Debtor, with the consent of the Required Consenting Term Lenders (not to be unreasonably withheld), and, in the event of a Sale Transaction, in consultation with the Purchaser and consistent with the Purchase Agreement, either:

        (i)    Reinstated; or

        (ii)    canceled or released without any distribution on account of such Claim.

    (c)    *Voting*:  Class 6 is Unimpaired if the Class 6 Claims are Reinstated or Impaired if the Class 6 Claims are cancelled.  Holders of Class 6 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Class 6 Claims are not entitled to vote to accept or reject the Plan.

7. <u>Class 7 - Intercompany Interests</u>

    (a)    *Classification*:  Class 7 consists of all Intercompany Interests.

    (b)    *Treatment*:  On the Effective Date, Intercompany Interests shall be, at the election of the applicable Debtor or Post-Effective Date Debtor, with the consent of the Required Consenting Term Lenders (not to be unreasonably withheld), and, in the event of a Sale Transaction, in consultation with the Purchaser and consistent with the Purchase Agreement, either:

        (i)    Reinstated; or

        (ii)    canceled or released without any distribution on account of such Interests.

    (c)    *Voting*:  Class 7 is Unimpaired if the Class 7 Interests are Reinstated or Impaired if the Class 8 Interests are cancelled.  Holders of Class 7 Interests are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8. <u>Class 8 - Existing Equity Interests</u>

    (a)    *Classification*:  Class 8 consists of all Existing Equity Interests.

    (b)    *Treatment*:   On the Effective Date, all Existing Equity Interests shall be cancelled, released, extinguished, and discharged and will be of no further force or effect.  Holders of Interests shall receive no recovery or distribution on account of their Existing Equity Interests.

    (c)    *Voting*:  Class 8 is Impaired under the Plan.  Holders of Allowed Interests in Class 8 are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Post-Effective Date Debtors, as applicable, regarding any Unimpaired Claims, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

D.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.    *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.    *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the Holders with New Common Stock, and in exchange for the agreement of the Debtors and/or the Post-Effective Date Debtors, as applicable, under the Plan to make certain distributions to the Holders of Allowed Claims.

G.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  Subject to the consent rights set forth in the RSA and the Purchase Agreement, the Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.    *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, and subject to the RSA, the Post-Effective Date Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims and Interests.*

To the greatest extent permissible under the Bankruptcy Code, and in consideration of the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  To the greatest extent permissible under the Bankruptcy Code, the Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.    *Restructuring Transactions.*

Before, on, and after the Effective Date, the Debtors or the Post-Effective Date Debtors, as applicable, shall consummate the Restructuring Transactions and may take all actions (which, for the avoidance of doubt, shall in each case be in form, substance, and structure reasonably acceptable to the Required Consenting Term Lenders and, solely with respect to items (i), (ii), (viii), and (ix), subject to the consent rights set forth in the Purchase Agreement in the event of a Sale Transaction) as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan, including, as applicable:  (i) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, the Plan Supplement, the RSA, and the other Definitive Documents; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Plan Supplement, the RSA, and the other Definitive Documents; (iii) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) the execution and delivery of the New Takeback Facility Documents and entry into the New Takeback Facility; (v) the issuance and distribution of the New Common Stock as set forth in the Plan; (vi) the implementation of the Management Incentive Plan; (vii) the execution and delivery of the New Organizational Documents and any certificates or articles of incorporation, bylaws, or such other applicable formation documents (if any) of each Post-Effective Date Debtor (including all actions to be taken, undertakings to be made, obligations to be incurred, and fees and expenses to be paid by the Debtors and/or the Post-Effective Date Debtors, as applicable); (viii) the execution of a Purchase Agreement and consummation of a Sale Transaction in accordance therewith; (ix) such other transactions that, in the reasonable business judgment of the Debtors or the Post-Effective Date Debtors, as applicable, the Required Consenting Term Lenders (in the event of a Recapitalization Transaction), and the Purchaser (in the event of a Sale Transaction), are required to effectuate the Restructuring Transactions; and (x) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

The Confirmation Order shall and shall be deemed to, pursuant to sections 105, 363, 1123, and 1141 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Asset Sale in the event of an Asset Sale.

The Debtors shall pursue the Recapitalization Transaction unless the Debtors determine, with the consent of the Required Consenting Term Lenders, to pursue an Equity Investment Transaction or an Asset Sale.

C.      *The Equity Investment Transaction or Recapitalization Transaction.*

If the Equity Investment Transaction or Recapitalization Transaction occurs, the following provisions shall govern.

1.      The Post-Effective Date Debtors.

On the Effective Date, the New Board shall be established, and each Post-Effective Date Debtor shall adopt its New Organizational Documents.  The Post-Effective Date Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.

2.      Sources of Consideration for Plan Distributions.

The Debtors shall fund or make distributions under the Plan, as applicable, with:  (i) the issuance of New Takeback Facility Loans under the New Takeback Facility, (ii) the proceeds from the Equity Investment Transaction; (iii) the New Common Stock, (iv) the GUC Trust Net Assets, and (v) the Debtors' Cash on hand.  Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.  The issuance, distribution, or authorization, as applicable, of certain Securities in connection with the Plan, including the New Common Stock, will be exempt from Securities Act registration, as described more fully in Article IV.C.5 below.

(a)      The New Takeback Facility.

In the event of a Recapitalization Transaction, on the Effective Date, the Post-Effective Date Debtors shall enter into the New Takeback Facility Credit Agreement.  Confirmation of the Plan shall be deemed approval of the New Takeback Facility and the New Takeback Facility Documents, as applicable, and all transactions contemplated thereby; all actions to be taken, undertakings to be made, and obligations to be incurred by the Post-Effective Date Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein; and authorization for the Post-Effective Date Debtors to enter into and execute the New Takeback Facility Documents and such other documents as may be required to effectuate the treatment afforded by the New Takeback Facility.  Execution of the New Takeback Facility Credit Agreement by the New Takeback Facility Agent shall be deemed to bind all Holders of DIP Claims as if each such Holder had executed the New Takeback Facility Credit Agreement with appropriate authorization.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Takeback Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Takeback Facility Documents, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Takeback Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Post-Effective Date Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

(b)    New Common Stock.

Reorganized Cyxtera shall be authorized to issue a certain number of shares of New Common Stock pursuant to its New Organizational Documents and any options or other equity awards, if any, reserved for the Management Incentive Plan. The issuance of the New Common Stock shall be authorized without the need for any further corporate action. On the Effective Date, the New Common Stock shall be issued and distributed pursuant to, and in accordance with, the Plan, and, in the event of an Equity Investment Transaction, the Purchase Agreement.

All of the shares of New Common Stock issued pursuant to the Plan and, if applicable, the Purchase Agreement shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the New Organizational Documents, which terms and conditions shall bind each Entity receiving such distribution or issuance. Any Entity's acceptance of New Common Stock shall be deemed to constitute its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms, without the need for execution by any party thereto other than the applicable Post-Effective Date Debtor(s). The New Common Stock will not be registered under the Securities Act or on any national securities exchange as of the Effective Date.

3.    Corporate Existence.

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which such Debtor is incorporated or formed and pursuant to the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law). On or after the Effective Date, the respective certificate of incorporation and bylaws (or other formation documents) of one or more of the Post-Effective Date Debtors may be amended or modified on the terms therein without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. On or after the Effective Date, one or more of the Post-Effective Date Debtors may be disposed of, dissolved, wound down, or liquidated without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

4.    Plan Implementation.

In the event of an Equity Investment Transaction, on the Effective Date, the Purchaser shall purchase substantially all of the New Common Stock free and clear of all Liens, Claims, Interests, charges, or other encumbrances in exchange for the Purchase Price set forth in the Purchase Agreement. The Confirmation Order shall authorize the Debtors, the Purchaser, and the Post-Effective Date Debtors, as applicable, to undertake the transactions contemplated by the Purchase Agreement, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code.

The Debtors and Purchaser shall be authorized to take all actions as may be deemed necessary or appropriate to consummate the Equity Investment Transaction pursuant to the terms of the Purchase Agreement and the Plan. On and after the Effective Date, except as otherwise provided in the Plan, the Post-Effective Date Debtors may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided*, that the Bankruptcy Court shall retain jurisdiction to resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with any of the foregoing.

5. <u>New Organizational Documents</u>.

