**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**MONTHLY FEE STATEMENT COVER SHEET**
**FOR THE PERIOD OCTOBER 1, 2023 THROUGH OCTOBER 31, 2023**

| | |
|---|---|
| In re Cyxtera Technologies Inc., *et al*. | Applicant: M3 Advisory Partners, LP |
| Case No. 23-14853 (JKS) | Client: Fred Arnold, Roger Meltzer, and Scott Vogel, in their capacity as Disinterested Directors of Cyxtera Technologies, Inc. |
| Chapter 11 | Case Filed: June 4, 2023 |

**COMPLETION AND SIGNING OF THIS FORM CONSTITUTES A CERTIFICATION UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746.**

**RETENTION ORDER ATTACHED.**

/s/ *Mohsin Y. Meghji*                    11/28/2023
_____     _____
Mohsin Y. Meghji                              Date

<div style="border:1px solid">

**SECTION I**
**FEE SUMMARY**

</div>

<u>Summary of Amounts Requested for the Period</u>
<u>October 1, 2023, through October 31, 2023 (the "**Compensation Period**")</u>

| | |
|---|---|
| Fee Total: | $20,815.00 |
| Disbursement Total: | $0.00 |
| Total Fees Plus Disbursements: | $20,815.00 |

<u>Summary of Amounts Requested for Previous Periods</u>

| | |
|---|---|
| Total Previous Fees and Expenses Requested: | $290,960.00 |
| Total Fees and Expenses Allowed to Date: | $232,768.00 |
| Total Retainer Remaining: | $0.00 |
| Total Holdback: | $58,192.00 |
| Total Received by Applicant: | $232,768.00 |

*In re Cyxtera Technologies, Inc., et al.*
**Bankruptcy Case No. 23-14853 (JKS) (Jointly Administered)**

**Summary of Total Fees by Professional**
**for the Compensation Period of October 1, 2023 through October 31, 2023**

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Mohsin Meghji | Managing Partner | $1,350 | 0.0 | $0.00 |
| Matthew Manning | Managing Director | $1,150 | 5.8 | $6,670.00 |
| Brian Bostwick | Vice President | $750 | 10.5 | $7,875.00 |
| Mario Biaggi | Associate | $550 | 11.4 | $6,270.00 |
| **Totals** | | | **27.7** | **$20,815.00** |

SECTION II
SUMMARY OF SERVICES

*In re Cyxtera Technologies, Inc., et al.*
**Bankruptcy Case No. 23-14853 (JKS) (Jointly Administered)**

**Summary of Time Detail by Task Category**
**for the Compensation Period of October 1, 2023 through October 31, 2023**

| Task Category | Hours | Fees |
|---|---|---|
| Analysis of Docket Filings & Debtor Materials | - | $0.00 |
| Case Administration | 1.5 | $1,405.00 |
| Fee Applications | 2.9 | $3,335.00 |
| Potential Causes of Action | 23.3 | $16,075.00 |
| **Total** | **27.7** | **$20,815.00** |

**SECTION III**
**SUMMARY OF DISBURSEMENTS**

*In re Cyxtera Technologies, Inc., et al.*
**Bankruptcy Case No. 23-14853 (JKS) (Jointly Administered)**

**Summary of Actual and Necessary Expenses**
**for the Compensation Period of October 1, 2023 through October 31, 2023**

None.

+-------------------------------------------------------------+
|                       **SECTION IV**                        |
|                      **CASE HISTORY**                       |
+-------------------------------------------------------------+

(1)  Date cases filed: June 4, 2023

(2)  Chapter under which case commenced: chapter 11

(3)  Date of retention: October 12, 2023, effective as of August 29, 2023.  *See* **Exhibit A**.

     If limit on number of hours or other limitations to retention, set forth: N/A

(4)  Summarize in brief the benefits to the estate and attach supplements as needed:[1]

   (a)  The Applicant held regular meetings with Katten Muchin Rosenman LLP, as counsel to Cyxtera Technologies, Inc. ("Cyxtera", and together with Cyxtera's affiliated debtors and debtors in possession, the "Debtors") on behalf of and at the sole direction of Fred Arnold, Roger Meltzer, and Scott Vogel (collectively, the "Disinterested Directors"), in their capacity as Disinterested Directors of Cyxtera , comprising the special committee (the "Special Committee") of Cyxtera's Board of Directors (the "Board"), in connection with the Special Committee's independent investigation with respect to potential claims or causes of action of the Debtors, if any, against any Related Parties (the "Independent Investigation");

   (b)  The Applicant submitted targeted document and information requests to the Debtors in connection with the Independent Investigation;

   (c)  The Applicant reviewed and analyzed documents and information produced by the Debtors in connection with the Independent Investigation;

   (d)  The Applicant conducted targeted financial analysis regarding various issues with respect to potential claims or causes of action of the Debtors, if any, against any Related Parties in connection with the Independent Investigation;

   (e)  The Applicant reviewed and analyzed matters related to certain of Cyxtera's prepetition corporate transactions;

   (f)  The Applicant advised the Disinterested Directors regarding various matters in the chapter 11 cases concerning the Independent Investigation; and

   (g)  The Applicant rendered all of the services set forth on **Exhibit B**.

---

[1]  The following summary is intended to highlight the general categories of services the Applicant rendered on behalf of and at the sole direction of the Disinterested Directors and for the benefit of the estate; it is not intended to itemize each and every professional service which the Applicant performed.

(5)    Anticipated distribution to creditors:

    (a)    Administrative expense: Paid in full.

    (b)    Secured creditors: To be paid in accordance with the Fourth Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 694, Exhibit A] (the "Plan").

    (c)    Priority Creditors: To be paid in accordance with the Plan.

    (d)    General unsecured creditors: To be paid in accordance with the Plan.

