**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**FEE APPLICATION COVER SHEET**
**FOR THE PERIOD AUGUST 29, 2023 THROUGH NOVEMBER 17, 2023**

| | |
|---|---|
| In re Cyxtera Technologies Inc., *et al.* | Applicant:  M3 Advisory Partners, LP |
| Case No. 23-14853 (JKS) | Client:  Fred Arnold, Roger Meltzer, and Scott Vogel, in their capacity as Disinterested Directors of Cyxtera Technologies, Inc. |
| Chapter 11 | Case Filed:  June 4, 2023 |

**COMPLETION AND SIGNING OF THIS FORM CONSTITUTES A CERTIFICATION UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746.**

**RETENTION ORDER ATTACHED.**

_/s/ Mohsin Y. Meghji_          1/25/2024
Mohsin Y. Meghji                Date

<div style="border:1px solid black; text-align:center;">

**SECTION I
FEE SUMMARY**

</div>

<u>First and Final Fee Application Covering the Period August 29, 2023, through November 17, 2023:</u>

| | | |
|---|---|---|
| Fee Totals | | $311,775.00 |
| Disbursements Totals | | $0.00 |
| Total Fee Application | | $311,775.00 |
| Fee Estimate November 18, 2023 through Dismissal Date | | $0.00 |

| | **FEES** | **EXPENSES** |
|---|---|---|
| Total Previous Fees Requested: | $311,775.00 | $0.00 |
| Total Fees Allowed to Date: | $249.420.00 | $0.00 |
| Total Retainer Remaining: | $0.00 | $0.00 |
| Total Holdback (If Applicable): | $62,355.00 | $0.00 |
| Total Received by Applicant: | $249,420.00 | $0.00 |

| SECTION II |
| --- |
| **CASE HISTORY** |

(1)    Date case filed:  June 4, 2023

(2)    Chapter under which case commenced:  Chapter 11

(3)    Date of retention: October 12, 2023, effective as of August 29, 2023.  *See* **Exhibit B**.

If limit on number of hours or other limitations to retention, set forth:  N/A

(4)    Summarize in brief the benefits to the estate and attach supplements as needed:  *See* narrative portion of fee application.

(5)    Anticipated distribution to creditors:

(a)    Administration expense:  paid in full.

(b)    Secured creditors:  To be paid in accordance with the *Fourth Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 694, Exhibit A] (the "Plan")

(c)    Priority creditors:  To be paid in accordance with the Plan.

(d)    General unsecured creditors:  To be paid in accordance with the Plan.

(6)    Final disposition of case and percentage of dividend paid to creditors (if applicable):  This is the first and final compensation application.

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al.*, | Case No. 23-14853 (JKS) |
| Debtors.[1] | (Jointly Administered) |

## FIRST AND FINAL FEE APPLICATION
## OF M3 ADVISORY PARTNERS, LP AS INDEPENDENT FINANCIAL
## ADVISOR TO CYXTERA TECHNOLOGIES, INC. ON BEHALF OF AND AT THE
## SOLE DIRECTION OF THE DISINTERESTED DIRECTORS FOR THE FEE PERIOD

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
      claims and noticing agent at https://www.kccllc.net/cyxtera.  The location of Debtor Cyxtera Technologies, Inc.'s
      principal place of business and the Debtors' service address in these chapter 11 cases is: 2333 Ponce de Leon
      Boulevard, Ste. 900, Coral Gables, Florida 33134.

**FROM AUGUST 29, 2023 THROUGH AND INCLUDING NOVEMBER 17, 2023**

M3 Advisory Partners, LP ("M3"), independent financial advisor to Cyxtera Technologies, Inc. ("Cyxtera" or the "Company"), on behalf of and at the sole direction of Fred Arnold, Roger Meltzer, and Scott Vogel (each a "Disinterested Director" and together, the "Disinterested Directors"), in their capacity as Disinterested Directors of Cyxtera, comprising the special committee (the "Special Committee") of Cyxtera's board of directors (the "Board"), submits its first and final fee application (the "Fee Application") for allowance of compensation for professional services provided in the amount of $311,775.00 for the period from August 29, 2023 through November 17, 2023 (the "Fee Period").  In support of this Fee Application, M3 submits the declaration of Matthew Manning, Managing Director at M3 (the "Manning Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference.  In further support of this Fee Application, M3 respectfully states as follows.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Fee Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2016-1 and 2016-3 of the Local Bankruptcy Rules for

the District of New Jersey (the "Local Rules"), and the *Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court*, dated July 21, 2023 [Docket No. 305] (the "Administrative Fee Order").

### Background

4.      On June 4, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description of the Debtors, their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases are set forth in greater detail in the *Declaration of Eric Koza, Chief Restructuring Officer of Cyxtera Technologies, Inc., in Support of the Chapter 11 Petitions and First Day Motions* [Docket No. 20], which is incorporated herein by reference.

5.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On June 6, 2023, the Court entered an order [Docket No. 71] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

6.      On June 21, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 133].

7.      On July 21, 2023, the Court entered the Administrative Fee Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

8.      On November 17, 2023, the Court entered the *Revised Findings of Fact, Conclusions of Law, and Order Confirming the Fourth Amended Joint Plan of Reorganization of*

*Cyxtera Technologies, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy*

*Code* (the "<u>Confirmation Order</u>," and such hearing, the "<u>Confirmation Hearing</u>")

[Docket No. 718], pursuant to which the Court approved and confirmed the Plan.

      9.      On January 12, 2024, the Plan Effective Date occurred [Docket No. 855].

## <u>Scope of the Application</u>

| | |
|---|---|
| **Name of Applicant** | M3 Advisory Partners, LP |
| **Name of Client** | Cyxtera Technologies, Inc. on behalf and at the sole direction of the Disinterested Directors |
| **Petition Date** | June 4, 2023 |
| **Retention Date** | Order signed October 12, 2023, effective August 29, 2023. *See* Retention Order at Docket No. 593, a copy of which is attached hereto as **Exhibit B**. |
| **Time Period Covered by Application** | August 29, 2023 to November 17, 2023 |
| **Terms and Conditions of Employment** | Hourly compensation |
| **Interim / Final** | First and final application under 11 U.S.C. § 331. |
| **Date and Terms of Administrative Fee Order** | On July 21, 2023, this Court entered the Administrative Fee Order. Pursuant to the Administrative Fee Order, Professionals, as defined therein, must file monthly fee statements with the Court. If there are no objections to a monthly fee statement, Professionals are entitled to payment of eighty (80) percent of the fees and one hundred (100) percent of the expenses requested in their monthly fee statement. The Administrative Fee Order further provides that Professionals must file interim fee application(s) for allowance of compensation and reimbursement of expenses of the amount sought in their monthly fee statements, including the twenty (20) percent holdback pursuant to section 331 of the Bankruptcy Code at four-month intervals or such other intervals directed by the Court. |
| **11 U.S.C. § 330** | M3 seeks compensation under 11 U.S.C. § 330. |
| **Total Compensation (Fees) Sought this Period** | $311,755.00 |
| **Total Expenses Sought this Period** | $0.00 |
| **Total Compensation Approved by Interim Order to Date** | $0.00 |
| **Total Expenses Approved by Interim Order to Date** | $0.00 |
| **Blended Rate in This Application** | $723.54 |

| | |
|---|---|
| **Blended Rate in This Application for All Timekeepers** | $723.54 |
| **Compensation Sought in This Application Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed** | $249,420.00 |
| **Expenses Sought in This Application Already Paid Pursuant to a Monthly Compensation Order But Not Yet Allowed** | $0.00 |
| **If Applicable, Number of Professionals in This Application Not Included in Staffing Plan Approved by Client** | N/A |
| **If Applicable, Difference Between Fees Budgeted and Compensation Sought for This Period** | N/A |
| **Number of Professionals Billing Fewer Than 15 Hours to the Case During This Period** | 1 |
| **Are Any Rates Higher Than Those Approved or Disclosed at Retention? If Yes, Calculate and Disclose the Total Compensation Sought in This Application Using the Rates Originally Disclosed in the Retention Application** | [ ] Yes        **[X]** No |
| | N/A |

### Preliminary Statement

8.    During the Fee Period, M3 diligently and efficiently provided financial advisory services on behalf of and at the sole direction of the Disinterested Directors with respect to a variety of complex matters in these chapter 11 cases, including, without limitation:

    a.    attended meetings with Fred Arnold, Roger Meltzer, and Scott Vogel, in their capacity as Disinterested Directors of Cyxtera, comprising the Special Committee the Board, in connection with the Special Committee's independent investigation with respect to potential claims or causes of action of the Debtors, if any, against any Related Parties[2] (the "Independent Investigation");

    b.    submitted targeted document and information requests to the Debtors in connection with financial analyses performed as part of the Independent Investigation;

    c.    reviewed and analyzed documents and information produced by the Debtors in connection with the Independent Investigation;

---

[2]    The term "Related Party" as used herein shall have the meaning ascribed to it in the *Application of Debtor Cyxtera Technologies, Inc. for Entry of an Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Cyxtera Technologies, Inc. on Behalf of and at the Sole Direction of the Disinterested Directors Effective as of August 29, 2023* (the "Retention Application") [Docket No. 565].

5

d.  conducted targeted financial analysis regarding various issues with respect to potential claims or causes of action of the Debtors, if any, against any Related Parties in connection with the Independent Investigation;

e.  reviewed and analyzed matters related to certain of Cyxtera's prepetition corporate transactions in connection with the Independent Investigation;

f.  advised the Disinterested Directors regarding various matters in the chapter 11 cases concerning the Independent Investigation;

g.  coordinated with Katten Muchin Rosenman LLP ("Katten"), counsel to the Disinterested Directors, regarding various workstreams in connection with the Independent Investigation;

h.  prepared the Retention Application, as well as monthly fee statements for M3; and

i.  attended to calls, correspondence, and other matters in respect of all of the foregoing.

9.      With respect to each of these matters and issues, the professional services M3 performed were reasonable, necessary, and appropriate.  In light of the complexity of the issues involved in these chapter 11 cases, M3 maintained a leanly staffed team comprised of qualified professionals that completed the tasks with which they were charged in an efficient and effective manner.  Accordingly, M3 requests that the Court grant the relief requested herein.

## **Case Status Summary**

10.     During the Fee Period, M3 provided financial advisory services on behalf of and at the sole direction of the Disinterested Directors professionally and diligently, advising them on the Independent Investigation, the results of which were essential to the Debtors' ability to proceed with confirmation of the Plan.

11.     Given the Debtors' accomplishments during the Fee Period and the complexities of these chapter 11 cases, M3 submits that the compensation sought herein for the necessary and beneficial professional services M3 provided on behalf of and at the sole direction of the

Disinterested Directors during the Fee Period is reasonable and appropriate, commensurate with the scale, nature, and complexity of these chapter 11 cases, and should be approved.

**The Debtors' Retention of M3**

12.     On April 24, 2023, the Board unanimously adopted resolutions (a) appointing Fred Arnold and Roger Meltzer as Disinterested Directors of the Board, (b) constituting the Disinterested Directors as the Special Committee, and (c) delegating specific authorities to the Special Committee (the "April 24, 2023 Resolutions").

13.     On May 19, 2023, the Board unanimously adopted resolutions (a) appointing Scott Vogel as a Disinterested Director of the Board, and (b) appointing Scott Vogel to the Special Committee (the "May 19, 2023 Resolutions" and, together with the "April 24, 2023 Resolutions," collectively, the "Resolutions").

14.     Pursuant to the Engagement Letter, effective as of August 29, 2023, (the "Engagement Letter"), the Disinterested Directors directed Katten to engage M3 to render independent financial advisory services on behalf of the Disinterested Directors in connection with the exercise of the Disinterested Directors' fiduciary duties in carrying out their delegated authority pursuant to the Resolutions.

15.     On October 12, 2023, the Court entered the *Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Cyxtera Technologies, Inc. on Behalf of and at the Sole Direction of the Disinterested Directors Effective as of August 29, 2023* [Docket No. 593] (the "Retention Order").

16.     The Retention Order authorizes the Debtors to compensate and reimburse M3 in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Administrative Fee Order, and any other applicable procedures and orders of the Court.  *See* Retention Order, ¶ 5.

7

The Retention Order also authorizes the Debtors to compensate M3 for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases, subject to application to this Court. *See* Retention Order, ¶ 3. The particular terms of M3's engagement are detailed in the Engagement Letter, attached hereto as <u>Exhibit 1</u> to the Retention Order, which is attached hereto as **<u>Exhibit B</u>**.

17. The Retention Order authorizes M3 to provide the independent services as described in the Retention Application and the Engagement Letter.

**<u>Affirmative Statement of No Adverse Interest</u>**

18. To the best of the Debtors' and the Disinterested Directors' knowledge and as disclosed in the *Declaration of Matthew Manning in Support of the Application of Debtor Cyxtera Technologies, Inc. for Entry of an Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Cyxtera Technologies, Inc. on Behalf of and at the Sole Direction of the Disinterested Directors Effective as of the August 29, 2023* [Docket No. 565, <u>Exhibit B</u>] (the "<u>M3 Declaration</u>"), (a) M3 does not hold or represent an interest adverse to the Debtors or their estates with respect to the matters on which M3 was retained and (b) M3 has no connection to the Debtors, their creditors, or other parties in interest, except as disclosed in the M3 Declaration.

19. In the M3 Declaration, M3 disclosed its connections to parties in interest that it was able to ascertain using its reasonable efforts.

20. M3 performed the professional services for which it is seeking compensation on behalf of and at the sole direction of the Disinterested Directors, and not on behalf of any official committee, creditor, or other entity.

21.      M3 received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.

22.      Pursuant to Bankruptcy Rule 2016(b), M3 has not shared, nor has M3 agreed to share (a) any compensation it has received or may receive with another party or person or (b) any compensation another person or party has received or may receive.

### Summary of Compliance with the Administrative Fee Order

23.      This Fee Application has been prepared in accordance with the Administrative Fee Order.

24.      M3 seeks final allowance and approval of compensation for professional services rendered on behalf of and at the sole direction of the Disinterested Directors during the Fee Period in the aggregate amount of $311,775.00.  During the Fee Period, M3 professionals expended a total of 430.9 hours for which compensation is requested.  In accordance with the Administrative Fee Order, as of the date hereof, M3 has received payments totaling $249,420.00 ($249,420.00 of which was for services provided and $0.00 of which was for reimbursement of expenses) for the Fee Period.  Accordingly, by this Fee Application, and to the extent such amounts have not been paid by the time of the hearing on this Fee Application, M3 seeks payment of the remaining $62,355.00, which amount represents the entire amount of unpaid fees and expenses incurred between August 29, 2023 through and including November 17, 2023.

