## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

### FEE APPLICATION COVER SHEET FOR HILCO REAL ESTATE, LLC FOR THE PERIOD JUNE 4, 2023, THROUGH JANUARY 12, 2024

Debtor:  Cyxtera Technologies, Inc., *et al.*[1]          Applicant:  Hilco Real Estate, LLC

Case No.:  23-14853 (JKS)          Client: Debtors and Debtors-in-Possession

Chapter: 11          Cases Filed:  June 4, 2023

COMPLETION AND SIGNING OF THIS FORM CONSTITUES A CERTIFICATION
UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746

RETENTION ORDER ATTACHED

Dated: January 25, 2024
Northbrook, Illinois

**HILCO REAL ESTATE, LLC**

By: */s/ Eric Kaup*
Name: Eric Kaup
Title: Executive Vice President & General Counsel, Managing Member

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/cyxtera.  The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

---

**SECTION I**
**FEE SUMMARY**

---

First and Final Fee Application of Hilco Real Estate, LLC For the Period From June 4, 2023 to January 12, 2024[1]

| | |
|---|---|
| Fee Totals | $2,115,608.82 |
| Disbursement Totals | $0.00 |
| Total Fee Application | $2,115,608.82 |

| | FEES | EXPENSES |
|---|---|---|
| Total Previous Fee Requested | $0.00 | $0.00 |
| Total Fees Allowed To Date | $0.00 | $0.00 |
| Total Retainer (If Applicable) | $0.00 | $0.00 |
| Total Holdback (If Applicable) | $0.00 | $0.00 |
| Total Received By Applicant | $2,115,608.82[2] | $0.00 |

---

[1] Under the Plan, professionals are only required to file final fee applications for the period from the Petition Date through the Confirmation Date. Nevertheless, given Hilco's fee structure, this Application includes the fee period through January 12, 2024, the Effective Date.

[2] The Retention Order (as defined herein) authorized the Debtors to compensate Hilco in accordance with the Engagement Agreement (as defined herein) during the chapter 11 cases.

---

**SECTION II**
**CASE HISTORY**

---

(1)     Date case filed:  June 4, 2023

(2)     Chapter under which case commenced:  Chapter 11

(3)     Date of retention:   July 18, 2023, effective as of June 4, 2023.   See **Exhibit A**.

If limit on number of hours or other limitations to retention, set forth: N/A

(4)     Summarize in brief the benefits to the estate and attach supplements as needed:   See narrative portion of fee application.

(5)     Anticipated distribution to creditors:

(a)     Administration expense: Paid in full.

(b)     Secured creditors: To be paid in accordance with the *Fourth Amended Joint Plan of Reorganization of Cyxtera Technologies, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 694, Exhibit A] (the "Plan").

(c)     Priority creditors: To be paid in accordance with the Plan.

(d)     General unsecured creditors: To be paid in accordance with the Plan.

(6)     Final disposition of case and percentage of dividend paid to creditors (if applicable):  This is the first and final fee application.  Distributions to creditors will be made in accordance with the Plan.

2

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Co-Counsel for Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| CYXTERA TECHNOLOGIES, INC., *et al.*, | Case No. 23-14853 (JKS) |
| Debtors. [1] | (Jointly Administered) |

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/cyxtera.  The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

**FIRST AND FINAL FEE APPLICATION OF HILCO REAL ESTATE, LLC FOR
ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AS
REAL ESTATE CONSULTANT AND ADVISOR TO THE DEBTORS FOR THE
PERIOD FROM JUNE 4, 2023 THROUGH JANUARY 12, 2024**

Pursuant to 11 U.S.C. § 328 and Rule 2016 of the Federal Rules of Bankruptcy Procedure,

Hilco Real Estate, LLC ("Hilco") hereby moves the Bankruptcy Court for the District of New

Jersey (this "Court") for final allowance of compensation for professional services rendered as real

estate consultant and advisor to the above-captioned debtors and debtors-in-possession

(collectively, the "Debtors") in the amount of $2,115,608.82 for the period commencing June 4,

2023 through January 12, 2024 (the "Fee Period").[2]   In support of its application (the

"Application"), Hilco respectfully represents as follows:

## BACKGROUND

1.     On June 4, 2023, (the "Petition Date"), the Debtors each commenced with this

Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The

Debtors' Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

2.     On June 21, 2023, the Office of the United States Trustee for the District of New

Jersey appointed an official committee of unsecured creditors pursuant to section 1102 of the

Bankruptcy Code (the "Committee") [Docket No. 133].

3.     Hilco was employed as real estate consultant and advisor for the Debtors in

connection with these Chapter 11 Cases, pursuant to that certain *Order (I) Authorizing the*

*Employment and Retention of Hilco Real Estate, LLC as Real Estate Consultant and Advisor to*

*the Debtors and Debtors in Possession Effective As Of the Petition Date, (II) Approving the Terms*

---

[2]     As set forth in the Invoices attached hereto as **Exhibit B**, Hilco's aggregate fees earned under its Engagement
Agreement (as defined below) during the Fee Period are in the amount of $2,115,608.82.  Prior to the Petition
Date, Hilco received a monthly consulting fee in the amount of $50,000.

2

of Hilco's Employment, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief [Docket No. 291] (the "Retention Order") attached hereto as **Exhibit A**.  The Retention Order authorized Hilco to be compensated in the ordinary course of business and in accordance with the terms of the Real Estate Consulting and Advisory Services Agreement effective as of May 9, 2023, attached as Exhibit 1 to the Retention Order (the "Engagement Agreement"); *provided*, *however*, Hilco was required to submit a final fee application with a summary of fees earned and expenses incurred along with a summary of what fees and expenses have been paid, in connection with these Chapter 11 Cases.

4.      As set forth in the *Debtors' Application For Entry of an Order (I) Authorizing the Employment and Retention of Hilco Real Estate, LLC as Real Estate Consultant and Advisor to the Debtors and Debtors in Possession Effective As Of the Petition Date, (II) Approving the Terms of Hilco's Employment, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief* [Docket No. 199], Hilco engaged Newmark & Company Real Estate, Inc. ("Newmark") to provide certain services and consultation to Hilco in support of Hilco's performance of the services under the Engagement Agreement.  In connection therewith, and as approved by the Debtors, Hilco has agreed to pay Newmark a fee in an amount equal to thirty-five percent (35%) of the fees paid to Hilco under the Engagement Agreement.

## COMPENSATION PAID AND ITS SOURCE

5.      All services for which compensation is requested by Hilco were performed for or on behalf of the Debtors.

6.      Attached hereto as **Exhibit B** are the invoices with a summary of the fees earned during the Fee Period by category as outlined in the Engagement Agreement (the "Invoices").

3

**SUMMARY OF SERVICES RENDERED AND BASIS FOR RELIEF**

7.       The Debtors retained Hilco as the Debtors' exclusive agent to provide real estate consulting and advisory services with respect to negotiating with third parties and the Debtors' landlords (the "Landlords") to enter into lease restructuring agreements in connection with certain of the Debtors' unexpired leases of nonresidential real property (the "Leases").  To that end, Hilco has provided real estate consulting and advisory services to the Debtors including, but not limited to the following: (i) consulting with the Debtors to ascertain the Debtors' goals, objectives, and financial parameters; (ii) reviewing the Debtors' portfolio of Leases; (iii) consulting with the Debtors with respect to a strategic plan for restructuring, selling and/or assigning, shortening the term, or terminating the Leases; (iv) negotiating, on the Debtors' behalf, the terms of restructuring, term shortening, termination, and sale and/or assignment agreements with third parties and the Landlords under the Leases, in accordance with the strategy; (v) providing the Debtors with weekly Lease status reports and periodic written reports regarding the status of any negotiations; (vi) providing general real estate consulting and advisory services with respect to the Leases and the implementation of the strategy; and (vii) assisting the Debtors in closing the pertinent Lease restructuring, sale, and/or assignment, term shortening, and termination agreements.

8.       Hilco submits this Application for final allowance of reasonable compensation for the actual, reasonable and necessary professional services that it has rendered as real estate consultant and advisor for the Debtors in these Chapter 11 Cases for the period June 4, 2023 through January 12, 2024.  For the period covered by this Application, Hilco seeks final approval of fees for services rendered in the amount of $2,115,608.82 and actual, reasonable and necessary expenses totaling $0.00.

4

9.     As a direct result of Hilco's efforts, the Debtors were able to make significant strides towards achieving their goals and objectives for reducing lease exposure.  By way of specific example, prior to the Petition Date and continuing through the Fee Period, Hilco reviewed the Debtors' Lease portfolio, with the objective of optimizing their go-forward footprint.  This analysis included, among other components, determining each leased location's current and projected profitability, as well as the market rate for each leased location's rent terms.

10.     Specifically, in consultation with the Debtors and their bankruptcy counsel, Hilco developed a strategy to reduce the Debtors' ongoing Lease obligations.  The Hilco team worked with the Debtors and their advisors to revise deal structures to try to mitigate risk in what would be the go-forward portfolio.  Hilco was able to negotiate the sale, novation, and/or the restructuring of thirteen (13) Leases, resulting in approximately $5.7 million in loss avoidance and achieving total lease savings of approximately $31.5 million when calculated by the full terms of the Leases.  Not only did Hilco's services improve EBITDA for the potential go-forward locations, but they also reduced 502(b)(6) claims and other administrative expenses of the Debtors' estates.

11.     Given the results obtained, Hilco respectfully submits that the services for which it seeks compensation in this Application were necessary for, beneficial to, and in the best interests of, the Debtors.  Hilco further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors.

12.     Hilco has endeavored to represent the Debtors in the most efficient manner possible.  Moreover, Hilco has endeavored to coordinate with the other professionals involved in this case so as to minimize any duplication of effort and to minimize fees and expenses to the Debtors.

5

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

13.     Section 328(a) of the Bankruptcy Code provides the trustee, or a committee appointed under section 1102, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.  11 U.S.C. § 328(a).  Section 328 also says:

> The court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

> 11 U.S.C. § 328(a).

14.     The foregoing professional services performed by Hilco were appropriate and necessary.   They were in the best interests of the Debtors and other parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.  The professional services were performed in an appropriately expeditious and efficient manner.

15.     In addition, throughout the Fee Period, pursuant to the Retention Order, Hilco provided Invoices, as well as notices of its fees, to the following: (a) the Office of the United States Trustee for the District of New Jersey; (b) the Debtors; (c) counsel for the Debtors; and (d) counsel for the Committee (collectively the "Notice Parties").  Pursuant to the Retention Order, the Notice Parties have fourteen (14) days from receipt of the stated notice with Invoice, to review and dispute any Invoice submitted by Hilco.  No such objection or dispute has been made by any of the Notice Parties as of the date hereof.

6

WHEREFORE, Hilco requests that final allowance be made to it in the sum of $2,115,608.82 as compensation for necessary professional services rendered to the Debtors for the Fee Period, and further requests such other and further relief as this Court may deem just and proper.

Dated: January 25, 2024     HILCO REAL ESTATE, LLC
   Northbrook, Illinois

          _/s/ Eric Kaup_____
          Name:  Eric Kaup
          Title:  Executive Vice President & General
          Counsel, Managing Member

## Exhibit A

**Retention Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Christopher Marcus, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
christopher.marcus@kirkland.com
derek.hunter@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel for Debtors and Debtors in*
*Possession*

Order Filed on July 18, 2023
by Clerk
U.S. Bankruptcy Court
District of New Jersey

| | |
|---|---|
| In re:<br><br>CYXTERA TECHNOLOGIES, INC., *et al*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-14853 (JKS)<br><br>(Jointly Administered) |

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://www.kccllc.net/cyxtera.  The location of Debtor Cyxtera Technologies, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  2333 Ponce de Leon Boulevard, Ste. 900, Coral Gables, Florida 33134.

2314853230718000000000008

**ORDER (I) AUTHORIZING THE
EMPLOYMENT AND RETENTION
OF HILCO REAL ESTATE, LLC AS
REAL ESTATE CONSULTANT AND ADVISOR
TO THE DEBTORS AND DEBTORS IN POSSESSION
EFFECTIVE AS OF THE PETITION DATE, (II) APPROVING
THE TERMS OF HILCO'S EMPLOYMENT, (III) WAIVING CERTAIN
TIMEKEEPING REQUIREMENTS, AND (IV) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through ten (10), is **ORDERED**.

**DATED: July 18, 2023**

_____

Honorable John K. Sherwood
United States Bankruptcy Court

(Page | 3)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Authorizing the Employment and Retention of Hilco Real Estate, LLC as Real Estate Consultant and Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date, (II) Approving the Terms of Hilco's Employment, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

Upon the *Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of Hilco Real Estate, LLC as Real Estate Consultant and Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date, (II) Approving the Terms of Hilco's Employment, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief* (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") (a) authorizing the Debtors to, under sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1, employ and retain Hilco Real Estate, LLC  ("Hilco"), as real estate consultant and advisor to the Debtors in accordance with that certain real estate consulting and advisory services agreement executed on May 9, 2023 by and between Debtor Cyxtera Technologies, Inc. and Hilco (the "Engagement Agreement"), a copy of which is attached hereto as **Exhibit 1**, effective as of the Petition Date; (b) approving the terms of Hilco's employment and retention, including the fee and expense structure and the indemnification provisions set forth in the Engagement Agreement; (c) waiving certain timekeeping requirements of the Bankruptcy Rules, Local Rules, and the U.S. Trustee Guidelines; and (d) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration and the Baker Declaration; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the*

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

(Page | 4)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Authorizing the Employment and Retention of Hilco Real Estate, LLC as Real Estate Consultant and Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date, (II) Approving the Terms of Hilco's Employment, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

*Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that sufficient cause exists for the relief set forth herein; and this Court having found that the Debtors' notice of the Application was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "<u>Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor **IT IS HEREBY ORDERED THAT**:

1.      The Application is **GRANTED** on a final basis as set forth herein.

2.      In accordance with sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(a), and Local Rules 2014-1 and 2016-1, the Debtors are hereby authorized to employ and retain Hilco as their real estate consultant and advisor in accordance with the terms and conditions set forth in the Application and the Engagement Agreement, as modified by this Order, effective as of the Petition Date.

3.      Except to the extent set forth herein, the Engagement Agreement, together with all annexes and exhibits thereto and all compensation set forth therein, including, without limitation, the Fee Structure and Indemnification Provision are approved pursuant to section 328(a) of the

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Authorizing the Employment and Retention of Hilco Real Estate, LLC as Real Estate Consultant and Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date, (II) Approving the Terms of Hilco's Employment, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

Bankruptcy Code, and Hilco shall be compensated, reimbursed, and indemnified pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of, and at the times specified in, the Engagement Agreement, as modified by the Order.

4.      The terms and provisions of the Engagement Agreement are approved, and the Debtors are authorized to compensate Hilco in accordance with the Engagement Agreement.  Hilco shall not be required to file interim fee applications; *provided* that Hilco shall (i) file a final fee application with a summary of fees earned and expenses incurred along with a summary of what fees and expenses have been paid, and (ii) submit invoices to the Debtors, counsel for Debtors, the Office of the United States Trustee for the District of New Jersey (the "U.S. Trustee"), and counsel to the Committee for the payment of compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases in accordance with the terms of the Engagement Agreement when such compensation becomes due and owing and such expenses are incurred.  Such parties shall have fourteen (14) days to review and dispute any such invoice submitted by Hilco, and if no such disputes are received, without any further order of the Court, the Debtors shall be authorized to pay such Hilco invoices in accordance with the terms of the Engagement Agreement.

5.      If an objection is received, the Debtors shall withhold payment of the portion of the fees that is objected to and promptly pay the remainder, and all objections that are not resolved shall be preserved and presented to the Court for determination.

(Page | 6)

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
|---|---|
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Authorizing the Employment and Retention of Hilco Real Estate, LLC as Real Estate Consultant and Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date, (II) Approving the Terms of Hilco's Employment, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

6.    The fees payable to Hilco pursuant to the Engagement Agreement shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code; *provided*, *however*, that notwithstanding the foregoing, the U.S. Trustee may review the reasonableness of Hilco's fees requested in the final fee application under section 330 of the Bankruptcy Code as set forth in paragraph 9 below.

7.    The payment of all fees and reimbursement of all expenses pursuant to the Engagement Agreement shall be free and clear of all liens, claims, and encumbrances.