On or immediately prior to the Effective Date, the New Organizational Documents shall be adopted or amended as may be necessary to effectuate the transactions contemplated by the Plan. To the extent required under the Plan or applicable non-bankruptcy law, each of the Post-Effective Date Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation to the extent such filing is required for each such document. The New Organizational Documents will prohibit the issuance of non-voting Equity Securities to the extent required under section 1123(a)(6) of the Bankruptcy Code. For the avoidance of doubt, the New Organizational Documents shall be included as exhibits to the Plan Supplement. After the Effective Date, each Post-Effective Date Debtor may amend and restate its constituent and governing documents as permitted by the laws of its jurisdiction of formation and the terms of such documents, and the Post-Effective Date Debtors may file such amended certificates or articles of incorporation, bylaws, or other applicable formation and constituent documents as permitted by the laws of the applicable states, provinces, or countries of incorporation and the New Organizational Documents. For the avoidance of doubt, any claimant's acceptance of the New Common Stock shall be deemed to constitute its agreement to be bound by the New Organizational Documents without the need for execution by any party other than the Post-Effective Date Debtors.

6. <u>Certain Securities Law Matters</u>.

Pursuant to section 1145 of the Bankruptcy Code, or, to the extent that section 1145 of the Bankruptcy Code is either not permitted or not applicable, section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration, the offering, issuance, and distribution of the New Common Stock as contemplated herein shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. federal, state, or local laws requiring registration prior to the offering, issuance, distribution, or sale of securities.

The shares of New Common Stock to be issued under the Plan on account of Allowed Claims in accordance with, and pursuant to, section 1145 of the Bankruptcy Code will be freely transferable under the Securities Act by the recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; and (b) any restrictions on the transferability of such New Common Stock in the New Organizational Documents.

The shares of New Common Stock that may be issued pursuant to the exemption from registration set forth in section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other available exemptions from registration will be considered "restricted securities," will bear customary legends and transfer restrictions, and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act.

7. <u>Management Incentive Plan</u>.

On or as soon as reasonably practicable following the Effective Date, the Post-Effective Date Debtors shall adopt and implement the Management Incentive Plan, which will provide that up to 10% of the value of the New Common Stock as of the Effective Date, on a fully diluted basis, shall be issued in connection with the Management Incentive Plan on terms acceptable to the Required Consenting Term Lenders and the Debtors and, in the event of an Equity Investment Transaction, the Purchaser. The issuance of any awards under the Management Incentive Plan shall be at the discretion of the New Board.

8. <u>Employment Obligations</u>.

Unless otherwise provided herein, and subject to Article V of the Plan, if applicable, all employee wages, compensation, retiree benefits (as defined in 11 U.S.C. § 1114(a) of the Bankruptcy Code), and benefit programs in

place as of the Effective Date with the Debtors shall be assumed by the Post-Effective Date Debtors and shall remain in place as of the Effective Date, and the Post-Effective Date Debtors will continue to honor such agreements, arrangements, programs, and plans as of the Effective Date. For the avoidance of doubt, pursuant to section 1129(a)(13) of the Bankruptcy Code, as of the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law. On the Effective Date, the Post-Effective Date Debtors shall (a) assume all employment agreements, indemnification agreements, or other agreements entered into with current employees; or (b) enter into new agreements with such employees on terms and conditions acceptable to the Post-Effective Date Debtors, such employee, and the Required Consenting Term Lenders and, in the event of an Equity Investment Transaction, the Purchaser.

D.     *The Asset Sale.*

        If the Asset Sale occurs, the following provisions shall govern.

        1.    <u>The Asset Sale.</u>

        On the Effective Date, the Debtors shall consummate the Sale Transaction contemplated by the Purchase Agreement. Following the discharge of the Debtors pursuant to Section 1141 of the Bankruptcy Code and as set forth in this Plan and the Confirmation Order, the Acquired Assets shall, to the extent set forth in the Purchase Agreement, be transferred to and vest in the Purchaser free and clear of all Liens, Claims, Interests, charges, or other encumbrances (except for those Liens, Claims, Interests, charges, or other encumbrances expressly assumed by the Purchaser pursuant to the terms of the Purchase Agreement) in exchange for the Purchase Price as set forth in the Purchase Agreement. The Confirmation Order shall authorize the Debtors, the Post-Effective Date Debtors, and the Purchaser, as applicable, to undertake the transactions contemplated by the Purchase Agreement, including pursuant to sections 105, 363, 365, 1123(a)(5)(B), 1123(a)(5)(D), 1123(b)(4), 1141(b), and 1141(c) of the Bankruptcy Code. From and after the Effective Date, except as expressly set forth in the Purchase Agreement, neither the Purchaser nor any of its affiliates shall be liable for any Claims, Administrative Claims, or other liabilities of the Debtors or the Post-Effective Date Debtors, which shall be payable solely in accordance with this Plan and from the proceeds of the Asset Sale and the other assets of the Debtors or Post-Effective Date Debtors, as applicable, that do not constitute Assumed Liabilities (as defined in the Purchase Agreement) or that were not otherwise transferred or assigned to the Purchaser or any of its affiliates pursuant to the Purchase Agreement.

        Subject to the consent rights set forth in the RSA, the Debtors and Purchaser shall be authorized to take all actions as may be deemed necessary or appropriate to consummate the Asset Sale pursuant to the terms of the Purchase Agreement and the Plan, as well as to execute, deliver, file, record, and issue any note, documents, or agreements in connection therewith, without further notice to or order of the Bankruptcy Court; act or action under applicable law, regulation, order, rule; or the vote, consent, authorization, or approval of any Entity. Upon entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Sale Transaction and the Plan, and any documents in connection therewith, shall be deemed authorized and approved without any requirement of further act or action by the Debtors. On and after the Effective Date, except as otherwise provided in the Plan, the Post-Effective Date Debtors or the Purchaser, as applicable, may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided*, that the Bankruptcy Court shall retain jurisdiction to resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with any of the foregoing.

        2.    <u>Sources of Consideration for Plan Distributions.</u>

        The Debtors shall fund distributions under the Plan with: (i) the proceeds from the Asset Sale, (ii) the GUC Trust Net Assets, (iii) the Debtors' Cash on hand, and (iv) the proceeds of any Causes of Action retained by the Post-Effective Date Debtors. Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

3.    <u>Post-Effective Date Debtors.</u>

On and after the Effective Date, the Post-Effective Date Debtors shall continue in existence for purposes of (i) winding down the Debtors' business and affairs as expeditiously as reasonably possible as authorized by the Bankruptcy Court; (ii) resolving Disputed Claims; (iii) making distributions on account of Allowed Claims as provided hereunder; (iv) establishing and funding the Distribution Reserve Accounts; (v) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith; (vi) filing appropriate tax returns; (vii) complying with any continuing obligations under the Purchase Agreement; and (viii) administering the Plan in an efficacious manner. The Post-Effective Date Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

Notwithstanding anything to the contrary in the Plan, on the Effective Date, any Cause of Action not settled, released, discharged, enjoined, or exculpated under the Plan or transferred pursuant to the Purchase Agreement on or prior to the Effective Date shall vest in the Post-Effective Date Debtors and shall be subject to administration by the Plan Administrator, and the net proceeds thereof shall be Distributable Consideration.

4.    <u>Plan Administrator.</u>

On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Post-Effective Date Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Post-Effective Date Debtors and shall succeed to the powers of the Post-Effective Date Debtors' managers, directors, and officers. The Plan Administrator shall act for the Post-Effective Date Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan in accordance with the Wind Down and as otherwise provided in the Confirmation Order.

From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtors. The foregoing shall not limit the authority of the Post-Effective Date Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer. The Debtors, after the Confirmation Date, and the Post-Effective Date Debtors or Plan Administrator, after the Effective Date, shall be permitted to make payments to employees pursuant to employment programs then in effect, and, in the reasonable business judgment of the Plan Administrator and upon three (3) Business Days' notice to counsel to the AHG, to implement additional employee programs and make payments thereunder solely as necessary to effectuate the Wind Down, without any further notice to or action, order, or approval of the Bankruptcy Court.

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the business and affairs of the Debtors and Post-Effective Date Debtors, including:  (i) making distributions under the Plan; *provided* that, prior to making final distributions as contemplated herein and until all letters of credit issued under the First Lien Credit Agreement are replaced and cancelled, are drawn, or expire pursuant to their terms, the Plan Administrator or the Disbursing Agent, at the election of the Debtors or the Post-Effective Date Debtors, as applicable, shall reserve an amount of Distributable Consideration or New Common Stock, as applicable, on account of the Undrawn LC Facility Claims equal to the incremental distributions to which such Holders of First Lien Claims would be entitled if all undrawn letters of credit issued under the First Lien Credit Agreement were drawn and funded as contemplated therein (the "<u>Undrawn LC Facility Claims Reserve</u>"); (ii) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Post-Effective Date Debtors in accordance with the Wind-Down Reserve; (iii) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan; (iv) making distributions from the Distribution Reserve Accounts as contemplated under the Plan; (v) establishing

and maintaining bank accounts in the name of the Post-Effective Date Debtors; (vi) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (vii) paying all reasonable fees, expenses, debts, charges, and liabilities of the Post-Effective Date Debtors; (viii) except as otherwise provided for herein, enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Schedule of Retained Causes of Action in accordance with Article IV.E; (ix) administering and paying taxes of the Post-Effective Date Debtors, including filing tax returns; (x) representing the interests of the Post-Effective Date Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; (xi) in the event of a Sale Transaction, discharging the Sellers' and the Post-Effective Date Debtors' Post-Effective Date obligations under the Purchaser Agreement; and (xii) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, the Confirmation Order, or any applicable orders of the Bankruptcy Court or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of the Plan in accordance with the Wind-Down Reserve.