(6)    Final disposition of case and percentage of dividend paid to creditors: This is the second monthly fee statement.

## **Exhibit A**

**Retention Order**

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

Order Filed on October 12, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey

|  |  |
|---|---|
| In re:<br><br>CYXTERA TECHNOLOGIES, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-14853 (JKS)<br><br>(Jointly Administered) |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF M3 ADVISORY PARTNERS, LP AS INDEPENDENT FINANCIAL ADVISOR TO CYXTERA TECHNOLOGIES, INC. ON BEHALF OF AND AT THE SOLE DIRECTION OF THE DISINTERESTED DIRECTORS EFFECTIVE AS OF AUGUST 29, 2023**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/cyxtera. The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is: 2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 3313.

The relief set forth on the following pages, numbered three (3) through six (6) is

**ORDERED.**

**DATED: October 12, 2023**

Honorable John K. Sherwood
United States Bankruptcy Court

(Page | 3)

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Debtor Cyxtera Technologies, Inc. on Behalf of the Sole Direction of the Disinterested Directors Effective as of August 29, 2023 |

Upon the application (the "Application")[1] of Cyxtera Technologies, Inc. ("Cyxtera"), one

of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry

of an order (the "Order") (a) authorizing Cyxtera to retain and employ M3 Advisory Partners, LP

("M3"), as financial advisor to render independent financial advisory services on behalf and at the

sole direction of Fred Arnold, Roger Meltzer, and Scott Vogel (together, the "Disinterested

Directors"), in their capacity as the disinterested directors of Cyxtera, comprising the Special

Committee of Board, effective as of August 29, 2023, in accordance with the terms and conditions

of the Engagement Letter dated as of August 29, 2023 (the "Engagement Letter") annexed as

**Exhibit 1** to the Order and (b) granting related relief, pursuant to 11 U.S.C. §§327(a) and 328(a);

Bankruptcy Rules 2014 and 2016; and Local Rules 2014-1 and 2016-1; and the Court having

reviewed the Application and the Manning Declaration and the Meltzer Declaration; and the Court

having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §157 and 1334;

and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); and that this Court may enter a final order consistent with Article III of the United

States Constitution; and the Court having found that venue of this proceeding and the Application

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based

on the representations made in the Application and in the Manning Declaration that (a) M3 does

not hold or represent an interest adverse to the Debtors' estates, (b) M3 has no connection with the

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

(Page | 4)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Debtor Cyxtera Technologies, Inc. on Behalf of the Sole Direction of the Disinterested Directors Effective as of August 29, 2023 |

Debtors, their affiliates, their creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, the United States Bankruptcy Judges in the District of New Jersey, or any other entity with an actual or potential interest in the chapter 11 cases or their respective attorneys or accountants, except as set forth in the Manning Declaration, (c) M3 is not a creditor, equity security holder, or insider of the Debtors, and (d) none of M3's employees are or were, within two years of the Petition Date, a director, officer, or employee of the Debtors; and the Court having found that sufficient cause exists for the relief set forth herein; and the Court having found that the Debtors provided adequate and appropriate notice of the Application under the circumstances and that no other or further notice is required; and the Court having reviewed the Application and having heard statements in support of the Application at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Application is **GRANTED** as set forth herein.

2.    Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Cyxtera is authorized to retain and employ M3 as independent financial advisor to render independent financial advisory services on behalf and at the sole direction of the Disinterested Directors, effective as of August 29, 2023, pursuant to the terms and conditions set forth in the Application and the Engagement Letter attached hereto as **Exhibit 1**.

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Debtor Cyxtera Technologies, Inc. on Behalf of the Sole Direction of the Disinterested Directors Effective as of August 29, 2023 |

3.      The terms of the Engagement Letter, including, without limitation, the indemnification provisions and the fee and expense structure, are reasonable terms and conditions of employment and are approved in all respects, as modified in this Order.

4.      M3 is authorized to provide the Disinterested Directors with the professional services as described in the Application and the Engagement Letter.

5.      M3 shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, the Administrative Fee Order, and any other applicable procedures and orders of the Court. M3 shall make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures, both in connection with the Application and the interim and final fee applications to be filed by M3 in these chapter 11 cases.

6.      M3 shall include in its fee applications, among other things, contemporaneous time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Disinterested Directors in one-tenth of an hour increments.

7.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with defending any objection to M3's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
|---|---|
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Debtor Cyxtera Technologies, Inc. on Behalf of the Sole Direction of the Disinterested Directors Effective as of August 29, 2023 |

8.      M3 shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and counsel to the Committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

9.      M3 shall not charge a markup to Cyxtera with respect to fees billed by contractors who are hired by M3 to provide services to Cyxtera at the sole direction of the Disinterested Directors and shall ensure that any such contractors are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

10.      M3 shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

11.      To the extent the Engagement Letter, the Application, the Manning Declaration, or the Meltzer Declaration is inconsistent with this Order, the terms of the Order shall govern.

12.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

13.      Cyxtera and M3 are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

14.      Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied such notice.

(Page | 7)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Debtor Cyxtera Technologies, Inc. on Behalf of the Sole Direction of the Disinterested Directors Effective as of August 29, 2023 |

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## Exhibit 1

### Engagement Letter

DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7EB7525488



Dated as of August 29, 2023

Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, New York 10020-1605
Attention:    Steven J. Reisman and Marc B. Roitman

<div align="center">Engagement Letter</div>

Steven and Marc:

This letter agreement (this "***Agreement***") sets forth the terms and conditions of the engagement
(the "***Engagement***") of M3 Advisory Partners, LP ("***M3***") to provide the Services (as defined
below) to Katten Muchin Rosenman LLP (the "***Client***"), as counsel to Fred Arnold, Roger Meltzer
and Scott Vogel (together, the "***Disinterested Directors***"), in their capacity as the disinterested
directors of Cyxtera Technologies, Inc. ("***Cyxtera***"; and, together with its subsidiaries, the
"***Companies***"). M3 and the Client are collectively referred to in this Agreement as the "***Parties***."