### Fees Incurred During Fee Period

**A.      Customary Billing Disclosures**.

25.      The hourly rates and corresponding rate structure M3 has used in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that M3 uses in other chapter 11 matters, as well as similar complex matters whether in court or otherwise,

regardless of whether a fee application is required.  These rates and the rate structure reflect that such chapter 11 and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

**B.**     **Fees Incurred During Fee Period**.

26.     In the ordinary course of M3's practice, M3 maintains computerized records of the time expended to render the professional services on behalf of and at the sole direction of the Disinterested Directors.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit C** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each professional for whose work on these chapter 11 cases compensation is sought;

- the aggregate time expended and fees billed by each professional during the Fee Period;

- the hourly billing rate for each professional at M3's current billing rates; and

- a calculation of total compensation requested using the rates disclosed in the Retention Application.

**Summary of Services Rendered During the Fee Period**

27.     As discussed above, during the Fee Period, M3 provided important professional services on behalf of and at the sole direction of the Disinterested Directors in connection with these chapter 11 cases.  These services were often performed under time constraints and were necessary to address a multitude of critical issues in support of the Disinterested Directors' delegated authority.

28.     To provide a meaningful summary of M3's services provided on behalf of and at the sole direction of the Disinterested Directors, M3 has established, in accordance with its internal

10

billing procedures, certain subject matter categories (each, a "Task Category") in connection with these chapter 11 cases.  The following is a summary of the fees and hours billed for each Task Category in the Fee Period:

**Summary of Time Detail by Task Category**

| Task Category | Hours | Fees |
|---|---|---|
| Analysis of Docket Filings & Debtor Materials | 36.1 | $28,695.00 |
| Case Administration | 26.9 | $23,835.00 |
| Fee Applications | 7.7 | $8,855.00 |
| Potential Causes of Action | 360.2 | $250,390.00 |
| **Total** | **430.9** | **$311,775.00** |

29.    The following is a summary, by Task Category, of the professional services provided by M3 during the Fee Period.  The detailed descriptions demonstrate that M3 was involved in performing services on behalf of and at the sole direction of the Disinterested Directors on a daily basis, often including night and weekend work, to meet the needs of the Disinterested Directors in these chapter 11 cases.  M3's records of time expended providing professional services during the Fee Period on behalf of and at the sole direction of the Disinterested Directors are attached hereto as **Exhibit D**.

(a)    **Analysis of Docket Filings & Debtor Materials**

Total Fees:    $28,695.00
Total Hours:    36.1

30.    This Task Category includes time spent by M3 professionals during the Fee Period reviewing docket filings and documents and materials provided by the Debtors and their advisors.

      **(b)**      <u>**Case Administration**</u>

          Total Fees:   $23,835.00
          Total Hours:  26.9

31.     This Task Category includes time spent by M3 professionals during the Fee Period attending various internal meetings and engaging in other forms of correspondence regarding general case administration.

      **(c)**      <u>**Fee Applications**</u>

          Total Fees:   $8,855.00
          Total Hours:  7.7

32.     This Task Category includes time spent by M3 professionals during the Fee Period preparing M3's retention application and monthly fee statements in compliance with its retention order.

      **(d)**      <u>**Potential Causes of Action**</u>

          Total Fees:   $250,390.00
          Total Hours:  360.2

33.     This Task Category includes time spent by M3 professionals during the Fee Period in connection with the Independent Investigation, which involved an assessment of potential claims and causes of action of the Debtors against any Related Parties.  The Independent Investigation involved a broad spectrum of financial analyses around historical corporate transactions and other issues to assist the Special Committee in assessing potential claims and causes of action.  In performing these financial analyses on behalf of the Disinterested Directors, M3 reviewed historical public and non-public information and prepared reports to present its findings to the Disinterested Directors.

## Reasonable and Necessary Services Provided by M3

**A.**    **Reasonable and Necessary Fees Incurred in Providing Services to the Debtors.**

34.    The foregoing professional services provided by M3 on behalf of and at the sole direction of the Disinterested Directors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

35.    M3 has a wealth of experience providing financial advisory services and has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.  M3's expertise includes significant experience assisting distressed companies with asset and enterprise valuation, the evaluation, negotiation, and resolution of complex claims that may arise as a consequence of the restructuring process, and analysis of financial projections and businesses.

## M3's Requested Compensation Should be Allowed

36.    Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . ."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)    the time spent on such services;
>
> (b)    the rates charged for such services;
>
> (c)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(e)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(f)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

37.    In determining the reasonableness of fees, courts routinely employ the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See Staiano v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109, 123 (3d Cir. 1999); *see In re Redington*, No. 16-18407, 2018 WL 6444387, at *8 (Bankr. D.N.J. Dec. 6, 2018) (applying the *Johnson* factors).  These factors include:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the service properly; (4) the preclusion of employment by the professional due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the professionals; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See Lan Assocs.*, 192 F.3d at 123 n.8.

38.    Here, M3 devoted a significant amount of time and effort to addressing the numerous matters affecting the Disinterested Directors and the Independent Investigation.  M3 respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary to effectively advise the Disinterested Directors, and were performed economically, effectively, and efficiently, and that M3's work benefited Cyxtera and its estate and stakeholders.  Because M3's services benefitted the Debtors' estates, M3 respectfully

submits that it performed "actual and necessary" services compensable under section 330 of the

Bankruptcy Code.

39.     Further, M3 submits that consideration of the relevant factors enumerated in *Lan*

*Assocs.*, 192 F.3d at 123 n.8, establishes that the compensation requested is reasonable in light of

the nature, extent, and value of such services to Cyxtera:

    a.    *The Time and Labor Required.*  The professional services rendered by M3 on behalf of and at the sole direction of the Disinterested Directors have required the expenditure of significant time and effort, as well as a high degree of professional competence and expertise, in order to address the complex issues encountered in the Independent Investigation by the Debtors in these cases with skill and dispatch.  M3 respectfully represents that the services rendered by it were performed efficiently, effectively, and economically.

    b.    *The Novelty and Difficulty of Questions.*  The cases have presented numerous novel financial questions arising from complicated factual circumstances, both generally and compared to other bankruptcy cases.

    c.    *The Skill Required to Perform the Services Properly.*  M3 believes that its recognized expertise in the area of financial advisory services and reorganization contributed to its ability to advise the Disinterested Directors efficiently and effectively in these chapter 11 cases.

    d.    *The Preclusion of Other Employment by Applicant Due to Acceptance of the Case.*  M3's work on behalf of and at the sole direction of the Disinterested Directors, did not preclude its acceptance of new clients. However, the complex issues that arose in these cases required attention on a continuing basis, requiring M3's professionals to commit portions of their time to these chapter 11 cases.

    e.    *The Customary Fee.*  The fee sought herein is based on M3's normal hourly rates for services of this kind.  M3 respectfully submits that the hourly rates of its professionals are not unusual given the time expended in providing services on behalf of and at the sole direction of the Disinterested Directors. M3's hourly rates and the fees requested herein are commensurate with fees M3 has been awarded in other chapter 11 cases, as well as with fees charged by other financial advisory professionals of comparable experience.

    f.    *Whether the Fee is Fixed or Contingent.*  Not applicable.

    g.    *Time Limitations Imposed by Client or other Circumstances.*  Not applicable.

h.    *The Amount Involved and Results Obtained.*  M3 respectfully submits that the amount of fees for which compensation is sought is reasonable under the circumstances given the complex issues related to the Independent Investigation that had to be addressed during the Fee Period.

i.    *The Experience, Reputation, and Ability of the Professionals.*  M3 is a professional association that renders services in the financial advisory field. M3 has advised debtors, stakeholder committees, secured and unsecured creditors, independent or disinterested directors, special committees, shareholders, and others in various Bankruptcy Courts throughout the country.

j.    *The Undesirability of the Case.*  Not applicable.

k.    *The Nature and Length of Professional Relationship.*  M3 rendered financial advisory services on behalf of and at the sole direction of the Disinterested Directors, in connection with these bankruptcy cases effective as of August 29, 2023.

l.    *Awards in Similar Cases*.  As previously indicated, the fees sought herein are commensurate with fees M3 has been awarded in other chapter 11 cases.

40.    M3 respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates.  M3 further believes that the services performed on behalf of and at the sole direction of the Disinterested Directors were performed economically, effectively, and efficiently, and the results obtained benefited the Debtors, their estates, and constituents.  M3 further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, the Disinterested Directors, and all parties in interest.

41.    During the Fee Period, M3's hourly billing rates for professionals ranged from $550 to $1,350.  The hourly rates and corresponding rate structure M3 used in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that M3 uses in other chapter 11 matters, as well as similar complex matters whether in court or otherwise, regardless of whether a fee application is required.  These rates and the rate structure reflect that such chapter 11 and other

16

complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

42.    In sum, M3 respectfully submits that the professional services provided by M3 on behalf of and at the sole direction of the Disinterested Directors during these chapter 11 cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by M3, the nature and extent of M3's services provided, the value of M3's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.    Accordingly, M3 respectfully submits that approval of the compensation sought herein is warranted and should be approved.

## **Reservation of Rights and Notice**

43.    It is possible that some professional time expended, or expenses incurred, during the Fee Period are not reflected in the Fee Application.  M3 reserves the right to include such amounts in future fee applications.  In addition, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee for the District of New Jersey; (b) Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc First Lien Group of the Debtors' prepetition term loan facilities; (c) the Committee; (d) the agents under each of the Debtors' prepetition secured credit facilities and counsel thereto; (e) the office of the attorney general for each of the states in which the Debtors operate; (f) the United States Attorney's Office for the District of New Jersey; (g) the Securities and Exchange Commission; (h) the Internal Revenue Service; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Pursuant to the Administrative Fee Order, any party, other than the Notice Parties, that wishes to object to the Fee Application, must file its objection with the Court, with a copy to Chambers and serve it on the affected professional and the Notice Parties so that it is actually received on or before February 8, 2024 at 4:00 p.m. (Eastern Time).

### No Prior Request

44.    No prior application for the relief requested herein has been made to this or any

other court.


WHEREFORE, M3 respectfully requests that the Court enter an order: (a) awarding M3

final allowance and approval of compensation for professional services provided during the Fee

Period in the amount of $311,775.00; (b) authorizing and directing the Debtors to remit payment

to M3 for such fees; and (c) granting such other relief as is appropriate under the circumstances.

Dated: January 25, 2024

/s/   *Mohsin Y. Meghji*
Mohsin Y. Meghji
Managing Member
M3 Advisory Partners, LP

## Exhibit A

**Manning Declaration**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al.*, | Case No. 23-14853 (JKS) |
| Debtors.[1] | (Jointly Administered) |

### DECLARATION OF MATTHEW MANNING IN SUPPORT OF THE
### FIRST AND FINAL FEE APPLICATION OF M3 ADVISORY PARTNERS, LP AS
### INDEPENDENT FINANCIAL ADVISOR TO CYXTERA TECHNOLOGIES, INC. ON
### BEHALF OF AND AT THE SOLE DIRECTION OF THE DISINTERESTED
### DIRECTORS FOR THE FEE PERIOD FROM AUGUST 29, 2023 THROUGH
### NOVEMBER 17, 2023

I, Matthew Manning being duly sworn, state the following under penalty of perjury:

1.      I am a Managing Director of M3 Advisory Partners, LP ("M3"), which has a place of business at 1700 Broadway, 19th Floor, New York, NY 10019. M3 is an independent corporate turnaround and advisory firm providing operational, strategic, and financial advice for its clients.

2.      I am duly authorized to make this declaration (the "Manning Declaration") on behalf of M3 in connection with the *First and Final Fee Application of M3 Advisory Partners, LP as Independent Financial Advisor to Cyxtera Technologies, Inc. on Behalf of and at the Sole Direction of the Disinterested Directors for the Fee Period from August 29, 2023 through November 17, 2023* (the "Fee Application"),[2] in connection with the above-referenced chapter 11 cases.

---

[1]      A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/cyxtera. The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is: 2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

[2]      Capitalized terms used in this Manning Declaration but not immediately defined have the meanings given to such terms in the Fee Application.

3.      I have personally performed professional services rendered by M3 as independent financial advisor on behalf of and at the sole direction of the Disinterested Directors, and I am familiar with the work performed on behalf of the Disinterested Directors by the professionals at M3.

4.      I have read the foregoing Fee Application.  To the best of my knowledge, information, and belief, the statements contained in the Fee Application are true and correct.  In addition, I believe that the Fee Application complies with Local Rules 2016-1 and 2016-3.

5.      In connection therewith, I hereby certify that:

a)      to the best of my knowledge, information, and belief, formed after reasonable inquiry, the fees and disbursements sought in the Fee Application are permissible under the relevant rules, court orders, and Bankruptcy Code provisions, except as specifically set forth herein;

b)      except to the extent disclosed in the Fee Application, the fees and disbursements sought in the Fee Application are billed at rates customarily employed by M3 and generally accepted by M3's clients.  In addition, none of the professionals seeking compensation varied their hourly rate based on the geographic location of the Debtors' cases;

c)      in accordance with Rule 2016(a) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 504, no agreement or understanding exists between M3 and any other person for the sharing of compensation to be received in connection with the above cases except as authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, and Local Rules; and

d)      all services for which compensation is sought were professional services on behalf of and at the sole direction of the Disinterested Directors, and not on behalf of any other person.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 25, 2024                                  Respectfully submitted,

                                                         _/s/ Matthew Manning_____
                                                         Matthew Manning
                                                         Managing Director at M3 Advisory Partners, LP

## **Exhibit B**

**Retention Order**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Edward O. Sassower, P.C. (admitted *pro hac vice*)<br>Christopher Marcus, P.C. (admitted *pro hac vice*)<br>Derek I. Hunter (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br>edward.sassower@kirkland.com<br>christopher.marcus@kirkland.com<br>derek.hunter@kirkland.com | **Order Filed on October 12, 2023**<br>**by Clerk**<br>**U.S. Bankruptcy Court**<br>**District of New Jersey** |
| **COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq.<br>Warren A. Usatine, Esq.<br>Felice R. Yudkin, Esq.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Telephone: (201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>fyudkin@coleschotz.com | |
| *Co-Counsel for Debtors and*<br>*Debtors in Possession* | |

| | |
|---|---|
| In re:<br><br>CYXTERA TECHNOLOGIES, INC., *et al.*,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 23-14853 (JKS)<br><br>(Jointly Administered) |

**ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF M3 ADVISORY PARTNERS, LP AS INDEPENDENT FINANCIAL ADVISOR TO CYXTERA TECHNOLOGIES, INC. ON BEHALF OF AND AT THE SOLE DIRECTION OF THE DISINTERESTED DIRECTORS EFFECTIVE AS OF AUGUST 29, 2023**

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
claims and noticing agent at https://www.kccllc.net/cyxtera. The location of Debtor Cyxtera Technologies, Inc.'s
principal place of business and the Debtors' service address in these chapter 11 cases is: 2333 Ponce de Leon
Boulevard, Ste. 900, Coral Gables, Florida 3313.