8.    Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, orders of this Court, and the United States Trustee Program's *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines"), Hilco shall be granted a limited waiver of the information requirements such that Hilco shall not be required to maintain records of detailed time entries in connection with the Consulting and Advisory Services as that term is defined in the Engagement Agreement; *provided* that in the event that Hilco provides any Additional Services to the Debtors, and in connection with such Additional Services Hilco is to be compensated on a time and materials basis, Hilco shall be required to file interim and final fee applications on an hourly basis only and the time detail provided for such fees may be provided in a summary fashion.  Specifically, Hilco will submit time records setting forth

| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
|---|---|
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Authorizing the Employment and Retention of Hilco Real Estate, LLC as Real Estate Consultant and Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date, (II) Approving the Terms of Hilco's Employment, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

the hours spent on each activity and a description of the Additional Services provided but will not break out its time into tenth-of-an-hour increments.

9.      Notwithstanding anything to the contrary in this Order, the Application, the Engagement Agreement, or the Baker Declaration, the U.S. Trustee shall retain the right and be entitled to object to Hilco's fees and expenses based on the reasonableness standard provided for in section 330 and 331 of the Bankruptcy Code.  Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee on appeal or otherwise, with respect to the reasonableness of Hilco's fees and compensation and reimbursement requests.

10.      In the event that, during the pendency of these chapter 11 cases, Hilco requests reimbursement for any attorneys' fees and/or expenses, the invoices and supporting time records from such attorneys shall be included in Hilco's fee applications, and such invoices and time records shall be in compliance with the Local Rules, the U.S. Trustee Guidelines, and approval of the Court under the standards of section 330 and 331 of the Bankruptcy Code, without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code. Notwithstanding the foregoing, Hilco shall only be reimbursed for any legal fees incurred in connection with these chapter 11 cases to the extent permitted under applicable law and the decisions of this Court; *provided*, *however*, that Hilco shall not seek reimbursement of any attorney

(Page | 8)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Authorizing the Employment and Retention of Hilco Real Estate, LLC as Real Estate Consultant and Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date, (II) Approving the Terms of Hilco's Employment, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

fees incurred defending any objection filed with respect to Hilco's final fee application in these cases.

11.     Hilco shall disclose any and all facts that may have a bearing on whether Hilco, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest in these cases.  The obligation to disclose identified in this paragraph shall be a continuing obligation.

12.     With respect to controversies or claims arising out of or in any way related to the Services in the Hilco Agreement notwithstanding any arbitration, dispute resolution, or exclusive jurisdiction provisions contained in the Engagement Agreement, any disputes arising under the Engagement Agreement shall be heard in this Court during the pendency of these chapter 11 cases.

13.     The Indemnification Provision set forth in the Engagement Agreement is approved, subject during the pendency of these cases to the following:

    a.    Hilco shall not be entitled to indemnification, contribution, or reimbursement set forth in the Indemnification Provision, unless such indemnification, contribution, or reimbursement is approved by the Court;

    b.    Notwithstanding any provision of the Application and the Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify or provide contribution or reimbursement to Hilco for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Hilco's gross negligence, willful misconduct, bad faith, fraud, or self-dealing to which the Debtors have not consented, (ii) for a contractual dispute in which the Debtors allege the breach of Hilco's contractual obligations, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled without the Debtors' consent prior to a judicial determination as to the Indemnified Person's gross negligence, willful misconduct, bad

(Page | 9)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Authorizing the Employment and Retention of Hilco Real Estate, LLC as Real Estate Consultant and Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date, (II) Approving the Terms of Hilco's Employment, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

faith, fraud or unconsented self-dealing but determined by this Court, after notice and a hearing, to be a claim or expense for which Hilco should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order; and

c.      if, before the earlier of: (i) the entry of an order confirming a chapter 11 plan in the chapter 11 cases (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing the chapter 11 cases, Hilco believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Indemnification Provision (as modified by this Order), including, without limitation, the advancement of defense costs, Hilco must file an application therefor in this Court, and the Debtors may not pay any such amounts to Hilco before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, and/or reimbursement by Hilco, and is not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, Hilco. All parties in interest shall retain the right to object to any demand by Hilco for indemnification, contribution, and/or reimbursement; and

d.      any limitations on any amounts to be contributed by Hilco shall be eliminated from the Engagement Agreement. Hilco shall retain any rights they may have to contribution at common law.

14.      Hilco will work to ensure that the services to be provided by Hilco will not duplicate the services of any of the other professionals retained by the Debtors.

15.      None of the fees payable to Hilco under the Engagement Agreement shall constitute a "bonus" or fee enhancement under applicable law.

16.      To the extent that there may be any inconsistency between the terms of the Application, the Baker Declaration, the Engagement Agreement, and this Order, the terms of this Order shall govern.

(Page | 10)

| | |
|---|---|
| Debtors: | CYXTERA TECHNOLOGIES, INC., *et al.* |
| Case No. | 23-14853 (JKS) |
| Caption of Order: | Order (I) Authorizing the Employment and Retention of Hilco Real Estate, LLC as Real Estate Consultant and Advisor to the Debtors and Debtors in Possession Effective as of the Petition Date, (II) Approving the Terms of Hilco's Employment, (III) Waiving Certain Timekeeping Requirements, and (IV) Granting Related Relief |

17.    Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

18.    The Debtors and Hilco are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

19.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## Exhibit 1

## <u>REAL ESTATE CONSULTING AND ADVISORY SERVICES AGREEMENT</u>

This Real Estate Consulting and Advisory Services Agreement ("<u>Agreement</u>") is entered into effective as of May 9, 2023 (the "<u>Effective Date</u>"), by and between Hilco Real Estate, LLC ("<u>Hilco</u>") and Cyxtera Technologies, Inc. (the "<u>Company</u>").

<div align="center"><u>Recitals</u>:</div>

WHEREAS, the Company is the owner of the leasehold interests listed on Exhibit A attached hereto (each a "<u>Lease</u>" and collectively, the "<u>Leases</u>"); and

WHEREAS, the Company seeks to engage Hilco to provide certain consulting services in connection with the Leases as provided herein.

<div align="center"><u>Agreement</u>:</div>

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and Hilco agree as follows:

1) <u>Consulting and Advisory Services</u>. Hilco shall provide the consulting and advisory services described below (collectively, the "<u>Consulting and Advisory Services</u>") to the Company with respect to the Leases:

   a) Meet twice weekly, or modified cadence as agreement between the parties, with the Company to ascertain the Company's goals, objectives and financial parameters;

   b) Review the Company's Lease portfolio;

   c) Mutually agree with the Company with respect to a strategic plan for restructuring, selling and/or assigning, shortening term, or terminating the Leases (the "<u>Strategy</u>");

   d) Provide the Company with weekly Lease status reports, which shall include updates on Hilco's Lease Restructuring Services; and

   e) Provide general real estate consulting and advisory services with respect to the Leases and the implementation of the Strategy.

2) <u>Lease Restructuring Services</u>. Hilco shall provide the Lease restructuring services described below (the "<u>Lease Restructuring Services</u>" and together with the Consulting and Advisory Services, the "<u>Services</u>")) to the Company with respect to the Leases:

   a) On the Company's behalf, negotiate the terms of restructuring, term shortening, termination, and sale and/or assignment agreements with the landlords under the Leases, in accordance with the Strategy;

   b) Provide written reports periodically to the Company regarding the status of such negotiations; and

<div align="center">1</div>

    c)  Assist the Company in closing the pertinent Lease restructuring, sale and/or assignment, term shortening, and termination agreements.

The Company may add additional leases to Exhibit A with the consent of Hilco (which consent may be provided in email) in which case such additional leases shall be considered "Leases" for purposes of this Agreement and the Company and Hilco shall mutually agree on a Strategy covering the additional leases.

3)    <u>Term and Termination</u>.

    a)  <u>Term</u>.  The term of this Agreement shall commence upon the execution hereof and shall expire on the earlier of (i) the date that is twelve (12) months from the Effective Date or (ii) the effective date of any Chapter 11 plan of reorganization or closing of a sale of all or substantially all the Company's assets under section 363 of the Bankruptcy Code (as defined herein).

    b)  <u>Termination for Cause</u>. Either party shall have the right to terminate this Agreement for cause upon written notice to the other party.  Termination for cause shall mean any termination as a result of a party's fraud, misrepresentation, gross negligence, willful misconduct or material breach by a party of any of the terms of this Agreement.

    c)  <u>Effect of Termination</u>.  Upon termination of this Agreement by the Company, Hilco shall: (i) immediately discontinue all Services; and (ii) deliver to the Company all information, reports, papers, and other materials prepared or obtained by Hilco in performing the Services, whether completed or in process.  Upon termination, the Company shall be liable for payment of accrued and unpaid fees and Expenses of Hilco as of the effective date of the termination, in accordance with Sections  6 and 7 below, as well as fees in accordance with Section 8 pursuant to the terms set forth in Section 8.

4)    <u>Strategy</u>. Notwithstanding anything to the contrary in this Agreement, Company may modify the Strategy at any time and will promptly communicate such changes to Hilco.

5)    <u>Authority</u>.  Hilco shall serve as the Company's exclusive agent for the purpose of providing the Services.  For the avoidance of doubt, Hilco shall be the Company's exclusive provider of the Services in connection with all of the Company's leased real property locations.    All communications and inquiries regarding restructuring, selling and/or assigning, shortening term, or terminating the Leases, including those directed to the Company (including (without limitation) its officers, agents, and employees), shall be redirected to Hilco, unless otherwise agreed to by Hilco and the Company.  Hilco shall promptly advise the Company of all offers made with respect to the Leases.  Hilco is authorized only to negotiate the terms of agreements with respect to restructuring, selling and/or assigning, term shortening, or terminating the Leases in accordance with the Strategy at the direction and on the behalf of the Company, but not to commit the Company to any such agreement or arrangement or to sign any instrument on behalf of the Company.  Company has the right, in its sole discretion, to accept or reject any offers with respect to the Leases, and, in the event of such rejection, the Company shall not be liable to Hilco for any fee or compensation, except as provided in Sections 6, 7, and 8 below.

6)    <u>Compensation</u>. As compensation for Hilco's Services, the Company will pay to Hilco compensation in accordance with the following; provided, that for any Restructured Lease that is rejected during a pending case filed under chapter 11 of the United States Bankruptcy Code (or similar code in the local jurisdiction), fees shall be due or payable with respect to such Restructured Lease solely to the extent that the Company realizes the benefit of any Restructured Lease Savings prior to rejection, in which case Hilco's compensation shall be calculated solely based on the Restructured Lease Savings realized by the Company prior to rejection; provided, however, if such Lease is subsequently reinstated (whether by a new lease or otherwise following such rejection) Hilco shall be entitled to the Restructured Lease Savings Fee as if such rejection never occurred minus compensation previously paid or payable in connection with any Restructured Lease Savings as described above.

a)    <u>Certain Definitions</u>.

i)    "<u>Monthly Consulting Fee</u>" means, with respect to the Consulting and Advisory Services provided by Hilco hereunder, monthly payments in the amount of $50,000 each, which payments shall be due and payable upon the first day of each calendar month during the Term, except with respect to the first payment of the Monthly Consulting Fee, which shall be due and payable upon the execution of this Agreement.  Each installment of the Monthly Consulting Fee shall be earned in full when due and is non-refundable. In no event shall Hilco have any obligation to refund any portion of the Monthly Consulting Fee. The Monthly Consulting Fee is only applicable for the first eight (8) months of this Agreement.

ii)    "<u>Restructured Lease</u>" means any Lease for which the Company, or any assignee or designee thereof (including, if applicable, any purchaser in a Bankruptcy Sale Process), enters into a written agreement with the applicable landlord that has the effect of modifying the terms of such Lease.

iii)    "<u>Restructured Lease Savings Fee</u>" means, for any Restructured Lease, an amount equal to the aggregate Restructured Lease Savings multiplied by four and one half percent (4.5%); provided, however that for purposes of calculating Restructured Lease Savings only those Restructured Lease Savings to be achieved during the six (6) year period from and after the effective date of the Restructured Lease shall be included in such calculation.

iv)    "<u>Restructured Lease Savings</u>" means an amount equal to the net savings created by a Restructured Lease, including (without limitation) the sum of (x) the aggregate reduction of base rent, percentage rent, CAM, real estate taxes, insurance, deferred maintenance or maintenance obligations (including clean up) payable under a lease (exclusive of term shortening), and any other measurement of leasehold expense calculable by Hilco and the Company under a lease; provided, however, in the event any such amounts are not reasonably discernable or calculable, Hilco and the Company shall negotiate in good faith a commercially reasonable amount of such leasehold expenses, and (y) the aggregate amount of any tenant improvement allowance dollars secured, minus any restructuring, termination or similar fees paid by the Company to the counterparty to the leased property, or any other party, in

connection with the Restructured Lease. Where term is extended and the rent during such extended period is not specifically fixed or calculable within a leased property, Restructured Lease Savings shall be based on the last year's rent immediately prior to the extended period under a leased property.

v)  "<u>Term Shortened Lease</u>" means any Lease for which the Company, or any assignee or designee thereof (including, if applicable, any purchaser in a Bankruptcy Sale Process), enters into a written agreement with the applicable landlord that has (i) the effect of (i) terminating the Lease, or (ii) providing the Company with an early termination right, regardless of whether the Company ever exercises such right, or otherwise has the effect of shortening the term of such Lease.

vi)  "<u>Term Shortened Lease Fee</u>" means for any Term Shortened Lease, an amount equal to one (1) month of gross rent *plus* any other measurement of leasehold expense calculable by Hilco and the Company under a lease; provided, however, in the event any such amounts are not reasonably discernable or calculable, Hilco and the Company shall negotiate in good faith a commercially reasonable amount of such leasehold expenses.  To the extent a Lease is both a Restructured Lease and a Term Shortened Lease, any lease savings attributable to the shortening of a Restructured Lease term shall be excluded from the calculation of the applicable Restructured Lease Savings Fee, and Hilco shall only be entitled to receive the applicable Term Shortened Lease Fee on account of such Restructured Lease term shortening. For the avoidance of doubt, Hilco shall not be entitled to a Term Shortened Lease Fee where such Lease is a Term Shortened Lease based on Section 6(a)(v)(ii) in the event Company does not exercise the early termination right.

vii)  "<u>Designated Sale and/or Assignment Lease</u>" means a Lease for which the Company enters into a written agreement that has the effect of selling or assigning the Lease to an applicable landlord or another third party. Upon the execution of this Agreement, the Company shall identify for Hilco the "Designated Sale and/or Assignment Leases" (the "<u>Designated Sale and/or Assignment Leases List</u>") (email shall be sufficient for this purpose). The Company may not subsequently add additional Leases to the Designated Sale and/or Assignment Leases List. With respect to each Designated Sale and/or Assignment Lease, Hilco shall be entitled to payment from Company of a "<u>Designated Sale and/or Assignment Lease Fee</u>" as follows:

(1)  In the event Hilco advises the Company with respect to a sale or assignment of a Designated Sale and/or Assignment Lease where the Company has received a letter of intent or similar document ("<u>Letter of Intent</u>"), and the terms of such Letter of Intent were negotiated by Company, Hilco shall be entitled to payment of a fee in the amount of $10,000 for assisting the Company with the closing of each such Designated Sale and/or Assignment Lease transaction.  Hilco shall be entitled to payment of the applicable $10,000 fee in connection with each closing of a Designated Sale and/or Assignment Lease transaction under this Section 6(a)(vii)(1).

4

(2)  In the event Hilco advises the Company with respect to a transaction to sell or assign a Designated Sale and/or Assignment Lease, where (i) Company has received a Letter of Intent containing terms of a proposed sale or assignment transaction, (ii) Company substantially negotiated all material terms of the Letter of Intent, and (iii) Hilco thereafter negotiates improved terms with the party submitting the Letter of Intent, Hilco shall be entitled to payment of a fee in the amount of one-half of one (1) month of gross rent *plus* any other applicable Leasehold Expenses for advising the Company, negotiating the improved transaction terms, and assisting with the closing of each such Designated Sale and/or Assignment Lease transaction. Hilco shall be entitled to payment of the applicable fee in connection with each closing of a Designated Sale and/or Assignment Lease transaction under this Section 6(a)(vii)(2).