To the extent that undrawn letters of credit issued under the First Lien Credit Agreement are drawn after the Distribution Record Date, such Undrawn LC Facility Claims, if any, shall be satisfied from the Undrawn LC Facility Claims Reserve. The Plan Administrator shall hold in the Undrawn LC Facility Claims Reserve all dividends, payments, and other distributions made on account of, as well as any obligations arising from, the property held in the Undrawn LC Facility Claims Reserve, to the extent that such property continues to be so held at the time such distributions are made or such obligations arise. For the avoidance of doubt, the foregoing shall not affect distributions to holders of First Lien Claims on account of drawn letters of credit as of the Distribution Record Date.

      (a)     Retention of Professionals.

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, at the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties for the Post-Effective Date Debtors. The reasonable fees and expenses of such professionals, if applicable, shall be paid from the Wind-Down Reserve upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Post-Effective Date Debtors' retained professionals shall be made in the ordinary course of business from the Wind-Down Reserve and shall not be subject to the approval of the Bankruptcy Court.

      (b)     Compensation of the Plan Administrator.

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement, reasonably acceptable to the Required Consenting Term Lenders, and paid out of the Wind-Down Reserve. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Wind-Down Reserve if such amounts relate to any actions taken hereunder.

      (c)     Plan Administrator Expenses.

All costs, expenses, and obligations incurred by the Plan Administrator or the Post-Effective Date Debtors in administering the Plan or in effecting distributions thereunder (including the reimbursement of reasonable expenses), including any costs, expenses, or obligations in any manner connected, incidental, or related thereto, shall be paid from the Wind-Down Reserve.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court. However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Reserve.

(d)     Exculpation, Indemnification, Insurance, and Liability Limitation.

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Post-Effective Date Debtors.  The Plan Administrator may obtain, at the expense of the Post-Effective Date Debtors and with funds from the Wind-Down Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Post-Effective Date Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

(e)     Tax Returns.

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and, pursuant to section 505 of the Bankruptcy Code and subject to applicable law, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate.

(f)     Dissolution of the Post-Effective Date Debtors.

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made, completion of all of its duties under the Plan and the Purchase Agreement, and entry of a final decree closing the last of the Chapter 11 Cases, the Post-Effective Date Debtors shall be deemed to be dissolved without any further action by the Post-Effective Date Debtors, including the filing of any documents with the secretary of state for the state in which each Post-Effective Date Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Post-Effective Date Debtors in and withdraw the Post-Effective Date Debtors from applicable state(s).

To the extent the Debtors have any Cash or other property remaining after the Chapter 11 Cases have been closed, such Cash or other property shall constitute Residual Cash and shall be immediately allocated and distributable to the Holders of Allowed First Lien Claims.

5.    Wind Down.

As soon as practicable after the Effective Date, the Plan Administrator shall:  (i) cause the Debtors and the Post-Effective Date Debtors, as applicable, to comply with and abide by the terms of the Purchase Agreement and any other documents contemplated thereby; (ii) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of one or more of the Debtors or the Post-Effective Date Debtors under the applicable laws of their state of incorporation or formation (as applicable); and (iii) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.  Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without the need for any action or approval by the shareholders or board of directors or managers of any Debtor.  From and after the Effective Date, except with respect to Post-Effective Date Debtors as set forth herein, the Debtors (x) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (y) shall be deemed to have canceled pursuant to the Plan all Existing Equity Interests, and (z) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.  For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

E.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII hereof and, in the event of a Sale Transaction, the Purchase Agreement and any related documents and schedules, the Post-Effective Date Debtors, shall retain and may enforce (or the Plan Administrator may enforce, if applicable) all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the rights of the Post-Effective Date Debtors to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action (i) acquired by the Purchaser in accordance with the Purchase Agreement, as applicable, or (ii) released or exculpated herein (including, without limitation, by the Debtors) pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors and the Post-Effective Date Debtors, as applicable, as of the Effective Date.

The Post-Effective Date Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Post-Effective Date Debtors.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Post-Effective Date Debtors, as applicable, will not pursue any and all available Causes of Action against it.  The Debtors and the Post-Effective Date Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as may be assigned or transferred to the Purchaser in accordance with the Purchase Agreement or as otherwise expressly provided in the Plan, including Article VIII of the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Post-Effective Date Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Post-Effective Date Debtors and/or the Plan Administrator, as applicable, reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  For the avoidance of doubt, the GUC Trust shall be solely responsible for effectuating all distributions on account of General Unsecured Claims, and the Plan Administrator, if applicable, shall have no responsibility therefor.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the corresponding Post-Effective Date Debtor except as otherwise expressly provided in the Plan, including Article VIII of the Plan.  The Post-Effective Date Debtors and/or the Plan Administrator, as applicable, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Post-Effective Date Debtors and/or the Plan Administrator, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.E include any Claim or Cause of Action against a Released Party or Exculpated Party.

F.      *Cancellation of Existing Agreements and Interests.*

On the Effective Date, except with respect to the New Takeback Facility or to the extent otherwise provided in the Plan, including in Article V.A hereof, all notes, instruments, certificates, and other documents evidencing Claims or Interests, including the First Lien Credit Documents and all other credit agreements and indentures, shall be cancelled, and the obligations of the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto, including any Liens and/or claims in connection therewith, shall be deemed satisfied in full, cancelled, discharged, released, and of no force or effect, and the Agents shall be released from all duties and obligations thereunder.  Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.  Notwithstanding the foregoing or anything to the contrary herein, any rights of each Agent to indemnification and participation by the other lenders in letters of credit

under the DIP Documents, the Receivables Program Documents, the First Lien Credit Documents, and the Bridge Facility Documents shall remain binding and enforceable in accordance with the terms of such documents; *provided* that any such rights to indemnification shall remain binding and enforceable only as against the Post-Effective Date Debtors and shall not (i) be subject to discharge, impairment, or release under the Plan or the Confirmation Order or (ii) be asserted against the Purchaser, any of its Affiliates, or their respective property or assets, including any Acquired Entity (as defined in the Purchase Agreement).

G.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Post-Effective Date Debtor, as applicable, or to or from any other Person) of property under the Plan or pursuant to: (i) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtors or the Post-Effective Date Debtors, as applicable; (ii) the Restructuring Transactions; (iii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iv) the making, assignment, or recording of any lease or sublease; (v) the grant of collateral as security for the New Takeback Facility; (vi) the Sale Transaction and any agreement, acquisition, or transaction entered into by the Purchaser or any of its affiliates in connection with the Sale Transaction or in furtherance thereof, including any acquisitions of real or personal property by the Purchaser or its affiliates from one or more of the Debtors' creditors or landlords in connection with consummation of the Sale Transaction or from other parties in connection with the closing of the Sale Transaction and/or integral to the financing thereof; or (vii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

H.      *Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including, as and if applicable:  (i) selection of the directors, officers, or managers for the Post-Effective Date Debtors; (ii) the issuance and distribution of the New Common Stock; (iii) implementation of the Restructuring Transactions; (iv) entry into the New Takeback Facility Documents; (v) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (vi) adoption of the New Organizational Documents; (vii) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (viii) adoption by the New Board of the Management Incentive Plan; (ix) consummation of the Sale Transaction pursuant to the Purchase Agreement and related documents; (x) formation of the Post-Effective Date Debtors and selection of the Plan Administrator; and (xi) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Post-Effective Date Debtors and any corporate action required by the Debtors or the Post-Effective Date Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect without any requirement of further action by the security Holders, directors, officers, or managers of the Debtors or the Post-Effective Date Debtors.  On or prior to the Effective Date, as applicable, the appropriate officers of the Debtors or the Post-Effective Date Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post-Effective Date Debtors, including, in the event of a Recapitalization

Transaction or an Equity Investment Transaction, the New Common Stock, the New Organizational Documents, the New Takeback Facility, the New Takeback Facility Documents, any other Definitive Documents, and any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

I.      *Directors and Officers of the Post-Effective Date Debtors.*

As of the Effective Date, the term of the current members of the board of directors or other Governing Body of Cyxtera shall expire.  In the event of a Recapitalization Transaction or an Equity Investment Transaction, the members for the initial term of the New Board shall be appointed; *provided*, that the disinterested directors of Cyxtera, comprising the special committee of Cyxtera's board of directors, shall retain authority following the Effective Date with respect to matters relating to Professional Fee Claim requests by Professionals acting at their authority and direction in accordance with the terms of the Plan.  The disinterested directors of Cyxtera shall not have any of their privileged and confidential documents, communications, or information transferred (or deemed transferred) to the Post-Effective Date Debtors, the Purchaser, or any other Entity without their prior written consent.