   1.    <u>Services</u>: M3 will act at the direction and under the supervision of attorneys at the
Client only, with the Client acting upon instruction from the Disinterested Directors, to assist the
Client in rendering legal advice and in performing legal services for the Disinterested Directors.
In so doing, M3 hereby agrees to provide the following services (the "***Services***") for the Client
and the Disinterested Directors upon the terms and subject to the conditions set forth in this
Agreement, in each case to the extent requested in writing either by the Disinterested Directors or
the Client:

   (a)  review and analyze matters related to certain of Cyxtera's prepetition corporate
transactions;

   (b)  advise the Client and the Disinterested Directors on issues arising from such
transactions and any other issues relating to Cyxtera or its businesses;

   (c)  assist the Client and the Disinterested Directors in connection with their
independent investigation of potential claims or causes of action held by the Companies,
if any; and

   (d)  such other services as M3 and the Client shall otherwise agree in writing.

For the avoidance of doubt, (x) M3 shall report solely to and take direction solely from the Client
and the Disinterested Directors, and not the Companies or their Boards of Directors, (y) neither

DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

M3 nor any of its personnel performing the Services hereunder is being retained as or shall be deemed to be an agent, employee, or officer or director of the Client, but shall be deemed to be an independent contractor for the Client and (z) M3 is being retained by Client only as a consultant.

2. Engagement Term. (a) The Engagement shall commence on the date of acceptance of this Agreement and may be terminated by either Party at any time upon ten business days' written notice. Following any such termination, neither Party shall have further liability to the other, except with respect to fees and expenses earned and incurred through the date of termination and any provisions of this Agreement which are expressly stated to survive its termination or expiration.

(b) Promptly following the execution and delivery of this Agreement by the Parties, Cyxtera will promptly apply to the United States Bankruptcy Court for the District of New Jersey (the "**Court**") in the Companies' chapter 11 cases (the "**Case**") for approval of M3's retention *nunc pro tunc* to the date of this Agreement. The form of retention application and proposed order shall be reasonably acceptable to M3 and M3 shall have no obligation to provide any further services unless M3's retention under the terms of the Agreement is approved by a final order of the Court which is reasonably acceptable to M3. The Client and Cyxtera shall assist, or cause their respective counsel to assist, with filing, serving and noticing of papers related to M3's retention and fee and expense applications.

3. Staffing. M3 will staff a team that it believes to be appropriate to provide the Services in accordance with the terms of this Agreement. The individual members of the team are subject to change by M3 from time to time in its reasonable discretion. M3 also may provide Services through independent contractors and, unless the context shall otherwise indicate, references in this Agreement to M3 and its employees or staff shall be deemed to include any such independent contractors and their respective employees. M3 shall not charge a markup with respect to fees billed by such independent contractors.

4. Compensation for Services. Subject to the Court's approval in the Case pursuant to the *Administrative Fee Order Establishing Procedures for the Allowance and Payment of Expenses of Professionals Retained by Order of this Court* [Docket No. 305] (the "**Compensation Procedures**") and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* (the "**U.S. Trustee Guidelines**"), (a) M3's compensation for services rendered under this Agreement shall be paid by the Companies by wire transfer of immediately available funds in accordance with instructions provided from time to time by M3 to Cyxtera (on behalf of itself and the other Companies) and will consist of the following:

(i) Service Fees: As compensation for providing the Services hereunder, M3 shall be entitled to non-refundable (in the absence of manifest error) professional fees based on the actual hours incurred by M3 personnel on matters pertinent to the



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E7E2B488

Engagement (the "*Service Fees*"). The Service Fees shall be based upon the following hourly rates:

| Professional | Hourly Rate |
|---|---|
| Managing Partner | $1,350 |
| Senior Managing Director | $1,245 |
| Managing Director | $1,025 - $1,150 |
| Director | $840 - $945 |
| Vice President | $750 |
| Senior Associate | $650 |
| Associate | $550 |
| Analyst | $450 |

The Service Fees shall be billed by M3 to the Companies twice per month by M3 furnishing to the Companies copies of an invoice for the Service Fees in respect of the billing period and shall be paid in accordance with the provisions of Section 4(b) below, subject to the Compensation Procedures. M3 may adjust its billing rates from time to time in the normal course of business upon notice to the Client and the Court.

(ii)     Expenses: In addition to any compensation for providing the Services, the Companies shall reimburse M3 for all reasonable and documented out-of-pocket expenses incurred in the performance of the Services (including, without limitation, reasonable travel costs). Any request for reimbursement of an out-of-pocket expense in excess of $100 shall be accompanied by reasonable back-up for each expense or as otherwise required by applicable law and/or the Compensation Procedures and U.S. Trustee Guidelines.

(b)     All amounts owing hereunder shall be paid by wire transfer of immediately available funds within ten days following the invoice date, subject to applicable Court procedures for the payment of fees and expenses. Any amounts payable hereunder which are not paid within ten business days of the invoice date (or, during such time as the Court has jurisdiction over the Case, within ten business days of authorization by the Court to make such payment) shall be deemed "past due" and M3 shall have the right (but not the obligation) to take any action permitted under applicable law. M3 reserves the right to suspend further Services until payment is received on past due invoices and to exercise all rights and remedies available under applicable law (with the Companies being obligated to pay M3's reasonable attorney fees and other costs of collection and enforcement). In the event that M3 so suspends the Services, M3 shall not be responsible or liable for any resulting loss, damage or expense due to such suspension.