2314853231013000000000001

The relief set forth on the following pages, numbered three (3) through six (6) is

**ORDERED.**

**DATED: October 12, 2023**

Honorable John K. Sherwood
United States Bankruptcy Court

(Page | 3)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Debtor Cyxtera Technologies, Inc. on Behalf of the Sole Direction of the Disinterested Directors Effective as of August 29, 2023 |

Upon the application (the "Application")[1] of Cyxtera Technologies, Inc. ("Cyxtera"), one of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (the "Order") (a) authorizing Cyxtera to retain and employ M3 Advisory Partners, LP ("M3"), as financial advisor to render independent financial advisory services on behalf and at the sole direction of Fred Arnold, Roger Meltzer, and Scott Vogel (together, the "Disinterested Directors"), in their capacity as the disinterested directors of Cyxtera, comprising the Special Committee of Board, effective as of August 29, 2023, in accordance with the terms and conditions of the Engagement Letter dated as of August 29, 2023 (the "Engagement Letter") annexed as **Exhibit 1** to the Order and (b) granting related relief, pursuant to 11 U.S.C. §§327(a) and 328(a); Bankruptcy Rules 2014 and 2016; and Local Rules 2014-1 and 2016-1; and the Court having reviewed the Application and the Manning Declaration and the Meltzer Declaration; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §157 and 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Manning Declaration that (a) M3 does not hold or represent an interest adverse to the Debtors' estates, (b) M3 has no connection with the

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Debtor Cyxtera Technologies, Inc. on Behalf of the Sole Direction of the Disinterested Directors Effective as of August 29, 2023 |

Debtors, their affiliates, their creditors, the U.S. Trustee, any person employed in the office of the

U.S. Trustee, the United States Bankruptcy Judges in the District of New Jersey, or any other entity

with an actual or potential interest in the chapter 11 cases or their respective attorneys or

accountants, except as set forth in the Manning Declaration, (c) M3 is not a creditor, equity security

holder, or insider of the Debtors, and (d) none of M3's employees are or were, within two years of

the Petition Date, a director, officer, or employee of the Debtors; and the Court having found that

sufficient cause exists for the relief set forth herein; and the Court having found that the Debtors

provided adequate and appropriate notice of the Application under the circumstances and that no

other or further notice is required; and the Court having reviewed the Application and having heard

statements in support of the Application at a hearing held before the Court (the "Hearing"); and

the Court having determined that the legal and factual bases set forth in the Application and at the

Hearing establish just cause for the relief granted herein; and any objections to the relief requested

herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient

cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is **GRANTED** as set forth herein.

2.      Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Cyxtera is

authorized to retain and employ M3 as independent financial advisor to render independent

financial advisory services on behalf and at the sole direction of the Disinterested Directors,

effective as of August 29, 2023, pursuant to the terms and conditions set forth in the Application

and the Engagement Letter attached hereto as **Exhibit 1**.

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
|---|---|
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Debtor Cyxtera Technologies, Inc. on Behalf of the Sole Direction of the Disinterested Directors Effective as of August 29, 2023 |

3.      The terms of the Engagement Letter, including, without limitation, the indemnification provisions and the fee and expense structure, are reasonable terms and conditions of employment and are approved in all respects, as modified in this Order.

4.      M3 is authorized to provide the Disinterested Directors with the professional services as described in the Application and the Engagement Letter.

5.      M3 shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, the Administrative Fee Order, and any other applicable procedures and orders of the Court. M3 shall make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures, both in connection with the Application and the interim and final fee applications to be filed by M3 in these chapter 11 cases.

6.      M3 shall include in its fee applications, among other things, contemporaneous time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Disinterested Directors in one-tenth of an hour increments.

7.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with defending any objection to M3's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

(Page | 6)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al*. |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Debtor Cyxtera Technologies, Inc. on Behalf of the Sole Direction of the Disinterested Directors Effective as of August 29, 2023 |

8.    M3 shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and counsel to the Committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court. The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

9.    M3 shall not charge a markup to Cyxtera with respect to fees billed by contractors who are hired by M3 to provide services to Cyxtera at the sole direction of the Disinterested Directors and shall ensure that any such contractors are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

10.    M3 shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

11.    To the extent the Engagement Letter, the Application, the Manning Declaration, or the Meltzer Declaration is inconsistent with this Order, the terms of the Order shall govern.

12.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

13.    Cyxtera and M3 are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

14.    Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied such notice.

(Page | 7)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order Authorizing the Retention and Employment of M3 Advisory Partners, LP as Independent Financial Advisor to Debtor Cyxtera Technologies, Inc. on Behalf of the Sole Direction of the Disinterested Directors Effective as of August 29, 2023 |

15.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## <u>Exhibit 1</u>

**Engagement Letter**

DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7EB7528488



Dated as of August 29, 2023

Katten Muchin Rosenman LLP
50 Rockefeller Plaza
New York, New York 10020-1605
Attention:   Steven J. Reisman and Marc B. Roitman

<u>Engagement Letter</u>

Steven and Marc:

This letter agreement (this "***Agreement***") sets forth the terms and conditions of the engagement (the "***Engagement***") of M3 Advisory Partners, LP ("***M3***") to provide the Services (as defined below) to Katten Muchin Rosenman LLP (the "***Client***"), as counsel to Fred Arnold, Roger Meltzer and Scott Vogel (together, the "***Disinterested Directors***"), in their capacity as the disinterested directors of Cyxtera Technologies, Inc. ("***Cyxtera***"; and, together with its subsidiaries, the "***Companies***"). M3 and the Client are collectively referred to in this Agreement as the "***Parties***."

     1.   <u>Services</u>: M3 will act at the direction and under the supervision of attorneys at the Client only, with the Client acting upon instruction from the Disinterested Directors, to assist the Client in rendering legal advice and in performing legal services for the Disinterested Directors. In so doing, M3 hereby agrees to provide the following services (the "***Services***") for the Client and the Disinterested Directors upon the terms and subject to the conditions set forth in this Agreement, in each case to the extent requested in writing either by the Disinterested Directors or the Client:

     (a)  review and analyze matters related to certain of Cyxtera's prepetition corporate transactions;

     (b)  advise the Client and the Disinterested Directors on issues arising from such transactions and any other issues relating to Cyxtera or its businesses;

     (c)  assist the Client and the Disinterested Directors in connection with their independent investigation of potential claims or causes of action held by the Companies, if any; and

     (d)  such other services as M3 and the Client shall otherwise agree in writing.

For the avoidance of doubt, (x) M3 shall report solely to and take direction solely from the Client and the Disinterested Directors, and not the Companies or their Boards of Directors, (y) neither

DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7EBDF488BD

M3 nor any of its personnel performing the Services hereunder is being retained as or shall be deemed to be an agent, employee, or officer or director of the Client, but shall be deemed to be an independent contractor for the Client and (z) M3 is being retained by Client only as a consultant.

2.    Engagement Term. (a) The Engagement shall commence on the date of acceptance of this Agreement and may be terminated by either Party at any time upon ten business days' written notice. Following any such termination, neither Party shall have further liability to the other, except with respect to fees and expenses earned and incurred through the date of termination and any provisions of this Agreement which are expressly stated to survive its termination or expiration.

(b) Promptly following the execution and delivery of this Agreement by the Parties, Cyxtera will promptly apply to the United States Bankruptcy Court for the District of New Jersey (the "**Court**") in the Companies' chapter 11 cases (the "**Case**") for approval of M3's retention *nunc pro tunc* to the date of this Agreement. The form of retention application and proposed order shall be reasonably acceptable to M3 and M3 shall have no obligation to provide any further services unless M3's retention under the terms of the Agreement is approved by a final order of the Court which is reasonably acceptable to M3. The Client and Cyxtera shall assist, or cause their respective counsel to assist, with filing, serving and noticing of papers related to M3's retention and fee and expense applications.

3.    Staffing. M3 will staff a team that it believes to be appropriate to provide the Services in accordance with the terms of this Agreement. The individual members of the team are subject to change by M3 from time to time in its reasonable discretion. M3 also may provide Services through independent contractors and, unless the context shall otherwise indicate, references in this Agreement to M3 and its employees or staff shall be deemed to include any such independent contractors and their respective employees. M3 shall not charge a markup with respect to fees billed by such independent contractors.

4.    Compensation for Services. Subject to the Court's approval in the Case pursuant to the *Administrative Fee Order Establishing Procedures for the Allowance and Payment of Expenses of Professionals Retained by Order of this Court* [Docket No. 305] (the "**Compensation Procedures**") and the *U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* (the "**U.S. Trustee Guidelines**"), (a) M3's compensation for services rendered under this Agreement shall be paid by the Companies by wire transfer of immediately available funds in accordance with instructions provided from time to time by M3 to Cyxtera (on behalf of itself and the other Companies) and will consist of the following:

(i)    Service Fees: As compensation for providing the Services hereunder, M3 shall be entitled to non-refundable (in the absence of manifest error) professional fees based on the actual hours incurred by M3 personnel on matters pertinent to the



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E87B2B488

Engagement (the "**Service Fees**"). The Service Fees shall be based upon the following hourly rates:

| Professional | Hourly Rate |
|---|---|
| Managing Partner | $1,350 |
| Senior Managing Director | $1,245 |
| Managing Director | $1,025 - $1,150 |
| Director | $840 - $945 |
| Vice President | $750 |
| Senior Associate | $650 |
| Associate | $550 |
| Analyst | $450 |

The Service Fees shall be billed by M3 to the Companies twice per month by M3 furnishing to the Companies copies of an invoice for the Service Fees in respect of the billing period and shall be paid in accordance with the provisions of Section 4(b) below, subject to the Compensation Procedures. M3 may adjust its billing rates from time to time in the normal course of business upon notice to the Client and the Court.

(ii)    Expenses: In addition to any compensation for providing the Services, the Companies shall reimburse M3 for all reasonable and documented out-of-pocket expenses incurred in the performance of the Services (including, without limitation, reasonable travel costs). Any request for reimbursement of an out-of-pocket expense in excess of $100 shall be accompanied by reasonable back-up for each expense or as otherwise required by applicable law and/or the Compensation Procedures and U.S. Trustee Guidelines.

(b)    All amounts owing hereunder shall be paid by wire transfer of immediately available funds within ten days following the invoice date, subject to applicable Court procedures for the payment of fees and expenses. Any amounts payable hereunder which are not paid within ten business days of the invoice date (or, during such time as the Court has jurisdiction over the Case, within ten business days of authorization by the Court to make such payment) shall be deemed "past due" and M3 shall have the right (but not the obligation) to take any action permitted under applicable law. M3 reserves the right to suspend further Services until payment is received on past due invoices and to exercise all rights and remedies available under applicable law (with the Companies being obligated to pay M3's reasonable attorney fees and other costs of collection and enforcement). In the event that M3 so suspends the Services, M3 shall not be responsible or liable for any resulting loss, damage or expense due to such suspension.

(c)    It is understood and agreed that, even though all billing submitted by M3 will be the sole obligation and expense of the Companies, M3 has been engaged on behalf of the Client in its capacity as counsel to the Disinterested Directors. Notwithstanding anything to the contrary



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E57B28488

contained in this Agreement, it is understood and agreed that neither the Client nor its attorneys, nor the Disinterested Directors, will be liable for any amounts owing to M3 pursuant to or in connection with this Agreement, and M3 will look solely and exclusively to the Companies for payment of such amounts.

(d)     Unless expressly stated otherwise in the relevant invoice, none of the amounts invoiced by M3 from time to time with respect to the Engagement shall be contingent upon, or in any way tied to the delivery of, any reports or other work product in the future, nor upon the outcome of any case or matters. All fees payable to M3 are exclusive of taxes or similar charges, which shall be the sole obligation of the Companies (other than any taxes which may be payable on account of M3's income generally, which shall be the obligation of M3). The Companies shall be obligated to pay all amounts owing under this Agreement on a joint and several basis.

(e)     The provisions of this Section shall survive the termination or expiration of this Agreement.

5.    Cooperation.    In order to properly perform the Services and fulfill its responsibilities on a timely basis, M3 will rely on the timely cooperation of the Client, the Disinterested Directors, the Companies and their respective professional advisors, including, without limitation, making available to M3 relevant data, information and personnel, performing any tasks or responsibilities assigned to each and notifying M3 of any issues or concerns that the Client or the Disinterested Directors may have relating to the Services. The Client will use reasonable efforts to, and the Disinterested Directors will use reasonable efforts to cause the Companies to, provide M3 with full access to all personnel, books and records of the Companies, as well as to all advisors and professionals retained by the Client, the Disinterested Directors or the Companies. The Companies also will provide M3 with access to workspaces and data connectivity at the Companies' offices on an as-needed basis. The Client understands and acknowledges that M3's proper delivery of the Services is dependent upon timely decisions and approvals by the Client and the Disinterested Directors. M3 shall have no responsibility or liability for any delays, additional costs or other deficiencies caused by the Client, the Disinterested Directors or the Companies failing to properly fulfill its responsibilities under this Agreement or any lack of cooperation from any third party.

6.    Deliverables.    (a) In connection with the Engagement, M3 may furnish the Client with information, advice, reports, analyses, presentations or other materials (the "**_Deliverables_**"). The Deliverables may contain factual data, the interpretation of which may change over the project term as more information or better understanding becomes available. The Client acknowledges that M3 will have no obligation to update the Deliverables as part of the Services in the event of such a change.

(b)    Any Deliverables prepared by M3 under this Agreement will be submitted to the Client or, at the direction of the Client, the Disinterested Directors. M3 acknowledges that work performed by it as part of this Engagement constitutes privileged and confidential



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

communications and that any Deliverable or other document prepared by M3 is prepared for the Client and, to the extent provided in Section 10, is the property of the Client. Any materials prepared by M3 are solely for the confidential use of the Client and they may not be reproduced, summarized, referred to, disclosed publicly or given to any other person (including, without limitation, the Companies) without prior consent of M3, *provided* that such permission shall not be required if the materials are required to be disclosed by law or any court or governmental or regulatory authority or body.

(c) The provisions of this Section shall survive the termination or expiration of this Agreement.

7.    <u>Limitations on Services</u>. (a) The Services are limited to those specifically noted in this Agreement.