(3)  In the event Hilco advises the Company with respect to a transaction to sell or assign a Designated Sale and/or Assignment Lease, where (i) Company has not received a formal Letter of Intent containing terms of a proposed sale or assignment transaction, (ii) Hilco thereafter negotiates the terms of a sale or assignment transaction with any purchaser or assignee of the Designated Sale and/or Assignment Lease, and (iii) the Designated Sale and/or Assignment Lease transaction closes, Hilco shall be entitled to payment of a fee in the amount of one (1) month of gross rent *plus* any other applicable Leasehold Expenses for advising the Company, negotiating the transaction terms, and assisting with the closing of each such Designated Sale and/or Assignment Lease transaction. Hilco shall be entitled to payment of the applicable fee in connection with each closing of a Designated Sale and/or Assignment Lease transaction under this Section 6(a)(vii)(3).

viii)  "<u>Leasehold Expense</u>" means the aggregate base rent, percentage rent, CAM, real estate taxes, insurance, deferred maintenance or maintenance obligations (including clean up) payable under a lease (exclusive of term shortening), and any other measurement of leasehold expense calculable by Hilco and the Company under a lease; provided, however, in the event any such amounts are not reasonably discernable or calculable, Hilco and the Company shall negotiate in good faith a commercially reasonable amount of such leasehold expenses, and (y) the aggregate amount of any tenant improvement allowance dollars secured.

b)  <u>Restructuring</u>.  For each Lease that becomes a Restructured Lease, Hilco shall earn a fee equal to the Restructured Lease Savings Fee.  The amounts payable on account of a Restructured Lease shall be paid in a lump sum upon closing of the transaction having the effect of restructuring the Lease, which may include a transaction subject to entry of an order by the Bankruptcy Court (as defined herein) approving an assignment to any acquiror of applicable Leases (or any portion thereof), including through a purchase of the Company's or a portion of the Company's assets to such acquiror (whether through a credit bid, plan of reorganization, 363 sale or otherwise), directly or through designation rights (collectively, a "<u>Bankruptcy Sale Process</u>").

c) <u>Shortened Lease</u>.  For each Lease that becomes a Term Shortened Lease, Hilco shall earn a fee equal to the Term Shortened Lease Fee.  The amounts payable on account of a Term Shortened Lease shall be paid in a lump sum upon closing of the transaction that provides the Company with an early termination right or has the effect of terminating or otherwise shortening the term of such Lease, which may include a transaction subject to entry of an order by the Bankruptcy Court (as defined herein) approving an assignment to any acquiror of applicable Leases (or any portion thereof), including through a purchase of the Company's or a portion of the Company's assets to such acquiror, whether through a Bankruptcy Sale Process or otherwise.

d) <u>Designated Sales and/or Assignments</u>. For each Lease that becomes a Designated Sale and/or Assignment Lease, Hilco shall earn a fee equal to the applicable Designated Sale and/or Assignment Lease Fee.  The amounts payable on account of a Designated Sale and/or Assignment Lease shall be paid in a lump sum upon the closing of the Designated Sale and/or Assignment Lease transaction, which may include a transaction subject to entry of an order by the Bankruptcy Court (as defined herein) approving an assignment to any acquiror of applicable Leases (or any portion thereof), including through a purchase of the Company's or a portion of the Company's assets to such acquiror, whether through a Bankruptcy Sale Process or otherwise.

e) <u>Free and Clear</u>.  All fees payable to Hilco hereunder shall be free and clear of any liens, claims and encumbrances, including the liens of any secured parties.

<u>f) Reconciliation</u>. The Monthly Consulting Fee paid or payable shall be applied against any compensation otherwise due under this Agreement.

7)      <u>Expenses</u>.  All Expenses (defined below) shall be borne by the Company, and Hilco shall be entitled to reimbursement from the Company for all Expenses.  Billing shall be monthly and invoices are due not later than thirty (30) days after the date of invoice.  "<u>Expenses</u>" means all reasonable, documented (through receipts or invoices) out-of-pocket expenses incurred by Hilco in connection with its performance of its Services hereunder, including, without limitation: reasonable expenses of advertising, marketing, coach travel and transportation, including, the cost of out-of-town travel and postage and courier/overnight express fees and other mutually agreed upon expenses incurred in connection with performing the services required by this Agreement. Notwithstanding anything to the contrary, Expenses described herein shall not exceed, per individual Expense, Five Thousand US Dollars ($5,000) or in aggregate, Fifty Thousand US Dollars ($50,000) without prior written approval from Company.

8)      <u>Survival</u>.  Within fifteen (15) calendar days after termination of this Agreement, Hilco shall provide the Company with a list of all third parties, including landlords (each, a "<u>Prospect</u>") that Hilco has engaged in negotiations with respect to the Leases covered hereunder.  If within ninety (90) days after the expiration of the Term of this Agreement, or any extension thereof agreed to in writing by the Company and Hilco, the Company, or any assignee or designee thereof (including any purchaser in a Bankruptcy Sale Process), and any Prospect should enter into a written agreement covered by this Agreement, incorporating deal terms that are identical or reasonably similar to terms that were negotiated and/or proposed by Hilco in connection with the Leases, Hilco shall be entitled to a fee calculated in accordance with the terms of this Agreement.

9)    Hilco and Company Covenants. In consideration of this Agreement, Hilco agrees to utilize commercially reasonable efforts and diligence to achieve the purpose of this Agreement. Hilco shall conduct all negotiations on behalf of the Company in a professional and businesslike manner and in accordance with the Company's and its officers', representatives,' and counsel's reasonable instructions. The Company agrees to cooperate reasonably with Hilco and to make available to Hilco such information as Hilco reasonably requests, including true and correct copies of the Leases, all information relating to occupancy-related expenses for the Leases and related correspondence.

10)    Confidentiality. Hilco acknowledges that information furnished or made available by the Company, its employees or representatives to Hilco and its employees or representatives relating to the Leases and the business or affairs of the Company is confidential and is the property of the Company. During and after the term of this Agreement, Hilco will not disclose any such information to any person or use any such information for any purpose other than the performance of its obligations hereunder, in each case, without the prior written consent of the Company.

11)    Assignment; Successors and Assigns. Neither party may assign its rights or delegate any of its obligations hereunder without the prior written consent of the other party; provided, however, if the Company is the subject of a bankruptcy process, the Company shall use its commercially reasonable best efforts to assign its rights and obligations hereunder to an assignee or purchaser of the Leases(s) pursuant to section 363 and/or 365 of the Bankruptcy Code (as defined herein) or otherwise. For the avoidance of doubt, if a purchaser of the Company's or a portion of the Company's assets (whether through a Bankruptcy Sale Process or otherwise) acquires the Leases (or any portion thereof), directly or through designation rights, and enters into an agreement (in connection with such purchase) for a Lease that incorporates deal terms that are identical or reasonably similar to terms that were negotiated and/or proposed by Hilco in connection with such Lease, then Hilco shall be entitled to the Restructured Lease Savings Fee, Term Shortened Lease Fee, and/or Designated Sale and/or Assignment Lease Fee with respect to such Leases, and such fee shall be paid by the Company, or, in the event such assignee or purchaser assumes this Agreement and the Company's obligations hereunder, by the assignee or purchaser. Subject to that limitation, this Agreement shall be binding upon and shall inure to the benefit of each party and its successors and assigns.

12)    Indemnification.

   a) The Company shall indemnify Hilco and hold it harmless against any and all losses, claims, damages, liabilities and expenses incurred by Hilco, including without limitation, reasonable legal expenses, arising from, related to, or in any way connected with (i) the Company's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in this Agreement and (ii) the fraud, negligence (including omissions) or willful misconduct of the Company, its officers, directors, employees, agents or representatives.

   b) Hilco shall indemnify the Company and hold it harmless against any and all losses, claims, damages, liabilities and expenses incurred by the Company, including without limitation, reasonable legal expenses, arising from, related to, or in any way connected with (i) Hilco's

7

material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained in this Agreement and (ii) the fraud, negligence (including omissions) or willful misconduct of Hilco, its officers, directors, employees, agents or representatives.

13) <u>General Provisions</u>.

a) The Company and Hilco shall deal with each other fairly and in good faith so as to allow both parties to perform their duties and earn the benefits of this Agreement.

b) In the event the Company commences a case under Chapter 11 of title 11, United States Code (the "<u>Bankruptcy Code</u>"), with a bankruptcy court (the "<u>Bankruptcy Court</u>"), the Company shall promptly file a motion under section 327 and 328 of the Bankruptcy Code, in form and substance reasonably acceptable to Hilco, authorizing the Company's entry into this Agreement, which the Company agrees to use its reasonable efforts to obtain (the "<u>Retention Order</u>"). The Company will use its reasonable efforts to ensure that such order shall specifically provide that: (i) Hilco is being retained pursuant to sections 327 and 328 of the Bankruptcy Code by the Company; (ii) the payment of all fees and reimbursement of expenses hereunder to Hilco shall be free and clear of all liens, claims and encumbrances; (iii) all such payments of fees and reimbursement of expenses hereunder shall be the Company's responsibility and be made without further order of the Bankruptcy Court; (iv) notwithstanding the liens or claims of the Company's secured lenders, including any debtor in possession financing lender, any amounts paid to Hilco hereunder, will not be reduced or capped by the terms or conditions of any DIP Credit Agreement or related order; (v) all such fees and expenses due and owing to Hilco hereunder shall be included in any carve-out provided in any DIP Credit Agreement and Bankruptcy Court order approving such DIP Credit Agreement and; and (vi) Hilco is not required to maintain time records or file interim fee applications.

c) The Company recognizes and acknowledges that the services to be provided by Hilco pursuant to this Agreement are, in general, transactional in nature, and Hilco will not be billing the Company by the hour or maintaining time records. It is agreed that Hilco is not requested or required to maintain such time records and that its compensation will be fixed on the percentages set forth herein.

d) Any correspondence or required notice shall be addressed as follows:

If to Hilco:                Hilco Real Estate, LLC
                                    5 Revere Drive, Suite 206
                                    Northbrook, Illinois 60062
                                    Tel.    (847) 504-2462
                                    Email: <u>sbaker@hilcoglobal.com</u>
                                    Attn:   Sarah Baker

If to the Company:        Cyxtera Technologies, Inc.
                                    2333 Ponce De Leon Blvd, Ste 900

Coral Gables, FL 33134
Tel. (855) 699-8372
Email: legal@cyxtera.com
Attn:   Chief Legal Officer

e)  This Agreement shall be deemed drafted by both parties hereto, and there shall be no presumption against either party in the interpretation of this Agreement.

f)  Hilco shall be permitted to utilize independent contractors and subcontractors to assist Hilco with performing certain of its obligations hereunder.

g)  By executing or otherwise accepting this Agreement, the Company and Hilco acknowledge and represent that they are represented by and have consulted with independent legal counsel with respect to the terms and conditions contained herein.

h)  The construction, validity and interpretation of this Agreement will be governed by the internal law of the State of Delaware, without regard to any choice of law principle that might otherwise result in the application of the law of any other jurisdiction. The parties hereby waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other in respect of any matter arising out of or in connection with this Agreement.

i)  This Agreement may be executed in original counterparts, and if executed and delivered via facsimile shall be deemed the equivalent of an original.

j)  The parties hereto agree, and the Company hereby expressly acknowledges, that Hilco has not guaranteed the Company any return or results with respect to the services to be provided.

k)  This Agreement constitutes the entire agreement between the Company and Hilco and supersedes all prior discussions, negotiations, understandings, representations, and agreements, whether oral or written.  This Agreement shall not be modified or amended in any respect except by a written instrument executed by or on behalf of the parties to this Agreement.

l)  If either party institutes legal action to enforce its rights under this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees and other costs actually incurred.

m) Hilco may use the Company's name on Hilco's representative client lists, in any advertisements, publications or as a reference.

*         *         *

IN WITNESS WHEREOF, the Company and Hilco have executed and delivered this Agreement as of the date first above written.

**CYXTERA TECHNOLOGIES, INC.**          **HILCO REAL ESTATE, LLC**

By: _Carlos Sagasta_                    By: _[signature]_
      82C2ACD2F9DD408...                       F74D1B5C89EB44B...