The initial members of the New Board, if applicable, will be identified in the Plan Supplement to the extent known at the time of filing.  In the event of a Recapitalization Transaction or an Equity Investment Transaction, each such member and officer of the Post-Effective Date Debtors shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Post-Effective Date Debtors.  The members of the New Board shall be chosen by the Debtors or the Post-Effective Date Debtors, subject to the applicable terms of the RSA and, if applicable, the Purchase Agreement.

J.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Post-Effective Date Debtors and their respective officers and boards of directors and managers are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Post-Effective Date Debtors without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

K.      *Vesting of Assets in the Post-Effective Date Debtors.*

Except as otherwise provided in the Plan, the Confirmation Order, the Purchase Agreement, or any agreement, instrument, or other document incorporated herein, or entered into in connection with or pursuant to, the Plan, the Plan Supplement, or the New Takeback Facility Documents, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan (other than the GUC Trust Assets) shall vest in each respective Post-Effective Date Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Confirmation Order, the Purchase Agreement, or any agreement, instrument, or other document incorporated herein, each Post-Effective Date Debtor may operate its business and use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

L.      *Private Company.*

The Post-Effective Date Debtors shall not have any class of Equity Securities listed on a national securities exchange and shall make commercially reasonable efforts to take the steps necessary to be a private company without Securities Act or Exchange Act reporting obligations upon emergence or as soon as practicable thereafter in accordance with and to the extent permitted by the Securities Act and the Exchange Act.

M.      *GUC Trust*.

1.  <u>General Terms</u>.

On the Effective Date, the Debtors and the GUC Trustee shall enter into the GUC Trust Agreement and the GUC Trust Assets shall vest or deem to be vested in the GUC Trust automatically without further action by any Person, free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.  The GUC Trust shall be administered by the GUC Trustee and governed by the GUC Trust Agreement and shall have the sole power and authority to distribute the GUC Trust Net Assets to Holders of Allowed General Unsecured Claims in accordance with the treatment set forth in the Plan for Class 4.    The GUC Trust Agreement may include reasonable and customary provisions that allow for indemnification by the GUC Trust and the GUC Trustee.

The powers, rights, and responsibilities of the GUC Trustee shall be specified in the GUC Trust Agreement and shall include the responsibility and requisite power to reconcile General Unsecured Claims, including asserting any objections thereto.  From and after the Effective Date, the GUC Trustee, on behalf of the GUC Trust, shall, in the ordinary course of business and without the need for any approval by the Bankruptcy Court, pay the GUC Trust Fees and Expenses from the GUC Trust Assets.  The Debtors, the Post-Effective Date Debtors, and their Affiliates (and anyone acting on their behalf) shall not be responsible for any costs, fees, or expenses of the GUC Trust.  The GUC Trustee and the GUC Trust shall be discharged or dissolved, as the case may be, at the later of (i) such time as all distributions required to be made by the GUC Trustee under the Plan have been made, and (ii) the fifth anniversary of the Effective Date (unless extended by order of the Bankruptcy Court).

2.  <u>Tax Treatment</u>.

In furtherance of this section of the Plan, (i) it is intended that the GUC Trust be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Internal Revenue Code to the Holders of General Unsecured Claims, consistent with the terms of the Plan, and accordingly, all assets held by the GUC Trust are intended to be deemed for United States federal income tax purposes to have been distributed by the Debtors or the Post-Effective Date Debtors, as applicable, to the Holders of Allowed General Unsecured Claims, and then contributed by the Holders of Allowed General Unsecured Claims to the GUC Trust in exchange for their interest in the GUC Trust; (ii) the primary purpose of the GUC Trust shall be the liquidation and distribution of the GUC Trust Net Assets in accordance with Treasury Regulation section 301.7701-4(d), including the resolution of General Unsecured Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iii) all parties (including, without limitation, the Debtors, the Post-Effective Date Debtors, the Estates, Holders of Allowed General Unsecured Claims receiving interests in the GUC Trust, and the GUC Trustee) shall report consistently with such treatment described in provisos (i) and (ii) of this paragraph; (iv) all parties (including, without limitation, the Debtors, the Estates, Holders of Allowed General Unsecured Claims receiving interests in the GUC Trust, and the GUC Trustee) shall report consistently with the valuation of the GUC Trust Assets transferred to the GUC Trust as determined by the GUC Trustee (or its designee); (v) the GUC Trustee shall be responsible for filing all applicable tax returns for the GUC Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a); and (vi) the GUC Trustee shall annually send to each Holder of an interest in the GUC Trust a separate statement regarding the receipts and expenditures of the trust as relevant for United States federal income tax purposes.

Subject to definitive guidance from the United States Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the GUC Trustee of a private letter ruling if the GUC Trustee so requests one, or the receipt of an adverse determination by the United States Internal Revenue Service upon audit if not contested by the GUC Trustee), the GUC Trustee may timely elect to (i) treat any portion of the GUC Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable law, report consistently with the foregoing for United States state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including, without limitation, the Debtors, the Estates, Holders of Allowed General Unsecured Claims

receiving interests in the GUC Trust, and the GUC Trustee) shall report for United States federal, state, and local income tax purposes consistently with the foregoing. Any taxes (including with respect to earned interest, if any) imposed on the GUC Trust as a result of this treatment shall be paid out of the assets of the GUC Trust (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes). The GUC Trustee may request an expedited determination of taxes of the GUC Trust, including any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the GUC Trust for all taxable periods through the dissolution of the GUC Trust.

The GUC Trust shall continue to have all of the rights and powers granted to the GUC Trust as set forth in this Plan and applicable non-bankruptcy law, and the GUC Trustee shall also have the rights, powers, and obligations set forth in the GUC Trust Agreement.

3.    Transfer of GUC Trust Interests.

Any and all interests in the GUC Trust shall be transferrable either (i) with the consent of the Post-Effective Date Debtors or, (ii) by will, intestate succession, or otherwise by operation of law. In addition, any and all interests in the GUC Trust will not constitute "securities" and will not be registered pursuant to the Securities Act or any applicable state or local securities law. However, if it should be determined that any such interests constitute "securities," the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied, and the offer, issuance, and distribution under the Plan of interests in the GUC Trust will be exempt from registration under the Securities Act and all applicable state and local securities laws and regulations.

*N.    Director and Officer Liability Insurance.*

After the Effective Date, none of the Post-Effective Date Debtors shall terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date. For the avoidance of doubt, in the event of an Asset Sale, the D&O Liability Insurance Policies will not be assumed and assigned to the Purchaser, and any obligations in connection therewith shall not be enforceable against the Purchaser.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

*A.    Assumption of Executory Contracts and Unexpired Leases.*

On the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, each Executory Contract or Unexpired Lease not previously rejected, assumed, or assumed and assigned shall (i) in the event of an Equity Investment Transaction or a Recapitalization Transaction, be deemed assumed or assumed and assigned, as applicable; or (ii) in the event of an Asset Sale, be (a) assumed or assumed and assigned to the Purchaser or a designee in accordance with the Purchase Agreement, as applicable, if it is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) assumed and assigned to the Purchaser or a designee in accordance with the Purchase Agreement if it is not listed on either the Schedule of Assumed Executory Contracts and Unexpired Leases or the Schedule of Rejected Executory Contracts and Unexpired Leases and does not relate exclusively to Excluded Assets or Excluded Liabilities; or (c) rejected if it is (x) listed on the Schedule of Rejected Executory Contracts and Unexpired Leases or (y) not listed on either the Schedule of Assumed Executory Contracts and Unexpired Leases or the Schedule of Rejected Executory Contracts and Unexpired Leases and relates exclusively to Excluded Assets or Excluded Liabilities. For the avoidance of doubt, the foregoing shall not affect any Executory Contract or Unexpired Lease that is (i) explicitly designated by the Plan or the Confirmation Order to be assumed or assumed and assigned, as applicable, in connection with the Confirmation of the Plan; (ii) subject to a pending motion to assume such Executory Contract or Unexpired Lease as of the Effective Date; (iii) a D&O Liability Insurance Policy; or (iv) a contract, instrument, release, indenture, or other agreement or document entered

into in connection with the Plan.  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all assumptions, assumptions and assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided for in the Plan, the Plan Supplement, the Purchase Agreement (in the event of a Sale Transaction), and the Confirmation Order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  In the event of a Sale Transaction, each Executory Contract and Unexpired Lease assumed and assigned to the Purchaser or a designee in accordance with the Purchase Agreement shall vest in and be fully enforceable by the Purchaser or the applicable designee in accordance with its terms, except as modified by the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption and assignment.