(c)     It is understood and agreed that, even though all billing submitted by M3 will be the sole obligation and expense of the Companies, M3 has been engaged on behalf of the Client in its capacity as counsel to the Disinterested Directors. Notwithstanding anything to the contrary



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7EB2B2B488

contained in this Agreement, it is understood and agreed that neither the Client nor its attorneys, nor the Disinterested Directors, will be liable for any amounts owing to M3 pursuant to or in connection with this Agreement, and M3 will look solely and exclusively to the Companies for payment of such amounts.

(d)     Unless expressly stated otherwise in the relevant invoice, none of the amounts invoiced by M3 from time to time with respect to the Engagement shall be contingent upon, or in any way tied to the delivery of, any reports or other work product in the future, nor upon the outcome of any case or matters. All fees payable to M3 are exclusive of taxes or similar charges, which shall be the sole obligation of the Companies (other than any taxes which may be payable on account of M3's income generally, which shall be the obligation of M3). The Companies shall be obligated to pay all amounts owing under this Agreement on a joint and several basis.

(e)     The provisions of this Section shall survive the termination or expiration of this Agreement.

5.    Cooperation.    In order to properly perform the Services and fulfill its responsibilities on a timely basis, M3 will rely on the timely cooperation of the Client, the Disinterested Directors, the Companies and their respective professional advisors, including, without limitation, making available to M3 relevant data, information and personnel, performing any tasks or responsibilities assigned to each and notifying M3 of any issues or concerns that the Client or the Disinterested Directors may have relating to the Services. The Client will use reasonable efforts to, and the Disinterested Directors will use reasonable efforts to cause the Companies to, provide M3 with full access to all personnel, books and records of the Companies, as well as to all advisors and professionals retained by the Client, the Disinterested Directors or the Companies. The Companies also will provide M3 with access to workspaces and data connectivity at the Companies' offices on an as-needed basis. The Client understands and acknowledges that M3's proper delivery of the Services is dependent upon timely decisions and approvals by the Client and the Disinterested Directors. M3 shall have no responsibility or liability for any delays, additional costs or other deficiencies caused by the Client, the Disinterested Directors or the Companies failing to properly fulfill its responsibilities under this Agreement or any lack of cooperation from any third party.

6.    Deliverables.    (a) In connection with the Engagement, M3 may furnish the Client with information, advice, reports, analyses, presentations or other materials (the "***Deliverables***"). The Deliverables may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available. The Client acknowledges that M3 will have no obligation to update the Deliverables as part of the Services in the event of such a change.

(b)    Any Deliverables prepared by M3 under this Agreement will be submitted to the Client or, at the direction of the Client, the Disinterested Directors. M3 acknowledges that work performed by it as part of this Engagement constitutes privileged and confidential



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

communications and that any Deliverable or other document prepared by M3 is prepared for the Client and, to the extent provided in Section 10, is the property of the Client. Any materials prepared by M3 are solely for the confidential use of the Client and they may not be reproduced, summarized, referred to, disclosed publicly or given to any other person (including, without limitation, the Companies) without prior consent of M3, *provided* that such permission shall not be required if the materials are required to be disclosed by law or any court or governmental or regulatory authority or body.

(c)   The provisions of this Section shall survive the termination or expiration of this Agreement.

7.   <u>Limitations on Services</u>. (a) The Services are limited to those specifically noted in this Agreement.

(b)   M3 does not provide accounting or tax-related assistance and no Deliverable or other information or advice provided to the Client shall be deemed to be accounting or tax-related assistance. The Client shall be solely responsible for determining the accounting and tax-related implications of the Deliverables and other information and advice provided to it by M3. M3 shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with the Engagement. The Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts. M3 shall assume the accuracy and completeness of all information submitted by or on behalf of the Client, the Disinterested Directors or the Companies to M3 for analysis and which will form the basis of M3's conclusions, without any obligation of M3 to verify the accuracy or completeness of such information, and M3 shall not be responsible for any analysis, advice or other Services to the extent based on inaccurate or incomplete information provided or accepted by or on behalf of the Client, the Disinterested Directors or the Companies.

(c)   The Services shall not include preparing, auditing or otherwise attesting in any way (including without limitation, with respect to the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Companies' financial projections, and the Client has not engaged M3 for that purpose. The Services are provided based upon the understanding that the Companies have sole responsibility for their financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto. To the extent that, during the performance of Services hereunder, M3 is required to consider the Companies' financial projections, the Client understands that M3's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide assurance that M3 might not become aware of significant matters affecting the reasonableness of the projections that might be disclosed by more extensive procedures. There will usually be



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7ED2650A8C

differences between projected and actual results, and those differences may be material. The Client understands and agrees that M3 will have no responsibility or liability relating to any such differences.

     (d)    M3 does not provide investment advice and the Services shall not include the provision of investment advice. The Disinterested Directors shall have sole responsibility for all investment decisions made by them or the Companies. Similarly, M3 is providing advisory and consulting services only and will not make management decisions for the Client. Although M3 may from time to time suggest or recommend options that may be available to the Client or the Disinterested Directors, the ultimate decision with respect to such options rests with the Client or the Disinterested Directors, as the case may be, and the Client or the Disinterested Directors, as the case may be, shall be solely responsible for such decision and its outcome. M3 makes no representation, promise or guarantee with respect to the outcome of any matter affecting the Client, the Disinterested Directors or the Companies.

     (e)    To the extent that the performance of the Services requires that M3 form conclusions or reach opinions, M3 shall do so without regard to or consideration of the impact that such conclusions or opinions may have on the initiation or outcome of any litigation to which the Disinterested Directors or the Companies are or may become a party.