(b)    M3 does not provide accounting or tax-related assistance and no Deliverable or other information or advice provided to the Client shall be deemed to be accounting or tax-related assistance. The Client shall be solely responsible for determining the accounting and tax-related implications of the Deliverables and other information and advice provided to it by M3. M3 shall not express any professional opinions on financial statements or perform attest procedures with respect to other information in conjunction with the Engagement. The Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities or illegal acts. M3 shall assume the accuracy and completeness of all information submitted by or on behalf of the Client, the Disinterested Directors or the Companies to M3 for analysis and which will form the basis of M3's conclusions, without any obligation of M3 to verify the accuracy or completeness of such information, and M3 shall not be responsible for any analysis, advice or other Services to the extent based on inaccurate or incomplete information provided or accepted by or on behalf of the Client, the Disinterested Directors or the Companies.

(c)    The Services shall not include preparing, auditing or otherwise attesting in any way (including without limitation, with respect to the accuracy, achievability, reliability, relevance, usefulness or other appropriateness) to the Companies' financial projections, and the Client has not engaged M3 for that purpose. The Services are provided based upon the understanding that the Companies have sole responsibility for their financial projections (including preparation thereof), developing underlying assumptions and providing any disclosure related thereto. To the extent that, during the performance of Services hereunder, M3 is required to consider the Companies' financial projections, the Client understands that M3's procedures with respect to such projections do not constitute an examination in accordance with procedures established by the American Institute of Certified Public Accountants and do not and are not intended to provide any assurance on any aspect of such projections, including, without limitation, the reasonableness of the assumptions underlying such projections, nor do they provide assurance that M3 might not become aware of significant matters affecting the reasonableness of the projections that might be disclosed by more extensive procedures. There will usually be



differences between projected and actual results, and those differences may be material. The Client understands and agrees that M3 will have no responsibility or liability relating to any such differences.

(d)    M3 does not provide investment advice and the Services shall not include the provision of investment advice. The Disinterested Directors shall have sole responsibility for all investment decisions made by them or the Companies. Similarly, M3 is providing advisory and consulting services only and will not make management decisions for the Client. Although M3 may from time to time suggest or recommend options that may be available to the Client or the Disinterested Directors, the ultimate decision with respect to such options rests with the Client or the Disinterested Directors, as the case may be, and the Client or the Disinterested Directors, as the case may be, shall be solely responsible for such decision and its outcome. M3 makes no representation, promise or guarantee with respect to the outcome of any matter affecting the Client, the Disinterested Directors or the Companies.

(e)    To the extent that the performance of the Services requires that M3 form conclusions or reach opinions, M3 shall do so without regard to or consideration of the impact that such conclusions or opinions may have on the initiation or outcome of any litigation to which the Disinterested Directors or the Companies are or may become a party.

(f)    The Companies shall be solely responsible for the work and fees of any third parties engaged by the Client to provide services in connection with the Engagement, regardless of whether such third party was recommended to the Client by M3 or M3 is involved with the services provided by it. M3 shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.

(g)    The provisions of this Section shall survive the termination or expiration of this Agreement.

8.    Non-Solicitation. Each of the Companies covenants and agrees that, prior to the first anniversary of the termination or expiration of this Agreement, it and its affiliates will not, directly or indirectly, hire directly or as an independent contractor, or refer to another for employment, any person who was during the term of this Agreement an employee or contractor of M3 or any of its affiliated entities who was involved on behalf of M3 with the Engagement or the performance of the Services. In the event of the breach of the foregoing covenant, the Companies shall be liable to M3, and shall pay on demand to M3, liquidated damages equal to 200% of the total annual compensation of each relevant employee for the preceding calendar year (and, in the event that any such employee was not employed for the full year, the amount equal to 200% of his or her annualized compensation). The Parties and the Companies mutually agree that the actual damages that would be sustained by M3 as the result of any such breach will be substantial and will be impossible to measure accurately, and that the foregoing liquidated damage amount is fair and reasonable. Notwithstanding the foregoing, nothing contained in this Section



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

8 shall be deemed to prohibit or restrict the Companies from employing any such employee or contractor who (x) responds to any public advertising for employment without any other direct or indirect solicitation or (y) is introduced to such Company for purposes of employment by a recruitment firm who has independently contacted the candidate without any direct or indirect solicitation by, or encouragement from, such Company or any of its affiliates. The provisions of this Section shall survive the termination or expiration of this Agreement.

9.    Confidentiality. (a) Each Party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other Party in the scope of the Engagement (the "**Confidential Information**"), and neither Party will disclose any Confidential Information of the other Party to any other person or entity. For the avoidance of doubt, the term "Confidential Information" shall include (i) the terms of this Agreement, (ii) all non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, and models and (iii) any work product relating to the business of M3 or the Companies, their subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants. Notwithstanding the foregoing, the term "Confidential Information" shall not include information that (a) is or becomes publicly available other than as a result of disclosure by the receiving Party, (b) was already known to the receiving Party or (c) was independently acquired or developed by the receiving Party from a source not known by it to be bound by a confidentiality requirement with respect to such information. In performing the Services, M3 will use and rely primarily on the Confidential Information and on information available from public sources without having independently verified any of such information.

(b)    The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, M3 from making such disclosures of Confidential Information that M3 reasonably believes are required by law or any regulatory requirement or authority, or to clear client conflicts. M3 also may disclose Confidential Information to its partners, directors, officers, employees, independent contractors, agents and advisors who have a need to know the Confidential Information for the proper performance of the Services or otherwise in connection with the Engagement. In addition, M3 will have the right to disclose to any person that it provided services to the Client or its affiliates and a general description of such services, but such disclosure shall not provide any other Confidential Information about M3's involvement with the Client.

(c)    The provisions of this Section shall survive for a period of two years following the termination or expiration of this Agreement and shall supersede any separate confidentiality or analogous agreement between M3 and the Client.

10.    Intellectual Property. Upon payment in full of all amounts owing to M3 hereunder, the Client will own all Deliverables furnished by M3 to the Client in connection with the Services, *provided* that M3 will retain ownership of (a) all concepts, analyses, know-how, tools, frameworks, models and industry perspectives used and/or developed by M3 in connection with



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

the Services and (b) all other intellectual property not containing Confidential Information which has been developed by M3 outside of the provision of the Services (the "**M3 Tools**"), it being understood that M3 will have no ownership right to, and will maintain in accordance with the provisions of this Agreement the confidentiality of, any Confidential Information contained in the M3 Tools. To the extent that the Deliverables include any M3 Tools, M3 hereby grants the Client a non-exclusive, non-transferable, non-sublicensable worldwide, royalty-free license to use and copy the M3 Tools solely as part of the Deliverables and subject to the confidentiality provisions contained in this Agreement. The Client acknowledges and agrees that the M3 Tools are provided to the Client on an "as is" basis and without any warranty or condition of any kind (whether express, implied or otherwise), and including without limitation any implied warranty of merchantability or fitness for a particular purpose. The provisions of this Section shall survive the termination or expiration of this Agreement.

11.    Privilege. Notwithstanding section 10 hereof, (a) the Client has advised M3 that it believes the work product and all correspondence between the Client and M3 relating to the Engagement are protected from disclosure to third parties under the attorney work product doctrine and/or as confidential attorney-client communications that are prepared at the request of counsel, and, therefore, shall be treated by M3 as privileged and confidential. M3's work shall be performed under the direction of the Client to assist the Client in providing legal advice, analysis and consultation to the Disinterested Directors. Deliverables that M3 prepares under this Agreement shall be prominently labeled as "Privileged and Confidential; Attorney Work Product." The Disinterested Directors shall control any attorney-client privilege, including any such privilege belonging to the Companies, in connection with M3's work or privileged communications on the Engagement.

(b) Unless instructed by the Client, M3 shall not disclose any of its communications, or any of the information received or developed in the course of its work for the Client, to anyone other than the Client and the Disinterested Directors, subject to applicable law, regulations and court order. In the event of a subpoena, discovery request or other circumstance in which M3 is requested to produce or disclose its work product and files, M3 will promptly notify the Client, permit the Client to interpose any attorney work product privilege or attorney-client communications privilege that may be available, and unless the Client expressly consents to disclosure, M3 will maintain such confidentiality unless and until directed otherwise by express order or directive of a court or administrative authority overriding the Client's objections to disclosure and the lapse of any relevant appeal periods concerning such order or direction. Notwithstanding the foregoing, M3 may produce or disclose such work product or files without any such order or directive in the event that M3 is advised by independent counsel that it is at material risk of liability for failing to do so; *provided, however,* that M3 will advise the Client of such disclosure and will (at the sole expense of the Companies) use commercially reasonable efforts to seek confidential treatment of such work product or files from such court or administrative authority. M3 takes no responsibility for any court's or tribunal's failure to uphold the privilege or related doctrines.



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

(c) Each of the Client and the Disinterested Directors agrees and acknowledges that nothing in this Agreement (including, without limitation, any payment by the Companies of the Service Fees and other amounts owing hereunder) shall operate to modify or waive the privileged nature of the information generated by M3 in the course of this Engagement or consultation with M3 personnel as to matters relating to this Engagement.

(d) The provisions of this Section shall survive the termination or expiration of this Agreement.

12.    <u>Indemnification</u>. The Companies hereby irrevocably agree, on a joint and several basis, to indemnify and hold harmless the Indemnitees (as defined in Annex I to this Agreement) to the extent described in Annex I to this Agreement, with such Annex I being incorporated herein by reference and constituting an integral and enforceable part of this Agreement. The provisions of this Section (including, without limitation, the provisions of Annex I) shall survive the termination or expiration of this Agreement.

13.    <u>Limitation on Damages</u>. Except with respect to any damages based on gross negligence, willful misconduct, or bad faith, in no event shall M3 or any other Indemnitee be liable to the Client or its affiliates, successors, or any person claiming on behalf of or in the right of the Client, the Disinterested Directors or the Companies (including the Client's, the Disinterested Directors' and Companies' respective owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) for (i) any amount which, when taken together with all losses for which M3 and the Indemnitee are liable in connection with this Agreement or the Engagement, would exceed the amount of fees for the Services actually received by M3 from the Companies in connection with the Engagement during the immediately preceding 12 months or (ii) any special, consequential, incidental or exemplary damages or loss (or any lost profits, savings or business opportunity) (the amounts described in clauses (i) and (ii) collectively, collectively, the "*Liability Cap*"). This paragraph shall apply regardless of the nature of any claim(s) (including claims based on contract, statute, negligence, tort, strict liability or otherwise), regardless of any failure of the essential purpose of any remedy and whether or not M3 was advised of the possibility of the damage or loss asserted, unless M3 is determined by final and non-appealable judgment of a court of competent jurisdiction to have acted with bad faith, willful misconduct, or gross negligence. For the avoidance of doubt, the Parties hereby irrevocably agree that the Liability Cap is intended to be the total limit of liability for M3 and all other Indemnitee in the aggregate for any and all claims or demand by anyone in connection with this Agreement, the Services and the Engagement, including without limitation any liability to the Client and to any others making claims relating to the Services and the Engagement. Any such claimants shall allocate among themselves any amounts payable by M3, but the failure of the claimants to reach such an agreement shall not affect the enforceability of the Liability Cap. Under no circumstances shall the collective liability of M3 and the other Indemnitee in connection with this Agreement exceed the Liability Cap. The provisions of this Section shall survive the termination or expiration of this Agreement.



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...E825488

14.    <u>Client Acknowledgement</u>. The Client hereby acknowledges and agrees that M3 may, in the ordinary course of its business, serve clients who are competitive with, or have conflicting interests with, the Companies. Consistent with its confidentiality obligations hereunder and its confidentiality obligations to its other clients, M3 will not advise or consult to the Client with respect to any aspect of M3's engagement or potential engagement with any other client, potential client or former client. Similarly, M3 will not advise or consult to any other client, potential client or former client with respect to any aspect of the Engagement. M3 will maintain the confidentiality of the Confidential Information in accordance with the terms of this Agreement and, similarly, will not share confidential information of any client, potential client or former client of M3 with the Client. The provisions of this Section shall survive the termination or expiration of this Agreement.

15.    <u>Miscellaneous</u>.  (a) This Agreement (i) constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among the parties with respect to the subject matter hereof, and (ii) may be modified, amended or supplemented only by prior written agreement of each of the Parties.

(b)    The invalidity, illegality, or unenforceability of any provision in or obligation under this Agreement in any jurisdiction shall not affect or impair the validity, legality, or enforceability of the remaining provisions or obligations under this Agreement or of such provision or obligation in any other jurisdiction. If feasible, any such offending provision shall be deemed modified to be within the limits of enforceability or validity; *provided* that, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

(c)    M3's services hereunder are personal in nature and may not be assigned without the written consent of the Client. The obligations of M3 hereunder are owing only to the Client and there shall be no third-party beneficiaries of the obligations of M3 hereunder.

(d)    This Agreement may be executed in any number of counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument, and all signatures need not appear on any one counterpart.

(e)    This Agreement and all controversies arising from or related to performance hereunder shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be executed and performed within such state. The Parties and the Companies hereby submit to the exclusive jurisdiction of and venue in the federal and state courts located in New York City and waive any right to trial by jury in connection with any dispute related to this Agreement. The provisions of this paragraph shall survive the termination or expiration of this Agreement.

*[Remainder of Page Intentionally Left Blank]*



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

This Agreement shall be binding upon the Parties and the Companies and their respective successors and assigns, and no other person shall acquire or have any right under or by virtue of this Agreement.

Please confirm the foregoing is in accordance with your understanding by signing and returning a copy of this Agreement which has been duly executed by the Client and the Companies, whereupon it shall become binding and enforceable in accordance with its terms.

Very truly yours,

M3 ADVISORY PARTNERS, LP

By _____

Name: Mohsin Y. Meghji
Title: Managing Member

ACCEPTED AND AGREED as
of the date first set forth above:

KATTEN MUCHIN ROSENMAN LLP

By: _____

Name: Steven J. Reisman, Esq.
Title: Partner

ACKNOWLEGED AND AGREED
as of the date first set forth above ___:

FRED ARNOLD, SOLELY IN HIS CAPACITY AS
DISINTERESTED DIRECTOR OF CYXTERA
TECHNOLOGIES, INC.

DocuSigned by:

*Fred Arnold*

By: _____
— 3C6A0FC9197C48F...
Name: Fred Arnold
Title: Disinterested Director



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E5F525160

ROGER   MELTZER,   SOLELY   IN   HIS
CAPACITY AS DISINTERESTED DIRECTOR
OF CYXTERA TECHNOLOGIES, INC.

By:

Name:   Roger Meltzer
Title:    Disinterested Director


SCOTT VOGEL, SOLELY IN HIS CAPACITY AS
DISINTERESTED DIRECTOR OF CYXTERA
TECHNOLOGIES, INC.