Title Chief Financial Officer           Title: VP & DGC, Managing Member

**EXHIBIT A**

Leases

| Data Center Code | Lease ID | Lease Name | Tenant Name | Landlord Name | Lease Commencement | Lease Expiration | Lease Classification | Address 1 | City | State |
|---|---|---|---|---|---|---|---|---|---|---|
| PHX1-A,B,C,D | L-AZ-PHX01-01 | 615 North 48th Street, Phoenix Master Agreement | Cyxtera Communications, LLC | Iron Mountain Data Centers | 4/15/2014 | 4/30/2024 | Operating | 615 North 48th Street | Phoenix | AZ |
| PHX2 | L-AZ-PHX02-01 | 2055 East Technology Circle, Tempe - PBB Sub-Sub-Lease | Cyxtera Communications, LLC | Medina DC 2 Assets, LLC | 4/1/2019 | 3/31/2034 | Finance | 2055 E Technology Circle | Tempe | AZ |
| YVR1 | L-BC-YVR01-01 | 555 West Hastings Street, Vancouver - Lease | Cyxtera Communications Canada, Inc. | Pizarro Realty (Canada) Limited | 7/1/1999 | 5/31/2028 | Operating | 555 West Hastings Street, 14th and 24th Floor | Vancouver | BC |
| LAX2 | L-CA-LAX02-01 | 3015 Winona Avenue, Burbank - PBB Lease | Cyxtera Communications, LLC | Digital Winona, LLC | 1/1/2019 | 1/31/2035 | Finance | 3015 Winona Avenue | Burbank | CA |
| LAX1 | L-CA-LAX01-01 | 200 North Nash Street, El Segundo - PBB Lease | Cyxtera Communications, LLC | Digital Nash, LLC | 1/1/2019 | 12/31/2033 | Finance | 200 North Nash Street | El Segundo | CA |
| LAX3 | L-CA-LAX03-01 | 17801 Gillette Avenue, Irvine - Lease Agreement | Cyxtera Communications, LLC | CRG II Irvine Corporate, LP | 12/15/1999 | 6/30/2026 | Operating | 17801 Gillette Avenue | Irvine | CA |
| SFO1-A,C | L-CA-SFO01-02 | 2401 Walsh Avenue, Santa Clara - PBB Lease | Cyxtera Communications, LLC | Digital Walsh 1, LLC | 1/1/2019 | 2/28/2033 | Finance | 2401 Walsh Avenue | Santa Clara | CA |
| SFO1-B | L-CA-SFO01-01 | 2403 Walsh Avenue, Santa Clara - PBB Lease | Cyxtera Communications, LLC | Digital Walsh 2, LLC | 1/1/2019 | 2/28/2033 | Finance | 2403 Walsh Avenue | Santa Clara | CA |
| SFO2-A | L-CA-SFO02-01 | 4700 Old Ironsides Drive, Santa Clara - Lease | Cyxtera Communications, LLC | 4700 Santa Clara Technology Partners, LLC | 3/5/2004 | 4/30/2027 | Finance | 4700 Old Ironsides Drive | Santa Clara | CA |
| SFO2-B | L-CA-SFO04-01 | 4650 Old Ironsides Drive, Santa Clara - Lease | Cyxtera Communications, LLC | 4650 Santa Clara Technology Partners, LLC | 3/5/2004 | 4/30/2027 | Finance | 4650 Old Ironsides Drive | Santa Clara | CA |
| SFO3-A | L-CA-SFO05-01 | 1400 Kifer Road, Sunnyvale - Lease | Cyxtera Communications, LLC | Redwood Kifer Assets, LLC | 10/1/2019 | 9/30/2026 | Operating | 1400 Kifer Road | Sunnyvale | CA |
| SFO3-B | L-CA-SFO06-01 | 1320 Kifer Road, Sunnyvale - Industrial Lease Agreement | Cyxtera Communications, LLC | PS8 Northern California Industrial Portfolio, LLC | 10/1/2014 | 9/30/2024 | Operating | 1320 Kifer Road | Sunnyvale | CA |
| SFO4-A | L-CA-SFO07-01 | 1500 Space Park Drive, Santa Clara - PBB Lease | Cyxtera Communications, LLC | Digital Space Park, LLC | 9/1/2019 | 8/31/2034 | Finance | 1500 Space Park Drive | Santa Clara | CA |
| SFO4-B | L-CA-SFO08-01 | 1550 Space Park Drive, Santa Clara - Data Center Lease | Cyxtera Communications, LLC | 1550 Space Park Partners, LLC | 11/1/2021 | 10/31/2036 | Finance | 1550 Space Park Drive | Santa Clara | CA |
| SFO4-C | L-CA-SFO09-01 | 1111 Comstock Street, Santa Clara - Powered Shell Lease Agreement | Cyxtera Communications, LLC | 1111 Comstock Property, LLC | 12/1/2021 | 11/30/2037 | Finance | 1111 Comstock Street | Santa Clara | CA |
| SFO4-D | L-CA-SFO10-01 | 1231 Comstock Street, Santa Clara - Powered Shell Lease Agreement | Cyxtera Communications, LLC | 1231 Comstock Property, LLC | 4/1/2024 | 3/31/2039 | Finance | 1231 Comstock Street | Santa Clara | CA |
| DEN1 | L-CO-DEN01-01 | 9150 Commerce Center Circle, Highlands Ranch - Powered Shell Lease | Cyxtera Communications, LLC | Highlands Ranch Commerce Center, LLC | 5/30/2007 | 12/31/2027 | Operating | 9150 Commerce Center Circle, Suite 250 | Highlands Ranch | CO |
| DEN-OFFICE | L-CO-DEN02-01 | FAA 7 Hanauer Landstrabe 298, Frankfurt - International Master Agreement | Cyxtera Germany GmbH | Intervision Deutschland GmbH | 4/1/2012 | 5/31/2026 | Operating | 2401 Walsh Avenue | Frankfurt am Main | DE |
| FRA1 | L-DE-FRA01-01 | Weismüllerstrabe 24, Frankfurt - FRA1 Lease | Cyxtera Germany GmbH | Digital Greenfield BV | 4/1/2019 | 6/30/2034 | Finance | Weismüllerstrabe 24 | Frankfurt am Main | DE |
| MIA3 | L-FL-MIA03-01 | 2333 Ponce De Leon Blvd., Coral Gables - Lease Agreement | Cyxtera Technologies, Inc. | Prime Bac Colonnade, LLC | 4/16/2015 | 4/30/2032 | Operating | 2333 Ponce De Leon Boulevard, Suite 900 | Coral Gables | FL |
| TPA1 | L-FL-TPA01-01 | 9310 Florida Palm Drive, Tampa - Lease Agreement | Cyxtera Communications, LLC | EastGroup Properties, LP | 2/1/2000 | 7/31/2025 | Operating | 9310 Florida Palm Drive | Tampa | FL |
| ATL1-A | L-GA-ATL01-02 | 375 Riverside Parkway (Ste 145 & 150), Lithia Springs - PBB Lease | Cyxtera Communications, LLC | Medina DC 1 Assets, LLC | 1/1/2019 | 12/31/2035 | Finance | 375 Riverside Parkway | Lithia Springs | GA |
| ATL1-B,C | L-GA-ATL01-03 | 375 Riverside Parkway (Ste 125 & 135), Lithia Springs - PBB Lease | Cyxtera Communications, LLC | Medina DC 1 Assets, LLC | 4/1/2019 | 3/31/2034 | Finance | 375 Riverside Parkway | Lithia Springs | GA |
| LHR1-A | L-GB-LHR01-01 | 630 Ajax Avenue, Slough - Lease | Cyxtera Communications, LLC | Greenwich View Place Limited | 12/1/2019 | 12/2/2027 | Operating | 630 Ajax Avenue | Slough | GB |
| LHR2-A | L-GB-LHR02-02 | 7 Greenwich View Place, London - Lease | Cyxtera Technology UK Limited | Greenwich View Place Limited | 2/10/2012 | 2/9/2027 | Finance | 7 Greenwich View Place | London | GB |
| LHR2-B | L-GB-LHR02-01 | 7 Greenwich View Place, London - Workplace Licence (Roadway) | Cyxtera Technology UK Limited | Robert Ogden - Hobson Development | 11/29/2012 | 11/28/2027 | Operating | 7 Greenwich View Place | London | GB |
| LHR2-C | L-GB-LHR02-03 | 7 Greenwich View Place, London - Warehouse Licence (Fourth No.51) | Cyxtera Technology UK Limited | Sir Robert Ogden Estates Ltd. | 11/29/2012 | 11/28/2027 | Operating | 7 Greenwich View Place | London | GB |
| LHR3-A | L-GB-LHR03-01 | 6 Greenwich View Place, London - Facilities Use Agreement | Cyxtera Technology UK Limited | Telstra Limited | 7/1/2012 | 6/30/2024 | Operating | 6 Greenwich View Place | London | GB |
| LHR3-B | L-GB-LHR03-02 | 631 Ajax Avenue, Slough - Lease | Cyxtera Technology UK Limited | Slough Trading Estate Limited | 10/6/2012 | 10/7/2032 | Operating | 631 Ajax Avenue | Slough | GB |
| LHR3-A | L-MA-BOS01-02 | 81 Blake Road, Waltham - Lease Agreement | Cyxtera Communications, LLC | Carruth Capital L.L.C. | 3/1/2007 | 6/30/2027 | Operating | Block 81 Blake Road | Waltham | MA |
| ORD1-A | L-IL-ORD01-01 | 350 East Cermak, Chicago - Lease Agreement | Cyxtera Communications, LLC | Digital Lakeside, LLC | 1/27/2000 | 6/30/2025 | Operating | 350 East Cermak Road, 7th Floor | Chicago | IL |
| ORD3-A,B | L-IL-ORD03-01 | 2425 Busse Road, Elk Grove Village - Building Lease | Cyxtera Communications, LLC | RREEF CPIF 2425 Busse Road, LLC | 12/30/1996 | 9/30/2025 | Operating | 2425 Busse Road | Elk Grove Village | IL |
| ORD1-B,C,D | L-IL-ORD02-01 | 350 East Cermak, Chicago - TED Lease | Cyxtera Communications, LLC | Digital Lakeside, LLC | 1/1/2019 | 6/30/2032 | Finance | 350 East Cermak Road, 4th & 8th Floor | Chicago | IL |
| ORD3-A,B | L-IL-ORD04-01 | 1919 Thoreau Lakeside, Schaumburg - Lease | Cyxtera Communications, LLC | Global Wheelaton Acquisition Company, LLC | 11/1/2019 | 12/31/2030 | Finance | 1919 Thoreau Lakeside Drive | Schaumburg | IL |
| BOS1-C | L-MA-BOS01-01 | 3 Corporate Place, Piscataway - Lease | Cyxtera Communications, LLC | Digital Piscataway, LLC | 1/1/2019 | 2/28/2033 | Finance | 3 Corporate Place | Piscataway | NJ |
| BOS1-A | L-MA-BOS02-01 | 580 Winter Street, Waltham - Lease | Cyxtera Communications, LLC | TW Conroy 21 LC | 9/16/1999 | 12/31/2028 | Operating | 580 Winter Street | Waltham | MA |
| BOS1-B | L-MA-BOS03-02 | 115 Second Avenue, Waltham - PBB Lease | Cyxtera Communications, LLC | Medina DC 2 Assets, LLC | 1/1/2019 | 8/31/2032 | Finance | 115 2nd Avenue | Waltham | MA |
| EWR1 | L-NM-ABQ01-01 | 4421 Gateway Blvd SE, Albuquerque - Sublease Agreement | Cyxtera Communications, LLC | CenturyLink Communications, LLC | 5/1/2017 | 12/31/2025 | Operating | 400 Tijeras Avenue NW | Albuquerque | NM |
| YYZ1 | L-NJ-EWR01-01 | 110 Hudson Street, Jersey City - Agreement of Lease | Cyxtera Communications Canada, Inc. | Garrison DC Property Management Ltd | 12/30/1996 | 5/31/2025 | Operating | 210 Hudson Street, 1st, 7th & 8th Floor | Jersey City | NJ |
| YYZ2 | L-NJ-EWR02-01 | 300 Boulevard East, Weehawken - PBB Lease | Cyxtera Communications, LLC | Neamby Investments Inc. | 1/1/2019 | 7/31/2029 | Operating | 300 Boulevard East, 1st, 2nd and 3rd Floor | Weehawken | NJ |
| YUL1 | L-QC-YUL01-01 | 9 Tai Seng Drive, Singapore - Tenancy Agreement | Cyxtera Canada, ULC | Trust Bank Acquisition Co. | 3/1/2004 | 2/28/2026 | Operating | 3000 Rene Levesque, Suite 200 | Montreal | QC |
| SIN1 | L-SG-SIN01-01 | 3 Corporate Place, Piscataway - PBB Lease | Cyxtera Singapore Pte. Ltd. | Digital Singapore Jurong East Pte Ltd | 1/1/2019 | 1/31/2036 | Finance | 29A International Business Park, Singapore | Jurong East | SG |
| SIN2-A,B | L-SG-SIN02-01 | 29A International Business Park, Singapore - Lease | Cyxtera Singapore Pte. Ltd. | Tidan, Inc. | 1/1/2013 | 12/31/2026 | Finance | 29A - International Business Park Road | Jurong East | SG |
| SIN2-A,B | L-SG-SIN03-01 | 29A International Business Park, Singapore - PBB Lease | Cyxtera Singapore Pte. Ltd. | Digital Singapore Jurong East Pte Ltd | 1/2/2012 | 1/31/2026 | Operating | 29A - International Business Park Road | Jurong East | SG |
| SIN1 | L-SG-SIN02-01 | 9 Tai Seng Drive, Singapore - Tenancy Agreement | Cyxtera Singapore Pte. Ltd. | Perpetual (Asia) Ltd | 11/30/2007 | 11/29/2022 | Operating | 9 Tai Seng Drive | Singapore | SG |
| DFW1-A,D | L-TX-DFW01-01 | 1400 Federal Drive, Fort Worth - Lease | Cyxtera Communications, LLC | FAK Technology Partners, LLC | 4/25/2019 | 1/31/2034 | Finance | 14001 FAA Boulevard | Fort Worth | TX |
| MWH1 | L-VA-HND01-01 | 1-2-1 Hitotsubashi Building, Tokyo - Agreement for Facilities Use Service and Maintenance | Cyxtera Japan, Ltd | ESR Amberstone Nozomi Limited Partnership | 5/1/2015 | 4/30/2025 | Operating | 3-1 Misyyachocho Chiyoda-ku | Chiyoda-ku | JP |
| HND1 | L-TY-HND01-01 | 1-2-1 Hitotsubashi Building, Tokyo - Agreement for Facilities Corporation | NTT Communications Corporation | NTT Communications Corporation | 2/1/2010 | 1/31/2025 | Operating | NTT Hitotsubashi Building 1F, 1-2-1 Hitotsubashi | Chiyoda-ku | JP |
| IAD1 | L-VA-IAD01-01 | 9500 Babcock Boulevard, Sterling - PBB Lease | Cyxtera Communications, LLC | Medina DC 2 Assets, LLC | 1/1/2019 | 8/31/2032 | Finance | 400 Tijeras Avenue NW | Sterling | VA |
| IAD1-B | L-VA-IAD01-02 | 45901 Nokes Boulevard, Sterling - PBB Lease | Cyxtera Communications, LLC | Medina DC 2 Assets, LLC | 1/1/2019 | 8/31/2032 | Finance | 45901 Nokes Boulevard | Sterling | VA |
| IAD1-C,D,E | L-VA-IAD02-01 | 21110 Ridgetop Circle, Sterling - PBB Lease | Cyxtera Communications, LLC | Medina DC 2 Assets, LLC | 1/1/2019 | 2/28/2035 | Finance | 21110 Ridgetop Circle | Sterling | VA |
| IAD2-B | L-VA-IAD03-01 | 22850 Indian Creek Drive, Sterling - Deed of Lease | Cyxtera Communications, LLC | 22850 International Drive, LLC | 8/20/2013 | 2/28/2026 | Operating | 22850 International Drive | Sterling | VA |
| IAD2-B | L-VA-IAD04-2x | 22860 & 22860 International Drive, Sterling - Deed of Lease | Cyxtera Communications, LLC | ACPF Nova Data Center, LLC | 8/20/1999 | 5/31/2025 | Operating | 22860 International Drive | Sterling | VA |
| MWH1 | L-WA-MWH01-01 | 4949 Randolph Road (1st Floor), Moses Lake - Lease | Cyxtera Communications, LLC | R5 Titan, LLC | 5/5/2015 | 9/30/2030 | Operating | 4949 Randolph Road | Moses Lake | WA |
| MWH1-B | L-WA-MWH02-01 | 4949 Randolph Road (2nd Floor), Moses Lake - Lease | Cyxtera Communications, LLC | R5 Titan, LLC | 5/5/2015 | 9/30/2030 | Operating | 4949 Randolph Road | Moses Lake | WA |
| SEA1-A | L-WA-SEA01-01 | 12801 Tukwila International Blvd, Tukwila - Lease Agreement | Cyxtera Communications, LLC | International Gateway West LLC | 5/1/1999 | 4/30/2024 | Finance | 12801 Tukwila International Boulevard | Tukwila | WA |
| SEA1-B | L-WA-SEA02-01 | 3355 South 120th Place, Tukwila - Data Center Lease Agreement | Cyxtera Communications, LLC | Sidera DataCenter Ltd | 8/1/2011 | 4/30/2034 | Finance | 3355 South 120th Place, 1st & 2nd Floor | Tukwila | WA |
| SEA2 | L-WA-SEA02-01 | 6101 South 180th Street, Tukwila - Lease Agreement | Cyxtera Communications, LLC | DCCO Tukwila, LLC | 12/18/1998 | 8/31/2034 | Finance | 6201 South 180th Street | Tukwila | WA |

## **Exhibit B**

**Invoices**



# INVOICE

| | |
|---|---|
| **INVOICE DATE:** | **June 9, 2023** |
| **INVOICE NUMBER:** | **CINV-05521** |
| **TERMS:** | **Due Upon Receipt** |

**TO:**   **Cyxtera Technologies, Inc.**
**2333 Ponce De Leon Blvd, Ste 900**
**Coral Gables, FL 33134**

**ATTENTION:** **Carlos Sagasta**   Chief Financial Officer
**Victor Semah**    Chief Legal Officer

**EMAIL:**   carlos.sagasta@cyxtera.com
victor.semah@cyxtera.com
jprasertlum@alixpartners.com
rayli@alixpartners.com

**RE:**   **Montly Consulting Fee**

| DESCRIPTION | TOTAL |
|---|---|
| 2nd Monthly Consulting Fee - for service covered from 6/9 to 7/8 | $50,000 |

| | |
|---|---|
| **TOTAL DUE TO HILCO REAL ESTATE, LLC** | **$50,000** |

| **TOTAL DUE TO HILCO REAL ESTATE, LLC** | **$50,000** |
|---|---|

**Wiring Instructions**
**Bank:**       **JP Morgan Chase Bank NA**
**ABA#:**       **021 000 021 (wires only)**
**ACH ABA:**    **071 000 013**
**Account #:**  **838110120**
**Swift:**      **CHASUS33**
**Acct. Name:** **Hilco Real Estate, LLC**



# INVOICE

| | |
|---|---|
| **INVOICE DATE:** | **July 7, 2023** |
| **INVOICE NUMBER:** | **CINV-05935** |
| **TERMS:** | **Due Upon Receipt** |

**TO:**      **Cyxtera Technologies, Inc.**
**2333 Ponce De Leon Blvd, Ste 900**
**Coral Gables, FL 33134**

**ATTENTION:** **Carlos Sagasta**      Chief Financial Officer
**Victor Semah**      Chief Legal Officer

**EMAIL:**      carlos.sagasta@cyxtera.com
victor.semah@cyxtera.com
jprasertlum@alixpartners.com
rayli@alixpartners.com

**RE:**      **Montly Consulting Fee**

| DESCRIPTION | TOTAL |
|---|---|
| 3rd  Monthly Consulting Fee - for service covered from 7/9 to 8/8 | $50,000 |

| | |
|---|---|
| TOTAL DUE TO HILCO REAL ESTATE, LLC | $50,000 |

| | |
|---|---|
| **TOTAL DUE TO HILCO REAL ESTATE, LLC** | **$50,000** |

**Wiring Instructions**

| | |
|---|---|
| Bank: | **JP Morgan Chase Bank NA** |
| ABA#: | **021 000 021 (wires only)** |
| ACH ABA: | **071 000 013** |
| Account #: | **838110120** |
| Swift: | **CHASUS33** |
| Acct. Name: | **Hilco Real Estate, LLC** |