Except as otherwise provided herein or agreed to by the Debtors, the Purchaser (in the event of a Sale Transaction), and the applicable counterparty, each assumed (or assumed and assigned) Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Notwithstanding anything to the contrary in the Plan, the Debtors, the Post-Effective Date Debtors, and/or the Plan Administrator, as applicable, and with the consent of the Purchaser (in the event of an Asset Sale), reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases at any time through and including ten (10) days before the Effective Date; *provided* that, following the Effective Date and solely in the event of an Asset Sale, the Plan Administrator or Purchaser may supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time in accordance with the Purchase Agreement, including the notice and consent rights set forth therein; *provided further* that in the event of a Recapitalization Transaction, such alteration, amendment, modification, or supplement shall be subject to the consent rights set forth in the RSA, and in the event of a Sale Transaction, such alteration, amendment, modification, or supplement shall be subject to the consent rights set forth in the Purchase Agreement.

B.    *Indemnification Obligations.*

Consistent with applicable law, all indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, D&O Liability Insurance Policies, or otherwise) for current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall (i) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order; (ii) remain intact, in full force and effect, and irrevocable; (iii) not be limited, reduced, or terminated after the Effective Date; and (iv) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on, or after the Petition Date. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Post-Effective Date Debtors and/or the Plan Administrator, as applicable.  For the avoidance of doubt, if the Asset Sale is consummated, no such obligations shall be enforceable against the Purchaser or any of its affiliates.

C.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection, if any, of any Executory Contracts or Unexpired Leases as provided for in the Plan, the Schedule of Rejected Executory Contracts and Unexpired Leases, or the Purchase Agreement in the event of a Sale Transaction, as applicable. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Claims and Noticing Agent at the address specified in any notice of entry of the Confirmation Order and served on the Post-Effective Date Debtors no later than thirty (30) days after the effective date of such rejection. The notice of the Plan Supplement shall be deemed appropriate notice of rejection when served on applicable parties.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease with respect to which a Proof of Claims is not Filed with the Claims and Noticing Agent within thirty (30) days after the effective date of such rejection will be automatically disallowed and forever barred from assertion and shall not be enforceable against the Debtors, the Post-Effective Date Debtors, the Estates, the GUC Trust, the Purchaser, the Plan Administrator, or their property without the need for any objection by the Debtors, the Post-Effective Date Debtors, the Plan Administrator, the Purchaser, or the GUC Trust, as applicable, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged and shall be subject to the permanent injunction set forth in Article VIII.F of the Plan, notwithstanding anything in a Proof of Claim to the contrary.**

All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim as set forth in Article III.B of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

The Debtors or the Post-Effective Date Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter. The proposed amount and timing of payment of each such Cure shall be set forth in the Plan Supplement unless otherwise agreed in writing (email being sufficient) between the Debtors or the Post-Effective Date Debtors and the counterparty to the applicable Executory Contract or Unexpired Lease. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, any objection (an "Executory Contract Objection") filed by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment, including pursuant to the Plan, or related Cure amount must be Filed, served, and actually received by counsel to the Debtors and the U.S. Trustee by the applicable Assumption or Rejection Objection Deadline or any other deadline that may be set by the Bankruptcy Court. Any Executory Contract Objection (x) timely Filed prior to the Confirmation Hearing will be heard by the Bankruptcy Court at the Confirmation Hearing unless otherwise agreed to by the Debtors and the objecting party, with the consent of the Purchaser (in the case of an Asset Sale), or (y) timely Filed after the Confirmation Hearing shall be heard as soon as reasonably practicable on a date requested by the Debtors or the Post-Effective Date Debtors, as the case may be, with the consent of the Purchaser (in the event of an Asset Sale). Any Executory Contract Objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Purchaser or any Post-Effective Date Debtor without the need for any objection by the Post-Effective Date Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Post-Effective Date Debtors, as applicable, of the Cure amount; *provided* that nothing herein shall prevent the Post-Effective Date Debtors from paying any Cure amount despite the failure of the relevant counterparty to File an Executory Contract Objection. The Debtors or the Post-Effective Date Debtors, as applicable, may also settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption and/or assignment.

If there is any dispute regarding any Cure, the ability of the Post-Effective Date Debtors, or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption (or assumption and assignment), then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order (which may be the Confirmation Order) resolving such dispute, approving such assumption (and, if applicable, assumption and assignment), or as may be agreed upon by the Debtors or the Post-Effective Date Debtors, the Purchaser, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

To the extent an Executory Contract Objection relates solely to a Cure, the Debtors or the Post-Effective Date Debtors, as applicable, may assume and/or assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of the Cure objection; *provided* that the Debtors or the Post-Effective Date Debtors, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required Cure payment by the non-Debtor party to such Executory Contract or Unexpired Lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such non-Debtor party and the applicable Post-Effective Date Debtor); *provided* further that any Cash reserved in accordance with the forgoing shall not constitute an Acquired Asset and shall be maintained by the Debtors or the Post-Effective Date Debtors, as applicable.

Assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan, the Purchase Agreement, or otherwise and full payment of any applicable Cure pursuant to this Article V.D shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed (or assumed and assigned) in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.D, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

For the avoidance of doubt, if the Asset Sale is consummated pursuant to the Purchase Agreement, the Purchaser shall not have any obligation with respect to any Cure. To the extent any Cure dispute arises after the Effective Date with respect to an Executory Contract or Unexpired Lease assumed and assigned to the Purchaser, the resolution of such Cure dispute shall be the sole responsibility of the Debtors or the Post-Effective Date Debtors, and the Purchaser shall have no liability in connection therewith.

E.      *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. If the Debtors consummate the Equity Investment Transaction or the Recapitalization Transaction, unless otherwise provided in the Plan, on the Effective Date, (i) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies and (ii) such insurance policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall revest in the Post-Effective Date Debtors.

If the Debtors consummate the Asset Sale, unless otherwise provided in the Plan or Purchase Agreement, on the Effective Date, (i) each of the Debtors' insurance policies (excluding all D&O Liability Insurance Policies) shall be assumed and assigned to the Purchaser in accordance with the Purchase Agreement and (ii) each of the Debtors' D&O Liability Insurance Policies shall be assumed by the Debtors and shall revest in the Post-Effective Date Debtors.

Nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening), (i) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (ii) alters or modifies the duty, if any, that the insurers or third party administrators pay claims

covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Post-Effective Date Debtors) or draw on any collateral or security therefor.

F.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Post-Effective Date Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Post-Effective Date Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

G.      *Reservation of Rights.*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Debtors or the Post-Effective Date Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Post-Effective Date Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

H.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtors or the Post-Effective Date Debtors liable thereunder in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims of Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  For the avoidance of doubt, distributions on account of General Unsecured Claims shall be governed by the GUC Trust Agreement.

B.    *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent or the GUC Trustee, as applicable, on the Effective Date or at such other time as provided for in the Plan. The Disbursing Agent and the GUC Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent or the GUC Trustee is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Post-Effective Date Debtors or the GUC Trust, respectively.

C.    *Rights and Powers of Disbursing Agent.*

1.    Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby (other than distributions on account of General Unsecured Claims); (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Post-Effective Date Debtors.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.    Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.    Delivery of Distributions in General.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims or Allowed Interests shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent or the GUC Trustee, as appropriate: (a) to the signatory set forth on any Proof of Claim or Proof of Interest filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim or Proof of Interest is filed or if the Debtors or the GUC Trust have not been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Post-Effective Date Debtors, or the Disbursing Agent or the GUC Trustee, as appropriate, after the date of any related Proof of Claim or Proof of Interest; or (c) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Subject to this Article VI, distributions under the Plan on account of Allowed Claims or Allowed Interests shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim or Allowed Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Post-Effective Date Debtors, the Disbursing Agent, and the GUC Trustee, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct. For the avoidance of doubt, distributions on account of General Unsecured Claims shall be governed by the GUC Trust Agreement.

3.    <u>Minimum Distributions</u>.