     (f)    The Companies shall be solely responsible for the work and fees of any third parties engaged by the Client to provide services in connection with the Engagement, regardless of whether such third party was recommended to the Client by M3 or M3 is involved with the services provided by it. M3 shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.

     (g)    The provisions of this Section shall survive the termination or expiration of this Agreement.

     8.    <u>Non-Solicitation</u>. Each of the Companies covenants and agrees that, prior to the first anniversary of the termination or expiration of this Agreement, it and its affiliates will not, directly or indirectly, hire directly or as an independent contractor, or refer to another for employment, any person who was during the term of this Agreement an employee or contractor of M3 or any of its affiliated entities who was involved on behalf of M3 with the Engagement or the performance of the Services. In the event of the breach of the foregoing covenant, the Companies shall be liable to M3, and shall pay on demand to M3, liquidated damages equal to 200% of the total annual compensation of each relevant employee for the preceding calendar year (and, in the event that any such employee was not employed for the full year, the amount equal to 200% of his or her annualized compensation). The Parties and the Companies mutually agree that the actual damages that would be sustained by M3 as the result of any such breach will be substantial and will be impossible to measure accurately, and that the foregoing liquidated damage amount is fair and reasonable. Notwithstanding the foregoing, nothing contained in this Section



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

8 shall be deemed to prohibit or restrict the Companies from employing any such employee or contractor who (x) responds to any public advertising for employment without any other direct or indirect solicitation or (y) is introduced to such Company for purposes of employment by a recruitment firm who has independently contacted the candidate without any direct or indirect solicitation by, or encouragement from, such Company or any of its affiliates. The provisions of this Section shall survive the termination or expiration of this Agreement.

9.      Confidentiality. (a) Each Party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other Party in the scope of the Engagement (the "**Confidential Information**"), and neither Party will disclose any Confidential Information of the other Party to any other person or entity. For the avoidance of doubt, the term "Confidential Information" shall include (i) the terms of this Agreement, (ii) all non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, and models and (iii) any work product relating to the business of M3 or the Companies, their subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants. Notwithstanding the foregoing, the term "Confidential Information" shall not include information that (a) is or becomes publicly available other than as a result of disclosure by the receiving Party, (b) was already known to the receiving Party or (c) was independently acquired or developed by the receiving Party from a source not known by it to be bound by a confidentiality requirement with respect to such information. In performing the Services, M3 will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information.

(b)      The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, M3 from making such disclosures of Confidential Information that M3 reasonably believes are required by law or any regulatory requirement or authority, or to clear client conflicts. M3 also may disclose Confidential Information to its partners, directors, officers, employees, independent contractors, agents and advisors who have a need to know the Confidential Information for the proper performance of the Services or otherwise in connection with the Engagement. In addition, M3 will have the right to disclose to any person that it provided services to the Client or its affiliates and a general description of such services, but such disclosure shall not provide any other Confidential Information about M3's involvement with the Client.

(c)      The provisions of this Section shall survive for a period of two years following the termination or expiration of this Agreement and shall supersede any separate confidentiality or analogous agreement between M3 and the Client.

10.      Intellectual Property. Upon payment in full of all amounts owing to M3 hereunder, the Client will own all Deliverables furnished by M3 to the Client in connection with the Services, *provided* that M3 will retain ownership of (a) all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by M3 in connection with



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7EB...

the Services and (b) all other intellectual property not containing Confidential Information which has been developed by M3 outside of the provision of the Services (the "**M3 Tools**"), it being understood that M3 will have no ownership right to, and will maintain in accordance with the provisions of this Agreement the confidentiality of, any Confidential Information contained in the M3 Tools. To the extent that the Deliverables include any M3 Tools, M3 hereby grants the Client a non-exclusive, non-transferable, non-sublicensable worldwide, royalty-free license to use and copy the M3 Tools solely as part of the Deliverables and subject to the confidentiality provisions contained in this Agreement. The Client acknowledges and agrees that the M3 Tools are provided to the Client on an "as is" basis and without any warranty or condition of any kind (whether express, implied or otherwise), and including without limitation any implied warranty of merchantability or fitness for a particular purpose. The provisions of this Section shall survive the termination or expiration of this Agreement.

11.     Privilege. Notwithstanding section 10 hereof, (a) the Client has advised M3 that it believes the work product and all correspondence between the Client and M3 relating to the Engagement are protected from disclosure to third parties under the attorney work product doctrine and/or as confidential attorney-client communications that are prepared at the request of counsel, and, therefore, shall be treated by M3 as privileged and confidential. M3's work shall be performed under the direction of the Client to assist the Client in providing legal advice, analysis and consultation to the Disinterested Directors. Deliverables that M3 prepares under this Agreement shall be prominently labeled as "Privileged and Confidential; Attorney Work Product." The Disinterested Directors shall control any attorney-client privilege, including any such privilege belonging to the Companies, in connection with M3's work or privileged communications on the Engagement.

(b) Unless instructed by the Client, M3 shall not disclose any of its communications, or any of the information received or developed in the course of its work for the Client, to anyone other than the Client and the Disinterested Directors, subject to applicable law, regulations and court order. In the event of a subpoena, discovery request or other circumstance in which M3 is requested to produce or disclose its work product and files, M3 will promptly notify the Client, permit the Client to interpose any attorney work product privilege or attorney-client communications privilege that may be available, and unless the Client expressly consents to disclosure, M3 will maintain such confidentiality unless and until directed otherwise by express order or directive of a court or administrative authority overriding the Client's objections to disclosure and the lapse of any relevant appeal periods concerning such order or direction. Notwithstanding the foregoing, M3 may produce or disclose such work product or files without any such order or directive in the event that M3 is advised by independent counsel that it is at material risk of liability for failing to do so; *provided, however,* that M3 will advise the Client of such disclosure and will (at the sole expense of the Companies) use commercially reasonable efforts to seek confidential treatment of such work product or files from such court or administrative authority. M3 takes no responsibility for any court's or tribunal's failure to uphold the privilege or related doctrines.