By:

Name:   Scott Vogel
Title:    Disinterested Director


ACKNOWLEGED AND AGREED
as of the date first set forth above    :

CYXTERA TECHNOLOGIES, INC.

By:

   Name: Victor Semah
   Title: Chief Legal Officer



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

<u>Annex I</u>

AGREEMENTS REGARDING INDEMNIFICATION

In consideration of M3 performing the Services for the benefit of the Client, the Companies (collectively, the "***Indemnitor***") shall, on a joint and several basis, indemnify M3 and its affiliates, equity holders, partners, directors, employees, agents, representatives and contractors, including past, present or future partners, principals and personnel of each (collectively hereinafter called the "***Indemnitees***") against all costs, fees, expenses, damages, and liabilities (including defense costs) associated with any pending or threatened claim, action, proceeding or investigation (a "***Claim***") relating to or arising as a result of the Engagement or the provision of the Services, the Client's or the Committee's use or disclosure of the Deliverables, or this Agreement ("***Losses***"). This provision is intended to apply regardless of the nature of any Claim (including contract, statute, any form of negligence, whether of the Client, the Committee, M3, or others, tort, strict liability or otherwise), except to the extent such Losses are determined by a final and non-appealable judgment of a court of competent jurisdiction to be the result of M3's bad faith, gross negligence or willful misconduct.

The Indemnitor shall not, without M3's prior written consent (which will not be unreasonably withheld) settle, compromise, or consent to the entry of any judgment in any pending or threatened Claim in respect of which indemnification could reasonably be sought hereunder (whether or not M3 or any other Indemnitee is an actual or potential party to such Claim), if such settlement, compromise, or consent does not include an unconditional release of each Indemnitee from all liability arising out of such Claim; *provided, however*, that the Indemnitor shall not enter into any such settlement, compromise or consent of a Claim without M3's prior written consent (which may be granted or withheld in M3's sole discretion) if such settlement, compromise or consent provides for injunctive relief against an Indemnitee or an admission of liability by an Indemnitee or would require payment of any amount by an Indemnitee or any insurer of an Indemnitee. The Indemnitor shall not be liable hereunder to any Indemnitee for any amount paid or payable in the settlement of any action, proceeding or investigation entered into by such Indemnitee without the Indemnitor's written consent.

Upon receipt by an Indemnitee of actual notice of a Claim against such Indemnitee in respect of which indemnity may be sought hereunder, such Indemnitee shall promptly notify the Indemnitor with respect thereto. In addition, an Indemnitee shall promptly notify the Indemnitor after any action is commenced (by way of service with a summons or other legal process giving information as to the nature and basis of the claim) against such Indemnitee in respect of which indemnity may be sought hereunder. In any event, any delay or failure to notify the Indemnitor shall not relieve the Indemnitor from any liability which the Indemnitor may have on account of this indemnity or otherwise, except to the extent, and only to the extent, that the Indemnitor shall have been materially prejudiced by such delay or failure.



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

Indemnitor shall advance all expenses indemnifiable hereunder that are reasonably incurred by or on behalf of each Indemnitee in connection with any Claim within thirty (30) days after receipt by Indemnitor of a statement or statements from Indemnitee requesting such advance or advances from time to time, whether prior to or after final disposition of such Claim. Such statement or statements shall reasonably evidence the expenses incurred by Indemnitee and shall include or be preceded or accompanied by a written undertaking by or on behalf of Indemnitee to repay any expenses advanced if it shall ultimately be determined by a final and non-appealable judgment of a court of competent jurisdiction that Indemnitee is not entitled to be indemnified against such expenses. Any advances and undertakings to repay pursuant to this paragraph shall be unsecured and interest free.

To the extent that the Indemnitor so elects, it shall be entitled to assume the defense, with counsel selected by the Indemnitor (and approved by M3, with such approval not to be unreasonably withheld), of any action that is the subject of the Claim in respect of which indemnity may be sought. After notice to the Indemnitees of its election to assume the defense thereof, the Indemnitor will not be liable to the Indemnitee under this Agreement for any expenses subsequently incurred by such Indemnitee in connection with the defense thereof except as otherwise provided below. Such Indemnitee shall have the right to employ counsel of its choice in such Claim, but the fees and expenses of such counsel incurred after notice from the Indemnitor of the assumption of the defense thereof shall be at the expense of the Indemnitee unless the employment of counsel by the Indemnitee has been authorized by the Indemnitor, in which case the reasonably incurred fees and expenses of such counsel of the Indemnitee shall be at the expense of the Indemnitor.

The Client agrees that neither M3 nor any other Indemnitee shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Client, the Committee or any person or entity asserting claims on behalf of or in right of the Client, the Committee or the Companies caused by, relating to, based upon or arising out of (directly or indirectly) this Agreement or the Engagement, except for losses, claims, damages, penalties or liabilities incurred by the Client which are finally determined by a non-appealable judgment of a court of competent jurisdiction to have resulted primarily and directly from the bad faith, willful misconduct or gross negligence of M3 or any such other Indemnitee, as the case may be. In no event, however, shall M3's or any other Indemnitee's liability to the Client or their respective affiliates, successors, or any person claiming on behalf of or in the right of the Client (including the Client's owners, parents, affiliates, directors, officers, employees, agents, security holders, or creditors) exceed the Liability Cap.

In the event that any M3 personnel are requested or required to appear as a witness in connection with any claim, action or proceeding relating to or arising as a result of the Engagement or the provision of the Services, the Client's or the Committee's use or disclosure of the Deliverables, or this Agreement, the Indemnitor shall, to the extent permitted by applicable law, reimburse M3 for all reasonable and documented out-of-pocket expenses incurred by it in connection with such personnel appearing and preparing to appear as a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel, and to compensate M3 at a rate equal to M3's then standard hourly rate for the relevant personnel for each day that such personnel is



DocuSign Envelope ID: 0DDBEFD9-848D-4578-95EC-8D7E...

involved in preparation, discovery proceedings or testimony pertaining to such Claim. Additionally, M3 will have the right to obtain advice from independent legal counsel with respect to its actual or potential obligations and liability hereunder and the Indemnitor will promptly reimburse M3 for the reasonable out-of-pocket fees and expenses paid by M3 on account thereof.

The provisions of this Annex I shall be deemed to be an integral part of this Agreement to which this Annex I is affixed and shall survive the termination or expiration of this Agreement for any reason. The provisions of this Annex I shall be binding upon the Client, the Committee, the Companies and their respective successors and assigns.



## Exhibit C

**Summary of Total Fees Incurred and Hours Billed During the Fee Period of
August 29, 2023 Through and Including November 17, 2023**

### Summary of Total Fees by Professional

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Mohsin Meghji | Managing Partner | $1,350 | 4.0 | $5,400.00 |
| Matthew Manning | Managing Director | $1,150 | 64.3 | $73,945.00 |
| Brian Bostwick | Vice President | $750 | 165.0 | $123,750.00 |
| Mario Biaggi | Associate | $550 | 197.6 | $108,680.00 |
| **Total** | | | **430.9** | **$311,775.00** |

**Exhibit D**

**Summary of Fees and Expenses by Task Matter, Including Detailed Description of Services Provided, for the Fee Period of August 29, 2023 Through and Including November 17, 2023**

**Summary of Time Detail by Task Category**

| Task Category | Hours | Fees |
|---|---|---|
| Analysis of Docket Filings & Debtor Materials | 36.1 | $28,695.00 |
| Case Administration | 26.9 | $23,835.00 |
| Fee Applications | 7.7 | $8,855.00 |
| Potential Causes of Action | 360.2 | $250,390.00 |
| **Total** | **430.9** | **$311,775.00** |

***Analysis of Docket Filings & Debtor Materials***

On an ongoing basis, M3 reviewed docket filings and documents and materials provided by the Debtors and their advisors.

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Meghji, Mohsin | Managing Partner | $1,350 | - | $0.00 |
| Manning, Matthew | Managing Director | $1,150 | 7.0 | $8,050.00 |
| Bostwick, Brian | Vice President | $750 | 23.2 | $17,400.00 |
| Biaggi, Mario | Associate | $550 | 5.9 | $3,245.00 |
| **Total** | | | **36.1** | **$28,695.00** |

*Average Billing Rate* — *$794.88*

### Time Detail by Task by Professional

| Date | Name | Task Category | Detail | Hours |
|---|---|---|---|---|
| 8/29/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Review First Day Declaration and public company filings to analyze situation | 1.7 |
| 8/29/2023 | Manning, Matthew | Analysis of Docket Filings & Debtor Materials | Review company filings and court docket to assess situation | 0.5 |
| 8/31/2023 | Biaggi, Mario | Analysis of Docket Filings & Debtor Materials | Review of company financial and court filings | 1.8 |
| 9/11/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Review company board materials | 1.7 |
| 9/12/2023 | Manning, Matthew | Analysis of Docket Filings & Debtor Materials | Review company filings | 0.3 |
| 9/13/2023 | Manning, Matthew | Analysis of Docket Filings & Debtor Materials | Review and assess additional files received from Debtors based on updated requests lists | 1.1 |
| 9/13/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Review Company cash flow forecasts | 2.0 |
| 9/13/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Review additional materials related to company business plans | 2.5 |
| 9/14/2023 | Manning, Matthew | Analysis of Docket Filings & Debtor Materials | Review and assess additional files received from Debtors based on updated requests lists | 0.6 |
| 9/14/2023 | Biaggi, Mario | Analysis of Docket Filings & Debtor Materials | Review new projection model provided by the Company | 1.6 |
| 9/14/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Compare Company forecast files and forecasts in presentations | 2.1 |

| 9/14/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Review new forecasts provided by the Company | 1.3 |
|---|---|---|---|---|
| 9/14/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Review additional files provided by Company | 1.5 |
| 9/15/2023 | Manning, Matthew | Analysis of Docket Filings & Debtor Materials | Review Debtor operating model (.6) and correspondence with M. Biaggi (M3) re: same (.2) | 0.8 |
| 9/15/2023 | Manning, Matthew | Analysis of Docket Filings & Debtor Materials | Review additional diligence information provided by Debtors | 0.7 |
| 9/15/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Review additional diligence materials | 2.0 |
| 9/19/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Review Company board and presentation materials | 2.1 |
| 9/20/2023 | Manning, Matthew | Analysis of Docket Filings & Debtor Materials | Review diligence materials provided by Debtors and draft materials for special committee | 1.0 |
| 9/21/2023 | Biaggi, Mario | Analysis of Docket Filings & Debtor Materials | Meeting with B. Bostwick (M3) re: comparative analysis of management forecasts over time | 0.8 |
| 9/21/2023 | Biaggi, Mario | Analysis of Docket Filings & Debtor Materials | Continued research in support of comparative analysis of management forecasts over time | 1.7 |
| 9/21/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Meeting with M. Biaggi (M3) re: comparative analysis of management forecasts | 0.8 |
| 9/21/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Review Board and Management presentations and prepare slides re: funding strategy and funding needs | 2.5 |
| 9/21/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Continue to review Board and Management presentations and prepare slides re: funding strategy and funding needs | 1.8 |
| 9/22/2023 | Manning, Matthew | Analysis of Docket Filings & Debtor Materials | Review company operating model including key assumptions, forecasted growth and metrics and cash flows (1.1) and review of other diligence materials provided by company including presentations, minutes and public information (.9) | 2.0 |
| 9/22/2023 | Bostwick, Brian | Analysis of Docket Filings & Debtor Materials | Review prior valuation reports | 1.2 |

***Case Administration***

On an ongoing basis, M3 attended various internal meetings and engaged in other forms of correspondence regarding general case administration.

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Meghji, Mohsin | Managing Partner | $1,350 | - | $0.00 |
| Manning, Matthew | Managing Director | $1,150 | 12.3 | $14,145.00 |
| Bostwick, Brian | Vice President | $750 | 8.3 | $6,225.00 |
| Biaggi, Mario | Associate | $550 | 6.3 | $3,465.00 |
| **Total** | | | **26.9** | **$23,835.00** |

*Average Billing Rate* $886.06

### Time Detail by Task by Professional

| Date | Name | Task Category | Detail | Hours |
|---|---|---|---|---|
| 8/29/2023 | Bostwick, Brian | Case Administration | Call with Katten team, M. Manning (M3) to discuss engagement and next steps | 0.2 |
| 8/29/2023 | Manning, Matthew | Case Administration | Call with Katten team, B. Bostwick (M3) to discuss engagement and next steps (.2); correspondence with Katten team, B. Bostwick (M3) re: diligence lists and access to information (.3) | 0.5 |
| 8/30/2023 | Bostwick, Brian | Case Administration | Prepare index of documents received to date (.8); coordination re: same with M3 team (.2) | 1.0 |
| 8/31/2023 | Biaggi, Mario | Case Administration | Correspondence with B. Bostwick (M3) regarding engagement next steps (.1) and call with B. Bostwick (M3) re: same (.2) | 0.3 |
| 8/31/2023 | Bostwick, Brian | Case Administration | Call with M. Biaggi (M3) to discuss workstreams | 0.2 |
| 9/1/2023 | Biaggi, Mario | Case Administration | Call with M. Manning and B. Bostwick (M3) re: engagement process and next steps | 0.4 |
| 9/1/2023 | Biaggi, Mario | Case Administration | Call with Katten and M3 teams re: engagement letter, diligence list and timelines | 0.4 |

| 9/1/2023 | Manning, Matthew | Case Administration | Prepare for (.5) and participate in call with M. Roitman, M. Rosella (Katten) C. Garner, B. Bostwick, M. Biaggi (M3) to discuss engagement letter, diligence list, and timeline (.4); review of engagement letter (.3) | 1.2 |
|---|---|---|---|---|
| 9/1/2023 | Manning, Matthew | Case Administration | Discussions with B. Bostwick, M. Biaggi (M3) re: key workstreams and documents received to-date | 1.0 |
| 9/1/2023 | Bostwick, Brian | Case Administration | Call with M. Roitman, M. Rosella (Katten) C. Garner, M. Manning, M. Biaggi (M3) to discuss engagement letter, diligence list, and timeline | 0.4 |
| 9/1/2023 | Bostwick, Brian | Case Administration | Call with M. Manning (M3) to discuss workstreams and documents (.5) and call with M. Manning, M. Biaggi (M3) to discuss workstreams and next steps (.4) | 0.9 |
| 9/5/2023 | Biaggi, Mario | Case Administration | Meet with B. Bostwick (M3) re: workstream priorities | 0.2 |
| 9/5/2023 | Bostwick, Brian | Case Administration | Meet with M. Biaggi (M3) re: workstream priorities | 0.2 |
| 9/6/2023 | Manning, Matthew | Case Administration | Participate in discussion with B. Bostwick, M. Biaggi (M3) to discuss workplan (.5); correspondence with B. Bostwick, M. Biaggi (M3) re: same (.1) | 0.6 |
| 9/6/2023 | Biaggi, Mario | Case Administration | Meeting with M. Manning and B. Bostwick (M3) re: due diligence materials required | 0.3 |
| 9/6/2023 | Bostwick, Brian | Case Administration | Meet with M. Manning, M. Biaggi (M3) to discuss workstreams and align priorities | 0.5 |
| 9/7/2023 | Manning, Matthew | Case Administration | Prepare and review diligence request list | 0.8 |
| 9/8/2023 | Biaggi, Mario | Case Administration | Research in support of additional due diligence requests | 1.7 |
| 9/8/2023 | Biaggi, Mario | Case Administration | Correspondence with B. Bostwick (M3) re: additional due diligence requests | 0.3 |
| 9/11/2023 | Manning, Matthew | Case Administration | Prepare for (.3) and participate in meeting with B. Bostwick, M. Biaggi (M3) re: workplan and next steps (.4) | 0.7 |
| 9/11/2023 | Manning, Matthew | Case Administration | Correspondence with B. Bostwick (M3) and M. Rosella | 0.3 |