# INVOICE

| | |
|---:|---:|
| **INVOICE DATE:** | **August 9, 2023** |
| **INVOICE NUMBER:** | **CINV-06460** |
| **TERMS:** | **Due Upon Receipt** |

**TO:**     **Cyxtera Technologies, Inc.**
**2333 Ponce De Leon Blvd, Ste 900**
**Coral Gables, FL 33134**

**ATTENTION:** **Carlos Sagasta Chief Financial Officer**
**Victor Semah Chief Legal Officer**

**EMAIL:**     carlos.sagasta@cyxtera.com
victor.semah@cyxtera.com
jprasertlum@alixpartners.com
rayli@alixpartners.com

**RE:**     **Montly Consulting Fee**

| DESCRIPTION | TOTAL |
|:---:|:---:|
| 4th  Monthly Consulting Fee - for service covered from 8/9 to 9/8 | $50,000 |

| | |
|:---|:---:|
| **TOTAL DUE TO HILCO REAL ESTATE, LLC** | **$50,000** |

| | |
|:---:|:---:|
| **TOTAL DUE TO HILCO REAL ESTATE, LLC** | **$50,000** |

**Wiring Instructions**
| | |
|:---|:---|
| **Bank:** | **JP Morgan Chase Bank NA** |
| **ABA#:** | **021 000 021 (wires only)** |
| **ACH ABA:** | **071 000 013** |
| **Account #:** | **838110120** |
| **Swift:** | **CHASUS33** |
| **Acct. Name:** | **Hilco Real Estate, LLC** |



# INVOICE

| | |
|---|---|
| **INVOICE DATE:** | **September 11, 2023** |
| **INVOICE NUMBER:** | **CINV-06982** |
| **TERMS:** | **Due Upon Receipt** |

**TO:**      **Cyxtera Technologies, Inc.**
            **2333 Ponce De Leon Blvd, Ste 900**
            **Coral Gables, FL 33134**

**ATTENTION:** **Carlos Sagasta Chief Financial Officer**
            **Victor Semah Chief Legal Officer**

**EMAIL:**    carlos.sagasta@cyxtera.com
            victor.semah@cyxtera.com
            jprasertlum@alixpartners.com
            rayli@alixpartners.com

**RE:**      **Montly Consulting Fee**

| DESCRIPTION | TOTAL |
|---|---|
| 5th  Monthly Consulting Fee - for service covered from 9/8 to 10/8 | $50,000 |

| | |
|---|---|
| **TOTAL DUE TO HILCO REAL ESTATE, LLC** | **$50,000** |

| | |
|---|---|
| **TOTAL DUE TO HILCO REAL ESTATE, LLC** | **$50,000** |

**Wiring Instructions**

| | |
|---|---|
| **Bank:** | **JP Morgan Chase Bank NA** |
| **ABA#:** | **021 000 021 (wires only)** |
| **ACH ABA:** | **071 000 013** |
| **Account #:** | **838110120** |
| **Swift:** | **CHASUS33** |
| **Acct. Name:** | **Hilco Real Estate, LLC** |



# INVOICE

|  |  |
|---|---|
| **INVOICE DATE:** | **October 6, 2023** |
| **INVOICE NUMBER:** | **CINV-07408** |
| **TERMS:** | **Due Upon Receipt** |

**TO:**      **Cyxtera Technologies, Inc.**
**2333 Ponce De Leon Blvd, Ste 900**
**Coral Gables, FL 33134**

**ATTENTION:** **Carlos Sagasta Chief Financial Officer**
**Victor Semah Chief Legal Officer**

**EMAIL:**      carlos.sagasta@cyxtera.com
victor.semah@cyxtera.com
jprasertlum@alixpartners.com
rayli@alixpartners.com

**RE:**      **Montly Consulting Fee**

| DESCRIPTION | TOTAL |
|---|---|
| 6th  Monthly Consulting Fee - for service covered from 10/8 to 11/8 | $50,000 |

| | TOTAL DUE TO HILCO REAL ESTATE, LLC | $50,000 |
|---|---|---|

| **TOTAL DUE TO HILCO REAL ESTATE, LLC** | **$50,000** |
|---|---|

**Wiring Instructions**
| Bank: | **JP Morgan Chase Bank NA** |
|---|---|
| ABA#: | **021 000 021 (wires only)** |
| ACH ABA: | **071 000 013** |
| Account #: | **838110120** |
| Swift: | **CHASUS33** |
| Acct. Name: | **Hilco Real Estate, LLC** |



# INVOICE

| | |
|---|---|
| **INVOICE DATE:** | **November 8, 2023** |
| **INVOICE NUMBER:** | **CINV-07871** |
| **TERMS:** | **Due Upon Receipt** |

**TO:**  **Cyxtera Technologies, Inc.**
**2333 Ponce De Leon Blvd, Ste 900**
**Coral Gables, FL 33134**

**ATTENTION:**  **Carlos Sagasta Chief Financial Officer**
**Victor Semah Chief Legal Officer**

**EMAIL:**  carlos.sagasta@cyxtera.com
victor.semah@cyxtera.com
jprasertlum@alixpartners.com
rayli@alixpartners.com
yhao@alixpartners.com

**RE:**  **Montly Consulting Fee**

| DESCRIPTION | TOTAL |
|---|---|
| 7th  Monthly Consulting Fee - for service covered from 11/8 to 12/8 | $50,000 |

| | |
|---|---|
| **TOTAL DUE TO HILCO REAL ESTATE, LLC** | **$50,000** |

| | |
|---|---|
| **TOTAL DUE TO HILCO REAL ESTATE, LLC** | **$50,000** |

**Wiring Instructions**
| | |
|---|---|
| **Bank:** | **JP Morgan Chase Bank NA** |
| **ABA#:** | **021 000 021 (wires only)** |
| **ACH ABA:** | **071 000 013** |
| **Account #:** | **838110120** |
| **Swift:** | **CHASUS33** |
| **Acct. Name:** | **Hilco Real Estate, LLC** |



# INVOICE
## Revised

| | |
|---|---|
| **Invoice Date:** | **December 31, 2023** |
| **Invoice Number:** | **CINV-08058-R** |
| **Terms:** | **Due Upon Receipt** |

**TO:** Cyxtera Technologies, Inc.
2333 Ponce De Leon Blvd, Ste 900
Coral Gables, FL 33134

**ATTENTION:** Carlos Sagasta Chief Financial Officer
Victor Semah Chief Legal Officer

**EMAIL:** carlos.sagasta@cyxtera.com
victor.semah@cyxtera.com
jprasertlum@alixpartners.com
rayli@alixpartners.com
yhao@alixpartners.com

**RE:** Lease Restructure

| Site Code | Lease ID | Landlord Company Name | Total Value Secured | Restructured Lease Savings Fee (4.5% capped at 6 years) | Novation Fee (1 month of rent) | Designated Sale Fee (1/2 month of rent) | Hilco Fee |
|---|---|---|---|---|---|---|---|
| EWR1 | L-NJ-EWR01-01 | Jones Lang LaSalle | $3,813,777.00 | $171,620.00 | $0.00 | $0.00 | $171,620.00 |
| PHX2 | L-AZ-PHX02-01 | Mapletree | $0.00 | $0.00 | $253,020.58 | $0.00 | $253,020.58 |
| SFO3-A | L-CA-SFO05-01 | Mapletree | $0.00 | $0.00 | $237,543.22 | $0.00 | $237,543.22 |
| ABQ1 | L-NM-ABQ01-01 | Lumen | $1,500,168.00 | $63,811.00 | $0.00 | $0.00 | $63,811.00 |
| EWR3-B | L-NJ-EWR05-01 | Digital Realty | $0.00 | $0.00 | $490,612.96 | $0.00 | $490,612.96 |
| LAX1 | L-CA-LAX02-02 | Digital Realty | $0.00 | $0.00 | $245,574.55 | $0.00 | $245,574.55 |
| LAX2 | L-CA-LAX01-02 | Digital Realty | $0.00 | $0.00 | $198,188.06 | $0.00 | $198,188.06 |
| YUL1 | L-QC-YUL01-01 | Tidan | $1,200,000.00 | $0.00 | $0.00 | $5,209.60 | $5,209.60 |
| YVR1 | L-BC-YVR01-01 | Polaris Realty | $8,800,000.00 | $0.00 | $0.00 | $16,572.39 | $16,572.39 |
| SEA1-A | L-WA-SEA01-01 | Sabey | $6,802,406.00 | $171,003.00 | $0.00 | $0.00 | $171,003.00 |
| SEA1-B | L-WA-SEA02-01 | Sabey | $4,949,607.00 | $124,771.00 | $0.00 | $0.00 | $124,771.00 |
| TPA1 | L-FL-TPA01-01 | Eastgroup | $1,728,899.00 | $77,800.46 | $0.00 | $0.00 | $77,800.46 |
| MSP1 | L-MN-MSP01-01 | Compass | $12,661,043.00 | $109,882.00 | $0.00 | $0.00 | $109,882.00 |
| | | | | | | Subtotal | $2,165,608.82 |
| | | | | | | Less Collected Monthly Consulting Fees | ($350,000.00) |
| | | | | | | Reconciled Total Due to Hilco Real Estate, LLC | $1,815,608.82 |

| **TOTAL DUE TO HILCO REAL ESTATE, LLC** | **$1,815,608.82** |
|---|---|

**Wiring Instructions**

| | |
|---|---|
| **Bank:** | **JP Morgan Chase Bank NA** |
| **ABA#:** | **021 000 021 (wires only)** |
| **ACH ABA:** | **071 000 013** |
| **Account #:** | **838110120** |
| **Swift:** | **CHASUS33** |
| **Acct. Name:** | **Hilco Real Estate, LLC** |



**CYXTERA - HILCO DEAL SHEET**

| | |
|---|---|
| Date Submitted | 9/11/2023 |
| Site Code | EWR1 |
| Lease ID | L-NJ-EWR01-01 |
| Lease Name | 210 Hudson Street, Jersey City - Agreement of Lease |
| Restructuring Strategy - A | 2 - Renegotiate - |
| SQFT | 73,822 |
| Single or Multi Tenant Site | Multi |
| Leased Condition | Shell |
| 2022 Total Revenue | $3,430,716 |
| 2022 NOI 3 | ($1,080,894) |
| Capital Lease Obligation Rem (USD) | N/A |
| Landlord | M-C Plaza II & III LLC |
| Dealmaker | Matt Tabloff |

Contractual Structure / Renegotiated Structure

| Time Period Beginning | Time Period End | Term (Months) | Base Rent PSF | Floors 7 & 8 Base Rent / Month | Ground Floor Base Rent / Month | Water Tank Area / Month | NNN / Month | Total Base Rent / Month | Occ % (2022 Revenue) | Gross Rent PSF | Gross Rent / Month | Gross Rent / Month | Occ % (2022 Revenue) | Savings / Month | Contractual Rent Total | Renegotiated Rent Total | Total Savings |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/2023 | 1/31/2024 | 4 | $22.87 | $131,035.67 | $2,285.00 | $975.00 | $6,393.17 | $140,688.84 | 49.2% | $20.32 | $125,000.00 | $125,000.00 | 43.7% | $15,689 | $562,755 | $500,000 | $62,755 |
| 2/1/2024 | 5/31/2025 | 16 | $22.87 | $131,035.67 | $2,285.00 | $975.00 | $6,393.17 | $140,688.84 | 49.2% | $20.32 | $125,000.00 | $125,000.00 | 43.7% | $15,689 | $2,251,021 | $2,000,000 | $251,021 |
| | | 20 | | | | | | | | | | | | | $2,813,777 | $2,500,000 | $313,777 |

| | |
|---|---|
| Effective Date | 10/1/2023 |
| Contractual Expiration Date | 5/31/2025 |
| Renegotiated Expiration Date | 5/31/2025 |
| Total Months Contractual | 20 |
| Total Months Renegotiated | 20 |
| Total Months (+/-) | 0 |
| Total Contractual Rent Owed | $2,813,777 |
| Total Renegotiated Rent Owed | $2,500,000 |
| Net % Rent Reduction | 11.15% |
| TOTAL LEASE SAVINGS | $313,777 |
| WAIVED ESTIMATED EXIT COSTS | $3,500,000 |

| Tenant Allowance Secured | Pre-Petition Savings | Term Shortening Savings | 2023 Restructure Savings | 2024 Restructure Savings | 2025 Restructure Savings | 2026 Restructure Savings | 2027+ Restructure Savings |
|---|---|---|---|---|---|---|---|
| $0 | $0 | $0 | $47,067 | $188,266 | $3,578,444 | $0 | $0 |

**TOTAL VALUE SECURED    $3,813,777**

| | |
|---|---|
| Restructured Lease Savings Fee | $171,620 | *4.5% of aggregate Restructured Lease Savings |
| Term Shortened Lease Fee | $0 | *1 month of Gross Rent plus Any other measurement of leasehold expense calculable |
| Sale and/or Assigned Lease Fee | $0 | *$10,000 for each Designated Sale and/or Assignment Lease transaction |
| Total Hilco Fee | $171,620 | |

**DEAL TERMS**
- Effective 10/1/23 thru 5/31/25, annual Gross Rent shall be reduced to $1,500,000/yr or $125,000/month. (Gross in Lieu Deal Structure)
- Within 90 to 120 days of a mutually executed agreement, Tenant shall return the 8th floor (33,413 Gross Rentable SQFT) in "as is" condition to the Landlord.
- Turnover of the remaining premises upon expiration shall be in "as is" condition. Tenant shall not be responsible for exit costs as outlined in the lease to return the space to the original condition.
- All other lease terms remain unchanged.



**CYXTERA - HILCO DEAL SHEET**

| | |
|---|---|
| Date Submitted | 8/29/2023 |
| Site Code | ABQ1 |
| Lease ID | L-NM-ABQ01-01 |
| Lease Name | 400 Tijeras Avenue NW, Albuquerque - Sublease Agreement |
| Restructuring Strategy - A | 2 - Sell (Lumen) |
| SQFT | 86,235 |
| Single or Multi Tenant Site | Multi |
| Leased Condition | Powered Shell |
| 2022 Total Revenue | $3,801,422 |
| 2022 NOI 3 | $591,732 |
| Capital Lease Obligation Rem (USD) | N/A |
| Landlord | Lumen |
| Dealmaker | Dan O'Brien |

| Time Period | | | Contractual Structure | | | | Renegotiated Structure | | | | Contractual Rent Total | Renegotiated Rent Total | Total Savings |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Time Period Beginning** | **Time Period End** | **Term (Months)** | **Total Rent PSF** | **Base Rent / Month** | **Total Rent / Month** | **Occ % (2022 Revenue)** | **Total Rent PSF** | **Base Rent / Month** | **Total Rent / Month** | **Occ % (2022 Revenue)** | **Savings / Month** | | |
| 9/1/2023 | 12/31/2023 | 4 | $10.45 | $75,124.89 | $75,124.89 | 23.7% | $7.84 | $56,343.67 | $56,343.67 | 17.8% | $18,781 | $300,500 | $225,375 | $75,125 |
| 1/1/2024 | 12/31/2024 | 12 | $10.61 | $76,251.77 | $76,251.77 | 24.1% | $7.96 | $57,188.83 | $57,188.83 | 18.1% | $19,063 | $915,021 | $686,266 | $228,755 |
| 1/1/2025 | 12/31/2025 | 12 | $10.77 | $77,395.54 | $77,395.54 | 24.4% | $8.08 | $58,046.66 | $58,046.66 | 18.3% | $19,349 | $928,746 | $696,560 | $232,187 |
| 1/1/2026 | 12/31/2026 | 12 | $10.93 | $78,556.48 | $78,556.48 | 24.8% | $8.20 | $58,917.36 | $58,917.36 | 18.6% | $19,639 | $942,678 | $707,008 | $235,669 |
| 1/1/2027 | 12/31/2027 | 12 | $11.10 | $79,734.82 | $79,734.82 | 25.2% | $8.32 | $59,801.12 | $59,801.12 | 18.9% | $19,934 | $956,818 | $717,613 | $239,204 |
| 1/1/2028 | 12/31/2028 | 12 | $11.26 | $80,930.85 | $80,930.85 | 25.5% | $8.45 | $60,698.14 | $60,698.14 | 19.2% | $20,233 | $971,170 | $728,378 | $242,793 |
| 1/1/2029 | 12/31/2029 | 12 | $11.43 | $82,144.81 | $82,144.81 | 25.9% | $8.57 | $61,608.61 | $61,608.61 | 19.4% | $20,536 | $985,738 | $739,303 | $246,434 |
| | | 76 | | | | | | | | | | **$6,000,671** | **$4,500,503** | **$1,500,168** |

| | |
|---|---|
| Effective Date | 9/1/2023 |
| Contractual Expiration Date | 12/31/2029 |
| Renegotiated Expiration Date | 12/31/2029 |
| Total Months Contractual | 76 |
| Total Months Renegotiated | 76 |
| Total Months (+/-) | 0 |
| Total Contractual Rent Owed | $6,000,671 |
| Total Renegotiated Rent Owed | $4,500,503 |
| Net % Rent Reduction | 25.00% |
| TOTALS LEASE SAVINGS | $1,500,168 |
| WAIVED PRE-PETITION SAVINGS | $0 |
| TOTAL TIA TO TENANT | $0 |

| | Tenant Allowance Secured | Pre-Petition Savings | Term Shortening Savings | 2023 Restructure Savings | 2024 Restructure Savings | 2025 Restructure Savings | 2026 Restructure Savings | 2027+ Restructure Savings |
|---|---|---|---|---|---|---|---|---|
| **TOTAL VALUE SECURED**  $1,500,168 | $0 | $0 | $0 | $75,125 | $228,755 | $232,187 | $235,669 | $728,431 |

| | |
|---|---|
| Restructured Lease Savings Fee | $63,811 |
| Term Shortened Lease Fee | $0 |
| Sale and/or Assigned Lease Fee | $0 |
| Total Hilco Fee | $63,811 |