No fractional shares of New Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed Interest (as applicable) would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number, and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefore.  The total number of authorized shares of New Common Stock to be distributed under the Plan shall be adjusted as necessary to account for the foregoing rounding.

4.    <u>Undeliverable Distributions and Unclaimed Property</u>.

In the event that any distribution to any Holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent or the GUC Trustee has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Post-Effective Date Debtors, the Plan Administrator, or the GUC Trust (in the case of distributions from the GUC Trust Net Assets), as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheatment, abandoned property, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder related to such property or interest in property shall be discharged and forever barred.  The Post-Effective Date Debtors, the Disbursing Agent, and the GUC Trust shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.  For the avoidance of doubt, treatment of undeliverable distributions on account of General Unsecured Claims shall be governed by the GUC Trust Agreement.

E.      *Manner of Payment.*

At the option of the Disbursing Agent or the GUC Trustee, as applicable, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in the GUC Trust Agreement or other applicable agreements.

F.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, any applicable withholding or reporting agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, any applicable withholding or reporting agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors, the Post-Effective Date Debtors, and the GUC Trust reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances in a tax-efficient manner acceptable to the Required Consenting Term Lenders.

G.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan, the DIP Orders, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

I.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Effective Date.

J.      *Setoffs and Recoupment.*

Except as expressly provided in the Plan, each Post-Effective Date Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Post-Effective Date Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (i) agreed in amount among the relevant Post-Effective Date Debtor(s) and Holder of Allowed Claim or (ii) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Post-Effective Date Debtor or its successor of any and all claims, rights, and Causes of Action that such Post-Effective Date Debtor or its successor may possess against the applicable Holder.  In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.      *Claims Paid or Payable by Third Parties.*

1.   <u>Claims Paid by Third Parties.</u>

The Debtors, the Post-Effective Date Debtors, and the GUC Trust, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, a Post-Effective Date Debtor, or the GUC Trust, as applicable.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, a Post-Effective Date Debtor, or the GUC Trust, as applicable, on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Post-Effective Date Debtor or the GUC Trust (in the case of distributions from the GUC Trust Assets), as applicable, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder timely to repay or return such distribution shall result in the Holder owing the applicable Post-Effective Date Debtor or the GUC Trust (in the case of distributions from the GUC Trust Assets) annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is fully repaid.

2.   Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.   Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Notwithstanding anything to the contrary contained herein (including Article III of the Plan), nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers, under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.
PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS**

A.   *Disputed Claims Process*.

The Debtors and the Post-Effective Date Debtors, and the GUC Trust (solely with respect to General Unsecured Claims), shall have the exclusive authority to (i) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a claim subject to any Proof of Claim that is Filed is Allowed and (ii) file, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan. **Except as otherwise provided herein, all Proofs of Claim Filed after the earlier of:  (a) the Effective Date or (b) the applicable claims bar date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor, Post-Effective Date Debtor, or the GUC Trust, as applicable, without the need for any objection by the Debtor, Post-Effective Date Debtor, or the GUC Trust, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.**

B.   *Allowance of Claims*.

After the Effective Date and subject to the terms of the Plan and the Purchase Agreement (in the event of an Asset Sale), the Plan Administrator, each of the Post-Effective Date Debtors, the GUC Trust, or the Purchaser (solely to the extent that the assets or liabilities that give rise to such Claim or Interest are transferred to the Purchaser pursuant to the Purchase Agreement in the event of a Sale Transaction),  as applicable, shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.  The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by the Plan or a Final Order is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

C.       *Estimation of Claims.*

Before or after the Effective Date, the Debtors, the Post-Effective Date Debtors, the Plan Administrator, or the GUC Trust (with respect to General Unsecured Claims), as applicable, and, in the event of a Sale Transaction, with the consent of the Purchaser solely to the extent that the assets or liabilities that give rise to such Claim or Interest are transferred to the Purchaser pursuant to the Purchase Agreement, may (but are not required to), at any time, request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code, for any reason, regardless of whether any party previously has objected to such Disputed Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any such Disputed Claim or Interest, including during the litigation of any objection to any Disputed Claim or Interest or during the pendency of any appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Disputed Claim or Interest that has been expunged from the Claims Register but that either is subject to appeal or has not been the subject of a Final Order shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions) and may be used as evidence in any supplemental proceedings, and, the Debtors, the Post-Effective Date Debtors, the Plan Administrator, or the GUC Trust (with respect to General Unsecured Claims), as applicable, and, in the event of a Sale Transaction, with the consent of the Purchaser solely to the extent that the assets or liabilities that give rise to such Claim or Interest are transferred to the Purchaser pursuant to the Purchase Agreement, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Disputed Claim or Interest that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen (14) days after the date on which such Disputed Claim or Interest is estimated.

D.       *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Post-Effective Date Debtors, the Plan Administrator, and/or the GUC Trust (solely with respect to the General Unsecured Claims), as applicable, and, in the event of a Sale Transaction, with the consent of the Purchaser solely to the extent that such Claim or Interest are transferred to the Purchaser pursuant to the Purchase Agreement, shall have the sole authority: (i) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (ii) to settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Post-Effective Date Debtor or the GUC Trust, as applicable, shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to the Plan.

E.       *Time to File Objections to Claims.*

Any objections to Claims shall be Filed by the Post-Effective Date Debtors or the GUC Trust, and, in the event of an Asset Sale, with the consent of the Purchaser solely to the extent that such Claim or Interest are transferred to the Purchaser pursuant to the Purchase Agreement, on or before the Claims Objection Deadline, as such deadline may be extended from time to time.

F.       *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Post-Effective Date Debtors, the Plan Administrator, and/or the GUC Trust (with respect to General Unsecured Claims), as applicable, without the Post-Effective Date Debtors, the Plan Administrator, or the GUC Trust, as applicable having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

G.      *Disputed and Contingent Claims Reserve.*

On or after the Effective Date, the Debtors or the Post-Effective Date Debtors, as applicable, may establish one or more reserves for Claims that are contingent or have not yet been Allowed, in an amount or amounts as reasonably determined by the applicable Debtors, the Post-Effective Date Debtors, or Plan Administrator, as applicable, consistent with the Proof of Claim Filed by the applicable Holder of such Disputed Claim. Following the final resolution of all Disputed Claims, any residual amounts in the Disputed Claims Reserve shall constitute Residual Cash and be immediately distributable to Holders of Allowed First Lien Claims.

H.      *Disallowance of Claims or Interests.*

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Post-Effective Date Debtors, as applicable, allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Post-Effective Date Debtors. All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan after notice to the Holder of such Claim, but without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as provided herein or otherwise agreed to by the Post-Effective Date Debtors or the GUC Trust (with respect to the General Unsecured Claims), in their sole discretion, any and all Proofs of Claim Filed after the applicable bar date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

I.      *Amendments to Proofs of Claim or Interest.*

On or after the Effective Date, a Proof of Claim or Proof of Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Debtors, the Post-Effective Date Debtors, the Plan Administrator, the GUC Trust (with respect to General Unsecured Claims), or the Purchaser (solely to the extent that the assets or liabilities that give rise to such Claim or Interest are transferred to the Purchaser pursuant to the Purchase Agreement in the event of a Sale Transaction), as applicable, and any such new or amended Proof of Claim or Proof of Interest Filed that is not so authorized before it is Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court absent prior Bankruptcy Court approval or agreement by the Debtors, the Post-Effective Date Debtors, the Plan Administrator, or the Purchaser (solely to the extent that the assets or liabilities that give rise to such Claim or Interest are transferred to the Purchaser pursuant to the Purchase Agreement in the event of a Sale Transaction) as applicable; *provided* that the foregoing shall not apply to Administrative Claims or claims filed by Governmental Units to the extent the applicable bar date has not yet occurred.

J.      *Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

K.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in

accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent (or the GUC Trustee, with respect to General Unsecured Claims) shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, including the Purchase Agreement in the event of an Asset Sale, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Post-Effective Date Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action (including any Causes of Action or Claims based on theories or allegations of successor liability) that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (i) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than any Reinstated Claims) and Interests (other than any Intercompany Interests that are Reinstated) and in the event of an Asset Sale, the transfer of the Debtors' assets free and clear of any and all such Claims and Interests, subject to the occurrence of the Effective Date.