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E5B283A88

(c) Each of the Client and the Disinterested Directors agrees and acknowledges that nothing in this Agreement (including, without limitation, any payment by the Companies of the Service Fees and other amounts owing hereunder) shall operate to modify or waive the privileged nature of the information generated by M3 in the course of this Engagement or consultation with M3 personnel as to matters relating to this Engagement.

(d) The provisions of this Section shall survive the termination or expiration of this Agreement.

12.    Indemnification. The Companies hereby irrevocably agree, on a joint and several basis, to indemnify and hold harmless the Indemnitees (as defined in Annex I to this Agreement) to the extent described in Annex I to this Agreement, with such Annex I being incorporated herein by reference and constituting an integral and enforceable part of this Agreement. The provisions of this Section (including, without limitation, the provisions of Annex I) shall survive the termination or expiration of this Agreement.

13.    Limitation on Damages. Except with respect to any damages based on gross negligence, willful misconduct, or bad faith, in no event shall M3 or any other Indemnitee be liable to the Client or its affiliates, successors, or any person claiming on behalf of or in the right of the Client, the Disinterested Directors or the Companies (including the Client's, the Disinterested Directors' and Companies' respective owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) for (i) any amount which, when taken together with all losses for which M3 and the Indemnitee are liable in connection with this Agreement or the Engagement, would exceed the amount of fees for the Services actually received by M3 from the Companies in connection with the Engagement during the immediately preceding 12 months or (ii) any special, consequential, incidental or exemplary damages or loss (or any lost profits, savings or business opportunity) (the amounts described in clauses (i) and (ii) collectively, collectively, the "*Liability Cap*"). This paragraph shall apply regardless of the nature of any claim(s) (including claims based on contract, statute, negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not M3 was advised of the possibility of the damage or loss asserted, unless M3 is determined by final and non-appealable judgment of a court of competent jurisdiction to have acted with bad faith, willful misconduct, or gross negligence. For the avoidance of doubt, the Parties hereby irrevocably agree that the Liability Cap is intended to be the total limit of liability for M3 and all other Indemnitee in the aggregate for any and all claims or demand by anyone in connection with this Agreement, the Services and the Engagement, including without limitation any liability to the Client and to any others making claims relating to the Services and the Engagement. Any such claimants shall allocate among themselves any amounts payable by M3, but the failure of the claimants to reach such an agreement shall not affect the enforceability of the Liability Cap. Under no circumstances shall the collective liability of M3 and the other Indemnitee in connection with this Agreement exceed the Liability Cap. The provisions of this Section shall survive the termination or expiration of this Agreement.



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E5E825488

14.   <u>Client Acknowledgement</u>. The Client hereby acknowledges and agrees that M3 may, in the ordinary course of its business, serve clients who are competitive with, or have conflicting interests with, the Companies. Consistent with its confidentiality obligations hereunder and its confidentiality obligations to its other clients, M3 will not advise or consult to the Client with respect to any aspect of M3's engagement or potential engagement with any other client, potential client or former client. Similarly, M3 will not advise or consult to any other client, potential client or former client with respect to any aspect of the Engagement. M3 will maintain the confidentiality of the Confidential Information in accordance with the terms of this Agreement and, similarly, will not share confidential information of any client, potential client or former client of M3 with the Client. The provisions of this Section shall survive the termination or expiration of this Agreement.

15.   <u>Miscellaneous</u>.   (a)  This Agreement (i) constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among the parties with respect to the subject matter hereof, and (ii) may be modified, amended or supplemented only by prior written agreement of each of the Parties.

(b)   The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction. If feasible, any such offending provision shall be deemed modified to be within the limits of enforceability or validity; *provided* that, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

(c)   M3's services hereunder are personal in nature and may not be assigned without the written consent of the Client. The obligations of M3 hereunder are owing only to the Client and there shall be no third-party beneficiaries of the obligations of M3 hereunder.

(d)   This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.

(e)   This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be executed and performed within such state. The Parties and the Companies hereby submit to the exclusive jurisdiction of and venue in the federal and state courts located in New York City and waive any right to trial by jury in connection with any dispute related to this Agreement. The provisions of this paragraph shall survive the termination or expiration of this Agreement.

*[Remainder of Page Intentionally Left Blank]*



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E9FB26508

This Agreement shall be binding upon the Parties and the Companies and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement which has been duly executed by the Client and the Companies, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

M3 ADVISORY PARTNERS, LP

By _____

Name: Mohsin Y. Meghji
Title: Managing Member

ACCEPTED AND AGREED as
of the date first set forth above:

KATTEN MUCHIN ROSENMAN LLP

By: _____

Name: Steven J. Reisman, Esq.
Title: Partner

ACKNOWLEGED AND AGREED
as of the date first set forth above   :

FRED ARNOLD, SOLELY IN HIS CAPACITY AS
DISINTERESTED DIRECTOR   OF CYXTERA
TECHNOLOGIES, INC.

DocuSigned by:
Fred Arnold
3C6A0FC9197C48F...
By:
Name:  Fred Arnold
Title:   Disinterested Director



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7EBF835498

ROGER MELTZER, SOLELY IN HIS
CAPACITY AS DISINTERESTED DIRECTOR
OF CYXTERA TECHNOLOGIES, INC.

By: _____
Name:  Roger Meltzer
Title:  Disinterested Director


SCOTT VOGEL, SOLELY IN HIS CAPACITY AS
DISINTERESTED DIRECTOR OF CYXTERA
TECHNOLOGIES, INC.