| Date | Name | Category | Description | Hours |
|---|---|---|---|---|
| | | | (Katten) re: data access and meeting logistics | |
| 9/11/2023 | Biaggi, Mario | Case Administration | Meeting with M. Manning and B. Bostwick (M3) re: engagement priorities | 0.4 |
| 9/11/2023 | Bostwick, Brian | Case Administration | Call with M. Manning, M. Biaggi (M3) to discuss workstreams | 0.4 |
| 9/11/2023 | Bostwick, Brian | Case Administration | Correspondence with M. Rosella (M3) re: diligence requests | 0.2 |
| 9/11/2023 | Bostwick, Brian | Case Administration | Research and prepare additional data requests | 1.3 |
| 9/12/2023 | Manning, Matthew | Case Administration | Correspondence with B. Bostwick (M3) and M. Rosella (Katten) re: meeting logistics | 0.2 |
| 9/12/2023 | Biaggi, Mario | Case Administration | Meeting with M. Manning and B. Bostwick (M3) re: engagement priorities | 0.9 |
| 9/12/2023 | Bostwick, Brian | Case Administration | Discussion with M. Manning, M. Biaggi (M3) re: key workstreams, documents received, outstanding requests and next steps | 0.9 |
| 9/13/2023 | Manning, Matthew | Case Administration | Prepare for (.3) and participate in meeting with M. Rosella, D. Barnowski (Katten), B. Bostwick, M. Biaggi (M3) re: workstreams, process and status (.4) | 0.7 |
| 9/13/2023 | Biaggi, Mario | Case Administration | Call with counsel and M3 re: engagement timelines and priorities | 0.3 |
| 9/13/2023 | Bostwick, Brian | Case Administration | Call with M. Rosella, D. Barnowski (Katten), M. Manning, M. Biaggi (M3) to discuss workstreams and diligence requests | 0.4 |
| 9/14/2023 | Biaggi, Mario | Case Administration | Catchup with B. Bostwick (M3) re: engagement priorities | 0.4 |
| 9/14/2023 | Bostwick, Brian | Case Administration | Discuss engagement priorities with M. Biaggi | 0.4 |
| 9/20/2023 | Biaggi, Mario | Case Administration | Call with Katten and B. Bostwick (M3) re: engagement timeline and priorities | 0.5 |
| 9/20/2023 | Bostwick, Brian | Case Administration | Call with Katten team and M. Biaggi (M3) re: engagement timeline and priorities | 0.5 |
| 9/26/2023 | Bostwick, Brian | Case Administration | Correspondence with M. Biaggi (M3) re: case updates | 0.3 |

| 9/26/2023 | Manning, Matthew | Case Administration | Correspondence with M. Roitman, M. Rosella (Katten) et al, M. Meghji, B. Bostwick, M. Biaggi (M3) re: preliminary report (.6); correspondence with same parties and Disinterested Directors re: same (.2); review preliminary report including tie out of sources, notes and figures (4.7) | 5.5 |
|---|---|---|---|---|
| 10/2/2023 | Biaggi, Mario | Case Administration | Call with counsel re: presentation | 0.2 |
| 10/2/2023 | Bostwick, Brian | Case Administration | Calls with M. Rosella, D. Barnowski (Katten), M. Manning, M. Biaggi (M3) to discuss analysis | 0.5 |
| 10/2/2023 | Manning, Matthew | Case Administration | Discussions with Katten team and B. Bostwick, M. Biaggi (M3) to discuss presentation and related analysis | 0.6 |
| 10/11/2023 | Manning, Matthew | Case Administration | Correspondence with L. Miranda (Katten) re: special committee meeting | 0.2 |

***Fee Applications***

M3 prepared the retention application as well as its monthly fee statement in compliance with its retention order.

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Meghji, Mohsin | Managing Partner | $1,350 | - | $0.00 |
| Manning, Matthew | Managing Director | $1,150 | 7.7 | $8,855.00 |
| Bostwick, Brian | Vice President | $750 | - | $0.00 |
| Biaggi, Mario | Associate | $550 | - | $0.00 |
| **Total** | | | **7.7** | **$8,855.00** |

*Average Billing Rate*                                                                          *$1,150.00*

### Time Detail by Task by Professional

| Date | Name | Task Category | Detail | Hours |
|---|---|---|---|---|
| 8/31/2023 | Manning, Matthew | Fee Applications | Review draft engagement letter (.4) and correspondence with C. Garner (M3) and M. Rosella (Katten) re: follow-up discussion on same (.2) | 0.6 |
| 9/5/2023 | Manning, Matthew | Fee Applications | Correspondence with C. Garner (M3) re: case status and engagement letter (.3); correspondence with M. Rosella re: engagement letter (.2); review proposed updates to engagement letter (.4) | 0.9 |
| 9/7/2023 | Manning, Matthew | Fee Applications | Review parties in interest (.3) and correspondence with M. Rosella (Katten) and C. Garner (M3) re: same (.2) | 0.5 |
| 9/11/2023 | Manning, Matthew | Fee Applications | Correspondence with Katten team and M3 team re: engagement letter | 0.3 |
| 9/20/2023 | Manning, Matthew | Fee Applications | Review retention application (.4) and correspondence with C. Garner (M3), M. Rosella (Katten) re: same (.2) | 0.6 |
| 9/21/2023 | Manning, Matthew | Fee Applications | Review retention application (.2) and correspondence with C. Garner (M3), M. Rosella (Katten) re: same (.4) | 0.6 |
| 9/26/2023 | Manning, Matthew | Fee Applications | Correspondence with C. Garner (M3) re: engagement letter and parties in interest (.2) and review of same (.3) | 0.5 |

13

| 9/27/2023 | Manning, Matthew | Fee Applications | Correspondence with C. Garner (M3) and M. Rosella (Katten) re: engagement letter and parties in interest | 0.3 |
|---|---|---|---|---|
| 9/29/2023 | Manning, Matthew | Fee Applications | Review retention application and related declaration (.3) and correspondence with C. Garner (M3) and M. Rosella (Katten) re: same (.2) | 0.5 |
| 10/24/2023 | Manning, Matthew | Fee Applications | Prepare and review first monthly fee application for August and September | 1.2 |
| 10/25/2023 | Manning, Matthew | Fee Applications | Prepare and review first monthly fee application for August and September (1.1); discussion with B. Bostwick (M3) re: same (.3); correspondence with Katten team and M3 team re: same (.3) | 1.7 |

*Potential Causes of Action*

On an ongoing basis, M3 has conducted an investigation into whether any potential causes of action exist with respect to certain prepetition corporate transactions. The investigation has involved a broad spectrum of historical financial analyses around corporate transactions and other issues that may result in potential causes of action. M3 has reviewed historical public and non-public information, and prepared reports to present findings to the Disinterested Directors.

| Professional | Position | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| Meghji, Mohsin | Managing Partner | $1,350 | 4.0 | $5,400.00 |
| Manning, Matthew | Managing Director | $1,150 | 37.3 | $42,895.00 |
| Bostwick, Brian | Vice President | $750 | 133.5 | $100,125.00 |
| Biaggi, Mario | Associate | $550 | 185.4 | $101,970.00 |
| **Total** | | | **360.2** | **$250,390.00** |

*Average Billing Rate* $695.14

### Time Detail by Task by Professional

| Date | Name | Task Category | Detail | Hours |
|---|---|---|---|---|
| 8/30/2023 | Bostwick, Brian | Potential Causes of Action | Review and analyze relevant comparable cases | 1.5 |
| 8/30/2023 | Bostwick, Brian | Potential Causes of Action | Review documents including public filings, special committee presentations, transaction documents | 2.5 |
| 8/31/2023 | Biaggi, Mario | Potential Causes of Action | Review of special committee presentations | 1.7 |
| 8/31/2023 | Bostwick, Brian | Potential Causes of Action | Prepare report outline (.6) including development and review of required analysis and exhibits (.4) | 1.0 |
| 8/31/2023 | Bostwick, Brian | Potential Causes of Action | Review materials including financial statements and committee presentations to assess next steps | 2.6 |
| 8/31/2023 | Manning, Matthew | Potential Causes of Action | Correspondence with M3 team and Katten team re: diligence information and request lists | 0.3 |
| 8/31/2023 | Manning, Matthew | Potential Causes of Action | Review initial information requests (.4) and review of responsive information re: same (.7) | 1.1 |
| 9/1/2023 | Biaggi, Mario | Potential Causes of Action | Review of company care package materials re: related party transactions | 0.5 |
| 9/1/2023 | Biaggi, Mario | Potential Causes of Action | Continue to review company care package materials re: related party transactions | 1.9 |

| 9/1/2023 | Biaggi, Mario | Potential Causes of Action | Continue to review company care package materials re: company financials | 1.7 |
|---|---|---|---|---|
| 9/1/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: company care package materials | 0.3 |
| 9/1/2023 | Biaggi, Mario | Potential Causes of Action | Call with B. Bostwick (M3) re: company care package materials and information received to-date | 0.2 |
| 9/1/2023 | Manning, Matthew | Potential Causes of Action | Review diligence lists (.2) and review and analyze diligence information received including company presentations and analysis (.6) | 0.8 |
| 9/1/2023 | Bostwick, Brian | Potential Causes of Action | Research and analyze comparable companies | 2.4 |
| 9/1/2023 | Bostwick, Brian | Potential Causes of Action | Call with M. Biaggi (M3) re: company care package materials | 0.2 |
| 9/1/2023 | Bostwick, Brian | Potential Causes of Action | Continue to research and analyze comparable companies | 2.1 |
| 9/1/2023 | Bostwick, Brian | Potential Causes of Action | Prepare comparable companies analysis | 2.1 |
| 9/5/2023 | Biaggi, Mario | Potential Causes of Action | Review company's financial projection model | 1.1 |
| 9/5/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of discounted cash flow analysis | 1.9 |
| 9/5/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of discounted cash flow analysis | 1.8 |
| 9/5/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of precedent transactions analysis | 1.6 |
| 9/5/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of precedent transactions analysis | 0.9 |
| 9/5/2023 | Manning, Matthew | Potential Causes of Action | Review outline for materials to be provided to special committee | 0.6 |
| 9/5/2023 | Bostwick, Brian | Potential Causes of Action | Research precedent transactions for analysis | 1.3 |
| 9/5/2023 | Bostwick, Brian | Potential Causes of Action | Review preliminary DCF analysis | 1.0 |
| 9/6/2023 | Manning, Matthew | Potential Causes of Action | Review and revise structure of materials to align required outputs | 0.7 |
| 9/6/2023 | Manning, Matthew | Potential Causes of Action | Review additional Debtor materials provided by Katten (.5) and correspondence with M. Rosella (Katten) and B. Bostwick (M3) re: same (.2) | 0.7 |
| 9/6/2023 | Biaggi, Mario | Potential Causes of Action | Call with M. Rosella (Katten) and B. Bostwick (M3) re: due diligence materials required | 0.1 |

| 9/6/2023 | Biaggi, Mario | Potential Causes of Action | Meeting with B. Bostwick (M3) re: DCF analysis | 0.2 |
|---|---|---|---|---|
| 9/6/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of DCF analysis | 1.4 |
| 9/6/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: public comps analysis | 0.3 |
| 9/6/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of public comps analysis | 1.3 |
| 9/6/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of DCF analysis | 1.9 |
| 9/6/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of WACC estimation | 1.8 |
| 9/6/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of WACC estimation | 1.4 |
| 9/6/2023 | Bostwick, Brian | Potential Causes of Action | Meeting with M. Biaggi (M3) re: DCF analysis | 0.2 |
| 9/6/2023 | Bostwick, Brian | Potential Causes of Action | Call with counsel and M. Biaggi (M3) re: due diligence materials required | 0.1 |
| 9/6/2023 | Bostwick, Brian | Potential Causes of Action | Research in support of public comps analysis | 0.9 |
| 9/6/2023 | Bostwick, Brian | Potential Causes of Action | Continued research in support of public comps analysis | 1.3 |
| 9/6/2023 | Bostwick, Brian | Potential Causes of Action | Correspondence with M. Rosella (Katten) regarding additional information | 0.2 |
| 9/6/2023 | Bostwick, Brian | Potential Causes of Action | Prepare and format deliverable and analysis | 1.3 |
| 9/7/2023 | Manning, Matthew | Potential Causes of Action | Review and analyze draft materials provided to special committee | 0.7 |
| 9/7/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of DCF analysis | 1.6 |
| 9/7/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of valuation summary | 1.8 |
| 9/7/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of valuation summary | 1.1 |
| 9/7/2023 | Biaggi, Mario | Potential Causes of Action | Meeting with B. Bostwick (M3) re: additional due diligence requests | 0.2 |
| 9/7/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of additional due diligence requests | 1.3 |
| 9/7/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of additional due diligence requests | 0.8 |
| 9/7/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of public comps analysis | 1.4 |
| 9/7/2023 | Biaggi, Mario | Potential Causes of Action | Prepare slides re: public and precedent comps analysis | 1.2 |
| 9/7/2023 | Biaggi, Mario | Potential Causes of Action | Update DCF analysis based on feedback from M3 Team | 0.8 |