*4.5% of aggregate Restructured Lease Savings capped at 6 years
*1 month of Gross Rent plus Any other measurement of leasehold expense calculable
*$10,000 for each Designated Sale and/or Assignment Lease transaction

**DEAL TERMS**

- Effective 9/1/23, annual Base Rent shall be reduced by 25% from the contractual rate (annual increases shall remain in place at the 25% reduced rates).
- Effective 9/1/23 thru 12/31/23, annual Base Rent shall be equal to $676,124.01/yr.
- Effective 1/1/24 thru 12/31/24, annual Base Rent shall be equal to $686,265.93/yr.
- Effective 1/1/25 thru 12/31/25, annual Base Rent shall be equal to $696,559.86/yr.
- Effective 1/1/26 thru 12/31/26, annual Base Rent shall be equal to $707,008.32/yr.
- Effective 1/1/27 thru 12/31/27, annual Base Rent shall be equal to $717,613.38/yr.
- Effective 1/1/28 thru 12/31/28, annual Base Rent shall be equal to $728,377.65/yr.
- Effective 1/1/29 thru 12/31/29, annual Base Rent shall be equal to $739,303.29/yr.
- Tenant shall continue to pay additional rent at the existing rates.
- All other lease terms remain unchanged.





Hilco Real Estate

## CYXTERA - HILCO DEAL SHEET

| | |
|---|---|
| Date Submitted | 11/19/2023 |
| Site Code | MSP1 |
| Lease ID | L-MN-MSP01-01 |
| Lease Name | 4450 Dean Lakes Boulevard, Shakopee - Lease Agreement |
| Restructuring Strategy - A | 4 - Blend/Extend |
| SQFT | 54,827 |
| Single or Multi Tenant Site | Single |
| Leased Condition | Turn Key |
| 2022 Total Revenue | $12,500,515 |
| 2022 NOI 3 | $4,037,739 |
| Capital Lease Obligation Rem (USD) | $4,696,965 |
| Landlord | Compass |
| Dealmaker | Newmark |

| | | | Contractual Structure | | | | | Renegotiated Structure | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Period Beginning | Time Period End | Term (Months) | Base Rent PSF | Building I Base Rent / Month | Building II Base Rent / Month | Total Base Rent / Month | Occ % (2022 Revenue) | Base Rent PSF | Building I Base Rent / Month | Building II Base Rent / Month | Total Base Rent / Month | Occ % (2022 Revenue) | Savings / Month | Contractual Rent Total | Renegotiated Rent Total | Total Savings |
| 12/1/2023 | 4/30/2024 | 5 | $70.00 | $175,880.92 | $143,924.99 | $319,805.90 | 30.7% | $63.00 | $158,292.83 | $129,532.49 | $287,825.31 | 27.6% | $31,981 | $1,599,030 | $1,439,127 | $159,903 |
| 5/1/2024 | 8/31/2024 | 4 | $70.77 | $179,398.50 | $143,924.99 | $323,323.49 | 31.0% | $63.69 | $161,458.68 | $129,532.49 | $290,991.17 | 27.9% | $32,332 | $1,293,294 | $1,163,965 | $129,329 |
| 9/1/2024 | 4/30/2025 | 8 | $71.40 | $179,398.50 | $146,803.49 | $326,201.99 | 31.3% | $64.26 | $161,458.68 | $132,123.14 | $293,581.82 | 28.2% | $32,620 | $2,609,616 | $2,348,655 | $260,961 |
| 5/1/2025 | 8/31/2025 | 4 | $72.18 | $182,986.50 | $146,803.49 | $329,789.99 | 31.7% | $64.96 | $164,687.86 | $132,123.14 | $296,810.99 | 28.5% | $32,979 | $1,319,160 | $1,187,244 | $131,916 |
| 9/1/2025 | 4/30/2026 | 8 | $72.82 | $182,986.50 | $149,739.56 | $332,726.06 | 31.9% | $65.54 | $164,687.86 | $134,765.60 | $299,453.46 | 28.7% | $33,273 | $2,661,808 | $2,395,628 | $266,181 |
| 5/1/2026 | 8/31/2026 | 4 | $73.62 | $186,646.25 | $149,739.56 | $336,385.81 | 32.3% | $66.26 | $167,981.61 | $134,765.60 | $302,747.21 | 29.1% | $33,639 | $1,345,543 | $1,210,989 | $134,554 |
| 9/1/2026 | 4/30/2027 | 8 | $74.28 | $186,646.25 | $152,734.35 | $339,380.60 | 32.6% | $66.85 | $167,981.61 | $137,460.91 | $305,442.53 | 29.3% | $33,938 | $2,715,045 | $2,443,540 | $271,505 |
| 5/1/2027 | 8/31/2027 | 4 | $75.10 | $190,379.17 | $152,734.35 | $343,113.52 | 32.9% | $67.59 | $171,341.24 | $137,460.91 | $308,802.16 | 29.6% | $34,311 | $1,372,454 | $1,235,209 | $137,245 |
| 9/1/2027 | 4/30/2028 | 8 | $75.77 | $190,379.17 | $155,789.04 | $346,168.20 | 33.2% | $68.19 | $171,341.24 | $140,210.13 | $311,551.38 | 29.9% | $34,617 | $2,769,346 | $2,492,411 | $276,935 |
| 5/1/2028 | 8/31/2028 | 4 | $76.60 | $194,186.75 | $155,789.04 | $349,975.79 | 33.6% | $68.94 | $174,768.07 | $140,210.13 | $314,978.20 | 30.2% | $34,998 | $1,399,903 | $1,259,913 | $139,990 |
| 9/1/2028 | 4/30/2029 | 8 | $77.28 | $194,186.75 | $158,904.82 | $353,091.57 | 33.9% | $69.55 | $174,768.07 | $143,014.33 | $317,782.40 | 30.5% | $35,309 | $2,824,733 | $2,542,259 | $282,473 |
| 5/1/2029 | 8/31/2029 | 4 | $78.13 | $198,070.49 | $158,904.82 | $356,975.30 | 34.3% | $70.32 | $178,263.43 | $143,014.33 | $321,277.76 | 30.8% | $35,698 | $1,427,901 | $1,285,111 | $142,790 |
| 9/1/2029 | 4/30/2030 | 8 | $78.83 | $198,070.49 | $162,082.91 | $360,153.40 | 34.6% | $70.94 | $178,263.43 | $145,874.62 | $324,138.05 | 31.1% | $36,015 | $2,881,227 | $2,593,104 | $288,123 |
| 5/1/2030 | 8/31/2030 | 4 | $79.69 | $202,031.89 | $162,082.91 | $364,114.81 | 35.0% | $71.72 | $181,828.70 | $145,874.62 | $327,703.32 | 31.5% | $36,411 | $1,456,459 | $1,310,813 | $145,646 |
| 9/1/2030 | 4/30/2031 | 8 | $80.40 | $202,031.89 | $165,324.57 | $367,356.46 | 35.3% | $72.36 | $181,828.70 | $148,792.11 | $330,620.81 | 31.7% | $36,736 | $2,938,852 | $2,644,967 | $293,885 |
| 5/1/2031 | 8/31/2031 | 4 | $81.29 | $206,072.53 | $165,324.57 | $371,397.10 | 35.7% | $73.16 | $185,465.27 | $148,792.11 | $334,257.39 | 32.1% | $37,140 | $1,485,588 | $1,337,030 | $148,559 |
| 9/1/2031 | 4/30/2032 | 8 | $82.01 | $206,072.53 | $168,631.06 | $374,703.59 | 36.0% | $73.81 | $185,465.27 | $151,767.96 | $337,233.23 | 32.4% | $37,470 | $2,997,629 | $2,697,866 | $299,763 |
| 5/1/2032 | 8/31/2032 | 4 | $82.91 | $210,193.98 | $168,631.06 | $378,825.04 | 36.4% | $74.62 | $189,174.58 | $151,767.96 | $340,942.53 | 32.7% | $37,883 | $1,515,300 | $1,363,770 | $151,530 |
| 9/1/2032 | 4/30/2033 | 8 | $83.65 | $210,193.98 | $172,003.68 | $382,197.67 | 36.7% | $75.29 | $189,174.58 | $154,803.31 | $343,977.89 | 33.0% | $38,220 | $3,057,581 | $2,751,823 | $305,758 |
| 5/1/2033 | 8/31/2033 | 4 | $84.57 | $214,397.86 | $172,003.68 | $386,401.55 | 37.1% | $76.11 | $192,958.07 | $154,803.31 | $347,761.39 | 33.4% | $38,640 | $1,545,606 | $1,391,046 | $154,561 |
| 9/1/2033 | 4/30/2034 | 8 | $85.32 | $214,397.86 | $175,443.76 | $389,841.62 | 37.4% | $76.79 | $192,958.07 | $157,899.38 | $350,857.45 | 33.7% | $38,984 | $3,118,733 | $2,806,860 | $311,873 |
| 5/1/2034 | 8/31/2034 | 4 | $86.26 | $218,685.82 | $175,443.76 | $394,129.58 | 37.8% | $77.64 | $196,817.23 | $157,899.38 | $354,716.61 | 34.1% | $39,413 | $1,576,518 | $1,418,866 | $157,652 |
| 9/1/2034 | 4/30/2035 | 8 | $87.03 | $218,685.82 | $178,952.63 | $397,638.45 | 38.2% | $78.33 | $196,817.23 | $161,057.37 | $357,874.60 | 34.4% | $39,764 | $3,181,108 | $2,862,997 | $318,111 |
| 5/1/2035 | 8/31/2035 | 4 | $87.99 | $223,059.54 | $178,952.63 | $402,012.17 | 38.6% | $79.19 | $200,753.58 | $161,057.37 | $361,810.95 | 34.7% | $40,201 | $1,608,049 | $1,447,244 | $160,805 |
| 9/1/2035 | 4/30/2036 | 8 | $88.77 | $223,059.54 | $182,531.68 | $405,591.22 | 38.9% | $79.89 | $200,753.58 | $164,278.52 | $365,032.09 | 35.0% | $40,559 | $3,244,730 | $2,920,257 | $324,473 |
| 5/1/2036 | 8/31/2036 | 4 | $89.75 | $227,520.73 | $182,531.68 | $410,052.41 | 39.4% | $80.77 | $204,768.65 | $164,278.52 | $369,047.16 | 35.4% | $41,005 | $1,640,210 | $1,476,189 | $164,021 |
| 9/1/2036 | 4/30/2037 | 8 | $90.55 | $227,520.73 | $186,182.32 | $413,703.05 | 39.7% | $81.49 | $204,768.65 | $167,564.09 | $372,332.73 | 35.7% | $41,370 | $3,309,624 | $2,978,662 | $330,962 |
| 5/1/2037 | 8/31/2037 | 4 | $91.54 | $232,071.14 | $186,182.32 | $418,253.46 | 40.2% | $82.39 | $208,864.02 | $167,564.09 | $376,428.11 | 36.1% | $41,825 | $1,673,014 | $1,505,712 | $167,301 |
| 9/1/2037 | 4/30/2038 | 8 | $92.36 | $232,071.14 | $189,905.96 | $421,977.11 | 40.5% | $83.12 | $208,864.02 | $170,915.37 | $379,779.39 | 36.5% | $42,198 | $3,375,817 | $3,038,235 | $337,582 |
| 5/1/2038 | 8/31/2038 | 4 | $93.37 | $236,712.56 | $189,905.96 | $426,618.53 | 41.0% | $84.04 | $213,041.30 | $170,915.37 | $383,956.67 | 36.9% | $42,662 | $1,706,474 | $1,535,827 | $170,647 |
| 9/1/2038 | 4/30/2039 | 8 | $94.21 | $236,712.56 | $193,704.08 | $430,416.65 | 41.3% | $84.78 | $213,041.30 | $174,333.68 | $387,374.98 | 37.2% | $43,042 | $3,443,333 | $3,099,000 | $344,333 |
| 5/1/2039 | 8/31/2039 | 4 | $95.24 | $241,446.82 | $193,704.08 | $435,150.90 | 41.8% | $85.72 | $217,302.13 | $174,333.68 | $391,635.80 | 37.6% | $43,515 | $1,740,604 | $1,566,543 | $174,060 |
| 9/1/2039 | 4/30/2040 | 8 | $96.09 | $241,446.82 | $197,578.17 | $439,024.98 | 42.1% | $86.48 | $217,302.13 | $177,820.35 | $395,122.48 | 37.9% | $43,903 | $3,512,200 | $3,160,980 | $351,220 |
| 5/1/2040 | 8/31/2040 | 4 | $97.15 | $246,275.75 | $197,578.17 | $443,853.92 | 42.6% | $87.43 | $221,648.17 | $177,820.35 | $399,468.52 | 38.3% | $44,385 | $1,775,416 | $1,597,874 | $177,542 |
| 9/1/2040 | 4/30/2041 | 8 | $98.01 | $246,275.75 | $201,529.73 | $447,805.48 | 43.0% | $88.21 | $221,648.17 | $181,376.76 | $403,024.93 | 38.7% | $44,781 | $3,582,444 | $3,224,199 | $358,244 |
| 5/1/2041 | 8/31/2041 | 4 | $99.09 | $251,201.27 | $201,529.73 | $452,731.00 | 43.5% | $89.18 | $226,081.13 | $181,376.76 | $407,457.89 | 39.1% | $45,273 | $1,810,924 | $1,629,832 | $181,092 |
| 9/1/2041 | 4/30/2042 | 8 | $99.97 | $251,201.27 | $205,560.32 | $456,761.59 | 43.8% | $89.97 | $226,081.13 | $185,004.29 | $411,085.42 | 39.5% | $45,676 | $3,654,093 | $3,288,683 | $365,409 |
| 5/1/2042 | 8/31/2042 | 4 | $101.07 | $256,225.29 | $205,560.32 | $461,785.62 | 44.3% | $90.96 | $230,602.76 | $185,004.29 | $415,607.05 | 39.9% | $46,179 | $1,847,142 | $1,662,428 | $184,714 |
| 9/1/2042 | 4/30/2043 | 8 | $101.97 | $256,225.29 | $209,671.53 | $465,896.82 | 44.7% | $91.77 | $230,602.76 | $188,704.38 | $419,307.13 | 40.3% | $46,590 | $3,727,175 | $3,354,457 | $372,718 |
| 5/1/2043 | 8/31/2043 | 4 | $103.09 | $261,349.80 | $209,671.53 | $471,021.33 | 45.2% | $92.78 | $235,214.81 | $188,704.38 | $423,919.19 | 40.7% | $47,102 | $1,884,085 | $1,695,677 | $188,409 |
| 9/1/2043 | 4/30/2044 | 8 | $104.01 | $261,349.80 | $213,864.96 | $475,214.76 | 45.6% | $93.61 | $235,214.81 | $192,478.46 | $427,693.28 | 41.1% | $47,521 | $3,801,718 | $3,421,546 | $380,172 |
| 5/1/2044 | 8/31/2044 | 4 | $105.15 | $266,576.79 | $213,864.96 | $480,441.75 | 46.1% | $94.64 | $239,919.11 | $192,478.46 | $432,397.57 | 41.5% | $48,044 | $1,921,767 | $1,729,590 | $192,177 |
| 9/1/2044 | 4/30/2045 | 8 | $106.09 | $266,576.79 | $218,142.26 | $484,719.05 | 46.5% | $95.48 | $239,919.11 | $196,328.03 | $436,247.14 | 41.9% | $48,472 | $3,877,752 | $3,489,977 | $387,775 |
| 5/1/2045 | 8/31/2045 | 4 | $107.26 | $271,908.33 | $218,142.26 | $490,050.59 | 47.0% | $96.53 | $244,717.49 | $196,328.03 | $441,045.52 | 42.3% | $49,005 | $1,960,202 | $1,764,182 | $196,020 |
| 9/1/2045 | 4/30/2046 | 8 | $108.21 | $271,908.33 | $222,505.10 | $494,413.44 | 47.5% | $97.39 | $244,717.49 | $200,254.59 | $444,972.08 | 42.7% | $49,441 | $3,955,307 | $3,559,777 | $395,531 |
| 5/1/2046 | 8/31/2046 | 4 | $109.40 | $277,346.50 | $222,505.10 | $499,851.60 | 48.0% | $98.46 | $249,611.84 | $200,254.59 | $449,866.43 | 43.2% | $49,985 | $1,999,406 | $1,799,466 | $199,941 |
| 9/1/2046 | 4/30/2047 | 8 | $110.38 | $277,346.50 | $226,955.21 | $504,301.70 | 48.4% | $99.34 | $249,611.84 | $204,259.69 | $453,871.53 | 43.6% | $50,430 | $4,034,414 | $3,630,972 | $403,441 |
| 5/1/2047 | 8/31/2047 | 4 | $111.59 | $282,893.43 | $226,955.21 | $509,848.63 | 48.9% | $100.43 | $254,604.08 | $204,259.69 | $458,863.76 | 44.0% | $50,985 | $2,039,395 | $1,835,455 | $203,939 |
| 9/1/2047 | 4/30/2048 | 8 | $112.58 | $282,893.43 | $231,494.31 | $514,387.74 | 49.4% | $101.33 | $254,604.08 | $208,344.88 | $462,948.96 | 44.4% | $51,439 | $4,115,102 | $3,703,592 | $411,510 |
| 5/1/2048 | 8/31/2048 | 4 | $113.82 | $288,551.30 | $231,494.31 | $520,045.61 | 49.9% | $102.44 | $259,696.16 | $208,344.88 | $468,041.04 | 44.9% | $52,005 | $2,080,182 | $1,872,164 | $208,018 |
| 9/1/2048 | 4/30/2049 | 8 | $114.84 | $288,551.30 | $236,124.20 | $524,675.49 | 50.4% | $103.35 | $259,696.16 | $212,511.78 | $472,207.94 | 45.3% | $52,468 | $4,197,404 | $3,777,663 | $419,740 |
| | | **305** | | | | | | | | | | | | **$126,610,417** | **$113,949,374** | **$12,661,043** |