B.    *Release of Liens.*

**Except as otherwise provided in the New Takeback Facility Documents, the Plan, the Confirmation Order, the Purchase Agreement (if applicable), or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim or any related claim that may be asserted against a non-Debtor Affiliate, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates or any non-Debtor Affiliate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns. Any Holder of such Secured Claim or claim against a non-Debtor Affiliate (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Post-Effective Date Debtors, to release any collateral or other property of any Debtor or non-Debtor Affiliate (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Post-Effective Date Debtors or the Plan Administrator, as applicable, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**C.**     *Releases by the Debtors.*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors, their Estates, and, if applicable, the Post-Effective Date Debtors and the Plan Administrator, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any Avoidance Actions and any derivative claims asserted or assertable on behalf of the Debtors, their Estates, the Post-Effective Date Debtors, or the Plan Administrator), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, their Estates, the Post-Effective Date Debtors, if applicable, the Plan Administrator, if applicable, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the First Lien Credit Documents, the Bridge Facility Documents, the New Organizational Documents, the DIP Documents, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Purchase Agreement (if applicable), the Sale Transaction (if applicable), the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the New Takeback Facility Documents, the New Organizational Documents, the Receivables Program Documents, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, *however*, that notwithstanding anything herein to the contrary, nothing in this Plan shall affect, limit, or release in any way any performance obligations of any party or Entity under the Plan, the Asset Sale, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Asset Sale (including the Purchase Agreement and any documents in connection therewith).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Debtors' Estates, or, if applicable, the Post-Effective Date Debtors or the Plan Administrator, asserting any Claim or Cause of Action released pursuant to the Debtor Release.

**D.**     *Releases by Holders of Claims and Interests.*

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing

Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the First Lien Credit Documents, the Bridge Facility Documents, the New Organizational Documents, the DIP Documents, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Purchase Agreement (if applicable), the Sale Transaction (if applicable), the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the New Takeback Facility Documents, the New Organizational Documents, the Receivables Program Documents, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, *however*, that notwithstanding anything herein to the contrary, nothing in this Plan shall affect, limit, or release in any way any performance obligations of any party or Entity under the Plan, the Asset Sale, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Asset Sale (including the Purchase Agreement and any documents in connection therewith).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (i) consensual; (ii) essential to the confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

E.      *Exculpation.*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action arising prior to the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the RSA, the Restructuring Transactions, the First Lien Credit Documents, the Bridge Facility Documents, the New Organizational Documents, the DIP Documents, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Purchase Agreement (if applicable), the Sale Transaction (if applicable), the Plan and related agreements, instruments, and other documents, the New Takeback Facility Documents, the Receivables Program Documents, and all other Definitive Documents, the solicitation of votes for, or Confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, if applicable, in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such

Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability; *provided*, however, that notwithstanding anything herein to the contrary, nothing in this Plan shall affect, limit, or release in any way any performance obligations of any party or Entity under the Plan, the Asset Sale, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Asset Sale (including the Purchase Agreement and any documents in connection therewith).

F.      *Injunction.*

        Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date through and until the date upon which all remaining property of the Debtors' Estates vested in the Post-Effective Date Debtors has been liquidated and distributed in accordance with the terms of the Plan, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties:  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.

        No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Post-Effective Date Debtor, Exculpated Party, or Released Party.

        Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F.

G.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Post-Effective Date Debtors, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against the Post-Effective Date Debtors, or another Entity with whom the Post-Effective Date Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Document Retention.*

On and after the Effective Date, the Post-Effective Date Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Post-Effective Date Debtors, and in accordance with the Purchase Agreement (if applicable).

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (i) such Claim has been adjudicated as non-contingent or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.            the Restructuring Transactions shall have been implemented in accordance with the Restructuring Transactions Memorandum in all material respects;

2.            in the event of an Asset Sale, the Distribution Reserve Accounts shall have been established and funded with the Priority Claims Reserve Amount and the Wind-Down Amount;

3.            the Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall have become a Final Order;

4.            each document or agreement constituting the applicable Definitive Documents, the form and substance of which shall be subject to the consent rights set forth in the RSA (and, in the event of a Sale Transaction, shall be subject to the consent rights set forth in the Purchase Agreement or shall otherwise be in form and substance reasonably acceptable to the Purchaser), shall have been executed and/or effectuated and remain in full force and effect, and any conditions precedent related thereto or contained therein shall have been satisfied or waived by the applicable party or parties prior to or contemporaneously with the occurrence of the Effective Date;

5.            the New Takeback Facility Documents, if applicable, the form and substance of which shall be subject to the consent rights set forth in the RSA, shall have been executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the parties thereto (with the consent of the Required Consenting Term Lenders), other than such conditions that relate to the effectiveness of the Plan and related transactions, including payment of fees and expenses;

6.        the DIP Claims shall have been indefeasibly paid in full in Cash or, solely to the extent set forth herein, satisfied by the New Takeback Facility;

7.        unless an Asset Sale occurs, the New Common Stock shall have been issued;

8.        all Restructuring Expenses, to the extent invoiced, shall have been paid in full;

9.        the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the Restructuring Transactions;

10.        if and as applicable, the Purchase Agreement shall (i) have been executed and all conditions precedent to closing of the Sale Transaction shall have occurred, been waived in accordance with the Purchase Agreement, or will occur substantially simultaneously with the effectiveness of the Plan and (ii) be in full force and effect and binding upon the relevant parties according to its terms;

11.        if and as applicable, the Purchaser shall deliver the Purchase Price to the Debtors in exchange for the Post-Effective Date Debtors' distribution of the substantially all of the New Common Stock or transfer of substantially all of the Debtors' assets or as otherwise agreed to by the Debtors and the Purchaser;

12.        the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed;

13.        the RSA shall remain in full force and effect;

14.        the GUC Trust Agreement shall have been executed and the GUC Trust Assets shall have vested or be deemed to have vested in the GUC Trust;

15.        none of the Chapter 11 Cases shall have been converted to a case under chapter 7 of the Bankruptcy Code;

16.        no Bankruptcy Court order appointing a trustee or examiner with expanded powers shall have been entered and remain in effect under any chapter of the Bankruptcy Code with respect to the Debtors;

17.        the Plan shall not have been materially amended, altered, or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with the terms of the Plan as confirmed by the Confirmation Order, the RSA, and, in the event of an Asset Sale, the Purchase Agreement; and

18.        all professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval by the Bankruptcy Court.

B.        *Waiver of Conditions.*

The conditions to the Effective Date set forth in this Article IX, except for the conditions set forth in Article IX.A.8 and 17 of the Plan (each of which may not be waived without the consent of the affected parties), may be waived in whole or in part at any time by the Debtors only with the prior written consent (email shall suffice) of the Required Consenting Term Lenders and, in the event of a Sale Transaction, the Purchaser, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.        *Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by the Debtors or other

Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect; *provided* that all provisions of the RSA or the Purchase Agreement that survive termination thereof shall remain in effect in each case, in accordance with the terms thereof.

D.      *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in the Plan and only to the extent permitted by the RSA, and in the event of a Sale Transaction, only to the extent permitted by the Purchase Agreement and subject to the consent rights set forth in the Purchase Agreement, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to those restrictions on modifications set forth in the Plan, the RSA, and in the event of a Sale Transaction, the Purchase Agreement and the consent rights set forth therein, and the requirements of section 1127 of the Bankruptcy Code, rule 3019 of the Bankruptcy Rules, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify, the Plan with respect to such Debtor, one or more times, after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

To the extent permitted by the RSA and, in the event of a Sale Transaction, only to the extent permitted by the Purchase Agreement and subject to the Purchase Agreement in all respects (including Article VIII and Section 10.12 thereof), the Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  Subject to the Purchase Agreement (including Article VIII and Section 10.12 thereof), if the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests, (b) prejudice in any manner the rights of such Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating

to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.         allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.         decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.         resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Post-Effective Date Debtors' amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed, assumed and assigned, or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.         grant any consensual request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

5.         ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

6.         adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

7.         adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.         enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan, the Sale Transaction (as applicable), and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with the Plan, the Sale Transaction (as applicable), or the Disclosure Statement;

9.         enforce the terms of the Purchase Agreement and any related documents or schedules thereto (if applicable) and enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.        resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.        issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, discharges, and exculpations contained in the Plan, including under Article VIII hereof, whether arising prior to or after the Effective Date, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

13.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.K hereof;

14.        enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.        determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, the Plan Supplement, or the Disclosure Statement, including the RSA, and the Purchase Agreement (if applicable);

16.        enter an order concluding or closing the Chapter 11 Cases;

17.        adjudicate any and all disputes arising from or relating to distributions under the Plan;

18.        consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.        determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.        hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements (including the Purchase Agreement, if applicable), documents, or instruments executed in connection with the Plan;

21.        hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.        hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII hereof;

23.        enforce all orders previously entered by the Bankruptcy Court; and

24.        hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Takeback Facility Documents shall be governed by the jurisdictional provisions therein, and the Bankruptcy Court shall not retain any jurisdiction with respect thereto.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A.    Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtors, the Purchaser (if applicable), and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims against and Interests in the Debtors shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or Interest has voted on the Plan.