By: _____
Name:  Scott Vogel
Title:  Disinterested Director



ACKNOWLEGED AND AGREED
as of the date first set forth above____:

CYXTERA TECHNOLOGIES, INC.

By: _____
    Name: Victor Semah
    Title: Chief Legal Officer



Annex I

## AGREEMENTS REGARDING INDEMNIFICATION

In consideration of M3 performing the Services for the benefit of the Client, the Companies (collectively, the "**Indemnitor**") shall, on a joint and several basis, indemnify M3 and its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each (collectively hereinafter called the "**Indemnitees**") against all costs, fees, expenses, damages, and liabilities (including defense costs) associated with any pending or threatened claim, action, proceeding or investigation (a "**Claim**") relating to or arising as a result of the Engagement or the provision of the Services, the Client's or the Committee's use or disclosure of the Deliverables, or this Agreement ("**Losses**"). This provision is intended to apply regardless of the nature of any Claim (including contract, statute, any form of negligence, whether of the Client, the Committee, M3, or others, tort, strict liability or otherwise), except to the extent such Losses are determined by a final and non-appealable judgment of a court of competent jurisdiction to be the result of M3's bad faith, gross negligence or willful misconduct.

The Indemnitor shall not, without M3's prior written consent (which will not be unreasonably withheld) settle, compromise, or consent to the entry of any judgment in any pending or threatened Claim in respect of which indemnification could reasonably be sought hereunder (whether or not M3 or any other Indemnitee is an actual or potential party to such Claim), if such settlement, compromise, or consent does not include an unconditional release of each Indemnitee from all liability arising out of such Claim; *provided, however*, that the Indemnitor shall not enter into any such settlement, compromise or consent of a Claim without M3's prior written consent (which may be granted or withheld in M3's sole discretion) if such settlement, compromise or consent provides for injunctive relief against an Indemnitee or an admission of liability by an Indemnitee or would require payment of any amount by an Indemnitee or any insurer of an Indemnitee. The Indemnitor shall not be liable hereunder to any Indemnitee for any amount paid or payable in the settlement of any action, proceeding or investigation entered into by such Indemnitee without the Indemnitor's written consent.

Upon receipt by an Indemnitee of actual notice of a Claim against such Indemnitee in respect of which indemnity may be sought hereunder, such Indemnitee shall promptly notify the Indemnitor with respect thereto. In addition, an Indemnitee shall promptly notify the Indemnitor after any action is commenced (by way of service with a summons or other legal process giving information as to the nature and basis of the claim) against such Indemnitee in respect of which indemnity may be sought hereunder. In any event, any delay or failure to notify the Indemnitor shall not relieve the Indemnitor from any liability which the Indemnitor may have on account of this indemnity or otherwise, except to the extent, and only to the extent, that the Indemnitor shall have been materially prejudiced by such delay or failure.



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

Indemnitor shall advance all expenses indemnifiable hereunder that are reasonably incurred by or on behalf of each Indemnitee in connection with any Claim within thirty (30) days after receipt by Indemnitor of a statement or statements from Indemnitee requesting such advance or advances from time to time, whether prior to or after final disposition of such Claim. Such statement or statements shall reasonably evidence the expenses incurred by Indemnitee and shall include or be preceded or accompanied by a written undertaking by or on behalf of Indemnitee to repay any expenses advanced if it shall ultimately be determined by a final and non-appealable judgment of a court of competent jurisdiction that Indemnitee is not entitled to be indemnified against such expenses. Any advances and undertakings to repay pursuant to this paragraph shall be unsecured and interest free.

To the extent that the Indemnitor so elects, it shall be entitled to assume the defense, with counsel selected by the Indemnitor (and approved by M3, with such approval not to be unreasonably withheld), of any action that is the subject of the Claim in respect of which indemnity may be sought. After notice to the Indemnitees of its election to assume the defense thereof, the Indemnitor will not be liable to the Indemnitee under this Agreement for any expenses subsequently incurred by such Indemnitee in connection with the defense thereof except as otherwise provided below. Such Indemnitee shall have the right to employ counsel of its choice in such Claim, but the fees and expenses of such counsel incurred after notice from the Indemnitor of the assumption of the defense thereof shall be at the expense of the Indemnitee unless the employment of counsel by the Indemnitee has been authorized by the Indemnitor, in which case the reasonably incurred fees and expenses of such counsel of the Indemnitee shall be at the expense of the Indemnitor.

The Client agrees that neither M3 nor any other Indemnitee shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Client, the Committee or any person or entity asserting claims on behalf of or in right of the Client, the Committee or the Companies caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, except for losses, claims, damages, penalties or liabilities incurred by the Client which are finally determined by a non-appealable judgment of a court of competent jurisdiction to have resulted primarily and directly from the bad faith, willful misconduct or gross negligence of M3 or any such other Indemnitee, as the case may be. In no event, however, shall M3's or any other Indemnitee's liability to the Client or their respective affiliates, successors, or any person claiming on behalf of or in the right of the Client (including the Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) exceed the Liability Cap.

In the event that any M3 personnel are requested or required to appear as a witness in connection with any claim, action or proceeding relating to or arising as a result of the Engagement or the provision of the Services, the Client's or the Committee's use or disclosure of the Deliverables, or this Agreement, the Indemnitor shall, to the extent permitted by applicable law, reimburse M3 for all reasonable and documented out-of-pocket expenses incurred by it in connection with such personnel appearing and preparing to appear as a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel, and to compensate M3 at a rate equal to M3's then standard hourly rate for the relevant personnel for each day that such personnel is



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

involved in preparation, discovery proceedings or testimony pertaining to such Claim. Additionally, M3 will have the right to obtain advice from independent legal counsel with respect to its actual or potential obligations and liability hereunder and the Indemnitor will promptly reimburse M3 for the reasonable out-of-pocket fees and expenses paid by M3 on account thereof.