| 9/7/2023 | Bostwick, Brian | Potential Causes of Action | Meeting with M. Biaggi (M3) re: additional due diligence requests | 0.2 |
|---|---|---|---|---|
| 9/8/2023 | Biaggi, Mario | Potential Causes of Action | Call with M. Manning and B. Bostwick (M3) re: additional due diligence requests | 1.0 |
| 9/8/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of DCF analysis | 1.8 |
| 9/8/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of the status of equity and credit market analysis | 1.8 |
| 9/8/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of public comps analysis | 1.9 |
| 9/8/2023 | Bostwick, Brian | Potential Causes of Action | Prepare additional diligence request (.8) and correspondence with M. Rosella (Katten) re: same (.2) | 1.0 |
| 9/8/2023 | Bostwick, Brian | Potential Causes of Action | Call with M. Manning and M. Biaggi (M3) re: additional due diligence requests | 1.0 |
| 9/8/2023 | Bostwick, Brian | Potential Causes of Action | Research in support of public comps analysis | 1.5 |
| 9/8/2023 | Manning, Matthew | Potential Causes of Action | Call with B. Bostwick, M. Biaggi (M3) re: additional due diligence requests | 1.0 |
| 9/11/2023 | Manning, Matthew | Potential Causes of Action | Review company comps (operational and valuation) (.9); review competitor research (.4) | 1.3 |
| 9/11/2023 | Manning, Matthew | Potential Causes of Action | Review and prepare additional data requests based on information received to-date | 0.4 |
| 9/11/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of additional due diligence material requests | 0.8 |
| 9/11/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: operational comps analysis | 0.2 |
| 9/11/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of operational comps analysis | 1.9 |
| 9/11/2023 | Biaggi, Mario | Potential Causes of Action | Prepare slides re: operational comps analysis | 1.6 |
| 9/11/2023 | Biaggi, Mario | Potential Causes of Action | Follow up meeting with B. Bostwick (M3) re: operational comps analysis | 0.3 |
| 9/11/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of operational comps analysis | 1.8 |
| 9/11/2023 | Biaggi, Mario | Potential Causes of Action | Update operational comps analysis slides based on feedback from B. Bostwick (M3) | 1.8 |
| 9/11/2023 | Biaggi, Mario | Potential Causes of Action | Continued correspondence with B. Bostwick (M3) re: operational comps analysis | 0.3 |

| 9/11/2023 | Biaggi, Mario | Potential Causes of Action | Compare management forecasts to operational comps analysis | 1.1 |
|---|---|---|---|---|
| 9/11/2023 | Biaggi, Mario | Potential Causes of Action | Compare public equity research reports to operational comps analysis | 0.8 |
| 9/11/2023 | Bostwick, Brian | Potential Causes of Action | Follow up meeting with M. Biaggi (M3) re: operational comps analysis | 0.3 |
| 9/11/2023 | Bostwick, Brian | Potential Causes of Action | Research operational comps | 2.4 |
| 9/11/2023 | Bostwick, Brian | Potential Causes of Action | Review operational comps slides | 0.8 |
| 9/11/2023 | Bostwick, Brian | Potential Causes of Action | Continued research of operational comps | 1.9 |
| 9/12/2023 | Manning, Matthew | Potential Causes of Action | Discussion with B. Bostwick, M. Biaggi (M3) re: key workstreams, documents received, outstanding requests and next steps | 0.9 |
| 9/12/2023 | Manning, Matthew | Potential Causes of Action | Review draft outline | 0.6 |
| 9/12/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of DCF analysis | 1.8 |
| 9/12/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of public comps analysis | 0.6 |
| 9/12/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of precedent comps analysis | 0.8 |
| 9/12/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of industry debt market analysis | 1.7 |
| 9/12/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) in support of industry debt market analysis | 0.2 |
| 9/12/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of industry debt market analysis | 1.6 |
| 9/12/2023 | Biaggi, Mario | Potential Causes of Action | Follow up meeting with B. Bostwick (M3) to review latest presentation and discuss priorities | 0.5 |
| 9/12/2023 | Biaggi, Mario | Potential Causes of Action | Prepare slides re: company's liquidity and maturity schedule | 1.3 |
| 9/12/2023 | Biaggi, Mario | Potential Causes of Action | Prepare slides re: company's financial projections | 1.1 |
| 9/12/2023 | Bostwick, Brian | Potential Causes of Action | Research in support of public comps | 1.3 |
| 9/12/2023 | Bostwick, Brian | Potential Causes of Action | Prepare slides re: public comps | 0.7 |
| 9/12/2023 | Bostwick, Brian | Potential Causes of Action | Meeting with M. Biaggi (M3) to review latest presentation and discuss priorities | 0.5 |
| 9/12/2023 | Bostwick, Brian | Potential Causes of Action | Research data center industry | 1.4 |

| 9/12/2023 | Bostwick, Brian | Potential Causes of Action | Review industry research reports | 1.5 |
|---|---|---|---|---|
| 9/12/2023 | Bostwick, Brian | Potential Causes of Action | Research in support of industry analysis | 1.7 |
| 9/13/2023 | Manning, Matthew | Potential Causes of Action | Discussion with B. Bostwick, M. Biaggi (M3) re: company's financial projections | 1.2 |
| 9/13/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of DCF analysis | 1.6 |
| 9/13/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: DCF, public and precedent comps analyses | 0.2 |
| 9/13/2023 | Biaggi, Mario | Potential Causes of Action | Update DCF, public and precedent comps analyses based on feedback from B. Bostwick (M3) | 1.7 |
| 9/13/2023 | Biaggi, Mario | Potential Causes of Action | Prepare slides re: DCF, public and precedent comps analyses | 1.6 |
| 9/13/2023 | Biaggi, Mario | Potential Causes of Action | Review industry operational metrics and valuation methods used in public equity research | 1.8 |
| 9/13/2023 | Biaggi, Mario | Potential Causes of Action | Update liquidity waterfall slides | 0.8 |
| 9/13/2023 | Biaggi, Mario | Potential Causes of Action | Prepare slides re: company's forecasted liquidity and credit metrics | 1.5 |
| 9/13/2023 | Biaggi, Mario | Potential Causes of Action | Meeting with M. Manning and B. Bostwick (M3) re: company's financial projections | 1.2 |
| 9/13/2023 | Biaggi, Mario | Potential Causes of Action | Follow up meeting with B. Bostwick (M3) re: company's financial projections | 0.3 |
| 9/13/2023 | Biaggi, Mario | Potential Causes of Action | Update DCF analysis based on feedback from B. Bostwick (M3) | 1.6 |
| 9/13/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of public comps cash flow analysis | 1.4 |
| 9/13/2023 | Bostwick, Brian | Potential Causes of Action | Correspondence with M. Biaggi (M3) re: DCF, public and precedent comps analyses | 0.2 |
| 9/13/2023 | Bostwick, Brian | Potential Causes of Action | Meeting with M. Manning and M. Biaggi (M3) re: company's financial projections | 1.2 |
| 9/13/2023 | Bostwick, Brian | Potential Causes of Action | Follow up meeting with M. Biaggi (M3) re: company's financial projections and next steps | 0.3 |
| 9/13/2023 | Bostwick, Brian | Potential Causes of Action | Review DCF analysis | 1.3 |
| 9/13/2023 | Bostwick, Brian | Potential Causes of Action | Review cash flow analysis | 1.5 |

| 9/14/2023 | Manning, Matthew | Potential Causes of Action | Review industry research reports (.2) and correspondence with M3 team re: same (.2) | 0.4 |
|---|---|---|---|---|
| 9/14/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: new projection model provided by the Company | 0.4 |
| 9/14/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of data center capital markets analysis | 1.8 |
| 9/14/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: data center capital markets analysis | 0.2 |
| 9/14/2023 | Biaggi, Mario | Potential Causes of Action | Continued research re: data center capital markets analysis | 1.9 |
| 9/14/2023 | Biaggi, Mario | Potential Causes of Action | Prepare slides re: data center capital markets analysis | 1.4 |
| 9/14/2023 | Biaggi, Mario | Potential Causes of Action | Review special report presentation and provide feedback to B. Bostwick (M3) | 1.6 |
| 9/14/2023 | Biaggi, Mario | Potential Causes of Action | Update slides re: data center capital markets analysis based on feedback from B. Bostwick (M3) | 1.2 |
| 9/14/2023 | Bostwick, Brian | Potential Causes of Action | Review industry and equity research reports | 2.5 |
| 9/14/2023 | Bostwick, Brian | Potential Causes of Action | Review data center capital markets analysis | 0.7 |
| 9/14/2023 | Bostwick, Brian | Potential Causes of Action | Research comparable company valuations | 1.3 |
| 9/15/2023 | Manning, Matthew | Potential Causes of Action | Prepare for (.3) and meet with B. Bostwick, M. Biaggi (M3) to review draft presentation materials (1.2) | 1.5 |
| 9/15/2023 | Biaggi, Mario | Potential Causes of Action | Meeting with M. Manning and B. Bostwick (M3) to review draft presentation | 1.2 |
| 9/15/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of public comps cash flow analysis | 1.9 |
| 9/15/2023 | Biaggi, Mario | Potential Causes of Action | Call with B. Bostwick (M3) re: public comps free cash flow analysis | 0.4 |
| 9/15/2023 | Biaggi, Mario | Potential Causes of Action | Continued research re: public comps cash flow analysis | 1.8 |
| 9/15/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of cash flow test | 1.7 |
| 9/15/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: cash flow test | 0.2 |
| 9/15/2023 | Biaggi, Mario | Potential Causes of Action | Continued research re: cash flow test | 1.6 |
| 9/15/2023 | Biaggi, Mario | Potential Causes of Action | Prepare slides re: cash flow test | 1.3 |

| 9/15/2023 | Biaggi, Mario | Potential Causes of Action | Prepare slides re: public comps cash flow analysis | 0.9 |
|---|---|---|---|---|
| 9/15/2023 | Bostwick, Brian | Potential Causes of Action | Meeting with M. Manning and M. Biaggi (M3) to review draft presentation | 1.2 |
| 9/15/2023 | Bostwick, Brian | Potential Causes of Action | Call with M. Biaggi (M3) re: free cash flow analysis | 0.4 |
| 9/15/2023 | Bostwick, Brian | Potential Causes of Action | Review slides related to cash flow test | 0.6 |
| 9/15/2023 | Bostwick, Brian | Potential Causes of Action | Research regarding cash flow test | 2.4 |
| 9/15/2023 | Bostwick, Brian | Potential Causes of Action | Continued research regarding cash flow test | 2.5 |
| 9/15/2023 | Bostwick, Brian | Potential Causes of Action | Review comparable companies cash flow | 2.7 |
| 9/16/2023 | Manning, Matthew | Potential Causes of Action | Review and comment on draft analysis (1.3) and correspondence with B. Bostwick, M. Biaggi (M3) re: same (.2) | 1.5 |
| 9/18/2023 | Biaggi, Mario | Potential Causes of Action | Update draft presentation with citations of sources and assumptions | 1.9 |
| 9/18/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B Bostwick (M3) re: citations of sources and assumptions | 0.3 |
| 9/18/2023 | Biaggi, Mario | Potential Causes of Action | Continue to update draft presentation with citations of sources and assumptions | 1.8 |
| 9/18/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of data center capital raises summary | 1.8 |
| 9/18/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: data center capital raises summary | 0.2 |
| 9/18/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of data center capital raises summary | 1.7 |
| 9/18/2023 | Biaggi, Mario | Potential Causes of Action | Prepare slides re: data center capital raises summary | 1.3 |
| 9/18/2023 | Manning, Matthew | Potential Causes of Action | Review rating agency reports (.4) and conduct research on state of capital markets at time of transactions under consideration (.5); correspondence with B. Bostwick, M. Biaggi (M3) re: next steps on draft analysis (.1) | 1.0 |
| 9/18/2023 | Bostwick, Brian | Potential Causes of Action | Prepare slides related to Company financing events | 1.7 |
| 9/18/2023 | Bostwick, Brian | Potential Causes of Action | Review precedent transactions analysis | 1.3 |

| 9/18/2023 | Bostwick, Brian | Potential Causes of Action | Review cash flow analysis | 1.6 |
| 9/18/2023 | Bostwick, Brian | Potential Causes of Action | Correspondence with M. Biaggi (M3) re: data center capital raises | 0.2 |
| 9/18/2023 | Bostwick, Brian | Potential Causes of Action | Review footnotes in draft presentation | 1.3 |
| 9/18/2023 | Bostwick, Brian | Potential Causes of Action | Prepare DCF sensitivity analysis | 1.2 |
| 9/18/2023 | Bostwick, Brian | Potential Causes of Action | Continue to review solvency analysis | 1.1 |
| 9/18/2023 | Bostwick, Brian | Potential Causes of Action | Revise comps analysis | 1.6 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Updating cash flow test slides based on feedback from M. Manning (M3) | 1.4 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of DCF analysis | 1.6 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Update DCF slides based on feedback from M. Manning (M3) | 1.2 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of DCF analysis | 1.4 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: DCF analysis | 0.3 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of public comps analysis | 1.1 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of operational comps analysis | 1.8 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Update public comps slides based on feedback from M. Manning (M3) | 0.9 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Update adequate capital slides based on feedback from M. Manning (M3) | 1.6 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Meeting with M. Manning and B. Bostwick (M3) re: draft report review | 1.1 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of capital market issuances | 1.2 |
| 9/19/2023 | Biaggi, Mario | Potential Causes of Action | Update slides re: capital market issuances | 0.9 |
| 9/19/2023 | Manning, Matthew | Potential Causes of Action | Meet with B. Bostwick, M. Biaggi (M3) to review and provide guidance on draft presentation materials | 1.0 |
| 9/19/2023 | Bostwick, Brian | Potential Causes of Action | Review cash flow analysis | 1.2 |
| 9/19/2023 | Bostwick, Brian | Potential Causes of Action | Continue to review cash flow analysis | 1.3 |
| 9/19/2023 | Bostwick, Brian | Potential Causes of Action | Review equity research | 0.4 |