| | |
|---|---|
| Effective Date | 12/1/2023 |
| Contractual Expiration Date | 4/30/2029 |
| Renegotiated Expiration Date | 4/30/2049 |
| Total Months Contractual | 65 |
| Total Months Renegotiated | 305 |
| Total Months (+/-) | 240 |
| Total Contractual Rent Owed | $126,610,417 |
| Total Renegotiated Rent Owed | $113,949,374 |
| Net % Rent Reduction | 10.00% |
| TOTAL LEASE SAVINGS | $12,661,043 |
| WAIVED PRE-PETITION SAVINGS | $0 |
| TOTAL TIA TO TENANT | $0 |

| Tenant Allowance Secured | Pre-Petition Savings | Term Shortening Savings | 2023 Restructure Savings | 2024 Restructure Savings | 2025 Restructure Savings | 2026 Restructure Savings | 2027+ Restructure Savings |
|---|---|---|---|---|---|---|---|
| $0 | $0 | $0 | $31,981 | $387,732 | $395,487 | $403,397 | $11,442,446 |

**TOTAL VALUE SECURED** **$12,661,043**

| | | |
|---|---|---|
| Restructured Lease Savings Fee | $109,882 | *4.5% of aggregate Restructured Lease Savings |
| Term Shortened Lease Fee | $0 | *1 month of Gross Rent plus Any other measurement of leasehold expense calculable |
| Sale and/or Assigned Lease Fee | $0 | *$10,000 for each Designated Sale and/or AssignmentLease transaction |
| Total Hilco Fee | $109,882 | |

**DEAL TERMS**

- Lease extended 20 years to 4/30/2049.
- Effective 12/1/23, annual Base Rent at MSP I shall be reduced by to $1,899,513.90/yr.
- Effective 12/1/23, annual Base Rent at MSP II shall be reduced by to $1,554,389.87/yr.
- Annual Escalation dates shall remain unchanged, and the annual increase shall remain at 2.0%.
- All other lease terms remain unchanged.

.

## Hilco Real Estate

### CYXTERA – HILCO DEAL SHEET

| | |
|---|---|
| Date Submitted | 10/23/2023 |
| Site Code | TPA1 |
| Lease ID | L-FL-TPA01-01 |
| Lease Name | 9310 Florida Palm Drive, Tampa - Lease Agreement |
| Restructuring Strategy - A | 4 - Blend/Extend (Downsize) |
| SQFT | 96,000 |
| Single or Multi Tenant Site | Single |
| Leased Condition | Shell |
| 2022 Total Revenue | $9,943,199 |
| 2022 NOI 3 | $5,885,095 |
| Capital Lease Obligation Rem (USD) | N/A |
| Landlord | Eastgroup |
| Dealmaker | Newmark |

| Time Period Beginning | Time Period End | Term (Months) | Contractual Structure | | | | | Renegotiated Structure | | | | | | Contractual Rent Total | Renegotiated Rent Total | Total Savings |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Base Rent PSF | Base Rent / Month | NNN Rent / Month | Total Rent / Month | Occ % (2022 Revenue) | Base Rent PSF | Base Rent / Month | NNN Rent / Month | Total Rent / Month | Occ % (2022 Revenue) | Savings / Month | | | |
| 8/1/2023 | 1/31/2024 | 6 | $8.87 | $70,960.00 | $22,400.00 | $93,360.00 | 11.3% | $8.87 | $70,960.00 | $22,400.00 | $93,360.00 | 11.3% | $0 | $560,160 | $560,160 | $0 |
| 2/1/2024 | 9/30/2024 | 8 | $9.13 | $73,040.00 | $22,400.00 | $95,440.00 | 11.5% | $9.13 | $73,040.00 | $22,400.00 | $95,440.00 | 11.5% | $0 | $763,520 | $763,520 | $0 |
| 10/1/2024 | 1/31/2025 | 4 | $9.13 | $73,040.00 | $22,400.00 | $95,440.00 | 11.5% | $12.60 | $61,929.00 | $13,762.00 | $75,691.00 | 9.1% | $19,749 | $381,760 | $302,764 | $78,996 |
| 2/1/2025 | 2/28/2025 | 1 | $9.13 | $73,040.00 | $22,400.00 | $95,440.00 | 11.5% | $0.00 | $0.00 | $13,762.00 | $13,762.00 | 1.7% | $81,678 | $95,440 | $13,762 | $81,678 |
| 3/1/2025 | 1/31/2026 | 11 | $9.13 | $73,040.00 | $22,400.00 | $95,440.00 | 11.5% | $13.10 | $64,406.16 | $13,762.00 | $78,168.16 | 9.4% | $17,272 | $1,049,840 | $859,850 | $189,990 |
| 2/1/2026 | 1/31/2027 | 12 | $9.40 | $75,231.20 | $22,400.00 | $97,631.20 | 11.8% | $13.63 | $66,982.41 | $13,762.00 | $80,744.41 | 9.7% | $16,887 | $1,171,574 | $968,933 | $202,642 |
| 2/1/2027 | 1/31/2028 | 12 | $9.69 | $77,488.14 | $22,400.00 | $99,888.14 | 12.1% | $14.17 | $69,661.70 | $13,762.00 | $83,423.70 | 10.1% | $16,464 | $1,198,658 | $1,001,084 | $197,573 |
| 2/1/2028 | 1/31/2029 | 12 | $9.98 | $79,812.78 | $22,400.00 | $102,212.78 | 12.3% | $14.74 | $72,448.17 | $13,762.00 | $86,210.17 | 10.4% | $16,003 | $1,226,553 | $1,034,522 | $192,031 |
| 2/1/2029 | 1/31/2030 | 12 | $10.28 | $82,207.16 | $22,400.00 | $104,607.16 | 12.6% | $15.33 | $75,346.10 | $13,762.00 | $89,108.10 | 10.8% | $15,499 | $1,255,286 | $1,069,297 | $185,989 |
| | | 78 | | | | | | | | | | | | $7,702,791 | $6,573,892 | $1,128,899 |

| | |
|---|---|
| Effective Date | 8/1/2023 |
| Contractual Expiration Date | 1/31/2025 |
| Renegotiated Expiration Date | 1/31/2030 |
| Total Months Contractual | 18 |
| Total Months Renegotiated | 78 |
| Total Months (+/-) | 60 |

| | |
|---|---|
| Total Contractual Rent Owed | $7,702,791 |
| Total Renegotiated Rent Owed | $6,573,892 |
| Net % Rent Reduction | 14.66% |
| TOTAL LEASE SAVINGS | $1,128,899 |
| WAIVED RESTORATION COSTS | $600,000 |

| | Tenant Allowance Secured | Pre-Petition Savings | Term Shortening Savings | 2023 Restructure Savings | 2024 Restructure Savings | 2025 Restructure Savings | 2026 Restructure Savings | 2027+ Restructure Savings |
|---|---|---|---|---|---|---|---|---|
| TOTAL VALUE SECURED  $1,728,899 | $0 | $0 | $0 | $0 | $659,247 | $274,145 | $203,027 | $592,480 |

| | |
|---|---|
| Restructured Lease Savings Fee | $77,800 |
| Term Shortened Lease Fee | $0 |
| Sale and/or Assigned Lease Fee | $0 |
| Total Hilco Fee | $77,800 |

*4.5% of aggregate Restructured Lease Savings capped at 6 years
*1 month of Gross Rent plus Any other measurement of leasehold expense calculable
*$10,000 for each Designated Sale and/or Assignment/Lease transaction

**DEAL TERMS**

· Lease expiration date extended 60 months to 1/31/2030.
· Effective 10/1/24, tenant shall surrender the proposed 37,020 SF "Give Back Area" to the landlord at no cost to tenant. Landlord shall waive the restoration clause in the lease for the recaptured "Give Back Area" (Landlord estimates ~$600k in restoration costs being waived).
· Tenant shall only be responsible for the retained area of 58,980 SF, which shall be used to determine Rent PSF going forward.
· Effective 10/1/24, annual Base Rent shall be $12.60 PSF or $743,148/yr based on the retained area of 58,980 SF, followed by 4% annual increases each February 1st (first bump on 2/1/25).
· Landlord shall grant 1 month of free rent in February 2025.
· For the purpose of this analysis, CAM and Taxes were reduced proportionally to the SQFT given back to the Landlord.
· All other lease terms remain unchanged.

*NOTE: Landlord has indicated that these terms are BEST & FINAL.*

Hilco Real Estate

## CYXTERA - HILCO DEAL SHEET

| | |
|---|---|
| Date Submitted | 12/1/2023 |
| Site Code | SEA1-A |
| Lease ID | L-WA-SEA01-01 |
| Lease Name | 12301 Tukwila International Blvd, Tukwila - Lease Agreement |
| Restructuring Strategy - A | 2 - Sell |
| SQFT | 103,809 |
| Single or Multi Tenant Site | Single |
| Leased Condition | Shell |
| 2022 Total Revenue | $6,165,787 |
| 2022 NOI 3 | ($212,437) |
| Capital Lease Obligation Rem (USD) | $30,770,535 |
| Landlord | Sabey |
| Dealmaker | Newmark |

| | | | Contractual Structure | | | | | Renegotiated Structure | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Period Beginning | Time Period End | Term (Months) | Total Rent PSF | Building Base Rent / Month | Generator Bunker Rent / Month | Total Rent / Month | Occ % (2022 Revenue) | Total Rent PSF | Building Base Rent / Month | Generator Bunker Rent / Month | Total Rent / Month | Occ % (2022 Revenue) | Savings / Month | Contractual Rent Total | Renegotiated Rent Total | Total Savings |
| 2/1/2024 | 4/30/2024 | 3 | $27.31 | $235,148.46 | $1,070.73 | $236,219.19 | 46.0% | $22.00 | $189,474.60 | $843.92 | $190,318.52 | 37.0% | $45,901 | $708,658 | $570,956 | $137,702 |
| 5/1/2024 | 1/31/2025 | 9 | $27.92 | $240,439.30 | $1,094.82 | $241,534.12 | 47.0% | $22.00 | $189,474.60 | $843.92 | $190,318.52 | 37.0% | $51,216 | $2,173,807 | $1,712,867 | $460,940 |
| 2/1/2025 | 4/30/2025 | 3 | $27.92 | $240,439.30 | $1,094.82 | $241,534.12 | 47.0% | $22.50 | $193,737.78 | $862.91 | $194,600.69 | 37.9% | $46,933 | $724,602 | $583,802 | $140,800 |
| 5/1/2025 | 1/31/2026 | 9 | $28.55 | $245,849.18 | $1,119.45 | $246,968.63 | 48.1% | $22.50 | $193,737.78 | $862.91 | $194,600.69 | 37.9% | $52,368 | $2,222,718 | $1,751,406 | $471,311 |
| 2/1/2026 | 4/30/2026 | 3 | $28.55 | $245,849.18 | $1,119.45 | $246,968.63 | 48.1% | $23.00 | $198,096.88 | $882.32 | $198,979.20 | 38.7% | $47,989 | $740,906 | $596,938 | $143,968 |
| 5/1/2026 | 1/31/2027 | 9 | $29.19 | $251,380.79 | $1,144.64 | $252,525.43 | 49.1% | $23.00 | $198,096.88 | $882.32 | $198,979.20 | 38.7% | $53,546 | $2,272,729 | $1,790,813 | $481,916 |
| 2/1/2027 | 4/30/2027 | 3 | $29.19 | $251,380.79 | $1,144.64 | $252,525.43 | 49.1% | $23.52 | $202,554.06 | $902.18 | $203,456.24 | 39.6% | $49,069 | $757,576 | $610,369 | $147,208 |
| 5/1/2027 | 1/31/2028 | 9 | $29.85 | $257,036.85 | $1,170.40 | $258,207.25 | 50.3% | $23.52 | $202,554.06 | $902.18 | $203,456.24 | 39.6% | $54,751 | $2,323,865 | $1,831,106 | $492,759 |
| 2/1/2028 | 4/30/2028 | 3 | $29.85 | $257,036.85 | $1,170.40 | $258,207.25 | 50.3% | $24.05 | $207,111.52 | $922.47 | $208,033.99 | 40.5% | $50,173 | $774,622 | $624,102 | $150,520 |
| 5/1/2028 | 1/31/2029 | 9 | $30.52 | $262,820.18 | $1,196.73 | $264,016.91 | 51.4% | $24.05 | $207,111.52 | $922.47 | $208,033.99 | 40.5% | $55,983 | $2,376,152 | $1,872,306 | $503,846 |
| 2/1/2029 | 4/30/2029 | 3 | $30.52 | $262,820.18 | $1,196.73 | $264,016.91 | 51.4% | $24.59 | $211,771.53 | $943.23 | $212,714.76 | 41.4% | $51,302 | $792,051 | $638,144 | $153,906 |
| 5/1/2029 | 1/31/2030 | 9 | $31.21 | $268,733.64 | $1,223.66 | $269,957.30 | 52.5% | $24.59 | $211,771.53 | $943.23 | $212,714.76 | 41.4% | $57,243 | $2,429,616 | $1,914,433 | $515,183 |
| 2/1/2030 | 4/30/2030 | 3 | $31.21 | $268,733.64 | $1,223.66 | $269,957.30 | 52.5% | $25.14 | $216,536.39 | $964.45 | $217,500.84 | 42.3% | $52,456 | $809,872 | $652,503 | $157,369 |
| 5/1/2030 | 1/31/2031 | 9 | $31.91 | $274,780.14 | $1,251.19 | $276,031.33 | 53.7% | $25.14 | $216,536.39 | $964.45 | $217,500.84 | 42.3% | $58,530 | $2,484,282 | $1,957,508 | $526,774 |
| 2/1/2031 | 4/30/2031 | 3 | $31.91 | $274,780.14 | $1,251.19 | $276,031.33 | 53.7% | $25.71 | $221,408.46 | $986.15 | $222,394.61 | 43.3% | $53,637 | $828,094 | $667,184 | $160,910 |
| 5/1/2031 | 1/31/2032 | 9 | $32.63 | $280,962.70 | $1,279.34 | $282,242.04 | 54.9% | $25.71 | $221,408.46 | $986.15 | $222,394.61 | 43.3% | $59,847 | $2,540,178 | $2,001,551 | $538,627 |
| 2/1/2032 | 4/30/2032 | 3 | $32.63 | $280,962.70 | $1,279.34 | $282,242.04 | 54.9% | $26.29 | $226,390.15 | $1,008.34 | $227,398.49 | 44.3% | $54,844 | $846,726 | $682,195 | $164,531 |
| 5/1/2032 | 1/31/2033 | 9 | $33.36 | $287,284.36 | $1,308.13 | $288,592.49 | 56.2% | $26.29 | $226,390.15 | $1,008.34 | $227,398.49 | 44.3% | $61,194 | $2,597,332 | $2,046,586 | $550,746 |
| 2/1/2033 | 4/30/2033 | 3 | $33.36 | $287,284.36 | $1,308.13 | $288,592.49 | 56.2% | $26.88 | $231,483.93 | $1,031.03 | $232,514.96 | 45.3% | $56,078 | $865,777 | $697,545 | $168,233 |
| 5/1/2033 | 1/31/2034 | 9 | $34.11 | $293,748.26 | $1,337.56 | $295,085.82 | 57.4% | $26.88 | $231,483.93 | $1,031.03 | $232,514.96 | 45.3% | $62,571 | $2,655,772 | $2,092,635 | $563,138 |
| 2/1/2034 | 4/30/2034 | 3 | $34.11 | $293,748.26 | $1,337.56 | $295,085.82 | 57.4% | $27.48 | $236,692.32 | $1,054.23 | $237,746.55 | 46.3% | $57,339 | $885,257 | $713,240 | $172,018 |
| | | **123** | | | | | | | | | | | | **$32,810,593** | **$26,008,187** | **$6,802,406** |