B.      *Additional Documents.*

On or before the Effective Date, and consistent in all respects with the terms of the RSA, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan and the RSA.  The Debtors or the Post-Effective Date Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Post-Effective Date Debtors, (or funded by the Post-Effective Date Debtors and disbursed by the Disbursing Agent on behalf of each of the Post-Effective Date Debtors and the GUC Trustee) for each quarter (including any fraction thereof) until such Post-Effective Date Debtor's Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

D.      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee and any other statutory committee appointed in these Chapter 11 Cases shall dissolve, and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.  The Post-Effective Date Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

All monthly reports shall be filed, and all fees due and payable pursuant to section 1930(a) of Title 28 of the United States Code shall be paid by the Debtors or the Post-Effective Date Debtors, as applicable, (or funded by the Post-Effective Date Debtors and disbursed by the Disbursing Agent on behalf of each of the Post-Effective Date Debtors and the GUC Trustee) on the Effective Date, and following the Effective Date, the Post-Effective Date Debtors (or the Disbursing Agent on behalf of each of the Post-Effective Date Debtors) shall pay such fees as they are assessed and come due for each quarter (including any fraction thereof) and shall file quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay such quarterly fees to the U.S. Trustee and to file quarterly reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of such Entity.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.    if to the Debtors, to:

Cyxtera Technologies, Inc.
Attention:  Victor Semah, Chief Legal Counsel
E-mail address:  victor.semah@cyxtera.com
with copies to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attention:  Edward O. Sassower, Christopher Marcus, Derek I. Hunter
E-mail addresses:        esassower@kirkland.com
                         christopher.marcus@kirkland.com
                         derek.hunter@kirkland.com

2.    if to a member of the AHG, to:

Gibson, Dunn & Crutcher LLP
200 Park Ave
New York, NY 10166
Attention:  Scott J. Greenberg, Steven Domanowski, Stephen D. Silverman
E-mail addresses:        sgreenberg@gibsondunn.com,
                         sdomanowski@gibsondunn.com
                         ssilverman@gibsondunn.com

3.    if to a Consenting Sponsor, to:

Latham & Watkins LLP
1271 6th Avenue
New York, NY 10020
Attention:  George A. Davis, Joseph C. Celentino
E-mail addresses:        george.davis@lw.com,
                         joe.celentino@lw.com

4.    if to the Committee, to:

Pachulsky Stang Ziehl & Jones LLP
780 Third Avenue
New York, NY 10017
Attention:  Bradford J. Sandler, Robert J. Feinstein, Paul J. Labov
E-mail addresses:        bsandler@pszjlaw.com,
                         rfeinstein@pszjlaw.com
                         plabov@pszjlaw.com

5.    <u>if to the Purchaser, to</u>:

       c/o Brookfield Asset Management Inc.
       250 Vesey Street, 15th Floor
       New York, New York 10281
       Attention:  Fred Day, Michael Rudnick
       E-mail addresses:       fred.day@brookfield.com
                     michael.rudnick@brookfield.com

       with copies to:

       Paul, Weiss, Rifkind, Wharton & Garrison LLP
       1285 Avenue of the Americas
       New York, NY 10019-6064
       Attention:  Brian S. Hermann, Jacob A. Adlerstein
       E-mail addresses:       bhermann@paulweiss.com
                     jadlerstein@paulweiss.com

After the Effective Date, the Debtors have authority to notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

Except as otherwise indicated, including with respect to the Purchase Agreement (if applicable), and without limiting the effectiveness of the RSA, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://www.kccllc.net/cyxtera or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and

provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan, and any deletion or modification thereof shall be subject to the consent rights set forth in the RSA, the Purchase Agreement (if applicable), and herein; and (iii) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties nor individuals nor the Post-Effective Date Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

M.      *Good Faith; No Collusion.*

In the event of an Asset Sale, upon entry of the Confirmation Order, the Debtors and the Purchaser, and each of their management, board of directors or equivalent governing body, officers, directors, employees, agents, members, managers, equity holders, and representatives will be found and deemed to have negotiated, proposed, and entered into the Purchase Agreement in good faith, without collusion or fraud, and from arms'-length bargaining positions.

N.      *Closing of Chapter 11 Cases.*

The Post-Effective Date Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

O.      *Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the RSA, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

P.      *Creditor Default.*

An act or omission by a Holder of a Claim or Interest or the Purchaser in contravention of the provisions of the Plan shall be deemed an event of default under the Plan.  Upon an event of default, the Post-Effective Date Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Post-Effective Date Debtors in remedying such default.  Upon the finding of such a default by a Holder of a Claim or Interest, the Bankruptcy Court may:  (a) designate a party to appear, sign, and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (b) enforce the Plan by order of specific performance; (c) award a judgment against such defaulting Holder of a Claim or Interest in favor of the Post-Effective Date Debtors in an amount, including interest, if applicable, to compensate the Post-Effective Date Debtors for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan.

Q.      *Removal or Abandonment of Third Parties' Property.*

Except as set forth in the Purchase Agreement (if applicable), nothing in the Plan shall impose upon the Post-Effective Date Debtors any obligation to store or protect any third party's property, all of which property will be deemed abandoned and surrendered to the Post-Effective Date Debtors if such property has not been removed (by its owner in a commercially reasonable manner, and with insurance to cover any damage from such removal) from any real property owned or leased by the Post-Effective Date Debtors within forty-five (45) days after Confirmation of the Plan.  Following the abandonment and surrender of any such property, the Post-Effective Date Debtors may sell, transfer, assign, scrap, abandon, or otherwise dispose of such property and retain any proceeds resulting therefrom.

[*Remainder of page intentionally left blank.*]

Dated:  November 13, 2023

Cyxtera Technologies, Inc.
on behalf of itself and all other Debtors

/s/ Eric Koza
    Name:  Eric Koza
    Title:  Chief Restructuring Officer

## **Exhibit B**

**Confirmation and Effective Date Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al.*, | Case No. 23-14853 (JKS) |
| Debtors.[7] | (Jointly Administered) |

---

[7]    A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/cyxtera.  The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is:  2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

**NOTICE OF (A) ENTRY OF THE ORDER
CONFIRMING THE FOURTH AMENDED JOINT PLAN OF
REORGANIZATION OF CYXTERA TECHNOLOGIES, INC.
AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE
BANKRUPTCY CODE AND (B) OCCURRENCE OF EFFECTIVE DATE**

**TO ALL CREDITORS, INTEREST HOLDERS, AND OTHER PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that the Honorable John K. Sherwood, United States Bankruptcy Judge, entered an order confirming the *Fourth Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be modified, the "Plan") [Docket No. 694], which the Clerk of the United States Bankruptcy Court for the District of New Jersey (the "Court") docketed on November 13, 2023.[8]

**PLEASE TAKE FURTHER NOTICE** that copies of the Confirmation Order, the Plan, and the related documents may be obtained free of charge by visiting the website of Kurtzman Carson Consultants LLC at https://www.kccllc.net/cyxtera.  You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that the Effective Date occurred on [[●], 2023].

**PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided in the Plan, the Confirmation Order, or any other applicable order of the Court or Holders of an Allowed Administrative Claim and the Debtors have agreed otherwise, all requests for payment of Administrative Claims must be Filed and served on the Debtors on or before the Administrative Claims Bar Date:  with respect to Administrative Claims other than Professional Fee Claims, the date that is thirty (30) days after the Effective Date; with respect to Professional Fee Claims, shall be forty-five (45) days after the Effective Date.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request on or before the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, any purchasers of their assets, or their respective property, and such Administrative Claims shall be deemed compromised, settled, and released as of the Effective Date.  Parties exempted from filing requests for payment of Administrative Claims under the Bar Date Order are not required to comply the Administrative Claims Bar Date.

**PLEASE TAKE FURTHER NOTICE** that, unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Court within thirty (30) days after the effective date of such rejection.

**PLEASE TAKE FURTHER NOTICE** that the Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

---

[8]    Capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Post-Effective Date Debtors, and any Holder of a Claim or an Interest and such Holder's respective successors and assigns, whether or not the Claim or the Interest of such Holder is Impaired under the Plan, and whether or not such Holder voted to accept the Plan.

*[Remainder of page intentionally left blank]*

Dated: [_____], 2023

/s/
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
Email:      msirota@coleschotz.com
            wusatine@coleschotz.com
            fyudkin@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
            edward.sassower@kirkland.com
            christopher.marcus@kirkland.com
            derek.hunter@kirkland.com

*Co-Counsel for Debtors and*
*Debtors in Possession*