The provisions of this Annex I shall be deemed to be an integral part of this Agreement to which this Annex I is affixed and shall survive the termination or expiration of this Agreement for any reason. The provisions of this Annex I shall be binding upon the Client, the Committee, the Companies and their respective successors and assigns.



**<u>Exhibit B – Summary of Time Detail by Task Category by Professional</u>**

*Case Administration*
On an ongoing basis, M3 attended various internal meetings and engaged in other forms of correspondence regarding general case administration.

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Meghji, Mohsin | Managing Partner | $1,350 | - | $0.00 |
| Manning, Matthew | Managing Director | $1,150 | 0.8 | $920.00 |
| Bostwick, Brian | Vice President | $750 | 0.5 | $375.00 |
| Biaggi, Mario | Associate | $550 | 0.2 | $110.00 |
| **Total** | | | **1.5** | **$1,405.00** |

*Average Billing Rate*                                                                           *$936.67*

| Date | Name | Task Category | Detail | Hours |
|---|---|---|---|---|
| 10/2/2023 | Biaggi, Mario | Case Administration | Call with counsel re: presentation | 0.2 |
| 10/2/2023 | Bostwick, Brian | Case Administration | Calls with M. Rosella, D. Barnowski (Katten), M. Manning, M. Biaggi (M3) to discuss analysis | 0.5 |
| 10/2/2023 | Manning, Matthew | Case Administration | Discussions with Katten team and B. Bostwick, M. Biaggi (M3) to discuss presentation and related analysis | 0.6 |
| 10/11/2023 | Manning, Matthew | Case Administration | Correspondence with L. Miranda (Katten) re: special committee meeting | 0.2 |

*Fee Applications*

M3 prepared the retention application as well as its monthly fee statement in compliance with its retention order.

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Meghji, Mohsin | Managing Partner | $1,350 | - | $0.00 |
| Manning, Matthew | Managing Director | $1,150 | 2.9 | $3,335.00 |
| Bostwick, Brian | Vice President | $750 | - | $0.00 |
| Biaggi, Mario | Associate | $550 | - | $0.00 |
| **Total** | | | **2.9** | **$3,335.00** |

*Average Billing Rate* $1,150.00

| Date | Name | Task Category | Detail | Hours |
|---|---|---|---|---|
| 10/24/2023 | Manning, Matthew | Fee Applications | Prepare and review first monthly fee application for August and September | 1.2 |
| 10/25/2023 | Manning, Matthew | Fee Applications | Prepare and review first monthly fee application for August and September (1.1); discussion with B. Bostwick (M3) re: same (.3); correspondence with Katten team and M3 team re: same (.3) | 1.7 |

***Potential Causes of Action***

On an ongoing basis, M3 has conducted an investigation into whether any potential causes of action exist with respect to certain prepetition corporate transactions. The investigation has involved a broad spectrum of financial analyses around historical corporate transactions and other issues that may result in potential causes of action. M3 has reviewed historical public and non-public information, and prepared reports to present findings to the Disinterested Directors.

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Meghji, Mohsin | Managing Partner | $1,350 | - | $0.00 |
| Manning, Matthew | Managing Director | $1,150 | 2.1 | $2,415.00 |
| Bostwick, Brian | Vice President | $750 | 10.0 | $7,500.00 |
| Biaggi, Mario | Associate | $550 | 11.2 | $6,160.00 |
| **Total** | | | **23.3** | **$16,075.00** |

*Average Billing Rate* $689.91

| Date | Name | Task Category | Detail | Hours |
|---|---|---|---|---|
| 10/2/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: solvency presentation text edits | 0.5 |
| 10/2/2023 | Biaggi, Mario | Potential Causes of Action | Prepare for call with counsel re: draft presentation | 0.7 |
| 10/2/2023 | Biaggi, Mario | Potential Causes of Action | Update presentation based on feedback from B. Bostwick (M3) | 1.9 |
| 10/2/2023 | Biaggi, Mario | Potential Causes of Action | Final review of presentation | 1.9 |
| 10/2/2023 | Bostwick, Brian | Potential Causes of Action | Review presentation and related analysis | 2.9 |
| 10/2/2023 | Bostwick, Brian | Potential Causes of Action | Review solvency analysis excel files | 2.1 |
| 10/2/2023 | Manning, Matthew | Potential Causes of Action | Review presentation and related analysis including underlying assumptions and outputs | 0.9 |
| 10/9/2023 | Biaggi, Mario | Potential Causes of Action | Review counsel's final presentation for suggested edits | 1.9 |
| 10/9/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: final presentation | 0.2 |
| 10/9/2023 | Biaggi, Mario | Potential Causes of Action | Continued review counsel's final presentation for suggested edits | 1.8 |

| 10/9/2023 | Biaggi, Mario | Potential Causes of Action | Call with M. Manning and B. Bostwick (M3) re: final presentation | 0.4 |
|---|---|---|---|---|
| 10/9/2023 | Biaggi, Mario | Potential Causes of Action | Review of final report in preparation to send to counsel | 1.9 |
| 10/9/2023 | Bostwick, Brian | Potential Causes of Action | Review of final materials | 2.1 |
| 10/9/2023 | Bostwick, Brian | Potential Causes of Action | Call with M. Manning, M. Biaggi (M3) regarding solvency analysis | 0.5 |
| 10/9/2023 | Bostwick, Brian | Potential Causes of Action | Review M3 materials | 2.4 |
| 10/9/2023 | Manning, Matthew | Potential Causes of Action | Discussion with B. Bostwick, M. Biaggi (M3) re: solvency analysis | 0.4 |
| 10/12/2023 | Manning, Matthew | Potential Causes of Action | Participate in weekly special committee meeting | 0.8 |