23

| 9/19/2023 | Bostwick, Brian | Potential Causes of Action | Research in support of public comps analysis | 1.3 |
|---|---|---|---|---|
| 9/19/2023 | Bostwick, Brian | Potential Causes of Action | Prepare slides re: Company Forecast assumptions and strategic plan | 2.5 |
| 9/19/2023 | Bostwick, Brian | Potential Causes of Action | Revise public comps analysis | 1.4 |
| 9/19/2023 | Bostwick, Brian | Potential Causes of Action | Review DCF analysis and sensitivities | 1.2 |
| 9/19/2023 | Bostwick, Brian | Potential Causes of Action | Meeting with M. Manning and M. Biaggi (M3) re: draft report | 1.1 |
| 9/20/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of DCF analysis | 1.9 |
| 9/20/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: DCF analysis | 0.3 |
| 9/20/2023 | Biaggi, Mario | Potential Causes of Action | Update DCF analysis based on feedback from B. Bostwick (M3) | 1.8 |
| 9/20/2023 | Biaggi, Mario | Potential Causes of Action | Update DCF slides based on feedback from B. Bostwick (M3) | 0.8 |
| 9/20/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of data center capital markets summary analysis | 1.7 |
| 9/20/2023 | Biaggi, Mario | Potential Causes of Action | Update data center capital markets summary analysis slides | 1.2 |
| 9/20/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of precedent transactions analysis | 1.8 |
| 9/20/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of public comps analysis | 1.5 |
| 9/20/2023 | Manning, Matthew | Potential Causes of Action | Review and analyze historical debt trading levels (.3) and correspondence with B. Bostwick, M. Biaggi (M3) re: same (.1) | 0.4 |
| 9/20/2023 | Bostwick, Brian | Potential Causes of Action | Research data center capital markets | 1.3 |
| 9/20/2023 | Bostwick, Brian | Potential Causes of Action | Research in support of precedent transactions analysis | 1.4 |
| 9/20/2023 | Bostwick, Brian | Potential Causes of Action | Research in support of comps analysis | 1.1 |
| 9/20/2023 | Bostwick, Brian | Potential Causes of Action | Revise public comps analysis | 0.9 |
| 9/20/2023 | Bostwick, Brian | Potential Causes of Action | Review DCF analysis | 1.2 |
| 9/20/2023 | Bostwick, Brian | Potential Causes of Action | Research In support of DCF analysis | 1.6 |
| 9/20/2023 | Bostwick, Brian | Potential Causes of Action | Review capital adequacy analysis | 1.7 |
| 9/20/2023 | Bostwick, Brian | Potential Causes of Action | Update Executive summary slides | 1.8 |

| 9/21/2023 | Biaggi, Mario | Potential Causes of Action | Update key events timeline slide | 1.3 |
|---|---|---|---|---|
| 9/21/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of DCF analysis | 1.6 |
| 9/21/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of public comps analysis | 1.2 |
| 9/21/2023 | Biaggi, Mario | Potential Causes of Action | Update DCF analysis slides | 0.6 |
| 9/21/2023 | Biaggi, Mario | Potential Causes of Action | Update public comps slides | 0.5 |
| 9/21/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of comparative analysis of management forecasts over time | 1.4 |
| 9/21/2023 | Biaggi, Mario | Potential Causes of Action | Review draft presentation for consistency | 0.8 |
| 9/21/2023 | Manning, Matthew | Potential Causes of Action | Review and prepare draft report to the special committee (1.3) and correspondence with B. Bostwick (M3) re: same (.3); review and analyze diligence information from Debtors including operating models and presentations (1.8) | 3.4 |
| 9/21/2023 | Bostwick, Brian | Potential Causes of Action | Review updates to DCF analysis and slides | 0.4 |
| 9/21/2023 | Bostwick, Brian | Potential Causes of Action | Review updates to comps analysis | 0.3 |
| 9/21/2023 | Bostwick, Brian | Potential Causes of Action | Review draft report | 1.9 |
| 9/21/2023 | Bostwick, Brian | Potential Causes of Action | Prepare slides re: Management forecasts | 1.8 |
| 9/22/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of comparative analysis of management forecasts over time | 1.9 |
| 9/22/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of valuation summary slides | 1.6 |
| 9/22/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with M. Manning and B. Bostwick (M3) re: valuation summary slides | 0.3 |
| 9/22/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: comparative analysis of management forecasts over time | 0.2 |
| 9/22/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of comparative analysis of management forecasts over time | 1.7 |
| 9/22/2023 | Biaggi, Mario | Potential Causes of Action | Prepare slide re: management forecasts comparison over time | 0.8 |
| 9/22/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of data center capital markets analysis | 1.2 |

| 9/22/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of DCF analysis | 1.9 |
|---|---|---|---|---|
| 9/22/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with M. Manning and B. Bostwick (M3) re: DCF analysis | 0.2 |
| 9/22/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of DCF analysis | 1.8 |
| 9/22/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of tax summary analysis | 1.4 |
| 9/22/2023 | Bostwick, Brian | Potential Causes of Action | Correspondence with M. Biaggi (M3) re: comparative analysis of management forecasts | 0.2 |
| 9/22/2023 | Bostwick, Brian | Potential Causes of Action | Research in support of valuation summary slides | 1.3 |
| 9/22/2023 | Bostwick, Brian | Potential Causes of Action | Review DCF analysis | 0.7 |
| 9/22/2023 | Bostwick, Brian | Potential Causes of Action | Research In support of DCF analysis | 1.3 |
| 9/22/2023 | Bostwick, Brian | Potential Causes of Action | Prepare slides re: Management forecasts | 1.1 |
| 9/22/2023 | Bostwick, Brian | Potential Causes of Action | Review valuation summary analysis and slides | 0.6 |
| 9/22/2023 | Bostwick, Brian | Potential Causes of Action | Review cash flow analysis | 1.1 |
| 9/22/2023 | Bostwick, Brian | Potential Causes of Action | Correspondence with M. Manning, M. Biaggi (M3) re: DCF, valuation summary | 0.3 |
| 9/22/2023 | Bostwick, Brian | Potential Causes of Action | Continue to review cash flow analysis | 1.3 |
| 9/22/2023 | Bostwick, Brian | Potential Causes of Action | Review draft presentation | 0.9 |
| 9/23/2023 | Manning, Matthew | Potential Causes of Action | Review and prepare draft report to the special committee (1.1); review diligence information provided by Company as well as industry and equity research on competitors and capital markets (1.9) | 3.0 |
| 9/24/2023 | Manning, Matthew | Potential Causes of Action | Review and prepare draft report to the special committee (2.9) and discussions with B. Bostwick (M3) re: same (.8); review underlying diligence information provided by company including operating model, minutes and presentations (1.3) | 5.0 |
| 9/24/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: solvency report presentation updates | 0.5 |
| 9/24/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of public comps analysis | 1.8 |

| 9/24/2023 | Biaggi, Mario | Potential Causes of Action | Update slides re: public comps analysis | 0.7 |
|---|---|---|---|---|
| 9/24/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of cash flow test summary analysis | 1.9 |
| 9/24/2023 | Biaggi, Mario | Potential Causes of Action | Update slides re: cash flow test summary analysis | 0.6 |
| 9/24/2023 | Biaggi, Mario | Potential Causes of Action | Review draft presentation for consistency | 0.6 |
| 9/24/2023 | Bostwick, Brian | Potential Causes of Action | Correspondence with M. Biaggi (M3) re: draft report updates | 0.5 |
| 9/24/2023 | Bostwick, Brian | Potential Causes of Action | Revise slides re: comps analysis | 0.4 |
| 9/24/2023 | Bostwick, Brian | Potential Causes of Action | Research in support of cash flow analysis | 1.1 |
| 9/24/2023 | Bostwick, Brian | Potential Causes of Action | Review analysis and draft presentation | 1.6 |
| 9/24/2023 | Bostwick, Brian | Potential Causes of Action | Various calls and correspondence with M. Manning (M3) re: draft of report | 0.8 |
| 9/24/2023 | Bostwick, Brian | Potential Causes of Action | Review and revise DCF analysis | 1.2 |
| 9/24/2023 | Bostwick, Brian | Potential Causes of Action | Review and revise cash flow analysis | 1.4 |
| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of DCF analysis | 1.6 |
| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Review draft presentation with M. Meghji, M. Manning and B. Bostwick (M3) | 0.7 |
| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of peer comps slides | 1.8 |
| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Update peer comps slides | 0.3 |
| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of cash flow test slides | 1.9 |
| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Update cash flow test slides | 0.6 |
| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: cash flow test slides | 0.4 |
| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Continued research in support of DCF analysis | 1.7 |
| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Update DCF analysis slides | 0.6 |
| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Review draft report presentation for consistency and edits | 1.9 |
| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: updates to draft report | 0.3 |

| 9/25/2023 | Biaggi, Mario | Potential Causes of Action | Continued review of draft report presentation for consistency and edits | 0.8 |
|---|---|---|---|---|
| 9/25/2023 | Meghji, Mohsin | Potential Causes of Action | Review of draft report (1.5) and call with M3 team (.7) | 2.2 |
| 9/25/2023 | Bostwick, Brian | Potential Causes of Action | Discussion with M. Meghji, M. Manning, M. Biaggi (M3) to review draft materials | 0.7 |
| 9/25/2023 | Bostwick, Brian | Potential Causes of Action | Correspondence with M. Biaggi (M3) re: cash flow (.4) and presentation (.3) | 0.7 |
| 9/25/2023 | Bostwick, Brian | Potential Causes of Action | Revise comps analysis | 0.4 |
| 9/25/2023 | Bostwick, Brian | Potential Causes of Action | Research in support of comps analysis | 1.4 |
| 9/25/2023 | Bostwick, Brian | Potential Causes of Action | Research in support of DCF analysis | 1.9 |
| 9/25/2023 | Bostwick, Brian | Potential Causes of Action | Review draft analysis and presentation | 1.4 |
| 9/25/2023 | Bostwick, Brian | Potential Causes of Action | Continue to review draft analysis and presentation | 1.1 |
| 9/25/2023 | Bostwick, Brian | Potential Causes of Action | Review cash flow analysis | 1.3 |
| 9/25/2023 | Manning, Matthew | Potential Causes of Action | Prepare for (.4) and participate in discussion with M. Meghji, B. Bostwick, M. Biaggi (M3) to review draft materials (.7); correspondence with Katten team and M3 team re: draft materials (.4); review comments re: materials from M. Meghji (M3) and Katten team (.6) and prepare related updates (.9) | 3.0 |
| 9/26/2023 | Biaggi, Mario | Potential Causes of Action | Review draft report | 1.8 |
| 9/26/2023 | Biaggi, Mario | Potential Causes of Action | Continued review of draft report | 0.7 |
| 9/26/2023 | Bostwick, Brian | Potential Causes of Action | Review draft presentation | 0.9 |
| 9/26/2023 | Bostwick, Brian | Potential Causes of Action | Review comps analysis | 0.4 |
| 9/27/2023 | Meghji, Mohsin | Potential Causes of Action | Prepare for meeting with counsel and disinterested directors | 1.0 |
| 9/27/2023 | Manning, Matthew | Potential Causes of Action | Correspondence with M. Roitman (Katten) re: preliminary report (.2) and review of same ahead of special committee meeting (.5) | 0.7 |
| 9/28/2023 | Biaggi, Mario | Potential Causes of Action | Prepare notes for M. Manning and B. Bostwick (M3) in advance re: meeting with counsel and committee | 1.8 |

| 9/28/2023 | Biaggi, Mario | Potential Causes of Action | Review draft report presentation in preparation for meeting with counsel and committee | 0.7 |
|---|---|---|---|---|
| 9/28/2023 | Biaggi, Mario | Potential Causes of Action | Meeting with counsel and disinterested directors re: report and analysis | 1.0 |
| 9/28/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: finalization of report presentation | 0.2 |
| 9/28/2023 | Biaggi, Mario | Potential Causes of Action | Finalize report presentation based on feedback from B. Bostwick (M3) | 1.8 |
| 9/28/2023 | Biaggi, Mario | Potential Causes of Action | Research in support of follow up question from meeting with counsel and disinterested directors | 0.5 |
| 9/28/2023 | Bostwick, Brian | Potential Causes of Action | Attend call with Special Committee, Katten, and M3 to discuss preliminary report | 1.0 |
| 9/28/2023 | Bostwick, Brian | Potential Causes of Action | Correspondence with M. Biaggi (M3) re: preliminary report presentation | 0.2 |
| 9/28/2023 | Bostwick, Brian | Potential Causes of Action | Research potential follow-up questions based on meeting with Special Committee | 0.5 |
| 9/28/2023 | Bostwick, Brian | Potential Causes of Action | Finalize preliminary analysis and presentation | 1.8 |
| 9/28/2023 | Bostwick, Brian | Potential Causes of Action | Prepare for meeting with Special Committee including discussions with M. Manning (M3) | 1.5 |
| 9/28/2023 | Manning, Matthew | Potential Causes of Action | Participate in call with Disinterested Directors, Katten team and M3 team re: preliminary report (1); prepare for meeting by reviewing report (2.1) and discussions with M3 team re: same and potential questions and key considerations (.9) | 4.0 |
| 9/29/2023 | Meghji, Mohsin | Potential Causes of Action | Follow-up discussions with M3 team and counsel re: meeting with special committee and review of correspondence regarding same | 0.8 |
| 9/29/2023 | Bostwick, Brian | Potential Causes of Action | Review preliminary analysis | 1.0 |
| 10/2/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: solvency presentation text edits | 0.5 |

| 10/2/2023 | Biaggi, Mario | Potential Causes of Action | Prepare for call with counsel re: draft presentation | 0.7 |
|---|---|---|---|---|
| 10/2/2023 | Biaggi, Mario | Potential Causes of Action | Update presentation based on feedback from B. Bostwick (M3) | 1.9 |
| 10/2/2023 | Biaggi, Mario | Potential Causes of Action | Final review of presentation | 1.9 |
| 10/2/2023 | Bostwick, Brian | Potential Causes of Action | Review presentation and related analysis | 2.9 |
| 10/2/2023 | Bostwick, Brian | Potential Causes of Action | Review solvency analysis excel files | 2.1 |
| 10/2/2023 | Manning, Matthew | Potential Causes of Action | Review presentation and related analysis including underlying assumptions and outputs | 0.9 |
| 10/9/2023 | Biaggi, Mario | Potential Causes of Action | Review counsel's final presentation for suggested edits | 1.9 |
| 10/9/2023 | Biaggi, Mario | Potential Causes of Action | Correspondence with B. Bostwick (M3) re: final presentation | 0.2 |
| 10/9/2023 | Biaggi, Mario | Potential Causes of Action | Continued review counsel's final presentation for suggested edits | 1.8 |
| 10/9/2023 | Biaggi, Mario | Potential Causes of Action | Call with M. Manning and B. Bostwick (M3) re: final presentation | 0.4 |

| 10/9/2023 | Biaggi, Mario | Potential Causes of Action | Review of final report in preparation to send to counsel | 1.9 |
| 10/9/2023 | Bostwick, Brian | Potential Causes of Action | Review of final materials | 2.1 |
| 10/9/2023 | Bostwick, Brian | Potential Causes of Action | Call with M. Manning, M. Biaggi (M3) regarding solvency analysis | 0.5 |
| 10/9/2023 | Bostwick, Brian | Potential Causes of Action | Review M3 materials | 2.4 |
| 10/9/2023 | Manning, Matthew | Potential Causes of Action | Discussion with B. Bostwick, M. Biaggi (M3) re: solvency analysis | 0.4 |
| 10/12/2023 | Manning, Matthew | Potential Causes of Action | Participate in weekly special committee meeting | 0.8 |