| | |
|---|---|
| Effective Date | 2/1/2024 |
| Contractual Expiration Date | 4/30/2034 |
| Renegotiated Expiration Date | 4/30/2034 |
| Total Months Contractual | 123 |
| Total Months Renegotiated | 123 |
| Total Months (+/-) | 0 |

| | |
|---|---|
| Total Contractual Rent Owed | $32,810,593 |
| Total Renegotiated Rent Owed | $26,008,187 |
| Net % Rent Reduction | 20.73% |
| TOTAL LEASE SAVINGS | $6,802,406 |
| WAIVED PRE-PETITION SAVINGS | $0 |
| TOTAL TIA TO TENANT | $0 |

**TOTAL VALUE SECURED** **$6,802,406**

| Tenant Allowance Secured | Pre-Petition Savings | Term Shortening Savings | 2023 Restructure Savings | 2024 Restructure Savings | 2025 Restructure Savings | 2026 Restructure Savings | 2027+ Restructure Savings |
|---|---|---|---|---|---|---|---|
| $0 | $0 | $0 | $0 | $547,427 | $610,959 | $624,706 | $5,019,314 |

| | | |
|---|---|---|
| Restructured Lease Savings Fee | $171,003 | *4.5% of aggregate Restructured Lease Savings capped at 6 years |
| Term Shortened Lease Fee | $0 | *1 month of Gross Rent plus Any other measurement of leasehold expense calculable |
| Sale and/or Assigned Lease Fee | $0 | *$10,000 for each Designated Sale and/or AssignmentLease transaction |
| Total Hilco Fee | $171,003 | |

**DEAL TERMS**

- Lease expiration date shall remain unchanged.
- Effective 2/1/24, annual Building Base Rent shall be reduced to $22.90 PSF ($2,273,695.20/yr) and Generator Bunker Rent shall be reduced to $2.24 PSF ($10,127.04/yr). Annual rent shall increase by 2.25% every 2/1 thereafter.
- All other lease terms remain unchanged.

Hilco Real Estate

## CYXTERA - HILCO DEAL SHEET

| | |
|---|---|
| Date Submitted | 12/1/2023 |
| Site Code | SEA1-B |
| Lease ID | L-WA-SEA02-01 |
| Lease Name | 3355 South 120th Place, Tukwila - Data Center Lease Agreement |
| Restructuring Strategy - A | 2 - Sell |
| SQFT | 84,354 |
| Single or Multi Tenant Site | Multi |
| Leased Condition | Turn Key |
| 2022 Total Revenue | $9,525,005 |
| 2022 NOI 3 | $204,006 |
| Capital Lease Obligation Rem (USD) | $50,736,484 |
| Landlord | Sabey |
| Dealmaker | Newmark |

**Contractual Structure**

| Time Period Beginning | Time Period End | Term (Months) | Total Rent PSF | Base Rent / Month | Admin Support, 101 RU, & 133 RU Space Rent / Month | Room 101, & 133 RU Fiber Patch Panel Rent / Month | Total Rent / Month | Occ % (2022 Revenue) |
|---|---|---|---|---|---|---|---|---|
| 2/1/2024 | 4/30/2024 | 3 | $55.41 | $380,167.27 | $8,752.58 | $584.52 | $389,504.37 | 49.1% |
| 5/1/2024 | 1/31/2025 | 9 | $56.66 | $388,721.04 | $8,948.05 | $596.20 | $398,265.29 | 50.2% |
| 2/1/2025 | 4/30/2025 | 3 | $56.66 | $388,721.04 | $8,948.05 | $596.20 | $398,265.29 | 50.2% |
| 5/1/2025 | 1/31/2026 | 9 | $57.93 | $397,467.26 | $9,147.89 | $608.12 | $407,223.27 | 51.3% |
| 2/1/2026 | 4/30/2026 | 3 | $57.93 | $397,467.26 | $9,147.89 | $608.12 | $407,223.27 | 51.3% |
| 5/1/2026 | 1/31/2027 | 9 | $59.23 | $406,410.27 | $9,352.21 | $620.30 | $416,382.78 | 52.5% |
| 2/1/2027 | 4/30/2027 | 3 | $59.23 | $406,410.27 | $9,352.21 | $620.30 | $416,382.78 | 52.5% |
| 5/1/2027 | 1/31/2028 | 9 | $60.57 | $415,554.50 | $9,561.08 | $632.70 | $425,748.28 | 53.6% |
| 2/1/2028 | 4/30/2028 | 3 | $60.57 | $415,554.50 | $9,561.08 | $632.70 | $425,748.28 | 53.6% |
| 5/1/2028 | 1/31/2029 | 9 | $61.93 | $424,904.48 | $9,774.60 | $645.34 | $435,324.42 | 54.8% |
| 2/1/2029 | 4/30/2029 | 3 | $61.93 | $424,904.48 | $9,774.60 | $645.34 | $435,324.42 | 54.8% |
| 5/1/2029 | 1/31/2030 | 9 | $63.32 | $434,464.83 | $9,992.93 | $658.26 | $445,116.02 | 56.1% |
| 2/1/2030 | 4/30/2030 | 3 | $63.32 | $434,464.83 | $9,992.93 | $658.26 | $445,116.02 | 56.1% |
| 5/1/2030 | 1/31/2031 | 9 | $64.75 | $444,240.29 | $10,216.12 | $671.42 | $455,127.83 | 57.3% |
| 2/1/2031 | 4/30/2031 | 3 | $64.75 | $444,240.29 | $10,216.12 | $671.42 | $455,127.83 | 57.3% |
| 5/1/2031 | 1/31/2032 | 9 | $66.20 | $454,235.70 | $10,444.31 | $684.86 | $465,364.87 | 58.6% |
| 2/1/2032 | 4/30/2032 | 3 | $66.20 | $454,235.70 | $10,444.31 | $684.86 | $465,364.87 | 58.6% |
| 5/1/2032 | 1/31/2033 | 9 | $67.69 | $464,456.00 | $10,677.58 | $698.54 | $475,832.12 | 59.9% |
| 2/1/2033 | 4/30/2033 | 3 | $67.69 | $464,456.00 | $10,677.58 | $698.54 | $475,832.12 | 59.9% |
| 5/1/2033 | 1/31/2034 | 9 | $69.21 | $474,906.26 | $10,916.09 | $712.52 | $486,534.87 | 61.3% |
| 2/1/2034 | 4/30/2034 | 3 | $69.21 | $474,906.26 | $10,916.09 | $712.52 | $486,534.87 | 61.3% |
| | | **123** | | | | | | |

**Renegotiated Structure**

| Time Period Beginning | Total Rent PSF | Base Rent / Month | Admin Support, 101 RU, & 133 RU Space Rent / Month | Room 101, & 133 RU Fiber Patch Panel Rent / Month | Total Rent / Month | Occ % (2022 Revenue) | Savings / Month | Contractual Rent Total | Renegotiated Rent Total | Total Savings |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/1/2024 | $51.17 | $350,993.85 | $8,096.88 | $584.52 | $359,675.25 | 45.3% | $29,829 | $1,168,513 | $1,079,026 | $89,487 |
| 5/1/2024 | $51.17 | $350,993.85 | $8,096.88 | $584.52 | $359,675.25 | 45.3% | $38,590 | $3,584,388 | $3,237,077 | $347,310 |
| 2/1/2025 | $52.32 | $358,891.22 | $8,277.58 | $596.20 | $367,765.00 | 46.3% | $30,500 | $1,194,796 | $1,103,295 | $91,501 |
| 5/1/2025 | $52.32 | $358,891.22 | $8,277.58 | $596.20 | $367,765.00 | 46.3% | $39,458 | $3,665,009 | $3,309,885 | $355,124 |
| 2/1/2026 | $53.49 | $366,966.27 | $8,462.34 | $608.12 | $376,036.73 | 47.4% | $31,187 | $1,221,670 | $1,128,110 | $93,560 |
| 5/1/2026 | $53.49 | $366,966.27 | $8,462.34 | $608.12 | $376,036.73 | 47.4% | $40,346 | $3,747,445 | $3,384,331 | $363,114 |
| 2/1/2027 | $54.70 | $375,223.01 | $8,651.23 | $620.30 | $384,494.54 | 48.4% | $31,888 | $1,249,148 | $1,153,484 | $95,665 |
| 5/1/2027 | $54.70 | $375,223.01 | $8,651.23 | $620.30 | $384,494.54 | 48.4% | $41,254 | $3,831,735 | $3,460,451 | $371,284 |
| 2/1/2028 | $55.93 | $383,665.53 | $8,844.33 | $632.70 | $393,142.56 | 49.5% | $32,606 | $1,277,245 | $1,179,428 | $97,817 |
| 5/1/2028 | $55.93 | $383,665.53 | $8,844.33 | $632.70 | $393,142.56 | 49.5% | $42,182 | $3,917,920 | $3,538,283 | $379,637 |
| 2/1/2029 | $57.19 | $392,298.00 | $9,041.73 | $645.34 | $401,985.07 | 50.6% | $33,339 | $1,305,973 | $1,205,955 | $100,018 |
| 5/1/2029 | $57.19 | $392,298.00 | $9,041.73 | $645.34 | $401,985.07 | 50.6% | $43,131 | $4,006,044 | $3,617,866 | $388,179 |
| 2/1/2030 | $58.47 | $401,124.71 | $9,243.57 | $658.26 | $411,026.54 | 51.8% | $34,089 | $1,335,348 | $1,233,080 | $102,268 |
| 5/1/2030 | $58.47 | $401,124.71 | $9,243.57 | $658.26 | $411,026.54 | 51.8% | $44,101 | $4,096,150 | $3,699,239 | $396,912 |
| 2/1/2031 | $59.79 | $410,150.01 | $9,449.90 | $671.42 | $420,271.33 | 52.9% | $34,856 | $1,365,383 | $1,260,814 | $104,570 |
| 5/1/2031 | $59.79 | $410,150.01 | $9,449.90 | $671.42 | $420,271.33 | 52.9% | $45,094 | $4,188,284 | $3,782,442 | $405,842 |
| 2/1/2032 | $61.13 | $419,378.39 | $9,660.85 | $684.86 | $429,724.10 | 54.1% | $35,641 | $1,396,095 | $1,289,172 | $106,922 |
| 5/1/2032 | $61.13 | $419,378.39 | $9,660.85 | $684.86 | $429,724.10 | 54.1% | $46,108 | $4,282,489 | $3,867,517 | $414,972 |
| 2/1/2033 | $62.51 | $428,814.40 | $9,876.50 | $698.54 | $439,389.44 | 55.4% | $36,443 | $1,427,496 | $1,318,168 | $109,328 |
| 5/1/2033 | $62.51 | $428,814.40 | $9,876.50 | $698.54 | $439,389.44 | 55.4% | $47,145 | $4,378,814 | $3,954,505 | $424,309 |
| 2/1/2034 | $63.91 | $438,462.72 | $10,096.97 | $712.52 | $449,272.21 | 56.6% | $37,263 | $1,459,605 | $1,347,817 | $111,788 |
| | | | | | | | | **$54,099,550** | **$49,149,943** | **$4,949,607** |

| | |
|---|---|
| Effective Date | 2/1/2024 |
| Contractual Expiration Date | 4/30/2034 |
| Renegotiated Expiration Date | 4/30/2034 |
| Total Months Contractual | 123 |
| Total Months Renegotiated | 123 |
| Total Months (+/-) | 0 |

| | |
|---|---|
| Total Contractual Rent Owed | $54,099,550 |
| Total Renegotiated Rent Owed | $49,149,943 |
| Net % Rent Reduction | 9.15% |
| TOTAL LEASE SAVINGS | $4,949,607 |
| WAIVED PRE-PETITION SAVINGS | $0 |
| TOTAL TIA TO TENANT | $0 |

**TOTAL VALUE SECURED** **$4,949,607**

| Tenant Allowance Secured | Pre-Petition Savings | Term Shortening Savings | 2023 Restructure Savings | 2024 Restructure Savings | 2025 Restructure Savings | 2026 Restructure Savings | 2027+ Restructure Savings |
|---|---|---|---|---|---|---|---|
| $0 | $0 | $0 | $0 | $398,208 | $445,757 | $455,786 | $3,649,856 |

| | | |
|---|---|---|
| Restructured Lease Savings Fee | $124,771 | *4.5% of aggregate Restructured Lease Savings capped at 6 years |
| Term Shortened Lease Fee | $0 | *1 month of Gross Rent plus Any other measurement of leasehold expense calculable |
| Sale and/or Assigned Lease Fee | $0 | *$10,000 for each Designated Sale and/or AssignmentLease transaction |
| Total Hilco Fee | $124,771 | |

**DEAL TERMS**

- Lease expiration date shall remain unchanged.
- Effective 2/1/24, annual Base Rent shall be reduced to $53.74 PSF ($4,211,926.20/yr). Annual rent shall increase by 2.25% every 2/1 thereafter.
- Effective 2/1/24, annual Administrative Support Spce Rent shall be reduced to $12.08 PSF ($90,148.32/yr). Annual rent shall increase by 2.25% every 2/1 thereafter.
- Effective 2/1/24, the scheduled annual increases in MPOE Room 101 Fiber Patch Panel Rent, MPOE 101 RU Space Rent, MPOE Room 133 Fiber Patch Panel Rent, and MPOE 133 RU Space Rent shall reset to increase every 2/1 thereafter (existing rate extended through 1/31/25).
- All other lease terms remain unchanged.

.



